FILED

2007 AUG 22 P 4: 03

UNITED STATES DISTRICT COURT
CLERK US DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA, VIRGINIA
(ALEXANDRIA DIVISION)

------------------------------------------------------------x
TRIANTAFYLLOS TAFAS,                              :
                                                  :
                Plaintiff,                        :
                                                  :
        v.                                        :
                                                  :
JON DUDAS, in his official capacity as            :   CIVIL ACTION NO. 1:07cv846
Under Secretary of Commerce for                   :
Intellectual Property and Director of the         :
United States Patent and Trademark Office         :
and the UNITED STATES PATENT AND                  :
TRADEMARK OFFICE,                                 :
                                                  :   AUGUST ___, 2007
                Defendants.                       :
------------------------------------------------------------x

### DECLARATION OF TRIANTAFYLLOS TAFAS IN SUPPORT OF HIS APPLICATION FOR PRELIMINARY INJUNCTION

STATE OF CONNECTICUT    )
                        )  ss: New Haven
COUNTY OF NEW HAVEN     )

Triantafyllos Tafas, being duly sworn, deposes and says:

1.  I am over the age of eighteen (18) years and I understand the obligations of an oath. I submit this declaration in support of my Application for a Preliminary Injunction enjoining the United States Patent and Trademark Office ("USPTO") from implementing certain rules that will essentially prevent patent applicants, such as myself, from obtaining Patents, that could be obtained under the present rules through continuation applications.

2. The statements made in this Declaration are true and correct and are made on the basis of my personal knowledge, unless indicated to be based upon information and belief, in which case I believe them to be true.

3. I presently reside at 9 Clemens Court, Rocky Hill, Connecticut 06067. I am, among other things, an inventor and entrepreneur and the author of Patent Application Serial Nos. 11/266,948, 11/837,066, 11/837,075 and 11/837,085.

4. I am originally from Greece and was educated in Athens, receiving a Ph.D. in Biological Sciences from the University of Athens in 1991. I authored my first patent in that same year.

5. Upon receiving my Ph.D., I took a teaching position at the University of Athens, teaching courses in Biology, and more specifically, courses focusing on the use of Computers in the study of Biology.

6. During my time at the University of Athens I developed an interest in automating microscopy and worked on related academic projects that were funded by different European and American research support organizations. This interest expanded in the use of robotic microscopy in the study of science and medical diagnostics and continued to grow. In the mid-1990's I began traveling between Greece and the United States seeking to raise venture capital for the development of diagnostic products using robotic microscopy. During that time I also served as a Visiting Professor at the University of Connecticut.

7. In 1999 I started a company named Ikonisys, Inc. ("Ikonisys").

8. Ikonisys is headquartered in New Haven, Connecticut.

9. Ikonisys is in the business of inventing, designing and building cell-based diagnostic systems that use robotic microscopes.

10. In 2000, I made the decision to leave Greece and come to the United States full time in an effort to expand the business of Ikonisys.

11. When I began raising funds to start the business that was to become Ikonisys, I was made aware that I would need patent protection for my inventions in order to have any chance of raising the venture capital needed to get Ikonisys off the ground.

12. Like any technology company, the value in Ikonisys in its earliest stages lie in its intellectual property. In order to secure this value, I pursued patent protection on a robotic microscope that I invented.

13. As a result of the efforts of myself and others, as well as the protections granted by the United States patent laws, Ikonisys began to flourish.

14. Ikonisys is growing, employs approximately fifty-five (55) people, and is marketing a high throughput, robotic microscope that allows automated review of multiple microscope slides for diagnostic and other purposes.

15. It is believed that the Ikonisys high throughput, automated microscope will enable the diagnosis of conditions more rapidly than conventional microscopy. More importantly, it will enable earlier diagnosis of conditions such as cancer, through the detection of rare cancer cells, otherwise impossible using conventional manual microscopy and could change the world of cancer research and therapies.

16. When I initially filed my patent application for what was to become Ikonisys' robotic microscope, I disclosed my detailed research concerning automated

3

microscopy techniques. This research was proprietary and valuable but I was willing to disclose it in order to secure patent protection for the automated microscope.

17. I was also willing to disclose this proprietary information based upon my understanding that United States patent laws guarantee an inventor a limited period of exclusivity on patentable inventions, and also allow for the filing of unlimited continuations should disclosed research be found to include more than one (1) patentable invention.

18. In other words, it was my understanding that I could disclose all of my research and if it turned out that my research revealed more than one patentable invention, I could file a continuation application and that continuation application would be deemed filed on the same date my original application was filed. The protection afforded by continuation applications was important to me as I knew I needed to provide the USPTO with my proprietary research but also knew that I would not lose the rights to other patentable inventions flowing from that work, which, once provided to the PTO, would be in the public domain in 18 months after filing.

19. In addition to my interest in microscopy technology, I have also developed an interest in the automotive arts and, more particularly, utilizing technology to capture heat that radiates from an automobile's manifold.

20. On November 4, 2005, I caused a patent application to be prepared incorporating my new inventive concepts in the automotive arts. The basic inventive concept starts with capturing the heat from an automobile's internal combustion engine manifold. Once that heat is captured, it can be utilized in any number of ways to improve the automobile's performance.

21. The proposed concept has the potential to improve fuel consumption by the automobile's engine with a significant effect in the miles-per-gallon performance. Additionally, acceptance of this concept by the automotive industry, will reduce exhaust gas emission and thus contribute in addressing concerns related to the rise of atmospheric carbon dioxide and global warming.

22. As I understand it, each potential use for the heat that is captured from the automobile's manifold would constitute a new invention. Under the present continuation application rules, I could file continuation applications to claim these new inventions and each of those continuation applications would be deemed filed as of the date my original application was filed.

23. As I understand it, the present continuation rules prevent others from cannibalizing my original work and laying claim to patentable inventions that flow from that work.

24. It is my understanding that the new rules regarding continuation applications substantially change my rights with respect to the filing of continuation applications and my ability to patent inventions that flow from my original invention.

25. These new rules create a disincentive for inventors like me to continue inventing because there is a very real possibility that I will not be able to realize the full economic benefit of my work.

26. These new rules also create a disincentive for inventors like me to reveal the full scope of our work in a patent application because there is a very real possibility that my work could be cannibalized by others, to their own economic benefit.

27.     In an attempt to avoid these very real harms, in the first half of 2007, I requested that new concepts be added to my original patent application through the filing of a continuation-in-part application. With the new rules possibly looming, I was advised to file multiple continuation applications. On August 10, 2007 I made the decision, influenced heavily by my financial position, to file only three continuation-in-part applications claiming priority to my original patent. Under the existing legal regime, I have the ability to file additional continuation applications in the future. If the new rules become effective, my rights to file these additional continuations will disappear and I will lose the patent rights to the numerous inventions that will flow from my original work. Moreover, it will decrease my ability to raise funds for the development of products that stem from this concept, since a higher portion of the raised funds will have to be spent towards securing intellectual property rights.

### VERIFICATION

Except as stated to be on information and belief, the undersigned hereby verifies and declares under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing statements are based on my personal knowledge and true and correct to the best of my knowledge, information and belief.

Executed this 21st day of August in New Haven, Connecticut.

_T. TAFAS_
TRIANTAFYLLOS TAFAS

CT01/MOORST/245297.4