# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| TRIANTAFYLLOS TAFAS,        ) | |
|       ) | |
| Plaintiff,       ) | |
|       ) | |
| v.       ) | CIVIL ACTION NO. 1:07cv846 |
|       ) | |
| JON W. DUDAS, in his official capacity as   ) | |
| Under Secretary of Commerce and      ) | |
| Director of the United States Patent and   ) | |
| Trademark Office       ) | |
| and       ) | |
|       ) | |
| The UNITED STATES PATENT AND     ) | |
| TRADEMARK OFFICE,      ) | |
|       ) | |
| Defendants.      ) | |
|       ) | |

## <u>MEMORANDUM IN SUPPORT OF</u>
## <u>DEFENDANTS' PARTIAL MOTION TO DISMISS</u>

OF COUNSEL:

JAMES A. TOUPIN
General Counsel

STEPHEN WALSH
Acting Deputy General Counsel
and Solicitor

WILLIAM COVEY
Deputy General Counsel

WILLIAM G. JENKS
JANET A. GONGOLA
WILLIAM LAMARCA
Associate Solicitors

JENNIFER M. MCDOWELL
Associate Counsel

United States Patent and Trademark Office

CHUCK ROSENBERG
UNITED STATES ATTORNEY

LAUREN A. WETZLER
R. JOSEPH SHER
Assistant United States Attorneys
Attorneys for All Defendants
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: (703) 299-3752
Fax: (703) 299-3983
Lauren.Wetzler@usdoj.gov

Dockets.Justia.com

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.     PATENT APPLICATION PROCESS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    II.    HISTORY OF THE FINAL RULES FOR CONTINUATION
         AND CLAIMS PRACTICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    III.   OVERVIEW OF FINAL RULES REGARDING CONTINUATION
         AND CLAIMS PRACTICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

         A.    Final Rules 78 and 114 Permit An Applicant to
              File Two Continuation or Continuation-In-Part
              Applications and One Request for Continued
              Examination Without a Petition and Showing.. . . . . . . . . . . . . . . . . . . . . 9

         B.    Final Rule 75 Permits An Applicant to File Five
              Independent Claims and Twenty-five Total Claims
              in Any Application Without an Examination
              Support Document.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

         C.    Plaintiff's Five Pending Applications. . . . . . . . . . . . . . . . . . . . . . . . . . . 11

STANDARDS OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    I.     ALL BUT ONE OF PLAINTIFF'S CLAIMS UNDER COUNT
         ONE SHOULD BE DISMISSED FOR LACK OF JURISDICTION
         PURSUANT TO FED. R. CIV. P. 12(B)(1).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

         A.    Plaintiff Lacks Standing to Raise All But One of
              his Count One Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

1.      Plaintiff Lacks Standing to Challenge
        Final Rule 78 (the "Continuing Applications
        Rule"); Therefore, the Court Should Dismiss
        Paragraphs 56(b), (c), (d), (e), (f), (g), (h), (k),
        (l), (m), and (n)........................................... 16

        a.      *Plaintiff Lacks Constitutional Standing
                to Challenge Final Rule 78 in Paragraphs
                56(b), (c), (d), (e), (f), (g), (h), (k), (l), (m),
                and (n)*........................................ 16

        b.      *Plaintiff Further Lacks Prudential Standing
                to Raise The Claims in Paragraphs 56(b),
                (f), (g), (h), (k), (l), (m), and (n)*.................... 18

2.      Plaintiff Lacks Constitutional and Prudential
        Standing to Challenge Final Rule 114 (the
        "Request for Continued Examination Rule");
        the Court Should Thus Dismiss Paragraph 56(j)............ 21

3.      Plaintiff Lacks Prudential Standing to Challenge
        Final Rule 75 (the "Claims Rule") on the Grounds
        Alleged in Paragraph 56(a)............................. 22

B.      All But One of Plaintiff's Count One Claims Are Not
        Ripe for Review............................................ 23

        1.      Plaintiff Cannot Establish Hardship With
                Respect to How the Final Rules Apply to
                Applications that He Does Not Presently
                Have and May Never Have............................. 24

        2.      Final Rules 78 and 114 are Unfit For Judicial
                Review Until the USPTO Actually Denies
                Plaintiff's Petition for an Additional
                Application........................................ 25

II.     THE COURT SHOULD DISMISS THREE OF PLAINTIFF'S COUNT
        THREE CLAIMS FOR LACK OF STANDING PURSUANT TO
        FED. R. CIV. P. 12(B)(1)..................................... 25

III.    PLAINTIFF'S CONSTITUTIONAL CLAIMS IN COUNT TWO
        SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM
        UNDER FED. R. CIV. P. 12(B)(6)............................... 27

ii

A.     Plaintiff Fails to State a Claim Under the Copyright
and Patent Clause.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

B.     Plaintiff Fails to State a Claim Under the Fifth
Amendment... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## TABLE OF AUTHORITIES

**Page**

## CASES

Abbott Labs. v. Gardner,
    387 U.S. 136 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24, 25

Adams v. Bain,
    697 F.2d 1213 (4th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Allen v. Wright,
    468 U.S. 737 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Alvarado v. KOB-TV, L.L.C.,
    493 F.3d 1210 (10th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Animal Legal Def. Fund, Inc. v. Glickman,
    204 F.3d 229 (D.C. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Bell Atl. Corp. v. Twombly,
    127 S. Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 29, 29

Brenner v. Ebbert,
    398 F.2d 762 (D.C. Cir. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Califano v. Sanders,
    430 U.S. 99 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Camp Legal Def. Fund v. City of Atlanta,
    451 F.3d 1257 (11th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Caplin & Drysdale, Chartered v. United States,
    491 U.S. 617 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19

Charter Fed. Sav. Bank v. Office of Thrift Supervision,
    976 F.2d 203 (4th Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Conley v. Gibson,
    355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

De Ferranti v. Lyndmark,
    30 App. D.C. 417 (1908) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

E.E.O.C. v. Concentra Health Servs., Inc.,
— F.3d —, 2007 WL 2215764 (7th Cir. 2007) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Eldred v. Ashcroft,
537 U.S. 186 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Figueroa v. United States,
466 F.3d 1023 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

Fleury v. Clayton,
847 F.2d 1229 (7th Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Fund Democracy, LLC v. SEC,
278 F.3d 21 (D.C. Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

FW/PBS, Inc. v. City of Dallas,
493 U.S. 215 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Goldstein v. California,
412 U.S. 546 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Graham v. John Deere Co. of Kansas City,
383 U.S. 1 (1966). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Hutchinson Tel. Co. v. Fronteer Directory Co. of Minn., Inc.,
770 F.2d 128 (8th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

In re Vamco Mach. & Tool, Inc.,
752 F.2d 1564 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Iqbal v. Hasty,
490 F.3d 143 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Lujan v. Defenders of Wildlife,
504 U.S. 555 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 17, 26

Manufactured Hous. Inst. v. U.S. E.P.A.,
467 F.3d 391 (4th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Marsh v. Nichols, Shepherd & Co.,
128 U.S. 605 (1888) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Mims v. Kemp,
    516 F.2d 21 (4th Cir. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Mullins Mfg. Co. v. Booth,
    125 F.2d 660 (6th Cir. 1942). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Nat'l Park Hospitality Ass'n v. Dep't of the Interior,
    538 U.S. 803 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Nordlinger v. Hahn,
    505 U.S. 1 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Ohio Forestry Ass'n, Inc. v. Sierra Club,
    523 U.S. 726 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Olim v. Wakinekona,
    461 U.S. 238 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Randall v. United States,
    30 F.3d 518 (4th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Reg'l Mgmt. Corp. v. Legal Servs. Corp.,
    186 F.3d 457 (4th Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Renne v. Geary,
    501 U.S. 312 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Sacks v. Office of Foreign Assets Control,
    466 F.3d 764 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Schnapper v. Foley,
    667 F.2d 102 (D.C. Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Simon v. E. Ky. Welfare Rights Org.,
    426 U.S. 26 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Steffan v. Perry,
    41 F.3d 677 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Toilet Goods Ass'n v. Gardner,
    387 U.S. 158 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

United of Omaha Life Ins. Co. v. Solomon,
    960 F.2d 31 (6th Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Warth v. Seldin,
    422 U.S. 490 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19

Whitmore v. Arkansas,
    495 U.S. 149 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## **CONSTITUTION**

U.S. Const. art. I, § 8, cl. 8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 27, 28

U.S. Const. art. III, § 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

U.S. Const. amend. V. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

## **STATUTES**

5 U.S.C. § 553. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5 U.S.C. §§ 601-612 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5 U.S.C. §§ 701-706. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

