**§ 31.6011(a)–1  Returns under Federal Insurance Contributions Act.**

(a) * * *

(5) [The text of proposed § 31.6011(a)–1(a)(5) is the same as the text of § 31.6011(a)–1T(a)(5) published elsewhere in this issue of the **Federal Register**].

\* \* \* \* \*

Par. 3. Section 31.6011(a)–4 is amended by revising paragraph (a)(4) to read as follows:

**§ 31.6011(a)–4  Returns of income tax withheld.**

(a) * * *

(4) [The text of proposed § 31.6011(a)–4(a)(4) is the same as the text of § 31.6011(a)–4T(a)(4) published elsewhere in this issue of the **Federal Register**].

\* \* \* \* \*

Par. 4. Section 31.6302–1 is amended by revising paragraphs (b)(4), (c)(5) and 6, (d) *Example 6*, (f)(4), and (f)(5) *Example 3* to read as follows:

**§ 31.6302–1  Federal tax deposit rules for withheld income taxes and taxes under the Federal Insurance Contributions Act (FICA) attributable to payments made after December 31, 1992.**

\* \* \* \* \*

(b) * * *

(4) * * *

(i) [The text of the proposed § 31.6302–1(b)(4)(i) is the same as the text of § 31.6302–1T(b)(4)(i) published elsewhere in this issue of the **Federal Register**].

(ii) [The text of the proposed § 31.6302–1(b)(4)(ii) is the same as the text of § 31.6302–1T(b)(4)(ii) published elsewhere in this issue of the **Federal Register**].

(c) * * *

(5) [The text of proposed § 31.6302–1(c)(5) is the same as the text of § 31.6302–1T(c)(5) published elsewhere in this issue of the **Federal Register**].

(6) [The text of proposed § 31.6302–1(c)(6 is the same as the text of § 31.6302–1T(c)(6) published elsewhere in this issue of the **Federal Register**].

(d) * * *

*Example 6.* [The text of proposed § 31.6302–1(d) *Example 6* is the same as the text of § 31.6302–1T(d) *Example 6* published elsewhere in this issue of the **Federal Register**].

\* \* \* \* \*

(f) * * *

(4) *De minimis rule*—(i) *De minimis deposit rule for quarterly and annual return periods beginning on or after January 1, 2001.* If the total amount of accumulated employment taxes for the return period is *de minimis* and the amount is fully deposited or remitted

with a timely filed return for the return period, the amount deposited or remitted will be deemed to have been timely deposited. The total amount of accumulated employment taxes is *de minimis* if it is less than $2,500 for the return period or if it is *de minimis* pursuant to paragraph (f)(4)(ii) of this section.

(ii) *De minimis deposit rule for quarterly return periods.* For purposes of paragraph (f)(4)(i) of this section, if the total amount of accumulated employment taxes for the immediately preceding quarter was less than $2,500, unless paragraph (c)(3) of this section applies to require a deposit at the close of the next banking day, then the employer will be deemed to have timely deposited the employer's employment taxes for the current quarter if the employer complies with the time and method of payment requirements contained in paragraph (f)(4)(i) of this section.

(iii) [The text of the proposed § 31.6302–1(f)(4)(iii) is the same as the text of § 31.6302–1T(f)(4)(iii) published elsewhere in this issue of the **Federal Register**].

(5) * * *

*Example 3.* [The text of proposed § 31.6302–1(f)(5) *Example 3* is the same as the text of § 31.6302–1T(f)(5) *Example 3* published elsewhere in this issue of the **Federal Register**]

\* \* \* \* \*

**Mark E. Matthews,**
*Deputy Commissioner for Services and Enforcement.*

[FR Doc. 05–24563 Filed 12–30–05; 8:45 am]
**BILLING CODE 4830–01–P**

---

# DEPARTMENT OF COMMERCE

## Patent and Trademark Office

**37 CFR Part 1**

**[Docket No.: 2005–P–066]**

**RIN 0651–AB93**

### Changes To Practice for Continuing Applications, Requests for Continued Examination Practice, and Applications Containing Patentably Indistinct Claims

**AGENCY:** United States Patent and Trademark Office, Commerce.

**ACTION:** Notice of proposed rule making.

**SUMMARY:** Continued examination practice, including the use of both continuing applications and requests for continued examination, permits applicants to obtain further examination and advance an application to final

agency action. This practice allow applicants to craft their claims in light of the examiner's evidence and arguments, which in turn may lead to well-designed claims that give the public notice of precisely what the applicant regards as his or her invention. However, each continued examination filing, whether a continuing application or request for continued examination, requires the United States Patent and Trademark Office (Office) to delay taking up a new application and thus contributes to the backlog of unexamined applications before the Office. In addition, current practice allows an applicant to generate an unlimited string of continued examination filings from an initial application. In such a string of continued examination filings, the exchange between examiners and applicants becomes less beneficial and suffers from diminishing returns as each of the second and subsequent continuing applications or requests for continued examination in a series is filed. Moreover, the possible issuance of multiple patents arising from such a process tends to defeat the public notice function of patent claims in the initial application.

The Office is making every effort to become more efficient, to ensure that the patent application process promotes innovation, and to improve the quality of issued patents. With respect to continued examination practice, the Office is proposing to revise the patent rules of practice to better focus the application process. The revised rules would require that second or subsequent continued examination filings, whether a continuation application, a continuation-in-part application, or a request for continued examination, be supported by a showing as to why the amendment, argument, or evidence presented could not have been previously submitted. It is expected that these rules will make the exchange between examiners and applicants more efficient and effective. The revised rules should also improve the quality of issued patents, making them easier to evaluate, enforce, and litigate. Moreover, under the revised rules patents should issue sooner, thus giving the public a clearer understanding of what is patented.

The revised rules would also ease the burden of examining multiple applications that have the same effective filing date, overlapping disclosure, a common inventor, and common assignee by requiring that all patentably indistinct claims in such applications be submitted in a single application.

DEFENDANTS'
EXHIBIT 3

The changes proposed in this notice will also allow the Office to focus its patent examining resources on new applications instead of multiple continued examination filings that contain amendments or evidence that could have been submitted earlier, and thus allow the Office to reduce the backlog of unexamined applications. This will mean faster and more effective examination for the vast majority of applicants without any additional work on the applicant's part. Additional resources will be devoted to multiple continued examination filings only where necessary.

*Comment Deadline Date:* To be ensured of consideration, written comments must be received on or before May 3, 2006. No public hearing will be held.

ADDRESSES: Comments should be sent by electronic mail message over the Internet addressed to AB93Comments@uspto.gov. Comments may also be submitted by mail addressed to: Mail Stop Comments— Patents, Commissioner for Patents, P.O. Box 1450, Alexandria, VA, 22313–1450, or by facsimile to (571) 273–7735, marked to the attention of Robert W. Bahr. Although comments may be submitted by mail or facsimile, the Office prefers to receive comments via the Internet. If comments are submitted by mail, the Office prefers that the comments be submitted on a DOS formatted 3½ inch disk accompanied by a paper copy.

Comments may also be sent by electronic mail message over the Internet via the Federal eRulemaking Portal. See the Federal eRulemaking Portal Web site (*http://www.regulations.gov*) for additional instructions on providing comments via the Federal eRulemaking Portal.

The comments will be available for public inspection at the Office of the Commissioner for Patents, located in Madison East, Tenth Floor, 600 Dulany Street, Alexandria, Virginia, and will be available via the Office Internet Web site (*address: http://www.uspto.gov*). *Because comments will be made available for public inspection, information that is not desired to be made public, such as an address or phone number, should not be included in the comments.*

FOR FURTHER INFORMATION CONTACT: Robert W. Bahr, Senior Patent Attorney, Office of the Deputy Commissioner for Patent Examination Policy, by telephone at (571) 272–8800, by mail addressed to: Mail Stop Comments—Patents, Commissioner for Patents, P.O. Box 1450, Alexandria, VA, 22313–1450, or by facsimile to (571) 273–7735, marked to the attention of Robert W. Bahr.

SUPPLEMENTARY INFORMATION: The current volume of continued examination filings—including both continuing applications and requests for continued examination—and duplicative applications that contain "conflicting" or patentably indistinct claims, are having a crippling effect on the Office's ability to examine "new" (*i.e.,* non-continuing) applications. The cumulative effect of these continued examination filings is too often to divert patent examining resources from the examination of new applications to new technology and innovations, to the examination of applications that have already been examined, have issued as patents, or have been abandoned. In addition, when the continued examination process fails to reach a final resolution, and when multiple applications containing claims to patentably indistinct inventions are filed, the public is left uncertain as to what the set of patents resulting from the initial application will cover. Thus, these practices impose a burden on innovation both by retarding the Office's ability to examine new applications and by undermining the function of claims to notify the public as to what technology is or is not available for use.

Commentators have noted that the current unrestricted continuing application and request for continued examination practices preclude the Office from ever finally rejecting an application or even from ever finally allowing an application. *See* Mark A. Lemley and Kimberly A. Moore, *Ending Abuse of Patent Continuations,* 84 B.U. L. Rev. 63, 64 (2004). The burdens imposed by the repetitive filing of applications (as continuing applications) on the Office (as well as on the public) is not a recent predicament. *See To Promote the Progress of Useful Arts, Report of the President's Commission on the Patent System,* at 17–18 (1966) (recommending changes to prevent the repetitive filing of dependent (*i.e.,* continuing) applications). Unrestricted continued examination filings and multiple applications containing patentably indistinct claims, however, are now having such an impact on the Office's ability to examine new applications that it is now appropriate for the Office to clarify the applicant's duty to advance the application to final action by placing some restrictions on the filing of multiple continuing applications, requests for continued examination, and other multiple applications to the same invention. *See* 35 U.S.C. 2(b) (authorizes

the Office to establish regulations, not inconsistent with law, which shall govern the conduct of proceedings in the Office, and shall facilitate and expedite the processing of patent applications). This would permit the Office to apply the patent examining resources currently absorbed by these applications to the examination of new applications and thereby reduce the backlog of unexamined applications.

The Office also notes that not every applicant comes to the Office prepared to particularly point out and distinctly claim what the applicant regards as his invention, for example, where the applicant's attorney or agent has not adequately reviewed or revised the application documents (often a literal translation) received from the applicant. In these situations examination of what applicants actually regard as their invention may not begin until after one or more continued examination filings. Applicants should not rely on an unlimited number of continued examination filings to correct deficiencies in the claims and disclosure that applicant or applicant's representative have not adequately reviewed. In addition, a small minority of applicants have misused continued examination practice with multiple continued examination filings in order to simply delay the conclusion of examination. This skirts applicant's duty to make a *bona fide* attempt to advance the application to final agency action and impairs the ability of the Office to examine new and existing applications. It also prejudices the public by permitting applicants to keep applications in pending status while awaiting developments in similar or parallel technology and then later amending the pending application to cover the developments. The courts have permitted the addition of such claims, when supported under 35 U.S.C. 112, ¶ 1, to encompass products or processes discovered in the marketplace. *See PIN/NIP, Inc.,* v. *Platt Chemical Co.,* 304 F.3d 1235, 1247, 64 USPQ2d 1344, 1352 (Fed. Cir. 2002). However, the practice of maintaining continuing applications for the purpose of adding claims after such discoveries is not calculated to advance prosecution before the Office.

The Office, in light of its backlog and anticipated continued increase in applications is making every effort to become more efficient. Achieving greater efficiency requires the cooperation of those who provide the input into the examination process, the applicants and their representatives. With respect to continued examination practice, the Office is proposing to

**50**    **Federal Register** / Vol. 71, No. 1 / Tuesday, January 3, 2006 / Proposed Rules

revise the rules of practice to assure that multiple continued examination filings from a single application do not absorb agency resources unless necessary for effective examination. The revised rules would require that second or subsequent continuation or continuation-in-part applications and second or subsequent requests for continued examination of an application include a showing as to why the amendment, argument, or evidence presented could not have been previously submitted. It is expected that these rules will make the exchange between examiners and applicants more efficient, get claims to issue faster, and improve the quality of issued patents. The revised rules would also ease the burden of examining multiple applications that have the same effective filing date, overlapping disclosure, a common inventor, and common assignee by requiring that all patentably indistinct claims in such applications be submitted in a single application absent good and sufficient reason.

The Office's Patent Application Locating and Monitoring (PALM) records show that, in fiscal year 2005, the Office received approximately 317,000 nonprovisional applications, and that about 62,870 of these nonprovisional applications were continuing applications. In addition, the Office's PALM records show that the Office received about 52,750 requests for continued examination in fiscal year 2005. Thus, about thirty percent (63,000 + 52,000)/(317,000 + 52,000) of the Office's patent examining resources must be applied to examining continued examination filings that require reworking earlier applications instead of examining new applications.

In comparison, the Office issued over 289,000 first Office actions on the merits in fiscal year 2005. Had there been no continued examination filings, the Office could have issued an action for every new application received in 2005 and reduced the backlog by issuing actions in 35,000 older cases. Instead, the Office's backlog grew because of the large number of continued examination filings.

Thus, current continued examination practice and the filing of multiple applications containing patentably indistinct claims are impairing the Office's ability to examine new applications without real certainty that these practices effectively advance prosecution, improve patent quality, or serve the typical applicant or the public. These proposed changes to the rules in title 37 of the Code of Federal Regulations (CFR) are intended to ensure that continued examination

filings are used efficiently to move applications forward. The Office expects that the new rules will lead to more focused and efficient examination, improve the quality of issued patents, result in patents that issue faster, and give the public earlier notice of just what patentees claim. The changes to the rules also address the growing practice of filing (by a common applicant or assignee) of multiple applications containing patentably indistinct claims.

Of the roughly 63,000 continuing applications filed in fiscal year 2005, about 44,500 were designated as continuation/continuation-in-part (CIP) applications, and about 18,500 were designated as divisional applications. About 11,800 of the continuation/CIP applications were second or subsequent continuation/CIP applications. Of the over 52,000 requests for continued examination filed in fiscal year 2005, just under 10,000 were second or subsequent requests for continued examination. Thus, the Office's proposed requirements for seeking second and subsequent continuations will not have an effect on the vast majority of patent applications.

35 U.S.C. 111(a) and 120, respectively, permit an applicant to file a nonprovisional application and to claim the benefit of a prior-filed nonprovisional application. Similarly, 35 U.S.C. 363 and 365(c), respectively, permit an applicant to file an international application under Patent Cooperation Treaty (PCT) Article 11 and 35 U.S.C. 363 and, if the international application designates the United States of America, claim the benefit of a prior-filed international application designating the United States of America or a prior-filed nonprovisional application. Similarly again, 35 U.S.C. 111(a) and 365(c) permit an applicant to file a nonprovisional application (filed under 35 U.S.C. 111(a)) and claim the benefit of a prior-filed international application designating the United States of America (under 35 U.S.C. 365(c)).

The practice of filing "continuation applications" arose early in Office practice mainly as a procedural device to effectively permit the applicant to amend an application after rejection and receive an examination of the "amended" (or new) application. *See In re Bogese*, 22 USPQ2d 1821, 1824 (Comm'r Pats. 1991) (*Bogese I*). The concept of a continuation application *per se* was first recognized in *Godfrey* v. *Eames*, 68 U.S. (1 Wall.) 317, 325–26 (1864). *See Bogese I*, 22 USPQ2d at 1824. 35 U.S.C. 120 is a codification of the continuation application practice

recognized in *Godfrey* v. *Eames. See id* (citing *In re Hogan*, 559 F.2d 595, 603, 194 USPQ 527, 535 (CCPA 1977)).

