**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| TRIANTAFYLLOS TAFAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07cv846(L) (JCC/TRJ) |
| | ) | |
| JON W. DUDAS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |

**CONSOLIDATED WITH**

| | | |
|---|---|---|
| SMITHKLINE BEECHAM | ) | |
| CORPORATION, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 1:07cv1008 (JCC/TRJ) |
| v. | ) | |
| | ) | |
| JON W. DUDAS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION FOR ISSUANCE OF PROPOSED BRIEFING SCHEDULE**
**IN LIEU OF A STANDARD INITIAL SCHEDULING ORDER**

**INTRODUCTION**

At the preliminary injunction hearing just nine days ago, counsel for the "GSK" Plaintiffs

repeatedly represented to this Court that a preliminary injunction would only need to be in place

for "a month and a half."[1] Ex. 1, p. 11. GSK counsel explained that his client was prepared to

"have this argued on the merits in December," on the same schedule that Plaintiff Triantafyllos

_____

[1] The "GSK" Plaintiffs are SmithKline Beecham Corp., d/b/a GlaxoSmithKline, and its affiliates.

Dockets.Justia.com

Tafas had agreed to follow.  Id.

Now that the Court has issued a preliminary injunction, GSK and Tafas have done an about-face.  They have proposed a briefing schedule that would leave three months for discovery and call for a hearing in April, not December.

Moreover, Tafas has unilaterally noticed the depositions of four high-level officials at the United States Patent and Trademark Office, including Under-Secretary of Commerce for Intellectual Property and Director of the USPTO Jon Dudas.  This Court has not issued a scheduling order authorizing discovery, and discovery should not be allowed in this action, which arises under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706.

In order to halt Tafas and GSK's stalling efforts, clarify that no discovery is permitted, and allow the Court reach the merits expeditiously so that the Final Rules are not preliminarily enjoined longer than necessary, Defendants Jon Dudas and the USPTO (collectively "the USPTO") respectfully request that the Court enter an Order clarifying that a standard scheduling order will not issue in these consolidated cases because the cases may promptly be decided on cross-motions for summary judgment without discovery.  The USPTO has provided a proposed order suggesting a reasonable briefing schedule – a briefing schedule that represents a good faith compromise between what the USPTO and the Plaintiffs originally proposed to each other.

## BACKGROUND

On August 21, 2007, the USPTO published a 127-page Federal Register notice announcing the promulgation of Final Rules concerning the patent application process.  See Changes to Practice for Continued Examination Filings, Patent Applications Containing Patentably Indistinct Claims, and Examination of Claims in Patent Applications; Final Rule, 72

Fed. Reg. 46716 (Aug. 21, 2007).[2]  The Federal Register notice explains in detail the rationale

for the Final Rules, responds to 348 public comments, and, as this Court noted in its recent

Memorandum Opinion, "reflects that the PTO considered weaker alternatives but concluded that

those measures would be inadequate to achieve the PTO's goals."  Mem. Op. at 26, 1:07cv1008,

Dkt. No. 64.

        The day after the USPTO issued its Final Rules, Tafas filed a lawsuit seeking to enjoin

them.  In his Amended Complaint for Declaratory and Injunctive Relief and Petition for Review

of Rulemaking ("Amended Complaint"), Tafas raises a facial challenge to the Final Rules under

the APA, 5 U.S.C. §§ 553 & 706, and the Regulatory Flexibility Act ("RFA"), 5 U.S.C. §§ 601-

612.  See 1:07cv846, Dkt. No. 14, ¶ 7.

        On September 21, 2007, the Court approved a stipulation between Tafas and the USPTO

that provided for expedited summary judgment briefing.  1:07cv846, Dkt. No. 16.  The

stipulation called for the USPTO to file the administrative record by October 5, 2007 and for

Tafas to file a motion for summary judgment by October 25, 2007.  On October 5, 2007, the

USPTO filed the nearly 10,000-page record of its rulemaking.  1:07cv846, Dkt. Nos. 21, 22.   In

addition to thousands of pages of public comments, presentations, and correspondence, the

administrative record includes more than 4,000 pages of data related to the rulemaking generally,

A03200-A07202, and another 1,000 pages of material related to the USPTO's RFA analysis,

A07203-A08329.

