## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |  |
|---|---|---|
| **TRIANTAFYLLOS TAFAS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **1:07cv846 (JCC/TRJ)** |
| | : | |
| **JON W. DUDAS, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

### CONSOLIDATED WITH

|  |  |  |
|---|---|---|
| **SMITHKLINE BEECHAM** | : | |
| **CORPORATION,** | : | |
| **d/b/a GLAXOSMITHKLINE, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | **1:07cv1008 (JCC/TRJ)** |
| | : | |
| **JON W. DUDAS, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

### GLAXOSMITHKLINE'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR ISSUANCE OF PROPOSED BRIEFING SCHEDULE IN LIEU OF A STANDARD INITIAL SCHEDULING ORDER

Dockets.Justia.com

**<u>INTRODUCTION</u>**

At the preliminary injunction hearing, Plaintiff GlaxoSmithKline ("GSK") said that it was prepared to comply with the schedule in place at the time between the Patent and Trademark Office ("PTO") and Mr. Tafas, and to argue the summary judgment motions in December:

> And it's just a preliminary injunction until we get to the merits. And as we said in our papers, we're happy to get on this briefing schedule that you've already put in place for the *Tafas* case and have this argued on the merits in December.

Ex. A at 11. Subsequently, it was the PTO that took the *Tafas* schedule "off the table," not GSK.

*Id.* at 63. In doing so, the PTO made clear that it sought a longer schedule for its convenience:

> Your Honor, in light of the Court granting the preliminary injunction, I think that some of the issues that I alluded to may be less pertinent. In the *Tafas* briefing schedule, even if the Court were to believe that were still in place, there was a recognition that if the Court granted the preliminary injunction, the parties would potentially renegotiate the briefing schedule because there would be somewhat less urgency on the part of the plaintiffs. Certainly, the PTO would like these rules to go into effect as quickly as possible. However, we do recognize that given the array of folks lined up against us, we do want adequate time to brief the issue.

*Id.* at 77-78. GSK acquiesced in the PTO's request to delay resolution of this matter, and agreed to negotiate a schedule with the PTO.

After the Court granted the preliminary injunction, the parties engaged in a meet-and-confer process in an effort to agree upon a briefing schedule for cross-motions for summary judgment. Defendants proposed a date in February 2008. GSK informed Defendants that GSK's lead trial counsel is already scheduled for trial in February and March,[1] and that April worked better for GSK. The April date was also proposed to provide the Defendants time to complete

---

[1] Mr. Desmarais is lead trial counsel in *Medpoint Healthcare Inc. v. Apotex Inc.*, No. 06-cv-164-SLR (D. Del.) (trial set to begin on February 4, 2008) and *Lucent Techs., Inc. v. Gateway, Inc.*, No. 02-cv-2060-B (CAB) (S.D. Cal.) (trial set to begin on February 20, 2008).

the administrative record, after the exhaustion of FOIA requests and, if necessary, through motions filed with the Court to remedy remaining record deficiencies.

Despite being informed repeatedly that, in February, GSK's lead trial counsel would be first-chairing two previously scheduled trials in Federal District Court in Delaware and San Diego, the Defendants refused to negotiate a summary judgment hearing date other than in February. When asked to justify their insistence on February, Defendants would not (or could not) explain why a February hearing date was necessary. It is respectfully submitted that an April hearing date is proper here to accommodate both sides' interests, and to permit full and adequate briefing and presentation of this important matter for the Court's consideration. *See* Ex. B (Plaintiffs' Proposed Scheduling Order).

## ARGUMENT

All matters concerning docket control and scheduling are committed to the sound discretion of the district court. *Latham v. Crofters, Inc.*, 492 F.2d 913, 914 (4th Cir. 1974); *SEC v. Infinity Group Co*., 212 F.3d 180, 197 (3rd Cir. 2000) ("Matters of docket control and scheduling are within the sound discretion of the district court."). In scheduling matters, the Court "must weigh all factors involved, including the saving of time and effort by the Court, counsel, and the litigants, any hardship on either party, and the Court's calendar." *Clark v. Lutcher*, 77 F.R.D. 415, 418 (M.D. Pa. 1977) (stating factors). When setting a matter for final adjudication, it is proper to consider the conflicting trial schedule of a party or its counsel. *See Linear Prods., Inc. v. Marotech, Inc*., 189 F. Supp. 2d 461, 468 (W.D. Va. 2002) (re-setting trial date to accommodate party's conflicting trial schedule). In the absence of "actual" and "substantial" prejudice, the Court's discretionary scheduling decisions will not be disturbed. *SEC v. Infinity Group*, 212 F.3d at 197. When applying those factors here, it is readily apparent

that the PTO's proposed schedule will cause "actual" and "substantial" harm to GSK by denying

GSK the right to have its lead counsel participate and by preventing the proper supplementation

of the administrative record.  By contrast, GSK's proposed schedule will not harm the PTO's

interests whatsoever, and will reasonably accommodate all the pertinent factors.

