Tafas v. Dudas et al
Case 1:07-cv-00846-JCC-TRJ    Document 66-4    Filed 11/14/2007    Page 1 of 4
Doc. 66 Att. 3

# EXHIBIT 3
# Page 1 of 3

Dockets.Justia.com

**§ 31.6011(a)–1  Returns under Federal Insurance Contributions Act.**

(a) * * *

(5) [The text of proposed § 31.6011(a)–1(a)(5) is the same as the text of § 31.6011(a)–1T(a)(5) published elsewhere in this issue of the **Federal Register**].

* * * * *

Par. 3. Section 31.6011(a)–4 is amended by revising paragraph (a)(4) to read as follows:

**§ 31.6011(a)–4  Returns of income tax withheld.**

(a) * * *

(4) [The text of proposed § 31.6011(a)–4(a)(4) is the same as the text of § 31.6011(a)–4T(a)(4) published elsewhere in this issue of the **Federal Register**].

* * * * *

Par. 4. Section 31.6302–1 is amended by revising paragraphs (b)(4), (c)(5) and 6, (d) *Example 6*, (f)(4), and (f)(5) *Example 3* to read as follows:

**§ 31.6302–1  Federal tax deposit rules for withheld income taxes and taxes under the Federal Insurance Contributions Act (FICA) attributable to payments made after December 31, 1992.**

* * * * *

(b) * * *

(4) * * *

(i) [The text of the proposed § 31.6302–1(b)(4)(i) is the same as the text of § 31.6302–1T(b)(4)(i) published elsewhere in this issue of the **Federal Register**].

(ii) [The text of the proposed § 31.6302–1(b)(4)(ii) is the same as the text of § 31.6302–1T(b)(4)(ii) published elsewhere in this issue of the **Federal Register**].

(c) * * *

(5) [The text of proposed § 31.6302–1(c)(5) is the same as the text of § 31.6302–1T(c)(5) published elsewhere in this issue of the **Federal Register**].

(6) [The text of proposed § 31.6302–1(c)(6 is the same as the text of § 31.6302–1T(c)(6) published elsewhere in this issue of the **Federal Register**].

(d) * * *

*Example 6.* [The text of proposed § 31.6302–1(d) *Example 6* is the same as the text of § 31.6302–1T(d) *Example 6* published elsewhere in this issue of the **Federal Register**].

* * * * *

(f) * * *

(4) *De minimis rule*—(i) *De minimis deposit rule for quarterly and annual return periods beginning on or after January 1, 2001.* If the total amount of accumulated employment taxes for the return period is *de minimis* and the amount is fully deposited or remitted with a timely filed return for the return period, the amount deposited or remitted will be deemed to have been timely deposited. The total amount of accumulated employment taxes is *de minimis* if it is less than $2,500 for the return period or if it is *de minimis* pursuant to paragraph (f)(4)(ii) of this section.

(ii) *De minimis deposit rule for quarterly return periods.* For purposes of paragraph (f)(4)(i) of this section, if the total amount of accumulated employment taxes for the immediately preceding quarter was less than $2,500, unless paragraph (c)(3) of this section applies to require a deposit at the close of the next banking day, then the employer will be deemed to have timely deposited the employer's employment taxes for the current quarter if the employer complies with the time and method of payment requirements contained in paragraph (f)(4)(i) of this section.

(iii) [The text of proposed § 31.6302–1(f)(4)(iii) is the same as the text of § 31.6302–1T(f)(4)(iii) published elsewhere in this issue of the **Federal Register**].

(5) * * *

*Example 3.* [The text of proposed § 31.6302–1(f)(5) *Example 3* is the same as the text of § 31.6302–1T(f)(5) *Example 3* published elsewhere in this issue of the **Federal Register**]

* * * * *

Mark E. Matthews,

*Deputy Commissioner for Services and Enforcement.*

[FR Doc. 05–24563 Filed 12–30–05; 8:45 am]

**BILLING CODE 4830–01–P**

---

**DEPARTMENT OF COMMERCE**

**Patent and Trademark Office**

**37 CFR Part 1**

**[Docket No.: 2005–P–066]**

**RIN 0651–AB93**

**Changes To Practice for Continuing Applications, Requests for Continued Examination Practice, and Applications Containing Patentably Indistinct Claims**

