# EXHIBIT 6



Tuesday,
August 21, 2007

Part II

# Department of Commerce

Patent and Trademark Office

37 CFR Part 1
Changes To Practice for Continued Examination Filings, Patent Applications Containing Patentably Indistinct Claims, and Examination of Claims in Patent Applications; Final Rule

**46744** Federal Register / Vol. 72, No. 161 / Tuesday, August 21, 2007 / Rules and Regulations

agency establishes, after opportunity for public comment, one or more definitions of such term which are appropriate to the activities of the agency and which are based on such factors as location in rural or sparsely populated areas or limited revenues due to the population of such jurisdiction, and publishes such definition(s) in the **Federal Register**." *See* 5 U.S.C. 601(5). The Office has not established any definition of "small governmental jurisdiction" for Regulatory Flexibility Act purposes with respect to patent-related regulations. Therefore, a "small governmental jurisdiction" for Regulatory Flexibility Act purposes with respect to patent-related regulations is a government of a city, county, town, township, village, school district, or special district, with a population of less than fifty thousand.

An entity that meets the definition of a small entity set forth in § 1.27 for paying reduced patent fees may or may not meet one of the definitions under §§ 1.265(f)(1) through (f)(3) to make a certification under § 1.265(f). The Office will not give advisory opinions as to whether or not a specific individual or entity meets the definitions under §§ 1.265(f)(1) through (f)(3) to make a certification under § 1.265(f). Questions related to standards for small business concerns, not-for-profit enterprises, or governments may be directed to: Small Business Administration, Size Standards Staff, 409 Third Street, SW., Washington, DC 20416.

*Section 1.495 (entering the national stage in the United States of America):* Section 1.495(g) provides that if the documents and fees contain conflicting indications as to whether the submission is an application under 35 U.S.C. 111 or a submission to enter the national stage under 35 U.S.C. 371, the documents and fees will be treated as a submission to enter the national stage under 35 U.S.C. 371. It is Office experience that, in most cases, documents and fees that contain such conflicting indications were intended as submissions under 35 U.S.C. 371.

*Section 1.704 (reduction of period of adjustment of patent term):* Section 1.704(c) is amended to provide the patent term adjustment consequences of a failure to comply with § 1.75(b) (*e.g.*, a failure to file an examination support document in compliance with § 1.265 when necessary under § 1.75(b)). Such a failure will be considered a circumstance that constitutes a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application under 35 U.S.C. 154(b)(2)(C). The failure to comply with § 1.75(b) will delay processing or examination of an application because the Office must issue a notice and await the applicant's reply before examination of the application may begin. Therefore, § 1.704(c) provides for a reduction of any patent term adjustment when there is a failure to comply with § 1.75(b). Specifically, any patent term adjustment will be reduced by the number of days in the period between the following beginning and ending dates. The beginning date of the period is the day after the date that is the later of: (1) The filing date of the amendment resulting in the noncompliance with § 1.75(b); (2) four months from the filing date of the application in an application under 35 U.S.C. 111(a); or (3) four months from the date on which the national stage commenced under 35 U.S.C. 371(b) or (f) in an application which entered the national stage from an international application after compliance with 35 U.S.C. 371. The ending date of the period is the filing date of: (1) An examination support document in compliance with § 1.265; (2) an election responsive to an Office-issued requirement for restriction including an election of species that places the application in compliance with § 1.75(b) (*e.g.*, the election of an invention that is drawn to five or fewer independent claims and twenty-five or fewer total claims that would obviate the need for an examination support document under § 1.265); (3) an amendment resulting in compliance with § 1.75(b) (*e.g.*, amending the application to contain five or fewer independent claims and twenty-five or fewer total claims); (4) a suggested requirement for restriction under § 1.142(c) accompanied by an election without traverse of an invention to which there are no more than five independent claims and no more than twenty-five total claims.

The examiner's acceptance of a suggested requirement for restriction accompanied by an election without traverse of an invention to which there are no more than five independent claims and no more than twenty-five total claims would be sufficient to obviate the need for an examination support document under § 1.265. If the suggested requirement for restriction is not accepted, the applicant will be notified and given a time period within which the applicant must either file an examination support document or amend the application such that it contains no more than five independent claims and no more than twenty-five total claims. Failure to timely reply to such a notice would result in the abandonment of the application. The abandonment of an application results in the period of adjustment set forth in § 1.703 (if any) being reduced under § 1.704(c)(3).

### III. Response to Comments

As discussed previously, the Office published notices in January of 2006 proposing: (1) Changes to practice for continuing applications, requests for continued examination, and applications containing patentably indistinct claims; and (2) changes to the practice for the examination of claims in patent applications. *See Changes to Practice for Continuing Applications, Requests for Continued Examination Practice, and Applications Containing Patentably Indistinct Claims,* 71 FR at 48–61, 1302 *Off. Gaz. Pat. Office* 1318–29, and *Changes to Practice for the Examination of Claims in Patent Applications,* 71 FR 61–69, 1302 *Off. Gaz. Pat. Office* 1329–35. The Office received over five hundred written comments (from government agencies, universities, intellectual property organizations, industry, law firms, individual patent practitioners, and the general public) in response to this notice. The comments and the Office's responses to the comments follow:

*A. Changes to Continuing Application Practice*

*Comment 1:* A number of comments stated that the changes in the definitions of continuation, divisional, and continuation-in-part applications set forth in § 1.78(a) are likely to confuse the public and examiners and that the Office has not identified any value that would result from these changes. Several comments suggested that further guidance was needed to resolve ambiguities as to whether an application is a divisional or continuation application. One comment argued that the requirement to identify the relationship of the applications could create hardship when it is unclear whether the changes to the specification or claims make the application a continuation, divisional, or continuation-in-part application.

