Tafas v. Dudas et al
Case 1:07-cv-00846-JCC-TRJ    Document 66-15    Filed 11/14/2007    Page 1 of 4
Doc. 66 Att. 14

# EXHIBIT 8

Dockets.Justia.com



## UNITED STATES PATENT AND TRADEMARK OFFICE

GENERAL COUNSEL

NOV 2 5 2005

MEMORANDUM FOR:   Thomas M. Sullivan
                 Chief Counsel for Advocacy
                 Small Business Administration

FROM:   Bernard J. Knight, Jr.
        Deputy General Counsel for General Law

SUBJECT:   Certification Under 605(b) of the
           Regulatory Flexibility Act

The Deputy General Counsel for General Law of the United States Patent and Trademark Office certifies to the Chief Counsel for Advocacy of the Small Business Administration that this notice of proposed rule making, Changes to Practice for Continuing Applications, Requests for Continued Examination Practice, and Applications Containing Patentably Indistinct Claims (RIN 0651-AB93), will not have a significant economic impact on a substantial number of small entities. See 5 U.S.C. 605(b).

In Fiscal Year 2005, the Office received approximately 317,000 nonprovisional applications. Of those, about 62,870 (about 19,700 small entity) were continuing applications. In addition, the Office received about 52,750 (about 8,970 small entity) requests for continued examination. This notice proposes to require that: (1) any second or subsequent continuation or continuation-in-part application and any second or subsequent request for continued examination include a showing to the satisfaction of the Director as to why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution after a single continuation or continuation-in-part application or request for continued examination; and (2) multiple applications that have the same effective filing date, overlapping disclosure, a common inventor, and a common assignee include either an explanation to the satisfaction of the Director of how the claims are patentably distinct, or a terminal disclaimer and explanation to the satisfaction of the Director of why patentably indistinct claims have been filed in multiple applications.

<u>Continuing Applications</u>: This notice proposes to require that any second or subsequent continuation or continuation-in-part application include a petition (with a $400.00 petition fee) with a showing to the satisfaction of the Director as to why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the prior-filed application.

This proposed rule change will not affect a substantial number of small entities. Of the 62,870 continuing applications filed in fiscal year 2005, about 44,500 (about 15,665 small entity) were designated as continuation or continuation-in-part applications, and about 11,790 (about 4,470 small entity) of these applications were a second or subsequent continuation or continuation-in-part application. Therefore, the proposed petition fee and showing requirement would impact relatively few applications (about 3.7 percent or 11,790 out of 317,000) and relatively few small entity applications (about 4.8 percent or 4,470 out of 93,000). It is also noted that this proposed change would not disproportionately impact small entity applicants. The primary impact of this change would be to require applicants to make a bona fide attempt to advance the application to final agency action by submitting any desired amendment, argument, or evidence prior to the close of prosecution after a single continuation or continuation-in-part application or single request for continued examination (except as permitted by § 1.116 or § 41.33)).

The notice does **not** propose any petition fee or showing requirement for a divisional application, but only requires that a divisional application be the result of a requirement of unity of invention under PCT Rule 13 or a requirement for restriction under 35 U.S.C. 121 in the prior-filed application. Thus, an applicant may obtain examination of claims to an invention in the prior-filed application because the Office did not impose a requirement of unity of invention under PCT Rule 13 or a requirement for restriction under 35 U.S.C. 121 in the prior-filed application, or the applicant may obtain examination of claims to an invention in a divisional application because the Office did impose a requirement of unity of invention under PCT Rule 13 or a requirement for restriction under 35 U.S.C. 121 in the prior-filed application. Of the 62,870 continuing applications filed in fiscal year 2005, about 18,370 (about 4,000 small entity) were designated as divisional applications.

Requests for Continued Examination: This notice proposes to require that any second or subsequent request for continued examination include a petition (with a $400.00 petition fee) with a showing to the satisfaction of the Director as to why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution.

This proposed rule change will not affect a substantial number of small entities. Of the 52,750 requests for continued examination filed in fiscal year 2005, about 9,925 (about 1,796 small entity) were a second or subsequent request for continued examination. Therefore, the proposed petition fee and showing requirement would impact relatively few applicants (about 3.1 percent or 9,925 out of 317,000) and relatively few small entity applicants (about 1.9 percent or 1,796 out of 93,000). It is also noted that this proposed change would not disproportionately impact small entity applicants. The primary impact of this change would be to require applicants to make a bona fide attempt to advance the application to final agency action by submitting any desired amendment, argument, or evidence prior to the close of prosecution after a single continuation application or single request for continued examination (except as permitted by § 1.116 or § 41.33)).

<u>Patentably Indistinct Claims</u>: Finally, this notice proposes that applicants (or assignees) who file multiple applications having the same effective filing date, overlapping disclosure, and a common inventor include either an explanation of how the claims are patentably distinct, or a terminal disclaimer and explanation of why there are patentably indistinct claims in multiple applications. An applicant who files multiple applications containing patentably indistinct claims must in any case submit the appropriate terminal disclaimers to avoid double patenting. See <u>In re Berg</u>, 140 F.3d 1428, 1434, 46 USPQ2d 1226, 1231 (Fed. Cir. 1998) (applicants who may file all of their claims in a single application, but instead chose to file such claims in multiple applications, are not entitled to two-way double patenting test).

This proposed rule change does not affect a substantial number of small entities. The Office received about 17,600 (about 3,850 small entity) terminal disclaimers in fiscal year 2004. Based upon the Office's experience with double patenting situations, most of these double patenting situations involved an application and a patent (rather than two applications) containing patentably indistinct claims. In addition, § 1.78(b) currently provides where two or more applications filed by the same applicant contain conflicting (<u>i.e.</u>, patentably indistinct) claims, elimination of such claims from all but one application may be required in the absence of good and sufficient reason for their retention during pendency in more than one application). Therefore, the requirement for an explanation up front as to why there are two or more pending applications by the same applicant (or assignee) containing patentably indistinct claims when that is the case would impact relatively few applicants (about 5.7 percent or 17,600 out of 310,000) and relatively few small entity applicants (about 4.1 percent or 3,850 out of 93,000). It is also noted that this proposed change would not disproportionately impact small entity applicants. Moreover, there are no fees associated with this proposed rule change.