# EXHIBIT 9



# UNITED STATES PATENT AND TRADEMARK OFFICE

OFFICE OF THE GENERAL COUNSEL

July 10, 2007

MEMORANDUM FOR:   Thomas M. Sullivan
                  Chief Counsel for Advocacy
                  Small Business Administration

FROM:             William Covey
                  Deputy General Counsel for General Law

SUBJECT:          Certification Under 605(b) of the
                  Regulatory Flexibility Act

The Deputy General Counsel for General Law of the United States Patent and Trademark Office certifies to the Chief Counsel for Advocacy of the Small Business Administration that the changes implemented in this final rule, Changes to Practice for Continued Examination Filings, Patent Applications Cpontaining Patentably Indistinct Claims, and Examination of Claims in Patent Applications RIN 0651-AB93 and RIN 0651-AB94) will not have a significant economic impact on a substantial number of small entities. As prior notice and an opportunity for public comment are not required pursuant to 5 U.S.C. 553 (or any other law), neither a regulatory flexibility analysis nor a certification under the Regulatory Flexibility Act (5 U.S.C. 601 et seq.) are required. See 5 U.S.C. 603. Nevertheless, the Office published notices of proposed rule making setting forth the factual basis for certification under the Regulatory Flexibility and sought public comment on that certification. See Changes to Practice for the Examination of Claims in Patent Applications, 71 FR at 66, 1302 Off. Gaz. Pat. Office at 1333, and Changes to Practice for Continuing Applications, Requests for Continued Examination Practice, and Applications Containing Patentably Indistinct Claims, 71 FR at 56-57, 1302 Off. Gaz. Pat. Office at 1325. For the reasons set forth herein, the Deputy General Counsel for General Law of the United States Patent and Trademark Office has certified to the Chief Counsel for Advocacy of the Small Business Administration that the changes in this final rule will not have a significant economic impact on a substantial number of small entities. See 5 U.S.C. 605(b).

This final rule provides that: (1) a third or subsequent continuation or continuation-in-part application or any second or subsequent request for continued examination must include a showing as to why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution after a first and second continuation or continuation-in-part application and a request for continued examination; (2) any divisional application be the result of a requirement to comply with the

requirement of unity of invention under PCT Rule 13 or a requirement for restriction under 35 U.S.C. 121 in the prior-filed application; (3) an application that contains or is amended to contain more than five independent claims or more than twenty-five total claims must include an examination support document under 37 CFR 1.265 that covers each claim (whether in independent or dependent form); and (4) multiple applications that have the same claimed filing or priority date, substantial overlapping disclosure, a common inventor, and a common assignee include either an explanation as to how the claims are patentably distinct, or a terminal disclaimer and explanation as to why patentably indistinct claims have been filed in multiple applications.

In response to the Office's certification in the notices of proposed rulemaking, the Small Business Administration Office of Advocacy (SBA-Advocacy) submitted a comment contending that the proposed changes are likely to have a significant economic impact on a substantial number of small entities, including small businesses and small independent inventors. SBA-Advocacy recommended that the Office conduct a supplemental Initial Regulatory Flexibility Analysis before publishing a final rule.

The Office's analysis of the proposed rules indicated that the rules would not have a significant economic impact on a substantial number of small entities. The Office considered all public comments addressing small entities, including those submitted by SBA-Advocacy. In response to these comments, this final rule incorporates a number of revisions designed to further reduce the number of small entities affected by the changes and the impacts on small entities. These changes in this final rule vis-à-vis the proposed rules that reduce small entity impacts are as follows: (1) this final rule adopts an examination support document requirement threshold five independent claims or twenty-five total claims, rather than ten representative claims; (2) this final rule provides that small entities as defined by the Regulatory Flexibility Act are exempt from the requirement that an examination support document must, for each cited reference, include an identification of all the limitations of each of the claims that are disclosed by the reference; (3) this final rule adopts a continued examination filing petition threshold of two continuing applications (continuation or continuation-in-part applications), plus a request for continued examination in any one of the initial or two continuing applications, rather than one continuation application, continuation-in-part application, or request for continued examination; (4) this final rule does not require that a divisional application be filed during pendency of initial application; and (5) this final rule provides for at least "one more" continuation or continuation-in-part application after the effective date, regardless of the number of previous continued examination filings.

