# EXHIBIT 32

Dockets.Justia.com

STATEMENT OF

THE HONORABLE JON W. DUDAS

UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY
AND
DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE

SUBCOMMITTEE ON COURTS, THE INTERNET, AND INTELLECTUAL PROPERTY
COMMITTEE ON THE JUDICIARY
United States House of Representatives

Oversight Hearing
on
"Patent Quality Enhancement in the Information-Based Economy"

APRIL 5, 2006

## Introduction

Chairman Smith, Ranking Member Berman, and Members of the Subcommittee:

Thank you for inviting me to testify today on this important issue. Patent quality is our top priority at the United States Patent and Trademark Office (USPTO) and is the central focus in everything from our day-to-day operations to our strategic planning. We have already implemented several initiatives to improve quality, and will continue to evaluate and implement additional initiatives. We also have proposed changes to our rules of procedure, and we plan to propose more in the future – that will have a positive impact on patent quality.

## Background

The importance of intellectual property (IP) is growing -- within the business community, the United States economy, and around the world. According to a recent USA for Innovation Report, U.S. intellectual property today is now worth between $5 trillion and $5.5 trillion, equivalent to about 45 percent of the U.S. GDP -- and greater than the GDP

**Customer Panel Quality Survey**

As part of our effort to build quality into examiner work product, we are considering an effort to broaden customer input by conducting quarterly customer surveys on patent examination quality. The surveys would be administered to a representative customer panel and would focus on key examination quality issues.

**New USPTO Patent Training Academy**

This year our patent organization has implemented a new university-style training program for almost two-thirds of the 1,000 new hires expected this year. This training program is intended to not only provide more intensive technology-based training following an aggressive curriculum, but also free supervisors from this responsibility so they can focus more of their time to mentor and train the junior employees already in their units.

This training program will last for eight months and is intended to return new hires to the examining corps who are capable of writing complete office actions for supervisory review. It is our intention to increase this training program to cover all incoming employees in fiscal year 2007. This new training model will create a higher quality, better-trained new examiner who will be able to examine applications more accurately and thoroughly than our traditional one-on-one training model provides.

**Examiner Certification and Recertification**

The USPTO has implemented a thorough certification process for any employee seeking to be promoted from the GS-12 level to the GS-13 level. This process includes a review of the work product of the examiner and a certification exam similar to the patent bar exam that patent attorneys and agents must pass. In order to help examiners prepare for the certification exam, we offer a one-week patent law and evidence class, which also assists them in their day-to-day examination practice. In 2004, 178 examiners passed the certification exam; in 2005 we improved, with 275 examiners passing the exam. The promotion to GS-13 represents a level of independence in which the supervisor is no longer responsible for day-to-day intensive review of the examiner's work product. In order for the examiner to achieve this level of independence, we are ensuring that they have the skills required to perform their job requirements with a high level of quality.

In addition to the certification process, we are also currently recertifying our primary examiners. Every three years, we assess the quality of our most senior employees by a thorough review of their written work. This process involves a detailed review of both allowances and rejections written by the examiner, continuing education on patent practice and procedure. By the end of FY 2006, over 1200 primary examiners will have undergone recertification. About 95% of examiners have been successfully recertified in each of 2004 and 2005. The 5% of examiners who were not recertified were subject to an improvement period and repetition of the recertification review process the following year.

These two programs ensure that those employees who are ready to be promoted are promoted, while others who may require additional coaching and training are provided that opportunity.

**Proposed Rules Changes to Improve Patent Quality**

Patent applications that are complete, clear, well-drafted with well-identified, pertinent references take less time to properly examine. Better application input contributes directly to more efficient processing and to quality, thereby benefiting both the examiner and the applicant.

We have proposed a new patent rules package that encourages patent applicants to be more open and rigorous throughout the application process. Specifically, our rules package proposes to instill more discipline in filing continuations on patent applications and to focus examiners on representative claims in complex patent applications.

**Continuations**

In today's legal system, parties in a dispute do not have an infinite number of appeals. Currently, our patent system allows for almost unlimited reworking of applications through "continuations."

In fiscal year 2005, more than 85,000 of the USPTO's 400,000 new patent applications were a continued prosecution of an application that had previously been before an examiner in the examination process. That is, almost one-quarter of the applications that examiners had to review were ones they had previously rejected, that the applicant had then changed in the hope that they now would be acceptable. Our proposed changes will not limit the ability of an applicant to file one continuation. However, second and subsequent requests for continuations would be subject to a more stringent review process before the requests are granted. It is the second and subsequent continuations that account for about 20,000 of the 85,000 total continuations we receive each year.

**Representative Claims**

Another critical part of the patent application is "the claims," which of course define what is being patented. Every year, a small number of applications are filed with an extraordinary number of claims.

We have proposed rules that will help us find the right balance between allowing inventors to submit such applications when needed, while making it feasible for examiners to effectively examine such a high volume of claims. We have proposed a system in which the applicant and examiner can focus on a set of representative claims initially. In other words, if we received an application with 50 claims, we might look only at the first 10 claims throughout the process of rejections and amendments. Then, assuming the representative claims were accepted – but before the final patent was issued -- we would examine **all** the claims. We think this approach will improve efficiency and quality.

**Legislative Initiatives**

There are two proposals pending before the Subcommittee that are widely supported throughout the intellectual property community and would directly improve patent quality: a post-grant review procedure and a new procedure for submission of prior art. The USPTO continues to review other proposals before the Subcommittee.

**Post-Grant Review Procedure**

A new post-grant review procedure, recommended by the USPTO and under consideration in this Subcommittee, is intended to improve upon existing administrative reexamination alternatives. It would serve as a quicker, lower cost alternative to expensive litigation in reviewing patent validity questions. Such a procedure would complement rather than displace ongoing quality-focused initiatives at USPTO, which include measures to address the hiring, training, certification and retention of an adequate number of examiners.

We look forward to working with the Subcommittee in developing a post-grant review procedure that effectively serves the interests of the patent community.

**Submission of Prior Art**

While the USPTO currently has a procedure for submission of prior art after publication, which allows submission by third parties within two months of publication, the procedure does not allow explanations or other information about the patents or publications. This Subcommittee is examining a procedure for the submission of third-party prior art as part of H.R. 2795, the Patent Reform Act of 2005.

We encourage consideration of a change to the statute governing this procedure to allow protests or oppositions by third parties after pre-grant publication. Such a change would allow those interested parties to explain why the prior art would have a negative impact on the patentability of the claims. This process, which would provide the examiner with information he or she might not otherwise obtain, should result in a higher quality, more reliable patent.

We look forward to working with the Subcommittee to develop a submission procedure that effectively and fairly