# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
# Alexandria Division

|  |  |  |
|---|---|---|
| **TRIANTAFYLLOS TAFAS,** | : | |
| Plaintiff, | : | |
| v. | : | 1:07cv846 (JCC/TRJ) |
| **JON W. DUDAS, et al.,** | : | |
| Defendants. | : | |

## CONSOLIDATED WITH

|  |  |  |
|---|---|---|
| **SMITHKLINE BEECHAM CORPORATION, d/b/a GLAXOSMITHKLINE, et al.,** | : | |
| Plaintiffs, | : | |
| v. | : | 1:07cv1008 (JCC/TRJ) |
| **JON W. DUDAS, et al.,** | : | |
| Defendants. | : | |

## GLAXOSMITHKLINE'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR ENTRY OF AN ORDER REQUIRING DEFENDANTS TO SUBMIT A PRIVILEGE LOG

## **INTRODUCTION**

The Defendants (collectively, "PTO") concede that they have withheld documents and materials on the basis of "privilege." Ex. A ¶ 6 (stating that documents and portions of documents have been withheld as privileged). Plaintiff GlaxoSmithKline ("GSK") requests that the Court order the PTO to furnish to the Plaintiffs a privilege log listing the documents and materials (or portions thereof) that it has withheld from the administrative record, a description of what it has withheld, and its asserted legal basis for withholding that information.

Requiring the PTO to provide such a log of withheld documents is consistent with the law, with common administrative practice, and with well-settled concepts of litigation efficiency and forging a reasonable accommodation among competing governmental and private interests. In contrast, if the Court were to permit the PTO to continue to withhold documents without providing the standard privilege log information, then no one—not the Plaintiffs, and, more importantly, not the Court—would be able to assess objectively whether the PTO had failed to disclose the contents of non-privileged documents.

Any claim by an agency to exercise unreviewable discretion is suspect, and the PTO's claim to be able to do so here in how it has chosen to designate the administrative record is no exception. "There is no presumption against judicial review and in favor of administrative absolutism . . . unless that purpose is fairly discernible in the statutory scheme." *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 157 (1970) (hereinafter "*Association of Data Processing v. Camp*") (citation omitted). Here, no such purpose is discernible.

## **ARGUMENT**

The framers of the Federal Rules of Civil Procedure understood well that the purpose of a privilege log is to "enable other parties to evaluate the applicability of the claimed privilege or

1

protection," reducing the prospects for wasteful disputes and "the need for *in camera* examination of the documents." Fed. R. Civ. P. 26(b) advisory committee's note; Fed. R. Civ. P. 26(b)(5) (stating that a party asserting privilege "shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection"). In keeping with these interests, providing a privilege log "has become, by now, the universally accepted means of asserting privileges in discovery in the federal courts." *Avery Dennison Corp. v. Four Pillars*, 190 F.R.D. 1, 1 (D.D.C. 1999).[1]

These principles apply with equal force in the administrative litigation context, as courts have routinely ordered agencies seeking to withhold documents to make a specific showing "in the spirit of Fed. R. Civ. P. 26(b)(5)[, requiring a privilege log]" for the materials that they seek to protect. *Miami Nation of Indians v. Babbitt*, 979 F. Supp. 771, 778-79 (N.D. Ind. 1996); *see also People v. U.S. Dept. of Agric.*, 2006 WL 708914, at *4 (N.D. Cal. 2006) (quoting *Miami Nation of Indians v. Babbitt*). Simply put, a privilege log is "essential if this Court is to perform effectively its review of the agency's proffered exemptions." *Animal Legal Defense Fund, Inc. v. Dep't of the Air Force*, 44 F. Supp. 2d 295, 303 (D.D.C. 1999). The reason why is elemental: in challenges to agency actions brought under the Administrative Procedure Act ("APA"), review is "based on the full administrative record . . . before the [agency when it] made [its] decision."

---

[1] The obligation of a party asserting a privilege to provide a privilege log is considered so important that failure to produce a log may be deemed a waiver of the privileges sought to be asserted. *See First American Corp. v. Al-Nahyan*, 2 F. Supp. 2d 58, 63 (D.D.C. 1998) (noting that the magistrate judge could permissibly base a determination that privilege had been waived on a party's failure to submit privilege log), *accord Bregman v. District of Columbia*, 182 F.R.D. 352, 363 (D.D.C. 1998) ("[P]laintiff's failure to comply with Fed. R. Civ. P. 26(b)(5), requiring him to file a privilege log, bars in itself any claim of privilege, whatever its basis.").

