REDACTED

Confidential — Do Not Distribute

### Relevant data:

In FY 1980, the USPTO received 93,800 filings of which 15,156 (16.2%) were continued examination filings and 10,607 (11.3%) were continuations or CIPs[2].

In FY 1994[3], the USPTO received 186,123 filings of which 56,073 (30.1%) were continued examination filings and 45,503 (24.5%) were continuations or CIPs.

In FY 2005, the USPTO received 384,228 filings of which 120,337 (31.3%) were continued examination filings and 101,181 (26.3%) were continuations, CIPs, or RCEs.

In FY 2005, the number of continued examination filings (120,337) exceeded the number of total filings received in any fiscal year prior to 1986 (116,731 was the most filings received in any fiscal years prior to 1986).

**Note:** The best estimate is that between 5 and 30 percent of second/subsequent continued examination filings will still be filed now with a petition. Given that the currently yearly filing rate for continued examination filings is about 22,000, this would mean between 1,100 and 6,600 petitions per year.

---

[2] RCEs did not exist until FY 2000.
[3] The last fiscal year before the advent of twenty-year patent term.

3

8/3/06

A04546

Dockets.Justia.com

**REDACTED**

Confidential — Do Not Distribute

<u>Relevant data:</u>

In FY 2005, the USPTO received 384,228 filings of which 120,337 (31.3 %) were continued examination filings and 10,607 (26.3 3%) were continuations, CIPs, or RCEs.

The twenty-year patent term change in 1995 resulted in a continued examination filing bubble of 45% (81,328 continued examination filings in FY 1995 relative to 56,073 continued examination filings in FY 1994 (25,255 additional)).

Given current continued examination filings, a similar bubble could result in an additional 54,000 (45% of 120,000) filings.

Confidential

Do Not Distribute

**REDACTED**

**Relevant data:**

In FY 2005, only 2.8% (655 of 23,132) divisional applications claimed the benefit of more than 2 prior applications.

In FY 2005 in TC 1600, only 4.2% (165 of 3923) divisional applications claimed the benefit of more than 2 prior applications.

Therefore, permitting a divisional application to be filed during the pending of the initial application or the first continuing application will not affect the overwhelming number (95% in any TC) of applicants.

**Note:** To make a proper ODP rejection requires claim-by-claim analysis and identifying individual correspondence of the relationship between those claims. This can be very time consuming for the examiner. The AIPLA comments allege that "only 3% of issued patents in FY 2005" included a TD. This still amounts to almost 4,800 applications that required an ODP analysis. This figure also does not consider that (absent any information from applicants concerning co-pending applications) an examiner must consider every application for ODP issues.

Confidential

Do Not Distribute

REDACTED

### Relevant data:

Of the 242,980 nonprovisional applications filed in the second, third, and fourth quarters of FY 2005 (under the CAA fee provisions), 190,110 (78%) have more than 10 total claims but only 2,847 (1.17%) have more than 10 independent claims.

Of the 154,145 nonprovisional applications filed in the first and second quarters of FY 2006, 121,905 (79%) have more than 10 total claims but only 1,664 (1.08%) have more than 10 independent.

Thus, the 10 representative claims approach will have an effect on about 80% of applicants (requiring them to select which dependent claims are and are not representative claims), but will have a significant impact (requiring an ESD to avoid cancellation of one or more independent claims) on fewer than about 1.2% of applicants.

### Ten Representative Claims

|  | Independent Claims: 1-10<br>Total Claims: 1-10 | Independent Claims: 1-10<br>Total Claims: >0 |
|---|---|---|
| FY2005: $2^{nd} - 4^{th}$ Quarters | 78% | 1.17% |
| FY2006: $1^{st} - 2^{nd}$ Quarters | 79% | 1.08% |
| Estimate Effect | 80% | 1.2% |

**REDACTED**

**Relevant data:**
Of the 242,980 nonprovisional applications filed in the second, third, and fourth quarters of FY 2005 (under the CAA fee provisions), 87,210 (36%) have more than 6 independent claims or more than 20 total claims, and 11,896 (4.9%) have more than 6 independent claims.

Of the 154,145 nonprovisional applications filed in the first and second quarters of FY 2006, 54,389 (35%) have more than 6 independent claims or more than 20 total claims, and 6,916 (4.49%) have more than 6 independent claims.

Thus, the 6/20 representative claims approach will have an effect on about 35% of applicants (requiring them to select which dependent claims are and are not representative claims), but will have a significant impact (requiring an ESD to avoid cancellation of one or more independent claims) on about 5% of applicants.

### 6/20 Representative Claims Approach

|  | Independent Claims: 1-6 Total Claims: 1-20 | Independent Claims: 1-6 Total Claims: >0 |
|---|---|---|
| FY2005: 2nd – 4th Quarters | 36% | 4.9% |
| FY2006: 1st – 2nd Quarters | 35% | 4.49% |
| Estimate Effect | 35% | 5% |

**Note:** In comparing the 10 representative claims approach to the 6/20 representative claims approach, the 6/20 representative claims approach permits a higher percentage of applicants to be completely unaffected by the claims rule, but does result in a higher percentage of applicant being significantly affected (requiring an ESD to avoid cancellation of one or more independent claims).

