**REDACTED**

```
-----Original Message-----
From: Rick D. Nydegger <RNydegger@WNLaw.com>
To: Pinkos, Steve
CC: Dudas, Jon
Sent: Sun Oct 29 15:43:44 2006
Subject: A Possible Middle Ground


Steve,
```

1

A08414

Dockets.Justia.com

The Collegiate Inventors' awards at the PTO was very enjoyable.  I especially appreciated the opportunity to simply visit with you for a while afterward.  As promised, attached is a short summary that outlines the concept that I spoke to you about.  I see this as a possible middle ground that would permit the PTO on the one hand to achieve virtually all of the benefits that it seems to be seeking in connection with the current package of proposed rules relating the changes to continuation/RCE practice, changes to IDS practice, and limiting claims presented for examination (coupled with providing examination search report for claims in excess of 10), while on the other hand removing most of the objections being voiced by the user community.

In other words, the PTO is asking that applicants 1) either limit the number of claims presented for examination to 10, or else provide the PTO with a search of the prior art and analysis of how the art applies to the claims, as a way of taking more responsibility for quality and helping the PTO with its backlog; 2) limit the number of prior art references submitted and provide more meaningful information as to why submitted references are relevant to the claims; and 3) be more responsible in concluding prosecution and creating less demand on the PTO for re-work by limiting coninuations and RCE filings.  Applicants feel these proposals are unfair and unworkable for the most part, because the 1) limiting the number of claims does not permit them to adequately explore the full range of claim scope when prosecuting an application; 2) feel that the duty of candor requires them on the one hand to submit any and every reference, and on the other the risk of inequitable conduct deters them from any kind of meaningful discussion of what they thing may be relevant about the art; and 3) limiting continuation/RCE filings will not permit them adequate opportunity to truly ferret out the appropriate scope of the claims being pursued and will prematurely force them into appeals that are not ripe.

I have tried to point out in the attached summary how the PTO might consider using PCT filings as a way of achieving acceptable results for both sides, given the above conflicting views and concerns.  The reality is (and we started hearing this at the recent AIPLA forum where John Doll and John Love were on the panel) that applicants will in any event quickly start moving to the PCT as a way of avoiding as much of the negative consequence of the proposed rules as possible.  Given that, why not look for a way that would permit the PTO to actually encourage this in the first iinstance as a way of actually achieving its goals to the extent possible?  I think this is worth serious consideration on the part of the PTO and hope that it helps provide the beginnings of some kind of productive middle ground position.

I have tried to vet this idea with as many folks as I could in the relatively limited time since the PTO's request for comments on its strategic plan was released.  For what it is worth, the general reaction to this idea seems to me to have been positive, so I simply pass that on for what it is worth.

Again, thanks for listening and hearing me out the other night.  Hope all is well with your family

Rick

2

Possible Use of PCT to Ameliorate Negative Impacts on Users Arising from Current Path USPTO Seems Committed to Taking, As Evidenced by Proposed Rules on Changes to Number of Claims Presented for Examination, Changes to IDS Practice, Limitations on Continucation/RCE Practice etc.

Goal: To find some kind of "middle ground" between the current PTO position and user community response – e.g., PTO is arguably attempting to make applicants more "accountable" by limiting continuation/RCE practice, claims presented, and IDS submissions, but at least in the case of claims and IDS practice the rules are so broad in scope that they clearly go beyond the admitted "problem" cases and impact (even punish?) most other applicants who are not part of the "quality" problem, which suggests that the reason for this scope is really due to "pendency" concerns, not quality; this evokes a user response that is very hostile/negative

Concept: Encourage/motivate use of PCT as office of first filing for U.S. applicants; what is needed is a competent search of the art that is timely. This could be provided by expanding the ISA search capability for PCT applications through bilateral agreements. Possible resources could include Canada, Australia, Sweden, Finland, Korea, China & India, in addition to the USPTO examining corp.

- Search would be conducted by 18 months with results published and electronically accessible by trilaterals
    - o Subsequent search results produced by any of the trilaterals or any other IP office would be posted to the PCT electronic search file (similar to the prosecution highway concept under pilot with the JPO) so that all offices could benefit from any further search/prior art found
    - o Application of the search results to the claims is not critical to this concept – let each trilateral office apply the art according to its own substantive laws of patentability; what matters is finding the best art and making it available on a timely basis – e.g., understanding the invention as described and disclosed in the specification, and searching that

How: Current proposed rules re limiting the number of claims for initial examination & changes to IDS practice could be used to encourage movement to PCT.

