# EXHIBIT 4

Dockets.Justia.com

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division


```
-------------------------------:
                               :
TRIANTAFYLLOS TAFAS,           :
             Plaintiff,        :
                               :
 -vs-                          :      Case No. 1:07-cv-846
                               :
                               :
JON W. DUDAS, et al.,          :
             Defendants.       :
                               :
-------------------------------:
```


HEARING ON MOTIONS

November 16, 2007

BEFORE:  Rawles T. Jones, Jr., Magistrate Judge


APPEARANCES:

James E. Nealon, Joseph D. Wilson or Steven J. Moore,
Counsel for the Plaintiff

Lauren A. Wetzler, Ralph A. Price, Jr. and R. Joseph Sher,
Counsel for the Defendant

John Desmarais, F. Christopher Mizzo and Michael McGettigan,
Counsel for SKB Corp.

```
                                                                2
 1              NOTE:  The case is called to be heard at 10:17 a.m.

 2   as follows:

 3              THE CLERK:  Civil action number 1:07-cv-846, Tafas

 4   versus Dudas, et al.

 5              THE COURT:  Good morning.  I will take as many

 6   introductions as you-all care to make.  Only those who plan to

 7   argue need identify themselves.

 8              MS. WETZLER:  Good morning, Your Honor.  Lauren

 9   Wetzler on behalf of John Dudas and the USPTO.

10              With me at counsel table are Steve Walsh, who is the

11   Acting Solicitor of the USPTO, Deputy General Counsel; and

12   Andrew Price from the U.S. Attorney's Office; and behind me is

13   Joe Sher, also from the U.S. Attorney's Office.

14              THE COURT:  Hiding as best he can.  Thank you.

15              MR. NEALON:  Your Honor, James Nealon from Kelley

16   Drye & Warren for the plaintiff, Triantafyllos Tafas.

17              At counsel table I have Joseph Wilson and Steven

18   Moore with me.  And Dr. Tafas is in the courtroom.

19              THE COURT:  Thank you.

20              MR. McGETTIGAN:  Good morning, Your Honor.  Michael

21   McGettigan, GlaxoSmithKline.

22              With me at counsel table is Mr. John Desmarais and

23   Mr. Christopher Mizzo.  Mr. Desmarais may address Your Honor.

24              THE COURT:  All right.  All right.  The matter which

25   was noticed for today is defendants' motion for issuance of a
```

3

1    briefing schedule in lieu of a standard initial scheduling

2    order.

3           I also added to the docket, just to clear things up

4    if it's needed, plaintiff's objection to withdrawal of the

5    motion to dismiss, which I hope was just a place holder.  I

6    mean, the motion to dismiss has been withdrawn, and I think

7    everybody has made whatever record they need to make in their

8    filings.

9           Does anybody need to make any further record on

10   that?  Good.

11          Then let's move on to the motion for issuance of a

12   proposed briefing schedule.

13          Ms. Wetzler.

14          MS. WETZLER:  May it please the Court, Your Honor.

15   Just by way of a, very briefly a bit of background on this

16   case to the extent it is helpful to Your Honor.

17          THE COURT:  I am familiar with the papers.  I am

18   familiar with the general outlines of the dispute.

19          Contrary to my usual practice, I want to tell you, I

20   have not read very far into the briefs because I didn't think

21   I needed to.

22          And it seems to me that the issue is not whether

23   discovery might be allowed, but whether any discovery, and if

24   so, what discovery might be appropriate in this case under

25   Fourth Circuit precedence.

4

1          So, I don't want to spend a lot of time on <u>Fort</u>

2    <u>Sumter Tours</u> or any other precedence on whether and when

3    discovery might be allowed.  Let's talk about the situation

4    that's before the Court, whether the notices to take

5    deposition that have been issued thus far have any validity

6    under the present procedural posture of the case.

7          But beyond that, on a more practical level, whether

8    any discovery is going to be appropriate before we get to

9    crossmotions for summary judgment.  Okay.

10          MS. WETZLER:  Yes, Your Honor.

11          The position of the USPTO is that no discovery is

12    appropriate in this case.  It is not seriously contested by

13    either of the parties that the case law to which Your Honor

14    has already referred limits, severely limits discovery in APA

15    cases.  This, in particular in this case we believe that the

16    record plainly speaks to provide sufficient and complete

17    evidence of what the agency considered when it issued this,

18    published this rule making on August 21, 2007.

19          There is a 127 page Federal Register notice that

20    explains in incredible detail the reasoning for the agency's

21    decision.  There is also a nearly 10,000 page administrative

22    record documenting what went into this rule making.  We think

23    this is ample for the Court to look to whether this is an

24    arbitrary and capricious rule making.

