# EXHIBIT 4-c

                                                                    34

1         So, I would rather, if the Court is amenable, just
2    deal with the four deposition notices. And if we can justify
3    discovery later on in the case, we take it up at that time,
4    whether it is an interrogatory or a request for admission or
5    whatever.
6         THE COURT: Well, I appreciate your points, and I am
7    not overly worried about the four deposition notices, you
8    know, with respect their technical validity under the rules.
9    I mean, as I hope you-all can appreciate, this motion
10   mushroomed at about 3 o'clock Wednesday afternoon into what I
11   see before me today.
12        And I am devoting the time that I am devoting to it
13   today because I think it is appropriate to begin, if not
14   complete, the process of getting the whole thing under
15   control.
16        MR. DESMARAIS: Thank you, Your Honor. And with
17   respect to the schedule, Ms. Wetzler and I actually continued
18   our meeting and conferring throughout the day yesterday. And
19   at least between GSK and the Patent Office, we did agree on
20   what dates would work for the briefing and what dates would
21   work for the arguments.
22        So, I don't know that Your Honor needs to resolve
23   that at this hearing. We can--
24        THE COURT: Well, I hope I don't have to impose a
25   briefing schedule on you. While you have the floor, Mr.

                                                                    35

1   Desmarais, give me some idea what range of dates you-all were
2   talking about.
3           MR. DESMARAIS:  What-- And again, this is not, this
4   is just between GSK and the Patent Office, we discussed last
5   night--
6           THE COURT:  I understand, you are not speaking for
7   anybody but your clients, I appreciate that.  What--
8           MR. DESMARAIS:  Yeah.  December 20 for the opening
9   summary judgment briefs and they would be crossmotions.  The
10  responses were in January.  The replies were early February.
11  Argument date--
12          THE COURT:  Whatever Judge Cacheris sets.
13          MR. DESMARAIS:  Exactly.  But there was one, the one
14  trick that we were having difficulty negotiating was I already
15  have a couple trials in February and March.  So, Ms. Wetzler
16  was kind enough to yield and we suggest a date to Judge
17  Cacheris in February on the condition that my trial that's
18  currently scheduled settles.  If it doesn't settle, then we
19  are going to take the or propose the next available Friday
20  after the trial.
21          THE COURT:  All right.
22          MR. DESMARAIS:  So, that's how we sort of worked out
23  the meet and confer last night.
24          THE COURT:  All right.  Thank you.
25          Ms. Wetzler, what I am inclined to do, I am going to

36

1  hear any response that you want to make now, but I will tell
2  you now, what I am beginning to think about doing is taking
3  this motion under advisement until two weeks from today,
4  asking for some supplemental authority if not supplemental
5  briefing, and giving you, giving you collectively an
6  opportunity to continue the discussions that everybody has now
7  alluded to.
8         Would you have any problem with that course of
9  action?
10         MS. WETZLER: Yes and no, Your Honor.
11         THE COURT: All right.
12         MS. WETZLER: The reason why we do have some pause
13 is it goes to why we started our brief with the way this case
14 was set up before the preliminary injunction was issued. And
15 what that was was at the preliminary injunction hearing Mr.
16 Desmarais said this case could go forward, could be resolved
17 in one-and-a-half months. And Tafas had already agreed to a
18 briefing schedule that would have had their first brief due
19 October 29. We then changed that to November 7.
20         So, what we are concerned about is that the
21 plaintiffs were previously ready to get this done very
22 expeditiously and now that the preliminary injunction has
23 issued, they are looking to, for a longer schedule.
24         We see no reason why this case should not be able to
25 go forward with the expediency that the parties, the

1  plaintiffs were originally willing to undertake.
2      So, my concern or my hesitation is that further two
3  weeks means that a briefing schedule couldn't even start until
4  much later than that, which pushes this case well beyond where
5  the parties were originally able and willing to have this case
6  decided.
7      THE COURT: All right.
8      MS. WETZLER: I would though like to address some of
9  the points that were made here, if I may, Your Honor.
10     THE COURT: All right.
11     MS. WETZLER: First, on the question of whether the
12 record is complete. I think as Your Honor was hinting at in
13 some of the questions you were asking Mr. Nealon, many of the,
14 the vast majority of the questions in this case are pure
15 questions of law for which there is no need for a record, much
16 less discovery.
17     The question of whether something is substantive or
18 procedural, as Your Honor alluded to, I am not sure where Mr.
19 Nealon is getting this notion of it turns on economic impact.
20 But to the extent that were true, and I don't know what the
21 authority is for that, that certainly is, the economic impact
22 is well established in the record, it is throughout it.
23     The question of whether the PTO has the power to
24 issue these rules is also a question of law, it has to do with
25 what power Congress has delegated as far as rule making

