# EXHIBIT 5

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

---------------------------------:
                                 :
TRIANTAFYLLOS TAFAS,             :
           Plaintiff,            :
                                 :
 -vs-                            :     Case No. 1:07-cv-846
                                 :
                                 :
JON W. DUDAS, et al.,            :
           Defendants.           :
                                 :
---------------------------------:

HEARING ON MOTIONS

November 27, 2007

BEFORE:  T. Rawles Jones, Jr., Magistrate Judge

APPEARANCES:

James E. Nealon, Joseph D. Wilson and Steven J. Moore,
Counsel for the Plaintiff

Lauren A. Wetzler and R. Joseph Sher,
Counsel for the Defendant

John Desmarais, F. Christopher Mizzo, Jeffrey B. Clark and
Craig C. Reilly, Counsel for SKB Corp.

Norman B. Linnell   OCR-USDC/EDVA   (703)549-4626

```
                                                                    2
 1              NOTE:  The case is called to be heard at 10:25 a.m.
 2   as follows:
 3              THE CLERK:  Tafas versus Dudas, et al., case number
 4   07-cv-846.
 5              THE COURT:  Welcome back.
 6              MR. NEALON:  Thank you, Your Honor.
 7              THE COURT:  Would counsel who may be speaking from
 8   the lectern identify yourselves, please.  And if you need to
 9   make additional introductions, that's fine too.
10              MS. WETZLER:  Good morning, Your Honor.  Lauren
11   Wetzler on behalf of the defendants Jon Dudas and the USPTO.
12              With me at counsel table are Jennifer McDowell from
13   the Office of General Counsel; Stephen Walsh, from the, who is
14   the Deputy General Counsel and Acting Solicitor of the USPTO;
15   and behind me, as you know, is Joe Sher from the U.S.
16   Attorney's Office.
17              Thank you.
18              THE COURT:  Thank you.
19              MR. NEALON:  Your Honor, James Nealon from Kelley
20   Drye & Warren for the plaintiff, Dr. Tafas.  With me at
21   counsel table is Steven Moore and Joseph Wilson from Kelley
22   Drye.
23              THE COURT:  Thank you.
24              MR. REILLY:  Good morning, Your Honor.
25              THE COURT:  Good morning.
```

3

1     MR. REILLY: Craig Reilly here for defendant GSK.
2  And also here appearing for plaintiff GSK are John Desmarais,
3  Chris Mizzo and Jeffrey Clark.
4     THE COURT: Good morning.
5     MR. REILLY: Thank you, Your Honor.
6     THE COURT: The motions that it appears to me and to
7  the clerk are before the Court this morning are defendants'
8  motion for issuance of a proposed briefing schedule, document
9  number 60, which was initially noticed for a couple Fridays
10 back; GSK's motion for a privilege log, docket number 70;
11 their motion for, motion to compel a complete administrative
12 record, number 75; and Dr. Tafas' motion to compel a privilege
13 log, document number 80.
14    Have I missed anything?
15    MS. WETZLER: No, Your Honor.
16    THE COURT: All right. All those motions deal with
17 aspects of one central issue, which is whether any discovery
18 is to be allowed in this action. So, I see no reason not to
19 deal with all of them together.
20    That said, I want to proceed to an explanation of
21 what happened yesterday regarding Mr. Wilson's request to
22 submit materials to the Court this morning. And I apologize
23 for any confusion that I may have caused.
24    Mr. Wilson contacted chambers after sending an
25 e-mail to everybody else to ask if chambers had received the

