# EXHIBIT 5-b

21

1  by the deliberative process privilege?
2          And I realize that question invokes the issue
3  whether or not and under what circumstances the deliberative
4  process privilege could be waived, but let's--
5          MR. NEALON:  So, something that would--
6          THE COURT:  Let's just take the two privileges
7  together.  What in this case would be covered by the
8  attorney/client privilege and not also covered by the
9  deliberative process privilege?
10         MR. NEALON:  Well, I think the deliberative process
11 privilege--  I mean, let's assume that you had someone like a
12 Mr. Whealan, who, according to his own PowerPoints and his
13 presentations, was a material player in terms of coming up
14 with these rules.  I suppose he could have internal
15 discussions about the various considerations, you know, that
16 are going into these rules, different factual things that the
17 PTO is considering, different alternatives that they looked
18 at, that he could have discussions within the PTO, that one
19 might arguably be able to claim is attorney/client privilege.
20 And then he go goes out to a town hall meeting, you know, and
21 talks about that at length.
22         I think you could have a situation where that would
23 be waived from an attorney/client point of view.  Now the
24 question is, why wouldn't that be waived from a deliberative
25 process point of view?  Or why would the deliberative process

                                                                    22

1   privilege be waived from that point?
2           THE COURT: Take it either way.
3           MR. NEALON: Well, I think once it's out there, it's
4   no longer confidential. And I think that that would obviate
5   both privileges, you know, just from a privilege law point of
6   view.
7           But the deliberative process privilege is a very
8   narrow privilege, and there is case law that we cited saying
9   it should be narrowly construed. And it has very technical
10  elements. You know, one of which is, is the actual
11  communication, let's say, in any given document, something
12  that if it was disclosed, you know, would hinder frank
13  discussion in the future among government officials.
14          So, I think it's a different requirement. You know,
15  I think I could certainly foresee there being discussions
16  internally, you know, let's say right before the rules-- I
17  don't know, let's say there is a transcript made among some of
18  the key decision makers, okay, we have to decide tomorrow
19  whether we are actually going to go with these rules, let's
20  debate all the pros and cons that we have been talking about
21  for the last 24 or 36 months.
22          I mean, that piece of it may be deliberative
23  depending upon what's in the document, but I do not think it
24  would be necessarily be deliberative if every discussion
25  relating to the topic for the last 36 months before that and

23

1   all the evidence that may have been considered-- And that's
2   our concern, that there are, I would assume, legitimate areas
3   of deliberative process privilege here, you know, that could
4   be asserted. And someone has to stand up and say, I am
5   willing to certify that this is an appropriate invocation of
6   the privilege. And you have the factual material that was
7   considered because, obviously, it is well known you can't hide
8   facts, you know, within the privilege.
9           So, if there were factual considerations considered
10  by the PTO, we are entitled to know what those are.
11          And I guess that's kind of a roundabout way of
12  discussing it, but I think that once it is disclosed in the
13  public domain, a particular communication, that that would
14  obviate the deliberative process privilege as well.
15          THE COURT: All right. Before I hear from the other
16  attorneys, are there any other points that you wanted to
17  cover? Because I have kept you engaged.
18          And specifically, is there any additional gloss that
19  you wanted to put on your submissions with respect to the
20  depositions you wanted to take?
21          MR. NEALON: Well, just a couple of points. Again,
22  I mentioned the point that there is Fourth Circuit authority
23  saying that we can use discovery to complete the
24  administrative record. And that is our intent here.
25          I think, you know, to some extent we cite cases

