# EXHIBIT 5-e

52

1          Interrogatory 2:  State the projections and
2    estimates present or past that defendants have made regarding
3    the number of petitions, and it's et cetera.
4          And Interrogatory Number 3:  State all projections
5    or estimates present or past that the defendants have made
6    regarding the number of examination support documents that
7    would be filed.
8          These are all, it is only three interrogatories,
9    directly at--
10         THE COURT:  I understand.  I sent you off on a
11   tangent by using the word "extensive."
12         MR. DESMARAIS:  Yeah, I just want to be, what Ms.
13   Wetzler said--
14         THE COURT:  Yours is less extensive than Mr.
15   Nealon's, I don't--
16         MR. DESMARAIS:  But, yeah.  And Ms. Wetzler said it
17   also though, I mean, these are, these are--  We are asking for
18   things that should have been in the administrative record
19   anyway.  I mean, you look at the documents requests, it's the
20   same thing.  We are only asking for documents that we know
21   exist that aren't in the record.
22         So, this is not--  This is probably the stuff in
23   those 20 to 30 lawyers' offices or employees' offices that
24   were never collected.
25         So, you know, to not have that stuff be reviewed and

53

1  put into the record where it belongs and to have some sort of
2  catalog of what the PTO is actually saying, this we are not
3  going to give you because it is deliberative, how are we
4  supposed to litigate the case? We would clearly be litigating
5  the case on less than the whole record.
6        And every case in this area says it is incumbent
7  upon us to get the whole record before the Court so the Court
8  can do its job.
9        So, I think some discovery here is absolutely
10 required in order to follow through on our mandate of
11 litigating the entire record. And the PTO has the obligation
12 of articulating what is deliberative with specificity, not
13 with a broad brush that those 30 people's files are off
14 limits.
15       THE COURT: Thank you.
16       MS. WETZLER: Your Honor, since these are
17 crossmotions, hopefully I will have an opportunity briefly to
18 offer further rebuttal.
19       First of all, interesting that Mr. Desmarais focused
20 on the interrogatories, which I did not characterize as
21 extensive.
22       What is extensive is the production requests. They
23 are sweeping in nature. They cover the whole field of these
24 rules. Much like their FOIA requests do, which the document
25 requests are very obviously intended as a way to expedite the

54

1  FOIA process which has to take its time to wend its way
2  through the agency.
3          The presumption of regularity, Your Honor, has not
4  been rebutted in this case. I made a correction, hopefully
5  the Court understood, it was not that no one looked at their
6  documents --
7          THE COURT: I did.
8          MS. WETZLER: -- before. And that's a critical
9  correction, and I hope that that's clear now.
10         What we have heard repeatedly from Tafas counsel is,
11 I don't know what we are going to find. That's a quote, "I
12 don't know." That's indicative of just how speculative what
13 the plaintiffs are, are asking for is. They are seeking a
14 fishing expedition. They don't know what they are going to
15 find. And that's the fundamental problem with what they are
16 seeking.
17         In addition, with respect to the privilege log, I
18 perhaps didn't make the point orally just before that there is
19 no compelling, binding authority requiring a privilege log.
20 Plaintiffs have not identified any.
21         THE COURT: I am aware of that.
22         MS. WETZLER: And under those circumstances, the
23 case we have shown, Blue Ocean Institute, reasons from a D.C.
24 circuit case which leads to the conclusion that a privilege
25 log is not appropriate because deliberative materials do not

55

1  belong in the case.
2          So, that is the compelling authority here, Your
3  Honor. This Court would be the first in this circuit that we
4  know of to order a privilege log under these kinds of
5  circumstances on an administrative record.
6          The plaintiffs are arguing, well, we need evidence
7  to prove bad faith. No, Your Honor, they needed to prove bad
8  faith now to enter into discovery.
9          All we have here are policy differences. The
10 plaintiffs don't like this policy. They have 10,000 pages to
11 work with to show why it was arbitrary and capricious, if
12 that's what they seek to do.
13         Thank you.
14         THE COURT: All right. Thank you.
15         MR. DESMARAIS: Did you want to hear more on the
16 law? Because Ms. Wetzler just brought up the privilege law
17 for the first time. I mean, I think the cases are legion that
18 warrant and mandate in certain circumstances privilege logs
19 from federal agencies.
20         THE COURT: I am aware of that, but I am satisfied
21 that those circumstances don't exist here.
22         I am not going to make extensive findings from the
23 bench. I am going to give you what I hope will be a very
24 short memorandum order in the next day or two.
25         But I can tell you that I am satisfied and I find

