Tafas v. Dudas et al
Case 1:07-cv-00846-JCC-TRJ   Document 127-10   Filed 12/20/2007   Page 1 of 19
Doc. 127 Att. 9

# Defendants' Exhibit 4c

Dockets.Justia.com

# ACCELERATED EXAMINATION FAQs

## INFORMATION DISCLOSURE STATEMENT (IDS)

Applicant found the following references from a preexamination search or from other sources: (1) several references to be relevant to the general subject matter of the claims; (2) one reference that establishes, by itself or in combination with other information, a *prima facie* case of unpatentability of a claim (*See* 37 CFR §1.56(b)); (3) one reference that discloses the most number of limitations in the independent claim; (4) one reference that discloses a limitation of an independent claim that is not shown in the other references; and (5) one reference that discloses a limitation of a dependent claim that is not shown in the other references.

**IDS 1.** When applicant submits an accelerated examination support document (AESD), is applicant required to: (A) cite all of the references relevant to the claims in an information disclosure statement (IDS) of the AESD; (B) for each reference cited in the IDS of the AESD, identify all of the limitations in the claims that are disclosed by the reference specifying where the limitation is disclosed in the cited reference, and (C) include a detailed explanation of how each of the claims are patentable over the references cited with the particularity under 37 CFR §1.111(b) and (c)?

- Applicant is required to submit an accelerated examination support document (AESD) that includes an IDS in compliance with 37 CFR §1.98 citing each reference deemed most closely related to the subject matter of each of the claims (whether in independent or dependent form).

    (1) Applicant is not required to cite the references that are only relevant to the general subject matter of the claims because there are references that are more closely related to the subject matter of the claims. Applicant is also not required to cite a reference that is cumulative to any other reference cited in the IDS.

    (2) Applicant is required to cite any reference that establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim (*See* 37 CFR §1.56(b)) in the IDS of the AESD.

    (3) Applicant is required to cite the reference that discloses the most limitations in the independent claim.

    (4) Applicant is required to cite any reference that discloses a limitation of an independent claim that is not shown in the other references.

1

## ACCELERATED EXAMINATION FAQs

(5) Applicant is required to cite any reference that discloses a limitation of a dependent claim that is not shown in the other references. For each reference cited in the IDS of the AESD, the AESD must include an identification of all the limitations in the claims that are disclosed by the reference specifying where the limitation is disclosed in the cited reference. The AESD must also include a detailed explanation of how each of the claims are patentable over the references cited with the particularity required by 37 CFR §1.111 (b) and (c).

**IDS 2.** If an information disclosure statement (IDS) is filed after initial filing, is a supplemental accelerated examination support document (AESD) needed to address the newly submitted references?

- Yes, a supplemental AESD is required if a reference being submitted in an IDS is deemed more closely related to the subject matter of at least one claim than the references provided in the previously-filed AESD. Consistent with 37 CFR §10.18, any reference submitted in a separate IDS that is not part of an AESD is a representation by applicant to the USPTO that no reference submitted in the separate IDS is deemed closer to the subject matter of at least one claim than the references provided in the AESD. If applicant deems references found after the initial filing to be closer to the subject matter of at least one claim than the references provided in the AESD, then applicant needs to supplement the AESD to account for these references.

**IDS 3.** Will the Office accept an accelerated examination support document (AESD) that contains a list of references in the information disclosure statement (IDS) of the AESD, but does not include any identification and explanation for those references that are not required to be submitted in the IDS of the AESD (*i.e.*, references that are not most closely related to the subject matter of each of the claims)?

- No, the AESD will be deemed insufficient for lack of identification and explanation. The applicant will be notified of the defects and the application will remain in the status of a new application awaiting action in its regular turn. The applicant will be given a time period of one month,

2

## ACCELERATED EXAMINATION FAQs

without any extension of time under 37 CFR §1.136(a), to perfect the petition.