35 U.S.C. § 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

35 U.S.C. § 101. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

35 U.S.C. § 102. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

35 U.S.C. § 103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

35 U.S.C. § 112. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

35 U.S.C. § 120. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 18

35 U.S.C. § 121. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

35 U.S.C. § 122. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

35 U.S.C. § 122(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

35 U.S.C. § 122(b)(2)(B)(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

35 U.S.C. § 132(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

35 U.S.C. § 132(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 21

35 U.S.C. § 134. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

35 U.S.C. § 141. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

35 U.S.C. § 200. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 20

35 U.S.C. § 203. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 20

35 U.S.C. § 251. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 20

## RULES

Fed. R. Civ. P. 12(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 13, 14

Fed. R. Civ. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 13, 14, 27

## REGULATIONS

37 C.F.R. § 1.53(b) (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

37 C.F.R. § 1.75(c) (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

37 C.F.R. § 1.104(a) (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

37 C.F.R. § 1.111 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

37 C.F.R. § 1.114 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

37 C.F.R. § 1.176 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

37 C.F.R. § 1.211 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

37 C.F.R. § 1.211(a) (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 21

37 C.F.R. § 1.213 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## FEDERAL REGISTER

Changes to Practice for Continuing Applications, Requests for Continuing
Applications, Requests for Continued Examination Practice, and
Applications Concerning Patentably Indistinct Claims, 71 Fed. Reg. 48-61
(Jan. 3, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Changes to Practice for the Examination of Claims in Patent Applications,
71 Fed. Reg. 61-69 (Jan. 3, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## MANUAL OF PATENT EXAMINING PROCEDURE

U.S. Pat. & Trademark Off., Manual of Patent Examining Procedure ("MPEP")
§ 201.06 (8th ed. 2001, rev. Aug. 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

MPEP § 201.07. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

MPEP § 201.08. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 18

MPEP § 608.01(n) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

MPEP § 706.07(h). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

MPEP § 804.01. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

MPEP § 1440. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## MISCELLANEOUS AUTHORITIES

15 James Wm. Moore et. al., Moore's Federal Practice § 101.40 (3d ed. 2007).. . . . . . . . . . . . 23

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| TRIANTAFYLLOS TAFAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:07cv846 |
| | ) | |
| JON W. DUDAS, in his official capacity as | ) | |
| Under Secretary of Commerce and | ) | |
| Director of the United States Patent and | ) | |
| Trademark Office | ) | |
| and | ) | |
| | ) | |
| The UNITED STATES PATENT AND | ) | |
| TRADEMARK OFFICE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

<u>**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' PARTIAL MOTION TO DISMISS**</u>

Defendants United States Patent and Trademark Office and Jon W. Dudas, in his official capacity as Under Secretary of Commerce for Intellectual Property and Director of the U.S. Patent and Trademark Office (collectively, "the USPTO" or "the Office"), respectfully move to dismiss most of the claims in Plaintiff's First Amended Complaint for Declaratory and Injunctive Relief and Petition for Review of Rulemaking ("Amended Complaint"). Specifically, USPTO seeks dismissal of every claim in Count One except that alleged in paragraph 56(i); all claims in Count Two; and the claims in paragraphs 71(c), (e), and (f) of Count Three.[1]

---

[1]    The USPTO has provided tables summarizing its arguments for dismissal at Exhibit 1. Table 1 summarizes the USPTO's arguments for dismissal by Count. Table 2 breaks down the arguments for dismissal of Count One by final rule.

## INTRODUCTION

In an effort to improve the quality of patent examinations and reduce a growing backlog of patent applications, in January 2006, the USPTO issued <u>Federal Register</u> notices proposing changes to the patent application process.  The USPTO held "town hall" meetings around the country to better inform the public of its proposed rules and ultimately received more than 500 comments.  After carefully considering those comments and making some adjustments to the proposed rules, on August 21, 2007, the USPTO issued a 127-page <u>Federal Register</u> notice setting out its final rules and explaining the rules in exhaustive detail.

The next day, Plaintiff Triantafyllos Tafas filed a Complaint challenging the new rules. Plaintiff simultaneously filed a motion for a preliminary injunction.  On September 7, 2007, however, Plaintiff withdrew his preliminary injunction motion and filed an Amended Complaint.

Plaintiff's Amended Complaint dramatically expanded the scope of his claims, putting at issue virtually every aspect of the new rules, without regard to whether these rules actually affect him.  Plaintiff now alleges that the final rules violate no fewer than <u>seventeen</u> separate sections of the Patent Act, 35 U.S.C. § 1, <u>et seq.</u> (Count One); that they violate Article I, § 8, cl. 8 and the Fifth Amendment of the Constitution (Count Two); that they violate the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 553, 701-706, because some of the final rules are allegedly retroactive and/or not a "logical outgrowth" of the proposed rules (Count Three); and that the USPTO violated the Regulatory Flexibility Act, 5 U.S.C. §§ 601-612 (Count Four).  Plaintiff seeks declaratory and injunctive relief.

In launching an omnibus attack on the rules, Plaintiff has lost sight of two bedrock jurisdictional principles: standing and ripeness.  Before Plaintiff asks this Court to decide, among other things, whether the final rules violate the Patent Act in fourteen separate ways, see Am.

Compl. ¶ 56, and whether they violate the APA for at least nine different reasons, <u>see</u> <u>id.</u>, ¶ 71, the USPTO seeks to narrow Counts One and Three by moving to dismiss many of the claims in those Counts for lack of jurisdiction.[2]  <u>See</u> Fed. R. Civ. P. 12(b)(1).

As to Count One, all but one of the claims in paragraph 56 of the Amended Complaint should be dismissed because these claims focus on types of applications and submissions that Plaintiff has not filed, that he cannot file, or that he may never file.  As a result, the challenged rules do not cause Plaintiff any concrete and actual or imminent harm sufficient to establish constitutional standing.  In seeking to assert not only his own interests, but also those of other inventors, Plaintiff further runs afoul of the prudential standing doctrine prohibiting a litigant from raising the rights of third parties.  Moreover, many of Plaintiff's claims are unripe, as they are unfit for review and Plaintiff will suffer no hardship from the Court declining to hear them at this time.  Plaintiff has the burden to establish that the Court has jurisdiction to hear his claims. He has not done so.  Accordingly, the Court should dismiss all but one of Plaintiff's claims under Count One (Am. Compl., ¶ 56(i)) on jurisdictional grounds.

The Court should also dismiss the claims in paragraphs 71(c), (e), and (f) of Count Three for lack of standing.  Like all but one of the claims in paragraph 56 of Count One, the claims in paragraphs 71(c), (e), and (f) relate to types of applications and submissions that Plaintiff does not have and may never have.  Plaintiff may not raise procedural APA challenges with respect to

---

[2]        On September 24, 2007, the Court entered the parties' Stipulation and Consent Order, which sets a briefing schedule for this motion and the parties' forthcoming cross-motions for summary judgment. Dkt. No. 16.  The USPTO agreed to this expedited briefing schedule in order to avoid Plaintiff filing another preliminary injunction motion.  The USPTO is filing this Motion to Dismiss with the hope that the Court will issue an Order significantly narrowing the claims in this case before the USPTO must file its cross-motion for summary judgment on <u>November 20, 2007</u>.  In doing so, the Court would enable the USPTO to submit a streamlined brief that addresses only those issues over which the Court has jurisdiction and that state a claim. To this end, the attached proposed order respectfully proposes that the Court first issue an Order identifying the dismissed claims and <u>later</u> issue a Memorandum Opinion explaining its ruling.

rules that do not threaten any actual concrete interest.

Finally, the USPTO seeks dismissal of all of Plaintiff's constitutional claims in Count Two for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). As explained below, the USPTO could not have violated the "Patent and Copyright Clause" of the Constitution, U.S. Const. art. I, § 8, cl. 8, for numerous reasons. The USPTO also could not have violated the Fifth Amendment because Plaintiff has no cognizable property interest. The Court should thus dismiss Count Two for failure to state a claim upon which relief may be granted.[3]

## BACKGROUND

### I.    PATENT APPLICATION PROCESS

An inventor who seeks to protect an invention may file a patent application with the USPTO. The first application the inventor files for a given invention is known as the **"parent"** (or "initial") application. A patent application is, essentially, a draft patent. It contains two primary parts: (1) a **"specification"**; and (2) one or more **"claims."** The specification describes the invention for which a patent is sought as well as how to make and use the invention. See 35 U.S.C. § 112, first paragraph. The claims identify what the applicant regards as his invention, i.e., the scope of legal protection the applicant believes his or her invention is entitled to receive. See id., second paragraph; In re Vamco Mach. & Tool, Inc., 752 F.2d 1564, 1577 n.5 (Fed. Cir. 1985) ("[C]laims are not technical descriptions of the disclosed inventions but are legal documents like the descriptions of lands by metes and bounds in a deed").