Applicants should understand, however, that there is not an unfettered right to file multiple continuing applications without making a *bona fide* attempt to claim the applicant's invention. *See In re Bogese*, 303 F.3d 1362, 64 USPQ2d 1448 (Fed. Cir. 2002) (*Bogese II*). While *Bogese II* was an extreme case, one of prosecution laches, it makes clear that applicants face a general requirement of good faith in prosecution and that the Director has the inherent authority, rooted in 35 U.S.C. 2, to ensure that applicants comply with that duty. *See Bogese II*, 303 F.3d at 1368 n.5, 64 USPQ2d at 1452 n.5.

The proposed rules are not an attempt to codify *Bogese II* or to simply combat such extreme cases of prosecutions laches. Nor do these rules set a *per se* limit on the number of continuing applications. *Compare In re Henriksen*, 399 F.2d 253, 158 USPQ 224 (CCPA 1968). Rather, they require that applicants who file multiple continuing applications from the same initial application show that the third and following applications in the chain are necessary to advance prosecution. In particular, the proposed rules require that any second or subsequent continuing application show to the satisfaction of the Director that the amendment, argument, or evidence could not have been submitted during the prosecution of the initial application or the first continuing application.

The Office is aware of case law which suggests that the Office has no authority to place an absolute limit on the number of copending continuing applications originating from an original application. *See In re Hogan*, 559 F.2d at 603–05, 194 USPQ at 565–66; and *Henriksen*, 399 F.2d at 262, 158 USPQ at 231. The Office does not attempt that here. No limit is placed on the number of continuing applications. Rather applicants are required to show that later-filed applications in a multiple-continuing chain are necessary to claim the invention—and do not contain unnecessarily delayed evidence, arguments, or amendments that could have been presented earlier. In addition, in those earlier cases the Office had not promulgated any rules, let alone given the public adequate notice of, or an opportunity to respond to, the *ad hoc* limits imposed. *See Henriksen*, at 399 F.2d at 261–62, 158 USPQ at 231 (characterizing the action of the Office as akin to a retroactive rule change that had no support in the rules of practice or *Manual of Patent Examining*

Procedure). Furthermore, the Court in Bogese II rejected the view that its previous case law (e.g., Henriksen) stood for the broad proposition that 35 U.S.C. 120 gave applicants carte blanche to prosecute continuing applications in any desired manner. See Bogese II, 303 F.3d at 1368 n.5, 64 USPQ2d at 1452 n.5.

35 U.S.C. 132(b) provides for the request for continued examination practice set forth in § 1.114. Unlike continuation application practice, the request for continued examination practice was recently added to title 35, U.S.C., in section 4403 of the American Inventors Protection Act of 1999. See Pub. L. 106–113, 113 Stat. 1501, 1501A–560 (1999). 35 U.S.C. 132(b) provides (inter alia) that the Office "shall prescribe regulations to provide for the continued examination of applications for patent at the request of the applicant." Nothing in 35 U.S.C. 132(b) or its legislative history suggests that the Office must or even should permit an applicant to file an unlimited number of requests for continued examination in an application. Therefore, the Office is proposing rules that allow applicants to file their first request for continued examination without any justification, but require applicants to justify the need for any further requests for continued examination in light of the past prosecution.

The Office appreciates that appropriate continued examination practice permits an applicant to obtain further examination and advance an application to a final action. The current unrestricted continued examination practice, however, does not provide adequate incentives to assure that the exchanges between an applicant and the examiner during the examination process are efficient. The marginal value vis-a-vis the patent examination process as a whole of exchanges between an applicant and the examiner during the examination process tends to decrease after the first continued examination filing. The Office resources absorbed by the examination of a second or subsequent continued examination filing are diverted away from the examination of new applications, thus increasing the backlog of unexamined applications. Therefore, the Office is proposing to require that an applicant filing a second or subsequent continuing application or second or subsequent request for continued examination include a showing as to why the amendment, argument, or evidence could not have been previously submitted.

The Office also appreciates that applicants sometimes use continued

examination practice to obtain further examination rather than file an appeal to avoid the delays that historically have been associated with the appeal process. The Office, however, has taken major steps to eliminate such delays. The Board of Patent Appeals and Interferences (BPAI) has radically reduced the inventory of pending appeals from 9,201 at the close of fiscal year 1997 to 882 at the close of fiscal year 2005. The Office has also adopted an appeal conference program to review the rejections in applications in which an appeal brief has been filed to ensure that an appeal will not be forwarded to the BPAI for decision absent the concurrence of experienced examiners. See Manual of Patent Examining Procedure section 1208 (8th ed. 2001) (Rev. 3, August 2005) (MPEP). The Office is also in the process of adopting a pre-brief appeal conference program to permit an applicant to request that a panel of examiners review the rejections in his or her application prior to the filing of an appeal brief. See New Pre-Appeal Brief Conference Program, 1296 Off. Gaz. Pat. Office 67 (July 12, 2005). These programs provide for a relatively expeditious review of rejections in an application under appeal. Thus, for an applicant faced with a rejection that he or she feels is improper from a seemingly stubborn examiner, the appeal process offers a more effective resolution than seeking further examination before the examiner.

Efficient examination also requires that applicants share some of the burden of examination when they file multiple applications containing "conflicting" or patentably indistinct claims. The rules of practice currently provide that "[w]here two or more applications filed by the same applicant contain conflicting claims, elimination of such claims from all but one application may be required in the absence of good and sufficient reason for their retention during pendency in more than one application." See current § 1.78(b). The Office is proposing to revise this rule so that, when an applicant (or assignee) files multiple applications with the same effective filing date, a common inventor and overlapping disclosures, the Office will presume that the applications contain patentably indistinct claims. In such a situation, the applicant must either rebut this presumption by explaining to the satisfaction of the Director how the applications contain only patentably distinct claims, or submit the appropriate terminal disclaimers and explain to the satisfaction of the Director why two or more pending

applications containing "conflicting" or patentably indistinct claims should be maintained. The effect of this proposed rule will be to share the burden of examining multiple applications, with overlapping disclosure, a common inventor, and the same filing date, for double patenting.

Double patenting exists because a party (or parties to a joint research agreement under the Cooperative Research and Technology Enhancement Act of 2004 (CREATE Act), Public Law 108–453, 118 Stat. 3596 (2004)) has filed multiple patent applications containing patentably indistinct claims. The applicant (or the owner of the application) is in a far better position than the Office to determine whether there are one or more other applications or patents containing patentably indistinct claims. For this reason, where an applicant chooses to file multiple applications that are substantially the same, it will be the applicant's responsibility to assist the Office in resolving potential double patenting situations rather than taking no action until faced with a double patenting rejection.

Finally, the Office has a first action final rejection practice under which the first Office action in a continuing application may be made final under certain circumstances. See MPEP § 706.07(b). If the changes proposed in this notice are adopted, the Office will discontinue this practice as no longer necessary in continuing applications under 35 U.S.C. 120, 121, or 365(c) and in requests for continued examination under 35 U.S.C. 132(b). The Office, however, does not plan any change to the final action practice for the Office action following a submission under § 1.129(a). See Changes to the Transitional Procedures for Limited Examination After Final Rejection in Certain Applications Filed Before June 8, 1995, 70 FR 24005 (May 6, 2005), 1295 Off. Gaz. Pat. Office 22 (Jun. 7, 2005).

**Discussion of Specific Rules**

Title 37 of the Code of Federal Regulations, Part 1, is proposed to be amended as follows:

Section 1.78: Section 1.78 is proposed to be reorganized as follows: (1) § 1.78(a) contains definitions of continuing application, continuation application, divisional application, and continuation-in-part application; (2) § 1.78(b) contains provisions relating to claims under 35 U.S.C. 119(e) for the benefit of a prior-filed provisional application; (3) § 1.78(c) contains provisions relating to delayed claims under 35 U.S.C. 119(e) for the benefit of

a prior-filed provisional application; (4) § 1.78(d) contains provisions relating to claims under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed nonprovisional or international application; (5) § 1.78(e) contains provisions relating to delayed claims under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed nonprovisional or international application; (6) § 1.78(f) contains provisions relating to applications naming at least one inventor in common and containing patentably indistinct claims; (7) § 1.78(g) contains provisions relating to applications or patents under reexamination naming different inventors and containing patentably indistinct claims; and (8) § 1.78(h) contains provisions pertaining to the treatment of parties to a joint research agreement under the CREATE Act.

Proposed 1.78(a)(1) defines a "continuing application" as a nonprovisional application or international application designating the United States of America that claims the benefit under 35 U.S.C. 120, 121, or 365(c) of a prior-filed nonprovisional application or international application designating the United States of America. Proposed 1.78(a)(1) further provides that an application that does not claim the benefit under 35 U.S.C. 120, 121, or 365(c) of a prior-filed application, is not a continuing application even if the application claims the benefit under 35 U.S.C. 119(e) of a provisional application, claims priority under 35 U.S.C. 119(a)–(d) or 365(b) to a foreign application, or claims priority under 35 U.S.C. 365(a) or (b) to an international application designating at least one country other than the United States of America. A continuing application must be one of a continuation application, a divisional application, or a continuation-in-part application. *See* MPEP § 201.11 ("To specify the relationship between the applications, applicant must specify whether the application is a continuation, divisional, or continuation-in-part of the prior application. Note that the terms are exclusive. An application cannot be, for example, both a continuation and a divisional or a continuation and a continuation-in-part of the same application.").

Proposed 1.78(a)(2) defines a "continuation application" as a continuing application as defined in § 1.78(a)(1) that discloses and claims only an invention or inventions that were disclosed in the prior-filed application. *See* MPEP § 201.07 (defines a continuation application as an application that discloses (or discloses

and claims) only subject matter that was disclosed in the prior-filed nonprovisional application).

Proposed § 1.78(a)(3) defines a "divisional application" as a continuing application as defined in § 1.78(a)(1) that discloses and claims only an invention or inventions that were disclosed and claimed in the prior-filed application, but were subject to a requirement of unity of invention under PCT Rule 13 or a requirement for restriction under 35 U.S.C. 121 and not elected for examination in the prior-filed application. MPEP § 201.06 defines a divisional application as an application for an independent and distinct invention, which discloses and claims only subject matter that was disclosed in the prior-filed nonprovisional application. Proposed § 1.78(a)(3), however, limits a the definition of "divisional application" to an application that claims only an invention or inventions that were subject to a requirement of unity of invention under PCT Rule 13 or a requirement for restriction under 35 U.S.C. 121 and not elected for examination in the prior-filed application. *See* 35 U.S.C. 121 ("[i]f two or more independent and distinct inventions are claimed in one application, the Director may require the application to be restricted to one of the inventions [and i]f the other invention is made the subject of a divisional application which complies with the requirements of [35 U.S.C.] 120 * * *").

Proposed § 1.78(a)(4) defines a "continuation-in-part application" as a continuing application as defined in § 1.78(a)(1) that discloses subject matter that was not disclosed in the prior-filed application. *See* MPEP § 201.08 (a continuation-in-part repeats some substantial portion or all of the earlier nonprovisional application and adds matter not disclosed in the prior-filed nonprovisional application).

Proposed § 1.78(b) contains provisions relating to claims under 35 U.S.C. 119(e) for the benefit of a prior-filed provisional application. 35 U.S.C. 119(e)(1) requires that a provisional application disclose the invention claimed in at least one claim of the later-filed application in the manner provided by 35 U.S.C. 112, ¶ 1, for the later-filed application to actually receive the benefit of the filing date of the provisional application. *See New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co.,* 298 F.3d 1290, 1294, 63 USPQ2d 1843, 1846 (Fed. Cir. 2002) (for a nonprovisional application to actually receive the benefit of the filing date of the provisional application, "the

specification of the provisional [application] must 'contain a written description of the invention and the manner and process of making and using it, in such full, clear, concise, and exact terms,' 35 U.S.C. 112 ¶ 1, to enable an ordinarily skilled artisan to practice the invention claimed in the nonprovisional application"). Proposed § 1.78(b), however, does not also state (as does current § 1.78(a)(4)) that the provisional application discloses the invention claimed in at least one claim of the later-filed application in the manner provided by 35 U.S.C. 112, ¶ 1, because: (1) It is not necessary for the rules of practice to restate provisions of statute; and (2) the Office does not require or check for such a disclosure as a condition of permitting an application to claim the benefit of the filing date of a provisional application.

Proposed § 1.78(b) also provides that the nonprovisional application or international application designating the United States of America must be filed not later than twelve months after the date on which the provisional application was filed (35 U.S.C. 119(e)), and that this twelve-month period is subject to 35 U.S.C. 21(b) and § 1.7(a) (proposed § 1.7(b)(1)). 35 U.S.C. 21(b) and § 1.7(a) provide that when the day, or the last day, for taking any action (e.g., filing a nonprovisional application within twelve months of the date on which the provisional application was filed) or paying any fee in the Office falls on Saturday, Sunday, or a Federal holiday within the District of Columbia, the action may be taken, or fee paid, on the next succeeding secular or business day. Proposed § 1.78(b) otherwise contains the provisions of current § 1.78(a)(4) and (a)(5) (with the changes in *Provisions for Claiming the Benefit of a Provisional Application with a Non-English Specification and Other Miscellaneous Matters,* 70 FR 56119 (Sept. 26, 2005), 1299 *Off. Gaz. Pat. Office* 142 (Oct. 25, 2005) (final rule)).

Proposed § 1.78(c) contains provisions relating to delayed claims under 35 U.S.C. 119(e) for the benefit of a prior-filed provisional application. Proposed § 1.78(c) contains the provisions of current § 1.78(a)(6).

Proposed § 1.78(d) contains provisions relating to claims under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed nonprovisional or international application.

Proposed § 1.78(d)(1) provides certain conditions under which an application may claim the benefit of a prior-filed nonprovisional application or international application designating the United States of America under 35 U.S.C. 120, 121, or 365(c) and § 1.78.

The Office will refuse to enter, or will delete if already present, any specific reference to a prior-filed application that is not permitted by § 1.78(d)(1) (*i.e.*, any claim for the benefit of a prior-filed nonprovisional application or international application designating the United States of America that does not meet one of the conditions specified in §§ 1.78(d)(1)(i) through 1.78(d)(1)(iii) and in which a petition under § 1.78(d)(1)(iv) either has not been filed or is not granted). If the claim for the benefit of a prior-filed nonprovisional application or international application designating the United States of America is not permitted by § 1.78(d)(1), the Office will refuse any benefit under 35 U.S.C. 120, 121, or 365(c) and § 1.78 of the prior-filed nonprovisional application or international application designating the United States of America during proceedings before the Office.

Proposed § 1.78(d)(1) provides that a nonprovisional application that is a continuation application as defined in § 1.78(a)(2) or a continuation-in-part application as defined in § 1.78(a)(4) may claim the benefit under 35 U.S.C. 120, 121, or 365(c)) of only a single prior-filed application, if the benefit of such prior-filed application is not claimed in any other nonprovisional application other than a divisional application in compliance with § 1.78(d)(1)(ii), and no request for continued examination under § 1.114 has been filed in the prior-filed application (proposed § 1.78(d)(1)(i)). This provision will permit an applicant to continue prosecution of an application (other than a continuing application) via a continuation or continuation-in-part application as an alternative to a request for continued examination under § 1.114 (in the event that the prior-filed application is a design application, the applicant needs to add or claim subject matter not disclosed in the prior-filed application, or the applicant has other reasons for preferring a continuation or continuation-in-part application over a request for continued examination under § 1.114).