        Before Tafas was to file his summary judgment motion, GSK filed suit.  1:07cv1008,

_____

        [2]        The USPTO previously filed this notice with the Court as Exhibit 2 to the
Memorandum in Support of Defendants' Opposition to Plaintiffs' Motion for a Temporary
Restraining Order and Preliminary Injunction.  See 1:07cv1008, Dkt. No. 60.

Dkt. Nos. 1 & 5.  Like Tafas's Amended Complaint, GSK's Verified Amended Complaint raises

facial, legal challenges to the Final Rules and acknowledges that "[t]his case arises under causes

of action created by the judicial review provisions of the Administrative Procedure Act, 5 U.S.C.

§ 701, et seq."  1:07cv1008, Dkt. No. 5, ¶ 23.

On October 15, 2007, GSK moved the Court for a temporary restraining order and

preliminary injunction ("Preliminary Injunction Motion").  1:07cv1008, Dkt. No. 12.  In the

proposed order that GSK filed with its Preliminary Injunction Motion, it asked the Court to set a

briefing schedule that would have its summary judgment motion due on October 29, 2007, even

if the Court granted the preliminary injunction.[3]  1:07cv1008, Dkt. No. 28.

In order to respond to the changed landscape caused by GSK's Preliminary Injunction

Motion, Tafas and the USPTO negotiated a slight modification of their briefing schedule,

providing for Tafas to file a summary judgment motion on November 7, 2007 instead of October

25, 2007.  1:07cv846, Dkt. No. 28.

On October 31, 2007, the Court issued a preliminary injunction.  1:07cv846, Dkt. No. 65.

At oral argument, counsel for GSK John Desmarais reaffirmed GSK's readiness to go forward

immediately, stating:

> And as we said in our papers, we're happy to get on this briefing
> schedule that you've already put in place for the Tafas case and **have
> this argued on the merits in December**.  We think we can get that
> done.  Most of the work has been done in the preliminary injunction

---

[3]     Because the hearing on the preliminary injunction motion ultimately occurred on
October 31, 2007 rather than October 26, 2007, the October 29, 2007 date that GSK requested in
its Proposed Order was overtaken by events.  Nevertheless, GSK's initial request for that date
shows that it was prepared to have the Court quickly order it to file a summary judgment motion,
without undertaking discovery, even if a preliminary injunction issued.  And, as noted above,
GSK counsel stated at the preliminary injunction hearing that he was prepared to argue the merits
in December 2007.  See Ex. 1, pp. 11, 13.

papers.

So we're only asking – if you think about what we're asking for, we're only asking for, you know, **a month and a half**, to stop these new rules from going into effect for **a month and a half**.

Ex. 1, p. 11 (emphases added). Indeed, later, Mr. Desmarais again stated, "We'll resolve the merits of this case on whatever schedule Your Honor wants to set. We're happy to do it on the current schedule, which is December." Id., p. 13.

On November 2, 2007, undersigned counsel for the USPTO, in a good faith attempt to negotiate a briefing schedule, sent Plaintiffs the proposed consent order attached hereto as Exhibit 2. The USPTO's proposed consent order reasonably called for Plaintiffs to file their summary judgment motion on November 13, 2007 – later than GSK indicated in its Proposed Order and at oral argument that it would be prepared to file for summary judgment, and later than Tafas had agreed to file his summary judgment brief if the Court had denied GSK's Preliminary Injunction Motion. See id., ¶ 1. The USPTO's proposed consent order further called for briefing to continue through December 2007 and January 2008, with a hearing in early February 2008. See id., ¶¶ 2-7.

On November 5, 2007, before either of the Plaintiffs had responded to the USPTO's proposal, Tafas unilaterally filed four Notices of Depositions, seeking to depose Under-Secretary of Commerce for Intellectual Property and Director of the USPTO Jon Dudas and three other high-level USPTO officials.[4] 1:07cv846, Dkt. Nos. 51-54. Tafas counsel did not consult with undersigned counsel for the USPTO before filing these Notices.

---

[4] Tafas seeks to depose: Under-Secretary Dudas on December 7, 2007; Commissioner of Patents John Doll on December 11, 2007; Deputy Commissioner for Patent Examination Policy John Love on December 12, 2007; and Senior Patent Attorney Robert Bahr on December 14, 2007. 1:07cv846, Dkt. Nos. 51-54.