### A.     The PTO's Proposed Schedule Conflicts With GSK's Lead Counsel's Previously-Scheduled Trial Dates.

Since this Court's October 31, 2007 decision preliminarily enjoining the Final Rules,

GSK has steadfastly and in good faith engaged the government in scheduling negotiations.  The

government does not argue to the contrary.   During that process, GSK explained to the

government that GSK's lead counsel, John Desmarais, will be at trial in February and March on

other cases, precluding his ability to argue summary judgment motions on the February date

sought by the government.  The government, however, seeks this Court's imprimatur on an

Order that would deny GSK its chosen lead advocate, Mr. Desmarais.

It is well-settled that "a party's right to have counsel of its choosing is a fundamental

tenet of American jurisprudence."  *Capacchione v. Charlotte-Mecklenburg Bd. of Educ.*, 9 F.

Supp. 2d 572, 579 (W.D.N.C. 1998); *see also FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1313

(5th Cir. 1995) ("Depriving a party of the right to be represented by the attorney of his or her

choice . . . must not be imposed without careful consideration.").  Mr. Desmarais has been

GSK's chosen counsel in significant cases.  And Mr. Desmarais argued GSK's preliminary

injunction ("PI") case before this Court.  As such, Mr. Desmarais is the attorney best-positioned

to argue GSK's case at summary judgment against a collection of rules that this Court has

already held are likely to be deemed unlawful. *See* Oct. 31, 2007 Mem. Op. at 21, 23-24, 29, 31.

GSK's expressed interest in avoiding a February hearing date is entirely consistent with

the representations it made during the PI hearing.  Mr. Desmarais indicated that GSK could

conform to the schedule that the parties had negotiated in the *Tafas* litigation. Ex. A at 11. Mr. Desmarais did so because he was available in December to argue summary judgment motions. The PTO, however, unilaterally abandoned that schedule when the PTO pulled it "off the table," indicating that it wanted more time to brief the issues. *Id.* at 63, 77-78.

So while GSK agrees in general with the proposition that everyone's interests are served in obtaining a decision in this matter with all deliberate speed, GSK quite rightly wishes to ensure that the schedule ultimately allows GSK's lead litigation counsel to participate by presenting oral argument at the summary judgment hearing—especially since it is the PTO that took the original December hearing date "off the table" for its own counsel's convenience. Holding summary judgment argument in April 2008 avoids a significant scheduling conflict for GSK's lead counsel in February and March 2008 and will improve the prospect that disputes concerning materials withheld from the administrative record can be realistically resolved in the agency-level FOIA process.

If the Court disagrees with GSK's proposed schedule attached as Exhibit B, then GSK respectfully requests that the Court enter GSK's alternative proposed schedule attached as Exhibit C, which would result in a hearing scheduled on January 30, 2008. The January 30, 2008 date is the date that GSK's lead counsel remains available closest in time to the February 2008 hearing date the PTO has requested.

**B.      GSK's Proposed Schedule Allows Time For The FOIA Process To Run Its Course.**

In a further effort to protect its interests, GSK has sought a reasonable period of time to allow the already-begun FOIA process to run its course. As the government's brief observes, GSK believes that the administrative record is incomplete. *See* Gov. Memorandum In Support Of Its Motion For Issuance Of Proposed Briefing Schedule In Lieu Of A Standard Scheduling

Order ("Gov. Sched. Br.") 6-7. Toward that end, GSK has submitted two separate requests under the Freedom of Information Act to ensure that it receives all that it needs (and all that it is due as a matter of law) to support its summary judgment motion, and, equally important, to avoid burdening the Court with requests for help in ensuring a complete record (for instance by filing a motion to supplement the administrative record in particular respects). *See* Ex. D (GSK letter to Fawcett dated November 8, 2007); Ex. E (GSK letter to Fawcett dated November 9, 2007). The FOIA process, even if it runs smoothly, can require several months to complete (a perfect estimate is impossible). That is the amount of "discovery" time GSK has proposed in its Scheduling Order. *See* Gov. Sched. Br. 6 (Plaintiffs' "proposed briefing schedule . . . set aside three months—November and December 2007 and January 2008—for the parties to conduct discovery before commencing briefing on the summary judgment motion.").[2]