**AGENCY:** United States Patent and Trademark Office, Commerce.

**ACTION:** Notice of proposed rule making.

**SUMMARY:** Continued examination practice, including the use of both continuing applications and requests for continued examination, permits applicants to obtain further examination and advance an application to final agency action. This practice allow applicants to craft their claims in light of the examiner's evidence and arguments, which in turn may lead to well-designed claims that give the public notice of precisely what the applicant regards as his or her invention. However, each continued examination filing, whether a continuing application or request for continued examination, requires the United States Patent and Trademark Office (Office) to delay taking up a new application and thus contributes to the backlog of unexamined applications before the Office. In addition, current practice allows an applicant to generate an unlimited string of continued examination filings from an initial application. In such a string of continued examination filings, the exchange between examiners and applicants becomes less beneficial and suffers from diminishing returns as each of the second and subsequent continuing applications or requests for continued examination in a series is filed. Moreover, the possible issuance of multiple patents arising from such a process tends to defeat the public notice function of patent claims in the initial application.

The Office is making every effort to become more efficient, to ensure that the patent application process promotes innovation, and to improve the quality of issued patents. With respect to continued examination practice, the Office is proposing to revise the patent rules of practice to better focus the application process. The revised rules would require that second or subsequent continued examination filings, whether a continuation application, a continuation-in-part application, or a request for continued examination, be supported by a showing as to why the amendment, argument, or evidence presented could not have been previously submitted. It is expected that these rules will make the exchange between examiners and applicants more efficient and effective. The revised rules should also improve the quality of issued patents, making them easier to evaluate, enforce, and litigate. Moreover, under the revised rules patents should issue sooner, thus giving the public a clearer understanding of what is patented.

The revised rules would also ease the burden of examining multiple applications that have the same effective filing date, overlapping disclosure, a common inventor, and common assignee by requiring that all patentably indistinct claims in such applications be submitted in a single application.

Federal Register / Vol. 71, No. 1 / Tuesday, January 3, 2006 / Proposed Rules    49

The changes proposed in this notice will also allow the Office to focus its patent examining resources on new applications instead of multiple continued examination filings that contain amendments or evidence that could have been submitted earlier, and thus allow the Office to reduce the backlog of unexamined applications. This will mean faster and more effective examination for the vast majority of applicants without any additional work on the applicant's part. Additional resources will be devoted to multiple continued examination filings only where necessary.

*Comment Deadline Date:* To be ensured of consideration, written comments must be received on or before May 3, 2006. No public hearing will be held.

**ADDRESSES:** Comments should be sent by electronic mail message over the Internet addressed to AB93Comments@uspto.gov. Comments may also be submitted by mail addressed to: Mail Stop Comments—Patents, Commissioner for Patents, P.O. Box 1450, Alexandria, VA, 22313–1450, or by facsimile to (571) 273–7735, marked to the attention of Robert W. Bahr. Although comments may be submitted by mail or facsimile, the Office prefers to receive comments via the Internet. If comments are submitted by mail, the Office prefers that the comments be submitted on a DOS formatted 3½ inch disk accompanied by a paper copy.

Comments may also be sent by electronic mail message over the Internet via the Federal eRulemaking Portal. See the Federal eRulemaking Portal Web site (*http://www.regulations.gov*) for additional instructions on providing comments via the Federal eRulemaking Portal.

The comments will be available for public inspection at the Office of the Commissioner for Patents, located in Madison East, Tenth Floor, 600 Dulany Street, Alexandria, Virginia, and will be available via the Office Internet Web site (*address: http://www.uspto.gov*). Because comments will be made available for public inspection, information that is not desired to be made public, such as an address or phone number, should not be included in the comments.

**FOR FURTHER INFORMATION CONTACT:** Robert W. Bahr, Senior Patent Attorney, Office of the Deputy Commissioner for Patent Examination Policy, by telephone at (571) 272–8800, by mail addressed to: Mail Stop Comments—Patents, Commissioner for Patents, P.O. Box 1450, Alexandria, VA, 22313–1450, or by facsimile to (571) 273–7735, marked to the attention of Robert W. Bahr.

**SUPPLEMENTARY INFORMATION:** The current volume of continued examination filings—including both continuing applications and requests for continued examination—and duplicative applications that contain "conflicting" or patentably indistinct claims, are having a crippling effect on the Office's ability to examine "new" (*i.e.*, non-continuing) applications. The cumulative effect of these continued examination filings is too often to divert patent examining resources from the examination of new applications to new technology and innovations, to the examination of applications that have already been examined, have issued as patents, or have been abandoned. In addition, when the continued examination process fails to reach a final resolution, and when multiple applications containing claims to patentably indistinct inventions are filed, the public is left uncertain as to what the set of patents resulting from the initial application will cover. Thus, these practices impose a burden on innovation both by retarding the Office's ability to examine new applications and by undermining the function of claims to notify the public as to what technology is or is not available for use.