*Response:* The definitional changes are necessary in order to clearly define the conditions for claiming benefit of prior-filed applications under § 1.78(d)(1). This final rule further clarifies the definition of a divisional application set forth in § 1.78(a)(2). Under this final rule, an applicant may file a divisional application directed to a non-elected invention if the prior-filed application is subject to a requirement for restriction. The divisional application need not be filed during the

**46782**  Federal Register / Vol. 72, No. 161 / Tuesday, August 21, 2007 / Rules and Regulations

*Response:* The applications whose specifications possibly contain patentably indistinct claims were made by or on behalf of the inventor or applicant, and not the Office or the examiner. *See* 35 U.S.C. 111(a). Thus, the applicant is in a better position than the Office or examiner to know when such related applications have been filed. While the ultimate determinations of double patenting and patentability remain with the Office, the Office rejects the position that the applicant has no responsibility to facilitate those decisions. The information provided by applicant in compliance with § 1.78(f)(1) is reasonably necessary for the Office to determine double patenting issues. With the information provided before the first Office action on the merits, the Office could make the patentability determination more efficiently and thereby reduce pendency. For example, the examiner could identify and resolve any double patenting issues earlier in the prosecution.

*Comment 123:* One comment suggested that the requirements of § 1.78(f)(1) would raise inventorship and ownership issues when entities have entered into a confidential research agreement.

*Response:* The identification of such applications is reasonably necessary for an efficient and effective examination. This requirement is similar to that imposed upon applicants having knowledge of material prior art that became known to them via information covered by a confidentiality agreement. In such an instance, the existence of a confidentiality agreement does not relieve applicants from their duty to disclose this prior art information to the Office. In any event, § 1.78(f)(1) requires identification of only the commonly owned applications (if certain conditions are met), but not identification of the owner. 35 U.S.C. 115 requires that the inventors identify themselves.

*Comment 124:* One comment suggested that § 1.78(f) will have the greatest adverse impact on small entities.

*Response:* The rules apply equally to both non-small entities and small entities. The comment did not provide persuasive data or other evidence supporting the conclusion. The Office's experience is that small entities do not file a larger percentage of multiple applications than non-small entities. Thus, it is doubtful that any impact, if adverse, will affect small entities the most.

*Comment 125:* Several comments questioned whether the Office should even concern itself with obviousness-type double patenting rejections. They suggested that essentially no harm at all to the public exists through the grant of plural applications having the same, or roughly the same, filing dates, while the technical traps for the unwary and the undue examination burdens established by double patenting rejections unduly complicate procurement and burden the Office.

*Response:* There are two reasons why the Office still needs to make obviousness-type double patenting rejections in applications filed on or after June 8, 1995, and that are subject to a twenty-year term under 35 U.S.C. 154(a)(2). First, 35 U.S.C. 154 does not ensure that any patent issuing on a utility or plant application will necessarily expire twenty years from the earliest filing date for which a benefit is claimed under 35 U.S.C. 120, 121, or 365(c) because 35 U.S.C. 154(b) includes provisions for patent term extension based upon prosecution delays during the application process. Second, § 1.321(c)(3) requires that a terminal disclaimer filed to obviate an obviousness-type double patenting rejection based on commonly owned patentably indistinct claims include a provision that any patent granted on that application be enforceable only for and during the period that the patent is commonly owned with the application or patent which formed the bases for the rejection. This requirement prevents the potential for harassment of an accused infringer by multiple parties with patents covering the same patentable invention. *See* MPEP § 804.02. If applicant files all of the patentably indistinct claims in one application, applicant could alleviate the Office's burden of searching for multiple applications containing patentably indistinct claims, analyzing the applications for double patenting issues, and requiring cancellation of the claims or a terminal disclaimer.

*Comment 126:* One comment suggested that § 1.78(f)(2) prevents an applicant from claiming different embodiments unless the embodiments are patentably distinct.

*Response:* Under this final rule, applicant may present claims during the prosecution of an initial application and two continuation or continuation-in-part applications plus one request for continued examination in the application family, without any justification. Applicant therefore should have sufficient opportunity to present claims to different embodiments of an invention in these filings. Furthermore, applicant is not required to provide an explanation under § 1.78(f)(2)(ii)(B) for a continuation application or continuation-in-part application of a prior-filed application that has been allowed.

*Comment 127:* One comment suggested that examiners would not have any incentive to find claims patentably distinct.

*Response:* Examiners are professionals who perform their duties within the framework of the current patent laws, rules and examination practices. No persuasive explanation was given in support of the suggestion that examiners would be less likely to find claims patentably distinct.

*Comment 128:* One comment suggested that the rebuttable presumption set forth in § 1.78(f)(2) was inconsistent with the Office's restriction practice. The comment suggested that it was inconsistent to presume that claims are patentably indistinct when, if the claims were filed in one application, they would be found to be patentably distinct, and subject to a restriction requirement.

*Response:* The changes to § 1.78(f)(2) and restriction practice encourage applicant to file a single application for each patentably distinct invention. For example, if two or more independent and distinct inventions are claimed in a single application, the examiner may make a restriction requirement. *See* § 1.142. The filing of multiple applications that together claim only one patentable invention (*i.e.*, the applications contain patentably indistinct claims), however, is diverting the Office's limited examining resources from examining new applications. Applicant should file a single application claiming one patentable invention rather than multiple applications claiming the same patentable invention. Applicant may rebut the presumption that claims in multiple applications are not patentably distinct by explaining how the application contains only claims that are patentably distinct from the claims in each of the other applications. Similar to the restriction practice, applicant may maintain multiple applications if the applications contain patentably distinct claims (*i.e.*, each application is claiming one patentably distinct invention).

*Comment 129:* One comment objected that remarks by applicants under § 1.78(f)(2) to rebut the double patenting presumption would create prosecution history estoppel before the Office issued a rejection that could impact on the certainty and quality of the patent.