In addition, the Office commissioned a detailed analysis of the impacts of this final rule on small entities. The analysis concludes that this final rule is **not** expected to result in a significant economic impact on a substantial number of small entities. The analysis measured economic impact in terms of annualized incremental cost as a percentage of revenue. The analysis indicated that the incremental cost (not annualized) would be between $2,563 and $13,121 for an entity who would be required to file an examination support document, a petition for an additional continued examination filing, or both. The analysis presumed that an economic impact greater than three percent of annualized

Page 2 of 9

incremental cost as a percentage of revenue was a significant impact. The analysis indicated that no small entities fell into this category. The analysis also presumed that an economic impact greater than one percent of annualized incremental cost as a percentage of revenue was a more moderate impact. The analysis indicated that fewer than one percent of small entities fell into this category. The analysis also presumed that a substantial number of small entities are affected if more than twenty percent of small entities are impacted. The analysis indicated that about 1.0 percent of small entities would be affected by the requirement to submit an examination support document, that about 2.7 percent of small entities would be affected by the requirement for submit a petition for an additional continued examination filing, and that about 0.3 percent of small entities would be affected by both the requirement to submit an examination support document and the requirement for submit a petition for an additional continued examination filing. A copy of the report containing this analysis is available on the Office's Web site at www.uspto.gov.

As a result of this analysis, the Office has determined that it is appropriate to make a certification that the changes being adopted in this final rule would not have a significant economic impact on a substantial number of small entities. The Office has revised the final rule requirements, as discussed previously, to further reduce economic impacts on small entities.

SBA-Advocacy commented that while the Office asserts that preparation of the examination support document should cost about $2,500, small entities contend that completing an examination support document will be more costly, time consuming and restrict their ability to prosecute patents vigorously. SBA-Advocacy also commented that small entity representatives have provided feedback that completion of an examination support document could cost from $25,000 to $30,000.

The Claims Proposed Rule referenced a $2,500 figure covering a patent novelty search, analysis, and opinion, as reported in a 2003 survey conducted by the American Intellectual Property Law Association (AIPLA). The Office agrees with the comments that this figure is probably less than the cost of an examination support document in most situations. Therefore, the Office has further analyzed costs based on the modified examination support document requirements applicable to small entities. The analysis models cost variability based on the number of claims the examination support document must address, and on whether or not a prior art search was conducted when the application was prepared. Based on this analysis, the Office estimates that the examination support document costs for small entities will range from $2,563 up to $13,121, although this latter figure assumes the examination support document must address as many as fifty independent claims or three hundred and fifty total claims. Only a small number of small entities, however, will be required to prepare an examination support document, and nearly all of these will incur costs towards the lower end of the range. Thus, the Office does not expect the final rule to result in a significant impact on a substantial number of small entities.

SBA-Advocacy commented that small entity representatives have asserted that, taken together, the two proposed changes would increase the cost of application preparation and hinder the patent prosecution process.

As discussed previously, the Office commissioned a detailed analysis of the impact of the final rule on small entities. The analysis explicitly considered the combined cost of both proposed rules (which have been combined into a single final rule). The analysis concludes that the final rule is **not** expected to result in a significant economic impact on a substantial number of small entities.

SBA-Advocacy commented that small entity representatives have raised concerns that the proposed changes will significantly impact the most valuable and commercially viable patents because those types of patents typically involved a higher number of continuations.

The Office notes that there are studies espousing the position that many commercially valuable patents are the result of a continuing application, or of a second or subsequent continuing application. However, these studies do not support the position that the applicants could not have obtained these commercially valuable patents but for the availability of an unlimited number of continuing applications. That is, these studies do not show that these commercially valuable patents could not have been obtained via two or fewer continuing applications prosecuted with a reasonable amount of foresight and diligence. Thus, these studies do not demonstrate that these commercially valuable patents happen to be the result of a continuing application or of multiple continuing applications for any reason other than simply because the prosecution tactics employed in the applications underlying these patent were based upon the availability of an unlimited number of continuing applications.