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *Camp v. Pitts*, 411 U.S. 138, 143 (1973); 5 U.S.C. § 706.  The "whole administrative record" consists of "'all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989); *see also Miami Nation*, 979 F. Supp. at 777 ("[A] document need not literally pass before the eyes of the final agency decision maker to be considered part of the administrative record.") (citation omitted).

A court simply cannot discharge its congressionally mandated function of reviewing the "whole record" without knowing what the administrative record consists of, which requires an understanding of what the agency has declined—for whatever reason—to place into the record. Indeed, consistent with the presumption against agency claims of absolutism established in *Association of Data Processing v. Camp*, "[a]n agency may not unilaterally determine what constitutes the Administrative Record." *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739-40 (10th Cir. 1993).  Thus, by common practice, administrative agencies submit privilege logs whenever they determine that a document is protected from production by a recognized privilege; if they do not do so, courts may appropriately order them to do so. *See, e.g.*, *Center for Biological Diversity v. Norton*, 336 F. Supp. 2d 1149, 1152 (D.N.M. 2004) (referencing agency's "corrected privilege log," which "identif[ied] the twenty-eight documents withheld from the administrative record on grounds of deliberative process privilege"); *Center for Biological Diversity v. Norton*, 2002 WL 32136200, at *1 (D. Ariz. 2002) (noting that the "Secretary withheld 11 documents pursuant to attorney/client privilege, and 37 documents pursuant to the 'deliberative process' privilege as documented in its filing entitled 'Administrative Record/Privilege Log'"); *General Elec. Co. v. Johnson*, 2007 WL 433095, at *1 (D.D.C. 2007) (adjudicating GE's "objections to

the claims of privilege asserted by defendant [EPA] in the revised privilege log"); *see also Spiller v. Walker*, 2002 WL 1609722, at *3 (W.D. Tex. 2002); *Eugene Burger Mgmt. Corp. v. Dep't of Housing and Urban Dev.*, 192 F.R.D. 1, 4 (D.D.C. 1999).

By seeking the privilege log currently being requested, GSK is plainly not embarking on an open-ended fishing expedition. A facet of GSK's claims concerns whether the PTO acted in an arbitrary and capricious manner. But "the court cannot determine whether the final agency decision" is arbitrary or capricious if the "court has no idea what factors or data were in fact considered by the agency." *Miami Nation*, 979 F.Supp. at 775. To make this assessment, "the court must test the action against the 'full administrative record that was before the (agency official) at the time he made the decision.'" *Id.* Here, the PTO admits that it has withheld documents and portions of documents on the basis of "privilege." Ex. A ¶ 6. Without a privilege log, the propriety of the PTO's nondisclosures cannot be evaluated.[2]

Nor would requiring the PTO to produce a privilege log serve only as an academic exercise. GSK has identified a number of apparently missing documents (which are, in part, the subject of GSK's pending Freedom of Information Act ("FOIA") request), as well as a host of redactions that do not have self-evident grounds. For example, Exhibit B (attached) consists of

---

[2] The question of whether the PTO has wrongly invoked various privileges in support of documents admittedly withheld is not currently before the Court. Nor could it be, since the PTO has yet to assert any basis for withholding documents—precluding an analysis of the propriety of such nondisclosure at this point. Thus, cases such as *Blue Ocean Institute v. Gutierrez*, 503 Supp. 2d. 366 (D.D.C. 2007), which the PTO provided to the Court at the November 16, 2007 hearing, are inapplicable. Those cases weigh whether the movant has adequately demonstrated a need to reopen the record based on allegedly missing documents; they do not focus on whether the agency should describe with particularity the documents and redacted material it has chosen to withhold. *See id.* at 371 (describing "question presented" as whether plaintiff had shown "that other documents not in the record exist"). The issue of whether the PTO's bases for withholding documents are proper remains for another day.