Changing from the proposed the 10 representative claims approach to the 6/20 representative claims approach may result in delay in promulgating a final rule due to the need for the USPTO to conduct an Initial and Final Regulatory Flexibility Analysis (IRFA and FRFA) under the Regulatory Flexibility Act due to the higher percentage of applicants experiencing a significant impact.

### 10 Representative Claims Versus 6/20 Representative Claims Approach

|  | 10 Representative Claims | 6/20 Representative Claims |
|---|---|---|
| % of applicants that are required to select representative claims | 80% | 35% |
| % of applicants that are required to file ESD | 1.2% | 5% |

5

8/3/06

A04551

Note: Some application of the claims changes to pending applications is the best hedge against a bubble in filings due to the continuations changes (and would reduce the burden of examining any bubble filings). In addition, at 300,000 FAOMs per year (roughly the FY 2005 level of FAOMs), it would take over two years (roughly April of 2009) for the USPTO to see any impact from the rule change if the USPTO does not also apply the changes to the backfile of applications.

Relevant data:

The USPTO currently (07/2006) has an inventory of about 650,000 applications awaiting examination. Of the roughly 650,000 applications awaiting examination, claims data is available for 607,347 applications (about 40,000 have not yet undergone the necessary processing). Of these 607,347 backfile applications for which claims data is available, 108,737 (17.9%) have 10 or fewer total claims, and 498,610 (82.1%) have more than 10 claims. Thus, it appears that 553,650 (82.1% of 650,000) applicants would be affected by a requirement (in an application containing more than 10 total claims) to select which dependent claims (if any) are representative claims.

Costs to applicants: It is estimated that a reply to a notice to designate which dependent claims (if any) are representative claims will on average take 1 hour of attorney time at $286/hour[1]. Thus, the total cost to all patent applicants to select which dependent claims (if any) are representative claims would be $158,343,900 (553,650 hours at $286/hour).

Savings to the USPTO: The primary impact of this change is an improvement in patent quality rather than any reduction in costs. Given that applications include (on average) 25 total claims, applying the claims rule changes to the backfile of applications will reduce the number of claims that must be examined from 16,250,000 (650,000 X 25) to 6,500,000 (650,000 X 10), or by 9,750,000. The effort to examine these 9,750,000 claims if presented in separate applications each containing 30 claims would roughly equal to a fiscal year's effort of the Patent Examining Corps: 9,750,000 at 30 claims per applications is 325,000 applications.

In addition, the change will have an ancillary impact of removing applications in which the applicant no longer has an interest from the USPTO's backfile of unexamined applications. Approximately, 5 to 10% of applications become abandoned due to lack of reply to a first Office action. It is estimated that most of these applications become abandoned because the applicant is no longer interested in the application (rather than because the Office action demonstrates that there is no patentable subject matter in the application). This ancillary impact would result in the removal of 27,680 to 55,360 applications in which the applicant no longer has an interest from the USPTO's backfile of unexamined applications.

---

[1] The professional rate of $286/hour is the median rate for associate attorneys in private firms as published in a report by the 2003 Committee on Economics of Legal Practice of the American Intellectual Property Law Association (AIPLA).

REDACTED

### Relevant data:

Of the 607,347 backfile applications for which claims data is available, 304,365 (50.1%) have 3 or fewer independent claims and 20 or fewer total claims, and 302,982 (49.9%) have more than 3 independent claims or more than 20 total claims. Thus, it appears that 324,350 (49.9% of 650,000) applicants would be affected by a requirement (in an application containing more than 3 independent claims or more than 20 total claims) to select which dependent claims (if any) are representative claims.

Costs to applicants: It is estimated that a reply to a notice to designate which dependent claims (if any) are representative claims will on average take 1 hour of attorney time at $286/hour. Thus, the total cost to all patent applicants to select which dependent claims (if any) are representative claims would be $92,764,100 (324,350 hours at $286/hour).

REDACTED

### Relevant data:

Of the 607,347 backfile applications for which claims data is available, 475,627 (78.3%) have 6 or fewer independent claims and 30 or fewer total claims, and 131,720 (21.7%) have more than 6 independent claims or more than 30 total claims. Thus, it appears that 140,970 (21.7% of 650,000) applicants would be affected by a requirement (in an application containing more than 6 independent claims or more than 30 total claims) to select which dependent claims (if any) are representative claims.

Costs to applicants: It is estimated that a reply to a notice to designate which dependent claims (if any) are representative claims will on average take 1 hour of attorney time at $286/hour. Thus, the total cost to all patent applicants to select which dependent claims (if any) are representative claims would be $40,317,420 (140,970 hours at $286/hour).

### Comparison Chart

|  | 10 Representative Claims | 3/20 Representative Claims | 6/30 Representative Claims |
| --- | --- | --- | --- |
| # of Claims | Independent: 1-10<br>Total: 1-10 | Independent: 1-3<br>Total: 1-20 | Independent: 1-6<br>Total: 1-30 |
| % of Applicants Required to Select | 82.1% | 49.9% | 21.7% |
| Costs to Applicants | $158.3 M | $92.8 M | $40.3 M |