- Would require that cases searched/examined in PCT be treated as meeting the requirement for a pre-examination search for claims in excess of 10;
- USPTO should also be willing to examine all claims corresponding to the search conducted by the ISA (e.g. those claims covered by the search under the unity of invention standard)
- Would need to restructure fees so that the cost of filing first in PCT and then nationalizing in US is not prohibitive, especially for small entities/individual inventors/universities
- PCT submissions of art need to not be subject to limits on number of references, and should permit discussion of what references appear to be most relevant and why, without a claim by claim analysis, and free of constraints imposed by inequitable conduct;

1

o Question: Would statements in PCT file give rise to claims of inequitable conduct in a subsequent U.S. national stage proceeding?

Important Assumptions: To make this work, would have to
- Arrange for adequate search resources through bilateral agreements, as noted above – enough to search current annual new US filings that would go into PCT (assume at least half the current domestic filing of 400,000 new cases, since 50% of those already come out of foreign filings, minus another 25% or so representing continuation cases, e.g., roughly 150,000 cases, added to the existing PCT workload of 30, 000 – 40,000 US - originated PCT filings; this means roughly a threefold increase, or about 200,000 filings in PCT)
- Provide adequate incentive for examiners to do this work (e.g. provide either positive reward or negative consequence;
  o positive reward could be provided by not reducing current time allocated per case (20.7 hrs), thus providing opportunity for examiners to either increase production (become high producers) or to obtain more personal time by achieving production goals in "less" time – i.e., current time and motion studies show that about 20-25% of examiner's time used for search, e.g., about 5 hrs; if examiner saves 5 hrs of time per case, this means more time is available for harder cases, to increase production, or reach production goals sooner;
  o negative consequence approach could be reducing hrs per case by 5 hrs, thus examiner loses time if search is redone, making it harder to achieve production goals; (note that current PTO model showing sharp reduction in pendency, according to Nick and Kaz, assumes reduction in hrs per case and offloading the search on applicants in the form of the pre-examination search)

Potential Benefits
- Make PCT work valuable rather than just a waste of examiner time – eliminate redundancy and encourage/achieve true worksharing
- Would provide more time per case, so presumably this could be used to improve quality of examination and/or additonal time that could be used to help reduce the backlog
- Save PTO resources, perhaps up to 25% of examiner time, depending on
  o how much searching can actually be contracted out to others as opposed to being handled by US examiners
- Inherently permits deferred examination for those who benefit by this (could enter national stage at any time up to 30 months) – e.g. no searching or examination need be done by the PTO for applicants who may opt out based on search results or other factors, thus further helping to provide additional time to be used to help reduce the backlog
  o Note – if US examination occurs within 6 months after the PCT search (e.g., roughly this means 24 months from PCT filing date before FAOM has to occur in most cases, again giving the PTO some additional time to catch up on the backlog); but this also helps the PTO on pendency since

2

A08417

based on national stage entry FAOM would occur at 6 months, and thus ultimate disposition would occur roughly 12 months after that; in other words, it seems not unreasonable to expect that cases could be disposed of within about 18- 24 months after national stage entry

- Implicitly adopts the unity standard used in the PCT, which would be a big plus for BIO/Pharma users
- Permit senior examiners to spend more time actually "examining" as opposed to searching the art
- Would enhance efforts at harmonization – adoption of unity would be a helpful step in this direction, especially if it could be done without imposing a large additional burden on US examiners by having the search conducted by PCT ISAs; this has historically been the big hang up in adopting unity – e.g. the argument that it would hugely increase the examiner's work load with no concurrent benefit in the form of increased time to examine, since it would tend to keep more claims in a case for examination than the current "patentably distinct" standard used in US restriction practice
- Permits applicants to enter US examination with more focused claims amended in view of the ISA search results; this is important benefit to US applicants under the proposed rule limiting continuations and RCEs because it means that applicants won't reach the need to "spend" their continuation/RCE as quickly or as soon, since the claims will start off in the US in a better position to begin with
- This would not be a total solution to pendency – the PTO would have to combine this approach with continued hiring, but hopefully this would remove some hiring pressure so that hiring levels could be reduced to more manageable levels that would permit better training, mentoring and retention

3

A08418

Major problems that would have to be considered/addressed
- Examiner productivity system ("counts") would have to be changed, but note that the positive reward system might be a win win with the union
- Qualified ISA resources would have to be developed and provided for under bilateral agreements

4

A08419