25          In fact, Judge Cacheris has already signaled his

5

1    ability to understand the rule making on the basis of this

2    Federal Register notice in this record in his memorandum

3    opinion in connection with the preliminary injunction motion

4    in which he, this is the one issue where he actually signaled

5    that he believed there was not a likelihood of success on the

6    merits that the plaintiffs could show arbitrary and capricious

7    review, particularly in light of the vast record that's before

8    the Court.

9         Plaintiffs have identified essentially two reasons

10   why they believe that, that discovery beyond this record would

11   be appropriate.  The first is an argument that the record is

12   incomplete.  And the second is an argument there's been bad

13   faith.  And I would like to address each of those in turn.

14        As to the issue of whether the record is incomplete.

15   It is simply not enough to say a record is incomplete in order

16   to get discovery.  What one has to show is that there has been

17   such a failure in the record as to frustrate judicial review.

18        THE COURT:  In which event under Fourth Circuit

19   precedent, the normal procedure would be to send it back to

20   the agency.

21        MS. WETZLER:  Correct, Your Honor.  If there is a

22   finding that this record does not support the rule making, the

23   practice and the only accepted result would be a remand to the

24   agency.

25        It doesn't open up the record for discovery.  There

6

1 is a presumption of regularity that an agency has properly

2 compiled a record. And the burden is on the plaintiffs to

3 establish that that record was not proper. It's their burden,

4 it's not ours.

5 As to the question of completeness of the record.

6 Counsel for Tafas primarily relies on the Overton Park case.

7 That was a case where there was no record before the Court

8 when it made its way up to the Supreme Court, there was only

9 post hoc litigation affidavits. And it was under that

10 circumstance that the Court remanded and said that the record

11 needed to be completed.

12 By contrast, we have a 127 page Federal Register

13 notice and a nearly 10,000 page record. One couldn't find a

14 more distinguishable case from Overton Park.

15 Similarly, the other case that plaintiffs

16 principally rely on is the Public Power Council case in the

17 Ninth Circuit. And there, as Your Honor just remarked, the

18 Ninth Circuit remarked that typically what is appropriate is a

19 remand to the agency. And that the only reason in that case

20 that they wouldn't remand was because it was, remand was

21 unavailable in that case because of unique circumstances

22 having to do with the facts of the case and the posture.

23 The case law, we cite Voyagers and so forth makes

24 clear that on the facts of a 10,000 page record, there is

25 clearly enough for a Court to go on. And again, as we noted,

7

1    Judge Cacheris had no difficulty in concluding that there is

2    little likelihood of success on this issue.

3            Furthermore, Your Honor, in any event, even though

4    there clearly is not enough to frustrate judicial review here,

5    the record simply isn't, is not incomplete.  Or better said,

6    the record is complete.

7            First of all, Tafas points to the--

8            THE COURT:  Ms. Wetzler --

9            MS. WETZLER:  Yes.

10           THE COURT:  -- why don't we wait and let Mr. Nealon

11   tell me why he thinks it's incomplete and then you can respond

12   to that.

13           MS. WETZLER:  Yes, Your Honor.

14           THE COURT:  All right.  What about bad faith?

15           MS. WETZLER:  Bad faith is an extremely high burden

16   to be able to meet.  Under the Overton Park standard, it's a

17   strong showing.

18           An example of that, of something that actually met

19   that standard is the Fourth Circuit case, the Shaffer

20   Equipment case that plaintiffs cite, but I think it is

21   important to understand the circumstances of that case.  And

22   just very briefly, Your Honor, in that case there were, as the

23   Court found, fraudulent documents with the federal government

24   which a certain federal government employee had falsified in

25   making a record and had perjured himself repeatedly.

8

1          THE COURT:  I am familiar with the case.

2          MS. WETZLER:  That's bad faith.  We have absolutely

3   nothing like that here.  We have no allegation of anything

4   like that.  I would be happy to address each of the bad faith

5   arguments, unless you would like me to wait for Mr. Nealon.

6          THE COURT:  I think so.

7          MS. WETZLER:  Okay.  Furthermore, then, Your Honor,

8   on the reg flex analysis issue, the Regulatory Flexibility

9   Act, as Your Honor knows, requires the government to insure

10  that small entities are not unduly burdened by a rule making.

11  This is a procedural statute.  In other words, the only

12  requirement for the agency to meet is to show that it has

13  reasonably carried out the mandate of the RFA by following the

14  procedures that are required.

15          There are a thousand pages in this administrative

16  record that address how this agency complied with the RFA.

17  There simply is no basis to suggest that those procedural

18  requirements have not been met.

19          Furthermore, I will wait again to address the

20  specific arguments, but simply wanted to generally address

21  that point.

22          Then again, Your Honor, the next claim is that in

23  constitutional cases, that, excuse me, in a case where there

24  is a constitutional claim, that would justify supplementation

25  of the administrative record.