38

1  authority to the PTO and whether the PTO has acted
2  consistently with the Patent Act.  Those are pure legal
3  questions.
4        And also the third question, the constitutional
5  question of compliance with the Patent Act.  The PTO's
6  position is that that claim cannot go forward for a number of
7  threshold reasons.  But even if it did, the question there is
8  simply whether the PTO acted in an irrational manner.  That is
9  much like arbitrary and capricious review, something that
10 could be decided and should be decided on the vast record that
11 is already before the Court.
12       So, that's first, Your Honor, the issue.  Most of
13 this is about issues of law.  So, let's talk about what, when
14 the Court, when the parties would need a record.  And that's
15 primarily the question of whether there is arbitrary and
16 capricious, when the Court undertakes arbitrary and capricious
17 review.
18       The first issue about this belief about the way it
19 was put in the brief was that there was private back room
20 decision making.  I think the way that Mr. Nealon discussed it
21 here was, I think he actually used the same phrase, and also
22 said an inner circle of rule making.
23       Your Honor, there is a D.C. Circuit case that's
24 directly on point here, which is the <u>In re subpoena duces</u>
25 <u>tecum</u>, it is a very long title, but the cite is 156 F.3d 1279.

```
                                                                   39
 1   And it is quoted at length in a decision by Judge Facciola
 2   very recently called Blue Ocean Institute versus Gutierrez.
 3   And I would like to give that case to the Court, if I may, as
 4   well.
 5           THE COURT:  All right.
 6           MS. WETZLER:  I have highlighted the relevant
 7   section, but the significant point, there are numerous
 8   significant points in this decision.  The first is in quoting
 9   the D.C. Circuit, the Court explains, "when a party challenges
10   agency action as arbitrary and capricious, the reasonableness
11   of the agency's action is judged in accordance with its stated
12   reasons.  Agency deliberations not part of the record are
13   deemed immaterial.  That is because the actual subjective
14   motivation of agency decision makers is immaterial as a matter
15   of law unless there is a showing of bad faith or improper
16   behavior."
17           And I will come back in a moment to the question of
18   bad faith.  But what the Court looks at is the stated reasons,
19   the subjective intent.  All of this is absolutely irrelevant
20   unless there is a showing of bad faith.  That's quoted from
21   the D.C. Circuit.
22           The other significant aspect of the Blue Ocean
23   Institute case is what it says about privilege logs.  And in
24   this case, this is a case much like this one where the
25   plaintiffs came in and they said, we believe the record is
```

40

1  incomplete, we think there are things that are missing.
2          And what the, what Judge Facciola said in response
3  to that is, "under the most traditional understanding of how a
4  party meets its burden of proof, Blue Ocean, the plaintiff, is
5  reduced to theorizing that the documents may exist, which
6  fails to overcome the presumption that the record is
7  complete."
8          And so, in addition, what Judge Facciola had is they
9  didn't need to provide a privilege log because, quite simply,
10 deliberative materials don't belong in a record.  They are
11 irrelevant as the D.C. Circuit has said.
12         And so, consequently if we look at note 4 of Judge
13 Facciola's decision, what he said was, "it is unfair to
14 criticize NMFS, which is the government in this case, for not
15 claiming a privilege and filing a privilege log as to
16 documents it claims should not be in the administrative record
17 in the first place."
18         And that's the case here, Your Honor.  These
19 deliberative, they are of course deliberative materials.  But
20 deliberative materials don't belong in a record, they are
21 immaterial.  And, therefore, we have no obligation to provide
22 a privilege log.
23         We asked--
24         THE COURT:  Well, Mr. Nealon's point, I expect, is
25 that he needs a privilege log to determine whether the