4

1  e-mail.  Due apparently to a typographical error in the
2  Court's rather convoluted e-mail address, that e-mail had not
3  come back, come through to the chambers In Box.
4       When my staff explained that, Mr. Wilson sent it
5  again, apparently just for me.  So, when I replied to all,
6  that didn't go to everybody, it just went back to Mr. Wilson
7  and apparently with one copy bounced back to me.
8       So, that's why you-all were out of the loop.  And I
9  regret that.
10      The bottom line was, is that I sent word back to Mr.
11 Wilson that I didn't see any need to show audio or video clips
12 in court today.  That he was welcome to bring a transcript of
13 the clips that he wanted to submit with an affidavit or
14 declaration prepared by whoever did the transcripts as to
15 their accuracy.  And then we'd proceed on that basis.  I
16 assumed, and my expectation was not unjustified, I assumed
17 that there would be objections to any of that being submitted.
18      I have seen a couple of written-- I take that back.
19 I have seen one written objection submitted I believe by Ms.
20 Wetzler.
21      So, let's clear that up first.  I will let whoever
22 wants to speak on behalf of plaintiffs offer the transcript,
23 explain why you think it is relevant.  And I will let the
24 defendants respond.  And I will make a decision and we then
25 will move on to argument on the broader issues before the

5

1  Court.
2          MR. NEALON:  Your Honor, I may have Mr. Wilson
3  address the specifics of it, but essentially what happened is
4  we had made a decision that it may be helpful to put in these
5  video clips and transcripts.  And ultimately when we heard
6  that there was an issue and given the late hour of the day and
7  the fact that we already have an extensive record in the case,
8  we kind of concluded on our side, rather than burdening the
9  parties and the Court with an additional, you know, exhibit
10 when we already have so many, and the fact that it was
11 cumulative, that it made more sense to focus on the issues
12 that we had already, you know, briefed rather than creating a
13 hotly disputed issue about new evidence.
14         We think it is cumulative, interesting, potentially
15 helpful, but cumulative to the arguments that we had already
16 made.  And we thought the better course was to come in today
17 and focus on the issues that had already been briefed
18 extensively.
19         THE COURT:  All right.  Does that not end the
20 matter?
21         MS. WETZLER:  That it does, Your Honor.  I was
22 simply going to say, we will rest on our papers and Mr.
23 Nealon's admission that it is a cumulative submission.
24         THE COURT:  Well, it hasn't been submitted.  I
25 haven't seen it.  I think that is the end of it.

6

1  All right. I have read, I believe, all of your
2  submissions on all of the motions. I have at least reviewed
3  the exhibits that were submitted and read them to the extent
4  that I thought I needed to. I will take all the motions
5  together.
6      Let me hear from plaintiffs first on the issues
7  before the Court.
8      MR. NEALON: Your Honor, James Nealon from Kelley
9  Drye for the plaintiff, Dr. Tafas.
10     Just to quickly sum up why we believe we should be
11 permitted discovery outside the record here. The three main
12 grounds of our argument are, one, we think that there has been
13 a withholding of record information.
14     The second argument is bad faith. That goes to bad
15 faith in terms of not presenting a complete administrative
16 record. We think something is perhaps being withheld that
17 should be part of the record. It goes to biased rule making
18 and bad faith in the rule making process. We believed that
19 this matter was prejudged right from the get-go. And a bad
20 faith RFA claim.
21     And an additional grounds is our constitutional
22 claim.
23     I know the Court has extensive papers, so I will try
24 to hit some of the highlights in terms of some of the new
25 rebuttal arguments that have been raised by the PTO.

7

1       But I think most fundamentally, a lot of this debate
2  is should plaintiffs be permitted to go outside the
3  administrative record here based on any of those grounds.  And
4  at core we are not trying to go outside the administrative
5  record.
6       What we are positing to the Court is that the record
7  that has been presented to us is not the complete
8  administrative record, not at all.
9       So, you know, essentially that's where we are trying
10 to go.  We are trying to figure out what is the true
11 administrative record both by obtaining documents.  If there
12 are privilege assertions, we think they should be asserted--
13      THE COURT:  How do you get to do that without
14 engaging in not just a massive fishing expedition, but without
15 being given carte blanche to examine everything in the PTO's
16 files?
17      MR. NEALON:  Well, we are not asking for permission
18 to go untrammel through the PTO files.  I mean, there has been
19 a lot of discussion about burden, who has the burden of
20 proving the documents are being withheld.  What we have done
21 is we have identified significant categories of documents that
22 appear to us to be missing.  And I will quickly run through
23 those in a moment.  And what we are saying is, the burden is
24 on the PTO to certify a proper record to the Court.
25      THE COURT:  Then on that issue, why aren't you in a