24

1   dealing with bad faith and we think we have shown indicia of
2   bad faith warranting further investigation. And this
3   presumption of regularity shouldn't be used as a shield to
4   prevent us from probing into that.
5         One of the cases cited by the PTO is this Amfac case
6   that talks about we are entitled to all materials that might
7   have influenced the agency's decision. And they go on to say,
8   and not merely those which the agency relied on in its final
9   decision.
10        Here the PTO has said, look, we have determined that
11  the only thing you are really entitled to in terms of an
12  administrative record is what we considered in the final
13  decision. And no one is quite sure when that happened. But
14  that rationale seems to be directly contrary to one of their
15  own cases.
16        THE COURT: And I am going to hear Ms. Wetzler on
17  that.
18        MR. NEALON: So, again, the standard is very broad.
19  The deliberative process privilege is very narrow and fact
20  specific. It is the PTO's burden, if they want to claim a
21  privilege once challenged, I think to assert that.
22        I think that there is an attorney/client privilege
23  again that can certainly be asserted, but our concern is
24  really, do we have a cherry-picked record or do we have the
25  real record.

25

1       And going back to a point Your Honor made, why
2  shouldn't we just go to Judge Cacheris and ask that this whole
3  thing be remanded. It seems to me there is the more direct
4  route through the discovery process in terms of making sure we
5  have a complete administrative record, giving the parties an
6  opportunity to challenge if they are so inclined any
7  assertions of privilege. To get some sense as to what the
8  scope of it is. I mean, certainly there is a big difference
9  if we are talking about 50 documents that are being withheld
10 as privileged as opposed to 20,000 documents. Because if
11 there is 20,000 documents, you know, I think that raises
12 concerns, what was the criteria for selecting it.
13      And again, just fundamentally, at the end of the day
14 the Court has to review the whole record. And we can
15 certainly come in at the end of the day and say, well, there
16 is really not much in the record from which we could reverse
17 engineer these rules, so we should throw it out. But we
18 should be entitled to go one step further and say, if there is
19 matter that should have been included in the record that would
20 have been adverse to what the PTO wanted to do, we are
21 entitled to know what that is and to present that to the Court
22 as an arbitrary and capricious ground and/or as evidence of
23 bad faith.
24      And it gets sort of circular. It's like, well, you
25 have to prove bad faith to be able to pursue bad faith. We

26

1  think we have put out enough evidence, at least initial
2  indicia of it, to make a prima facie case that there has been
3  some bad faith sufficient to warrant some further
4  investigation.
5       So, I think whether we go the route Your Honor
6  mentioned, which is going back to Judge Cacheris to try to get
7  the record supplemented, or whether there is a document
8  discovery ordered and a privilege log produced, I think at the
9  end of the day the result is the same. Hopefully we have a
10 full administrative record and the parties can make whatever
11 arguments they want to make. But we have to be permitted to
12 challenge whether that is a proper record because otherwise
13 there is no way to prove ultimately our bad faith claim,
14 particularly on the RFA certification.
15      THE COURT: Thank you.
16      MR. NEALON: Okay, thank you.
17      THE COURT: Mr. Desmarais.
18      MR. DESMARAIS: Thank you, Your Honor.
19      I think my focus is a little bit different from
20 Tafas, so let me, we are not trying to get depositions and we
21 are not pursuing the bad faith argument. Our argument is
22 actually very focused and our requests very narrow.
23      I think it is undisputed between all the parties
24 that to make this determination, the Court needs the record,
25 the whole record. The cases are unanimous in that. There is