56

1  that plaintiffs are not entitled to discovery in this case. I
2  have given it a lot of thought, and I have come in with a mind
3  to be persuaded if the facts and the law could persuade me
4  that you are entitled to discovery. And I find that you are
5  not.
6       So, plaintiffs' motions are going to be denied. And
7  defendant's motion, which is in effect a motion for a
8  protective order to the extent it deals with the depositions,
9  is going to be granted. And I am going to go ahead and deal
10 today with a briefing schedule so that you will know what that
11 is.
12      And Mr. Nealon, Mr. Desmarais, in anticipation of
13 the possibility that you might file Rule 72 objections to my
14 rulings as soon as they are in the form of a written order, I
15 want to tell you that I don't intend to modify the briefing
16 schedule unless and until such objections might have been
17 sustained by Judge Cacheris.
18      So, this is your briefing schedule unless and until
19 something happens of that nature. And when I say this is your
20 briefing schedule, I am going to give you a chance to comment
21 on it. It's fairly similar to what I gather you-all have been
22 discussing.
23      The proposed hearing date had been, for crossmotions
24 for summary judgment had been February 15. That is one of the
25 days of the Fourth Circuit judges' conference. So--

57

1    MS. WETZLER: Your Honor, that was originally, we
2    had moved it then to February 8 because Mr. Desmarais wasn't
3    even available on the 15th. So, it was the 8th that we had
4    agreed on unless he is in trial on that date.
5    THE COURT: All right. Well, I was going to move it
6    back to the 22nd. I may have the wrong piece of paper in my
7    hand, but I have what I thought was your latest proposed
8    order.
9    Does the 22nd work as well as the 8th?
10    MR. DESMARAIS: Well, I think that, I think you may
11    have the wrong order in front of you. I think one of the
12    issues that we had in our negotiations was that I am actually
13    on trial in February.
14    So, what we had agreed was that it would be
15    February 8 if my case settled. But then if it wasn't, we
16    would jointly propose the first Friday that I am not actually
17    in trial. So, we didn't actually pick a date.
18    So, it is a little cumbersome at this date to pick a
19    date in February because I do actually have other trial
20    commitments.
21    THE COURT: All right. Well, just so I have got a
22    fuller understanding of your situation, Mr. Desmarais, if the
23    case goes to trial, do you have an anticipated, I know you
24    can't predict with any certainty when it is going to be over,
25    but have you got a best guesstimate when you will be done?

1      MR. DESMARAIS: Yes. In fact, in order to be
2  certain, it was my original proposal to the Government that we
3  have the argument the first week in, I think it was the first
4  week in April. And the compromise was February 8. Unless the
5  case settles, then, you know, we will take the first Friday,
6  which would have been April anyway.
7      So, I mean, my real proposal is to be sure that I am
8  not on a trial conflict would be the first Friday in April or
9  any Friday thereafter would be fine from my trial schedule
10 point of view.
11     THE COURT: All right. Ms. Wetzler.
12     MS. WETZLER: And, Your Honor, we strongly object to
13 waiting until April for a hearing. If I may hand up the most
14 recent proposed order if the Court thinks that would be
15 helpful.
16     THE COURT: Let me take a look at it.
17     All right, Ms. Wetzler, if I am melding all this
18 together properly, while you don't want the Court to wait
19 until April, you are comfortable with proposed paragraph 5 in
20 this sketch order, February 8 or the first time thereafter
21 that Mr. Desmarais is available?
22     MS. WETZLER: Yes, Your Honor. It seems that that's
23 the best that we all could do. And certainly we understand
24 and we know that Mr. Desmarais will in good faith tell us if
25 his trial is going to settle and/or whether the second trial

59

1  is going to in fact complete before April, which it sounds
2  from our conversations like there is a chance that it wouldn't
3  be all the way until April.
4      THE COURT: All right. All right.
5      MR. DESMARAIS: There is one modification that I
6  would like to propose to the agreement, only because this
7  morning the AIPLA asked me for their amicus brief.
8      I think we had, Ms. Wetzler and I had agreed that
9  the amicus briefs would be filed at the same time as summary
10 judgment.
11     AIPLA is here, I don't know if they want to be
12 heard, but there was some concern that that might be
13 aggressive for them because they are a large organization.
14     THE COURT: That the timing would be aggressive?
15     MR. DESMARAIS: I don't know. I mean, I don't want
16 to speak for them, but I think that the issue was they weren't
17 sure-- They are an organization of 17,000 companies, and they
18 have a board of directors, and sometimes to get that
19 organization to move that quickly may be tricky, but no other
20 amicus has told me that it is a concern. So, I think it may
21 only apply to AIPLA.
22     THE COURT: Well, don't I just leave it. I am
23 thinking out loud here, why don't I just leave it December 20
24 for amicus with the understanding that any organization
25 wishing to file an amicus brief who has a problem with that