- If applicant wishes to cite references that are not required in an AESD for the examiner to consider, applicant may submit such references in a separate IDS in compliance with 37 CFR §1.97 and §1.98. Applicant should clearly identify the IDS of the AESD that is in support of the petition to make special and, similarly, applicant should clearly identify the separate IDS that is not in support of the petition. Consistent with 37 CFR §10.18, any reference submitted in a separate IDS that is not part of an AESD will be treated as a representation by applicant to the USPTO that no reference submitted in the separate IDS is deemed closer to the subject matter of at least one claim than the references provided in the AESD.

**IDS 4.** How does the newly proposed IDS package relate to the program?

- The proposed IDS package would require applicant to provide explanation and additional disclosure regarding submitted documents in limited circumstances. The AE procedure requires applicant to explain the relevance of each item deemed most closely related. The proposed IDS package is not in conflict with the AE procedures. Should the proposed IDS package issue as a final rule Applicant will be required to meet all requirements of the rule in all cases including those that are undergoing accelerated examination.

**IDS 5.** Are applicants required to submit the references that are cited on the IDS?

- The IDS must be compliant with 37 CFR §1.98. *See* 37 CFR §1.98(d) as to the requirements of submitting references cited on an IDS.

### ENTRY/CONTINUATION

All petitions to make special, except those based on applicant's health or age, or the Patent Prosecution Highway (PPH) pilot program, filed on or after August 25, 2006 must meet the requirements set forth in subsection I of MPEP §708.02(a). All petitions to make special based on applicant's health or age, must meet the requirements set forth in subsection III or IV (where appropriate) of MPEP §708.02.

## ACCELERATED EXAMINATION FAQs

Petitions to make special filed prior to August 25, 2006 (and requests for reconsideration of dismissals of such petitions) must comply with the guidelines and requirements set forth in subsections I-II, and V-XII of MPEP §708.02.
The application must be a non-reissue utility or design application filed under 35 USC §111(a).

Continuing applications (e.g., a divisional application directed to the non-elected inventions) will not automatically be given special status based on papers filed with the petition in the parent application. Each continuing application must on its own meet all requirements for special status.

**EC 1.** What applications are eligible for the accelerated examination program?
- Any non-reissue utility or design application filed under 35 USC §111(a) on or after August 25, 2006 is eligible for the accelerated examination program.
- The following types of applications are not eligible for the accelerated examination program: plant applications, reissue applications, applications entering the national stage from an international application after compliance with 35 USC §371, reexamination proceedings, and petitions to make special based on applicant's health or age, or under the PPH pilot program.

**EC 2.** Are by-pass continuations eligible for the accelerated examination program?
- Yes. They are applications under 35 USC §1.111(a) and are eligible.

**EC 3.** Why aren't 35 USC §371 application filings eligible?
- The procedure as implemented relies on the electronic filing of the application which is ready for examination on the filing date in order to reliably track the case and in order to achieve the 12-month goal. In general, a 35 USC §371 application cannot be submitted in that condition since the specification must be retrieved from the International Bureau if there is early entry (prior to publication) or if the international application is not in English. Note however, that the same effect can be accomplished by means of filing a bypass continuation.

**EC 4.** Why aren't plant patent applications included in the accelerated examination program?

4

## ACCELERATED EXAMINATION FAQs

- Plant applications use color figures. EFS was not equipped to handle the degree of color that would be required in plant submissions at the time the program was initiated.

**EC 5.** Will the accelerated examination program requirements be retroactively applied to applications with petitions to make special filed prior to August 25, 2006?

- No, the accelerated examination program requirements will not be applied retroactively to applications with petitions to make special filed prior to August 25, 2006.

**EC 6.** In order to file a petition to make special under the accelerated examination program, is it necessary to also make a showing that the application falls under one of the categories available prior to August 25, 2006. (manufacture, infringement, environment quality, energy, inventions relating to recombinant DNA, special status for patent applications relating to superconductivity, inventions relating to HIV/aids and cancer, inventions for countering terrorism, special status for applications relating to biotechnology filed by applicants who are small entities)?