A patent claim may be in **"independent"** or **"dependent"** form. An independent claim, as the name suggests, stands on its own, reciting all the limitations of the invention. See 35

---

[3]        To the extent the Court grants the USPTO's Partial Motion to Dismiss, the claims remaining for summary judgment would be: Paragraph 56(i) of Count One; Paragraph 68 and Paragraphs 71(a), (b), (d), (g), (h), and (i) of Count Three; and Count Four.

U.S.C. § 112, third paragraph.  By contrast, a dependent claim incorporates the limitations of the independent claim and recites one or more further limitations of the invention.  See id., fourth paragraph.  Similar to a dependent claim, a **"multiple dependent claim"** incorporates the limitations of two or more claims in the alternative and recites one or more further limitations.[4] See id., fifth paragraph; see also U.S. Pat. & Trademark Off., Manual of Patent Examining Procedure ("MPEP") § 608.01(n) (8th ed. 2001, rev. Aug. 2006).

When a patent applicant files an application with the USPTO, a patent examiner determines whether the claimed invention meets the statutory requirements found in Title 35 of the United States Code.  See 35 U.S.C. §§ 101, 102, 103 & 112.  If the examiner finds that a claim does not comply with the statutory patentability requirements, the examiner will reject the claim and issue an **"Office action"** setting forth the reasons for the rejection.  35 U.S.C. § 132(a); 37 C.F.R. § 1.104(a) (2006).  In response, the applicant may (i) amend the claims; (ii) argue against the rejection; or (iii) present evidence to show why the claimed invention is believed to be patentable.  37 C.F.R. § 1.111 (2006).  The examiner may then "allow"—that is, authorize for patenting—some or all of the claims or issue another rejection.  The back-and-forth exchange that occurs between an applicant and an examiner is commonly referred to as the **"prosecution"** of an application.

Upon receipt of a final rejection, an applicant has three choices: (1) appeal to the Board of Patent Appeals and Interferences ("Board") and from there to the Federal Circuit, 35 U.S.C.

---

[4]     For example, Claims 1 and 2 below are independent claims; Claim 3 is a dependent claim; and Claim 4 is a multiple dependent claim.
    1.     An automobile comprising: a chassis; an engine; and four wheels.
    2.     An automobile comprising: a chassis; an engine; four wheels; and four doors.
    3.     The automobile of claim 1 wherein the engine is an internal-combustion engine.
    4.     The automobile of claims 1 or 2 wherein the engine has eight cylinders.

5

§§ 134, 141; (2) file a "**request for continued examination**" of the application, which typically

extends examination of the application for two more rounds with the examiner, 35 U.S.C.

§ 132(b); 37 C.F.R. § 1.114 (2006); or (3) file a **"continuation"** or a **"continuation-in-part"**

application of the initial application.[5]

   An applicant files a "continuation" application when the applicant wants to amend the

claims, offer additional evidence on patentability, or further argue why the claims are patentable.

A continuation uses the same specification as the pending parent application, must name at least

one of the same inventors as the parent application, and enjoys the benefit of the filing date

(a.k.a. **"priority date"**) of the parent application.  See 35 U.S.C. § 120; MPEP § 201.07.

   A continuation-in-part application is similar to a continuation application in that it repeats

some portion of the specification of the parent application.  The difference is that it includes

additional new subject matter that was not disclosed or claimed in the parent application.  Claims

drawn to the repeated subject matter in a continuation-in-part application are entitled to the

benefit of the filing date of the parent application, but claims drawn to new subject matter are

entitled to the benefit of only the new filing date.  See 35 U.S.C. § 120; MPEP § 201.08.

   Sometimes, an applicant may disclose and claim more than one independent or distinct

invention in the initial application.  In such cases, an examiner may require the applicant to

separate the multiple independent or distinct inventions into one or more **"divisional"**

applications,[6] each claiming only a single invention.  See 35 U.S.C. § 121.  This is called a

---

   [5]   The applicant need not await a final rejection to file a continuation or
continuation-in-part application.  As discussed infra, Plaintiff himself has filed four continuation-
in-part applications off of his parent application, even though he has not received a final rejection
of his parent application.

   [6]   Plaintiff uses the terms "voluntary-divisional continuation patent application" or a
"voluntary divisional" throughout the Amended Complaint.  When he does so, Plaintiff is
referring to a continuation or continuation-in-part application and not an application filed

**"restriction requirement."**  In response to a restriction requirement, the applicant must choose one of his or her claimed inventions to prosecute in the initial application and is authorized to file separate "divisional" applications to protect each of other inventions.  Like a continuation application, a divisional application claims the priority date of the parent application.[7]  See id.; MPEP § 201.06.

By statute, a patent application must be published eighteen months from the earliest effective filing date of the application—that is, the filing date of the earliest application to which the application claims priority.  See 35 U.S.C. § 122(b)(1); 37 C.F.R. § 1.211 (2006).  An applicant can, however, prevent his or her application from publishing by filing a non-publication request.  See 35 U.S.C. § 122(b)(2)(B)(i); 37 C.F.R. § 1.213 (2006).  If the applicant agrees not to file his or her application in a foreign country that publishes applications, the USPTO must maintain the application in confidence until a patent issues.

After an application issues as a patent, a patentee may realize that he or she claimed more or less than he or she had a right to claim or that the patent is inoperative or invalid due to an unintentional error.  The patentee may surrender the patent to the USPTO and file a "**reissue application**" to correct the error.  See 35 U.S.C. § 251.  A "reissue application" is examined like

---

pursuant to a restriction requirement under 35 U.S.C. § 121.  As explained in the Manual of Patent Examining Procedure, a "divisional" application under 35 U.S.C. § 121 can be filed only if a restriction requirement has first been issued.  See MPEP § 804.01 ("The 35 U.S.C. 121 [entitled "Divisional Applications"] prohibition applies only where the Office has made a requirement for restriction. The prohibition does not apply where the divisional application was voluntarily filed by the applicant and not in response to an Office requirement for restriction." (emphasis added)).   The term "voluntary divisional" is not based in Title 35, the corresponding regulations, or agency guidance; instead, it is a term loosely used by patent applicants and practitioners in referring to a filing that is really a continuation application.  See Ex. 3, Young Decl. ¶ 33.  To be clear, Plaintiff's use of the term "voluntary divisional" is misleading; "continuation" or "continuation-in-part" is the correct term.

[7]      Collectively, a "continuation," a "continuation-in-part," and a "divisional" are commonly referred to as  **"continuing applications."**  See 37 C.F.R. § 1.53(b) (2006).

any other application.  See 37 C.F.R. § 1.176 (2006); MPEP § 1440.

In some cases, the federal government may support research and development efforts to bring forth new inventions and may have patent rights in inventions made with federal assistance. See 35 U.S.C. §§ 200, 203.   If so, then the federal agency may, under some circumstances, exercise **"march-in rights"** and require the  contractor who invented the invention or the assignee or exclusive licensee of the invention to grant a license to the invention.  See id. § 203.

## II.    HISTORY OF THE FINAL RULES FOR CONTINUATION AND CLAIMS PRACTICE

Over the past decade, the growing number of continuing applications, as well as the increasing number and complexity of claims in patent applications, have crippled the Office's ability to examine newly-filed applications.[8] See Changes To Practice for Continued Examination Filings, Patent Applications Containing Patentably Indistinct Claims, and Examination of Claims in Patent Applications; Final Rule, 72 Fed. Reg. No. 46716, 46718 (Aug. 21, 2007) (Ex. 2) ("Final Rules").  Consequently, in January of 2006,  the USPTO proposed new rules for filing continuing applications and for presenting claims.  See Changes to Practice for Continuing Applications, Requests for Continuing Applications, Requests for Continued Examination Practice, and Applications Concerning Patentably Indistinct Claims, 71 Fed. Reg. 48-61 (Jan. 3, 2006); Changes to Practice for the Examination of Claims in Patent Applications, 71 Fed. Reg. 61-69 (Jan. 3, 2006) (collectively "Proposed Rules") (Ex. 3).  The USPTO solicited public comments to the Proposed Rules and provided a four month comment period.  Id. at

---

[8]        The growing number of continuing applications are attributable to a variety of factors, including: (1) applicants filing deficient initial applications and relying on the availability of an endless stream of continuing applications to work out issues of patentability; (2) applicants using the availability of continuing applications to delay the conclusion of examination so as to buy time to figure out what their commercially viable invention is or to monitor marketplace developments for similar inventions which may fall within the scope of yet-to-be-presented claims; (3) applicants filing literal or machine-translated documents as patent applications and using continuing applications to correct avoidable mistakes. See Ex. 2 at 46719.

46717.  The USPTO received more than 500 written comments.  <u>Id</u>.  It then spent more than a year carefully analyzing and considering the feedback.  <u>Id</u>.