Proposed § 1.78(d)(1)(i) will also permit an applicant to continue prosecution of claims in a continuation-in-part application (via a "further" continuation or continuation-in-part application) that are directed solely to subject matter added in a "first" continuation-in-part application (provided that the "further" continuation or continuation-in-part application does not also claim the benefit of the prior-filed application relative to the "first" continuation-in-

part application). At least one claim of a later-filed application must be disclosed in the prior-filed application in the manner provided by 35 U.S.C. 112, ¶ 1, for the later-filed application to actually receive the benefit of the filing date of the prior-filed application (35 U.S.C. 120), and the term of any resulting patent will be measured under 35 U.S.C. 154(a)(2) from the filing date of the prior-filed application, even if the later-filed application never receives any benefit from the prior-filed application. *See Abbott Lab.* v. *Novopharm Ltd.,* 104 F.3d 1305, 1309, 41 USPQ2d 1535, 1537 (Fed. Cir. 1997). Thus, the Office is not proposing to require that such "further" continuation or continuation-in-part application contain a showing that all of the claims are directed solely to subject matter added in the "first" continuation-in-part application. Rather, proposed § 1.78(d)(1)(i) permits the "further" continuation or continuation-in-part application to claim the benefit of the first continuation-in-part application, but does not permit the "further" continuation or continuation-in-part application to also claim the benefit of the prior-filed initial application (the prior-filed application relative to the first continuation-in-part application). For example, consider an applicant who files: (1) An initial application, "A": (2) a continuation-in-part application, "B," claiming the benefit of application A; and (3) a "further" continuation or continuation-in-part application "C," claiming the benefit of application B. Under proposed 1.78(d)(i), application C could not claim any benefit from application A (except as permitted under proposed § 1.78(d)(1)(iv)).

Proposed § 1.78(d)(1)(i) will also permit an applicant whose application (other than a continuing application) contains rejected claims and allowed claims to obtain a patent on the allowed claims and continue prosecution of the rejected or other claims in a continuation or continuation-in-part application.

Proposed § 1.78(d)(1) also provides that a nonprovisional application that is a divisional application as defined in § 1.78(a)(3) may claim the benefit under 35 U.S.C. 120, 121, or 365(c)) of only a single prior-filed application, if the prior-filed application was subject to a requirement of unity of invention under PCT Rule 13 or a requirement for restriction under 35 U.S.C. 121, and the divisional application contains only claims directed to an invention or inventions that were identified in such requirement of unity of invention or for restriction but were not elected for examination in the prior-filed

application (proposed § 1.78(d)(1)(ii)). This will permit an applicant to obtain examination of claims that were withdrawn from consideration in the prior-filed application due to a requirement of unity of invention under PCT Rule 13 or a requirement for restriction under 35 U.S.C. 121. Proposed § 1.78(d)(1)(ii) permits "involuntary" divisional applications (a continuing application filed as a result of a requirement of unity of invention under PCT Rule 13 or requirement for restriction under 35 U.S.C. 121 in the prior-filed application), but does not permit "voluntary divisional" applications (a continuing application not filed as a result of a requirement of unity of invention under PCT Rule 13 or requirement for restriction under 35 U.S.C. 121 in the prior-filed application).

Proposed § 1.78(d)(1) also provides that a nonprovisional application that is either a continuation application as defined in § 1.78(a)(2) or a continuation-in-part application as defined in § 1.78(a)(4) may claim the benefit under 35 U.S.C. 120, 121, or 365(c)) of only either a single divisional application in compliance with § 1.78(d)(1)(ii) and the prior-filed application whose benefit is claimed in such single divisional application, if no request for continued examination under § 1.114 has been filed in the prior-filed divisional application (proposed § 1.78(d)(1)(iii)). This provision will permit an applicant to continue prosecution of a divisional application via a single continuation application or continuation-in-part application as an alternative to a request for continued examination under § 1.114. Proposed § 1.78(d)(1)(iii), however, would not allow an applicant to file more than a single continuation application or continuation-in-part application of a divisional application as of right. Proposed § 1.78(d)(1)(iii) will also permit an applicant whose divisional application contains rejected claims and allowed claims to obtain a patent on the allowed claims, and continue prosecution of the rejected or other claims in a single continuation or continuation-in-part application.

Proposed § 1.78(d)(1) also provides that a continuing nonprovisional application that is filed to obtain consideration of an amendment, argument, or evidence that could not have been submitted during the prosecution of the prior-filed application may claim the benefit under 35 U.S.C. 120, 121, or 365(c) of such prior-filed application (proposed § 1.78(d)(1)(iv)). Proposed § 1.78(d)(1)(iv) specifically provides that such a continuing nonprovisional

application must have filed therein a petition accompanied by the fee set forth in § 1.17(f) and a showing to the satisfaction of the Director that the amendment, argument, or evidence could not have been submitted during the prosecution of the prior-filed application. This will permit an applicant to continue prosecution of an application via a continuing application to obtain consideration of an amendment, argument, or evidence that could not have been submitted during the prosecution of the prior-filed application. Applicants are permitted to submit any desired amendment, argument, or evidence after the first Office action in the prior-filed application, and are further permitted to file either a single continuation or continuation-in-part application (proposed §§ 1.78(d)(1)(i) and 1.78(d)(1)(iii)) or a single request for continued examination under § 1.114 to submit any desired amendment, argument, or evidence before or after the first Office action in the continuation or continuation-in-part application or request for continued examination under § 1.114. Since multiple opportunities are given to submit any desired amendment, argument, or evidence, that an amendment, argument, or evidence is refused entry because prosecution in the prior-filed application is again closed (after the filing of a continuation or continuation-in-part application (proposed §§ 1.78(d)(1)(i) and 1.78(d)(1)(iii)) or a request for continued examination under § 1.114) will not by itself be a sufficient reason to warrant the grant of a petition under § 1.78(d)(1)(iv). Rather, an applicant will be expected to demonstrate why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the prior-filed application. Proposed § 1.78(d)(1)(iv) also sets forth the time period within which such a petition must be provided: (1) If the later-filed continuing application is an application filed under 35 U.S.C. 111(a), within four months from the actual filing date of the later-filed application; and (2) if the later-filed continuing application is a nonprovisional application which entered the national stage from an international application after compliance with 35 U.S.C. 371, within four months from the date on which the national stage commenced under 35 U.S.C. 371(b) or (f) in the later-filed international application.

Proposed § 1.78(d) also provides that the Office will refuse to enter, or will delete if present, any specific reference

to a prior-filed application that is not permitted by § 1.78(d) (proposed § 1.78(d)(3)). If the claim for the benefit of a prior-filed nonprovisional application or international application designating the United States of America is not permitted by § 1.78(d)(1), the Office will refuse any benefit under 35 U.S.C. 120, 121, or 365(c) and § 1.78 of the prior-filed nonprovisional application or international application designating the United States of America during proceedings before the Office. Proposed § 1.78(d) also provides that the entry of or failure to delete a specific reference to a prior-filed application that is not permitted by § 1.78(d)(1) does not constitute a waiver of the provisions of § 1.78(d)(1). The grant of a petition under § 1.78(d)(1)(iv) or waiver of a requirement of § 1.78(d)(1) would be only by an explicit decision by the Office, and would not occur by implication due to the entry of or failure to delete a specific reference to a prior-filed application that is not permitted by § 1.78(d)(1).

Proposed § 1.78(d)(3) also includes the parenthetical "(i.e., whether the later-filed application is a continuation, divisional, or continuation-in-part of the prior-filed nonprovisional application or international application)" to clarify in the rules of practice what is meant by the requirement that an applicant identify (currently stated as indicate) the relationship of the applications. See MPEP § 201.11. Proposed § 1.78(d)(3) also provides that if an application is identified as a continuation-in-part application, the applicant must identify which claim or claims in the continuation-in-part application are disclosed in the manner provided by 35 U.S.C. 112, ¶ 1, in the prior-filed application. Any claim in the continuation-in-part application that is not identified as being disclosed in the manner provided by 35 U.S.C. 112, ¶ 1, in the prior-filed application will be treated as entitled only to the filing date of the continuation-in-part application.

Proposed § 1.78(d) also does not contain the provision that the prior-filed application disclose the invention claimed in at least one claim of the later-filed application in the manner provided by 35 U.S.C. 112, ¶ 1. It is necessary for the prior-filed application to disclose the invention claimed in at least one claim of the later-filed application in the manner provided by 35 U.S.C. 112, ¶ 1, for the later-filed application to actually receive the benefit of the filing date of the prior-filed application (35 U.S.C. 120), but the Office does not require such a disclosure as a condition of permitting

an application to claim the benefit of the filing date of a prior-filed application. See MPEP § 201.08 ("Unless the filing date of the earlier nonprovisional application is actually needed * * *, there is no need for the Office to make a determination as to whether the requirement of 35 U.S.C. 120, that the earlier nonprovisional application discloses the invention of the second application in the manner provided by 35 U.S.C. 112, ¶ 1, is met and whether a substantial portion of all of the earlier nonprovisional application is repeated in the second application in a continuation-in-part situation. Accordingly, an alleged continuation-in-part application should be permitted to claim the benefit of the filing date of an earlier nonprovisional application if the alleged continuation-in-part application complies with the * * * formal requirements of 35 U.S.C. 120.").

Proposed § 1.78(d) also provides that cross-references to applications for which a benefit is not claimed under title 35, United States Code, must be located in a separate paragraph from the references required by 35 U.S.C. 119(e) or 120 and § 1.78 to applications for which a benefit is claimed under 35 U.S.C. 119(e), 120, 121, or 365(c) (proposed § 1.78(d)(6)).

Proposed § 1.78(d) otherwise contains the provisions of current § 1.78(a)(1) and (a)(2).

Proposed § 1.78(e) contains provisions relating to delayed claims under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed nonprovisional or international application. Proposed § 1.78(e) provides that a petition to accept an unintentionally delayed claim under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed application will not be granted in an application in which a request for continued examination under § 1.114 has been filed. Proposed § 1.114(f) does not permit a request for continued examination in a continuing application (other than a divisional application in compliance with § 1.78(d)(1)(ii)), without a petition showing to the satisfaction of the Director that the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the application. Thus, proposed § 1.78(e) provides that an applicant may not add a delayed claim under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed application in an application in which a request for continued examination under § 1.114 has been filed. Proposed § 1.78(e) otherwise contains the provisions of current § 1.78(a)(3).

**Federal Register** / Vol. 71, No. 1 / Tuesday, January 3, 2006 / Proposed Rules    **55**

Proposed § 1.78(f) contains provisions relating to applications naming at least one inventor in common and containing patentably indistinct claims. Proposed § 1.78(f)(1) provides that if a nonprovisional application has a filing date that is the same as or within two months of the filing date of one or more other pending nonprovisional applications or patents, taking into account any filing date for which a benefit is sought under title 35, United States Code, names at least one inventor in common with the one or more other pending nonprovisional applications or patents, and is owned by the same person, or subject to an obligation of assignment to the same person, as the one or more other pending nonprovisional applications or patents, the applicant must identify each such other application or patent by application number (i.e., series code and serial number) and patent number (if applicable). This identification requirement would also apply to each identified application, because if the identifying application has a filing date that is the same as or within two months of the filing date of the identified application, the identified application has a filing date that is the same as or within two months of the filing date of the identifying application. The application or patent may be identified in the specification in the paragraph containing cross-references to applications for which a benefit is not claimed under title 35, United States Code (proposed § 1.78(d)(6)), or may be identified in a separate paper. Proposed § 1.78(f)(1) also provides that the identification of one or more other nonprovisional applications under this paragraph must be within four months from the actual filing date of a nonprovisional application filed under 35 U.S.C. 111(a), or within four months from the date on which the national stage commenced under 35 U.S.C. 371(b) or (f) in a nonprovisional application which entered the national stage from an international application after compliance with 35 U.S.C. 371.

Proposed § 1.78(f)(2) provides that if the circumstances set forth in proposed § 1.78(f)(1) exist and the nonprovisional application has the same filing date as the one or more other pending nonprovisional applications or patents, taking into account any filing date for which a benefit is sought under title 35, United States Code, and contains substantial overlapping disclosure as the one or more other pending nonprovisional applications or patents, a rebuttable presumption shall exist that the nonprovisional application contains

at least one claim that is not patentably distinct from at least one of the claims in the one or more other pending or patented nonprovisional applications. Proposed § 1.78(f)(2) also provides that in such a situation, the applicant in the nonprovisional application must either: (1) rebut this presumption by explaining to the satisfaction of the Director how the application contains only claims that are patentably distinct from the claims in each of such other pending applications or patents; or (2) submit a terminal disclaimer in accordance with § 1.321(c). In addition, proposed § 1.78(f)(2) provides that where one or more other pending nonprovisional applications containing patentably indistinct claims have been identified, the applicant must explain to the satisfaction of the Director why it is necessary that there are two or more pending nonprovisional applications naming at least one inventor in common and owned by the same person, or subject to an obligation of assignment to the same person, which contain patentably indistinct claims.

As discussed previously, where an applicant chooses to file multiple applications that are substantially the same it will be the applicant's responsibility to assist the Office in resolving potential double patenting situations rather than taking no action until faced with a double patenting rejection. Thus, if an Office action must include a double patenting rejection, it is because the applicant has not yet met his or her responsibility to resolve the double patenting situation by filing the appropriate terminal disclaimer. Therefore, the inclusion of a new double patenting rejection in a second or subsequent Office action will not preclude the Office action from being made final (assuming that the conditions in MPEP § 706.07(a) are otherwise met).

Proposed § 1.78(f)(3) provides that in the absence of good and sufficient reason for there being two or more pending nonprovisional applications naming at least one inventor in common and owned by the same person, or subject to an obligation of assignment to the same person, which contain patentably indistinct claims, the Office may require elimination of the patentably indistinct claims from all but one of the applications. The Office expects to apply this provision primarily in situations covered by proposed § 1.78(f)(2)(ii), under which applicants must explain to the satisfaction of the Director why it is necessary that there are two or more pending nonprovisional applications naming at least one inventor in common

and owned by the same person, or subject to an obligation of assignment to the same person, which contain patentably indistinct claims. The Office, however, may require that an applicant provide good and sufficient reason whenever there are two or more pending nonprovisional applications naming at least one inventor in common and owned by the same person, or subject to an obligation of assignment to the same person, which contain patentably indistinct claims (i.e., in situations other than those covered by § 1.78(f)(2) or even § 1.78(f)(1)).

Proposed § 1.78(g) contains provisions relating to applications or patents under reexamination naming different inventors and containing patentably indistinct claims. Proposed § 1.78(g) contains the provisions of current § 1.78(c), except that "conflicting claims" is proposed to be changed to "patentably indistinct claims" for clarity and for consistency with the language of proposed § 1.78(f).