Later on November 5, 2007, Plaintiffs jointly sent undersigned counsel their own proposed briefing schedule, which set aside three months – November and December 2007 and January 2008 – for the parties to conduct discovery before commencing briefing on the summary judgment motion. See Ex. 3. In calling for briefing to commence in late January 2008 and a hearing to be held in April 2008, Plaintiffs demanded far more than the "month and a half" that Mr. Desmairas represented at oral argument was all that was needed for this Court to reach the merits.[5] See Ex. 1, p. 11.

Because this case arises under the APA and judicial review in an APA case is ordinarily limited to the administrative record, upon receiving Plaintiffs' proposed briefing schedule, undersigned counsel for the USPTO asked Tafas and GSK counsel to explain why they believed discovery was appropriate in this case. See Ex. 4, e-mail #1. GSK counsel Christopher Mizzo responded that he believed that discovery was needed because "the record is incomplete." Id., e-mail #2. Undersigned counsel then asked Mr. Mizzo to identify what he believed was missing from the record, explaining that if the USPTO had inadvertently omitted any material, it would like an opportunity to investigate any such omission and correct the record. Id., e-mail #3. After a further exchange between the USPTO and Tafas counsel James Nealon, in which Mr. Nealon

_____

[5] Undersigned counsel explained at oral argument that because Tafas had violated the terms of the consent Order that he and the USPTO had agreed to, 1:07cv846, Dkt. No. 28, and because the briefing schedule in that consent Order would not provide adequate time for the USPTO to respond to GSK and all of the amici who had since entered the case, the USPTO should no longer be bound by that briefing schedule. See Ex. 1, pp. 63-64, 77-78. The Tafas briefing schedule would have required Tafas to move for summary judgment by November 7, 2007, the USPTO to file its cross-motion for summary judgment by December 4, 2007, and briefing to continue until a hearing on December 21, 2007. 1:07cv846, Dkt. No. 28. The briefing schedule that the USPTO proposed to Plaintiffs and now proposes to this Court would provide sufficient time for briefing because it calls for the parties to file cross-motions for summary judgment simultaneously on December 20, 2007 and ultimately have a hearing on February 15, 2008.

described the administrative record as "exceptionally voluminous and dense," id., e-mail #4, the parties conferred by telephone.

During the ensuing telephone call, undersigned counsel again asked Mr. Mizzo to identify what was missing from the administrative record so that the USPTO would have an opportunity to investigate the matter. Mr. Mizzo stated that he was "not at liberty" to divulge what GSK believed to be missing from the record. Mr. Mizzo thereby left undersigned counsel with no way to remedy any possible defects in the record and no way to assess the validity of GSK's demand for discovery.[6]

Undersigned counsel also asked Mr. Nealon why he believed it was necessary to take the depositions of four agency officials, including an agency head. Mr. Nealon cited a trivial issue concerning the RFA, and otherwise said that he broadly would like to ask these officials about "some other APA issues." Again, Plaintiffs' counsel failed to meaningfully respond to the undersigned's reasonable and good faith efforts to determine what, if anything, might have been omitted from the "exceptionally voluminous and dense" record. Ex. 4, e-mail #4.

On November 8, 2007, undersigned counsel for the USPTO made a final attempt to reach a compromise with Plaintiffs by suggesting a briefing schedule that would have put in place the dates specified in the proposed order attached to this motion. Ex. 5. Despite the USPTO making significant concessions to Plaintiffs in this compromise consent order, see Ex. 5, Plaintiffs refused to accept it. Upon further discussion on a telephone call, Plaintiffs refused to change anything in their initial proposed schedule other than to suggest moving a hearing by one week,

---

[6]    In a later telephone call on November 9, 2007, Mr. Mizzo agreed to identify some of what GSK wanted through discovery. Mr. Mizzo explained that the so-called "limited" discovery GSK sought was the same as what was contained in the extraordinarily broad FOIA requests that GSK had served on the USPTO in the intervening days. See, e.g., Ex. 7.

7

up to April 4, 2007.