Any member of the general public may file a FOIA request. And there is no question that GSK's rights to obtain the information it is due are not "in any way diminished by its being a private litigant" involved in a dispute with the PTO. *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 n.23 (1978). Further, the PTO's claim that GSK's FOIA requests are "exceptionally broad" is hyperbole. GSK's November 8, 2007 FOIA request seeks one category of documents, those related to Commissioner of Patents John J. Doll's public statement that the PTO had only a 50/50 chance of winning this case (in contrast to the PTO's litigation posture, in which it claimed that GSK had little chance of winning this case). *See* Ex. D. By the same

---

[2] An agency can take at least forty business days (approximately eight weeks) to process a FOIA request. *See* 5 U.S.C § 552(a)(6)(A)(i) (requiring that an agency respond to a FOIA request within twenty (20) business days, whether or not it intends to comply with that request); *id.* at § 552(a)(6)(A)(ii) (If the agency provides notice that it does not intend to comply with the request, and the requesting party appeals, it must process that appeal within twenty (20) business days.).

token, GSK's November 9, 2007 FOIA request seeks only three closely related and limited categories of documents: (i) documents considered by the Department of Commerce and the PTO (the "agencies") in formulating the Proposed and Final Rules; (ii) documents the agencies were requested to consider, but declined to consider in that same process; and (iii) documents the agencies considered when formulating guidance documents related to the Final Rules. *See* Ex. E. It is beyond dispute that the first two categories of documents should have been included in the official administrative record and that the PTO has made the last category of documents relevant by engaging in an attempt, *post hoc*, to paper over the holes in its Final Rules.

Contrary to the PTO's assertion, the size of the administrative record is not indicative of its completeness. Rather, there remain holes in the administrative record that prompted GSK to file its FOIA requests. For example, those holes include: (1) no documents explaining how the Final Rules form "part of a larger group of initiatives to improve the examination process and the quality of issued patents" (PTO's Opp. to GSK's PI Br. at 20); (2) no documents explaining how to comply with the examination support document's ("ESD's") preexamination search standards, including how and why the PTO attempted to link the Manual of Patent Examination and Procedure ("MPEP") to the preexamination search standards in the comments to the *Federal Register* (*id.* at 36); (3) no documents explaining the PTO's issuance of over 200 pages of guidance after promulgating the Final Rules; (4) no documents explaining why the PTO chose to use ten "representative" claims as the cutoff for requiring an ESD in the Proposed Rules, or explaining why the PTO chose the 5/25 cutoff in the Final Rules; (5) no documents identifying or explaining the mathematical or policy models used to generate data on or to quantify the patent application process and no documents explaining how such models were developed or how they operate; and (6) no more than a few communications (not including the comments)

between the PTO and any member of industry or any member of the general public, including professors, regarding the restrictions and requirements of the Proposed Rules or the Final Rules.

It is premature for this Court to weigh in on the merits of GSK's FOIA requests (the agencies have not even responded to them yet, and an agency appeal process follows any denial). That renders the government's request that this Court quash the FOIA requests inappropriate, and thus the government's request should be denied.  *See* Gov. Proposed Order (requesting that "any other discovery requests served to date" be "quashed").  GSK is not aware of any cases (nor does the government cite any) that quash the FOIA process before the agency has even responded to the requests that initiate that very process.  Such an unprecedented remedy would be manifestly contrary to the purpose of FOIA, which is precisely to require a thorough agency response that can later be reviewed in court.  *See Spannaus v. Dep't of Justice*, 824 F.2d 52, 59 (D.C. Cir. 1987) (indicating that a cause of action under FOIA accrues when the requester exhausts the administrative remedies).

### C.      GSK's Proposed Schedule Is The Most Workable.[3]

After the close of business on Friday, November 2, 2007, the PTO sent a proposed summary judgment schedule to GSK that was anything but fair or reasonable.  The PTO proposed that GSK file its summary judgment briefs *eleven days* later on November 13, 2007 while allotting itself nearly *six weeks* to respond and cross-move on December 21, 2007.  Then, the PTO proposed that GSK use the holiday season to respond to the PTO's papers on January 14, 2007.  The PTO also proposed a summary judgment hearing on February 8, 2008.  The PTO's initial proposal also went beyond a summary judgment briefing schedule.  In its initial

---

[3] A chart comparing the various proposals is attached hereto as Exhibit F.

proposal, the PTO wanted to dispense with its obligation to answer the complaint and to move for summary judgment affirmatively; instead, the PTO sought to have its single cross-motion for summary judgment serve as an answer, opposition, and cross-motion.  Finally, the PTO proposed that there be no discovery.