Commentators have noted that the current unrestricted continuing application and request for continued examination practices preclude the Office from ever finally rejecting an application or even from ever finally allowing an application. *See* Mark A. Lemley and Kimberly A. Moore, *Ending Abuse of Patent Continuations*, 84 B.U. L. Rev. 63, 64 (2004). The burdens imposed by the repetitive filing of applications (as continuing applications) on the Office (as well as on the public) is not a recent predicament. *See To Promote the Progress of Useful Arts, Report of the President's Commission on the Patent System,* at 17–18 (1966) (recommending changes to prevent the repetitive filing of dependent (*i.e.*, continuing) applications). Unrestricted continued examination filings and multiple applications containing patentably indistinct claims, however, are now having such an impact on the Office's ability to examine new applications that it is now appropriate for the Office to clarify the applicant's duty to advance the application to final action by placing some restrictions on the filing of multiple continuing applications, requests for continued examination, and other multiple applications to the same invention. *See* 35 U.S.C. 2(b) (authorizes the Office to establish regulations, not inconsistent with law, which shall govern the conduct of proceedings in the Office, and shall facilitate and expedite the processing of patent applications). This would permit the Office to apply the patent examining resources currently absorbed by these applications to the examination of new applications and thereby reduce the backlog of unexamined applications.

The Office also notes that not every applicant comes to the Office prepared to particularly point out and distinctly claim what the applicant regards as his invention, for example, where the applicant's attorney or agent has not adequately reviewed or revised the application documents (often a literal translation) received from the applicant. In these situations examination of what applicants actually regard as their invention may not begin until after one or more continued examination filings. Applicants should not rely on an unlimited number of continued examination filings to correct deficiencies in the claims and disclosure that applicant or applicant's representative have not adequately reviewed. In addition, a small minority of applicants have misused continued examination practice with multiple continued examination filings in order to simply delay the conclusion of examination. This skirts applicant's duty to make a *bona fide* attempt to advance the application to final agency action and impairs the ability of the Office to examine new and existing applications. It also prejudices the public by permitting applicants to keep applications in pending status while awaiting developments in similar or parallel technology and then later amending the pending application to cover the developments. The courts have permitted the addition of such claims, when supported under 35 U.S.C. 112, ¶ 1, to encompass products or processes discovered in the marketplace. *See PIN/NIP, Inc., v. Platt Chemical Co.,* 304 F.3d 1235, 1247, 64 USPQ2d 1344, 1352 (Fed. Cir. 2002). However, the practice of maintaining continuing applications for the purpose of adding claims after such discoveries is not calculated to advance prosecution before the Office.

The Office, in light of its backlog and anticipated continued increase in applications is making every effort to become more efficient. Achieving greater efficiency requires the cooperation of those who provide the input into the examination process, the applicants and their representatives. With respect to continued examination practice, the Office is proposing to

**50    Federal Register / Vol. 71, No. 1 / Tuesday, January 3, 2006 / Proposed Rules**

revise the rules of practice to assure that multiple continued examination filings from a single application do not absorb agency resources unless necessary for effective examination. The revised rules would require that second or subsequent continuation or continuation-in-part applications and second or subsequent requests for continued examination of an application include a showing as to why the amendment, argument, or evidence presented could not have been previously submitted. It is expected that these rules will make the exchange between examiners and applicants more efficient, get claims to issue faster, and improve the quality of issued patents. The revised rules would also ease the burden of examining multiple applications that have the same effective filing date, overlapping disclosure, a common inventor, and common assignee by requiring that all patentably indistinct claims in such applications be submitted in a single application absent good and sufficient reason.

The Office's Patent Application Locating and Monitoring (PALM) records show that, in fiscal year 2005, the Office received approximately 317,000 nonprovisional applications, and that about 62,870 of these nonprovisional applications were continuing applications. In addition, the Office's PALM records show that the Office received about 52,750 requests for continued examination in fiscal year 2005. Thus, about thirty percent (63,000 + 52,000)/(317,000 + 52,000) of the Office's patent examining resources must be applied to examining continued examination filings that require reworking earlier applications instead of examining new applications.

In comparison, the Office issued over 289,000 first Office actions on the merits in fiscal year 2005. Had there been no continued examination filings, the Office could have issued an action for every new application received in 2005 and reduced the backlog by issuing actions in 35,000 older cases. Instead, the Office's backlog grew because of the large number of continued examination filings.