*Response:* First, applicant remarks under § 1.78(f)(2) would be akin to remarks set forth in response to a double

Federal Register/Vol. 72, No. 161/Tuesday, August 21, 2007/Rules and Regulations    46787

relating to new submissions required by § 1.78.

*Response:* The Office will strive to promptly act on all petitions related to the changes to § 1.78 in this final rule.

*Comment 163:* One comment suggested that § 1.78(g) should be amended to require that in response to a statutory or obviousness-type double patenting rejection, the Office may require the assignee to state whether the claimed inventions were commonly owned or subject to an obligation of assignment to the same person at the time the later invention was made, and if not to indicate which named inventor(s) is/are the prior inventor, unless applicant traverses the rejection.

*Response:* Section 1.78(g) contains the provisions of former § 1.78(c). The Office believes that these provisions, as well as the information that may be required, are currently sufficient for the Office to achieve its goals with respect to identifying commonly owned cases that come within the provisions of 35 U.S.C. 103(c) or with respect to determining the prior invention.

*F. Changes to Practice for Examination of Claims*

*Comment 164:* Several comments supported the concept of representative claims. One comment stated that the rules promote more focused examination, reduce delay and help conserve scarce Office resources, require little effort on the part of most applicants, and still make certain that no patent claims will issue without a complete examination. The comments also expressed support for limiting the number of claims that need to be examined and encouraged the Office to reduce overwhelming numbers of claims in favor of quality examinations. One comment suggested that the Office should adopt a rule that only independent claims are examined.

A number of comments, however, argued in a variety of terms that the "representative claims" examination approach would lead to piecemeal examination and prolonged examination, would require additional searching when features from non-designated dependent claims are added to designated dependent or independent claims, and would lead to additional filings, increased appeals, and less thorough examination. Several comments suggested that the number of claims examined should not be limited *per se* because the line of novelty in a claim family often falls between the broad independent claims and the narrowest dependent claim. One comment stated that the "representative claims" examination approach may adversely affect the treatment given to dependent claims in court. One comment argued that the Office's statistics on applications having more than ten independent claims ignore how many total claims had to be presented to lead to those independent claims.

Several comments argued that since excess claim fees have presumably been determined based on the resources necessary to carry out search and examination of all of the claims, it is not appropriate for the Office to neglect to fully search and examine the entire application for which all fees have been paid. One comment stated that there is no basis for limiting the consideration of a dependent claim during examination because under 35 U.S.C. 112, ¶ 4, a dependent claim is treated as a claim that incorporates all the limitations of the preceding claims.

A number of comments argued that the "representative claims" examination approach may be appropriate in other proceedings (such as before the BPAI) or even during examination, but not before first Office action on the merits. One comment argued that statistical data from the appeal stage is misleading because there are fewer issues during an appeal than during prosecution of an application before the examiner. Several comments stated that the BPAI would be forced to perform examination on the merits of the non-representative claims.

A number of comments suggested that the Office should address excessive claiming concerns in a simple and straightforward manner by limiting the number of claims permitted and fully examined under the basic fee structure to, for example, six independent and thirty total numbered claims, and allowing multiple dependent claims that depend on other multiple dependent claims. Several comments suggested that the Office specify that excess claims over a certain number will only be examined if accompanied by an independent search report, rather than burdening all applicants with the requirement to designate claims. Several comments suggested that instead of representative claims, applicants should be allowed to select claims that stand or fall together.

Finally, a number of comments also raised implementation issues, requested clarification concerning implementation issues, or provided suggestions concerning the implementation of the "representative claims" examination approach.

*Response:* As a result of the public comment, the Office is not adopting the "representative claims" examination approach under which the Office would limit the initial examination of an application to the "representative claims" (the independent claims and the dependent claims that are expressly designated by the applicant for initial examination). The Office is instead making the presentation of more than five independent claims or more than twenty-five total claims (rather than the presentation of more than ten representative claims) the threshold for invoking the examination support document requirement. Thus, this final rule provides that if the number of independent claims is greater than five or the number of total claims is greater than twenty-five, the applicant must provide additional information to the Office in an examination support document covering all of the claims in the application (whether in independent or dependent form).

Although, the "representative claims" examination approach is not being adopted, the Office disagrees that such an approach amounts to piecemeal examination or that it would be less efficient than the current examination process. Under such an approach, the Office would have examined a claim before applicant could seek review of any rejection of the claim on appeal, regardless of whether the claim was designated or non-designated under the "representative claims" examination approach.

Regarding escalating fees, the Office previously proposed a system of escalating fees and it was overwhelmingly opposed by user groups. The Office has also determined that charging higher fees for large numbers of claims would likely still not result in the desired increase in quality since many applicants would simply pay the higher fees. Furthermore, claim fees are set by statute, not the Office. As discussed previously, 35 U.S.C. 112, ¶ 5, prohibits multiple dependent claims depending on other multiple dependent claims.

*Comment 165:* One comment stated that examining many claims aids in understanding the invention.

*Response:* The experience of those who actually examine applications is that examining a large number of claims does not aid in understanding the invention but rather obfuscates the invention. In addition, the issuance of patents containing an excessive number of claims has also long been considered an abuse of the courts and the public, rather than an aid in understanding the invention. *See Carlton* v. *Bokee,* 84 U.S. (17 Wall) 463, 471–72 (1873) (needless multiplication of nebulous claims deemed calculated to deceive and mislead the public); *Wahpeton Canvas Co.* v. *Frontier, Inc.,* 870 F.2d 1546, 1551

that the limit should be ten independent claims and sixty total claims. Several comments suggested that there should be no limit. One comment suggested that there should be no limit on dependent claims.