The analysis commissioned by the Office specifically considered the claim that the most valuable and commercially viable patents because those types of patents typically involved a higher number of continuations. The Office ultimately rejected the claim that this final rule will preclude applicants from being able to obtain a patent on the most valuable and commercially viable patents due to the speculative nature of the nexus drawn between the availability of an unlimited number of continuing applications and an applicant's ability to obtain these commercially valuable patents.

SBA-Advocacy commented that small entity representatives have indicated that limiting applicants to ten representative claims would make it very difficult to properly identify a potential patent, could create future liability concerns, and would weaken potential patents.

The final rule requirements apply to patent applications with more than five independent claims or more than twenty-five total claims, rather than ten representative claims. As discussed previously, applicants with more than five but less than fifteen independent claims, or more than twenty-five but less than seventy-five total claims, to an invention are able to prosecute their application in a manner that does not trigger the claims or

Page 4 of 9

continuations requirements. Specifically, an applicant may do this by submitting an initial application containing up to five independent claims and up to twenty-five total claims, and then adding a similar number of claims in each of two continuation applications (or two continuation-in-part applications, or one continuation application and one continuation-in-part application) permitted without a petition. Moreover, even for those applications that will require an examination support document, the requirement does not "limit" applicants to any particular number of claims. Applicants may continue to submit as many claims as necessary to appropriately identify their patents, even if doing so required them to prepare and submit an examination support document.

SBA-Advocacy commented that small entity representatives have contended that limiting continuation applications and examinations would inhibit their ability to enhance their applications, significantly increase costs through new fees, and force small entities to seek review through the very expensive appeals process. Small entity representatives thus assert that limiting the number of continuations could severely weaken small entities' ability to protect their patents.

The Office analysis indicates that the continued examination filing requirements adopted in this final rule will not lead to significant cost increases nor will it have a significant economic impact on a substantial number of small entities. The requirements are necessary to ensure that patent applications are of reasonable quality and that applicants pursue their patents in good faith. The excessive use of continued examination filings has been a major factor in the growing backlog of unexamined applications. With respect to having to use the appeals process in place of additional continued examination filings, if an applicant disagrees with the examiner's rejections, the applicant should file an appeal rather than filing a continuation application or a request for continued examination, for reasons discussed in detail in the statement of considerations for the final rule. The Office believes that applicants should have sufficient opportunity to place the application in condition for appeal during the prosecution of the initial application, two continuing applications, and a request for continued examination. An applicant who considers this to be insufficient may file a third or subsequent continuing application or second or subsequent request for continued examination with a petition showing why the amendment, argument, or evidence could not have been previously submitted.

SBA-Advocacy commented that the proposed changes will affect a substantial number of small entities, and that the two proposed changes to the rules reshape the basic rights of any small entity that files a patent application.

The Office agrees that the final rule places new requirements on the current patent application process. However, the Office's analysis indicates that the rule will not have a significant economic impact on a substantial number of small entities. In fact, only a small proportion of small entities will be affected by the changes in this final rule.

SBA-Advocacy commented that small entity representatives have contended that the definition of small entity that the Office uses in its certification is for calculating filing fees and excludes any small entity that has a contractual arrangement involving the

Page 5 of 9

invention with a larger company. SBA-Advocacy commented that small entity representatives have further asserted that small business size standards for RFA purposes do not include this restriction so the number of small businesses affected is likely to be larger than stated in the certification.