"relevant data" the agency apparently considered in formulating the rules.[3] GSK does not know who generated this document, to whom it was sent, the nature of the redactions, or the privilege invoked. It may be that the material withheld falls under the "deliberative process privilege." But, to invoke this privilege, the PTO must demonstrate that the withheld portion of the document is pre-decisional and deliberative. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-152 (1975). Conversely, though, it may be that these materials should not have been withheld, because mere data considered by the agency is not covered by any privilege. As it stands, neither GSK, nor the Court, is "currently able to determine which, if any, of these materials may be covered by the deliberative process privilege," or any other privilege. *See Miami Nation*, 979 F. Supp. at 778. Under the Federal Rules and longstanding administrative law practice, GSK should not have to speculate.[4]

Similar questions attend Exhibit C (attached), which consists, in part, of an October 29, 2006 e-mail from Rick D. Nydegger, an attorney at the Salt Lake City law firm of Workman Nydegger, to Steve Pinkos, the Deputy Director of the PTO, with a copy to PTO Commissioner John Dudas. The first page of the document is marked "REDACTED." The e-mail from Mr. Nydegger describes a "possible middle ground" for the PTO to consider in going forward with

---

[3] The top of each page of Exhibit B has been "REDACTED" and indicates such. The PTO has not provided any reason for the redactions or any information regarding the redacted material.

[4] Like other claims of privilege, claims of deliberative process privilege must be carefully scrutinized. "[T]he critical question is whether 'disclosure of the materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.'" *Eugene Burger Mgmt. Corp*, 192 F.R.D. at 5 (quoting *Chem. Weapons Working Group v. EPA*, 185 F.R.D. 1, 2-3 (D.D.C. 1999)). Whether such disclosure would do so in this case requires a showing by the PTO on a case-by-case basis. Currently, however, whether the PTO can meet the standard in question is anyone's guess.

its rules given the PTO's goals and the views of "[a]pplicants" who feel the rules are "unfair and unworkable." Ex. C at 2. A privilege log would likely reveal who at the PTO received Mr. Nydegger's multi-page proposal. It would also likely reveal whether the document, and any comments thereon, were sent outside the agency (including to Mr. Nydegger), in which case any privilege would be waived. It would at least reveal the privilege invoked and the PTO's basis for withholding the document.

Moreover, ordering the PTO to produce a privilege log is worthwhile—not just because it is required, but also because it may lead the PTO to withdraw a privilege claim that should not have been made in the first instance. The government is not infallible; its lawyers are human too, and they can and do make mistakes.[5] *See, e.g.*, *Center for Biological Diversity*, 2002 WL 32136200, at *1 (noting that the "Secretary has agreed to waive the attorney/client privilege as to document numbers 1, 4, and 6 in the privilege log, and has provided copies of those documents to the Centers").

Finally, preparing a privilege log will also serve the interests of efficiency, because the PTO will be preparing identical information in the event, as expected, it withholds documents otherwise responsive to GSK's FOIA requests. It is well-settled that an agency that withholds documents subject to a FOIA request must provide a "*Vaughn* Index"[6] to the judiciary—an

---

[5] It is entirely possible that the PTO is improperly withholding some documents and that GSK will be able to establish such impropriety. No agency is perfect, and all have a strategic litigation incentive to apply privileges in as broad a fashion as possible, especially if they expect (as the PTO apparently does here), that its discretion in invoking such privileges will effectively be unreviewable by any court. *See People v. U.S. Dep't of Agric.*, 2006 WL 708914 at *2-4 (granting motion to compel where documents were withheld because agency applied wrong standard in withholding them).

[6] The "*Vaughn* Index" is named for *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974), the case in which a court first ordered production of such an index.

affidavit prepared by an agency that describes each record and provides an explanation of why the agency has withheld it.  *See Ethyl Corp. v. EPA*, 25 F.3d 1241, 1244 (4th Cir. 1994).[7]  Because the PTO will go through the same basic steps in creating its *Vaughn* Index as it will in creating a privilege log, ultimately this dispute focuses on when the PTO will produce a privilege log, and whether the PTO will insist on delay rather than exhibit a willingness, even in this forum, to comply with the comprehensive spirit of FOIA.  *See McGehee v. CIA*, 697 F.2d 1095, 1108 n.18 (D.C. Cir. 1985) ("The [FOIA] statute is plainly written so as to disfavor any effort by agency officials to shirk their responsibilities to respond promptly and fully to requests for records.").  GSK respectfully requests that the PTO not be allowed to delay so that the propriety of the PTO's nondisclosures can be evaluated in this litigation, and the record made whole if the PTO has wrongly withheld documents.[8]

## CONCLUSION

For all of these reasons, the PTO should be ordered to furnish the Plaintiffs with a privilege log listing all materials and documents withheld from the administrative record (and portions thereof), with descriptions of the contents, the author(s) and recipient(s), the date of the document, and the reason withheld.