9

1          That is simply incorrect, Your Honor.  One could

2     imagine that one could always bring an APA case and simply

3     throw in a constitutional claim and thereby open up the

4     record.  It would be render the APA's restriction absolutely

5     meaningless.

6          And the patent clause, patent clause argument that

7     plaintiffs are making is simply another way of styling their,

8     their other APA arguments.  And in that case, that argument

9     itself comes under the APA which prohibits agency actions that

10    are contrary to the Constitution.

11         So, we are still within the rubric of the APA in

12    dealing with the Patent Act claim.

13         I wanted to bring to Your Honor's attention three

14    cases, if I may submit them up to the Court, in which district

15    courts have held that it is inappropriate to supplement the

16    record in an APA case simply because a constitutional claim

17    has been thrown in.  If I may proffer those to the Court.

18         THE COURT:  All right.

19         MS. WETZLER:  The cases I am referencing, Your

20    Honor, are Harvard Pilgrim Healthcare, Alabama-Tombigbee

21    Rivers Coalition and Malone Mortgage Company versus Martinez.

22    The last of those cases recognize that APA review would be

23    meaningless if you could, if you could expand the record

24    simply by throwing in a constitutional claim.

25         In addition, the Alabama case specifically addresses

10

1    the situation where it is a rule making and distinguishes that

2    from, for example, the Webster case that the plaintiffs are

3    relying on.  Webster versus Doe is clearly distinguishable

4    from this case.  In that case what the Supreme Court found was

5    that APA review was unavailable and then under those

6    circumstances proceeded to consider the constitutional claims.

7         This is obviously a case where APA review is very

8    much available.  And the simple addition of one constitutional

9    claim which is duplicative of even the statutory claims is

10   simply not justification to open up this record.

11        Finally, Your Honor, the issue of, certainly the

12   Government's position is there should be no discovery.  And I

13   look forward to being able to rebut the specific arguments

14   after on rebuttal.  However, it is important to note that even

15   if this Court were to allow discovery, depositions of high

16   level agency officials are absolutely inappropriate under the

17   United States versus Morgan line of cases.  Morgan itself is a

18   Supreme Court case.

19        Plaintiffs cite Franklin Savings Association versus

20   Ryan to support themselves.  Actually what that case does is

21   show that the Fourth Circuit strictly follows Morgan.  In that

22   case the deposition of the Director of the Office of Thrift

23   Savings had been taken.  The Fourth Circuit found that that

24   was improper because it probed the mental processes of the, of

25   a decision maker.  That is clearly deliberative material and

11

1    not permitted.

2           Finally, Your Honor, I will reserve comment on the

3    appropriate schedules until after there is further resolution

4    of the discovery issues.

5           Thank you.

6           THE COURT:  Thank you.  Mr. Nealon.

7           MR. NEALON:  Thank you, Your Honor.  Jim Nealon

8    again from Kelley Drye for the plaintiff, Triantafyllos Tafas.

9           We believe that there should be no blanket

10   prohibition on discovery in this particular case.  As you have

11   seen in our papers, we have set forth a number of exceptions

12   to the so-called administrative record rule under the APA.

13          We have cited Fourth Circuit case law, the Shaffer

14   case, the Palmico case and the Appalachian Power case, all of

15   which permit discovery, appropriate discovery--

16          THE COURT:  There is no question that discovery of

17   some limited nature can be allowed if the Court finds that it

18   is appropriate in the circumstances of the particular case.  I

19   mean, we don't need to spend any time on that.

20          MR. NEALON:  Sure.

21          THE COURT:  The issue is whether this case falls

22   into that category.

23          Let's start with the discovery that has been

24   propounded.  As I understand it, there has been no effort to

25   serve, or at least nobody has told me about any document

12

1    requests or interrogatories.  I understand that four notices

2    of deposition have been issued.

3         Let me understand first where in the record or in

4    the Federal Rules you find authority to have issued those

5    notices of deposition at this stage in the litigation.

6         MR. NEALON:  Well, Your Honor, we did research the

7    Local Rules, and we did research that indicated that we could

8    before there was a scheduling conference proceed to serve

9    those notices of deposition.

10        Part of the reason that we served those--

11        THE COURT:  Well, that--  The initial scheduling

12   order in the typical case, which has not issued in this case,

13   that's part of what we are talking about, includes the

14   Bryanesque sentence, "discovery may begin now."  Which

15   relieves the parties of the prohibition which otherwise exists

16   until the Court orders that discovery might occur before the

17   Rule 26(f) conference.

18        But unless the Court has entered an order or unless

19   Judge Cacheris give you permission from the bench, I think

20   these four notices of deposition are probably void.  But I

21   will hear anything you have to the contrary.

22        MR. NEALON:  Well, I think there is actually a

23   provision in 26(f) of the Federal Rules that make

24   administrative proceedings exempt from the 26(f) conference

25   requirement.