41

1  materials that you claim were deliberative were in fact
2  deliberative.
3          MS. WETZLER: Your Honor, there is a presumption of
4  regularity of what the government does.
5          THE COURT: I understand.
6          MS. WETZLER: And unless Mr. Nealon could provide
7  specific reasons to believe that what we have designated as
8  privileged is not privileged, the reasoning of Judge Facciola
9  is incredibly compelling. What he says is, "creating such a
10 new"--
11         THE COURT: I will tell him you said that.
12         MS. WETZLER: Please do. "Creating such a new
13 burden on the agency, the parties and the Court by forcing
14 production of even a limited number of interagency
15 deliberative documents, requires a clear command from the
16 Court of Appeals, particularly in light of the unequivocal
17 statement by that Court that such materials are not part of
18 the administrative record when an agency decision is
19 challenged as arbitrary and capricious."
20         This is a burden that the Government should not have
21 to bear because in any administrative decision there are going
22 to be deliberative materials, there are going to be extensive
23 deliberative materials--
24         THE COURT: I understand, you are arguing the rule,
25 he is arguing the exception. I appreciate that.

42

1    MS. WETZLER: Okay. Then moving on to another point
2  as to why Mr. Nealon believes the record is incomplete. He
3  focuses on preproposed rules materials and why those aren't in
4  the record.
5    Quite simply, Your Honor, what the Court is
6  reviewing is not the proposed rules. The Court reviews the
7  final rules. And what we have done is provided an
8  administrative record that is complete as to how those final
9  rules were decided. That's all that is before the Court.
10    It doesn't matter how they created the proposed
11  rules or what went on there. What the Court is reviewing is
12  the final rules. And that's what we have proposed, that's
13  what is in the administrative record, appropriately so.
14    And further, Your Honor, the GSK brief raises six
15  issues that they believe are incomplete. And Tafas has
16  adopted those by, incorporated those into his brief by
17  reference. And I would, I would like the opportunity to very
18  briefly explain why each of those is not incomplete in the
19  record.
20    The first is a claim that there were--
21    THE COURT: What I would like to get from you, Ms.
22  Wetzler-- I am going to take this under advisement.
23    MS. WETZLER: Yes, Your Honor.
24    THE COURT: And I would like for you to respond to
25  that in writing.

43

1            MS. WETZLER:  I would be happy to do that.
2            THE COURT:  Okay.
3            MS. WETZLER:  Then moving on to the question of bad
4   faith.
5            THE COURT:  I don't need to hear you further on that
6   today.
7            MS. WETZLER:  I am sorry?
8            THE COURT:  I don't need to hear you further on that
9   today.
10           MS. WETZLER:  Yes, Your Honor, I will put that in
11  writing as well.
12           Further on the issue of FOIA which Mr. Desmarais has
13  raised, I just want to be perfectly clear that FOIA and
14  District Court discovery are entirely independent processes.
15           THE COURT:  All right.
16           MS. WETZLER:  So, this case cannot be held up for
17  FOIA litigation.  FOIA litigation goes or any FOIA requests--
18           THE COURT:  You don't need to convince me of that.
19           MS. WETZLER:  So, that's all then that needs to be
20  said about that.
21           As far as the briefing schedule.  What Mr. Desmarais
22  said is in fact what GSK counsel and I were able to talk about
23  yesterday, but that was a schedule, I want to be clear, if the
24  Court finds no discovery to be appropriate.  And I would like
25  to provide the Court the proposed order that we at least

44

1  agreed to so that the Court understands the parameters.  This
2  is language that was negotiated yesterday.
3          THE COURT:  I will be happy to look at that, but I
4  was interested primarily in, you know, a general notion of
5  what end dates you-all had in mind, and I appreciate the need
6  to work back from that.
7          All right.
8          MS. WETZLER:  So, Your Honor, just to conclude then.
9  The order we just gave you has to do with if there is no
10 discovery.  We do believe that there should be no discovery in
11 this case.  There is a 127 page explanation.
12         THE COURT:  I understand.
13         MS. WETZLER:  And a 10,000 page record.
14         THE COURT:  A 10,000 page record.
15         MS. WETZLER:  Yes, Your Honor, you have got it.  And
16 that's--  What we also need in this case is clear expeditious
17 resolution.  It is important to the PTO to allow their rule
18 making to come to a final resolution, to go into effect.  And
19 we need clear guidance from the Court and not continued
20 possibilities of discovery down the road.
21         THE COURT:  I appreciate that.
22         MS. WETZLER:  Thank you, Your Honor.
23         MR. NEALON:  Your Honor, could I just be heard real
24 quick on the scheduling?
25         THE COURT:  I don't need to hear you, Mr. Nealon.

Norman B. Linnell   OCR-USDC/EDVA   (703)549-4626