8

1   position right now to present that issue to Judge Cacheris and
2   ask him to remand the matter for amplification and, pick your
3   word, ask Judge Cacheris to remand the case requiring the PTO
4   to supplement the administrative record?
5           MR. NEALON:  One, I think it would, you know, in
6   terms of, I think this issue came up when we were here before,
7   you had said in the Fourth Circuit--
8           THE COURT:  And I am still trying to get an answer
9   that I am comfortable with.
10          MR. NEALON:  Right.  You know, is there any
11  authority in the Fourth Circuit that would permit discovery on
12  this issue rather than simply a remand.  And in fact, there is
13  substantial authority, some of which we cited in our brief,
14  but the Fort Sumter case permitted discovery in exactly this
15  type of circumstance, National Audubon versus Navy--
16          THE COURT:  What discovery was allowed in the Fort
17  Sumter case?
18          MR. NEALON:  What they said is, you know, they
19  basically approved of the principle.  The Public Power case
20  from the Ninth Circuit, they said, if there is evidence that
21  is withheld--
22          THE COURT:  And I start my analysis from that
23  principle.  I need to understand what in the circumstances of
24  this case is necessary from the plaintiffs' side of the
25  courtroom in order to put you in a position to make your best

9

```
 1  case to Judge Cacheris?
 2          MR. NEALON:  Well, Your Honor, certainly one
 3  possibility, and it was raised by the defendants, is if the
 4  record is so bare of supporting data, on theory on the final
 5  hearing on the merits we could say to the Court, look, there
 6  is no little in the record that it must be arbitrary and
 7  capricious because there is not enough there to support the
 8  record.  That's certainly one argument we could make.
 9          THE COURT:  And I assume you are going to make that
10  argument.  And the argument may be successful, I have no view
11  on that.
12          MR. NEALON:  Right.
13          THE COURT:  Nor need I.
14          MR. NEALON:  Well, the argument that was more than
15  just that--  Certainly that would be an option that's open to
16  us.  Now, we have 10,000 pages in the record.  You know, that
17  would be just simply saying, look, there is not enough to
18  support particular items, but we are entitled to make another
19  argument.  And that argument is, the cases are very clear that
20  what we are entitled to is everything that was directly or
21  indirectly considered by the rule makers in passing this rule.
22          Now, there may well be legitimate privileges that
23  could be asserted.  They haven't been asserted yet in a way
24  that we can evaluate and challenge.
25          THE COURT:  Well, what do you suggest, and we are
```

10

1   replowing ground from a couple weeks ago, I realize, but I am
2   still trying to get a handle on this, what do you suggest in
3   your wildest dreams is out there that was considered that's
4   not in the record?
5           MR. NEALON:  Well, what we are saying is that there
6   are no, very few documents prior to the proposal date of the
7   rules, for one.  Only 55 out of 846 documents precede the
8   proposal of the rule.
9           We have no meaningful internal materials.  In fact,
10  from going through the record, and I actually sat and went
11  through it myself, you would never know that any of the key
12  decision makers who we would like to depose ever even touched
13  this rule.
14          The documents that were provided as far as data,
15  according to an admission in their own papers, have been
16  stripped of transmittal e-mails or anything that would let us
17  make any sense out of it.
18          There are 500 comments according to the PTO in the
19  record, and obviously everyone has seen the sheet, it is
20  voluminous, there is no evidence at all, other than the final
21  sheet that came out on August 22 with the rules, that anyone
22  ever looked or analyzed those comments which they are required
23  to do under the rule.
24          THE COURT:  Well, that gets us, I expect, to the
25  deliberative process privilege.