27

1   no contrary authority.
2           THE COURT:  And Ms. Wetzler says the Court has the
3   whole record as she interprets that term.
4           MR. DESMARAIS:  Exactly.  And that's exactly what I
5   wanted to focus on.  I think that while the PTO is taking the
6   position that they have provided the whole record, when you
7   actually drill down and look at what they provided, what they
8   said in the declaration and what they didn't provide, it is
9   clear that they have not.
10          And just to get very specific about it, and we have
11  outlined this in our brief, the first category of documents we
12  outlined in our brief that are clearly not in the record as
13  provided by the Patent Office, where are the documents before
14  January 2006?
15          These rules were a sea change at the Patent Office,
16  a sea change for patent practitioners.  They had very specific
17  proposals in them about the number of claims you could file,
18  the number of continuations you can file, the searching
19  requirements.  These weren't made up out of whole cloth.  And
20  we outlined this in our brief.
21          So, what is missing?  The analysis that the Patent
22  Office did to come up with the limits for how many
23  continuations you could file, how many requests for
24  continuation, the specifics about how you are going to do this
25  searching.  They did analyses, they did models, they did

```
                                                                    28
 1   models about if we adopt these rules, what is the effect going
 2   to be on the backlog of the patent applications pending in the
 3   Patent Office?
 4           We know they did this.  They have told us they did
 5   this.  These models and rules and analyses are not in the
 6   record.
 7           THE COURT:  Why do you need to have them?
 8           MR. DESMARAIS:  Here I can--
 9           THE COURT:  This is the analog of the question I
10   kept asking Mr. Nealon.
11           MR. DESMARAIS:  Right.
12           THE COURT:  Why do you need to have them in order to
13   be able to make the argument that you are going to make to the
14   District Judge on summary judgment?
15           MR. DESMARAIS:  Here's why.  This type of document,
16   and there are other reasons for the other documents, but on
17   this type of documents, they go directly to the claim of
18   whether the rules as adopted are arbitrary and capricious.
19           Because one of the things we get to pursue in making
20   a claim of whether it is arbitrary and capricious is what were
21   the alternatives?  Were there alternatives less burdensome?
22   And the burden is on the folks subject to the rule.
23           So, for instance, we know that the PTO considered
24   limiting it to five claims, limiting it to ten claims,
25   limiting it to six claims.  And they did analyses and models
```

29

1  on all those different options, but then only chose one--
2          THE COURT:  Well, you may have a multistep process.
3  But why isn't the appropriate course--  Let's assume the
4  correctness of your arguments.
5          Why isn't the appropriate course to get the matter
6  remanded to the agency with a requirement that they supplement
7  the administrative record, and then on a properly supplemented
8  record make your demonstration to the District Judge that the
9  decision was in fact arbitrary and capricious?
10         I mean, it seems --
11         MR. DESMARAIS:  I think that is--
12         THE COURT:  -- to me that taken together, that's the
13 course that the precedents normally require.
14         MR. DESMARAIS:  You are 100 percent right.  There is
15 clearly case law support that one avenue is to go to the
16 District Judge and ask for the case to be remanded to have the
17 record augmented fully.  No question about it, Your Honor, you
18 are 100 percent right.
19         However, there is also--
20         THE COURT:  And these, and these plaintiffs, I want
21 to get this out and then I am going to be quiet and let you
22 respond, these plaintiffs, like many others in the
23 administrative review arena, want the Court to make an
24 exception to that rule, you know, we are different from all
25 other disputants, and the Court in our case should make an

30

1   exception and allow extensive, you-all are asking for,
2   discovery before summary judgment so that we don't have to do
3   what other plaintiffs have to do because that's the way
4   Congress wrote the law.
5   　　　　　MR. DESMARAIS:  I think I would respond to that in
6   this way.  Firstly, I think it's, we need to separate the
7   plaintiffs because GSK is not asking for extensive discovery.
8   And I will go into that in a moment on what actually we are
9   asking for.  It's the Tafas plaintiffs who are asking for the
10  depositions and the bad faith discovery.
11  　　　　　GSK is not.  We are asking for very targeted
12  discovery to get at these analyses and studies and models that
13  is we know that the Patent Office did that they have said they
14  have done.
15  　　　　　So, you know, are we asking for broad discovery?
16  GSK is not.  We want the Court to order document requests
17  which we have drafted and attached which go specifically to
18  the things we know are missing from the record.  And we have
19  drafted a few interrogatories that we have attached to our
20  brief specifically saying, tell us about what models and
21  analyses you did because we know they did them and they are
22  not in the record.
23  　　　　　So, we are not asking for broad discovery.  And
24  that's how I distinguish the cases.  Because Your Honor is
25  100 percent right, when there are glaring errors in the