60

1   date, can just file a motion--
2           MR. DESMARAIS: That will be fine, Your Honor.
3           THE COURT: All right. Then I will deal with any
4   such motion on the papers.
5           MR. NEALON: Your Honor, on the amicus issue, in our
6   papers we had indicated that it would probably make more sense
7   to have those amicus briefs filed perhaps a week after the
8   initial summary judgment filing in that the theory of amicus
9   briefs is usually you don't want to have duplication and
10  redundancy. So that there might be some benefit to the amicus
11  being able to see what's--
12          THE COURT: I would be happy to give all amicus
13  until January, you know, for that sort of reason.
14          MR. NEALON: I am just thinking it may make more
15  sense rather than having ten sets of duplicate papers where
16  everyone is making potentially duplicative redundant
17  arguments.
18          THE COURT: Ms. Wetzler.
19          MS. WETZLER: Your Honor, our concern with waiting
20  until January is that we are aware of, I believe at this point
21  at least seven and counting amicus briefs that are going to
22  likely come in against us. And consequently, to require us to
23  have I think what would effectively be two to three weeks to
24  digest all of those if they were to come in in January, is
25  extremely difficult. It is extremely burdensome.

61

1            And so, we would ask, although we certainly didn't
2   hope to be reading them over the Christmas holiday, we
3   probably will be, but at least we should have that opportunity
4   in order to be able to digest all of this material in addition
5   to the two substantial filings we expect to receive from the
6   plaintiffs.
7            We don't believe that it is appropriate to delay the
8   amicus filings.  AIPLA was the first one in the door, they
9   have known about this for, at the preliminary injunction
10  stage, they have known about this for a very long time.  And
11  December 20 should certainly have been ample time for them to
12  be able to write their brief.
13           THE COURT:  All right.  I am going to--
14           MR. DESMARAIS:  I mean, Your Honor, if I might help.
15  I mean, realistically, the argument is likely going to be, you
16  know, the first week in April because, you know, I don't
17  believe that the second trial is going to settle.
18           So, you know, if Your Honor is concerned about the
19  amicus, I mean, if we are really talking practically here, I
20  don't think we are going to have an argument, you know,
21  February 8 or whatever the date is in the order.
22           So, there is more room there as a real matter than--
23  So, having the amicus briefs come in in January would give Ms.
24  Wetzler plenty of time to respond to them if we, you know,
25  just confronted the reality and made the argument for April.

62

1  I don't know that there is a huge difference between February
2  and April at this point.
3       MS. WETZLER:  We had understood that Mr. Desmarais
4  was in good faith going to have it on the February 8 if the
5  trial settled, which I understood the first trial had a
6  reasonable likelihood of settling.  And that's why we looked
7  to February 8.
8       If it goes, we at least want the briefing to be able
9  to allow that if it can be possible.  It is extremely
10 important to the PTO that this be resolved expeditiously.
11      THE COURT:  Well, that's one of several
12 considerations.
13      I will just give you the briefing schedule in my
14 order along with my, my stated findings.
15      I will tell you with respect to page lengths, that I
16 am going to expand the page length for the parties to 40
17 pages.
18      I see no reason as of now to expand the amicus page
19 limit.
20      MS. WETZLER:  Your Honor, if I may ask, with respect
21 to the 40 pages, the Government is facing two complaints and
22 in theory could file two summary judgment briefs.
23      So, we would, in order to economize for the Court,
24 we would like to combine everything into one opening summary
25 judgment brief, but given that that could be two, we would ask

```
                                                                    63
 1   for at least up to 60 pages in order to fully respond to
 2   everything that's in these amended complaints.
 3           THE COURT:  Ms. Wetzler, if you get them and after
 4   reading them find that the situation calls for it, you can
 5   file a motion.
 6           MS. WETZLER:  Yes, Your Honor.
 7           THE COURT:  I would expect 40 to be enough, at least
 8   based on what I know now.
 9           All right, counsel, thank you.  Court is in recess.
10           NOTE:  The hearing concluded 11:49 a.m.
11   ---------------------------------------------------
12
13      C E R T I F I C A T E  of  T R A N S C R I P T I O N
14           I hereby certify that the foregoing is a true and
15   accurate transcript that was typed by me from the recording
16   provided by the court.  Any errors or omissions are due to the
17   inability of the undersigned to hear or understand said
18   recording.
19           Further, that I am neither counsel for, related to,
20   nor employed by any of the parties to the above-styled action,
21   and that I am not financially or otherwise interested in the
22   outcome of the above-styled action.
23
24
25                              _____
                                Norman B. Linnell
                                Court Reporter - USDC/EDVA
```