- No. To file a petition to make special under the accelerated examination program, there is no need to make a showing under any of the categories available prior to August 25, 2006.

**EC 7.** What is the fee for filing a petition under the accelerated examination program?

- The fee is set forth in 37 CFR §1.17(h). The fee is not required for petitions accompanied with a statement that the claimed subject matter is directed to environmental quality, energy, or countering terrorism. *See* 37 CFR §1.102(c)(2).

**EC 8.** What effect does the accelerated examination program have on petitions to make special based on applicant's health, age, or under the PPH pilot program?

- None, petitions to make special based on age or health, or under the PPH pilot program are unaffected by the accelerated examination program.

**EC 9.** Are petitions to make special based on applicant's age, health, or the PPH pilot program required to meet the accelerated examination program criteria including the preexamination search and accelerated examination support document?

## ACCELERATED EXAMINATION FAQs

- No, under the petition to make special based on applicant's age, health, or the PPH pilot program, applicants are not required to fulfill any of the accelerated examination program requirements.

**EC 10.** Are petitions to make special based on applicant's age, health, or the PPH pilot program associated with a 12 month goal?

Applications filed under age, health, or PPH are taken up out of turn for the initial examination but there is no 12 month goal associated with these applications. Therefore, the procedure for these applications are **not** subjected to the procedure under the accelerated examination program set forth in the MPEP §708.02(a) (e.g., a shortened statutory period for reply to an Office action of one month).

**EC 11.** If there is one inventor out of four who is over 65 years of age, is the application eligible to be filed under the petition to make special under the accelerated examination program or under petition to make special based on applicant's health or age?

- A petition to make special based on applicant's health or age may be filed in the application prior to the first Office action.
- The application can alternatively be filed with the petition to make special under the accelerated examination program as long as all the requirements of accelerated examination are met.

**EC 12.** If an applicant files a petition to make special based on age or health, and also complies with the accelerated examination program requirements, will the application be reviewed within 12 months?

- Yes, since the accelerated examination program requirements have been complied with.

**EC 13.** Can an application already on file participate in the accelerated examination program?

- The accelerated examination program requires that the petition to make special be filed on the same day as the application. *See* MPEP §708.02(a). An applicant with an application already on file may enter the accelerated examination program by filing a continuation application meeting all the requirements of the accelerated examination program. Applicant should

## ACCELERATED EXAMINATION FAQs

    ensure that the claims in the continuation application and its parent application are not identical to avoid a statutory double patenting rejection unless the parent application is abandoned after the filing of the continuation application.

- Under the accelerated examination program, applicant cannot file any preliminary amendment upon filing of the application. Specifically, the continuation application must include the new set of claims (without any amendment) and the specification must include the benefit claim in the first sentence (without any amendment) or in an application data sheet (37 CFR §1.76). For example, if the parent application included claims 1-30, the old claim set must be replaced with a new claim set and the benefit claim is submitted in an application data sheet (37 CFR §1.76).

**EC 14.** Can applicant discontinue participation in the accelerated examination program once the petition to make special has been granted?

- No, there is no provision for "withdrawal" from special status under the accelerated examination program. An applicant may abandon the application that has been granted special status under the accelerated examination program in favor of a continuing application, and the continuing application will not be given special status under the accelerated examination program unless the continuing application is filed with a grantable petition to make special under the accelerated examination program.

**EC 15.** If an application under the accelerated examination program is finally rejected, what recourse is there for the applicant?

- Applicant has the same recourse as in any application, except that upon appeal any dependent claim stands or falls with the independent claim from which it depends.

**EC 16.** What is the effect of filing a request for continued examination (RCE) on the application under the accelerated examination program?