In response to suggestions from the public, the USPTO modified the proposed rules for both continuing applications and claims.  In making these modifications, the USPTO sought to promulgate reasonable rules that would accomplish the goals of increasing application quality, reducing the backlog, and improving examination efficiency while allowing the public ample opportunity to claim their inventions.  <u>Id</u>. at 46719.

## III.   <u>OVERVIEW OF FINAL RULES REGARDING CONTINUATION AND CLAIMS PRACTICE</u>

On August 21, 2007, the USPTO published final rules concerning the filing of continuing applications and claims.  <u>See</u> Ex. 2 at 46843.

### A.   **Final Rules 78 and 114 Permit An Applicant to File Two Continuation or Continuation-In-Part Applications and One Request for Continued Examination Without a Petition and Showing**.

The Final Rules allow an applicant to file two continuation or continuation-in-part applications, plus a single request for continued examination, after an initial application as a matter of right (<u>i.e.</u>, a total of three filings after an initial application).  <u>See</u> Ex. 2 at 46718; <u>see also</u> 37 C.F.R. § 1.78(d)(1)(i), (ii), & (iii) (**"Final Rule 78"**); 37 C.F.R. 1.114(f) (**"Final Rule 114"**).  If an applicant wants to engage in more prosecution at the examiner level, the Final Rules allow an applicant to file any third or subsequent continuation or continuation-in-part application and any second or subsequent request for continued examination with a **"petition and showing"** of need.[9]  <u>See</u> Ex. 2 at 46719; <u>see also</u> 37 C.F.R. §§ 1.78(d)(1)(vi), 1.114(g).  That is, to justify a

---

[9]       In his Amended Complaint, Plaintiff refers to the  provisions for continuing applications found in the Final Rules as "Revised Rule I."  <u>See</u> Am. Compl. at ¶ 12.  The USPTO shall refer to the rules applicable to continuation practice generally as "Final Rule 78" and to request for continued examination practice generally as "Final Rule 114".

further filing beyond three, an applicant must explain why the argument, amendment, or evidence could not have been presented earlier in one of the previously-filed applications. Final Rule 78(d)(1) applies to all initial and continuing applications filed on or after November 1, 2007. See Ex. 2 at 46716, 46736.

When an applicant files an application claiming more than one invention, the USPTO may subject that application to a restriction requirement as explained above. See 35 U.S.C. § 121. Under the Final Rules, an applicant who claimed multiple inventions in a single application may suggest a restriction requirement to the USPTO. See Ex. 2 at 46726; 37 C.F.R. § 1.142(c) ("Final Rule 142"). If the examiner accepts the **"suggested restriction requirement"** or issues one of his or her own, the applicant may file a divisional application for each invention. Each divisional application is treated under the Final Rules as the initial application in a new application family, thereby enabling an applicant to file two continuation applications, plus a single request for continued examination, in the family without any petition and showing. See Ex. 2 at 46732; 37 C.F.R. § 1.78(d)(1)(ii) & (iii).[10]

In order to prevent duplicate examination of the same invention, the Final Rules further require an applicant to identify for each application any other commonly-owned applications or patents that have a common inventor and that have a filing or priority date within two months of the filing or priority date of the application. Ex. 2 at 46721; 37 C.F.R. § 1.78(f)(1). The Final Rules set forth a rebuttable presumption that an application and any identified commonly-owned applications or patents contain at least one **"patentably indistinct claim"**—that is, one claim that does not patentably differ from the claims in a previously filed patent application —if the identified applications or patents have (i) an inventor in common with the application, (ii) the

---

[10]     The Final Rules do not permit an applicant to file a continuation-in-part off of a divisional application. See Ex. 2 at 46732; 37 C.F.R. § 1.75(d)(1)(iii)(A).

same filing or priority date as the application, and (iii) substantial overlapping disclosure with the application.  Ex. 2 at 46722; 37 C.F.R. § 1.78(f)(2).

> **B.**     **Final Rule 75 Permits An Applicant to File Five Independent Claims and Twenty-five Total Claims in Any Application Without an Examination Support Document**.

The Final Rules permit an applicant to present a total of **five independent claims and twenty-five total claims** for examination without providing any further information about the claims.  See Ex. 2 at 46721; see also 37 C.F.R. § 1.75(b)(1) (**"Final Rule 75"**).[11]  If an applicant wants to present more than five independent claims or more than twenty-five total claims, then Final Rule 75 requires the applicant to provide an **"examination support document"** containing information about the claims before the issuance of a first Office action on the merits in the application.  Ex. 2 at 46721; 37 C.F.R. § 1.75(b)(1).  An examination support document is intended to assist the examiner in determining the patentability of the claimed invention.  Ex. 2 at 46721.  In light of the two continuation or continuation-in-part applications that an applicant may file after the initial application, an applicant ultimately may present fifteen independent claims and seventy-five total claims covering each invention without filing any examination support document.  Id. at 46718, 46721.  Final Rule 75 applies to all applications filed on or after November 1, 2007, and all pending applications for which a first Office action on the merits was not mailed before November 1, 2007.  Id. at 46716, 46728.

> **C.**     **Plaintiff's Five Pending Applications**

On November 4, 2005, Plaintiff filed U.S. Patent Application No. 11/266948 entitled,

---

[11]     In his Amended Complaint, Plaintiff refers to the  provisions for claims practice as "Revised Rule II."  See Am. Compl. at ¶ 12.  The USPTO refers to these rules as Final Rule 75, unless a more specific subparagraph reference is needed.

"Energy Recovery System in an Engine" (**"Plaintiff's Parent Application"**).[12]  Am. Compl. ¶ 1; Ex. 4, Declaration of Karen Young ("Young Decl.") ¶¶ 2-3.  Plaintiff's Parent Application contains five independent claims and twenty total claims.  Id. ¶ 4.  None of the claims in the Parent Application is a multiple dependent claim. Id. ¶ 35.  All claims are directed to an energy recovery system, except for one claim which is directed to a method of recovering energy from exhaust gases produced by combustion in an internal combustion engine. Id. ¶ 4.  Nothing in Plaintiff's Parent Application indicates that the invention claimed therein was made with assistance from the federal government. Id. ¶ 5.  Plaintiff's Parent Application was published on May 10, 2007 because Plaintiff did not file a non-publication request. Id. ¶ 6.  On July 24, 2007, the USPTO issued a first Office action on the merits in Plaintiff's Parent Application. Id. ¶ 8.  The USPTO has never issued a restriction requirement in Plaintiff's Parent Application.  Id. ¶ 7.

On August 10, 2007, shortly before the USPTO published the Final Rules, Plaintiff filed three continuation-in-part applications, claiming the priority date of Plaintiff's Parent Application.  Am. Compl. ¶ 1; Ex. 4, Young Decl.  ¶¶ 10, 15, & 20.  On September 7, 2007, the same day Plaintiff filed his Amended Complaint, he filed a fourth continuation-in-part application, also claiming the benefit of the filing date of Plaintiff's Initial Application.  Am. Compl. ¶ 1; Ex. 4, Young Decl. ¶ 25.  Together with Plaintiff's Parent Application, Plaintiff's four continuation-in-part applications form an application family (**"Plaintiff's Application Family"**).  Ex. 4, Young Decl. ¶ 30.

---

[12]    Also on November 3, 2006, Plaintiff filed an **"international application"** under the Patent Cooperation Treaty.  The Patent Cooperation Treaty enables an applicant to file one application in English in the USPTO and have that application acknowledged as a regular national patent application in as many Contracting States to the Patent Cooperation Treaty as the applicant designates.  Plaintiff's international application claims the benefit of his Parent Application.  See Ex. 3, Young Decl. ¶ 9.

Plaintiff's four continuation-in-part applications each contain less than five independent claims but more than twenty-five total claims. Id. ¶¶ 11, 16, 21, & 26. None of the claims in those applications is in multiple dependent form. Id. ¶ 35. And, nothing indicates that the claimed inventions were made with assistance from the federal government. Id. ¶¶ 13, 18, 23, & 28. Because Plaintiff did not file a non-publication request, all four of his continuation-in-part applications will be published eighteen months after the filing date of the Parent Application.[13] Id. ¶¶ 12, 17, 22, & 27. Plaintiff is currently awaiting a first Office action on the merits for each of his continuation-in-part applications. Id. ¶¶ 14, 19, 24, & 29. The USPTO has not issued any restriction requirements in Plaintiff's four continuation-in-part applications. Id.

## STANDARDS OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's jurisdiction over the subject matter of the suit. A Rule 12(b)(1) motion may attack subject matter jurisdiction by asserting that, as a factual matter, the plaintiff cannot meet his burden of establishing a jurisdictional basis for the suit. See Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). In this type of challenge, "[a] trial court may consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment." Id. (citing Mims v. Kemp, 516 F.2d 21 (4th Cir. 1975)).