Proposed § 1.78(h) covers the situation in which parties to a joint research agreement are treated (in essence) as a common owner for purposes of 35 U.S.C. 103 by virtue of the CREATE Act. Proposed § 1.78(h) provides that if an application discloses or is amended to disclose the names of parties to a joint research agreement (35 U.S.C. 103(c)(2)(C)), the parties to the joint research agreement are considered to be the same person for purposes of § 1.78. The CREATE Act amended 35 U.S.C. 103(c) to provide that subject matter developed by another person shall be treated as owned by the same person or subject to an obligation of assignment to the same person for purposes of determining obviousness if three conditions are met: (1) The claimed invention was made by or on behalf of parties to a joint research agreement that was in effect on or before the date the claimed invention was made; (2) the claimed invention was made as a result of activities undertaken within the scope of the joint research agreement; and (3) the application for patent for the claimed invention discloses or is amended to disclose the names of the parties to the joint research agreement. See Changes to Implement the Cooperative Research and Technology Enhancement Act of 2004, 70 FR 1818, 1818 (Jan. 11, 2005), 1291 Off. Gaz. Pat. Office 58, 58–59 (Feb. 8, 2005). Proposed § 1.78(h) also provides that if the application is amended to disclose the names of parties to a joint research agreement under 35 U.S.C. 103(c)(2)(C), the identification of such one or more other nonprovisional applications as required by § 1.78(f)(1)

must be submitted with the amendment under 35 U.S.C. 103(c)(2)(C) unless such identification is or has been submitted within the four-month period specified in § 1.78(f)(1).

The proposed changes to § 1.78 (if adopted) would be applicable to any application filed on or after the effective date of the final rule. Thus, any application filed on or after the effective date of the final rule seeking to claim the benefit of more than a single prior-filed nonprovisional application or international application under 35 U.S.C. 120, 121, 365(c) and § 1.78 would need to either meet the requirements specified in proposed § 1.78(d)(1)(iii) or include a petition under proposed § 1.78(d)(1)(iv). That is, an applicant may only file one continuation or continuation-in-part application (and not "one more" continuation or continuation-in-part application) after the effective date of the final rule without meeting the requirements specified in proposed § 1.78(d)(1)(iii) or including a petition under proposed § 1.78(d)(1)(iv).

*Conforming changes:* The proposed reorganization and revision of § 1.78 would also require conforming changes to §§ 1.17, 1.52, 1.53, 1.76, and 1.110.

*Section 1.114:* Proposed § 1.114(a) adds the phrase "subject to the conditions of this section" to make clear that an applicant may not file an unrestricted number of requests for continued examination. Proposed § 1.114(a) otherwise contains the provisions of current § 1.114(a).

Proposed § 1.114(f) provides that an applicant may not file more than a single request for continued examination under § 1.114 in any application, and that an applicant may not file a request for continued examination under § 1.114 in any continuing application (§ 1.78(a)(1)) other than a divisional application in compliance with § 1.78(d)(1)(ii), unless the request for continued examination also includes a petition accompanied by the fee set forth in § 1.17(f) and a showing to the satisfaction of the Director that the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the application. Thus, an applicant may file a single request for continued examination in a non-continuing application, or in a divisional application in compliance with § 1.78(d)(1)(ii), without a showing to the satisfaction of the Director that the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the application. Otherwise, a request for continued examination must be

accompanied by a petition accompanied by the fee set forth in § 1.17(f) and a showing to the satisfaction of the Director that the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the application. Since multiple opportunities are given to submit any desired amendment, argument, or evidence, that an amendment, argument, or evidence is refused entry because prosecution in the application is again closed (after the filing of a continuation or continuation-in-part application (§§ 1.78(d)(1)(i) and 1.78(d)(1)(iii)) or a request for continued examination under § 1.114) will not by itself be a sufficient reason to warrant the grant of a petition under § 1.114(f). Rather, an applicant will be expected to demonstrate why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the application.

Proposed § 1.114(f) further provides that any other proffer of a request for continued examination in an application not on appeal will be treated as a submission under § 1.116, and that any other proffer of a request for continued examination in an application on appeal will be treated only as a request to withdraw the appeal. Thus, a second or subsequent request for continued examination that does not include the required petition will not have the same effect as a first request for continued examination.

The proposed changes to § 1.114 (if adopted) would be applicable to any application in which a request for continued examination is filed on or after the effective date of the final rule. Thus, any request for continued examination filed on or after the effective date of the final rule in an application in which a request for continued examination has previously been filed must include a petition under proposed § 1.114(f). That is, an applicant may only file one request for continued examination (and not "one more" request for continued examination) after the effective date of the final rule without a petition under proposed § 1.114(f).

*Section 1.495:* Proposed § 1.495(g) provides that if the documents and fees contain conflicting indications as between an application under 35 U.S.C. 111 and a submission to enter the national stage under 35 U.S.C. 371, the documents and fees will be treated as a submission to enter the national stage under 35 U.S.C. 371. It is Office experience that, in the majority of cases, documents and fees that contain conflicting indications as between an application under 35 U.S.C. 111 and a

submission to enter the national stage under 35 U.S.C. 371 were intended as a submission under 35 U.S.C. 371. In addition, the changes to § 1.78 (if adopted) would render the option of filing of a "bypass" continuation application under 35 U.S.C. 111(a) less preferable to simply entering the national stage under 35 U.S.C. 371 in an international application. A "bypass" continuation application is an application for patent filed under 35 U.S.C. 111(a) that claims the benefit of the filing date of an earlier international application that did not enter the national stage under 35 U.S.C. 371.

## Rule Making Considerations

*Regulatory Flexibility Act:* For the reasons set forth herein, the Deputy General Counsel for General Law of the United States Patent and Trademark Office has certified to the Chief Counsel for Advocacy of the Small Business Administration that the changes proposed in this notice will not have a significant economic impact on a substantial number of small entities. *See* 5 U.S.C. 605(b).

In Fiscal Year 2005, the Office received approximately 317,000 nonprovisional applications. Of those, about 62,870 (about 19,700 small entity) were continuing applications. In addition, the Office received about 52,750 (about 8,970 small entity) requests for continued examination. This notice proposes to require that: (1) Any second or subsequent continuation or continuation-in-part application and any second or subsequent request for continued examination include a showing to the satisfaction of the Director as to why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution after a single continuation or continuation-in-part application or request for continued examination; and (2) multiple applications that have the same effective filing date, overlapping disclosure, a common inventor, and a common assignee include either an explanation to the satisfaction of the Director of how the claims are patentably distinct, or a terminal disclaimer and explanation to the satisfaction of the Director of why patentably indistinct claims have been filed in multiple applications.

*Continuing Applications:* This notice proposes to require that any second or subsequent continuation or continuation-in-part application include a petition (with a $400.00 petition fee) with a showing to the satisfaction of the Director as to why the amendment, argument, or evidence could not have been submitted prior to the close of

prosecution in the prior-filed application.

This proposed rule change will not affect a substantial number of small entities. Of the 62,870 continuing applications filed in fiscal year 2005, about 44,500 (about 15,665 small entity) were designated as continuation or continuation-in-part applications, and about 11,790 (about 4,470 small entity) of these applications were a second or subsequent continuation or continuation-in-part application. Therefore, the proposed petition fee and showing requirement would impact relatively few applications (about 3.7 percent or 11,790 out of 317,000) and relatively few small entity applications (about 4.8 percent or 4,470 out of 93,000). It is also noted that this proposed rule change would not disproportionately impact small entity applicants. The primary impact of this change would be to require applicants to make a *bona fide* attempt to advance the application to final agency action by submitting any desired amendment, argument, or evidence prior to the close of prosecution after a single continuation or continuation-in-part application or single request for continued examination (except as permitted by § 1.116 or § 41.33).

The notice does not propose any petition fee or showing requirement for a divisional application, but only requires that a divisional application be the result of a requirement of unity of invention under PCT Rule 13 or a requirement for restriction under 35 U.S.C. 121 in the prior-filed application. Thus, an applicant may obtain examination of claims to an invention in the prior-filed application because the Office did not impose a requirement of unity of invention under PCT Rule 13 or a requirement for restriction under 35 U.S.C. 121 in the prior-filed application, or the applicant may obtain examination of claims to an invention in a divisional application because the Office did impose a requirement of unity of invention under PCT Rule 13 or a requirement for restriction under 35 U.S.C. 121 in the prior-filed application. Of the 62,870 continuing applications filed in fiscal year 2005, about 18,370 (about 4,000 small entity) were designated as divisional applications.

*Requests for Continued Examination:* This notice proposes to require that any second or subsequent request for continued examination include a petition (with a $400.00 petition fee) with a showing to the satisfaction of the Director as to why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution.

This proposed rule change will not affect a substantial number of small entities. Of the 52,750 requests for continued examination filed in fiscal year 2005, about 9,925 (about 1,796 small entity) were a second or subsequent request for continued examination. Therefore, the proposed petition fee and showing requirement would impact relatively few applicants (about 3.1 percent or 9,925 out of 317,000) and relatively few small entity applicants (about 1.9 percent or 1,796 out of 93,000). It is also noted that this proposed change would not disproportionately impact small entity applicants. The primary impact of this change would be to require applicants to make a *bona fide* attempt to advance the application to final agency action by submitting any desired amendment, argument, or evidence prior to the close of prosecution after a single continuation application or single request for continued examination (except as permitted by § 1.116 or § 41.33).

*Patentably Indistinct Claims:* Finally, this notice proposes that applicants (or assignees) who file multiple applications having the same effective filing date, overlapping disclosure, and a common inventor include either an explanation of how the claims are patentably distinct, or a terminal disclaimer and explanation of why there are patentably indistinct claims in multiple applications. An applicant who files multiple applications containing patentably indistinct claims must in any case submit the appropriate terminal disclaimers to avoid double patenting. *See In re Berg,* 140 F.3d 1428, 1434, 46 USPQ2d 1226, 1231 (Fed. Cir. 1998) (applicants who may file all of their claims in a single application, but instead chose to file such claims in multiple applications, are not entitled to two-way double patenting test).

This proposed rule change does not affect a substantial number of small entities. The Office received about 17,600 (about 3,850 small entity) terminal disclaimers in fiscal year 2004. Based upon the Office's experience with double patenting situations, most of these double patenting situations involved an application and a patent (rather than two applications) containing patentably indistinct claims. In addition, § 1.78(b) currently provides where two or more applications filed by the same applicant contain conflicting (*i.e.*, patentably indistinct) claims, elimination of such claims from all but one application may be required in the absence of good and sufficient reason for their retention during pendency in more than one application). Therefore,

the requirement for an explanation up front as to why there are two or more pending applications by the same applicant (or assignee) containing patentably indistinct claims when that is the case would impact relatively few applicants (about 5.7 percent or 17,600 out of 310,000) and relatively few small entity applicants (about 4.1 percent or 3,850 out of 93,000). It is also noted that this proposed change would not disproportionately impact small entity applicants. Moreover, there are no fees associated with this proposed rule change.

*Executive Order 13132:* This rule making does not contain policies with federalism implications sufficient to warrant preparation of a Federalism Assessment under Executive Order 13132 (Aug. 4, 1999).

*Executive Order 12866:* This rule making has been determined to be significant for purposes of Executive Order 12866 (Sept. 30, 1993).

*Paperwork Reduction Act:* This notice involves information collection requirements which are subject to review by the Office of Management and Budget (OMB) under the Paperwork Reduction Act of 1995 (44 U.S.C. 3501 *et seq.*). The collection of information involved in this notice has been reviewed and previously approved by OMB under OMB control number 0651–0031. This notice proposes to require that: (1) Any second or subsequent continuation or continuation-in-part application and any second or subsequent request for continued examination include a showing to the satisfaction of the Director as to why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution after a single continuation application or request for continued examination; and (2) multiple applications that have the same effective filing date, overlapping disclosure, a common inventor, and a common assignee include either an explanation to the satisfaction of the Director of how the claims are patentably distinct, or a terminal disclaimer and explanation to the satisfaction of the Director of why patentably indistinct claims have been filed in multiple applications. The United States Patent and Trademark Office is resubmitting an information collection package to OMB for its review and approval because the changes in this notice do affect the information collection requirements associated with the information collection under OMB control number 0651–0031.

The title, description and respondent description of the information collection under OMB control number 0651–0031 is shown below with an estimate of the

annual reporting burdens. Included in the estimate is the time for reviewing instructions, gathering and maintaining the data needed, and completing and reviewing the collection of information.

The title, description and respondent description of the information collection under OMB control number 0651–0031 is shown below with an estimate of the annual reporting burdens. Included in the estimate is the time for reviewing instructions, gathering and maintaining the data needed, and completing and reviewing the collection of information.

*OMB Number:* 0651–0031.

*Title:* Patent Processing (Updating).

*Form Numbers:* PTO/SB/08, PTO/SB/17i, PTO/SB/17p, PTO/SB/21–27, PTO/SB/24B, PTO/SB/30–32, PTO/SB/35–39, PTO/SB/42–43, PTO/SB/61–64, PTO/SB/64a, PTO/SB/67–68, PTO/SB/91–92, PTO/SB/96–97, PTO–2053–A/B, PTO–2054–A/B, PTO–2055–A/B, PTOL–413A.

*Type of Review:* Approved through July of 2006.

*Affected Public:* Individuals or households, business or other for-profit institutions, not-for-profit institutions, farms, Federal Government and State, Local and Tribal Governments.

*Estimated Number of Respondents:* 2,284,439.

*Estimated Time per Response:* 1 minute and 48 seconds to 12 hours.

*Estimated Total Annual Burden Hours:* 2,732,441 hours.

*Needs and Uses:* During the processing of an application for a patent, the applicant or applicant's representative may be required or desire to submit additional information to the United States Patent and Trademark Office concerning the examination of a specific application. The specific information required or which may be submitted includes: Information disclosure statement and citation, examination support documents, requests for extensions of time, the establishment of small entity status, abandonment and revival of abandoned applications, disclaimers, appeals, petitions, expedited examination of design applications, transmittal forms, requests to inspect, copy and access patent applications, publication requests, and certificates of mailing, transmittals, and submission of priority documents and amendments.

*Comments are invited on:* (1) Whether the collection of information is necessary for proper performance of the functions of the agency; (2) the accuracy of the agency's estimate of the burden; (3) ways to enhance the quality, utility, and clarity of the information to be collected; and (4) ways to minimize the

burden of the collection of information to respondents.

Interested persons are requested to send comments regarding these information collections, including suggestions for reducing this burden, to: (1) The Office of Information and Regulatory Affairs, Office of Management and Budget, New Executive Office Building, Room 10202, 725 17th Street, NW., Washington, DC 20503, Attention: Desk Officer for the Patent and Trademark Office; and (2) Robert J. Spar, Director, Office of Patent Legal Administration, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313–1450.

Notwithstanding any other provision of law, no person is required to respond to nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a currently valid OMB control number.

## List of Subjects in 37 CFR Part 1

Administrative practice and procedure, Courts, Freedom of information, Inventions and patents, Reporting and recordkeeping requirements, Small businesses.

For the reasons set forth in the preamble, 37 CFR part 1 is proposed to be amended as follows:

## PART 1—RULES OF PRACTICE IN PATENT CASES

1. The authority citation for 37 CFR part 1 continues to read as follows:

**Authority:** 35 U.S.C. 2(b)(2).

2. Section 1.78 is revised to read as follows:

### § 1.78  Claiming benefit of earlier filing date and cross-references to other applications.

(a) *Definitions.* (1) *Continuing application.* A continuing application is a nonprovisional application or an international application designating the United States of America that claims the benefit under 35 U.S.C. 120, 121, or 365(c) of a prior-filed nonprovisional application or international application designating the United States of America. An application that does not claim the benefit under 35 U.S.C. 120, 121, or 365(c) of a prior-filed application, is not a continuing application even if the application claims the benefit under 35 U.S.C. 119(e) of a provisional application, claims priority under 35 U.S.C. 119(a)–(d) or 365(b) to a foreign application, or claims priority under 35 U.S.C. 365(a) or (b) to an international application

designating at least one country other than the United States of America.