The parties are now at an impasse. Plaintiffs are insisting on a discovery period, which the USPTO knows to be improper. Plaintiffs also are unwilling to move with the expediency that they previously represented to this Court was possible. In the face of the depositions Tafas has noticed and Plaintiffs' dramatic about-face on scheduling, the USPTO simply has no choice but to seek relief from this Court.

## ARGUMENT

## I.    THE COURT SHOULD NOT AUTHORIZE DISCOVERY IN THESE CONSOLIDATED APA CASES.

When Tafas counsel noticed four depositions on November 5, 2007, the Court had not issued its standard scheduling order and the parties had never conferred to discuss the propriety of discovery. In this Court, the issuance of the scheduling order commences discovery. The standard scheduling order provides: "Discovery may begin as of receipt of this Order." E.g., Ex. 6. Here, the Court has correctly withheld its standard scheduling order – and should continue to withhold that order – because discovery is inappropriate in these consolidated APA cases.

It is well-established that in APA cases, "the focal point for judicial review should be the administrative record already in existence, not some new record initially made in the reviewing court." Camp v. Pitts, 411 U.S. 138, 142 (1973); see 5 U.S.C. § 706 (in deciding whether an agency acted in an arbitrary or capricious manner or contrary to law, "the court shall review the whole record or those parts of it cited by a party"); see also Fort Sumter Tours v. Babbitt, 66 F.3d 1324, 1336 (4th Cir. 1995) ("Judicial review of administrative action is generally confined to the administrative record."); IMS, P.C. v. Alvarez, 129 F.3d 618, 623 (D.C. Cir. 1997) ("It is a widely accepted principle of administrative law that the courts base their review of an agency's

8

actions on the materials that were before the agency at the time its decision was made."). Thus, "[t]he task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985) (citing Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402 (1971)).

    This Court and others have recognized only a few narrow circumstances where expansion of an administrative record may be justified.  These circumstances include: (1) "a failure in the record to explain administrative action as to frustrate judicial review," (2) "the agency's reliance on materials or documents not included in the administrative record;" or (3) "the need to supplement the record to explain or clarify technical terms or other difficult subject matter included in the record."  Am. Canoe Ass'n, Inc. v. U.S. Envtl. Prot. Agency, 46 F. Supp. 2d 473, 477 (E.D. Va. 1999) (Ellis, J.) (emphasis added).   These exceptions apply, however, only in "extraordinary circumstances," and a "strong showing" is required to rebut the presumption against discovery.[7]  Voyageurs Nat'l Park Ass'n v. Norton, 381 F.3d 759, 766 (8th Cir. 2004) ("These exceptions apply only under extraordinary circumstances, and are not to be casually invoked unless the party seeking to depart from the record can make a strong showing that the specific extra-record material falls within one of the limited exceptions."); Newton County Wildlife Ass'n v. Rogers, 141 F.3d 803, 807 (8th Cir. 1998) ("[W]hen as here there is a contemporaneous administrative record and no need for additional explanation of the agency decision, 'there must be a strong showing of bad faith or improper behavior' before the reviewing

---

    [7]    The Federal Rules of Civil Procedure embody the presumption against discovery in APA cases by exempting record review cases from the requirement of providing initial disclosures, see Fed. R. Civ. P. § 26(a)(1)(E)(i).

court may permit discovery and evidentiary supplementation of the administrative record.")
(quoting Overton Park, 401 U.S. at 414-15).

In view of these principles, courts have been extremely reluctant to permit discovery in
APA cases and have typically disallowed it.  See, e.g., NVE, Inc. v. Dep't of Health & Human
Servs., 436 F.3d 182, 195-96 (3d Cir. 2006) (affirming denial of discovery because "[t]here are
no grounds in the APA to permit discovery in this case"); Comm. Drapery Contractors, Inc. v.
United States, 133 F.3d 1, 7 (D.C. Cir. 1998) (affirming denial of discovery and holding that
plaintiff was "not entitled to discovery of the agency's decision-making process" because APA
review is exclusively based upon the administrative record "except when there has been a 'strong
showing of bad faith or improper behavior' or when the record is so bare that it prevents judicial
review") (quoting Overton Park, 401 U.S. at 420); James Madison Ltd. by Hecht v. Ludwig, 82
F.3d 1085, 1095-96 (D.C. Cir. 1996) (affirming denial of discovery in APA record review case);
Fort Sumter Tours, Inc., 66 F.3d at 1335-36 (affirming grant of protective order prohibiting
discovery in APA case).