Because the PTO proposed a hearing no sooner than February, and because GSK's lead counsel is unavailable in February and March, on November 5, 2007, GSK proposed a schedule that set a hearing date for April 11, 2008, after lead counsel's February and March trials.  That hearing date also provided the added benefit of allowing the FOIA process—a tool routinely used to inquire into the adequacy and completeness of the administrative record—to run its course.  Based on its proposed April 11, 2008 hearing date, GSK also proposed a more relaxed briefing schedule that sought to treat each party, including the PTO, equitably.  GSK's November 5 counterproposal also required all parties who desired summary judgment on an issue to move affirmatively on a single date.  That counterproposal also rejected the PTO's request to dispense with an answer to the complaint because the answer would potentially narrow the issues in dispute and streamline summary judgment.

On November 6, 2007, the parties met and conferred.  GSK explained why its proposed dates were reasonable under the circumstances and that a February 8 hearing date is unworkable because Mr. Desmarais will be on trial.  The meet and confer concluded with the parties agreeing to meet and confer the next day.  The next day, on November 7, 2007, the PTO informed GSK that they were not prepared to go forward with the scheduled meet and confer, and that they would "be back in touch if/when we think it might be productive to talk again."  Ex. G.

On November 8, 2007, GSK issued its first FOIA request to the PTO.  Later that afternoon, the PTO sent another proposed schedule, demanding GSK's agreement by 2 p.m. the

next day, November 9, 2007, or it would seek Court intervention. In its November 8 proposal, the PTO rejected the dates in GSK's November 5 counterproposal, while conceding its obligations to file an answer and to move affirmatively if it was seeking summary judgment on issues in the case. The PTO proposed a hearing date of February 15 and set a briefing schedule accordingly.

On November 9, 2007, GSK sent a second FOIA request to the PTO and the Department of Commerce. The parties also conferred by telephone in the early afternoon, at which time GSK reiterated to the PTO that February 15 was unworkable because GSK's counsel was unavailable. GSK also expressed that a hearing date in early April would allow time for the FOIA process to run its course (what the parties were terming "discovery"). Aside from insisting that the PTO wants the rules to go into effect as soon as possible, which is belied by the fact that the PTO pushed the summary judgment schedule back two months from its originally negotiated schedule, the PTO did not identify a single interest in the February 15, 2007 hearing date.[4]

The PTO's motion followed. In light of GSK's valid interests in having its lead counsel present for a summary judgment hearing and allowing its FOIA requests to run their defined course, GSK respectfully requests that its proposal, which is attached as Exhibit B, be entered,

---

[4] During the November 9 telephone conference, GSK also informed the PTO that it did not believe it was appropriate to require *amici* to file their briefs in support of summary judgment on the same day as the parties, because that could result in needless duplication of argument—thereby wasting the Court's resources. Moreover, GSK also expressed its position that it was inappropriate to lock the *amici* into a schedule and a page limit for briefs when they were not being consulted in scheduling negotiations, although they had entered appearances in the case. GSK further expressed its view that a period of time for administrative discovery was required, but that such a period need not be reflected on the schedule. That is because GSK has a freestanding statutory right to issue FOIA requests and those requests are not a formal part of this case (though GSK reserves the right to apprise the Court of how the PTO is addressing those requests). Finally, GSK expressed its position that limiting the briefs that parties could file in support of summary judgment was unnecessary, as the Local Rules already covered that issue.

which schedules the summary judgment hearing for either April 4, 2008, or April 11, 2008, at the

Court's discretion.  If, however, the Court desires to address summary judgment on a more rapid

schedule, then GSK respectfully requests that the Court enter GSK's alternative proposal, which

is attached as Exhibit C and schedules the hearing for January 30, 2008—the Wednesday before

Mr. Desmarais' first previously-scheduled trial begins.[5]

## CONCLUSION

GSK seeks only a level playing field with its Proposed Scheduling Order.  Just as the

PTO can continue with its selected counsel through summary judgment, GSK would like the

same opportunity.  Likewise, GSK, in prosecuting this suit, would like to ensure that it has

available to it all of the information that the PTO possesses in formulating its defense.  Thus, due

time should be allotted for the PTO to collect, review, and produce the documents in response to

GSK's FOIA requests and to ensure that the administrative record complete.  GSK's Proposed

Order achieves these goals on a reasonable schedule.  Therefore, GSK respectfully requests its

Proposed Order be entered.