Thus, current continued examination practice and the filing of multiple applications containing patentably indistinct claims are impairing the Office's ability to examine new applications without real certainty that these practices effectively advance prosecution, improve patent quality, or serve the typical applicant or the public. These proposed changes to the rules in title 37 of the Code of Federal Regulations (CFR) are intended to ensure that continued examination filings are used efficiently to move applications forward. The Office expects that the new rules will lead to more focused and efficient examination, improve the quality of issued patents, result in patents that issue faster, and give the public earlier notice of just what patentees claim. The changes to the rules also address the growing practice of filing (by a common applicant or assignee) of multiple applications containing patentably indistinct claims.

Of the roughly 63,000 continuing applications filed in fiscal year 2005, about 44,500 were designated as continuation/continuation-in-part (CIP) applications, and about 18,500 were designated as divisional applications. About 11,800 of the continuation/CIP applications were second or subsequent continuation/CIP applications. Of the over 52,000 requests for continued examination filed in fiscal year 2005, just under 10,000 were second or subsequent requests for continued examination. Thus, the Office's proposed requirements for seeking second and subsequent continuations will not have an effect on the vast majority of patent applications.

35 U.S.C. 111(a) and 120, respectively, permit an applicant to file a nonprovisional application and to claim the benefit of a prior-filed nonprovisional application. Similarly, 35 U.S.C. 363 and 365(c), respectively, permit an applicant to file an international application under Patent Cooperation Treaty (PCT) Article 11 and 35 U.S.C. 363 and, if the international application designates the United States of America, claim the benefit of a prior-filed international application designating the United States of America or a prior-filed nonprovisional application. Similarly again, 35 U.S.C. 111(a) and 365(c) permit an applicant to file a nonprovisional application (filed under 35 U.S.C. 111(a)) and claim the benefit of a prior-filed international application designating the United States of America (under 35 U.S.C. 365(c)).

The practice of filing "continuation applications" arose early in Office practice mainly as a procedural device to effectively permit the applicant to amend an application after rejection and receive an examination of the "amended" (or new) application. See In re Bogese, 22 USPQ2d 1821, 1824 (Comm'r Pats. 1991) (Bogese I). The concept of a continuation application per se was first recognized in Godfrey v. Eames, 68 U.S. (1 Wall.) 317, 325–26 (1864). See Bogese I, 22 USPQ2d at 1824. 35 U.S.C. 120 is a codification of the continuation application practice recognized in Godfrey v. Eames. See id (citing In re Hogan, 559 F.2d 595, 603, 194 USPQ 527, 535 (CCPA 1977)).

Applicants should understand, however, that there is not an unfettered right to file multiple continuing applications without making a bona fide attempt to claim the applicant's invention. See In re Bogese, 303 F.3d 1362, 64 USPQ2d 1448 (Fed. Cir. 2002) (Bogese II). While Bogese II was an extreme case, one of prosecution laches, it makes clear that applicants face a general requirement of good faith in prosecution and that the Director has the inherent authority, rooted in 35 U.S.C. 2, to ensure that applicants comply with that duty. See Bogese II, 303 F.3d at 1368 n.5, 64 USPQ2d at 1452 n.5.

The proposed rules are not an attempt to codify Bogese II or to simply combat such extreme cases of prosecutions laches. Nor do these rules set a per se limit on the number of continuing applications. Compare In re Henriksen, 399 F.2d 253, 158 USPQ 224 (CCPA 1968). Rather, they require that applicants who file multiple continuing applications from the same initial application show that the third and following applications in the chain are necessary to advance prosecution. In particular, the proposed rules require that any second or subsequent continuing application show to the satisfaction of the Director that the amendment, argument, or evidence could not have been submitted during the prosecution of the initial application or the first continuing application.

The Office is aware of case law which suggests that the Office has no authority to place an absolute limit on the number of copending continuing applications originating from an original application. See In re Hogan, 559 F.2d at 603–05, 194 USPQ at 565–66; and Henriksen, 399 F.2d at 262, 158 USPQ at 231. The Office does not attempt that here. No limit is placed on the number of continuing applications. Rather applicants are required to show that later-filed applications in a multiple-continuing chain are necessary to claim the invention—and do not contain unnecessarily delayed evidence, arguments, or amendments that could have been presented earlier. In addition, in those earlier cases the Office had not promulgated any rules, let alone given the public adequate notice of, or an opportunity to respond to, the ad hoc limits imposed. See Henriksen, at 399 F.2d at 261–62, 158 USPQ at 231 (characterizing the action of the Office as akin to a retroactive rule change that had no support in the rules of practice or Manual of Patent Examining