Several comments stated that the rules affect the vast majority of applications that contain an ordinary number of claims, rather than targeting the small number of problem applications with excessive claims. One comment stated that it was unclear why all applicants should be limited to representative claims when approximately ninety percent of all non-provisional applications currently filed contain six or fewer independent claims and forty or fewer total claims. The comment argued that examining forty or fewer claims does not appear to constitute an undue examination burden. One comment suggested that the rule changes should be more narrowly tailored with respect to the technology areas where the inventions are not capable of being adequately protected using only twenty claims. One comment inquired about the need for establishing a separate procedure for examination of claims if only 1.2 percent of applications fall within the category of excess claims. Several comments argued that there is a lack of statistical analysis relating to the number of applications containing more than ten total claims.

*Response:* The Office notes the concerns expressed in the public comments concerning the proposed "representative claims" examination approach. The Office did not adopt this approach in this final rule. This final rule provides that if the number of independent claims is greater than five or the number of total claims is greater than twenty-five, the applicant must provide additional information to the Office in an examination support document under § 1.265 covering all of the claims in the application (whether in independent or dependent form).

The Office received a significant number of comments suggesting a threshold of six independent claims and thirty total claims. The Office also received a number of comments suggesting independent claim thresholds ranging from three to ten and total claim thresholds ranging from twenty to sixty (or no limit). The comments, however, provided no justification for deeming any particular independent and total claim threshold to be the ideal threshold or even superior to any other possible independent and total claim threshold. The Office arrived at the five independent claim and twenty-five total claim threshold primarily for the following reasons.

First, a significant number of comments suggested a threshold of six independent claims and thirty total claims, but did not suggest such a threshold if it were not considered sufficient to provide adequate patent protection for an invention.

Second, the majority of applications contain no more than five independent claims and no more than twenty-five total claims. Specifically, over 92 percent of the applications filed in fiscal year 2006 contained no more than five independent claims, and over 78 percent of the applications filed in fiscal year 2006 contained no more than twenty-five total claims. These figures do not take into account that many applications contained claims to more than one distinct invention, and the changes in this final rule permit an applicant to suggest a restriction requirement and elect an invention to which there are drawn no more than five independent and twenty-five total claims. In addition, the majority of applications in every Technology Center contain five or fewer independent claims and twenty-five or fewer total claims. Therefore, there is no support for the position that there are technology areas that are just not capable of being adequately protected with five or fewer independent claims and twenty-five or fewer total claims. Finally, the Office notes that the most common number of independent claims presented in an application is three, and the most common number of total claims presented in an application is twenty.

Third, an applicant may present up to fifteen independent claims and seventy-five total claims via an initial application and two continuation or continuation-in-part applications that are prosecuted serially without providing either an examination support document or a justification as discussed previously. Only about five percent of the applications filed in fiscal year 2006 were in an application family that contained more than fifteen independent claims or more than seventy-five total claims.

Finally, this final rule does not preclude an applicant from presenting more than five independent claims or more than twenty-five total claims. Rather, an applicant may present more than five independent claims or more than twenty-five total claims in an application with an examination support document in compliance with § 1.265 if the applicant considers it necessary or desirable in the particular application. Specifically, this final rule requires applicant to file an examination support document in compliance with § 1.265 before the issuance of a first Office action on the merits of an application that contains more than five independent claims or twenty-five total claims, counting all of the claims in any other copending application having a patentably indistinct claim. If an examination support document in compliance with § 1.265 is not filed before the issuance of a first Office action on the merits of the application, the application may not contain or be amended to contain more than five independent claims or more than twenty-five total claims.

*Comment 204:* A number of comments suggested that the Office should explore the possibility of examining multiple dependent claims that are dependent on other multiple dependent claims to reduce examination burden and better focus the examination process. The comments argued that most foreign countries permit such claims and that this would significantly reduce the number of claims. One comment argued that if the Office adopts representative claims rules, it will move towards the European style of claim sets, but without the benefit of multiple dependent claims and claims stated in the alternative. Several comments expressed the opinion that multiple dependent claims should be encouraged because examining a multiple dependent claim is no more work than examining a single dependent claim.

*Response:* As discussed previously, the Office did not adopt the "representative claims" examination approach in this final rule. Further, 35 U.S.C. 112, ¶ 5, prohibits multiple dependent claims that are dependent on other multiple dependent claims. Moreover, the examination of multiple dependent claims that are dependent on other multiple dependent claims would be at least as burdensome as if these claims were presented as a plurality of single dependent claims or as permitted multiple dependent claims. The Office disagrees that permitting multiple dependent claims that depend on other multiple dependent claims would reduce the examination burden or better focus the examination process. The Office's experience is that multiple dependent claims are significantly more difficult to search and evaluate than a plurality of single dependent claims. Multiple dependent claims that depend on other multiple dependent claims would be even more burdensome. While the use of multiple dependent claims may be a convenient shorthand mechanism, a multiple dependent claim

*Response:* Applicant should specifically point out the support for any amendments made to the disclosure. *See e.g.,* MPEP § 2163.06. Furthermore, when applicant adds a new claim limitation in an application that contains more than five independent claims or more than twenty-five total claims, applicant is required to submit a supplemental examination support document that includes a showing of where such new claim limitation finds support under 35 U.S.C. 112, ¶ 1, in the written description of the specification and in any parent application. In addition, the examiner may require the applicant to show where the specification of the application or a parent application provides written description support under 35 U.S.C. 112, ¶ 1, for a new limitation. *See* § 1.105(a)(1)(ix) (as adopted in this final rule).

*Comment 247:* One comment argued that the concise statement of utility and the 35 U.S.C. 112 showing required in an examination support document make no sense. The comment argued that cross-referencing each line of the claims back to the specification is a waste of time. One comment argued that applicants should not have to admit what is disclosed, but rather they should only have to admit what is not disclosed.