The Regulatory Flexibility Act permits an agency head to establish, for purposes of Regulatory Flexibility Act analysis and certification, one or more definitions of "small business concern" that are appropriate to the activities of the agency, after consultation with the Office of Advocacy of the Small Business Administration and after opportunity for public comment. See 5 U.S.C. 601(3) and 13 CFR 121.903(c). Pursuant to this authority, the Office has established the following definition of small business concern for purposes of the Office conducting an analysis or making a certification under the Regulatory Flexibility Act for patent-related regulations: A small business concern for Regulatory Flexibility Act purposes for patent-related regulations is a business or other concern that: (1) meets the Small Business Administration's definition of a "business concern or concern" set forth in 13 CFR 121.105; and (2) meets the size standards set forth in 13 CFR 121.802 for the purpose of paying reduced patent fees, namely, an entity: (a) whose number of employees, including affiliates, does not exceed 500 persons; and (b) which has not assigned, granted, conveyed, or licensed (and is under no obligation to do so) any rights in the invention to any person who made it and could not be classified as an independent inventor, or to any concern which would not qualify as a non-profit organization or a small business concern under this definition. See Business Size Standard for Purposes of United States Patent and Trademark Office Regulatory Flexibility Analysis for Patent-Related Regulations, 71 FR 67109, 67112 (Nov. 20, 2006), 1313 Off. Gaz. Pat. Office 60, 63 (Dec. 12, 2006) (notice). Prior to establishing this definition of small business concern for purposes of the Office conducting an analysis or making a certification under the Regulatory Flexibility Act for patent-related regulations, the Office consulted with the Small Business Administration Office of Advocacy and published such a definition for public comment. See Size Standard for Purposes of United States Patent and Trademark Office Regulatory Flexibility Analysis for Patent-Related Regulations, 71 FR 38388 (Jul. 6, 2006), 1309 Off. Gaz. Pat. Office 37 (Aug. 1, 2006) (notice). The Small Business Administration small entity size standards set forth in 13 CFR 121.802 excludes any business concern that has assigned, granted, conveyed, or licensed any rights in the invention to an entity which would not qualify for small entity status.

Nevertheless, in analyzing the provisions of the final rule, the Office explicitly considered a sensitivity analysis that assumed all patent applicants qualified as small entities. Even under this sensitivity analysis, this final rule is not expected to result in a significant impact on a substantial number of small entities.

SBA-Advocacy suggested that with respect to the continued examination filing requirements, the Office should increase the number of permissible continuing applications.

A08312

The final rule changes the continued examination filing petition threshold from a single continuation application, continuation-in-part application, or request for continued examination as proposed to two continuing applications (continuation or continuation-in-part applications), and a single request for continued examination in any one of the initial or two continuing applications.

SBA-Advocacy suggested that with respect to the continued examination filing requirement, the Office should consider increasing the fees for additional continuation applications.

Currently, patent application and excess claims fees are set by statute (35 U.S.C. 41(a)). In 2002, the Office proposed a patent fee structure that included a graduated excess claims fees schedule and additional fees for continued examination filings. As discussed previously, however, the Office was unable to garner sufficient support from patent user groups for a patent fee structure including a graduated excess claims fees schedule or any additional fees for continued examination filings. Therefore, the Office did not pursue this alternative.

SBA-Advocacy suggested that with respect to the continued examination filing requirement, the Office should defer review of subsequent continuation applications.

The Office considered expanding the deferral of examination provisions to allow a longer deferral of examination. The Office currently has a provision (37 CFR 1.103(d)) under which an applicant may request deferral of examination for up to three years from the earliest filing date for which a benefit is claimed. As discussed previously, the Office is studying whether changes (e.g., the maximum deferral period, third party request for examination, and patent term adjustment) to the deferral of examination procedure would be appropriate.

SBA-Advocacy suggested that with respect to the claims requirements, the Office should expand the number of representative claims included in initial review.

The Office has revised the final rule to change the examination support document threshold from ten representative claims to five independent claims or twenty-five total claims. As discussed previously, however, applicants with more than five but less than fifteen independent claims, or more than twenty-five but less than seventy-five total claims, to an invention are able to prosecute their application in a manner that does not trigger the claims or continuations requirements.

SBA-Advocacy suggested that with respect to the claims requirements, the Office should provide expedited review of applications that contain ten or fewer representative claims. The Office has considered the suggestion to provide expedited examination to applications containing less than a set number of claims. As discussed previously, the Office currently has an accelerated examination program for applicants who limit the number of claims in their applications (to no more than three independent claims and no

more than twenty total claims) and who also provide an accelerated examination support document. Therefore, the Office did not pursue this alternative in the final rule.

SBA-Advocacy suggested that with respect to the claims requirements, the Office should not apply the regulation to the backlog of pending unexamined applications.