---

[7] In *Ethyl Corp.*, the court ordered that the *Vaughn* Index describe:  (1) the withheld document's date; (2) the author and recipient of the document; (3) a description of the document's contents; (4) the reason for withholding its production, stated with sufficient specificity "to allow the court to determine whether the document has been properly withheld"; (5) any public interest determination made by the agency concerning such withholding; and (6) an identification of any reasonably segregable portions of a withheld document and a statement of all reasons for withholding the remainder of the document.  *Id.*

[8] In that regard, as directed by the Court at the November 16, 2007 hearing, GSK will also file tomorrow a motion to complete and supplement the administrative record.

Date:   November 19, 2007              Respectfully submitted,

/s/ _____
Craig C. Reilly VSB # 20942
RICHARDS MCGETTIGAN REILLY
 & WEST, P.C.
1725 Duke Street, Suite 600
Alexandria, Virginia 22314
Tel:   (703) 549-5353
Email: craig.reilly@rmrwlaw.com
Fax:   (703) 683-2941
*Counsel for Plaintiffs*

*Of Counsel for Plaintiffs:*
John M. Desmarais
Peter J. Armenio
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022
Tel:   (212) 446-4800

F. Christopher Mizzo
Jeffrey Bossert Clark
D. Sean Trainor VSB # 43260
KIRKLAND & ELLIS LLP
655 15th Street, N.W.
Washington, D.C. 20005
Tel:   (202) 879-5000


**ATTORNEYS FOR PLAINTIFFS
SmithKline Beecham Corporation d/b/a
GlaxoSmithKline, SmithKline Beecham plc,
and Glaxo Group Limited d/b/a
GlaxoSmithKline**

8

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing pleading was filed electronically this 19th day of November 2007 using the CM/ECF system, which will send notification by electronic means to the following counsel of record:

> CHUCK ROSENBERG
> UNITED STATES ATTORNEY
> Lauren A. Wetzler
> R. Joseph Sher
> Andrew Price
> Assistant United States Attorneys
> Justin W. Williams United States Attorney's Building
> 2100 Jamieson Avenue
> Alexandria, Virginia 22314
> Lauren.Wetzler@usdoj.gov
> *Counsel for All Defendants*
>
> Joseph D. Wilson, Esq.
> KELLY DRYE & WARREN LLP
> 3050 K Street, NW, Suite 400
> Washington, DC 20007-5108
> jwilson@kelleydrye.com
> *Counsel for Plaintiff Triantafyllos Tafas (# 1:07cv846)*
>
> Rebecca Malkin Carr
> PILLSBURY WINTHROP SHAW PITTMAN LLP
> 2300 N St NW
> Washington, DC 20037
> rebecca.carr@pillsburylaw.com
>     *and*
> Scott J. Pivnick
> PILLSBURY WINTHROP SHAW PITTMAN LLP
> 1650 Tysons Boulevard
> McLean, Virginia 22102-4856
> Scott.pivnick@pillsburylaw.com
> *Counsel for Amicus Elan Pharmaceuticals, Inc.*
>
> James Murphy Dowd
> WILMER CUTLER PICKERING HALE & DORR LLP
> 1455 Pennsylvania Ave NW
> Washington, DC 20004
> james.dowd@wilmerhale.com
> *Counsel for Amicus Pharmaceutical Research and Manufacturers of America*

Dawn-Marie Bey
KIRKPATRICK STOCKTON LLP
700 13th Street, N.W.
Suite 800
Washington, D.C. 20005
dbey@kslaw.com
*Counsel for Amici Hexas, LLC, The Roskamp Institute, and
     Tikvah Therapeutics, Inc.*

Randall Karl Miller
ARNOLD & PORTER LLP
1600 Tysons Blvd
Suite 900
McLean, VA 22102
randall_miller@aporter.com
*Counsel for Amicus Biotechnology Industry Organization*

Thomas J. O'Brien (VA Bar 23628)
MORGAN LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington D.C. 20004
(202) 739-5186 (phone)
(202) 739-3001 (fax)
to'brien@morganlewis.com
*Attorneys for Amicus Curae
American Intellectual Property Law Association*

/s/
Craig C. Reilly VSB # 20942
RICHARDS MCGETTIGAN REILLY & WEST, P.C.
1725 Duke Street, Suite 600
Alexandria, Virginia 22314
TEL:    (703) 549-5353
EMAIL: craig.reilly@rmrwlaw.com
fax:    (703) 683-2941
*Counsel for GSK plaintiffs (# 1:07cv1008)*

10