- A properly filed RCE withdraws the finality of the rejection and continues examination of the same application. Therefore, the application retains the

## ACCELERATED EXAMINATION FAQs

special status and remains in the accelerated examination program. Thus, the examiner will continue to examine the application in accordance with the procedures set forth in subsection III of MPEP §708.02(a) and any subsequent replies filed by applicant must meet the requirements of subsection IV of MPEP §708.02(a). The goal of the accelerated examination program will then be to reach a final disposition of the application within twelve months from the filing of the RCE.

**EC 17.** Can an application claim priority or benefit to: (a) foreign application, (b) provisional application, (c) PCT international application, or (d) 35 USC §371 (national stage) application?

- Yes, if an application is filed under 35 USC §111(a), it is eligible for examination under the accelerated examination program, provided all of the accelerated examination program requirements are met.
- Please note that 35 USC §371 national stage applications themselves are NOT eligible for examination under the accelerated examination program. However, applicant may file a continuation application claiming the benefit of the national stage application and file a petition to make special under the accelerated examination program in the continuation application.

**EC 18.** Who is eligible to participate in the accelerated examination program?

- Anyone who is eligible to file an application under 35 USC §111(a) is eligible to participate in the accelerated examination program provided all the accelerated examination requirements are met.

**EC 19.** If a CIP application is prosecuted under the accelerated examination program, will it facilitate the prosecution of the pending parent application?

- The pending parent application will be examined in-turn based on its filing date. The filing of the petition to make special under the accelerated examination program in the CIP application will not have any effect on the prosecution of the pending parent application.

8

## ACCELERATED EXAMINATION FAQs

**EC 20.** Can all claims in a CIP application filed with the petition to make special under the accelerated examination program be examined under the accelerated examination program, or only the claims having the benefit of priority after August 25, 2006?

- All the claims in such a CIP application will be examined under the accelerated examination program. Each claim will be examined using the appropriate effective filing date. The requirement of a showing of 35 USC §112 1st paragraph support in the accelerated examination support document (AESD) for any application for which benefit is claimed assists the examiner in making this determination.

**EC 21.** If the parent application contained more than twenty claims, how should the continuation application be filed in order to comply with the requirement of three or fewer independent claims and twenty or fewer total claims?

- The claims in the continuation application <u>must replace</u> the original set of claims to comply with the requirement of three or fewer independent claims and twenty or fewer total claims . Specifically, the continuation application must be filed with a clean specification and a new set of claims that contain three or fewer independent claims and twenty or fewer total claims. Note that any preliminary amendment filed with the application will result in the <u>denial</u> of the petition with no opportunity to cure. *See* MPEP §708.02(a)(VIII)(C)(11). Any benefit claims should be included in the first sentence of the clean specification or an application data sheet.

**EC 22.** If after filing an appeal brief in an application under the accelerated examination program, the examiner decides to reopen prosecution, will the application still be prosecuted under the accelerated examination program or will it be prosecuted under the normal procedure?

- In the very rare circumstance where an examiner might re-open prosecution after the filing of an appeal brief, the application would still be examined under the accelerated examination program.

**EC 23.** Can an applicant file a continuation application of an application that is currently being examined under the accelerated examination program?

## ACCELERATED EXAMINATION FAQs

- Yes, continuation practice is not affected by the accelerated examination program.

**EC 24.** Can an application that has been converted from a provisional to a non-provisional application participate in the accelerated examination program?

- No, the converted non-provisional application cannot participate in the accelerated examination program because the petition to make special under the accelerated examination program would not have been filed simultaneously with the filing of the application as required. *See* MPEP §708.02(a).

**EC 25.** If applicant first becomes aware of infringement of a pending patent application after it has been filed, how can applicant obtain accelerated examination?

- Applicant would be required to file a continuation meeting all the requirements of the accelerated examination program.

## PETITION DETAILS

The petition to make special under the accelerated examination program will be decided by the Technology Center (TC) Special Program Examiners (SPREs). If the petition and supporting materials are deemed to be deficient in any manner, the petition will be dismissed and applicant will be provided with a <u>single opportunity</u> to correct the deficiency. Any reasons for the dismissal of the petition will be provided with a specific explanation of the deficiency and, wherever possible, the specific corrective action that should be taken by the applicant.