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the court must accept well-pleaded allegations as true and must construe the factual allegations in favor of the plaintiff. See Randall

---

[13] Because Plaintiff's Parent Application was filed on November 3, 2005—more than eighteen months ago—his continuation-in-part applications are eligible for immediate publication. See 37 C.F.R. § 1.211(a) (2006).

v. United States, 30 F.3d 518, 522 (4th Cir. 1994). The court is not, however, required to accept as true allegations that are legal conclusions. Id. To satisfy Rule 12(b)(6), the plaintiff must allege specific, non-conclusory facts that plausibly state a claim upon which relief could be granted. See Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1968-69 (2007).

## ARGUMENT

I.    **ALL BUT ONE OF PLAINTIFF'S CLAIMS UNDER COUNT ONE SHOULD BE DISMISSED FOR LACK OF JURISDICTION PURSUANT TO FED. R. CIV. P. 12(B)(1).**[14]

Article III of the Constitution limits the role of the federal courts to adjudication of actual "cases" and "controversies." Allen v. Wright, 468 U.S. 737, 750 (1984); see U.S. Const. art. III, § 2. Two essential doctrines that enforce the limits on justiciability are standing and ripeness. See Allen, 468 U.S. at 750. In asking the Court to rule on numerous matters that cause him no personal harm at this time, Plaintiff runs afoul of both of these doctrines.

### A.    Plaintiff Lacks Standing to Raise All But One of his Count One Claims.

The doctrine of standing insists on a "plaintiff [who] has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 38 (1976) (emphasis added). The standing doctrine encompasses both "a core component derived directly from the Constitution" and prudential, "judicially self-imposed limits on the exercise of federal jurisdiction." Allen, 468 U.S. at 751.

In order to satisfy the constitutional standing requirement, a plaintiff must show that: (1) he suffered an injury in fact that is "concrete and particularized," and "actual or imminent, not conjectural or hypothetical;" (2) there is a causal connection between the injury and the conduct

_____

[14]    The USPTO seeks dismissal of all Count One claims except paragraph 56(i).

complained of; and (3) it is likely, rather than merely speculative, that the injury will be redressed by the relief requested.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  The plaintiff bears the burden of establishing each of these elements.  Id. at 561.

Even where a plaintiff establishes constitutional standing, the doctrine of prudential standing may preclude the Court from hearing some or all of the plaintiff's claims.  See Warth v. Seldin, 422 U.S. 490, 499 (1975).  One of the most important prudential limits on standing is "the general prohibition on a litigant's raising another person's legal rights."  Allen, 468 U.S. at 751.  As the Supreme Court explained in Warth, "even when the plaintiff has alleged sufficient injury to meet the 'case or controversy' requirement, this Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  422 U.S. at 499.  The Court has identified three factors that are pertinent to determining whether a litigant may assert the rights of a third-party: "the relationship of the litigant to the person whose rights are being asserted; the ability of the person to advance his own rights; and the impact of the litigation on third-party interests."  Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624 n. 3 (1989).

Where a plaintiff challenges multiple statutory provisions or rules, a court must analyze whether the plaintiff has standing to challenge each provision or rule individually.  See, e.g., FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 233-35 (1990) ("Because we conclude that no petitioner has shown standing to challenge either the civil disability provisions or the provisions involving those who live with individuals whose licenses have been denied or revoked, we conclude that the courts below lacked jurisdiction to adjudicate petitioners' claims with respect to those provisions"); Camp Legal Def. Fund v. City of Atlanta, 451 F.3d 1257, 1273 (11th Cir. 2006) (stating that "FW/PBS forecloses the argument by CAMP that injury under one provision

is sufficient to confer standing on a plaintiff to challenge all provisions of an allegedly unconstitutional ordinance" and citing cases); Sacks v. Office of Foreign Assets Control, 466 F.3d 764, 771 (9th Cir. 2006) ("[W]e must determine whether [the] Amended Complaint identifies an injury caused by each of the two regulations that is both concrete and actual or imminent."). Plaintiff thus must establish standing to challenge each of the Final Rules that he claims is unlawful.

      1.    **Plaintiff Lacks Standing to Challenge Final Rule 78 (the "Continuing Applications Rule"); Therefore, the Court Should Dismiss Paragraphs 56(b), (c), (d), (e), (f), (g), (h), (k), (l), (m), and (n).**

Throughout paragraph 56, Plaintiff alleges a variety of ways in which he believes that Final Rule 78—the rule limiting the number of continuing applications one can file without a petition or showing—is contrary to the Patent Act. See Am. Compl. ¶¶ 56(b), (c), (d), (e), (f), (g), (h), (k), (l), (m) & (n). The Court should dismiss each of these claims for lack of constitutional and/or prudential standing.

      a.    *Plaintiff Lacks Constitutional Standing to Challenge Final Rule 78 in Paragraphs 56(b), (c), (d), (e), (f), (g), (h), (k), (l), (m), and (n).*

In order for Plaintiff to have constitutional standing to challenge Final Rule 78, he must establish that it is more than speculative that he will file another continuing application. Otherwise, Final Rule 78 could not reduce Plaintiff's chances of successfully obtaining a patent, or "foist[]" additional costs on him. Am. Compl. ¶ 24.

The Supreme Court's decision in Lujan is instructive. There, environmental groups challenged the Department of Interior's regulations regarding endangered species. Two members of the plaintiff organization averred that they had traveled to Sri Lanka and intended "some day" to return to see endangered species. Lujan, 504 U.S. at 563-64. The Supreme Court held that

16

"[s]uch 'some day' intentions – without any description of concrete plans, or indeed even specifications of <u>when</u> the some day will be – do not support a finding of 'actual or imminent' injury that our cases require." <u>Id.</u> at 564.  "Although 'imminence' is concededly a somewhat elastic concept," the Court noted, "it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes  – that the injury is '<u>certainly</u> impending.'" <u>Id.</u> at 564 n. 2 (quoting <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 158 (1990)).  The Court warned that the injury-in-fact requirement "has been stretched beyond the breaking point when, as here, the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's control."  <u>Id.</u>

Here, too, the Amended Complaint fails to allege that Plaintiff has any concrete, certain plans to file more continuing applications after the effective date of the Final Rules.  Instead, Plaintiff simply alleges that he may, in the "future," file applications to protect the inventions that may allegedly "flow from" his initial application.  Am. Compl. ¶ 32.  "Such 'some day' intentions – without any description of concrete plans, or indeed even specifications of when the some day will be – do not support a finding of 'actual or imminent' injury . . . ."  Lujan, 504 U.S. at 564.  That Plaintiff has, in the past, filed continuing applications "proves nothing."  Id.

There are good reasons why Plaintiff may not file another continuing application after Final Rule 78 takes effect on November 1, 2007.  First, Plaintiff's five pending applications may be sufficient to claim all of the inventions that will "flow" from his initial application.

Second, if Plaintiff's four continuation-in-part applications claim multiple inventions, he may choose to file a suggested restriction requirement after November 1, 2007, pursuant to Final Rule 142.  <u>See</u> Ex. 2 at 46726; 37 C.F.R. § 1.142(c).  The USPTO may accept Plaintiff's suggested restriction requirement or independently issue one or more restriction requirements.

17

Plaintiff then would be able to file one or more divisional applications under 35 U.S.C. § 121. Each such divisional application will begin a new application family that may include up to two continuation and/or continuation-in-part applications and one request for continued examination, thereby giving Plaintiff ample opportunity to claim his inventions.

Third, since Plaintiff's continuation-in-part applications include newly-discovered subject matter not found in his initial application, the new subject matter in those applications is not entitled to the benefit of the filing date of his Parent Application.  See 35 U.S.C. § 120; MPEP § 201.08.  So, rather than filing more continuation-in-part applications, Plaintiff may opt to file new applications for some or all of his other hypothetical inventions.  In doing so, Plaintiff would be able to avail himself of two continuation or continuation-in-part applications and one request for continued examination in each of those families.

Finally, to the extent that Plaintiff actually has concrete plans to file another continuation-in-part application, he may do so before November 1, 2007, without violating Final Rule 78.  See Ex. 2 at 46716 (noting that the effective date of Final Rule 78 is November 1, 2007).

Plaintiff thus has significant procedural options available to claim his hypothetical, future inventions.  It is, therefore, speculative that Final Rule 78 will cause him any concrete injury sufficient to establish constitutional standing.