(2) *Continuation application.* A continuation application is a continuing application as defined in paragraph (a)(1) of this section that discloses and claims only an invention or inventions that were disclosed in the prior-filed application.

(3) *Divisional application.* A divisional application is a continuing application as defined in paragraph (a)(1) of this section that discloses and claims only an invention or inventions that were disclosed and claimed in the prior-filed application, but were subject to a requirement of unity of invention under PCT Rule 13 or a requirement for restriction under 35 U.S.C. 121 and not elected for examination in the prior-filed application.

(4) *Continuation-in-part application.* A continuation-in-part application is a continuing application as defined in paragraph (a)(1) of this section that discloses subject matter that was not disclosed in the prior-filed application.

(b) *Claims under 35 U.S.C. 119(e) for the benefit of a prior-filed provisional application.* A nonprovisional application, other than for a design patent, or an international application designating the United States of America may claim the benefit of one or more prior-filed provisional applications under the conditions set forth in 35 U.S.C. 119(e) and this paragraph.

(1) The nonprovisional application or international application designating the United States of America must be filed not later than twelve months after the date on which the provisional application was filed. This twelve-month period is subject to 35 U.S.C. 21(b) and § 1.7(a).

(2) Each prior-filed provisional application must name as an inventor at least one inventor named in the later-filed application, must be entitled to a filing date as set forth in § 1.53(c), and the basic filing fee set forth in § 1.16(d) must be paid within the time period set forth in § 1.53(g).

(3) Any nonprovisional application or international application designating the United States of America claiming the benefit of one or more prior-filed provisional applications must contain or be amended to contain a reference to each such prior-filed provisional application, identifying it by the provisional application number (consisting of series code and serial number). If the later-filed application is a nonprovisional application, the reference required by this paragraph must be included in an application data sheet (§ 1.76), or the specification must

contain or be amended to contain such reference in the first sentence(s) following the title.

(4) The reference required by paragraph (b)(3) of this section must be submitted during the pendency of the later-filed application. If the later-filed application is an application filed under 35 U.S.C. 111(a), this reference must also be submitted within the later of four months from the actual filing date of the later-filed application or sixteen months from the filing date of the prior-filed provisional application. If the later-filed application is a nonprovisional application which entered the national stage from an international application after compliance with 35 U.S.C. 371, this reference must also be submitted within the later of four months from the date on which the national stage commenced under 35 U.S.C. 371(b) or (f) in the later-filed international application or sixteen months from the filing date of the prior-filed provisional application. These time periods are not extendable. Except as provided in paragraph (c) of this section, the failure to timely submit the reference is considered a waiver of any benefit under 35 U.S.C. 119(e) of such prior-filed provisional application. The time periods in this paragraph do not apply if the later-filed application is:

(i) An application filed under 35 U.S.C. 111(a) before November 29, 2000; or

(ii) An international application filed under 35 U.S.C. 363 before November 29, 2000.

(5) If the prior-filed provisional application was filed in a language other than English and both an English-language translation of the prior-filed provisional application and a statement that the translation is accurate were not previously filed in the prior-filed provisional application, applicant will be notified and given a period of time within which to file, in the prior-filed provisional application, the translation and the statement. If the notice is mailed in a pending nonprovisional application, a timely reply to such a notice must include the filing in the nonprovisional application of either a confirmation that the translation and statement were filed in the provisional application, or an amendment or Supplemental Application Data Sheet withdrawing the benefit claim, or the nonprovisional application will be abandoned. The translation and statement may be filed in the provisional application, even if the provisional application has become abandoned.

(c) *Delayed claims under 35 U.S.C. 119(e) for the benefit of a prior-filed provisional application.* If the reference required by 35 U.S.C. 119(e) and paragraph (b)(3) of this section is presented in a nonprovisional application after the time period provided by paragraph (b)(4) of this section, the claim under 35 U.S.C. 119(e) for the benefit of a prior-filed provisional application may be accepted if submitted during the pendency of the later-filed application and if the reference identifying the prior-filed application by provisional application number was unintentionally delayed. A petition to accept an unintentionally delayed claim under 35 U.S.C. 119(e) for the benefit of a prior-filed provisional application must be accompanied by:

(1) The reference required by 35 U.S.C. 119(e) and paragraph (b)(3) of this section to the prior-filed provisional application, unless previously submitted;

(2) The surcharge set forth in § 1.17(t); and

(3) A statement that the entire delay between the date the claim was due under paragraph (b)(4) of this section and the date the claim was filed was unintentional. The Director may require additional information where there is a question whether the delay was unintentional.

(d) *Claims under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed nonprovisional or international application.* A nonprovisional application (including an international application that has entered the national stage after compliance with 35 U.S.C. 371) may claim the benefit of one or more prior-filed copending nonprovisional applications or international applications designating the United States of America under the conditions set forth in 35 U.S.C. 120 and this paragraph.

(1) A nonprovisional application claiming the benefit of one or more prior-filed copending nonprovisional applications or international applications designating the United States of America must satisfy at least one of the following conditions:

(i) The nonprovisional application is either a continuation application as defined in paragraph (a)(2) of this section or a continuation-in-part application as defined in paragraph (a)(4) of this section that claims the benefit under 35 U.S.C. 120, 121, or 365(c) of only a single prior-filed application, the benefit of such prior-filed application not being claimed in any other nonprovisional application other than a divisional application in compliance with paragraph (d)(1)(ii) of this section, and no request for continued examination under § 1.114

has been filed in the prior-filed application.

(ii) The nonprovisional application is a divisional application as defined in paragraph (a)(3) of this section that claims the benefit under 35 U.S.C. 120, 121, or 365(c) of only a single prior-filed application, the prior-filed application was subject to a requirement of unity of invention under PCT Rule 13 or a requirement for restriction under 35 U.S.C. 121, and the divisional application contains only claims directed to an invention or inventions that were identified in such requirement of unity of invention or requirement for restriction but were not elected for examination in the prior-filed application.

(iii) The nonprovisional application is either a continuation application as defined in paragraph (a)(2) of this section or a continuation-in-part application as defined in paragraph (a)(4) of this section that claims the benefit under 35 U.S.C. 120, 121, or 365(c) of only a single divisional application in compliance with paragraph (d)(1)(ii) of this section and the single prior-filed application whose benefit is claimed in such divisional application, and no request for continued examination under § 1.114 has been filed in such prior-filed divisional application.

(iv) The nonprovisional application is a continuing application as defined in paragraph (a)(1) of this section that claims the benefit under 35 U.S.C. 120, 121, or 365(c) of a prior-filed application, which continuing application is filed to obtain consideration of an amendment, argument, or evidence that could not have been submitted during the prosecution of the prior-filed application. The nonprovisional application must have filed therein a petition accompanied by the fee set forth in § 1.17(f) and a showing to the satisfaction of the Director that the amendment, argument, or evidence could not have been submitted during the prosecution of the prior-filed application. If the later-filed continuing application is an application filed under 35 U.S.C. 111(a), this petition must be submitted within four months from the actual filing date of the later-filed continuing application, and if the later-filed continuing application is a nonprovisional application which entered the national stage from an international application after compliance with 35 U.S.C. 371, this petition must be submitted within four months from the date on which the national stage commenced under 35

U.S.C. 371(b) or (f) in the later-filed international application.

(2) Each prior-filed application must name as an inventor at least one inventor named in the later-filed application and must be either an international application entitled to a filing date in accordance with PCT Article 11 and designating the United States of America, or a nonprovisional application under 35 U.S.C. 111(a) that is entitled to a filing date as set forth in § 1.53(b) or § 1.53(d) and have paid therein the basic filing fee set forth in § 1.16 within the pendency of the application.

(3) Except for a continued prosecution application filed under § 1.53(d), any nonprovisional application, or international application designating the United States of America, claiming the benefit of one or more prior-filed copending nonprovisional applications or international applications designating the United States of America must contain or be amended to contain a reference to each such prior-filed application, identifying it by application number (consisting of the series code and serial number) or international application number and international filing date and identifying the relationship of the applications (i.e., whether the later-filed application is a continuation, divisional, or continuation-in-part of the prior-filed nonprovisional application or international application). If an application is identified as a continuation-in-part application, the applicant must identify which claim or claims in the continuation-in-part application are disclosed in the manner provided by the first paragraph of 35 U.S.C. 112 in the prior-filed application. If the later-filed application is a nonprovisional application, the reference required by this paragraph must be included in an application data sheet (§ 1.76), or the specification must contain or be amended to contain such reference in the first sentence(s) following the title. The Office will refuse to enter, or will delete if present, any specific reference to a prior-filed application that is not permitted by paragraph (d)(1) of this section. The entry of or failure to delete a specific reference to a prior-filed application that is not permitted by paragraph (d)(1) of this section does not constitute a waiver of the provisions of paragraph (d)(1) of this section.

(4) The reference required by 35 U.S.C. 120 and paragraph (d)(3) of this section must be submitted during the pendency of the later-filed application. If the later-filed application is an application filed under 35 U.S.C. 111(a),

this reference must also be submitted within the later of four months from the actual filing date of the later-filed application or sixteen months from the filing date of the prior-filed application. If the later-filed application is a nonprovisional application which entered the national stage from an international application after compliance with 35 U.S.C. 371, this reference must also be submitted within the later of four months from the date on which the national stage commenced under 35 U.S.C. 371(b) or (f) in the later-filed international application or sixteen months from the filing date of the prior-filed application. These time periods are not extendable. Except as provided in paragraph (e) of this section, the failure to timely submit the reference required by 35 U.S.C. 120 and paragraph (d)(3) of this section is considered a waiver of any benefit under 35 U.S.C. 120, 121, or 365(c) to such prior-filed application. The time periods in this paragraph do not apply if the later-filed application is:

(i) An application for a design patent;

(ii) An application filed under 35 U.S.C. 111(a) before November 29, 2000; or

(iii) An international application filed under 35 U.S.C. 363 before November 29, 2000.

(5) The request for a continued prosecution application under § 1.53(d) is the specific reference required by 35 U.S.C. 120 to the prior-filed application. The identification of an application by application number under this section is the identification of every application assigned that application number necessary for a specific reference required by 35 U.S.C. 120 to every such application assigned that application number.

(6) Cross-references to other related applications may be made when appropriate (see § 1.14). Cross-references to applications for which a benefit is not claimed under title 35, United States Code, must be located in a separate paragraph from the references required by 35 U.S.C. 119(e) or 120 and this section to applications for which a benefit is claimed under 35 U.S.C. 119(e), 120, 121, or 365(c).

(e) *Delayed claims under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed nonprovisional application or international application.* If the reference required by 35 U.S.C. 120 and paragraph (d)(3) of this section is presented after the time period provided by paragraph (d)(4) of this section, the claim under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed copending nonprovisional application or international application designating the United States of America may be

accepted if the reference identifying the prior-filed application by application number or international application number and international filing date was unintentionally delayed. A petition to accept an unintentionally delayed claim under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed application will not be granted in an application in which a request for continued examination under § 1.114 has been filed. A petition to accept an unintentionally delayed claim under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed application must be accompanied by:

(1) The reference required by 35 U.S.C. 120 and paragraph (d)(3) of this section to the prior-filed application, unless previously submitted;

(2) The surcharge set forth in § 1.17(t); and

(3) A statement that the entire delay between the date the claim was due under paragraph (d)(4) of this section and the date the claim was filed was unintentional. The Director may require additional information where there is a question whether the delay was unintentional.

(f) *Applications and patents naming at least one inventor in common.* (1) If a nonprovisional application has a filing date that is the same as or within two months of the filing date of one or more other pending or patented nonprovisional applications, taking into account any filing date for which a benefit is sought under title 35, United States Code, names at least one inventor in common with the one or more other nonprovisional applications, and is owned by the same person, or subject to an obligation of assignment to the same person, as the one or more other nonprovisional applications, the applicant must identify each such other application by application number (i.e., series code and serial number) and patent number (if applicable). The identification of such one or more other nonprovisional applications if required by this paragraph must be submitted within four months from the actual filing date of a nonprovisional application filed under 35 U.S.C. 111(a), or within four months from the date on which the national stage commenced under 35 U.S.C. 371(b) or (f) in a nonprovisional application which entered the national stage from an international application after compliance with 35 U.S.C. 371.

(2) If a nonprovisional application has the same filing date as the filing date of one or more other pending or patented nonprovisional applications, taking into account any filing date for which a benefit is sought under title 35, United

States Code, names at least one inventor in common with the one or more other pending or patented nonprovisional applications, is owned by the same person, or subject to an obligation of assignment to the same person, and contains substantial overlapping disclosure as the one or more other pending or patented nonprovisional applications, a rebuttable presumption shall exist that the nonprovisional application contains at least one claim that is not patentably distinct from at least one of the claims in the one or more other pending or patented nonprovisional applications. In this situation, the applicant in the nonprovisional application must either:

(i) Rebut this presumption by explaining to the satisfaction of the Director how the application contains only claims that are patentably distinct from the claims in each of such other pending applications or patents; or

(ii) Submit a terminal disclaimer in accordance with § 1.321(c). In addition, where one or more other pending nonprovisional applications have been identified, the applicant must explain to the satisfaction of the Director why there are two or more pending nonprovisional applications naming at least one inventor in common and owned by the same person, or subject to an obligation of assignment to the same person, which contain patentably indistinct claims.

(3) In the absence of good and sufficient reason for there being two or more pending nonprovisional applications naming at least one inventor in common and owned by the same person, or subject to an obligation of assignment to the same person, which contain patentably indistinct claims, the Office may require elimination of the patentably indistinct claims from all but one of the applications.

(g) *Applications or patents under reexamination naming different inventors and containing patentably indistinct claims.* If an application or a patent under reexamination and at least one other application naming different inventors are owned by the same party and contain patentably indistinct claims, and there is no statement of record indicating that the claimed inventions were commonly owned or subject to an obligation of assignment to the same person at the time the later invention was made, the Office may require the assignee to state whether the claimed inventions were commonly owned or subject to an obligation of assignment to the same person at the time the later invention was made, and if not, indicate which named inventor is the prior inventor.

(h) *Parties to a joint research agreement.* If an application discloses or is amended to disclose the names of parties to a joint research agreement (35 U.S.C. 103(c)(2)(C)), the parties to the joint research agreement are considered to be the same person for purposes of this section. If the application is amended to disclose the names of parties to a joint research agreement under 35 U.S.C. 103(c)(2)(C), the identification of such one or more other nonprovisional applications as required by paragraph (f)(1) of this section must be submitted with the amendment under 35 U.S.C. 103(c)(2)(C) unless such identification is or has been submitted within the four-month period specified in paragraph (f)(1) of this section.