Plaintiffs have not and cannot justify their desire for extra-record discovery.  GSK has
simply said that it believes the record to be "incomplete" but has refused to identify even a single
item that is missing.  Even if the record were in some way incomplete, which it is not, there is
nothing close to "a failure in the record to explain administrative action as to frustrate judicial
review."  Am. Canoe Ass'n, 46 F. Supp. 2d at 477; see also Cmty. for Creative Non-Violence v.
Lujan, 908 F.2d 992, 998 (D.C. Cir. 1990) ("Only in the rare case in which the record is so bare
as to frustrate effective judicial review will discovery be permitted under the second exception
noted in Overton Park.").  The Eighth Circuit rejected an argument similar to GSK's in
Voyageurs:

The Association's argument hinges on its assertion that the administrative record is **incomplete** and thus will frustrate effective judicial review. However, the exception allowing extra-record evidence to explain the administrative record and agency decision is **very narrow**. Inquiry into the mental processes of administrative decisionmakers is to be avoided unless it is "the only way there can be effective judicial review." <u>Overton Park</u>, 401 U.S. at 420, 91 S.Ct. 814; <u>Camp</u>, 411 U.S. at 142-43, 93 S.Ct. 1241.

The Association's claims notwithstanding, the administrative record in this case – which consists of over **ten-thousand pages** of reports, correspondence, studies and analyses – is **fully sufficient to facilitate judicial review without discovery**. We are satisfied that the district court's denial of extra-record discovery was not an abuse of discretion, and the decision is therefore affirmed.

<u>Voyageurs</u>, 381 F.3d at 366 (emphases added).

In addition to compiling a nearly 10,000-page record of the rulemaking, the USPTO issued a 127-page <u>Federal Register</u> notice that explains its action in extraordinary detail. This Court apparently had no difficulty understanding the USPTO's rationale for its actions at the preliminary injunction stage, and concluded that "the PTO's rationale appears to be sufficient to satisfy arbitrary and capricious review." <u>See</u> Mem. Op. at 26. Plaintiffs cannot seriously contend that this detailed <u>Federal Register</u> notice, undergirded by an extensive record, fails to explain the USPTO's actions.

Nor is there any need for discovery to explain or clarify technical terms. In addition to GSK counsel being patent lawyers who presumably understand the patent concepts at issue, GSK has hired its own expert to explain or clarify technical terms or concepts. <u>See</u> Declaration of Harry F. Manbeck Jr., 1:07cv1008, Dkt. No. 16. Tafas counsel expressed an intent to do the same during the telephone conversation referenced earlier. Plaintiffs therefore have no need for USPTO officials to explain patent terms or concepts to them.

Plaintiffs also cannot attempt to justify their desire for discovery by merely speculating

11

about what the USPTO might or might not use to support its case at summary judgment.  See Am. Canoe Ass'n, 46 F. Supp. 2d at 477.

In any event, the vast majority of the issues in this case will not even implicate the administrative record.  As this Court knows from the preliminary injunction briefing, most of the issues involve pure questions of law, many of which could be decided even without an administrative record, much less discovery.  Such issues include, for example, whether Congress has delegated the USPTO authority to promulgate the Final Rules, whether the Final Rules conflict with the Patent Act, 35 U.S.C. §§ 1 et seq., and whether they are retroactive.  The primary issue that requires an administrative record – the determination of whether the USPTO acted in an "arbitrary or capricious" manner – clearly can be decided based on the 127-page Federal Register notice and the nearly 10,000-page record, as this Court has already signaled.[8] See Mem. Op. at 26.