Date:   November 13, 2007        Respectfully submitted,
                                 /s/
                                 _____
                                 Craig C. Reilly VSB # 20942
                                 RICHARDS MCGETTIGAN REILLY & WEST, P.C.
                                 1725 Duke Street, Suite 600
                                 Alexandria, Virginia 22314
                                 Tel:    (703) 549-5353
                                 Email: craig.reilly@rmrwlaw.com
                                 Fax:    (703) 683-2941
                                 *Counsel for Plaintiffs*

---

[5] To the extent that the PTO desires a more rapid resolution of the merits, the January 30, 2008 hearing date should be acceptable to the PTO.  But if the PTO asserts that the hearing date or the corresponding deadlines are inconvenient for its counsel, GSK respectfully requests that the convenience and availability of all the parties be taken into consideration and that the schedule in Exhibit B be entered.

*Of Counsel for Plaintiffs:*
John M. Desmarais
Peter J. Armenio
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022
Tel:     (212) 446-4800

F. Christopher Mizzo
Jeffrey Bossert Clark
D. Sean Trainor VSB # 43260
KIRKLAND & ELLIS LLP
655 15th Street, N.W.
Washington, D.C. 20005
Tel:     (202) 879-5000

**ATTORNEYS FOR PLAINTIFFS**
**SmithKline Beecham Corporation d/b/a**
**GlaxoSmithKline, SmithKline Beecham plc, and**
**Glaxo Group Limited d/b/a GlaxoSmithKline**

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing pleading was filed electronically this 13th day of November 2007 using the CM/ECF system, which will send notification by electronic means to the following counsel of record:

CHUCK ROSENBERG
UNITED STATES ATTORNEY
Lauren A. Wetzler
R. Joseph Sher
Andrew Price
Assistant United States Attorneys
Justin W. Williams United States Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Lauren.Wetzler@usdoj.gov
*Counsel for All Defendants*

Joseph D. Wilson, Esq.
KELLY DRYE & WARREN LLP
3050 K Street, NW, Suite 400
Washington, DC 20007-5108
jwilson@kelleydrye.com
*Counsel for Plaintiff Triantafyllos Tafas (# 1:07cv846)*

Rebecca Malkin Carr
PILLSBURY WINTHROP SHAW PITTMAN LLP
2300 N St NW
Washington, DC 20037
rebecca.carr@pillsburylaw.com
            *and*
Scott J. Pivnick
PILLSBURY WINTHROP SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102-4856
Scott.pivnick@pillsburylaw.com
*Counsel for Amicus Elan Pharmaceuticals, Inc.*

James Murphy Dowd
WILMER CUTLER PICKERING HALE & DORR LLP
1455 Pennsylvania Ave NW
Washington, DC 20004
james.dowd@wilmerhale.com
*Counsel for Amicus Pharmaceutical Research and Manufacturers of America*

Dawn-Marie Bey
KIRKPATRICK STOCKTON LLP
700 13th Street, N.W.
Suite 800
Washington, D.C. 20005
dbey@kslaw.com
*Counsel for Amici Hexas, LLC, The Roskamp Institute, and*
*        Tikvah Therapeutics, Inc.*

Randall Karl Miller
ARNOLD & PORTER LLP
1600 Tysons Blvd
Suite 900
McLean, VA 22102
randall_miller@aporter.com
*Counsel for Amicus Biotechnology Industry Organization*

Thomas J. O'Brien (VA Bar 23628)
MORGAN LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington D.C. 20004
(202) 739-5186 (phone)
(202) 739-3001 (fax)
to'brien@morganlewis.com
*Attorneys for Amicus Curae*
*American Intellectual Property Law Association*


                              /s/
                              Craig C. Reilly VSB # 20942
                              RICHARDS MCGETTIGAN REILLY & WEST, P.C.
                              1725 Duke Street, Suite 600
                              Alexandria, Virginia 22314
                              TEL:    (703) 549-5353
                              EMAIL: craig.reilly@rmrwlaw.com
                              fax:    (703) 683-2941
                              *Counsel for GSK plaintiffs (# 1:07cv1008)*