*Response:* In view of the comments, the Office is not adopting the requirement that an examination support document contain a concise statement of the utility of the invention as defined in each of the independent claims. The showing of where each limitation of the claims finds support under 35 U.S.C. 112, ¶ 1, however, would be helpful to the examiner. The examiner is responsible for determining whether or not there is 35 U.S.C. 112, ¶ 1, support in the written description for claimed subject matter. If applicant provides this information, it will assist the examiner in the examination of the application by making it easier for the examiner to make the necessary determinations. *See Hyatt* v. *Dudas*, 2007 U.S. App. LEXIS 15350 (Fed. Cir. Jun. 28, 2007). The applicant should be aware of where each limitation of the claims finds support under 35 U.S.C. 112, ¶ 1, in the written description by virtue of having prepared the application. There is no justification for requiring the examiner to duplicate this effort in an application that exceeds the five independent claim and twenty-five total claim threshold set forth in § 1.75(b).

*Comment 248:* One comment argued that § 1.265(a)(2) through (a)(4) resurrects provisions that used to be in the rules, but were amended out of the rules in 1992 when they were found to be unworkable.

*Response:* The Office proposed a number of changes to the rules of practice around 1990 related to the duty of disclosure and the filing of information disclosure statements. *See Duty of Disclosure*, 56 FR 37321 (Aug. 6, 1991), 1129 *Off. Gaz. Pat. Office* 52 (Aug. 27, 1991) (proposed rule), and *Duty of Disclosure and Practitioner Misconduct*, 54 FR 11334 (Mar. 17, 1989), 1101 *Off. Gaz. Pat. Office* 12 (Apr. 4, 1989) (proposed rule). The Office ultimately adopted changes to the duty of disclosure provisions of § 1.56 and the information disclosure statement provisions of §§ 1.97 and 1.98 (and deleted § 1.99) in 1992. *See Duty of Disclosure*, 57 FR 2021 (Jan. 17, 1992), 1135 *Off. Gaz. Pat. Office* 13 (Feb. 13, 1992) (final rule). The changes adopted in the 1992 final rule concerning the duty of disclosure provisions of § 1.56 and the information disclosure statement provisions of §§ 1.97 and 1.98 did not eliminate, or decline to adopt as final, provisions similar to the provisions of § 1.265(a).

*Comment 249:* One comment argued that the requirement for an examination support document was contrary to case law (citing *In re Wilder*, 736 F.2d 1516, 222 U.S.P.Q. 369 (Fed. Cir. 1984)) that applicant is not under a duty to search.

*Response:* Initially, it is noted that *Wilder* does not stand for the proposition that applicant does not have a duty to search. *Wilder* involved a reissue application. That case held that an attorney's statement that his error was a misunderstanding of the scope of the invention arose resulting from a lack of a prior art search was a sufficient explanation to satisfy the requirements of the reissue rule regarding how the error arose. There is some case law, however, that indicates that applicant does not have a duty to search. *See Nordberg, Inc.* v. *Telesmith, Inc.*, 82 F.3d 394, 397, 38 U.S.P.Q.2d 1593, 1595–96 (Fed. Cir. 1996); *FMC Corp.* v. *Hennessy Indus., Inc.*, 836 F.2d 521, 526 n.6, 5 U.S.P.Q.2d 1272, 1275–76 n.6 (Fed. Cir. 1987); *FMC Corp.* v. *Manitowoc Co.*, 835 F.2d 1411, 1415, 5 U.S.P.Q.2d 1112, 1115 (Fed. Cir. 1987); *Am. Hoist & Derrick Co.* v. *Sowa & Sons, Inc.*, 725 F.2d 1350, 1362, 220 U.S.P.Q. 763, 772 (Fed. Cir. 1984), *cert. denied*, 469 U.S. 821, 224 U.S.P.Q. 520 (1984). In view of these cases, the Office has stated that "[a]n applicant has no duty to conduct a prior art search as a prerequisite to filing an application for patent." *See* MPEP § 410. The case law, however, only discusses applicant's responsibility under the rules in 37 CFR Part 1 that were in effect at the time that was relevant to these particular cases. The case law does not stand for the proposition that the Office cannot change the rules in 37 CFR Part 1 to require a preexamination search, either generally or, when an applicant presents more than five independent claims or more than twenty-five total claims in an application. Indeed, commentators have suggested that, especially after *Festo X*, a practitioner who declines to conduct any pre-filing search as a matter of practice may be falling short of the responsibility under 37 CFR part 10 to perform services with competence. *See* Schneck, *The Duty to Search*, 87 J.P.T.O.S. 689, 696–701 (2005).

*Comment 250:* One comment argued that an examination support document is not properly compared to an appeal brief since, in an appeal brief, the focus is on the examiner's rejection and interpretation of the references, whereas in an examination support document, applicant is required to provide a search, interpret claims, and identify all issues related to the search results with respect to each element of each claim.

*Response:* The Office did not compare an examination support document to an appeal brief. The Office simply indicated that the proposed "representative claim" examination approach was similar to the BPAI's representative claim practice. Nevertheless, the Office is not adopting the "representative claims" examination approach in this final rule.

*Comment 251:* One comment argued that the rule changes, especially the requirement for an examination support document, are not rationally related to achieving the stated goals of improving patent quality and increasing efficiency.

*Response:* The Office is requiring an examination support document in those cases where applicants feel they need to have more than five independent claims or more than twenty-five total claims because these applications are the most burdensome for the Office. An examination support document will help the Office improve quality and increase efficiency because it will assist the examiner with the examination of the application. It should provide the examiner with the most pertinent prior art and an analysis of that art. Therefore, the changes being adopted in this final rule are related to the goals of improving quality and increasing efficiency.

*Comment 252:* One comment argued that the examination support document requirement will increase demand for public searchers and this may drain the examining pool and worsen retention.