The Office has considered not applying the claims requirement to pending applications that have not yet been examined to minimize the impact on small entities. The examination support document threshold being adopted in this final rule (i.e., more than five independent claims or more than twenty-five total claims) means that most small entity applications will not be impacted by the final rule or the decision to apply the final rule to the backlog of unexamined applications. Given the current backlog of over 700,000 unexamined applications, a decision to not apply the changes to the backlog of unexamined applications would mean that it would be calendar year 2010 before the Office would see any benefit from the change, and that the Office (and applicants) would be in a transition state until late calendar year 2011. Therefore, this suggestion was not adopted in the final rule.

The Office also received a number of additional comments from the public generally asserting that the Office did not comply with the requirements of the Regulatory Flexibility Act in certifying that the changes in this rule making will not have a significant economic impact on a substantial number of small entities. The comments stated that: (1) in light of the fact that several large companies support the proposed changes it is questionable whether the rule changes are truly neutral towards small companies and that a bias in favor of large companies and against small entities could be in violation of the Regulatory Flexibility Act; (2) the Office's certification did not adequately address the impact of the proposed rules on small entities, and the Office failed to provide a credible factual basis to justify its certification that the proposed rules would not have a significant economic impact on a substantial number of small entities in compliance with 5 U.S.C. 605(b); (3) the rule changes would have a significant economic impact on a substantial number of small entities seeking patents due to the additional costs associated with preparing an application, establishing the required showing under 37 CFR 1.78(d)(1)(vi) and 1.114(g), and supplying an examination support document in compliance with 37 CFR 1.265, and would hinder the abilities of small entities to enhance their applications and protect their inventions; (4) the definition of small entities used by the Office in its certification of the proposed rules is for the purpose of paying reduced patent fees and excludes any application from a small business that has assigned, granted, conveyed, or licensed any rights in the invention to an entity which would not qualify for small entity status; (5) the Office should prepare an initial Regulatory Flexibility Analysis and republish the proposed rules before issuing any final rule to enable the Office to closely examine the impact on the affected small entities, encourage small entities to comment on additional information provided by the analysis, identify viable regulatory alternatives to the proposed rules, and demonstrate the Office's compliance with the Regulatory Flexibility Act; (6) the Office did not describe any viable alternatives to the proposed rules to provide regulatory relief to small entities as required under 5 U.S.C. 603(c); (7) the rule changes would be invalid and vulnerable to challenges

under 5 U.S.C. 611 if the Office fails to comply with the requirements of the Regulatory Flexibility Act; and (8) the Office should exempt small entities from complying with the proposed rules to avoid further scrutiny under the Regulatory Flexibility Act.

The Office has received comments from some large entities that the changes being adopted in this final rule have a bias against large entities, and has received comments from small entities that the changes being adopted in this final rule have a bias in favor of large entities. The changes being adopted in this final rule are neutral towards both small entities and large entities. That several large entities support the changes being adopted in this final rule are more likely indicative of a willingness to take a systemic view of the impact that continuing on the present course without taking more aggressive steps to address patent quality and pendency will have on the patent system.

As discussed previously, the Office commissioned a detailed analysis of the final rule's impacts on small entities. As a result of this analysis, the Office has determined that it is appropriate to make a certification that the changes being adopted in this final rule would not have a significant economic impact on a substantial number of small entities. Therefore, the Office is not required to conduct a Regulatory Flexibility Analysis.

Pursuant to 5 U.S.C. 605(b), the requirements in 5 U.S.C. 603 and 604 for an initial and final Regulatory Flexibility Analysis (including identification of viable regulatory alternatives to the proposed rules) do not apply if the agency head certifies that the changes will not have a significant economic impact on a substantial number of small entities. In accordance with 5 U.S.C. 605(b), the Deputy General Counsel for General Law of the United States Patent and Trademark Office has certified to the Chief Counsel for Advocacy of the Small Business Administration that the proposed changes would not have a significant economic impact on a substantial number of small entities.

The Office considers this rule making to be in compliance with the requirements of the Regulatory Flexibility Act. Thus, the possibility of legal action does not warrant a decision to delay proceeding with the changes being adopted in this final rule to allow for preparation of an initial and final Regulatory Flexibility Analysis, or to completely exempt small entities from complying with the changes being adopted in this final rule.