The TC SPREs will also review the renewed petition. If the renewed petition is found to be insufficient, the <u>petition will be denied</u> and the decision will include an explanation of the deficiency. Such a denial does not constitute a final agency decision. (*See* MPEP 1002.02.) The application will remain in the status of a new application awaiting action in its regular turn.

**PD 1.** When can applicant expect a decision on the petition under this program?

- Generally, a decision on the petition will be issued approximately 2 months from the filing date. Applicant is encouraged to call the Office to check on the status if applicant has not received a communication regarding the application within 3 months from filing.

**PD 2.** Is there a difference between petitions that are dismissed and ones that are denied?

10

## ACCELERATED EXAMINATION FAQs

- o Yes. Petitions that are denied are not given an opportunity to be perfected. Petitions that are dismissed are given a single opportunity to be perfected.

**PD 3.** What would cause a petition to be dismissed?
- o A petition to make special may be dismissed if deficiencies are found in the substance of the petition, for example, in the content or recordation of the preexamination search and/or the accelerated examination support document and for failure to make representations required by MPEP §708.02(a).
- o Applicant will be notified of the decision to dismiss the petition and the defects if the application and/or petition does not meet all the prerequisites set forth in MPEP §708.02(a) for the application to be granted special status (including a determination that the search is deemed to be insufficient).

**PD 4.** What is the effect of a dismissal?
- o The application will remain in the status of a new application awaiting action in its regular turn.
- o Applicant will be given a single opportunity to perfect the petition or accelerated examination support document within a time period of one month (no extensions under 37 CFR §1.136(a)).

**PD 5.** Does the dismissal of the petition affect the 12 month goal?
- o If the document is satisfactorily corrected in a timely manner, the petition will then be granted, but the final disposition of the application may occur later than twelve months from the filing date of the application. However, since there is only a single opportunity to perfect, it is expected that the 12 month goal will be met.

**PD 6.** If I filed a petition to make special before August 25th, 2006 under the old procedures and the petition was dismissed affording an opportunity to rectify within a stated period, which procedures apply to the corrected submission?
- o The old procedures will apply and if the renewed petition is granted the application will be treated as special but not have the benefit of or be

11

subject to the requirements of the accelerated examination program procedures.

**PD 7.** What would cause a petition to be denied?
- The petition to make special will be denied if the application is filed with a preliminary amendment, filed with more than three independent claims, filed with more than twenty total claims, or filed on paper (rather than electronically via EFS-Web).
- The petition to make special will be denied if the application omits an item or includes a paper that causes the Office of Initial Patent Examination (OIPE) to mail a notice during the formality review (*e.g.*, a notice of incomplete application, notice to file missing parts, notice to file corrected application papers, notice of omitted items, or notice of informal application).
- Any other item that results in an application not being in condition for examination on filing, such as an improper benefit claim, will be cause for denial as explained in MPEP §708.02(a)(VIII)(C).

**PD 8.** What is the effect of a preliminary amendment on the petition?
- The petition will be <u>denied</u> because the application at the time of filing would not have been complete under 37 CFR §1.51 and in condition for examination.

**PD 9.** What happens to the application if the petition to make special is denied?
- The application will not be granted special status under the accelerated examination program and will remain as a new application awaiting action in its regular turn.

**PD 10.** What happens to all of the detailed documents that are required with the petition to make special if the petition is dismissed or denied?
- Such documents will be placed in the application file. The IDS of the accelerated examination support document (AESD) will be considered by the examiner when the application is taken up for examination.

**PD 11.** Can a petition under 37 CFR §1.47 be included in lieu of an inventor's signed oath or declaration?

## ACCELERATED EXAMINATION FAQs

- A petition under 37 CFR §1.47 for a non-signing inventor is not permitted with the petition to make special under accelerated examination program. An application with an undecided petition under 37 CFR §1.47 would not be in condition for examination at filing as required.