> **b.**     ***Plaintiff Further Lacks Prudential Standing to Raise The Claims in Paragraphs 56(b), (f), (g), (h), (k), (l), (m), and (n).***

Even if Plaintiff could establish that he has constitutional standing to challenge Final Rule 78, he still would lack prudential standing to challenge this rule on the grounds alleged in paragraphs 56(b), (f), (g), (h), (k), (l), (m), and (n).  These paragraphs spin out theories concerning how Final Rule 78 allegedly violates the Patent Act in ways that harm "an applicant" who has

18

types of applications that Plaintiff does not have in his Application Family, and which it is
speculative that he ever will have.[15]  E.g., Am. Compl. ¶56(b).  As the D.C. Circuit has warned:

> [P]rudential standing notions mandate that a plaintiff's suit seek to vindicate his own
> legal rights or interests, not those of some absent third party.  This requirement means
> that there must be a connection between the injury suffered and the legal right or
> theory asserted. . . . For if the alleged <u>wrongfulness</u> of the injurious action challenged,
> that is, the asserted violation of a legal right, was not causally related to the injury
> suffered—if, in other words, it was not the illegal aspect of the action challenged that
> harmed the plaintiff—then the suit in question would not be one to vindicate that
> plaintiff's <u>own</u> rights.

<u>Steffan v. Perry</u>, 41 F.3d 677, 697 (D.C. Cir. 1994) (en banc) (internal citations omitted).  In
claiming that Final Rule 78 violates the Patent Act in ways that do not personally affect him,
Plaintiff impermissibly raises claims of applicants who are not before this Court, without showing
that he has any special relationship with those applicants, or that there is any obstacle to those
applicants raising their own claims.[16]  <u>See</u> <u>Warth</u>, 422 U.S. at 499-500; <u>Caplin & Drysdale</u>, 491
U.S. at 623 n.3; <u>see also</u> <u>Nordlinger v. Hahn</u>, 505 U.S. 1, 11 (1992).

    First, Plaintiff alleges that Final Rule 78 will prevent him from (i) filing "continuation-in-
part applications off of divisional applications," Am. Compl. at ¶ 56(b); and (ii) claiming "priority
to a divisional application from which priority has already been claimed in an international
application," <u>id</u>. at ¶ 56(n).  Each of these claims requires that an applicant have at least one
divisional application.  Plaintiff, however, has no divisional applications in his Application
Family.  See Ex. 4, Young Decl. ¶ 32.  He thus lacks prudential standing to raise these claims.

    Plaintiff further complains that Final Rule 78 violates the Patent Act by preventing him

---

[15]    These types of applications include: (i) divisional applications, Am. Compl.,
¶¶ 56(b), (f), (g) & (n); (ii) reissue applications, <u>id.</u> ¶ 56(k); (iii) applications subject to federal
march-in rights, <u>id.</u> ¶¶ 56(l) & (m); and (iv) applications maintained in confidence, <u>id.</u> ¶56(h).

[16]    Indeed, it is particularly difficult to believe that any such obstacle exists when
hundreds of inventors and organizations and firms representing inventors submitted public
comments concerning the proposed rules, but Plaintiff himself never did so.

from (i) filing an "involuntary divisional with additional claims beyond those originally existing in the parent application or, once filed, amending the claim[s], so as to include disclosed but not claimed subject matter," Am. Compl. ¶ 56(f), and (ii) filing "continuation-in-part/divisional application hybrid[s]," id. ¶ 56(g).  An applicant may file a divisional application, however, only when the USPTO issues a restriction requirement.  See 35 U.S.C. § 121.  Plaintiff has not received restriction requirements for any of the applications in his Application Family, and thus he is ineligible to file any divisional applications.  See Ex. 4, Young Decl. ¶¶ 7, 14, 19, 24 & 29.

Next, Plaintiff alleges that Final Rule 78 prevents him from filing a divisional application in a reissue application.  Am. Compl. ¶ 56(k).  As explained above, reissue applications can only be filed in conjunction with issued patents, not pending patent applications.  See 35 U.S.C. § 251.  Plaintiff's Amended Complaint does not allege that he has any patents for which he might need a reissue application, much less a reissue application with a divisional application filed off of it.  See Ex. 4, Young Decl. ¶ 34.

Plaintiff also alleges that the Final Rules fail to account for federally supported research and development and federal "march-in" rights available under 35 U.S.C. §§ 200 and 203.  See Am. Comp. ¶ 56 (l) & (m).  Plaintiff does not have, nor does he allege to have, any applications arising from federally sponsored research.  Nor, by extension, does Plaintiff have any applications subject to federal "march-in" rights.  See Ex. 4, Young Decl. ¶¶ 5, 13, 18, 23 & 28.  Without such applications, he lacks prudential standing to raise the claims in paragraphs (l) and (m).

Finally, Plaintiff alleges that the "identification of patentably indistinct claims" requirement set forth in Final Rule 78(f) will force "applicants" to disclose subject matter that they want to maintain in confidence.  Am. Compl. at ¶ 56(h).  Such forced disclosure, Plaintiff complains, contravenes 35 U.S.C. § 122.  See id.  Plaintiff has not alleged, nor has the USPTO

found, that he has made any non-publication requests in any of his applications. See Ex. 4, Young

Decl. ¶¶ 6, 12, 17, 22 & 27. Absent such a request, by law, the USPTO must publish all of

Plaintiff's pending applications promptly at eighteen months from the earliest effective filing date.

See 35 U.S.C. § 122.[17] For this reason, Final Rule 78 does not "erod[e]" any "confidentiality

protections" that affect Plaintiff himself or "make it more likely that [his] patentable inventions

will be improperly copied or used by others." Am. Compl. ¶ 24. Thus, here again, Plaintiff

asserts a claim in which he lacks a personal interest.

    In sum, the Court should dismiss Plaintiff's claims in paragraphs 56(b), (c), (d), (e), (f),

(g), (h), (k), (l), (m), and (n) for lack of constitutional and/or prudential standing.

> ## 2. Plaintiff Lacks Constitutional and Prudential Standing to Challenge Final Rule 114 (the "Request for Continued Examination Rule"); the Court Should Thus Dismiss Paragraph 56(j).

    In paragraph 56(j) of his Amended Complaint, Plaintiff alleges that Final Rule 114

restricts his right to file a request for continued examination under 35 U.S.C. § 132(b). Final Rule

114 is not, however, the cause of Plaintiff's inability to file a request for continued examination at

this time. Plaintiff cannot file a request for continued examination because none of his pending

applications are mature enough for him to do so. As explained above, an applicant may file a

request for continued examination only after prosecution in an application is closed (i.e., some or

all of the claims stand finally rejected). See MPEP § 706.07(h). Prosecution has not closed in

any of Plaintiff's alleged applications; Plaintiff received a first Office action in his Parent

Application and is awaiting one in his four continuation-in-part applications. See Ex. 4, Young

Decl. ¶¶ 8, 14, 19, 24, & 29. As a result, Plaintiff is not yet eligible to file a request for continued

---

[17]      Since more than eighteen months have passed from the filing date of Plaintiff's
Parent Application, Plaintiff's continuation-in-part applications could publish immediately. See
37 C.F.R. § 1.211(a) (2006).

examination, see id. at ¶ 31, and cannot establish that he has an injury in fact from Final Rule 114.

Furthermore, even if prosecution were closed in one of Plaintiff's five applications, he would be free to file a request for continued examination without a petition and showing under Final Rule 114(f), since he has not alleged, and the USPTO has not found, that he has already filed one in his Application Family.  See id.  Hence, Final Rule 114(f) is not causing Plaintiff any actual or imminent harm.

Finally, even if Plaintiff has constitutional standing to challenge Final Rule 114, he lacks prudential standing.  As Plaintiff personally has no applications in which a request for continued examination could be filed, he impermissibly rests his claim in paragraph 56(j) on the rights of third parties.  The Court should thus dismiss paragraph 56(j).

> **3.      Plaintiff Lacks Prudential Standing to Challenge Final Rule 75 (the "Claims Rule") on the Grounds Alleged in Paragraph 56(a).**

Plaintiff claims that Final Rule 75 violates the Patent Act on two grounds. See Am. Compl. ¶¶ 56(a), (i). The USPTO does not contest Plaintiff's standing to raise the claim in paragraph 56(i).[18]  However, Plaintiff lacks prudential standing to challenge Final Rule 75 on the ground set forth in paragraph 56(a), which claims that the new rule violates the Patent Act by altering the way that (1) claims to different statutory classes of inventions, and (2) multiple dependent claims, are counted for purposes of determining whether an application contains more than five independent claims and more than twenty-five total claims.  See Am. Compl. ¶ 56 (a).

Plaintiff's applications do not contain any claims that refer to different statutory classes of inventions; instead, each of Plaintiff's claims is drawn to a single statutory class of invention.  See Ex. 4, Young Decl. at ¶ 36.  Nor do Plaintiff's applications contain any multiple dependent

---

[18]      The USPTO does contest the merits of Plaintiff's claim, but the merits are not at issue in this Partial Motion to Dismiss.

claims.  See Ex. 4, Young Decl. at ¶ 35.[19]  Consequently, the aspects of Rule 75 that Plaintiff

challenges in paragraph 56(a) will cause him no discernable harm, and the paragraph should be

dismissed for lack of prudential standing.