3. Section 1.114 is amended by revising the introductory text of paragraph (a) and by adding a new paragraph (f) to read as follows:

**§ 1.114  Request for continued examination.**

(a) If prosecution in an application is closed, an applicant may, subject to the conditions of this section, file a request for continued examination of the application by filing a submission and the fee set forth in § 1.17(e) prior to the earliest of:

*    *    *    *    *

(f) An applicant may not file more than a single request for continued examination under this section in any application, and may not file any request for continued examination under this section in any continuing application (§ 1.78(a)(1)) other than a divisional application in compliance with § 1.78(d)(1)(ii), unless the request for continued examination also includes a petition accompanied by the fee set forth in § 1.17(f) and a showing to the satisfaction of the Director that the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the application. Any other proffer of a request for continued examination in an application not on appeal will be treated as a submission under § 1.116. Any other proffer of a request for continued examination in an application on appeal will be treated only as a request to withdraw the appeal.

4. Section 1.495 is amended by revising paragraph (g) to read as follows:

**§ 1.495  Entering the national stage in the United States of America.**

*    *    *    *    *

(g) The documents and fees submitted under paragraphs (b) and (c) of this section must be clearly identified as a submission to enter the national stage under 35 U.S.C. 371. If the documents and fees contain conflicting indications as between an application under 35 U.S.C. 111 and a submission to enter the national stage under 35 U.S.C. 371, the documents and fees will be treated as a submission to enter the national stage under 35 U.S.C. 371.

*    *    *    *    *

Dated: December 19, 2005.

**Jon W. Dudas,**

*Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office.*

[FR Doc. 05–24528 Filed 12–30–05; 8:45 am]

**BILLING CODE 3510–16–P**

## DEPARTMENT OF COMMERCE

## Patent and Trademark Office

### 37 CFR Part 1

[Docket No.: 2005–P–067]

RIN 0651–AB94

### Changes to Practice for the Examination of Claims in Patent Applications

**AGENCY:** United States Patent and Trademark Office, Commerce.

**ACTION:** Notice of proposed rule making.

**SUMMARY:** The United States Patent and Trademark Office (Office) is proposing to revise the rules of practice relating to the examination of claims in patent applications. The Office is proposing to focus its initial examination on the claims designated by the applicant as representative claims. The representative claims will be all of the independent claims and only the dependent claims that are expressly designated by the applicant for initial examination. The Office is also proposing that if an application contains more than ten independent claims (a rare occurrence), or if the applicant wishes to have initial examination of more than ten representative claims, then the applicant must provide an examination support document that covers all of the independent claims and the dependent claims designated for initial examination. The changes proposed in this notice will allow the Office to do a better, more thorough and reliable examination since the number of claims receiving initial examination will be at a level which can be more effectively and efficiently evaluated by an examiner.

*Comment Deadline Date:* To be ensured of consideration, written comments must be received on or before May 3, 2006. No public hearing will be held.

**ADDRESSES:** Comments should be sent by electronic mail message over the Internet addressed to AB94Comments@uspto.gov. Comments may also be submitted by mail addressed to: Mail Stop Comments—Patents, Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313–1450, or by facsimile to (571) 273–7735, marked to the attention of Robert A. Clarke. Although comments may be submitted by mail or facsimile, the Office prefers to receive comments via the Internet. If comments are submitted by mail, the Office prefers that the comments be submitted on a DOS formatted 3½ inch disk accompanied by a paper copy.

Comments may also be sent by electronic mail message over the Internet via the Federal eRulemaking Portal. See the Federal eRulemaking Portal Web site (http://www.regulations.gov) for additional instructions on providing comments via the Federal eRulemaking Portal.

The comments will be available for public inspection at the Office of the Commissioner for Patents, located in Madison East, Tenth Floor, 600 Dulany Street, Alexandria, Virginia, and will be available via the Office Internet Web site (address: http://www.uspto.gov). Because comments will be made available for public inspection, information that is not desired to be made public, such as an address or phone number, should not be included in the comments.

**FOR FURTHER INFORMATION CONTACT:** Robert A. Clarke, Deputy Director, Office of Patent Legal Administration, Office of the Deputy Commissioner for Patent Examination Policy, by telephone at (571) 272–7735, by mail addressed to: Mail Stop Comments—Patents, Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313–1450, or by facsimile to (571) 273–7735, marked to the attention of Robert A. Clarke, or preferably via electronic mail message addressed to: robert.clarke@uspto.gov.

**SUPPLEMENTARY INFORMATION:** The Office's current practice for examination of claims in patent applications provides for an initial examination of each and every claim, independent and dependent, in every Office action on the merits of the application. The Office's current practice for examination of claims in patent applications is less efficient than it could be because it requires an initial patentability examination of a proposal to limit the number of total and independent claims that would be examined in an application, notwithstanding that this effort is wasted when the patentability of the dependent claims stand or fall together with the independent claim from which they directly or indirectly depend. Thus, the Office is proposing to delay the patentability examination of most dependent claims until the application is otherwise in condition for allowance. The Office, however, will examine every claim in an application before issuing a patent on the application.

Both the Board of Patent Appeals and Interferences (BPAI) and the courts commonly employ some form of using representative claims to focus and manage issues in a case. The BPAI's representative claim practice provides that if the applicant desires the BPAI to consider the patentability of a claim separately from the other claims also subject to the same ground of rejection, the applicant must include a subheading in the arguments section of the appeal brief setting out an argument for the separate patentability of the claim. See 37 CFR 41.37(c)(1)(vii). If there are multiple claims subject to the same ground of rejection and the applicant argues the patentability of the claims as a group, the BPAI will select a claim from the group of claims and decide the appeal with respect to that group of claims on the basis of the selected claim alone. See id.

The Office plans to apply a similar practice to the BPAI's representative claim practice to the examination of patent applications. Specifically, the Office will provide an initial patentability examination to the claims designated by the applicant as representative claims. The representative claims will be all of the independent claims and the dependent claims that are expressly designated by the applicant for initial examination. Thus, each independent claim and each dependent claim that is designated for initial examination will be treated as a representative claim for examination purposes. The examination of the dependent claims that are not designated for initial examination will be deferred until the application is otherwise in condition for allowance. Specifically, applicants will be required to assist the Office in eliminating unnecessary effort by permitting the Office to provide an initial examination to a more focused set of claims; that is, only to the independent and designated dependent claims. The Office will continue its practice of withdrawing from further consideration claims that are drawn to a non-elected invention.

The Office previously requested comments on a proposal to limit the number of total and independent claims that would be examined in an application. See Changes to Implement the Patent Business Goals, 63 FR 53497, 53506–08 (Oct. 5, 1998), 1215 Off. Gaz. Pat. Office 87, 95–97 (Oct. 27, 1998). The Office, however, ultimately decided not to proceed with a proposed change to 37 CFR 1.75 to limit the number of total and independent claims that would be examined in an application. See Changes to Implement the Patent Business Goals, 64 FR 53771, 53774–75 (Oct. 4, 1999), 1228 Off. Gaz. Pat. Office 15, 17–18 (Nov. 2, 1999). Nevertheless, applications which contain a large number of claims continue to absorb an inordinate amount of patent examining resources, as they are extremely difficult to properly process and examine. The Office is now proposing changes to its practice for examination of claims in patent applications that avoids placing limits on the number of total or independent claims that may be presented for examination in an application, but does share with an applicant who presents more than a sufficiently limited number of claims for simultaneous examination the burden so imposed. Specifically, an applicant who declines to designate fewer than ten representative claims for initial examination will be required to assist the Office with this more extensive examination by providing an examination support document covering all of the claims designated for initial examination.

The Office is proposing the following changes to the rules of practice in title 37 of the Code of Federal Regulations (CFR) for the examination of claims in an application: First, the Office will give an initial examination only to the representative claims, namely, all of the independent claims and only the dependent claims that are expressly designated for initial examination. Second, if the number of representative claims is greater than ten, the Office will require the applicant to share the burden of examining the application by submitting an examination support document covering all of the representative claims.

The Office's Patent Application Locating and Monitoring (PALM) records show that the Office has received 216,327 nonprovisional applications since January 1, 2005 (based upon PALM records as of October 13, 2005). The Office's PALM records show that only 2,522 (866 small entity), or about 1.2 percent of all nonprovisional applications, included more than ten independent claims. Thus, this proposal will allow for the examination of every independent claim in 98.8 percent of the applications filed since January 1, 2005, without any additional effort by the applicant.

The Office conducted a random survey of five hundred applications in which an appeal brief was filed in fiscal year 2004. Only nine applications out of these five-hundred applications (1.8 percent) had more than ten representative claims. In addition, the average and median numbers of representative claims in these five hundred appeals were 2.73 and 2, respectively.

The Office currently has a procedure for requesting accelerated examination under which an application will be taken out of turn for examination if the applicant files a petition to make special and (*inter alia*):

Submits a statement(s) that a pre-examination search was made, listing the field of search by class and subclass, publication, Chemical Abstracts, foreign patents, *etc.* The pre-examination search must be directed to the invention as claimed in the application for which special status is requested. A search made by a foreign patent office satisfies this requirement if the claims in the corresponding foreign application are of the same or similar scope to the claims in the U.S. application for which special status is requested;

Submits one copy each of the references deemed most closely related to the subject matter encompassed by the claims if said references are not already of record; and

Submits a detailed discussion of the references, which discussion points out, with the particularity required by 37 CFR 1.111(b) and (c), how the claimed subject matter is patentable over the references.

*See Manual of Patent Examining Procedure* § 708.02 (8th ed. 2001) (Rev. 3, August 2005) (MPEP). Based upon the Office's PALM records, it appears that about 1,225 applicants have filed a petition to make special under this accelerated examination procedure to date in fiscal year 2005. The proposed examination support document requirements are similar to the requirements set forth in MPEP § 708.02 for having an application taken out of turn for examination under this accelerated examination procedure.

These changes will mean faster more effective examination for the typical applicant without any additional work on the applicant's part, but a small minority of applicants who place an extensive burden on the Office's ability to effectively examine applications will be required to assist the Office in handling the burden they place on the Office.

**Discussion of Specific Rules**

Title 37 of the Code of Federal Regulations, Part 1, is proposed to be amended as follows:

*Section 1.75:* Section 1.75(b) (introductory text) is proposed to be amended to set forth the provisions concerning dependent claims that are currently in § 1.75(c), namely, that "[o]ne or more claims may be presented in dependent form, referring back to and further limiting another claim or claims in the same application," and that "[c]laims in dependent form shall be construed to include all the limitations of the claim incorporated by reference into the dependent claim." Section 1.75(b) (introductory text) is further proposed to be amended to provide that unless a dependent claim has been designated for initial examination prior to the application being taken up for examination, the examination of such dependent claim may be held in abeyance until the application is otherwise in condition for examination. *See also* proposed § 1.104(b). As discussed previously, the Office will provide an initial patentability examination to each of the representative claims. If the applicant fails to designate any dependent claim for initial examination, the Office will initially examine only the independent claims. Thus, the applicant must expressly designate which (if any) dependent claims are to be given initial examination, even if there are ten or fewer total (independent and dependent) claims in the application. Section 1.75(b) (introductory text) is further proposed to be amended to provide that the mere presentation of a dependent claim in an application is not a designation of the dependent claim for initial examination. An applicant may designate one or more dependent claims for initial examination in the transmittal letter or in a separate paper, but the mere inclusion of a dependent claim in an application will not be considered a designation of the dependent claim for initial examination.

Section 1.75(b)(1) is proposed to provide that an applicant must submit an examination support document in compliance with § 1.261 that covers each representative claim if either: (1) The application contains, or is amended to contain, more than ten independent claims; or (2) the number of representative claims (*i.e.,* the independent claims plus the number of dependent claims designated for initial examination) is greater than ten. Thus, the applicant may designate a number of dependent claims up to ten minus the number of independent claims in the application to be given initial examination without filing an examination support document under proposed § 1.261. For example, if an application contains three independent claims and a total of twenty claims, the applicant may designate up to seven (ten minus three) dependent claims for initial examination without filing an examination support document under § 1.261.

Proposed § 1.75(b)(1) further provides that a dependent claim (including a multiple dependent claim) designated for examination must depend only from a claim or claims that are also designated for examination. Thus, if dependent claim 3 depends upon dependent claim 2, which in turn depends upon independent claim 1, the applicant cannot designate claim 3 for initial examination without also designating claim 2 for initial examination. Likewise, if multiple dependent claim 4 depends (in the alternative) upon dependent claim 3 and dependent claim 2, and claim 3 and claim 2 each depend upon independent claim 1, the applicant cannot designate claim 4 for initial examination without also designating claim 3 and claim 2 for initial examination.

Proposed § 1.75(b)(2) provides for claims in dependent form that are effectively independent claims. Proposed § 1.75(b)(2) provides that a claim that refers to another claim but does not incorporate by reference all of the limitations of the claim to which such claim refers will be treated as an independent claim for fee calculation purposes under § 1.16 (or § 1.492) and for purposes of § 1.75(b)(1). The Office must treat such claims as independent claims because 35 U.S.C. 112, ¶ 4, provides (*inter alia*) that a dependent "shall be construed to incorporate by reference all the limitations of the claim to which it refers." *See* 35 U.S.C. 112, ¶ 4. Examples of claims that appear to be a dependent claim but are in actuality an independent claim that references another claim in short-hand form without incorporating by reference all the limitations of the claim to which it refers are included in the applications at issue in the following decisions: *In re Thorpe,* 777 F.2d 695, 696, 227 USPQ 964, 965 (Fed. Cir. 1985) ("product by process" claim 44); *In re Kuehl,* 475 F.2d 658, 659, 177 USPQ 250, 251 (CCPA 1973) (claim 6); and *Ex parte Rao,* 1995 WL 1747720, *1 (BPAI 1998) (claim 8). Proposed § 1.75(b)(2) also provides that a claim that refers to a claim of a different statutory class of invention will be treated as an independent claim for fee calculation purposes under § 1.16 (or § 1.492) and for purposes of paragraph (b)(1) of this section. Examples of such claims are included in the applications at issue in the following decisions: *Thorpe,* 777 F.2d at 696, 227 USPQ at 965 ("product by process" claim 44); *Ex parte Porter,*

25 USPQ2d 1144, 1145 (BPAI 1992) (claim 6); and *Ex parte Blattner*, 2 USPQ2d 2047, 2047–48 (BPAI 1987) (claim 14).

Section 1.75(b)(3) is proposed to provide that the applicant will be notified if an application contains or is amended to contain more than ten independent claims, or the number of independent claims plus the number of dependent claims designated for initial examination is greater than ten, but an examination support document under § 1.261 has been omitted (proposed § 1.75(b)(3)). Proposed § 1.75(b)(3) further provides that if prosecution of the application is not closed and it appears that omission was inadvertent, the notice will set a one-month time period that is not extendable under § 1.136(a) within which to avoid abandonment if the application the applicant must: (1) File an examination support document in compliance with § 1.261; (2) cancel the requisite number of independent claims and rescind the designation for initial examination of the requisite number of dependent claims that necessitate an examination support document in compliance with § 1.261; or (3) submit a suggested requirement for restriction accompanied by an election without traverse of an invention to which there are drawn fewer than ten independent claims and fewer than the residual number of designated dependent claims. The phrase "an application in which prosecution is not closed" means an application that is not under appeal, and in which the last Office action on the merits is not a final action (§ 1.113), a notice of allowance (§ 1.311), or an action that otherwise closes prosecution in the application. The submission of additional claims after close of prosecution would be treated under the provisions of §§ 1.116, 1.312, 41.33 or 41.110. Due to the increase in patent pendency that would result from the routine granting of extensions in these situations, the Office is limiting extensions of this one-month time period to those for which there is sufficient cause (§ 1.136(b)).