Plaintiffs' attempt to reserve three months for discovery – even when GSK and Tafas were previously prepared to file summary judgment motions as early as October 29, 2007 and November 7, 2007, respectively, and GSK counsel represented to the Court that a preliminary

---

[8]    Tafas's RFA claim also does not require discovery, as the RFA, like the APA, contemplates only record review.  The judicial review provision of the RFA provides that "[i]n an action for the judicial review of a rule, the regulatory flexibility analysis for such rule . . . shall constitute part of the entire record of agency action in connection with such review."  5 U.S.C. § 611(b).  Moreover, "[t]he RFA imposes no substantive requirements on an agency; rather, its requirements are 'purely procedural' in nature."  Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric., 415 F.3d 1078, 1100 (9th Cir. 2005) (quoting U.S. Cellular Corp. v. FCC, 254 F.3d 78, 88 (D.C. Cir. 2001)).  The Court needs nothing more than the RFA-specific items in the Federal Register notice, 72 Fed. Reg. at 46830-46835, and the administrative record, A07203-A08329, to determine whether the USPTO followed the RFA's procedures when it issued a certification pursuant to the RFA.  See, e.g., Little Bay Lobster Co. v. Evans, 352 F.3d 462, 470-71 (1st Cir. 2003) (conducting RFA review on the administrative record).

12

injunction would only be needed for "a month and a half" – can only be understood as an effort to prevent the USPTO from timely presenting the merits of the case to this Court now that a preliminary injunction is in place.  Ex. 1, p. 11.  The Court should not countenance such delay tactics, and instead, should issue an Order clarifying that discovery is inappropriate and putting in place the reasonable briefing schedule suggested in the USPTO's proposed Order.

## II.    THE DEPOSITIONS OF HIGH-LEVEL AGENCY OFFICIALS ARE PARTICULARLY IMPERMISSIBLE.

In addition to the reasons why discovery should not be allowed generally in this APA case, there are particular reasons why the Court should specifically prohibit Plaintiffs from deposing Under-Secretary Dudas and the other agency officials.  As the Supreme Court held in Overton Park, "where there are administrative findings that were made at the same time as the decision, . . . there must be a strong showing of bad faith or improper behavior" before administrative officials can be required to give testimony explaining their actions.  401 U.S. at 420.  Here, there is absolutely no evidence of bad faith or improper behavior on the part of the USPTO.

Moreover, even if the administrative record were somehow insufficient to explain the USPTO's decisionmaking – which this Court has already recognized is not the case – Plaintiffs "might have been entitled to a remand to the agency for further explanation, but it would not have been entitled to depose the agency decisionmaker."  Cmty. for Creative Non-Violence, 908 F.2d at 998.  As the Supreme Court explained in Florida Power & Light, "[i]f the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the

agency for additional investigation or explanation." 470 U.S. at 744. The proper course is <u>not</u> to authorize the depositions of agency decision-makers.

Furthermore, the depositions of Under-Secretary Dudas, Commissioner of Patents John Doll, and Deputy Commissioner for Patent Examination Policy John Love, are further impermissible because they would involve probing the mental processes of high-level agency officials. In <u>United States v. Morgan</u>, 313 U.S. 409 (1941), the Supreme Court chastised the district court for requiring the Secretary of Agriculture to be deposed and then called to testify at trial in a pre-APA case challenging an administrative order. "[T]he short of the business," the Court held, "is that the Secretary should never have been subjected to this examination." <u>Id.</u> at 422. Just as the "examination of a judge would be destructive of judicial responsibility, . . . the integrity of the administrative process must be equally respected." <u>Id.</u> "It was not the function of the court to probe the mental processes of the Secretary." <u>Id.</u> (internal quotation marks omitted).

After <u>Morgan</u>, it is widely understood that absent extraordinary circumstances not present here, a government decision-maker cannot be required to testify about his mental processes in reaching a decision, "including the manner and extent of his study of the record and his consultation with subordinates." <u>Id.</u>; <u>see</u> <u>Simplex Time Recorder Co. v. Sec'y of Labor</u>, 766 F.2d 575, 586 (D.C. Cir.1985) ("[T]op executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions."); <u>Sweeney v. Bond</u>, 669 F.2d 542, 546 (8th Cir.), <u>cert. denied</u>, 459 U.S. 878 (1982); <u>Kyle Eng'g Co. v. Kleppe</u>, 600 F.2d 226, 231-32 (9th Cir.1979); <u>Warren Bank v. Camp</u>, 396 F.2d 52, 56 (6th Cir.1968); <u>U.S. Bd. of Parole v. Merhige</u>, 487 F.2d 25, 29 (4th Cir.1973), <u>cert. denied</u>, 417 U.S. 918 (1974); <u>Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena</u>, 40 F.R.D. 318, 325-26 (D.D.C.), <u>aff'd</u>, 384 F.2d 979 (D.C. Cir. 1966); <u>Feller v. Bd. of Educ. of Conn.</u>, 583 F.