*Response:* It is the Office's experience that only a small number of examiners

who leave the Office do so to become public searchers.

*Comment 253:* One comment argued that practitioners do not draft patent applications to claim subject matter that they believe is not supported by the specification and thus it should be sufficient to merely assert that the claims are supported by the "entire specification."

*Response:* The purpose of the requirement for a showing of where each limitation of the claims finds support under 35 U.S.C. 112, ¶ 1, is to assist the examiner in determining where the specification provides written description support for each claim limitation. An assertion by the practitioner that the claims are supported by the entire specification would not be of any assistance to the examiner.

*Comment 254:* Several comments argued that an examination support document should not be required until after the time for issuing a restriction requirement has passed because it is unfair to require applicant to prepare and file an examination support document when claims may be restricted such that fewer than ten representative claims are pending for examination. One comment suggested that a time period should be set in which the examiner must issue a restriction requirement or indicate that there will be none, and then the time period for submission of an examination support document should be set after that.

*Response:* As discussed previously, an applicant may submit a suggested restriction requirement accompanied by an election without traverse of an invention to which there are no more than five independent claims and no more than twenty-five total claims. *See* § 1.142(c) and the discussion of § 1.142(c). In this situation, an examination support document will not be required if the suggested restriction requirement is accepted. An examination support document will be required only if the suggested restriction requirement is not accepted, and the application contains more than five independent claims or more than twenty-five total claims, or more than five independent claims or more than twenty-five total claims to the elected invention and/or species if the examiner makes a restriction requirement that is different from the suggested restriction requirement.

*Comment 255:* One comment suggested that the Office should give assurances that: Like an information disclosure statement, nothing in an examination support document is an admission of prior art; nothing in the examination support document would be considered as affecting the scope of the claims; and the examination support document would not be published and examiners would make no references to it in correspondence. One comment supported the use of a limited examination support document that would require applicants to identify where in the specification the corresponding structure, material or acts for functional claim elements may be found since this would improve examination efficiency and have minimal effects in litigation.

*Response:* Providing assurances that the examination support document would not affect the scope of the claims would not be appropriate. The showing of where each limitation of the claims finds support under 35 U.S.C. 112, ¶ 1, in the written description of the specification and the showing that includes the structure, material, or acts in the specification that correspond to each means-(or step-) plus-function claim element that invokes consideration under 35 U.S.C. 112, ¶ 6, may affect the interpretation of the claims. The determination on patentability is made on the entire record of the application. In order to provide a complete application file history, the examiner may find that it is necessary to state on the record any agreement or disagreement with applicant's explanation of how the claims are patentable over the references or applicant's explanation of where each limitation of the claims finds support under 35 U.S.C. 112, ¶ 1, in the written description. The application record is available to the public upon the publication of the application under 35 U.S.C. 122(b) and the issuance of a patent on the application.

*Comment 256:* One comment suggested that the Office require applicants to provide claim charts that illustrate the differences between claims. The comment also suggested that applicants could be required to identify where support exists in the specification for the claims, or to identify groups of claims that are similar and define similar limitations.

*Response:* There is no prohibition against applicants submitting claim charts to illustrate the differences between claims. The Office does not consider it necessary at this time to make claim charts a requirement.

*Comment 257:* One comment inquired why, when claims in excess of ten are designated, a justification for all designated claims must be supplied and not just the number in excess of ten representative claims.

*Response:* The Office is not adopting the "representative claims" examination approach in this final rule. Under this final rule, applicant is required to file an examination support document when applicant presents more than five independent claims or more than twenty-five total claims in an application. In order to best assist in examination, the examination support document must cover all of the claims (in independent or dependent form) in the application, and not just the independent claims in excess of five or the total claims in excess of twenty-five.

*I. The Office's Authority To Promulgate the Changes in This Final Rule*

*Comment 258:* A number of comments argued that the changes to the rules of practice being adopted in this final rule are beyond the Office's rulemaking authority under 35 U.S.C. 2(b)(2). The comments argued that the proposed §§ 1.75(b), 1.78(d), and 1.78(f) are substantive and not procedural in nature because they affect an applicant's right to receive a patent for an invention or an applicant's ability to claim what the applicant regards as the invention.

*Response:* The Office has the authority under 35 U.S.C. 2(b)(2) to establish regulations, not inconsistent with law, which shall govern the conduct of proceedings in the Office. The "conduct of proceedings in the Office" provision of 35 U.S.C. 2(b)(2) (as well as former 35 U.S.C. 6(a)), however, is not limited to what might be characterized as "procedural" rather than "substantive" rules. *See United States* v. *Haggar Apparel Co.,* 526 U.S. 380, 387–88 (1999). Simply contending that a regulation is "substantive and not procedural" fails to address the issue because a regulation that relates to application processing within the Office and that is not inconsistent with law falls within the Office's rulemaking authority. *See In re Van Ornum,* 686 F.2d 937, 945, 214 U.S.P.Q.2d 761, 768 (C.C.P.A. 1982) ("Appellants say the regulation is 'invalid on its face' but they do not explain why beyond contending it is 'substantive and not procedural.' We can give no weight to that contention. True, the rule is substantive in that it relates to a condition under which a patent will be granted which otherwise would have to be denied for double patenting. Much of the content of the PTO rules is 'substantive' in this respect. The regulation clearly relates to application processing within the PTO in a manner consistent with statutory and case law, which is its principal business.").

The regulations at issue in this final rule concern application processing

**46822** Federal Register / Vol. 72, No. 161 / Tuesday, August 21, 2007 / Rules and Regulations

search engine so inventors can more easily perform better searches.