## EXAMINATION TIMELINE

**ET 1.** In what time frame can I expect the examination of my application to be completed?
- The objective of the accelerated examination program is to complete the examination of an application within twelve months from the filing date of the application, resulting in a final disposition.
- In any event, this twelve-month timeframe is simply a goal. Any failure to meet the twelve-month goal or other issues relating to this twelve-month goal are neither petitionable nor appealable matters.
- The final disposition of an application, however, may occur later than the twelve-month timeframe in certain situations. *See* MPEP §708.02(a) for information on events that may cause examination to extend beyond this twelve-month time frame.

**ET 2.** What is final disposition?
- A final disposition in an application occurs with any one of: (1) the mailing of a notice of allowance; (2) the mailing of a final Office action; (3) the filing of an RCE; or (4) the abandonment of the application.

**ET 3.** If final rejection is a disposition of the application, why is RCE listed as a disposition as well?
- To account for RCE after Ex Parte Quayle. That is, since an Ex Parte Quayle is not a final disposition for the accelerated examination program, the RCE will be the final disposition.

**ET 4.** When can I expect to receive a decision on the petition to make special?
- You should expect a decision within 2 months from filing the petition to make special. If you do not receive the decision within 3 months, call the Technology Center to which the application has been assigned.

# ACCELERATED EXAMINATION FAQs

## THREE/TWENTY RULE

**TR 1.** What happens if the applicant files an amendment that adds more than twenty total claims or more than three independent claims?

- Such an amendment will be treated as non-responsive, and will not be entered. The Office will mail a notice requiring the applicant, within one month, to file an amendment that would result in the application not exceeding the 3/20 claim limit. This time period is not extendible under 37 CFR §1.136(a).

## WITHDRAWAL FROM ACCELERATED EXAMINATION

**WD 1.** Is it possible to withdraw an application from the accelerated examination program without abandoning it?

- There is no provision for "withdrawal" from special status under the accelerated examination program. Once an application is granted special status under the accelerated examination program, it retains that status and continues in the program through its pendency even after filing requests for continued examination of the application.

## ACCELERATED EXAMINATION SUPPORT DOCUMENT (AESD)

**SD 1.** How specific does one have to be when pointing out elemental limitations in the prior art?

- For each reference cited, the accelerated examination support document must include an identification of all the limitations in the claims that are disclosed by the reference specifying where the limitation is disclosed in the cited reference. Please consult the sample accelerated examination support document provided on the USPTO website at: http://www.uspto.gov/web/patents/accelerated/.

## PREEXAMINATION SEARCH

**PS 1.** What does the preexamination search entail?

## ACCELERATED EXAMINATION FAQs

- This preexamination search must involve U.S. patents and patent application publications, foreign patent documents, and non-patent literature, unless the applicant can justify with reasonable certainty that no references more pertinent than those already identified are likely to be found in the eliminated source and includes such a justification with this statement. This preexamination search must be directed to the claimed invention and encompass all of the features of the claims, giving the claims the broadest reasonable interpretation.
- For more information, the document "Guidelines for Applicants under the New accelerated examination Program" (found at **http://www.uspto.gov/web/patents/accelerated/**) describes what standards will be applied in evaluating the petition. The sample search and support document is indicative of how to present the information so that it is clear what search was performed. The search is evaluated on a case-by-case basis and if found wanting applicant will be informed specifically what defects are alleged.

**PS 2.** What should be the extent of the preexamination search?

- A request for accelerated examination that follows the guidance provided by the **search templates** will be evaluated on its own to determine whether it meets the pre-examination search criteria. That is, there is no <u>per se</u> rule that a search that follows a search template will satisfy the pre-examination search for accelerated examination. Note for example, that the templates do not specify search terms or logic. Furthermore, there are instances where Applicant's expertise will result in a more restricted, yet more effective, search that would uncover art that would not be realized by following the template. The search templates provide guidance on what non-patent literature resources should be considered in the search process.