In sum, every claim in Count One but for paragraph 56(i) should be dismissed on the

ground that Plaintiff lacks constitutional and/or prudential standing to raise it.

**B.    All But One of Plaintiff's Count One Claims Are Not Ripe for Review.**

The doctrine of ripeness, which derives from both Article III and prudential concerns,

ensures that courts will not "entangl[e] themselves in abstract disagreements over administrative

policies, and also to protect the agencies from judicial interference until an administrative decision

has been formalized and its effects felt in a concrete form."  Abbott Labs. v. Gardner, 387 U.S.

136, 148-49 (1967) (emphasis added), overruled on other grounds, Califano v. Sanders, 430 U.S.

99 (1977).  Although the doctrines of ripeness and standing overlap to some extent, they are

distinct doctrines; standing addresses who may bring the suit, while ripeness concerns when a suit

should be brought.  See 15 James Wm. Moore et. al., Moore's Federal Practice § 101.40 (3d ed.

2007).  As with standing, the burden of proving ripeness falls on the party bringing suit.  See

Renne v. Geary, 501 U.S. 312, 316 (1991).

---

[19]    In any event, the provision in Final Rule 75(b) regarding how to count a multiple
dependent claim is not new.  Final Rule 75(b)(5)(c) provides in pertinent part: "For fee
calculation purposes under § 1.16 (or § 1.492) and for purposes of paragraph (b) of this section, a
multiple dependent claim will be considered to be that number of claims to which direct
reference is made therein."  Ex. 2 at 46837 (emphasis added).  Current Rule 75(c) contains nearly
identical language, except for the additional phrase "and for purposes of paragraph (b) of this
section."  See 37 C.F.R. §1.75(c) (2006) ("For fee calculation purposes, under § 1.16, a multiple
dependent claim will be considered to be that number of claims to which direct reference is made
therein.").  The added language in Final Rule 75(b)(5)(c) is intended to address the five
independent claims and twenty-five total claims threshold set forth in the Final Rules, which is a
new circumstance under which multiple dependent claims must be counted.  It does not change
the methodology for counting multiple dependent claims with respect to fees.

To decide whether a case is ripe for adjudication, the court must determine (1) whether the issues are fit for judicial decision; and (2) whether hardship will fall to the petitioning party if judicial review is withheld.  See Reg'l Mgmt. Corp. v. Legal Servs. Corp., 186 F.3d 457, 465 (4th Cir.1999) (citing Abbott Labs., 387 U.S. at 148-49).  The question of fitness itself has two parts; the court must consider "(1) the agency's interest in crystallizing its policy before that policy is subject to review; and (2) the court's interest in avoiding unnecessary adjudication and in deciding issues in a concrete setting."  Id.  Although cases that present purely legal issues are frequently considered fit for review, the Supreme Court has nevertheless declined review in some such cases. See, e.g., Nat'l Park Hospitality Ass'n v. Dep't of the Interior, 538 U.S. 803, 812 (2003); Toilet Goods Ass'n v. Gardner, 387 U.S. 158, 162 (1967).  To measure hardship, the Court looks to "the immediacy of the threat and the burden imposed on the petitioner who would be compelled to act under threat of enforcement of the challenged law." See Charter Fed. Sav. Bank v. Office of Thrift Supervision, 976 F.2d 203, 208-09 (4th Cir.1992) (citing Abbott Labs., 387 U.S. at 153).  All of Plaintiff's Count One claims except paragraph 56(i) should be dismissed for lack of ripeness.

### 1.     Plaintiff Cannot Establish Hardship With Respect to How the Final Rules Apply to Applications that He Does Not Presently Have and May Never Have.

Starting with the second prong, Plaintiff cannot demonstrate hardship from the Final Rules cited in paragraphs 56(a), (b), (c), (d), (e), (f), (g), (h), (j), (k), (l), (m), and (n) for the same reasons identified in the foregoing discussion of standing.   Because Plaintiff does not have and may never have many of the types of applications and submissions that he claims the Final Rules will affect, there is little risk that denying him a judicial forum at this time will harm him.

**2.**     **Final Rules 78 and 114 are Unfit For Judicial Review Until the USPTO Actually Denies Plaintiff's Petition for an Additional Application.**

Turning to the first prong, Plaintiff's allegations in paragraphs 56(b), (c), (d), (e), (f), (g), (h), (j), (k), (l), and (m) regarding Final Rules 78 and 114 are also unripe because they are unfit for judicial review.  One of Plaintiff's chief concerns appears to be that the USPTO will not allow him to submit additional continuation-in-part applications because the agency will find that he has not made a sufficient showing as to why he could not submit the amendment, argument, or evidence in one of his five previous applications.  See, e.g., Am. Compl. ¶¶ 56(b), (c), & (d).  Because the Final Rules will not go into effect until November 1, 2007, Final Rules 78 and 114 have not yet been applied to Plaintiff, or anyone else.  As a result, the USPTO has not yet had an opportunity to consider any petitions, nor have the "effects" of its new rules been "felt in a concrete form."  Abbott Labs., 387 U.S. at 148-49.  Plaintiff may find, for example, that the bar to having a petition approved is not as high as he fears and that judicial intervention is unnecessary.  As the Supreme Court has explained, "[t]he ripeness doctrine reflects a judgment that the disadvantages of a premature review that may prove too abstract or unnecessary ordinarily outweigh the additional costs of—even repetitive—post-implementation litigation."  Ohio Forestry Ass'n, Inc. v. Sierra Club, 523 U.S. 726, 735 (1998).  Thus, the Court's review of Final Rules 78 and 114 at this time would be premature.

For all of these reasons, the Court should dismiss thirteen out of fourteen of Plaintiff's Count One claims for lack of jurisdiction.

**II.     THE COURT SHOULD DISMISS THREE OF PLAINTIFF'S COUNT THREE CLAIMS FOR LACK OF STANDING PURSUANT TO FED. R. CIV. P. 12(B)(1).**

In paragraphs 70 and 71 of the Amended Complaint, Plaintiff raises a type of procedural APA challenge commonly known as a "logical outgrowth" claim.  In short, Plaintiff contends that

some of the Final Rules are so different from the Proposed Rules that the USPTO should have put

the Final Rules out for another round of public comment.[20]  See, e.g., Manufactured Hous. Inst. v.

U.S. E.P.A., 467 F.3d 391, 399-400 (4th Cir. 2006).

      In order to make such a procedural claim, the procedural right Plaintiff seeks to vindicate

must be "one 'designed to protect some threatened concrete interest' of the plaintiff."  Animal

Legal Def. Fund, Inc. ("ALDF") v. Glickman, 204 F.3d 229, 236 (D.C. Cir. 2000) (quoting Lujan,

504 U.S. at 573 n. 8).  Put differently:

> [t]he mere violation of a procedural requirement does not authorize all persons to sue
> to enforce the requirement.  A party has standing to challenge an agency's failure to
> abide by a procedural requirement only if the government act performed without the
> procedure in question will cause a distinct risk to a particularized interest of the
> plaintiff.

Fund Democracy, LLC v. SEC, 278 F.3d 21, 27 (D.C. Cir. 2002).  Applying this principle in

ALDF, the D.C. Circuit dismissed the plaintiff's "logical outgrowth" claim for lack of standing,

finding that ALDF had "advanced no such concrete interest."  ALDF, 204 F.3d at 236.

      Three of Plaintiff's claims under paragraph 71 of Count Three allege that aspects of Final

Rule 78 are not a logical outgrowth of the Proposed Rules.  See Am. Compl. ¶¶ (c), (e), and (f).

As explained above, however, Plaintiff lacks constitutional standing to challenge Final Rule 78

generally because his Amended Complaint does not establish that he faces any concrete, actual or

imminent harm from that rule.  Because Plaintiff's claims in paragraphs 71(c), (e), and (f) all

pertain to Final Rule 78, these procedural challenges are barred.  See Lujan, 504 U.S. at 573 n. 8.

      Furthermore, paragraphs 71(c), (e), and (f) implicate types of applications that Plaintiff

does not have, and in which he thus lacks a concrete interest.  Paragraphs 71(c) and (e) address

---

[20]     In addition to his "logical outgrowth" claim, Plaintiff also claims in Count Three
that Final Rule 75 is retroactive.  See Am. Compl. ¶ 68.  Although the USPTO contests the
merits of this claim, it does not contest that the Court has jurisdiction to hear it.

divisional applications—a type of application that Plaintiff does not have in his Application

Family and may never have.  See Ex. 4, Young Decl. at ¶ 32.   Plaintiff also could not be harmed

by Final Rule 78(d)(1)(iv), which he address in paragraph 71(f).   That Final Rule refers, in

pertinent part, to "prior filed international applications that do not claim the benefit of any other . .