Section 1.75(b)(4) is proposed to provide for the situation in which: (1) A nonprovisional application contains at least one claim that is patentably indistinct from at least one claim in one or more other nonprovisional applications or patents; and (2) the one or more other nonprovisional applications or patents either name at least one inventor in common and are owned by the same person as the nonprovisional application, or are subject to an obligation of assignment to the same person as the first

nonprovisional application; and (3) the at least one patentably indistinct claim has support under 35 U.S.C. 112, ¶ 1, in the earliest of such one or more other nonprovisional applications or patents. Proposed § 1.75(b)(4) provides that in this situation, the Office may require elimination of the patentably indistinct claims from all but one of the nonprovisional applications. In addition, proposed § 1.75(b)(4) provides that if the patentably indistinct claims are not eliminated from all but one of the nonprovisional applications, the Office will treat the independent claims and the dependent claims designated for initial examination in the first nonprovisional application and in each of such other nonprovisional applications or patents as present in each of the nonprovisional applications for purposes of § 1.75(b)(1). That is, if the conditions specified in proposed § 1.75(b)(4)) are present, the Office would treat each such nonprovisional application as having the total of all of the representative claims for purposes of determining whether an examination support document is required by proposed § 1.75(b)(1) (but not for purposes of calculating the excess claims fee due in each such nonprovisional application).

If two or more inventions are claimed in an application, the examiner may, if appropriate, still require that the application be restricted to a single invention. The criteria for making such a restriction requirement would remain the same. Any restriction requirement would be based on all the claims pending in the application, and not just the claims designated for initial examination. If the examiner makes a restriction requirement and applicant's election results in representative claims being withdrawn from consideration, applicant may designate additional representative claims for initial examination without filing an examination support document under proposed § 1.261 so long as the total number of representative claims drawn to the elected invention does not exceed ten. Any additional dependent claims designated for initial examination must be drawn to the elected invention. The designation of the additional dependent claims must be made in the reply to the restriction requirement or as permitted by the examiner.

The Office is also requesting comments on how claims written in the alternative form, such as claims in an alternative form permitted by *Ex parte Markush*, 1925 Dec. Comm'r Pat. 126 (1924), should be counted for purposes of proposed § 1.75(b)(1). Should the Office simply count each alternative in

the claim as a separate claim for purposes of § 1.75(b)(1)? Should the Office count each alternative in the claim as a separate claim for purposes of § 1.75(b)(1) unless the applicant shows that each alternative in the claim includes a common core structure and common core property or activity, in which the common core structure constitutes a structurally distinctive portion in view of existing prior art and is essential to the common property or activity (*see* MPEP 1850)?

Section 1.75(c) is proposed to be amended to provide only for multiple dependent claims (with dependent claims being provided for in § 1.75(b)), and to further provide that multiple dependent claims and claims depending from a multiple dependent claim will be considered to be that number of claims to which direct reference is made in the multiple dependent claim for purposes of § 1.75(b)(1).

*Section 1.104:* Section 1.104(a)(1) is proposed to be amended to change "invention as claimed" to "invention as claimed in the independent and designated dependent claims" for consistency with the change to examination practice. The Office plans to generally delay the patentability examination of any dependent claim that was not designated for initial examination until the application is otherwise in condition for allowance.

Section 1.104(b) is proposed to be amended to add that "[t]he examination of a dependent claim that has not been designated for initial examination may be held in abeyance until the application is otherwise in condition for allowance."

Section 1.104(c) is proposed to be amended to change "[i]f the invention is not considered, or not considered patentable as claimed" to "[i]f the invention claimed in the independent and designated dependent claims is not considered patentable" for consistency with the proposed change to examination practice.

*Section 1.105:* Section 1.105(a)(1) is proposed to be amended to provide that an applicant may be required to set forth where (by page and line or paragraph number) the specification of the application, or any application the benefit of whose filing date is sought under title 35, United States Code, provides written description support for the invention as defined in the claims (independent and dependent), and of manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the invention, under 35

U.S.C. 112, ¶ 1. Therefore, in situations in which it is not readily apparent where the specification of the application, or an application for which a benefit is claimed, provides written description support under 35 U.S.C. 112, ¶ 1, for a claim or a limitation of a claim, the examiner may require the applicant to provide such information. The Office considers this authority to be inherent under the patent statute and existing rules (including current § 1.105), but is proposing to amend § 1.105 to make the authority explicit. See MPEP 2163.04.

Section 1.117: The Consolidated Appropriations Act 2005 (Consolidated Appropriations Act), provides that 35 U.S.C. 41(a), (b), and (d) shall be administered in a manner that revises patent application fees (35 U.S.C. 41(a)) and patent maintenance fees (35 U.S.C. 41(b)), and provides for a separate filing fee (35 U.S.C. 41(a)), search fee (35 U.S.C. 41(d)(1)), and examination fee (35 U.S.C. 41(a)(3)) during fiscal years 2005 and 2006. See Pub. L. 108–447, 118 Stat. 2809 (2004). The Consolidated Appropriations Act also provides that the Office may, by regulation, provide for a refund of any part of the excess claim fee specified in 35 U.S.C. 41(a)(2) for any claim that is canceled before an examination on the merits has been made of the application under 35 U.S.C. 131. See 35 U.S.C. 41(a)(2) (as administered during fiscal years 2005 and 2006 pursuant to the Consolidated Appropriations Act). Section 1.117 is proposed to be added to implement this provision of the Consolidated Appropriations Act. Proposed § 1.117(a) provides that if an amendment canceling a claim is submitted in reply to a notice under § 1.75(b)(3) and prior to the first examination on the merits of the application, the applicant may request a refund of any fee paid on or after December 8, 2004, for such claim under § 1.16(h), (i), or (j) or under § 1.492(d), (e), or (f). Thus, if an applicant decides to cancel the claims necessitating an examination support document under § 1.261, rather than provide an examination support document in compliance with § 1.261, the applicant may request a refund of any fee paid on or after December 8, 2004, for such claim under § 1.16(h), (i), or (j) or under § 1.492(d), (e), or (f). As the Consolidated Appropriations Act authorizes a refund only for a claim that has been canceled before an examination on the merits has been made of the application under 35 U.S.C. 131, the Office cannot grant a refund on the basis of the mere rescission of a designation of a dependent claim for

initial examination (rather than cancellation of the dependent claim), or on the basis of the cancellation of a claim after an examination on the merits has been made of the application under 35 U.S.C. 131. If an amendment adding one or more claims is also filed before the application has been taken up for examination on the merits, the Office may apply first any refund under § 1.117 resulting from the cancellation of one or more claims to any excess claims fees due as a result of such an amendment.

Proposed § 1.117(b) provides that a claim in an application filed under 35 U.S.C. 111(a) will also be considered canceled for purposes of this section if a declaration of express abandonment under § 1.138(d) has been filed in an application containing such claim in sufficient time to permit the appropriate officials to recognize the abandonment and remove the application from the files for examination before the application has been taken up for examination.

Proposed § 1.117(c) provides that any request for refund under this section must be filed within two months from the date on which the claim was canceled, and that this two-month period is not extendable.

The patent fee provisions of the Consolidated Appropriations Act expire (in the absence of subsequent legislation) on September 30, 2006 (at the end of fiscal year 2006). Therefore, in the absence of subsequent legislation, the refund provision in proposed § 1.117 will likewise expire on September 30, 2006 (at the end of fiscal year 2006), regardless of the date on which the excess claims fee was paid.

Section 1.261: Section 1.261 is proposed to be added to set forth what an "examination support document" (proposed to be required under § 1.75(b)(1)) entails.

Proposed § 1.261(a) provides that an examination support document as used in 37 CFR part 1 means a document that includes: (1) A statement that a preexamination search was conducted, including an identification (in the manner set forth in MPEP § 719) of the field of search by class and subclass and the date of the search, where applicable, and, for database searches, the search logic or chemical structure or sequence used as a query, the name of the file or files searched and the database service, and the date of the search; (2) an information disclosure statement in compliance with § 1.98 citing the reference or references deemed most closely related to the subject matter of each of the independent claims and designated dependent claims; (3) an

identification of all the limitations of the independent claims and designated dependent claims that are disclosed by the references cited; (4) a detailed explanation of how each of the independent claims and designated dependent claims are patentable over the references cited with the particularity required by § 1.111(b) and (c); (5) a concise statement of the utility of the invention as defined in each of the independent claims; and (6) a showing of where each limitation of the independent claims and the designated dependent claims finds support under 35 U.S.C. 112, ¶ 1, in the written description of the specification (and if the application claims the benefit of one or more applications under title 35, United States Code, the showing must also include where each limitation of the independent claims and the designated dependent claims finds support under 35 U.S.C. 112, ¶ 1, in each such application in which such support exists).

Section 1.133(a)(2) was recently amended to permit an interview before first Office action in any application if the examiner determines that such an interview would advance prosecution of the application. If the examiner, after considering the application and examination support document, still has questions concerning the invention or how the claims define over the prior art or are patentable, the examiner may request an interview before first Office action. If the applicant declines such a request for an interview or if the interview does not result in the examiner obtaining the necessary information, the examiner may issue a requirement for information under § 1.105 to obtain such information.

Proposed § 1.261(b) provides that the preexamination search referred to in § 1.261(a)(1) must involve U.S. patents and patent application publications, foreign patent documents, and non-patent literature, unless the applicant can justify with reasonable certainty that no references more pertinent than those already identified are likely to be found in the eliminated source and includes such a justification with the statement required by § 1.261(a)(1). Proposed § 1.261(b) also provides that the preexamination search referred to in § 1.261(a)(1) must encompass all of the features of the independent claims and must cover all of the features of the designated dependent claims separately from the claim or claims from which the dependent claim depends, giving the claims the broadest reasonable interpretation. A search report from a foreign patent office will not satisfy the requirement in § 1.261(a)(1) for a

preexamination search unless the search report satisfies the requirements for a preexamination search set forth in § 1.261.

Proposed § 1.261(c) provides that the applicant be notified and given a one-month time period within which to file a corrected or supplemental examination support document to avoid abandonment if: (1) The examination support document or pre-examination search is deemed to be insufficient; (2) an explanation of the invention or how the independent and designated dependent claims define the invention is deemed necessary; or (3) the claims have been amended such that the examination support document no longer covers each independent claim. Proposed § 1.261(c) further provides that this one-month period is not extendable under § 1.136(a).

*Section 1.704:* Section 1.704(c) is proposed to be amended to provide that the failure to file an examination support document in compliance with § 1.75(b) when necessary under § 1.75(b) is a circumstance that constitutes a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application under 35 U.S.C. 154(b)(2)(C) because the failure to provide an examination support document in compliance with § 1.261 when necessary under § 1.75(b) will delay processing or examination of an application because the Office must issue a notice and await the applicant's reply before examination of the application may begin. Therefore, proposed § 1.704(c) provides that where there is a failure to file an examination support document in compliance with § 1.261 when necessary under § 1.75(b), the period of adjustment set forth in § 1.703 shall be reduced by the number of days, if any, beginning on the day after the date that is the later of the filing date of the amendment necessitating an examination support document in compliance with § 1.261, or four months from the filing date of the application in an application under 35 U.S.C. 111(a) or from the date on which the national stage commenced under 35 U.S.C. 371(b) or (f) in an application which entered the national stage from an international application after compliance with 35 U.S.C. 371, and ending on the date that either an examination support document in compliance with § 1.261, or an amendment, a suggested restriction requirement and election (§ 1.75(b)(3)(iii)) that obviates the need for an examination support document under § 1.261, was filed.

The proposed changes to §§ 1.75 and 1.104 (if adopted) would be applicable to any application filed on or after the effective date of the final rule, as well as to any application in which a first Office action on the merits (§ 1.104) was not mailed before the effective date of the final rule. The Office will provide applicants who filed their applications before the effective date of the final rule and who would be affected by the changes in the final rule with an opportunity to designate dependent claims for initial examination, and to submit either an examination support document under § 1.261 (proposed) or a new set of claims to avoid the need for an examination support document (if necessary). The Office appreciates that making the changes in the final rule also applicable to certain applications filed before its effective date will cause inconvenience to some applicants. The Office is also requesting suggestions for ways in which the Office can make the changes in the final rule also applicable to these pending applications with a minimum of inconvenience to such applicants.

*Regulatory Flexibility Act:* For the reasons set forth herein, the Deputy General Counsel for General Law of the United States Patent and Trademark Office has certified to the Chief Counsel for Advocacy of the Small Business Administration that changes proposed in this notice will not have a significant economic impact on a substantial number of small entities. *See* 5 U.S.C. 605(b).

This notice proposes to require an examination support document that covers each independent claim and each dependent claim designated for initial examination if: (1) The application contains or is amended to contain more than ten independent claims; or (2) the number of independent claims plus the number of dependent claims designated for initial examination is greater than ten. There are no fees associated with this proposed rule change.

*The changes proposed in this notice will not affect a substantial number of small entities.* The Office's PALM records (PALM records as of October 13, 2005) show that the Office has received 216,327 nonprovisional applications (65,785 small entity) since January 1, 2005, with about 2,522 (866 small entity) of these nonprovisional applications including more than ten independent claims. Thus, since January 1, 2005, only 1.2 percent of all nonprovisional applications and 1.3 percent of the small entity nonprovisional applications contain or were amended to contain more than ten independent claims. In addition, Office

experience is that most applications which contain more than ten independent claims contain claims that are directed to inventions that are independent and distinct under 35 U.S.C. 121, and the proposed rule permits an applicant to avoid submitting an examination support document by suggesting a requirement for restriction accompanied by an election of an invention to which there are drawn no more than ten independent claims. Therefore, the Office estimates that the proposed examination support document requirement would not impact a substantial number of small entities. It is also noted that the proposed rule change would not disproportionately impact small entity applicants.

*The changes proposed in this notice will not have a significant economic impact upon small entities.* The primary impact of this change would be to require applicants who submit an excessive number of claims to share the burden of examining the application by filing an examination support document covering the independent claims and the designated dependent claims. There are no fees associated with this proposed rule change. The American Intellectual Property Law Association (AIPLA) 2003 Report of the Economic Survey indicates that the seventy-fifth percentile charge (for those reporting) for a patent novelty search, analysis, and opinion was $2,500.00. Given that the pre-filing preparation of an application containing more than ten independent claims should involve obtaining such a patent novelty search, analysis, and opinion, the Office does not consider the additional cost of providing an examination support document to be a significant economic impact on an applicant who is submitting an application containing more than ten independent claims. In any event, any applicant may avoid the costs of such an examination support document simply by refraining from presenting more than ten independent claims in an application.

*Executive Order 13132:* This rule making does not contain policies with federalism implications sufficient to warrant preparation of a Federalism Assessment under Executive Order 13132 (Aug. 4, 1999).

*Executive Order 12866:* This rule making has been determined to be significant for purposes of Executive Order 12866 (Sept. 30, 1993).

*Paperwork Reduction Act:* This notice involves information collection requirements which are subject to review by the Office of Management and Budget (OMB) under the Paperwork

Reduction Act of 1995 (44 U.S.C. 3501 et seq.). The collection of information involved in this notice has been reviewed and previously approved by OMB under OMB control number 0651–0031. This notice proposes to require an examination support document that covers each independent claim and each dependent claim designated for initial examination if: (1) The application contains or is amended to contain more than ten independent claims; or (2) the number of independent claims plus the number of dependent claims designated for initial examination is greater than ten. The United States Patent and Trademark Office is resubmitting an information collection package to OMB for its review and approval because the changes in this notice do affect the information collection requirements associated with the information collection under OMB control number 0651–0031.