Supp. 1526, 1528 (D. Conn. 1984).

Accordingly, the Court should quash the four Notices of Deposition and should issue the proposed Order, which would set this case on the proper course directly to summary judgment briefing.

<h2 style="text-align:center"><u>CONCLUSION</u></h2>

For these reasons, the USPTO respectfully asks the Court to stay issuance of a standard scheduling order, disallow discovery in this case, and institute the USPTO's reasonable proposed briefing schedule.

Respectfully submitted,

CHUCK ROSENBERG
UNITED STATES ATTORNEY

By:      ____/s/_____
LAUREN A. WETZLER
RALPH ANDREW PRICE JR.
R. JOSEPH SHER
Assistant United States Attorneys
Attorneys for All Defendants
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: (703) 299-3752
Fax: (703) 299-3983
Lauren.Wetzler@usdoj.gov

OF COUNSEL:
James A. Toupin
General Counsel

Stephen Walsh
Acting Deputy General Counsel
  and Solicitor

William Covey
Deputy General Counsel

William G. Jenks
Janet A. Gongola
William LaMarca
Associate Solicitors

Jennifer M. McDowell
Associate Counsel

United States Patent and Trademark Office

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 9, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Joseph Dale Wilson, III
Kelley Drye & Warren LLP
Washington Harbour
3050 K Street NW
Suite 400
Washington, DC 20007
Email: jwilson@kelleydrye.com

*Counsel for Plaintiff Triantafyllos Tafas, 1:07cv846*

Elizabeth Marie Locke
Kirkland & Ellis LLP
655 15th St NW
Suite 1200
Washington, DC 20005
Email: elocke@kirkland.com

Craig Crandell Reilly
Richard McGettigan Reilly & West PC
1725 Duke St
Suite 600
Alexandria, VA 22314
Email: craig.reilly@rmrwlaw.com

Daniel Sean Trainor
Kirkland & Ellis LLP
655 15th St NW
Suite 1200
Washington, DC 20005
Email: dtrainor@kirkland.com

*Counsel for Plaintiffs SmithKline Beecham Corp. d/b/a GlaxoSmithKline, SmithKline Beecham PLC, and Glaxo Group Limited, d/b/a GlaxoSmithKline*

Thomas J. O'Brien
Morgan, Lewis & Bockius
1111 Pennsylvania Ave, NW
Washington, DC 20004
Email: to'brien@morganlewis.com

*Counsel for Amicus American Intellectual Property Lawyers Association*

Dawn-Marie Bey
Kilpatrick Stockton LLP
700 13th St NW
Suite 800
Washington, DC 20005
Email: dbey@kslaw.com

*Counsel for Amicus Hexas, LLC, The Roskamp Institute, Tikvah Therapeutics, Inc.*

James Murphy Dowd
Wilmer Cutler Pickering Hale & Dorr LLP
1455 Pennsylvania Ave NW
Washington, DC 20004
Email: james.dowd@wilmerhale.com

*Counsel for Putative Amicus Pharmaceutical Research and Manufacturers of America*

Randall Karl Miller
Arnold & Porter LLP
1600 Tysons Blvd
Suite 900
McLean, VA 22102
Email: randall_miller@aporter.com

*Counsel for Putative Amicus Biotechnology Industry Organization*

Rebecca M. Carr
Pillsbury Winthrop Shaw Pittman, LLP
2300 N Street, NW
Washington, DC 20037
Rebecca.carr@pillsburylaw.com

Scott J. Pivnick
Pillsbury Winthrop Shaw Pittman
1650 Tysons Boulevard
McLean, Virginia 22102-4856

Scott.pivnick@pillsburylaw.com

*Counsel for Amicus Elan Pharmaceuticals, Inc.*

_____/s/_____

LAUREN A. WETZLER
Assistant United States Attorney
Justin W. Williams U.S. Attorney's Building
 2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: (703) 299-3752
 Fax: (703) 299-3983
Lauren.Wetzler@usdoj.gov

*Counsel for All Defendants*