*Response:* The Office continues to explore various ways to disseminate information and improve the searching capabilities of the public. Currently, the Office allows applicants and inventors to search on-line using Patent Full-Text and Full-Page Image Databases (*http://www.uspto.gov/patft/index.html*) and works in concert with eighty-three Patent and Trademark Depository Libraries (*http://www.uspto.gov/go/ptdl/*) throughout the United States to offer the public extension research capabilities. The Office also has a library and tools at the Alexandria campus for the public to use.

*Comment 307:* One comment suggested that procedures for appeals and petitions should be changed to be less costly and to result in more timely decisions. One comment suggested the Office waive the notice of appeal fee and the appeal brief fee while the applicant awaits a decision on petition to invoke supervisory authority relating to a premature final rejection in an Office action.

*Response:* Most petition fees are set by regulation. The petition fee amounts that are set by regulation are set at an amount based upon the resources required to handle and decide the petition. *See Changes to Support Implementation of the United States Patent and Trademark Office 21st Century Strategic Plan,* 69 FR 56482, 56491–93 (Sept. 21, 2004), 1287 *Off. Gaz. Pat. Office* 67, 75–76 (Oct. 12, 2004). The notice of appeal fee and the appeal brief fee are set by statute and cannot be waived. Additionally, the appeal fees recover only a fraction of the Office cost of handling and deciding the appeal.

With respect to petitions, the Office is taking the necessary steps to minimize the backlog and to respond to petitions in a timely fashion. Within the Technology Centers, almost all petitions for relief from improper final rejections or restrictions are answered in a timely fashion. The Office is working to ensure that most of the petitions for relief from improper final rejections or restrictions are decided within four months from when they are filed, and continues to work on ways to make the process consistent across the different Technology Centers. The Office has also taken major steps to eliminate delays with the appeal process. The BPAI has radically reduced the inventory of pending appeals during the last five fiscal years.

The Office also recognizes that it is important to make sure that the finality of any final Office actions is proper. It is the Office's experience that applicants who seek review of the finality of an Office action also request review of the merits of the rejections contained in the final Office action. The propriety of the finality of an Office action is purely a question of Office practice that is wholly distinct from the merits of the rejections contained in the final Office action rejection. *See* MPEP § 706.07(c). The propriety of the finality of an Office action is properly raised in a petition under § 1.181, and is not a proper basis for an appeal or complaint to the BPAI during an appeal. *See id.* Likewise, arguments relating to the merits of the rejections contained in the final Office action rejection are properly raised in an appeal to the BPAI, and are not a proper basis for a petition under § 1.181 or for contesting the propriety of the finality of an Office action.

The rules of practice provide that the mere filing of a petition under § 1.181 will neither stay any period for reply that may be running against the application, nor act as a stay of other proceedings. *See* § 1.181(f). While the Office has put in place procedures to decide the appeals and petitions in a timely manner, the applicant is responsible to continue to prosecute the application consistent with § 1.181(f). Thus, there may be situations in which it is necessary for an applicant to file a notice of appeal to maintain the pendency of an application while a petition under § 1.181 requesting review of the finality of an Office action is being decided. The filing of a notice of appeal, however, does not moot such a petition under § 1.181, so the Office will decide a petition under § 1.181 requesting review of the finality of an Office action even if the applicant has filed a notice of appeal in the application. In such a situation, applicants should also request a pre-appeal brief conference with the filing of a notice of appeal. The pre-appeal brief conference will be conducted and the applicant will be notified of the result of the pre-appeal brief conference before the appeal brief and appeal brief fee must be filed. This should ensure that any petition under § 1.181 requesting review of the finality of an Office action is decided before the applicant must file the appeal brief and appeal brief fee. If the Office determines that the finality of the rejection was premature, the finality of the Office action will be withdrawn and any fees paid for the notice of appeal and the appeal brief can be applied to a later appeal on the same application. *See* MPEP § 1207.04.

*Comment 308:* Several comments stated that the Office should exercise better control over restriction practices. Several comments stated that the Office should encourage claims of different statutory classes to be filed in one application to improve examiner efficiency. One comment asserted that disposal pressures on examiners in the biotechnology area are totally unrealistic and have led to legally ridiculous restriction requirements. Several comments suggested that restriction reform is needed. Several comments suggested that the Office adopt the unity of invention standard. Several comments suggested an interim standard based on current PCT unity of invention practice should be available at the option of the applicant as an alternative to adopting unity of invention practice. Some comments expressed the opinion that current restriction practice in Technology Center 1600 (biotechnology and organic chemistry) requires applicants to file too many continuing and divisional applications. One comment expressed the opinion that current restriction practice is a result of the examiners' production system. Several comments stated that restriction is necessary to avoid abusive filing tactics by applicants seeking to circumvent the proposed regulation of continued examination filings. Several comments suggested that the Office eliminate restriction practice. Another comment stated that if proposed § 1.78(d)(1)(ii) is adopted, the Office should be bound by an initial restriction requirement and § 1.146, authorizing species restrictions, should be repealed. One comment suggested that if restriction practice must be maintained, it should be limited to applications in which two claimed inventions are literally unrelated, and all divisional applications should be examined by the same examiner.

*Response:* As part of the United States Patent and Trademark Office 21st Century Strategic Plan, restriction reform was studied extensively. *See Request for Comments on the Study of Changes Needed to Implement a Unity of Invention Standard in the United States,* 68 FR 27536 (May 20, 2003), 1271 *Off. Gaz. Pat. Office* 98 (June 17, 2003) (notice). A revision of the study was posted in November 2003, and the study was expanded to include four restriction reform options. *See Notice of the Availability of and Request for Comments on Green Paper Concerning Restriction Practice,* 70 FR 32761 (June 6, 2005), 1295 *Off. Gaz. Pat. Office* 146 (June 28, 2005) (notice) and the extension of the comment period announced at 70 FR 45370 (August 5,

**46826**  Federal Register / Vol. 72, No. 161 / Tuesday, August 21, 2007 / Rules and Regulations

applicant would file less claims under this suggested practice, examination of the newly added claims after allowance would be required. Thus, it is not clear how the suggested strategy would serve these goals more effectively than the changes being adopted in this final rule.