**PS 3.** Will the USPTO conduct its own search, in addition to applicant's preexamination search, or will the USPTO rely only on applicant's preexamination search?

## ACCELERATED EXAMINATION FAQs

- The examiner will independently conduct a full, thorough, and comprehensive search. In addition, the examiner will consider the references cited by the applicant in the accelerated examination support document.

**PS 4.** Would a foreign search report meet the requirements of the foreign search under the accelerated examination program?

- A search report from a foreign patent office will not satisfy this preexamination search requirement unless the search report satisfies the requirements set forth in the MPEP §708.02(a) for a preexamination search.

## INTERVIEW

**IN 1.** Why is applicant required to commit to an interview, if requested by the examiner?

- The purpose of the interview (including an interview before a first Office action) is to discuss the prior art and any potential rejections or objections with the intention of clarifying and possibly resolving all issues with respect to patentability at that time. The petition must include a statement that applicant will agree to have such an interview when requested by the examiner.

## SHORTENED STATUTORY PERIOD (SSP) FOR REPLY

**SSP 1.** How much time do I have to respond to an Office action?

- If an Office action other than a notice of allowance or a final Office action is mailed, the Office action will set a shortened statutory period of one-month or thirty-days, whichever is longer. No extensions of this shortened statutory period under 37 CFR §1.136(a) will be permitted. Failure to timely file a reply will result in abandonment of the application.

**SSP 2.** What happens if an applicant fails to respond within the one month shortened statutory period?

- Failure to timely file a reply will result in abandonment of the application.

# ACCELERATED EXAMINATION FAQs

## REPLY BY APPLICANT

**RP 1.** If an application under the accelerated examination program is abandoned, what recourse is there to revive the application?

- Applicant may file a petition under 37 CFR §1.137(a) or (b).

## BACKLOG

**BL 1.** How will the revised accelerated examination program affect the backlog?

- The Office has been providing a practice in which applicant may file a petition to make special program. The revised accelerated examination program only changed the requirements of the program, and therefore, the Office does not anticipate any effect on the backlog of unexamined applications.

**BL 2.** Will applications under the accelerated examination program be examined by designated examiners or will they be randomly docketed to examiners in the appropriate art units?

- Applications under the accelerated examination program will be docketed to examiners in the appropriate art units in the same manner as all other applications.

## PUBLICATION

**PB 1.** When are applications under the accelerated examination program published?

- Applications under the accelerated examination program are published in accordance with the eighteen-month publication provisions of 35 U.S.C. 122(b) and §1.211 et seq. (e.g., promptly after the expiration of a period of eighteen months from the earliest filing date for which a benefit is sought under title 35, United States Code) in the same manner as all other applications.

## EFS

**EFS 1.** Are there any restrictions on the method of filing an application under the accelerated examination program?

17

## ACCELERATED EXAMINATION FAQs

        ebc@uspto.gov to verify that the systems are unavailable and that the problem does not lie elsewhere.

**EFS 5.** I tried to submit my application by EFS but was unable to pay the fees because RAM was down. What recourse do I have, since the program requires the application to be complete on filing including the requisite fees?

- If RAM was unavailable at the time of filing (during ordinary business hours) applicant should fax in the fee payment on the same day as the filing of the application accompanied by a statement that RAM was unavailable. The statement must be specific as to the time period of the alleged outage. Furthermore, applicant should include a statement (filed by EFS) to this effect in the application to ensure that the application is not inadvertently held not to be in condition for examination. Applicant is advised to contact the USPTO's Patent Electronic Business Center, 1-866-217-9197 (toll-free for U.S.) or 571-272-4100 (local & international callers) from 6 a.m. to 12 midnight Eastern Time, Monday – Friday or by e-mail to ebc@uspto.gov to verify that the systems are unavailable and that the problem does not lie elsewhere.