. application." Ex. 2 at 46839; 37 C.F.R. § 1.78(d)(1)(iv) (emphasis added).   Though Plaintiff has

an international application, his application does claim the benefit of an earlier application, and

therefore does not fall under Final Rule 78(d)(1)(iv).  See Ex. 4, Young Decl. at ¶ 8.  Absent

injury to a concrete interest, Plaintiff lacks standing to raise these procedural claims.

## III.    PLAINTIFF'S CONSTITUTIONAL CLAIMS IN COUNT TWO SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(B)(6).

In Count Two of his Amended Complaint, Plaintiff alleges in a conclusory manner that the

Final Rules violate the Copyright and Patent Clause of the Constitution, art. I, § 8, cl. 8, and the

Due Process Clause of the Fifth Amendment.  Both claims should be dismissed for failure to state

a claim upon which relief may be granted.  See Fed. R. Civ. P. 12(b)(6).

### A.    Plaintiff Fails to State a Claim Under the Copyright and Patent Clause.

Plaintiff first alleges that the Final Rules violate the Copyright and Patent Clause because

the USPTO "fail[ed] to appropriately weigh the effect of its regulations on the promotion of the

progress of science and the useful arts."  Am. Compl. ¶ 60.  The Clause provides:  "Congress shall

have Power . . . To promote the Progress of Science and useful Arts, by securing for limited

Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries."

U.S. Const., art. I., § 8, cl. 8.   Plaintiff cannot state a claim under this clause for several reasons.

First, the Clause does not constitute an independent factor that an executive agency must

"weigh."  Am. Compl. ¶ 60.  Rather, the plain language of Article I, Section 8 ("Congress shall

have Power. . .") makes clear that the Clause addresses only <u>Congress's</u> authority to pass intellectual property laws.  <u>See, e.g.</u>, <u>Eldred v. Ashcroft</u>, 537 U.S. 186, 212 (2003) ("The 'constitutional command' we have recognized, is that <u>Congress</u>, to the extent it enacts copyright laws at all, <u>create a 'system'</u> that 'promote[s]' the Progress of Science.") (emphases added); <u>Graham v. John Deere Co. of Kansas City</u>, 383 U.S. 1, 5 (1966) (explaining that the Clause is a "grant . . . and limitation" on Congress's power); cf. Goldstein v. California, 412 U.S. 546, 560 (1973).  Unless Plaintiff wishes to challenge the patent system that <u>Congress</u> has created, the Clause is simply irrelevant.

Second, the preamble of the Clause—"To promote the Progress of Science and useful Arts"—does not create an enforceable limitation even on Congress's power.  In <u>Schnapper v. Foley</u>, 667 F.2d 102, 112 (D.C. Cir. 1981), the D.C. Circuit held that it "cannot accept appellants' argument that the introductory language of the Copyright Clause constitutes a limitation on Congress's power."  <u>See also</u> <u>Hutchinson Tel. Co. v. Fronteer Directory Co. of Minn., Inc.</u>, 770 F.2d 128, 130 (8th Cir. 1985) ("[A]lthough the promotion of artistic and scientific creativity and the benefits flowing therefrom to the public are purposes of the Copyright Clause, those purposes do not limit Congress' power to legislate in the field of [patent and] copyright.").  In <u>Eldred</u>, the Supreme Court explicitly declined to decide whether the Clause's preamble was "an independently enforceable limit on Congress's power" because the petitioner conceded that it was not.  537 U.S. at 211; <u>see also</u> Figueroa v. United States, 466 F.3d 1023, 1030 & n. 9 (Fed. Cir. 2006) (declining to decide whether the Clause's preamble limits congressional power).

Third, even if one could use the Clause's preambular language to challenge the USPTO's rulemaking, all that would be required is a "rational basis" for the conclusion that the USPTO's Final Rules "'promot[e] the progress of science.'"  <u>Eldred</u>, 537 U.S. at 213 (quoting art. I, § 8, cl.

8); see also Figueroa, 466 F.3d at 1031-32.  Plaintiff fails to allege in his Amended Complaint that the Final Rules are "irrational."  This alone is sufficient to justify dismissal of the claim. In any event, the USPTO has established a rational basis for the Final Rules.[21]  See, e.g., Ex. 2 at 46719 (explaining that the Final Rules will "(1) [l]ead to more focused and efficient examination, improve the quality of issued patents, result in patents that issue faster, and give the public earlier notice of what the patent claims cover; and (2) address the growing practice of filing . . . multiple applications containing patentably indistinct claims.").

For all of these reasons, the Court should dismiss Plaintiff's claim at paragraph 60.

**B.    Plaintiff Fails to State a Claim Under the Fifth Amendment.**

Plaintiff further alleges that the Final Rules violate the Fifth Amendment by "effectuating a deprivation of property without due process of law."  Am. Compl. ¶ 61.   Plaintiff fails to identify, however, what specific "property" he has been deprived of or what "process" he was not afforded.  Absent the identification of these essential factual elements of a due process claim, Plaintiff's Fifth Amendment claim is merely conclusory and does not satisfy the standard set forth by the Supreme Court in Twombly.[22]   127 S. Ct. at 1968-69 (rejecting the notion that "a wholly conclusory statement of claim would survive a motion to dismiss ") (quoting Conley v. Gibson, 355 U.S. 41 (1957)).

---

[21]    Although the August 21, 2007 Federal Register notice demonstrates that the Final Rules have a rational basis, the Court need not limit itself to the USPTO's stated policy reasons to find that there is a rational basis for the rules.  See Figueroa, 466 F.3d at 1032.

[22]    Several Courts of Appeals have acknowledged that the Supreme Court's decision in Twombly extends beyond the context of antitrust suits.  See, e.g., Iqbal v. Hasty, 490 F.3d 143, 157 (2d Cir. 2007) (applying Twombly to a Bivens case after discussing its scope); E.E.O.C. v. Concentra Health Servs., Inc., — F.3d —, 2007 WL 2215764, at *2 (7th Cir. 2007) (Title VII case); Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007) (tort case).

Moreover, even assuming that Plaintiff had identified his pending applications as the property at issue, he still would not state a claim under the Fifth Amendment. It is well settled that a patent <u>application</u> does not constitute a cognizable property interest. <u>See</u> <u>Marsh v. Nichols, Shepherd & Co.</u>, 128 U.S. 605, 612 (1888) ("Until the patent is issued, there is no property right in it; that is, no such right as the inventor can enforce. Until then there is no power over its use, which is one of the elements of a right of property in anything capable of ownership."); <u>Mullins Mfg. Co. v. Booth</u>, 125 F.2d 660, 664 (6th Cir. 1942); <u>De Ferranti v. Lyndmark</u>, 30 App. D.C. 417, at *5 (1908); <u>see also</u> Brenner v. Ebbert, 398 F.2d 762, 764-65 (D.C. Cir. 1968).

Nor does Plaintiff have a constitutionally-protected interest in the procedures by which his patent applications are adjudicated. See, e.g., Olim v. Wakinekona, 461 U.S. 238, 250 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."); Fleury v. Clayton, 847 F.2d 1229, 1231 (7th Cir.1988) ("There is neither a 'liberty' nor a 'property' interest in procedures themselves . . . ."); see also United of Omaha Life Ins. Co. v. Solomon, 960 F.2d 31, 34 (6th Cir.1992) (holding that a "disappointed bidder" to a state contract did not have a property interest in the State's purchasing guidelines, and so suffered no due process violation when the State failed to comply with its own procedure in awarding the bid).

Accordingly, paragraph 61 of the Amended Complaint fails to state a claim upon which relief could be granted under the Fifth Amendment and should be dismissed.

## CONCLUSION

For the foregoing reasons, the USPTO respectfully requests that the Court grant its Partial Motion to Dismiss and dismiss paragraphs 56(a), (b), (c), (d), (e), (f), (g), (h), (j), (k), (l), (m), and (n) of Count One; all of Count Two; and paragraphs 71(c), (e), and (f) of Count Three.

Respectfully submitted,

CHUCK ROSENBERG
UNITED STATES ATTORNEY


By:      _____/s/_____
         LAUREN A. WETZLER
         R. JOSEPH SHER
         Assistant United States Attorneys
         Attorneys for All Defendants
         Justin W. Williams U.S. Attorney's Building
         2100 Jamieson Avenue
         Alexandria, Virginia 22314
         Tel: (703) 299-3752
         Fax: (703) 299-3983
         Lauren.Wetzler@usdoj.gov

OF COUNSEL:
James A. Toupin
General Counsel

Stephen Walsh
Acting Deputy General Counsel
   and Solicitor

William Covey
Deputy General Counsel

William G. Jenks
Janet A. Gongola
William LaMarca
Associate Solicitors

Jennifer M. McDowell
Associate Counsel

United States Patent and Trademark Office

31