The title, description and respondent description of the information collection under OMB control number 0651–0031 is shown below with an estimate of the annual reporting burdens. Included in the estimate is the time for reviewing instructions, gathering and maintaining the data needed, and completing and reviewing the collection of information.

*OMB Number:* 0651–0031.

*Title:* Patent Processing (Updating).

*Form Numbers:* PTO/SB/08, PTO/SB/ 17i, PTO/SB/17p, PTO/SB/21–27, PTO/ SB/24B, PTO/SB/30–32, PTO/SB/35–39, PTO/SB/42–43, PTO/SB/61–64, PTO/ SB/64a, PTO/SB/67–68, PTO/SB/91–92, PTO/SB/96–97, PTO–2053–A/B, PTO– 2054–A/B, PTO–2055–A/B, PTOL– 413A.

*Type of Review:* Approved through July of 2006.

*Affected Public:* Individuals or Households, Business or Other For-Profit Institutions, Not-for-Profit Institutions, Farms, Federal Government and State, Local and Tribal Governments.

*Estimated Number of Respondents:* 2,284,439.

*Estimated Time Per Response:* 1 minute and 48 seconds to 12 hours.

*Estimated Total Annual Burden Hours:* 2,732,441 hours.

*Needs and Uses:* During the processing of an application for a patent, the applicant or applicant's representative may be required or desire to submit additional information to the United States Patent and Trademark Office concerning the examination of a specific application. The specific information required or which may be submitted includes: Information disclosure statement and citation, examination support documents,

requests for extensions of time, the establishment of small entity status, abandonment and revival of abandoned applications, disclaimers, appeals, petitions, expedited examination of design applications, transmittal forms, requests to inspect, copy and access patent applications, publication requests, and certificates of mailing, transmittals, and submission of priority documents and amendments.

Comments are invited on: (1) Whether the collection of information is necessary for proper performance of the functions of the agency; (2) the accuracy of the agency's estimate of the burden; (3) ways to enhance the quality, utility, and clarity of the information to be collected; and (4) ways to minimize the burden of the collection of information to respondents.

Interested persons are requested to send comments regarding these information collections, including suggestions for reducing this burden, to: (1) the Office of Information and Regulatory Affairs, Office of Management and Budget, New Executive Office Building, Room 10202, 725 17th Street, NW., Washington, DC 20503, Attention: Desk Officer for the Patent and Trademark Office; and (2) Robert J. Spar, Director, Office of Patent Legal Administration, Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313–1450.

Notwithstanding any other provision of law, no person is required to respond to nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a currently valid OMB control number.

**List of Subjects in 37 CFR Part 1**

Administrative practice and procedure, Courts, Freedom of information, Inventions and patents, Reporting and recordkeeping requirements, Small businesses.

For the reasons set forth in the preamble, 37 CFR part 1 is proposed to be amended as follows:

## PART 1—RULES OF PRACTICE IN PATENT CASES

1. The authority citation for 37 CFR part 1 continues to read as follows:

**Authority:** 35 U.S.C. 2(b)(2).

2. Section 1.75 is amended by revising paragraphs (b) and (c) to read as follows:

**§ 1.75  Claim(s)**

\*    \*    \*    \*    \*

(b) More than one claim may be presented provided they differ

substantially from each other and are not unduly multiplied. One or more claims may be presented in dependent form, referring back to and further limiting another claim or claims in the same application. Claims in dependent form shall be construed to include all the limitations of the claim incorporated by reference into the dependent claim. Unless a dependent claim has been designated for initial examination prior to when the application has been taken up for examination, the examination of such dependent claim may be held in abeyance until the application is otherwise in condition for allowance. The mere presentation of a dependent claim in an application is not a designation of the dependent claim for initial examination.

(1) An applicant must submit an examination support document in compliance with § 1.261 that covers each independent claim and each dependent claim designated for initial examination if either:

(i) The application contains or is amended to contain more than ten independent claims; or

(ii) The number of independent claims plus the number of dependent claims designated for initial examination is greater than ten. A dependent claim (including a multiple dependent claim) designated for initial examination must depend only from a claim or claims that are also designated for initial examination.

(2) A claim that refers to another claim but does not incorporate by reference all of the limitations of the claim to which such claim refers will be treated as an independent claim for fee calculation purposes under § 1.16 (or § 1.492) and for purposes of paragraph (b)(1) of this section. A claim that refers to a claim of a different statutory class of invention will also be treated as an independent claim for fee calculation purposes under § 1.16 (or § 1.492) and for purposes of paragraph (b)(1) of this section.

(3) The applicant will be notified if an application contains or is amended to contain more than ten independent claims, or the number of independent claims plus the number of dependent claims designated for initial examination in such an application is greater than ten, but an examination support document under § 1.261 has been omitted. If prosecution of the application is not closed and it appears that omission was inadvertent, the notice will set a one-month time period that is not extendable under § 1.136(a) within which, to avoid abandonment of the application, the applicant must:

(i) File an examination support document in compliance with § 1.261 that covers each independent claim and each dependent claim designated for initial examination;

(ii) Cancel the requisite number of independent claims and rescind the designation for initial examination of the requisite number of dependent claims that necessitate an examination support document under § 1.261; or

(iii) Submit a suggested requirement for restriction accompanied by an election without traverse of an invention to which there are drawn no more than ten independent claims as well as no more than ten total independent claims and dependent claims designated for initial examination.

(4) If a nonprovisional application contains at least one claim that is patentably indistinct from at least one claim in one or more other nonprovisional applications or patents, and if such one or more other nonprovisional applications or patents and the first nonprovisional application are owned by the same person, or are subject to an obligation of assignment to the same person, and if such patentably indistinct claim has support under the first paragraph of 35 U.S.C. 112 in the earliest of such one or more other nonprovisional applications or patents, the Office may require elimination of the patentably indistinct claims from all but one of the nonprovisional applications. If the patentably indistinct claims are not eliminated from all but one of the nonprovisional applications, the Office will treat the independent claims and the dependent claims designated for initial examination in the first nonprovisional application and in each of such other nonprovisional applications or patents as present in each of the nonprovisional applications for purposes of paragraph (b)(1) of this section.

(c) Any dependent claim which refers to more than one other claim ("multiple dependent claim") shall refer to such other claims in the alternative only. A multiple dependent claim shall not serve as a basis for any other multiple dependent claim. For fee calculation purposes under § 1.16 (or § 1.492) and for purposes of paragraph (b)(1) of this section, a multiple dependent claim will be considered to be that number of claims to which direct reference is made therein. For fee calculation purposes under § 1.16 (or § 1.492) and for purposes of paragraph (b)(1) of this section, any claim depending from a multiple dependent claim will be considered to be that number of claims to which direct reference is made in that

multiple dependent claim. In addition to the other filing fees, any original application which is filed with, or is amended to include, multiple dependent claims must have paid therein the fee set forth in § 1.16(j). A multiple dependent claim shall be construed to incorporate by reference all the limitations of each of the particular claims in relation to which it is being considered.

* * * * *

3. Section 1.104 is amended by revising paragraphs (a)(1), (b), and (c)(1) to read as follows:

§ 1.104  Nature of examination.

(a) *Examiner's action.* (1) On taking up an application for examination or a patent in a reexamination proceeding, the examiner shall make a thorough study thereof and shall make a thorough investigation of the available prior art relating to the subject matter of the invention as claimed in the independent and the designated dependent claims. The examination shall be complete with respect both to compliance of the application or patent under reexamination with the applicable statutes and rules and to the patentability of the invention as claimed in the independent and the designated dependent claims, as well as with respect to matters of form, unless otherwise indicated.

* * * * *

(b) *Completeness of examiner's action.* The examiner's action will be complete as to all matters, except that in appropriate circumstances, such as misjoinder of invention, fundamental defects in the application, and the like, the action of the examiner may be limited to such matters before further action is made. However, matters of form need not be raised by the examiner until a claim is found allowable. The examination of a dependent claim that has not been designated for initial examination may be held in abeyance until the application is otherwise in condition for allowance.

(c) *Rejection of claims.* (1) If the invention claimed in the independent and designated dependent claims is not considered patentable, the independent and the designated dependent claims, or those considered unpatentable, will be rejected.

* * * * *

4. Section 1.105 is amended by adding a new paragraph (a)(1)(ix) to read as follows:

§ 1.105  Requirements for information.

(a)(1) * * *

(ix) *Support in the specification:* Where (by page or paragraph and line)

the specification of the application, or any application the benefit of whose filing date is sought under title 35, United States Code, provides written description support for the invention as defined in the claims (independent or dependent), and of manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most closely connected, to make and use the invention, under the first paragraph of 35 U.S.C. 112.

* * * * *

5. Section 1.117 is added to read as follows:

§ 1.117  Refund due to cancellation of claim.

(a) If an amendment canceling a claim is submitted in reply to a notice under § 1.75(b)(3) and prior to the first examination on the merits of the application, the applicant may request a refund of any fee paid on or after December 8, 2004, for such claim under § 1.16(h), (i), or (j) or under § 1.492(d), (e), or (f).

(b) A claim in an application filed under 35 U.S.C. 111(a) will also be considered canceled for purposes of this section if a declaration of express abandonment under § 1.138(d) has been filed in an application containing such claim in sufficient time to permit the appropriate officials to recognize the abandonment and remove the application from the files for examination before the application has been taken up for examination.

(c) Any request for refund under this section must be filed within two months from the date on which the claim was canceled. This two-month period is not extendable.

6. Section 1.261 is added in numerical order under the undesignated center heading "Miscellaneous Provisions" to read as follows:

§ 1.261  Examination support document.

(a) An examination support document as used in this part means a document that includes the following:

(1) A statement that a preexamination search was conducted, including an identification of the field of search by United States class and subclass and the date of the search, where applicable, and, for database searches, the search logic or chemical structure or sequence used as a query, the name of the file or files searched and the database service, and the date of the search;

(2) An information disclosure statement in compliance with § 1.98 citing the reference or references deemed most closely related to the

subject matter of each of the independent claims and designated dependent claims;

(3) For each reference cited, an identification of all the limitations of the independent claims and designated dependent claims that are disclosed by the reference;

(4) A detailed explanation of how each of the independent claims and designated dependent claims are patentable over the references cited with the particularity required by § 1.111(b) and (c);

(5) A concise statement of the utility of the invention as defined in each of the independent claims; and

(6) A showing of where each limitation of the independent claims and the designated dependent claims finds support under the first paragraph of 35 U.S.C. 112 in the written description of the specification. If the application claims the benefit of one or more applications under title 35, United States Code, the showing must also include where each limitation of the independent claims and the designated dependent claims finds support under the first paragraph of 35 U.S.C. 112 in each such application in which such support exists.

(b) The preexamination search referred to in paragraph (a)(1) of this section must involve U.S. patents and patent application publications, foreign patent documents, and non-patent literature, unless the applicant can justify with reasonable certainty that no references more pertinent than those already identified are likely to be found in the eliminated source and includes such a justification with the statement required by paragraph (a)(1) of this section. The preexamination search referred to in paragraph (a)(1) of this section must be directed to the claimed invention and encompass all of the features of the independent claims and must cover all of the features of the designated dependent claims separately from the claim or claims from which the dependent claim depends, giving the claims the broadest reasonable interpretation. The preexamination search referred to in paragraph (a)(1) of this section must also encompass the disclosed features that may be claimed.

(c) If an examination support document is required, but the examination support document or pre-examination search is deemed to be insufficient, an explanation of the invention or how the independent and designated dependent claims define the invention is deemed necessary, or the claims have been amended such that the examination support document no longer covers each independent claim

and each designated dependent claim, applicant will be notified and given a one-month time period within which to file a corrected or supplemental examination support document to avoid abandonment. This one-month period is not extendable under § 1.136(a).

7. Section 1.704 is amended by redesignating paragraph (c)(11) as (c)(12) and adding new paragraph (c)(11) to read as follows:

§ 1.704   Reduction of period of adjustment of patent term.

\*       \*       \*       \*       \*

(c) \* \* \*

(11) Failure to file an examination support document in compliance with § 1.261 when necessary under § 1.75(b), in which case the period of adjustment set forth in § 1.703 shall be reduced by the number of days, if any, beginning on the day after the date that is the later of the filing date of the amendment necessitating an examination support document under § 1.261, or four months from the filing date of the application in an application under 35 U.S.C. 111(a) or from the date on which the national stage commenced under 35 U.S.C. 371(b) or (f) in an application which entered the national stage from an international application after compliance with 35 U.S.C. 371, and ending on the date that either an examination support document in compliance with § 1.261, or an amendment or suggested restriction requirement and election (§ 1.75(b)(3)(iii)) that obviates the need for an examination support document under § 1.261, was filed;

\*       \*       \*       \*       \*

Dated: December 19, 2005.

Jon W. Dudas,

*Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office.*

[FR Doc. 05–24529 Filed 12–30–05; 8:45 am]

BILLING CODE 3510–16–P

## ENVIRONMENTAL PROTECTION AGENCY

**40 CFR Part 51**

**[OAR–2004–0489; FRL–8016–8]**

**RIN 2060–AN20**

### Air Emissions Reporting Requirements

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Proposed rule; amendments.

**SUMMARY:** Today's action proposes changes to EPA's emission inventory reporting requirements. The proposed

amendments would consolidate, reduce, and simplify the current requirements; add limited new requirements; and provide additional flexibility to States in the way they collect and report emissions data. The proposed amendments would also accelerate the reporting of emissions data to EPA by State and local agencies. The EPA intends to issue final amendments during 2006.

**DATES:** Comments must be received on or before May 3, 2006. Under the Paperwork Reduction Act, comments on the information collection provisions must be received by OMB on or before February 2, 2006.

The EPA will hold a public hearing on today's proposal only if requested by February 2, 2006.

**ADDRESSES:** Submit your comments, identified by Docket ID No. OAR–2004–0489, by one of the following methods:

• *http://www.regulations.gov.* Follow the on-line instructions for submitting comments.

• E-mail: *a-and-r-docket@epa.gov.*

• Fax: (202) 566–1741.

• Mail: Air Emissions Reporting Requirements Rule, Docket No. OAR–2004–0489, Environmental Protection Agency, Mailcode: 6102T, 1200 Pennsylvania Ave., NW., Washington, DC 20460. In addition, please mail a copy of your comments on the information collection provisions to the Office of Information and Regulatory Affairs, Office of Management and Budget (OMB), Attn: Desk Officer for EPA, 725 17th St., NW., Washington, DC 20503.

• Hand Delivery: EPA Docket Center, 1301 Constitution Avenue, NW., Room B102, Washington, DC. Such deliveries are only accepted during the Docket's normal hours of operation, and special arrangements should be made for deliveries of boxed information.

*Instructions:* Direct your comments to Docket ID No. OAR–2004–0489. The EPA's policy is that all comments received will be included in the public docket without change and may be made available online at *www.regulations.gov,* including any personal information provided, unless the comment includes information claimed to be Confidential Business Information (CBI) or other information whose disclosure is restricted by statute. Do not submit information that you consider to be CBI or otherwise protected through regulations.gov, or e-mail. The *www.regulations.gov* website is "anonymous access" systems, which means EPA will not know your identity or contact information unless you provide it in the body of your comment.