*Comment 325:* One comment suggested to bar, by statute, more than three independent claims and ten total claims, provided that amendments may be made in the regular course of prosecution and after grant to end claim gaming. The comment further indicated that the proposed rule changes will be subject to administrative challenge, leading to several years of uncertainty and chaos.

*Response:* A number of comments indicated that there are situations in which more than three independent claims and more than ten total claims are needed. Thus, the Office recognizes that it would be inappropriate to seek such legislation to place an absolute limit on the number of claims at this juncture.

*Comment 326:* One comment suggested that reducing the filing and maintenance fees would reduce filings. The comment stated that the backlog has gotten so large due to the increases in excess claims fees, there has been a tendency among practitioners to segment applications into multiple related filings, each having twenty or so claims. This segmenting, the comment explains, has significantly increased the number of filings within the Office.

*Response:* It is unclear how reducing fees would reduce the number of filings. The experience of the Office is that reducing patent fees would not lead to reduced filings.

*Comment 327:* One comment suggested including a patent term reduction while an application remains pending.

*Response:* Section 1.704 currently provides for reduction of patent term adjustment for processing delays attributable to the applicant.

*Comment 328:* One comment suggested moving to a first-to-file system.

*Response:* As part of global patent law harmonization efforts, the Office has sought public comment on whether the first to invent (used in the United States) or the first inventor to file (used in the remainder of the world) standard in determining the right to a patent represented a "best practice" for a harmonized global patent system. *See Request for Comments on the International Effort to Harmonize the Substantive Requirements of Patent Laws,* 66 FR 15409 (Mar. 19, 2001) (request for comments). The Office is continuing to consider the issues related to the first to invent versus the first inventor to file standard in determining the right to a patent in the context of international harmonization efforts.

*Comment 329:* One comment suggested elimination of all forms of continuing applications except divisional applications.

*Response:* The changes to continuing application practice adopted in this final rule seek a balanced approach between the needs of applicants for patents and the goals of the Office to increase quality and decrease pendency.

*Comment 330:* One comment suggested reducing the shortened statutory period for an applicant's response to three months without any extension of time. One comment suggested implementing a thirty-day reply period for both the Office and applicants.

*Response:* The Office is considering whether it should change the shortened statutory period for Office actions on the merits to less than three months.

*Comment 331:* Several comments expressed support for publication of all applications. One comment suggested limiting secrecy of a patent application to one month. One comment suggested that some form of intervening rights legislation might better address the problem of repetitive filings. One comment suggested elimination of 35 U.S.C. 135(b). One comment suggested amending 35 U.S.C. 271 so that a variety of claim forms are not necessary for direct infringement to be found, arguing that current 35 U.S.C. 271 is the reason why software-based inventions require claims to different statutory classes, thus increasing the number of claims in an application. One comment suggested that the Office should work with Congress to legislatively overturn *Honeywell Int'l Inc.* v. *Hamilton Sundstrand Corp.,* 370 F.3d 1131, 71 U.S.P.Q.2d 1065 (Fed. Cir. 2004), to promote the use of dependent claims and not construe the rewriting of an objected to dependent claim in independent form narrowly under the doctrine of equivalents. One comment suggested granting rights to regulate the use of an Internet patent to the assignee and the enforcement of such regulation would be based on a fee and would not include the right to prevent others from using the invention.

*Response:* The changes suggested by the comments are beyond the scope of the proposed changes to the rules of practice. It is not clear, however, how the changes suggested by the comments would address the increased usage of continuing application practice or have an appreciable impact on quality or pendency.

*L. Effective Date of the Changes in This Final Rule*

*Comment 332:* One comment stated that the Office does not have any authority to promulgate retroactive rules because the Administrative Procedures Act does not confer such power on the Office. Several comments asserted that Congress never expressly authorized the Office to promulgate retroactive rules, citing *Landgraf* v. *USI Film Prods.,* 511 U.S. 244, 265 (1994) and *Bowen* v. *Georgetown Univ. Hosp.,* 488 U.S. 204, 208 (1988). A number of comments also suggested that the retroactive effect of proposed rule § 1.78 is contrary to judicial precedent, citing *Henriksen* and *Hogan.* Several comments argued that applying the changes to § 1.75 retroactively would be unfair to the applicants and a violation of due process because applicants were not given sufficient notice of the changes when they filed applications. Lastly, one comment argued that applying the rule changes to pending applications is an unconstitutional denial of due process.

*Response:* The Office is not engaging in retroactive rule making. This final rule has a prospective effect only. The Office's decision to grandfather only pending applications in which a first Office action on the merits was mailed before November 1, 2007 (the effective date of the changes in this final rule) with respect to the changes to § 1.75 does not constitute retroactive rule making. Likewise, the Office's decision to grandfather only continuing applications and requests for continued examination that were filed before the effective date of the final rule with respect to §§ 1.78 and 1.114 (with a provision that allows for at least "one more" continuation application or continuation-in-part application of an application filed before the publication date of this final rule) does not constitute retroactive rule making.

"A statute [or regulation] does not operate 'retroactively' merely because it is applied in a case arising from conduct antedating the statute's enactment." *Landgraf,* 511 U.S. at 255. Rather, a statute (or regulation) is retroactive if it takes away or impairs vested rights acquired under existing law, creates a new obligation, imposes a new duty, or attaches a new disability with respect to transactions already completed. *See Landgraf,* 511 U.S. at 269. The filing of an application for patent does not create a vested right or amount to a transaction already completed. *See Community TV, Inc.* v. *FCC,* 216 F.3d 1133, 1143 (D.C.