# EXHIBIT 1
# PART 1



Tuesday,
August 21, 2007

Part II

# Department of Commerce

Patent and Trademark Office

37 CFR Part 1
Changes To Practice for Continued Examination Filings, Patent Applications Containing Patentably Indistinct Claims, and Examination of Claims in Patent Applications; Final Rule

A09390

46716　Federal Register / Vol. 72, No. 161 / Tuesday, August 21, 2007 / Rules and Regulations

**DEPARTMENT OF COMMERCE**

**Patent and Trademark Office**

**37 CFR Part 1**

[Docket Nos.: PTO–P–2005–0022; PTO–P–2005–0023]

RINs 0651–AB93; 0651–AB94

**Changes To Practice for Continued Examination Filings, Patent Applications Containing Patentably Indistinct Claims, and Examination of Claims in Patent Applications**

**AGENCY:** United States Patent and Trademark Office, Commerce.
**ACTION:** Final rule.

**SUMMARY:** The United States Patent and Trademark Office (Office) is revising the rules of practice in patent cases relating to continuing applications and requests for continued examination practices, and for the examination of claims in patent applications. The Office is revising the rules of practice to require that any third or subsequent continuing application that is a continuation application or a continuation-in-part application, and any second or subsequent request for continued examination in an application family, be filed to obtain consideration of an amendment, argument, or evidence, and be supported by a showing as to why the amendment, argument, or evidence sought to be entered could not have been previously submitted. The Office is also revising the rules of practice to provide that an applicant must provide an examination support document that covers all of the claims in an application if the application contains more than five independent claims or more than twenty-five total claims. The Office is also revising the rules of practice with respect to multiple applications that have the same claimed filing or priority date, substantial overlapping disclosure, a common inventor, and common ownership. These changes will allow the Office to conduct a better and more thorough and reliable examination of patent applications.

**DATES:** *Effective Date:* November 1, 2007. For applicability and compliance dates see **SUPPLEMENTARY INFORMATION**.

**FOR FURTHER INFORMATION CONTACT:** The Office of Patent Legal Administration, by telephone at (571) 272–7704, by mail addressed to: Mail Stop Comments—Patents, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313–1450, or by facsimile to (571) 273–0100, marked to the attention of the Office of Patent Legal Administration.

**SUPPLEMENTARY INFORMATION:** The Office is revising the rules of practice in patent cases relating to continued examination filings (continuing applications and requests for continued examination), multiple applications containing patentably indistinct claims, and the examination of claims in applications.

The Office is revising the rules of practice for continuation applications, continuation-in-part applications and requests for continued examination. Under these revisions, an applicant may file two continuation applications (or continuation-in-part applications), plus a request for continued examination in the application family, without any justification. An application family includes the initial application and its continuation or continuation-in-part applications. Applicant may file any additional continuation application, continuation-in-part application, or request for continued examination with a justification. Specifically, the Office is revising the rules of practice to require a justification for any third or subsequent continuing application that is a continuation application or a continuation-in-part application, and any second or subsequent request for continued examination in an application family. The third or subsequent continuing application or request for continued examination must be filed with a petition showing why the amendment, argument, or evidence sought to be entered could not have been previously submitted.

The Office is also revising the rules of practice for divisional applications. Under these revisions, an applicant is permitted to file a divisional application of an application for the claims to a non-elected invention that has not been examined if the application was subject to a requirement for restriction. The divisional application need not be filed during the pendency of the application subject to a requirement for restriction, as long as the copendency requirement of 35 U.S.C. 120 is met. Thus, applicant may file the divisional application during the pendency of the application that was subject to a requirement for restriction or the pendency of any continuing application of such an application. Applicant may also file two continuation applications of the divisional application plus a request for continued examination in the divisional application family, without any justification. A divisional application family includes the divisional application and its continuation applications. In addition, applicant may file any additional continuation application or request for continued examination in the divisional application family with a petition and adequate justification.

The Office is also revising the rules of practice for the examination of claims in an application to provide that if the number of independent claims is greater than five or the number of total claims is greater than twenty-five, the Office will require the applicant to help focus examination by providing additional information to the Office in an examination support document covering all of the claims (whether in independent or dependent form) in the application.

The Office is also revising the rules of practice with respect to multiple applications that have patentably indistinct claims and a common assignee by either requiring that all patentably indistinct claims in such applications be submitted in a single application or effectively treating the multiple applications as a single application.

These changes will mean more effective and efficient examination for the typical applicant without any additional work on the part of most applicants. However, in the applications that place an extensive burden on the Office, the applicant will be required to help focus examination by providing additional information to the Office.

*Applicability Dates:* The changes to 37 CFR 1.75, 1.142(c), and 1.265 are applicable to any nonprovisional application filed under 35 U.S.C. 111(a) on or after November 1, 2007, and to any nonprovisional application entering the national stage after compliance with 35 U.S.C. 371 on or after November 1, 2007. The changes to 37 CFR 1.75, 1.142(c), and 1.265 are also applicable to any nonprovisional application filed before November 1, 2007, in which a first Office action on the merits was not mailed before November 1, 2007.

The changes to 37 CFR 1.117 are applicable to any nonprovisional application filed before, on, or after November 1, 2007, with respect to any fee under 37 CFR 1.16(h), (i), or (j) or 1.492(d), (e), or (f) paid on or after December 8, 2004.

The changes to 37 CFR 1.78(a), 1.78(d)(1), 1.495 and 1.704(c)(11) are applicable only to any application, including any continuing application, filed under 35 U.S.C. 111(a) on or after November 1, 2007, or any application entering the national stage after compliance with 35 U.S.C. 371 on or after November 1, 2007. Except as otherwise indicated in this final rule, any application filed under 35 U.S.C. 111(a) on or after November 1, 2007, or any application entering the national stage after compliance with 35 U.S.C.

371 on or after November 1, 2007, seeking to claim the benefit under 35 U.S.C. 120, 121, or 365(c) and 37 CFR 1.78 of a prior-filed nonprovisional application or international application must either: (1) Meet the requirements specified in one of 37 CFR 1.78(d)(1)(i) through (d)(1)(v); or (2) include a grantable petition under 37 CFR 1.78(d)(1)(vi).

With respect to applications that claim the benefit under 35 U.S.C. 120, 121, or 365(c) only of nonprovisional applications or international applications filed before August 21, 2007: an application is not required to meet the requirements set forth in 37 CFR 1.78(d)(1) if: (1) The application claims the benefit under 35 U.S.C. 120, 121, or 365(c) only of nonprovisional applications filed before August 21, 2007 or applications entering the national stage after compliance with 35 U.S.C. 371 before August 21, 2007; and (2) there is no other application filed on or after August 21, 2007 that also claims the benefit under 35 U.S.C. 120, 121, or 365(c) of such prior-filed nonprovisional applications or international applications.

The changes to 37 CFR 1.114 are applicable to any application in which a request for continued examination is filed on or after November 1, 2007. Specifically, a petition under 37 CFR 1.114(g) must accompany any request for continued examination filed on or after November 1, 2007, in an application in which a request for continued examination has previously been filed, or in a continuation application or continuation-in-part application of an application in which a request for continued examination has previously been filed, or in an application whose benefit is claimed in a continuation application or continuation-in-part application in which a request for continued examination has previously been filed.

The changes to 37 CFR 1.17, 1.26, 1.52, 1.53, 1.76, 1.78 (except 1.78(a) and 1.78(d)(1)), 1.104, 1.105, 1.110, 1.136, 1.142(a), and 1.145 are applicable to any nonprovisional application pending on or after November 1, 2007.

*Compliance Date:* For applications filed before November 1, 2007, applicants must comply with the requirements in 37 CFR 1.78(f)(1) within the time periods specified in 37 CFR 1.78(f)(1)(ii), or by February 1, 2008, whichever is later, and applicants must comply with the requirements in 37 CFR 1.78(f)(2) within the time periods specified in 37 CFR 1.78(f)(2)(iii), or by February 1, 2008, whichever is later.

Table of Contents

I. Background
  A. Changes to Practice for Continued Examination Filings
  B. Changes to Practice for Examination of Claims in Patent Applications
  C. Changes to Practice for Patent Applications Containing Patentably Indistinct Claims
  D. Retention of First Action Final Practice and Changes in Second Action Final Practice
II. Discussion of Specific Rules
  This final rule amends the following sections in title 37 of the Code of Federal Regulations (CFR): §§ 1.17, 1.26, 1.52, 1.53, 1.75, 1.76, 1.78, 1.104, 1.105, 1.110, 1.114, 1.136, 1.142, 1.145, 1.495, and 1.704. This final rule adds §§ 1.117, and 1.265 to title 37 of the CFR.
III. Response to Comments
  A. Changes to Continuing Application Practice
  B. Treatment of Third and Subsequent Continuation or Continuation-In-Part Applications
  C. Treatment of Second and Subsequent Requests for Continued Examination
  D. Petitions Related to Additional Continuation Applications, Continuation-In-Part Applications, and Requests for Continued Examination
  E. Treatment of Multiple Applications
  F. Changes to Practice for Examination of Claims
  G. Number of Independent and Total Claims Permitted Without an Examination Support Document
  H. Examination Support Document Requirements
  I. The Office's Authority to Promulgate the Changes in this Final Rule
  J. Changes to Internal Practice
  K. Suggestions Relating to Legislative Changes
  L. Effective Date of the Changes in this Final Rule
  M. Miscellaneous
IV. Rule Making Considerations
  A. Administrative Procedure Act
  B. Regulatory Flexibility Act
  C. Executive Order 13132 (Federalism)
  D. Executive Order 12866 (Regulatory Planning and Review)
  E. Executive Order 13175 (Tribal Consultation)
  F. Executive Order 13211 (Energy Effects)
  G. Executive Order 12988 (Civil Justice Reform)
  H. Executive Order 13045 (Protection of Children)
  I. Executive Order 12630 (Taking of Private Property)
  J. Congressional Review Act
  K. Unfunded Mandates Reform Act of 1995
  L. National Environmental Policy Act
  M. National Technology Transfer and Advancement Act
  N. Paperwork Reduction Act

I. Background

In view of the need for a better focused and effective examination process to reduce the large and growing backlog of unexamined applications while maintaining or improving the quality of issued patents, the Office published two notices in January of 2006 proposing changes to the practice for continuing applications, requests for continued examination, multiple applications containing patentably indistinct claims, and the examination of claims in applications. *See Changes to Practice for Continuing Applications, Requests for Continued Examination Practice, and Applications Containing Patentably Indistinct Claims,* 71 FR 48 (Jan. 3, 2006), 1302 *Off. Gaz. Pat. Office* 1318 (Jan. 24, 2006) (proposed rule) (hereinafter "Continuing Applications Proposed Rule") and *Changes to Practice for the Examination of Claims in Patent Applications,* 71 FR 61 (Jan. 3, 2006), 1302 *Off. Gaz. Pat. Office* 1329 (Jan. 24, 2006) (proposed rule) (hereinafter "Claims Proposed Rule").

Both the Continuing Applications Proposed Rule and the Claims Proposed Rule requested public comments and provided a comment period of four months to give the public an opportunity to submit written comments. The Office provided this extended comment period to ensure that the public would have sufficient time to submit written comments on the proposed changes to the rules of practice and to ensure that the Office would receive comments from all interested persons and organizations. In addition to the notices and requests for written comments, the Office conducted public meetings including town hall meetings and presentations at various locations in the United States to discuss the proposed changes and obtain feedback from the public. The Office received over five hundred written comments from government agencies, universities, intellectual property organizations, industry, law firms, individual patent practitioners, and the general public. The Office has spent nearly one year carefully analyzing and considering all of the written comments that were received. The comments and the Office's responses to the comments are provided in Section III, Response to Comments. In response to the comments, the Office has made appropriate modifications to the proposed changes to balance the interests of the public, patent owners, applicants, practitioners, and other interested parties with the need to reduce the large and growing backlog of unexamined patent applications, improve the quality of issued patents, and make the patent examination process more effective.

Under the proposed changes, applicants would have been permitted to file one of the following without any

A09392

**46718**    Federal Register / Vol. 72, No. 161 / Tuesday, August 21, 2007 / Rules and Regulations

justification: A continuation application, a continuation-in-part application, or a request for continued examination. By contrast, this final rule permits applicants to file two continuation applications or continuation-in-part applications, plus a single request for continued examination in an application family, without any justification. Applicant may file any additional continuing application or request for continued examination with a justification. Under the proposed changes, about eleven percent of the applications and requests for continued examination filed in fiscal year 2006 would have required a justification, where under the changes being adopted in this final rule less than three percent of the applications and requests for continued examination filed in fiscal year 2006 would have required a justification.

The proposed changes would have permitted applicants to file a divisional application of an application for the claims to a non-elected invention if the application is subject to a requirement for restriction and the divisional application is filed during the pendency of that application. However, this final rule permits applicant to file a divisional application of an application if the application is subject to a requirement for restriction and the divisional application meets the copendency requirement of 35 U.S.C. 120. Thus, this final rule allows applicants to file divisional applications in series whereas the proposed rule would have required applicants to file divisional applications in parallel. This final rule also permits applicant to file two continuation applications of a divisional application, plus a request for continued examination in the divisional application family, without any justification. Under the proposed changes, about thirteen percent of divisional applications filed in fiscal year 2006 would need to have been filed earlier, where the changes being adopted in this final rule would not have required any of the divisional applications filed in fiscal year 2006 to have been filed earlier.

The proposed changes would have required applicant to provide an examination support document before the first Office action on the merits if applicant designated more than ten representative claims including all of the independent claims in the application for initial examination. The Office received a substantial number of comments from the public opposing this "representative claims" examination approach and suggesting that the Office should simply adopt a threshold to invoking the examination support document requirement based upon whether an application contains more than a given number of independent and total claims. The Office took those comments into consideration and adopted a similar approach. This final rule requires an applicant to submit an examination support document before the issuance of a first Office action on the merits of an application to assist in the patentability determination when the applicant presents more than five independent claims or more than twenty-five total claims in an application. This final rule also encourages applicant to submit all of the claims that are patentably indistinct in one single application and requires applicant to identify multiple applications that contain patentably indistinct claims (same as the proposed rule). Therefore, for each invention, an applicant is permitted to present up to fifteen independent claims and seventy-five total claims via an initial application and two continuation or continuation-in-part applications without providing either an examination support document or justification, as long as those applications are either prosecuted serially or contain patentably distinct claims. An examination support document must include a preexamination search statement, a listing of references deemed most closely related to the subject matter of each of the claims, an identification of all of the claim limitations that are disclosed in the references, a detailed explanation particularly pointing out how each of the independent claims is patentable over the cited references, and a showing of where each claim limitation finds support under 35 U.S.C. 112, ¶ 1, in the application and any prior-filed application. The examination support document will assist the Office in the examination process and the determination of patentability of the invention by providing the most relevant prior art and other useful information.

Under the proposed changes, about one percent of the applications filed in fiscal year 2006 would have required either the cancellation of one or more independent claims or an examination support document. Furthermore, about eighty percent of the applications filed in fiscal year 2006 would have required either a designation of dependent claims for initial examination or an examination support document. Under the changes being adopted in this final rule, less than eight percent of the applications filed in fiscal year 2006 would have required either the cancellation of one or more independent claims or an examination support document. In addition, less than twenty-five percent of the applications filed in fiscal year 2006 would have required either the cancellation of one or more dependent claims or an examination support document. However, by prosecuting an initial application and two continuation applications serially, about ninety-five percent of the applications filed in fiscal year 2006 would not have required either the cancellation of any claims or an examination support document.

*A. Changes to Practice for Continued Examination Filings*

The volume of continued examination filings (including both continuing applications and requests for continued examination) and duplicative applications that contain "conflicting" or patentably indistinct claims, is having a crippling effect on the Office's ability to examine "new" (*i.e.*, non-continuing) applications. Continued examination filings, other than divisional applications, as a percentage of overall filings, has increased from about 11.4 percent in fiscal year 1980, to about 18.9 percent in fiscal year 1990, to 21.9 percent in fiscal year 2000, to 29.4 percent in fiscal year 2006. The cumulative effect of these continued examination filings is too often to divert patent examining resources from the examination of new applications disclosing new technology and innovations, to the examination of applications that are a repetition of prior applications that have already been examined and have either issued as patents or become abandoned. In addition, when the continued examination process fails to reach a final resolution, and when multiple applications containing claims to patentably indistinct inventions are filed, the public is left with an uncertainty as to what the set of patents resulting from the initial application will cover. Thus, these practices impose a burden on innovation both by retarding the Office's ability to examine new applications and by undermining the function of claims to notify the public as to what technology is or is not available for use.

Commentators have noted that an applicant's use of the unrestricted continuing application and request for continued examination practices may preclude the Office from ever finally rejecting an application or even from ever finally allowing an application. *See* Mark A. Lemley and Kimberly A. Moore, *Ending Abuse of Patent*

*Continuations,* 84 B.U. L. Rev. 63, 64 (2004). The burden imposed by the repetitive filing of applications (as continuing applications) on the Office (as well as on the public) is not a recent predicament. *See To Promote the Progress of Useful Arts, Report of the President's Commission on the Patent System,* at 17–18 (1966) (recommending changes to prevent the repetitive filing of dependent (*i.e.,* continuing) applications). Unrestricted continued examination filings and multiple applications containing patentably indistinct claims, however, are now having such an impact on the Office's ability to examine new applications that it is appropriate for the Office to clarify the applicant's duty to advance applications to final action by placing some conditions on the filing of multiple continuing applications, requests for continued examination, and other multiple applications to the same invention. *See* 35 U.S.C. 2(b) (authorizes the Office to establish regulations, not inconsistent with law, which shall govern the conduct of proceedings in the Office, and shall facilitate and expedite the processing of patent applications). The changes in this final rule will permit the Office to apply the patent examining resources otherwise consumed by these applications to the examination of new applications and thereby reduce the backlog of unexamined applications.

The Office also notes that not every application as filed particularly points out and distinctly claims what the applicant regards as his or her invention. For example, this may occur where the applicant's attorney or agent has not adequately reviewed or revised the application documents received from the applicant. Applicants frequently file literal translations of foreign documents as applications, resulting in problems with compliance with U.S. patent law, such as the written description requirement, as well as problems with formatting and presentation of the claims. In these situations, examination of what applicants actually regard as their invention may not begin until after one or more continued examination filings. Applicants should not rely on an unlimited number of continued examination filings to correct deficiencies in the claims and disclosure that applicant or applicant's representative could have corrected earlier. In addition, while only a small minority of applications are a third or subsequent continuing application, it appears that some applicants and practitioners have used multiple continued examination filings as a strategy to delay the conclusion of examination. The Office, however, considers such a strategy to be a misuse of continued examination practice. Specifically, the Office considers such a strategy to be inconsistent with an applicant's and practitioner's duty under 37 CFR 10.18(b)(2)(i) not to submit an application or other filing to cause unnecessary delay or needless increase in the cost of prosecution before the Office. This misuse of continued examination practice also prejudices the public by keeping applications in pending status while awaiting developments in similar or parallel technology and then later amending their applications to cover these developments. The courts have permitted the addition of claims, when supported under 35 U.S.C. 112, ¶ 1, to encompass products or processes later discovered in the marketplace. *See PIN/NIP, Inc.* v. *Platt Chemical Co.,* 304 F.3d 1235, 1247, 64 U.S.P.Q.2d 1344, 1352 (Fed. Cir. 2002). However, the practice of maintaining continuing applications to delay the conclusion of examination for the purpose of adding claims after such discoveries is inconsistent with the duty under 37 CFR 10.18(b)(2)(i) not to submit filings to cause unnecessary delay or needless increase in the cost of prosecution before the Office.

The Office, in light of its backlog and anticipated continued increase in application filings, is making every effort to become more efficient. Achieving greater efficiency requires the cooperation of those who provide the input into the examination process, the applicants and their representatives.

In the Continuing Applications Proposed Rule, the Office proposed to change the rules of practice to require that: (1) Any second or subsequent continued examination filing (continuation or continuation-in-part application or request for continued examination) include a showing that the amendment, argument, or evidence could not have been submitted prior to the close of prosecution after a single continuation or continuation-in-part application or request for continued examination; and (2) multiple applications that have the same claimed filing or priority date, substantial overlapping disclosure, a common inventor, and a common assignee include either an explanation of how the claims are patentably distinct, or a terminal disclaimer and explanation of why patentably indistinct claims have been filed in multiple applications.

In response to the comments on the proposed changes to the practices for continued examination filings, the Office has modified these provisions relative to proposed changes. Under this final rules, an applicant may instead file two continuation applications (or two continuation-in-part applications, or one continuation application and one continuation-in-part application), plus a request for continued examination in any one of the initial application or two continuation or continuation-in-part applications, without any justification. Any additional continuation application, continuation-in-part application, or request for continued examination, however, must be filed to obtain consideration of an amendment, argument, or evidence, and be supported by a showing as to why the amendment, argument, or evidence sought to be entered could not have been previously submitted. This final rule would also ease the burden of examining multiple applications that have the same claimed filing or priority date, substantial overlapping disclosure, a common inventor, and common assignee by requiring that all patentably indistinct claims in such applications be submitted in a single application absent good and sufficient reason.

As discussed previously, the unrestricted continued examination practice and the filing of multiple applications containing patentably indistinct claims are impairing the Office's ability to examine new applications without real certainty that these practices effectively advance prosecution, improve patent quality, or serve the typical applicant or the public. These changes to the rules in title 37 of the CFR are intended to ensure that continued examination filings are used efficiently to move applications forward. The Office expects that the changes to the rules of practice in this final rule will: (1) Lead to more focused and efficient examination, improve the quality of issued patents, result in patents that issue faster, and give the public earlier notice of what the patent claims cover; and (2) address the growing practice of filing (by a common applicant or assignee) multiple applications containing patentably indistinct claims.

35 U.S.C. 111(a) and 120, respectively, permit an applicant to file a nonprovisional application and to claim the benefit of a prior-filed nonprovisional application. Similarly, 35 U.S.C. 363 and 365(c), respectively, permit an applicant to file an international application under Patent Cooperation Treaty (PCT) Article 11 and 35 U.S.C. 363 and, if the international application designates the United States of America, to claim the benefit of a prior-filed international application

**46720** Federal Register / Vol. 72, No. 161 / Tuesday, August 21, 2007 / Rules and Regulations

designating the United States of America or a prior-filed nonprovisional application. Similarly again, 35 U.S.C. 111(a) and 365(c) permit an applicant to file a nonprovisional application (filed under 35 U.S.C. 111(a)) and to claim the benefit of a prior-filed international application designating the United States of America (under 35 U.S.C. 365(c)).

35 U.S.C. 120 is generally considered the statutory basis for continuing application practice. See *Symbol Techs., Inc.* v. *Lemelson Med.*, 277 F.3d 1361, 1365, 161 U.S.P.Q.2d 1515, 1518 (Fed. Cir. 2002) (35 U.S.C. 120 and 121 form the backbone of modern continuation and divisional application practice) (*Symbol I*). Nothing in 35 U.S.C. 120 or its legislative history suggests that the Office must or even should permit an applicant to file an unlimited number of continuing applications without any justification.

The practice of filing "continuation applications" arose early in Office practice mainly as a procedural device to effectively permit the applicant to amend an application after a rejection and receive an examination of the "amended" (or new) application. See *In re Bogese*, 22 U.S.P.Q.2d 1821, 1824 (Comm'r Pats. 1991) (*Bogese I*). The concept of a continuation application per se was first recognized in *Godfrey v. Eames*, 68 U.S. (1 Wall.) 317, 325–26 (1864). See *Bogese I*, 22 U.S.P.Q.2d at 1824. 35 U.S.C. 120 is a codification of the continuation application practice recognized in *Godfrey v. Eames*. See *id.* (citing *In re Hogan*, 559 F.2d 595, 603, 194 U.S.P.Q. 527, 535 (C.C.P.A. 1977)).

An applicant should understand, however, that he or she does not have an unfettered right to file multiple continuing applications without making a good faith attempt to claim the applicant's invention. 35 U.S.C. 2(b) gives the Director the inherent authority to promulgate regulations to ensure that applicants prosecute applications in good faith. Moreover, by assuming that an unlimited number of continuations are available, applicants have slipped into unfocused practices in prosecution that impede the Office's ability to conduct effective examination. Such practices likewise cause delays in prosecution and increase the cost of examination, both of which are contrary to an applicant's duties under the rules of conduct before the Office set forth in 37 CFR Part 10.

The changes in this final rule do not set a *per se* limit on the number of continuing applications. Nor are the changes intended to address extreme cases of prosecution laches or to codify *In re Bogese*, 303 F.3d 1362, 1369, 64 U.S.P.Q.2d 1448, 1453 (Fed. Cir. 2002) (*Bogese II*). Rather, the rules require that applicants who file multiple continuing applications from the same initial application show that the third and following applications, and any second or subsequent request for continued examination in an application family, be filed to obtain consideration of an amendment, argument, or evidence that could not have been previously submitted.

Likewise, the Office is putting conditions on request for continued examination practice. 35 U.S.C. 132(b) provides for the request for continued examination practice set forth in § 1.114. Unlike continuation application practice, the request for continued examination practice was recently added to title 35, United States Code, in section 4403 of the American Inventors Protection Act of 1999 (AIPA). See Public Law 106–113, 113 Stat. 1501, 1501A–560 (1999). 35 U.S.C. 132(b) provides, *inter alia,* that the Office "shall prescribe regulations to provide for the continued examination of applications for patent at the request of the applicant." Nothing in 35 U.S.C. 132(b) or its legislative history suggests that the Office must or even should permit an applicant to file an unlimited number of requests for continued examination in an application. Therefore, this final rule allows applicants to file their first request for continued examination in an application family without any justification, but requires applicants to justify the need for any further requests for continued examination in light of the past prosecution.

The Office appreciates that appropriate continued examination practice permits an applicant to obtain further examination and advance an application to final action. The unrestricted continued examination practice, however, does not provide adequate incentives to assure that the exchanges between an applicant and the examiner during the examination process are efficient. The marginal value vis-à-vis the patent examination process as a whole of exchanges between an applicant and the examiner during the examination process tends to decrease after each additional continued examination filing. The Office resources absorbed by the examination of additional continued examination filings are diverted away from the examination of new applications, thus increasing the backlog of unexamined applications.

The Office also appreciates that applicants sometimes use continued examination practice to obtain further examination rather than file an appeal to avoid the delays that historically have been associated with the appeal process. The Office, however, has taken major steps to eliminate such delays. First, the Board of Patent Appeals and Interferences (BPAI) has radically reduced the inventory of pending appeals and appeal pendency during the last five fiscal years. Second, the Office has adopted an appeal conference program to review the rejections in applications in which an appeal brief has been filed. See *Manual of Patent Examining Procedure* (MPEP) § 1207.01 (8th ed. 2001) (Rev. 5, August 2006). Third, the Office has also adopted a pre-appeal brief conference program to permit an applicant to request that a panel of examiners review the rejections in his or her application prior to the filing of an appeal brief. See *New Pre-Appeal Brief Conference Program*, 1296 *Off. Gaz. Pat. Office* 67 (July 12, 2005), and *Extension of the Pilot Pre-Appeal Brief Conference Program*, 1303 *Off. Gaz. Pat. Office* 21 (Feb. 7, 2006). These changes provide for a relatively expeditious review of rejections in an application under appeal. Thus, for an applicant faced with a rejection that he or she feels is improper, the appeal process offers a more effective resolution than seeking continued examination before the examiner.

This final rule also provides that an applicant may file a divisional application directed to each non-elected invention that has not been examined if the prior-filed application is subject to a requirement for restriction. The divisional application need not be filed during the pendency of the application subject to a requirement for restriction, as long as the copendency requirement of 35 U.S.C. 120 is met. This final rule also permits applicant to file two continuation applications of a divisional application plus a request for continued examination in the divisional application family, without any justification. This final rule, however, does not permit a "divisional" application to be filed if it is not the result of a requirement for restriction in the prior-filed application (a so-called "voluntary" divisional application). Such a "voluntary" divisional application would be a continuation application, and subject to the requirements for continuation applications, under the changes in this final rule.

*B. Changes to Practice for Examination of Claims in Patent Applications*

A number of patent applications contain a large number of claims, which makes efficient and effective

A09395

Federal Register / Vol. 72, No. 161 / Tuesday, August 21, 2007 / Rules and Regulations    46721

examination of such applications problematic. The Office previously requested comments in 1998 on a proposal to limit the number of independent and total claims that would be examined in an application. *See Changes to Implement the Patent Business Goals*, 63 FR 53497, 53506–08 (Oct. 5, 1998), 1215 *Off. Gaz. Pat. Office* 87, 95–97 (Oct. 27, 1998). Specifically, in 1998, the Office requested comments on a proposal to change the rules of practice to: (1) Limit the number of total claims that will be examined (at one time) in an application to forty; and (2) limit the number of independent claims that will be examined (at one time) in an application to six. *See Changes to Implement the Patent Business Goals*, 63 FR at 53506, 1215 *Off. Gaz. Pat. Office* at 95. Under the 1998 proposal, if the applicant presented more than forty total claims or six independent claims for examination at one time, the Office would withdraw the excess claims from consideration, and require the applicant to cancel those claims. See id. The Office, however, ultimately decided not to proceed with a proposed change to § 1.75 to place an absolute limit on the number of total and independent claims that would be examined in an application. *See Changes to Implement the Patent Business Goals*, 64 FR 53771, 53774–75 (Oct. 4, 1999), 1228 *Off. Gaz. Pat. Office* 15, 17–18 (Nov. 2, 1999).

Applications which contain a large number of claims, however, continue to absorb an inordinate amount of patent examining resources, as they are extremely difficult to properly process and examine. As a result, contrary to the proposal under consideration in 1998, the Claims Proposed Rule sought a change to the practice for examination of claims that would not place a limit on the number of total or independent claims that may be presented for examination in an application. The Office proposed in the Claims Proposed Rule to revise the practice for the examination of claims in an application as follows: (1) The Office would give an initial examination only to the representative claims, namely, all of the independent claims and only the dependent claims that are expressly designated for initial examination; and (2) if the number of representative claims is greater than ten, the Office would require the applicant to help focus examination by submitting an examination support document covering all of the representative claims. *See Changes to Practice for the Examination of Claims in Patent Applications*, 71 FR at 61–69, 1302 *Off. Gaz. Pat. Office* at 1329–35.

The Office received a substantial number of comments from the public opposing the proposed "representative claims" examination approach and suggesting that the Office should simply adopt a strategy based upon whether an application contains more than a given number of independent and total claims. As a result of the public comments on the Claims Proposed Rule, the Office is not adopting the "representative claims" examination approach.

Instead, this final rule provides that if the number of independent claims is greater than five or the number of total claims is greater than twenty-five, the applicant must help focus examination by providing an examination support document covering all of the claims in the application (whether in independent or dependent form) before the issuance of a first Office action on the merits of an application. An applicant may present up to five independent claims and twenty-five total claims in an initial application and each continuation or continuation-in-part application without providing either an examination support document or justification, as long as those applications are either prosecuted serially or contain patentably distinct claims. Thus, an applicant may present up to fifteen independent claims and seventy-five total claims to a single patentably distinct invention via an initial application and two continuation or continuation-in-part applications that are filed and prosecuted serially without providing either an examination support document or a justification. Furthermore, an applicant may present up to fifteen independent claims and seventy-five total claims via a divisional application and its two continuation applications without providing either an examination support document or a justification, if the Office issues a restriction requirement in the prior-filed application. Thus, the change to the practice for examination of claims adopted in this final rule avoids placing a limit on the number of total or independent claims that may be presented for examination in an application, but does require an applicant who presents more than five independent claims or more than twenty-five total claims in an application to help focus examination by providing additional information to the Office in an examination support document.

If an applicant thinks fifteen independent claims or seventy-five total claims to an invention is not sufficient, or if applicant wishes to present more than five independent claims or twenty-five total claims in any one application, then applicant has the option of presenting as many independent and total claims as desired by providing an examination support document. The examination support document will assist the examiner in examining the application and determining the patentability of a claimed invention by providing the most relevant prior art and other useful information. Specifically, the examination support document will assist the examiner in understanding the invention and interpreting the claims before conducting a prior art search. The examination support document will also assist the examiner in evaluating the prior art cited by the applicant and in determining whether a claim limitation has support in the original disclosure and in any prior-filed application. An examination support document must be filed before the issuance of a first Office action on the merits of an application. This is so that the information concerning the invention will be available when the Office begins the examination process, and thus avoids the piecemeal examination that would result if the examination support document were not provided until after the first Office action on the merits in the application.

*C. Changes to Practice for Patent Applications Containing Patentably Indistinct Claims*

The changes in this final rule also require that applicants provide additional information to the Office when they file multiple applications containing "conflicting" or patentably indistinct claims. The rules of practice provided that "[w]here two or more applications filed by the same applicant contain conflicting claims, elimination of such claims from all but one application may be required in the absence of good and sufficient reason for their retention during pendency in more than one application." *See* 37 CFR 1.78(b) (2006).

This final rule provides that an applicant must identify other pending applications or patents that are commonly owned, have a common inventor, and have a claimed filing or priority date within two months of the claimed filing or priority date of the application. This requirement does not supplant an applicant's duty to bring other applications that are "material to patentability" of an application (*e.g.*, applications containing patentably indistinct claims) to the attention of the examiner. *See Dayco Prod., Inc. v. Total*

**46722**   Federal Register / Vol. 72, No. 161 / Tuesday, August 21, 2007 / Rules and Regulations

Containment, Inc., 329 F.3d 1358, 1365–69, 66 U.S.P.Q.2d 1801, 1806–08 (Fed. Cir. 2003); see also MPEP § 2001.06(b). Thus, applicants are cautioned against intentionally filing related applications outside of this two-month window in an attempt to avoid the requirement to identify other applications that are material to the patentability of the application at issue. See Cargill, Inc. v. Canbra Foods, Ltd., 476 F.3d 1359, 1367–68, 81 U.S.P.Q.2d 1705, 1711 (Fed. Cir. 2007) (there is no such thing as a good faith intent to deceive).

This final rule provides that if there are other pending applications or patents that are commonly owned and have a common inventor, substantial overlapping disclosures, and the same claimed filing or priority date, the Office will presume that the applications contain patentably indistinct claims. In such a situation, the applicant must either rebut this presumption by explaining how the applications contain patentably distinct claims, or submit the appropriate terminal disclaimers and explain why two or more pending applications containing "conflicting" or patentably indistinct claims should be maintained.

The Office proposed a provision that if an application contains at least one claim that is patentably indistinct from at least one claim in one or more other applications or patents, the Office would (if certain conditions were met) treat the independent claims and the dependent claims designated for initial examination in the first application and in each of such other applications or patents as present in each of the applications for purposes of determining whether the applicant would be required to submit an examination support document. See Changes to Practice for the Examination of Claims in Patent Applications, 71 FR at 64, 68, 1302 Off. Gaz. Pat. Office at 1331, 1334. This final rule provides that if multiple applications, including applications having a continuity relationship, contain patentably indistinct claims, the Office will treat the multiple applications as a single application for purposes of determining whether each of the multiple applications exceeds the five independent claim and twenty-five total claim threshold. This provision is to preclude an applicant from submitting multiple applications with claims that are patentably indistinct, each with five or fewer independent claims or twenty-five or fewer total claims, for the purposes of avoiding the requirement to submit an examination support document in compliance with § 1.265. The Office, however, will not count the claims in issued patents that contain patentably indistinct claims in determining whether a pending application exceeds the five independent claim and twenty-five total claim threshold. Nevertheless, those patentably indistinct claims would still be subject to a double patenting rejection.

*D. Retention of First Action Final Practice and Changes in Second Action Final Practice*

The Office has a first action final rejection practice under which the first Office action in a continuing application, or in the prosecution of a request for continued examination, may be made final under certain circumstances. See MPEP § 706.07(b) and 706.07(h), paragraph VIII. The Office proposed to eliminate this practice in continuing applications under 35 U.S.C. 120, 121, or 365(c) and in requests for continued examination under 35 U.S.C. 132(b) as unnecessary in view of the proposed changes to continuing applications and requests for continued examination practice that would permit an applicant to file only one continuing application or request for continued examination without any justification. See Changes to Practice for Continuing Applications, Requests for Continued Examination Practice, and Applications Containing Patentably Indistinct Claims, 71 FR at 51, 1302 Off. Gaz. Pat. Office at 1321. This final rule, however, provides that an applicant may file a request for continued examination in either the initial application or either of the two continuing applications without any justification. Therefore, the Office is retaining its first action final rejection practice. Applicants, however, are reminded that it would not be proper for the Office to make a first Office action final in a continuing application or after a request for continued examination if the application contains material which was presented after final rejection or the close of prosecution but was denied entry because: (1) new issues were raised that required further consideration and/or search; or (2) the issue of new matter was raised. See MPEP § 706.07(b) and 706.07(h). Thus, applicants may guard against first action final rejection in a continuing application or after a request for continued examination by first seeking entry of the amendment, argument, or new evidence under § 1.116.

The Office is also not changing the final action practice for the Office action following a submission under § 1.129(a). See Changes to the Transitional Procedures for Limited Examination After Final Rejection in Certain Applications Filed Before June 8, 1995, 70 FR 24005 (May 6, 2005), 1295 Off. Gaz. Pat. Office 22 (Jun. 7, 2005) (notice).

The Office is revising second action final practice as it pertains to second or subsequent Office actions that include a new double patenting rejection (either statutory or obviousness-type double patenting). Double patenting can arise when a party (or parties to a joint research agreement under the Cooperative Research and Technology Enhancement Act of 2004 (CREATE Act), Public Law 108–453, 118 Stat. 3596 (2004)) has filed multiple patent applications containing patentably indistinct claims. The applicant (or the owner of the application) is in a far better position than the Office to determine whether there are one or more other applications or patents containing patentably indistinct claims. For this reason, when an applicant files multiple applications that are substantially the same, the applicant is responsible for assisting the Office in resolving potential double patenting situations, rather than taking no action until faced with a double patenting rejection. Thus, if an Office action must include a double patenting rejection, it is because the applicant has not met his or her responsibility to resolve the double patenting situation. Therefore, the inclusion of a new double patenting rejection in a second or subsequent Office action will not preclude the Office action from being made final.

The Office is also revising second action final practice as it pertains to second or subsequent Office actions that include a new ground of rejection necessitated by a showing that a claim element that does not use the phrase "means for" or "step for" is nevertheless a means- (or step-) plus-function claim element under 35 U.S.C. 112, ¶ 6. The Office revised the examination guidelines for means- (or step-) plus-function claim elements under 35 U.S.C. 112, ¶ 6, in June of 2000. See Supplemental Examination Guidelines for Determining the Applicability of 35 U.S.C. 112, ¶ 6, 65 FR 38510 (June 21, 2000), 1236 Off. Gaz. Pat. Office 98 (July 25, 2000) (2000 Examination Guidelines); see also Interim Supplemental Examination Guidelines for Determining the Applicability of 35 U.S.C. 112, ¶ 6, 64 FR 41392 (July 30, 1999). The 2000 Examination Guidelines for means- (or step-) plus-function claim elements under 35 U.S.C. 112, ¶ 6, have been incorporated into the MPEP. See MPEP sections 2181–2184 (8th ed. 2001) (Rev. 5, August 2006). The 2000 Examination

Federal Register / Vol. 72, No. 161 / Tuesday, August 21, 2007 / Rules and Regulations    46723

Guidelines set forth a three-prong procedure for determining whether a claim element is a means- (or step-) plus-function claim element under 35 U.S.C. 112, ¶ 6. See *Supplemental Examination Guidelines for Determining the Applicability of 35 U.S.C. 112, ¶ 6*, 65 FR at 38514, 1236 *Off. Gaz. Pat. Office* at 101. The 2000 Examination Guidelines provide that if a claim element does not include the phrase "means for" or "step for" as provided in the first prong of the three-prong procedure and the applicant wishes to have the claim element treated under 35 U.S.C. 112, ¶ 6, in a proceeding before the Office, the applicant has two options: (1) Amend the claim to include the phrase "means for" or "step for"; or (2) show that even though the phrase "means for" or "step for" is not used, the claim element is written as a function to be performed and does not recite sufficient structure, material, or acts which would preclude application of 35 U.S.C. 112, ¶ 6. See *Supplemental Examination Guidelines for Determining the Applicability of 35 U.S.C. 112, ¶ 6*, 65 FR at 38514, 1236 *Off. Gaz. Pat. Office* at 101. To avoid any unnecessary delay in the prosecution of the application, an applicant who wishes to have a claim element treated under 35 U.S.C. 112, ¶ 6, should either use the phrase "means for" or "step for" in the claim element or provide the necessary showing before the examination of the application begins so that the examiner can properly interpret the claims in the application and make a patentability determination. Furthermore, because submitting a showing is tantamount to an amendment of the claim to include the phrase "means for" or "step for," a showing will be treated as an amendment of the claim for second action final purposes. Thus, the inclusion of a new rejection in a second or subsequent Office action necessitated by a showing submitted by applicant will not preclude the Office from making the second or subsequent Office action final.

This final rule requires applicant to identify any claims in a continuation-in-part application for which the subject matter is disclosed in the manner provided by 35 U.S.C. 112, ¶ 1, in the prior-filed application. *See* § 1.78(d)(3) and the discussion of § 1.78(d)(3). Any claim in the continuation-in-part application for which the subject matter is not identified as being disclosed in the manner provided by 35 U.S.C. 112, ¶ 1, in the prior-filed application will be treated as entitled only to the actual filing date of the continuation-in-part application, and will be subject to prior art based on the actual filing date of the continuation-in-part application. To avoid any unnecessary delay in the prosecution of the application, applicant should provide the identification before the examiner begins to conduct a prior art search. If the failure to identify the claims for which the subject matter is disclosed in the manner provided by 35 U.S.C. 112, ¶ 1, in the prior-filed application causes the examiner to include a new prior art rejection in a second or subsequent Office action, the inclusion of the new prior art rejection will not preclude the Office action from being made final.

Therefore, the Office is revising second action final practice to provide that a second or any subsequent Office action on the merits may be made final, except when the Office action contains a new ground of rejection that is not: (1) Necessitated by applicant's amendment of the claims, including amendment of a claim to eliminate unpatentable alternatives; (2) necessitated by applicant's providing a showing that a claim element that does not use the phrase "means for" or "step for" is written as a function to be performed and does not otherwise preclude application of 35 U.S.C. 112, ¶ 6; (3) based on information submitted in an information disclosure statement filed during the period set forth in 37 CFR 1.97(c) with the fee set forth in 37 CFR 1.17(p); (4) based upon double patenting (statutory or obviousness-type double patenting); or (5) necessitated by applicant's identification of the claim or claims in a continuation-in-part application for which the subject matter is disclosed in the manner provided by 35 U.S.C. 112, ¶ 1, in the prior-filed application. The provision in MPEP § 904.02 that a search should cover the claimed subject matter and should also cover the disclosed features which might reasonably be expected to be claimed does not preclude an examiner from making the second or any subsequent Office action on the merits final if the Office action contains a new ground of rejection that was necessitated solely by applicant's amendment of the claims to eliminate an unpatentable alternative. An examiner cannot be expected to foresee whether or how an applicant will amend a claim to overcome a rejection except in very limited circumstances (*e.g.*, where the examiner suggests how applicant can overcome a rejection under 35 U.S.C. 112, ¶ 2).

II. Discussion of Specific Rules

Title 37 of the Code of Federal Regulations, part 1, is amended as follows:

*Section 1.17 (patent application and reexamination processing fees):* Section 1.17(f) is amended to include a reference to: (1) Petitions under § 1.78(d)(1)(vi) for a continuing application not provided for in §§ 1.78(d)(1)(i) through (d)(1)(v); and (2) petitions under § 1.114(g) for a request for continued examination not provided for in § 1.114(f). *See* discussion of §§ 1.78 and 1.114.

*Section 1.26 (refunds):* Section 1.26(a) is amended to add the phrase "[e]xcept as provided in § 1.117 or § 1.138(d)" to the sentence "[a] change of purpose after the payment of a fee, such as when a party desires to withdraw a patent filing for which the fee was paid, including an application, an appeal, or a request for an oral hearing, will not entitle a party to a refund of such fee." The "change of purpose" provision of § 1.26(a) is directed to the provision in 35 U.S.C. 42(d) authorizing a refund of "any fee paid by mistake or any amount paid in excess of that required." 35 U.S.C. 42(d). Sections 1.117 and 1.138(d), however, are directed to the provisions in 35 U.S.C. 41(a)(2) and (d)(1)(D) as amended by the Consolidated Appropriations Act, 2005 (Consolidated Appropriations Act) that permit the Office to develop procedures to refund search fees or excess claims fees under certain limited conditions. *See* Public Law 108–447, 118 Stat. 2809 (2004). Section 1.26(b) is amended to change "except as otherwise provided in this paragraph or in § 1.28(a)" to "except as otherwise provided in this paragraph, or in § 1.28(a), § 1.117(b), or § 1.138(d)". This change is for consistency with § 1.117(b) and § 1.138(d), which also specify time periods within which certain refunds must be requested.

*Section 1.52 (language, paper, writing, margins, compact disc specifications):* Section 1.52(d)(2) is amended to refer to § 1.78(b) concerning the requirements for claiming the benefit of a provisional application in a nonprovisional application. Section 1.52(d)(2) is also amended to provide that if a provisional application is filed in a language other than English and the benefit of such provisional application is claimed in a nonprovisional application, an English language translation of the non-English language provisional application will be required in the provisional application. This change conforms § 1.52(d)(2) to the September 2005 revision to the provisions in § 1.78 for claiming the benefit of a provisional application. *See Provisions for Claiming the Benefit of a Provisional Application With a Non-English Specification and Other Miscellaneous Matters*, 70 FR 56119,

A09398

**46724**  Federal Register / Vol. 72, No. 161 / Tuesday, August 21, 2007 / Rules and Regulations

56121, 56128 (Sept. 26, 2005), 1299 *Off. Gaz. Pat. Office* 142, 143–44, 150 (Oct. 25, 2005) (final rule). With respect to claiming the benefit of a provisional application that was filed in a language other than English, § 1.78(b)(5) now provides that: (1) If the prior-filed provisional application was filed in a language other than English and both an English-language translation of the prior-filed provisional application and a statement that the translation is accurate were not previously filed in the prior-filed provisional application, applicant will be notified and given a period of time within which to file the translation and the statement in the prior-filed provisional application; (2) if the notice is mailed in a pending nonprovisional application, a timely reply to such a notice must include the filing in the nonprovisional application of either a confirmation that the translation and statement were filed in the provisional application, or an amendment or supplemental application data sheet withdrawing the benefit claim, or the nonprovisional application will be abandoned; and (3) the translation and statement may be filed in the provisional application, even if the provisional application has become abandoned.

*Section 1.53 (application number, filing date, and completion of application):* Section 1.53(b) and (c)(4) are amended to refer to § 1.78, rather than specific paragraphs of § 1.78. Section 1.53(b)(1) is also amended to provide that continuation or divisional applications naming an inventor not named in the prior application must be filed under § 1.53(b) (this provision was formerly in § 1.53(b)(2)), and to reference § 1.78(a)(2) for the definition of a divisional application and § 1.78(a)(3) for the definition of a continuation application. Section 1.53(b)(2) is amended to reference § 1.78(a)(4) for the definition of a continuation-in-part application.

*Section 1.75 (claims):* Section 1.75(b) is amended to provide for the revised practice for the examination of claims in an application. Section 1.75(b) (introductory text) provides for the requirements of a dependent claim. Section 1.75(b)(1) provides for the five independent claim and twenty-five total claim threshold for invoking the examination support document requirement. Section 1.75(b)(2) provides for claims in dependent form that are effectively independent claims. Section 1.75(b)(3) provides for situations in which an examination support document has not been provided in an application that exceeds the five independent claim and twenty-five total claim threshold. Section 1.75(b)(4) provides that the total number of claims present in all of the copending commonly owned applications that contain patentably indistinct claims may not exceed the five independent claim and twenty-five total claim threshold. Section 1.75(b)(5) provides that claims withdrawn from consideration will not, unless they are reinstated or rejoined, be taken into account in determining whether an application exceeds the five independent claim and twenty-five total claim threshold. Section 1.75(c) is amended to provide that multiple dependent claims and claims depending from a multiple dependent claim will be considered to be that number of claims to which direct reference is made in the multiple dependent claim for claims counting purposes.

Section 1.75(b) (introductory text) is amended to set forth the existing provisions concerning dependent claims in § 1.75(c), namely, that "[o]ne or more claims may be presented in dependent form, referring back to and further limiting another claim or claims in the same application." Section 1.75(b) (introductory text) is also amended to clarify that a dependent claim is required to incorporate by reference all the limitations of the previous claim to which it refers and to specify a further limitation of the subject matter of the previous claim. *See Pfizer Inc.* v. *Ranbaxy Labs. Ltd.*, 437 F.3d 1284, 1292, 79 U.S.P.Q.2d 1583, 1589–90 (Fed. Cir. 2006) (a dependent claim is required to include all the limitations of the claim from which it depends and the failure to incorporate by reference all the limitations is a violation of 35 U.S.C. 112, ¶ 4, and renders the dependent claim invalid).

Section 1.75(b)(1) provides that an applicant must file an examination support document in compliance with § 1.265 that covers each claim (whether in independent or dependent form) before the issuance of a first Office action on the merits of the application if the application contains or is amended to contain more than five independent claims or more than twenty-five total claims. Section 1.75(b)(1) also provides that the application may not contain or be amended to contain more than five independent claims or more than twenty-five total claims if an examination support document in compliance with § 1.265 has not been filed before the issuance of a first Office action on the merits of an application. The examination support document in compliance with § 1.265 is required to be filed before the issuance of the first Office action on the merits of the application because the information provided by the applicant in the examination support document will assist the examiner in understanding the invention of the application, determining the effective filing date of each claim, interpreting the claims before a prior art search, understanding the state of the art and the most closely related prior art cited by the applicant, and determining the patentability of the claims. Applicant is permitted to present more than five independent claims or more than twenty-five total claims in a continuing application, if the applicant files an examination support document in compliance with § 1.265 before the first Office action on the merits of the continuing application, regardless of whether an examination support document has been filed in the prior-filed application.

Claims withdrawn from consideration under §§ 1.141 through 1.146 or § 1.499 as drawn to a non-elected invention or inventions are not taken into account in determining whether an application exceeds this five independent claim and twenty-five total claim threshold. *See* § 1.75(b)(5) and discussion of § 1.75(b)(5).

Section 1.75(b)(2) concerns claims in dependent form that are effectively independent claims. Section 1.75(b)(2) provides that a claim that refers to another claim but does not incorporate by reference all the limitations of the claim to which such claim refers will be treated as an independent claim for fee calculation purposes under § 1.16 (or § 1.492) and for purposes of § 1.75(b). The Office must treat such claims as independent claims because 35 U.S.C. 112, ¶ 4, provides (*inter alia*) that a dependent claim "shall be construed to incorporate by reference all the limitations of the claim to which it refers." *See* 35 U.S.C. 112, ¶ 4. For examples of such claims, see: *In re Thorpe*, 777 F.2d 695, 696, 227 U.S.P.Q. 964, 965 (Fed. Cir. 1985) ("product by process" claim 44); *In re Kuehl*, 475 F.2d 658, 659, 177 U.S.P.Q. 250, 251 (C.C.P.A. 1973) (claim 6); and *Ex parte Rao*, 1995 WL 1747720, *1 (BPAI 1998) (claim 8). Section 1.75(b)(2) also provides that a claim that refers to a claim of a different statutory class of invention will be treated as an independent claim for fee calculation purposes under § 1.16 (or § 1.492) and for purposes of § 1.75(b). For examples of such claims, see: *Thorpe*, 777 F.2d at 696, 227 U.S.P.Q. at 965 ("product by process" claim 44); *Ex parte Porter*, 25 U.S.P.Q.2d 1144, 1145 (BPAI 1992) (claim 6); and *Ex parte Blattner*, 2

Federal Register/Vol. 72, No. 161/Tuesday, August 21, 2007/Rules and Regulations    46725

U.S.P.Q.2d 2047, 2047–48 (BPAI 1987) (claim 14).

Section 1.75(b)(3) provides that the applicant will be notified if the application contains or is amended to contain more than five independent claims or more than twenty-five total claims but the applicant has not complied with the requirements set forth in § 1.75(b)(1) or 1.75(b)(4) (e.g., an examination support document in compliance with § 1.265 has been omitted). Section 1.75(b)(3) also provides that if the non-compliance appears to have been inadvertent, the notice will set a two-month time period that is not extendable under § 1.136(a) within which, to avoid abandonment of the application, the applicant must comply with the requirements set forth in § 1.75(b). Again, claims withdrawn from consideration under §§ 1.141 through 1.146 or § 1.499 as drawn to a non-elected invention or inventions are not taken into account in determining whether an application exceeds this five independent claim and twenty-five total claim threshold. See § 1.75(b)(5) and discussion of § 1.75(b)(5).

If a notice under § 1.75(b)(3) is mailed before the first Office action on the merits of an application and it appears that the omission of an examination support document was inadvertent, the notice will set a two-month time period within which the applicant must: (1) File an examination support document in compliance with § 1.265 that covers each claim (whether in independent or dependent form); or (2) amend the application such that it contains no more than five independent claims and no more than twenty-five total claims. Section 1.75(b)(3) provides that this two-month time period is not extendable under § 1.136(a) and that the failure to reply to such a notice will result in abandonment of the application. Due to the increase in patent pendency that would result from the routine granting of extensions in the situation in which an application contains or is amended to contain more than five independent claims or more than twenty-five total claims but the applicant has not complied with the requirements set forth in § 1.75(b)(1) or 1.75(b)(4) (e.g., an examination support document in compliance with § 1.265 has been omitted), the Office is limiting extensions of this two-month time period in § 1.75(b)(3) to those for which there is sufficient cause (§ 1.136(b)).

Once the Office issues a notice under § 1.75(b)(3), the applicant may not simply submit a suggested alternative requirement for restriction under § 1.142(c), but instead must: (1) File an examination support document in compliance with § 1.265 that covers each claim (whether in independent or dependent form); or (2) amend the application such that it contains no more than five independent claims and no more than twenty-five total claims.

If an examination support document in compliance with § 1.265 as required under § 1.75(b) was not filed before the issuance of a first Office action on the merits of an application, an amendment that results in the application containing more than five independent claims or more than twenty-five total claims will be treated as non-responsive. Specifically, if the non-compliance with § 1.75(b) appears to have been inadvertent, the Office would give the applicant a two-month time period that is not extendable under § 1.136(a) within which to provide an amendment that does not result in the application containing more than five independent claims or more than twenty-five total claims. See § 1.135(c) ("[w]hen reply by the applicant is a bona fide attempt to advance the application to final action, and is substantially a complete reply to the non-final Office action, but consideration of some matter or compliance with some requirement has been inadvertently omitted, applicant may be given a new time period for reply under § 1.134 to supply the omission.").

Section 1.75(b)(4) provides for the situation in which: (1) A nonprovisional application contains at least one claim that is patentably indistinct from at least one claim in one or more other pending nonprovisional applications; and (2) the nonprovisional application and the one or more other pending nonprovisional applications either are owned by the same person or are subject to an obligation of assignment to the same person. In this situation, § 1.75(b)(4) provides that the Office will treat the claims in the first nonprovisional application and in each of such other pending nonprovisional applications as being present in each of the pending nonprovisional applications for purposes of § 1.75(b). That is, if the conditions specified in § 1.75(b)(4) are present, the Office will treat each such nonprovisional application as having the total number of claims present in all of such applications (and not just the claim that is patentably indistinct) for purposes of determining whether an examination support document is required by § 1.75(b). For example: If application "A" contains only one claim that is patentably indistinct from the claims in application "B", application "A" and application "B" are owned by the same company, and each application contains three independent claims and twenty total claims, the Office will treat each application as having six independent claims and forty total claims in determining whether each application exceeds the five independent claim and twenty-five total claim threshold set forth in § 1.75(b). In this example, an examination support document would be required in each application before the issuance of a first Office action on the merits of the application. To avoid the provisions of § 1.75(b)(4), applicant may present all of the patentably indistinct claims in application "B" by canceling the patentably indistinct claim from application "A". As discussed previously, § 1.75(b)(4) is to preclude an applicant from submitting multiple applications to the same subject matter (with claims that are patentably indistinct), each with five or fewer independent claims or twenty-five or fewer total claims, for the purpose of avoiding the requirement to submit an examination support document in compliance with § 1.265.

Under § 1.75(b)(4), the Office will count the claims in the copending nonprovisional applications containing patentably indistinct claims (including applications having a continuity relationship) but not in issued patents containing patentably indistinct claims, in determining whether each such application exceeds the five independent claim or twenty-five total claim threshold for invoking the examination support document requirement. An applicant may present up to five independent claims and twenty-five total claims in an initial application and each continuing application, provided that continuing applications that contain patentably indistinct claims are not prosecuted in parallel with the initial application or each other. Thus, an applicant may present up to fifteen independent claims and seventy-five total claims to a single invention via an initial application and two continuing applications that are filed and prosecuted serially without providing either an examination support document or a justification. In addition, an applicant may prosecute a divisional application (an application containing claims that are patentably distinct from the claims to the invention prosecuted in the initial application) in parallel with the initial application or its continuation or continuation-in-part applications without the claims in the divisional application being taken into account in determining whether the initial application or its continuation or continuation-in-part applications

A09400

46726    Federal Register / Vol. 72, No. 161 / Tuesday, August 21, 2007 / Rules and Regulations

exceed the five independent claim or twenty-five total claim threshold for invoking the examination support document requirement.

Section 1.75(b)(4) also provides that the total number of claims present in all of such copending nonprovisional applications containing patentably indistinct claims may not exceed five independent claims or twenty-five total claims unless an examination support document in compliance with § 1.265 is filed before the issuance of a first Office action on the merits of the application containing patentably indistinct claims.

The provisions of § 1.75(b)(4) do not depend upon the relative filing dates of the nonprovisional application and the one or more other nonprovisional applications. The provisions of § 1.75(b)(4) apply regardless of whether the filing dates of the applications are the same, are within two months of each other (cf. § 1.78(f)(1) and (f)(2)), or are not within two months of each other. In other words, the provision of § 1.75(b)(4) does not depend on the filing dates of the respective applications. In addition, the provisions of § 1.75(b)(4) are applicable regardless of any continuity relationship between the applications (e.g., the provision applies if a parent application is still pending at the time the child application is under examination). For applications having a continuity relationship, the prior application must be pending at the time the continuing application is filed. See 35 U.S.C. 120 (requires that a continuing application be filed before the patenting or abandonment of or termination of proceedings on the prior application). The Office, however, will treat the application as no longer pending for purposes of § 1.75(b)(4) if: (1) A notice of allowance is issued, unless the application is withdrawn from issue (§ 1.313); (2) the Office recognizes the application is abandoned; (3) a notice of appeal to the U.S. Court of Appeals for the Federal Circuit under 35 U.S.C. 141 is filed, unless the appeal is terminated; or (4) a civil action under 35 U.S.C. 145 or 146 is commenced, unless the civil action is terminated.

Section 1.75(b)(4) as adopted in this final rule differs from proposed § 1.75(b)(4) in that it does not provide that the Office may require elimination of the patentably indistinct claims from all but one of the applications. Such a provision would be a substantial duplicate of § 1.78(f)(3) as adopted in this final rule, which provides that if the conditions set forth in § 1.75(b)(4) exist, the Office may require elimination of the patentably indistinct claims from all but one of the applications in the absence of good and sufficient reason for there being two or more such nonprovisional applications containing patentably indistinct claims.

Section 1.75(b)(5) provides that claims withdrawn from consideration under §§ 1.141 through 1.146 or § 1.499 as drawn to a non-elected invention or inventions will not, unless they are reinstated or rejoined, be taken into account in determining whether an application exceeds the five independent claim and twenty-five total claim threshold set forth in §§ 1.75(b)(1), (b)(3), and (b)(4). Thus, claims withdrawn from consideration as the result of an Office-initiated requirement under § 1.142, 1.146, or 1.499 (regardless of whether the election is with or without traverse), or as the result of the acceptance of a suggested restriction requirement under § 1.142(c), are not taken into account in determining whether an application exceeds the five independent claim and twenty-five total claim threshold. In addition, claims withdrawn from consideration in an application (e.g., the initial application) as the result of either an Office-initiated requirement under § 1.142, 1.146, or 1.499, or the acceptance of a suggested restriction requirement under § 1.142(c), are not taken into account in determining whether a copending application (e.g., a continuation application of the initial application) contains a claim that is patentably indistinct from a claim in such application for purposes of § 1.75(b)(4).

Section 1.142(c) as adopted in this final rule provides that the applicant may submit a suggested requirement for restriction if two or more independent and distinct inventions are claimed in the application. Section 1.142(c) further provides that any suggested requirement for restriction must be filed before the earlier of the first Office action on the merits or any Office action that contains a requirement to comply with the requirement of unity of invention under PCT Rule 13 or a requirement for restriction (including an election of species) under 35 U.S.C. 121 in the application. Section 1.142(c) provides that any suggested requirement for restriction must also be accompanied by an election without traverse of an invention to which there are no more than five independent claims and no more than twenty-five total claims, and identify the claims to the elected invention. If the applicant submits a suggested restriction requirement, the suggested restriction requirement is accepted, and there are five or fewer independent claims and twenty-five or fewer total claims to the elected invention (as required by § 1.142(c)), the Office will simply treat the non-elected claims as withdrawn from consideration and proceed to act on the application (assuming the application is otherwise in condition for action). The Office action will set out the requirement for restriction under § 1.141(a), e.g., in the manner that an Office action on the merits would contain a written record of a requirement for restriction previously made by telephone. See MPEP section 810. Applicants are reminded, however, that the Office may refund excess claims fees only for claims that are canceled prior to the issuance of a first Office action on the merits of the application. See 35 U.S.C. 41(a)(2) ("[t]he Director may, by regulation, provide for a refund of any part of the fee specified in [35 U.S.C. 41(a)(2)] for any claim that is canceled before an examination on the merits, as prescribed by the Director, has been made of the application under [35 U.S.C.] 131").

If the applicant files a suggested requirement for restriction in an application containing more than five independent claims or more than twenty-five total claims, the applicant will also be notified if the suggested restriction requirement is not accepted. The refusal to accept a suggested requirement for restriction may result in the examiner making a different restriction requirement or making no restriction requirement.

If the examiner makes a restriction requirement (which includes an election of species requirement) different from the suggested restriction requirement, the applicant will be notified of the restriction requirement. The applicant will be given a two-month time period that is not extendable under § 1.136(a) within which the applicant must make an election consistent with the Office-issued restriction requirement in order to avoid abandonment of the application. Once the Office issues a requirement for restriction, the applicant may not simply submit a suggested alternative requirement for restriction under § 1.142(c). Instead, the applicant must make an election (with or without traverse) responsive to the Office-issued requirement for restriction. If an application subject to an Office-issued requirement for restriction contains more than five independent claims or more than twenty-five total claims, the reply must also either: (1) Amend the application to contain no more than five independent claims and no more than twenty-five total claims to the elected invention and/or species; or (2) include an examination support document in compliance with § 1.265 that covers

Federal Register/Vol. 72, No. 161/Tuesday, August 21, 2007/Rules and Regulations    46727

each claim (whether in independent or dependent form) pending in the application.

If the examiner does not make a restriction requirement, the applicant will simply be given a notice under § 1.75(b)(3). That notice will set a two-month time period that is not extendable under § 1.136(a) within which, to avoid abandonment of the application, the applicant must: (1) Amend the application to contain no more than five independent claims and no more than twenty-five total claims; or (2) file an examination support document in compliance with § 1.265 that covers each claim (whether in independent or dependent form) pending in the application. See § 1.75(b)(3).

Section 1.75(b)(5) also provides that claims reinstated (e.g., as a result of a request for reconsideration of the requirement) or rejoined (e.g., upon allowance of a generic claim) in the application are taken into account in determining whether an application exceeds the five independent claim and twenty-five total claim threshold. As discussed previously, unless an examination support document in compliance with § 1.265 was filed before the issuance of a first Office action on the merits of an application, the application must remain at or under the five independent claim and twenty-five total claim threshold. Therefore, if an examination support document was not filed before the issuance of a first Office action on the merits of the application, and the reinstatement or rejoinder of non-elected claims results in the application containing more than five independent claims or more than twenty-five total claims, the Office will give the applicant a two-month time period within which to amend the application to contain five or fewer independent claims and twenty-five or fewer total claims. See § 1.75(b)(3). This two-month time period is not extendable under § 1.136(a). The failure to file such an amendment will result in abandonment of the application.

Since claims reinstated or rejoined in the application are taken into account in determining whether an application exceeds the five independent claim and twenty-five total claim threshold, applicants cannot rely upon a requirement for restriction to avoid submitting an examination support document before the issuance of a first Office action on the merits of an application. This is especially true where: (1) The applicant traverses the requirement for restriction; (2) the requirement for restriction may be conditional, such as a requirement for election of species in an application that contains a claim that is generic to all of the claimed species (hereafter "generic claim") (see MPEP section 809), or a requirement for restriction in an application that contains a linking claim (e.g., a subcombination claim linking plural combinations); or (3) the applicant plans to request rejoinder of the claims to the non-elected invention (see MPEP § 821.04 et seq.). Thus, applicants are advised to file an examination support document in the application before the first Office action on the merits if they anticipate the occurrence of any of the aforementioned three situations. Furthermore, applicants cannot rely upon the requirement for restriction to file a divisional application because the Office will withdraw the requirement for restriction, including an election of species, if the non-elected claims are reinstated or rejoined.

Applicant is not permitted to file a divisional application of a prior-filed application that is no longer subject to a restriction requirement. Under § 1.78(a)(2) and 1.78(d)(1)(ii), the prior-filed application to which a divisional application claims the benefit must be subject to a requirement to comply with the requirement of unity of invention under PCT Rule 13 or a requirement for restriction under 35 U.S.C. 121. Sections 1.78(a)(2) and 1.78(d)(1)(ii) also require a divisional application to contain only claims directed to a non-elected invention that has not been examined.

For an application that contains a generic claim in which a requirement for an election of species has been made, applicants should conclude prosecution (in the initial application and its continuation or continuation-in-part applications), including exhaustion of any available appeals, as to the generic claim before ever filing a divisional application to a non-elected species. If applicant no longer wants to pursue the generic claim, applicant may file a divisional application directed to a non-elected species. If an applicant files a divisional application directed to a non-elected species, applicant should: (1) Cancel the claims to the non-elected species and the generic claim in the prior-filed application before rejoinder or reinstatement occurs; (2) not present the non-elected claims and the generic claim in any continuation or continuation-in-part application of the initial application; and (3) not present the generic claim in the divisional application or any other continuation application of the divisional application (because the generic claim has been examined in the initial application and it is patentably indistinct from the claims of the non-elected species).

When an application contains a generic claim and the examiner makes a provisional restriction requirement, requiring an election of species for initial search and examination purposes, the applicant must elect a single species. (The requirement is provisional because the restriction will be withdrawn upon allowance of the generic claim.) The examiner will determine the patentability of the elected species and generic claim. Upon the allowance of the generic claim, the provisional restriction requirement will be withdrawn, as explained above. The claims of the non-elected species then will be rejoined. The Office will count the rejoined claims together with the other pending claims to determine whether the application exceeds the five independent claim and twenty-five total claim threshold set forth § 1.75(b)(1). See § 1.75(b)(5). If the application contains more than five independent claims and twenty-five total claims (counting the rejoined claims) and the applicant did not file an examination support document in compliance with § 1.265 before the issuance of a first Office action on the merits in the application, then the applicant must amend the application to contain no more than five independent claims and no more than twenty-five total claims. See § 1.75(b)(1). Therefore, applicants cannot rely upon a provisional requirement for restriction to avoid submitting an examination support document before the issuance of the first Office action on the merits in the application.

Furthermore, upon the allowance of a claim that is generic to all of the claimed species (either in the initial application or any continuing application), the application is no longer subject to a requirement to comply with the requirement of unity of invention under PCT Rule 13 or a requirement for restriction under 35 U.S.C. 121. In such a situation, if applicant had filed a "divisional" application to the non-elected species following the provisional restriction in the prior-filed application, that "divisional" application would no longer be proper under §§ 1.78(a)(2) and 1.78(d)(1)(ii). This is because the "divisional" application would not meet the conditions set forth in §§ 1.78(a)(2) and 1.78(d)(1)(ii). If applicant wishes to maintain the application, then applicant must delete or correct the benefit claim to indicate that the application is a continuation application, provided the requirements set forth in § 1.78(d)(1)(i) can be

**46728**  Federal Register / Vol. 72, No. 161 / Tuesday, August 21, 2007 / Rules and Regulations

satisfied. In such case, the Office will treat the application as one of the two continuation applications of the prior-filed application permitted under § 1.78(d)(1)(i). But, if the prior-filed application already has its benefit claimed in two other nonprovisional applications, applicant must delete the benefit claim in the application. See § 1.78(d)(1)(i). Therefore, applicant is cautioned not file a divisional application drawn to a non-elected species if a generic claim is pending in the initial application or any continuing application of the initial application and could be found allowable.

When an application subject to an election of species is allowed with no claim that is generic to all of the claimed species being found to have been allowable, the applicant will be notified that the Office considers the requirement that the application be restricted to a single species to be final. At that point, the applicant may cancel the claims to the non-elected species and the generic claim in the prior-filed application and file a divisional application in accordance with § 1.78(d)(1)(ii) to the non-elected species. However, if the applicant later files a continuing application of the initial application or the divisional application presenting one or more generic claims in such later application, the Office will consider the requirement that the initial application be restricted to a single species to no longer be final. Should that occur, the "divisional" application directed to the non-elected species would not be proper under §§ 1.78(a)(2) and 1.78(d)(1)(ii) for the reasons explained above. Thus, applicants should conclude prosecution, including exhaustion of any available appeals, as to the generic claim before ever filing a divisional application to a non-elected species. In other words, applicants cannot rely upon a requirement that an application containing a generic claim will be restricted to a single species to permit filing one or more divisional applications until the applicant has concluded prosecution with respect to any generic claims.

Under the Office's rejoinder practice, an applicant may request rejoinder of claims to a non-elected invention that depend from or otherwise require all the limitations of an allowable claim. See MPEP § 821.04 et seq. This "rejoinder" practice was developed in light of the Federal Circuit's decisions in In re Ochiai, 71 F.3d 1565, 37 U.S.P.Q.2d 1127 (Fed. Cir. 1995), and In re Brouwer, 77 F.3d 422, 37 U.S.P.Q.2d 1663 (Fed. Cir. 1996), and the enactment of 35 U.S.C. 103(b) in The Biotechnology Process Act of 1995 (Pub. L. 104–41, 109 Stat. 351 (1995)). See Guidance on Treatment of Product and Process Claims in light of In re Ochiai, In re Brouwer, and 35 U.S.C. 103(b), 1184 Off. Gaz. Pat. Office 86 (Mar. 26, 1996). Applicants may retain claims to a non-elected invention in an application for possible rejoinder in the event of the allowance of a claim to the elected invention. However, as discussed previously, the Office will count rejoined claims towards the five independent claim and twenty-five total claim threshold in § 1.75(b)(1). See § 1.75(b)(5). If applicant cancels all of the claims directed to a non-elected invention before rejoinder occurs and files a divisional application, the restriction requirement will not be withdrawn and the non-elected process claims that are now canceled will not be rejoined. This will preserve applicant's rights under 35 U.S.C. 121 and § 1.78(d)(1)(ii). See MPEP § 821.04(b).

Section 1.75(c) is amended to provide for multiple dependent claims only. Dependent claims are now provided for in § 1.75(b). Section 1.75(c) further provides that multiple dependent claims and claims that depend from a multiple dependent claim will be considered to be that number of claims to which direct reference is made in the multiple dependent claim for purposes of § 1.75(b) (as well as § 1.16 or 1.492).

The changes to § 1.75 are applicable to any application (including any reissue application) filed under 35 U.S.C. 111(a) on or after November 1, 2007, and to any nonprovisional application entering the national stage after compliance with 35 U.S.C. 371 on or after November 1, 2007, as well as to any application (including any reissue application) in which a first Office action on the merits (§ 1.104) was not mailed before November 1, 2007. The Office will provide an applicant who filed a nonprovisional application under 35 U.S.C. 111(a) before November 1, 2007, or a nonprovisional application that entered the national stage after compliance with 35 U.S.C. 371 before November 1, 2007, and who would be affected by the changes in the final rule, with an opportunity to submit: (1) An examination support document under § 1.265; (2) a new set of claims such that the application contains five or fewer independent claims and twenty-five or fewer total claims; or (3) a suggested restriction requirement under § 1.142(c). Specifically, the Office will issue a notice setting a two-month time period that is extendable under § 1.136(a) or (b) within which the applicant must exercise one of these options in order to avoid abandonment of the application. The Office, however, may combine such a notice with a requirement for restriction, in which case the applicant must make an election responsive to the restriction requirement and, if there are more than five independent claims or more than twenty-five total claims drawn to the elected invention, the applicant must also: (1) File an examination support document in compliance with § 1.265; or (2) amend the application such that it contains five or fewer independent claims and twenty-five or fewer total claims drawn to the elected invention. Thus, if such a notice is combined with a requirement for restriction, the applicant does not have the option of replying to such notice with a suggested restriction requirement under § 1.142(c).

With respect to the application of the changes to § 1.75 in this final rule to a reissue application, an examination support document under § 1.265 will not be required pursuant to § 1.75(b) in a reissue application if the reissue application does not seek to change the claims in the patent being reissued. A change in the claims in the patent being reissued is sought either by an amendment to or addition of a claim or claims, or by an amendment to the specification which changes a claim or claims.

*Section 1.76 (application data sheet):* Section 1.76(b)(5) is amended to refer to §§ 1.78(b)(3) and (d)(3) for consistency with the changes to § 1.78. Section 1.76(b)(5) is also amended to clarify that the relationship of the applications is not required for a benefit claim under 35 U.S.C. 119(e) and to delete "the status (including patent number if available)". Such information is not necessary for claiming the benefit of a prior-filed application under 35 U.S.C. 119(e), 120, 121, or 365(c).

*Section 1.78 (claiming benefit of earlier filing date and cross-references to other applications):* Section 1.78 is reorganized as follows: (1) § 1.78(a) defines "continuing application", "continuation application", "divisional application", and "continuation-in-part application"; (2) § 1.78(b) contains provisions relating to claims under 35 U.S.C. 119(e) for the benefit of a prior-filed provisional application; (3) § 1.78(c) contains provisions relating to delayed claims under 35 U.S.C. 119(e) for the benefit of a prior-filed provisional application; (4) § 1.78(d) contains provisions relating to claims under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed nonprovisional or international application; (5) § 1.78(e) contains provisions relating to delayed claims under 35 U.S.C. 120, 121, or 365(c) for

the benefit of a prior-filed nonprovisional or international application; (6) § 1.78(f) contains provisions relating to applications naming at least one inventor in common and containing patentably indistinct claims; (7) § 1.78(g) contains provisions relating to applications or patents under reexamination naming different inventors and containing patentably indistinct claims; (8) § 1.78(h) contains provisions pertaining to the treatment of parties to a joint research agreement under the CREATE Act; and § 1.78(i) provides that the time periods set forth in § 1.78 are not extendable.

Section 1.78(a)(1) defines a "continuing application" as a nonprovisional application or international application designating the United States of America that claims the benefit under 35 U.S.C. 120, 121, or 365(c) of a prior-filed nonprovisional application or international application designating the United States of America. Section 1.78(a)(1) provides that an application that does not claim the benefit under 35 U.S.C. 120, 121, or 365(c) of a prior-filed application, is not a continuing application even if the application claims the benefit under 35 U.S.C. 119(e) of a provisional application, claims priority under 35 U.S.C. 119(a)–(d) or 365(b) to a foreign application, or claims priority under 35 U.S.C. 365(a) or (b) to an international application designating at least one country other than the United States of America. A continuing application must be a continuation application, a divisional application, or a continuation-in-part application. See MPEP § 201.11 ("To specify the relationship between the applications, applicant must specify whether the application is a continuation, divisional, or continuation-in-part of the prior application. Note that the terms are exclusive. An application cannot be, for example, both a continuation and a divisional or a continuation and a continuation-in-part of the same application.").

Section 1.78(a)(2) defines a "divisional application" as a continuing application that discloses and claims only an invention or inventions that were disclosed and claimed in a prior-filed application, but were subject to a requirement to comply with the requirement of unity of invention under PCT Rule 13 or a requirement for restriction under 35 U.S.C. 121 in the prior-filed application, and were not elected for examination and were not examined in any prior-filed application. This definition is more precise than the definition of "divisional application" currently found in MPEP § 201.06.

MPEP § 201.06 defines a divisional application as an application for an independent and distinct invention, which discloses and claims only subject matter that was disclosed in the prior-filed nonprovisional application. Section 1.78(a)(2), however, limits the definition of "divisional application" to an application that claims only an invention or inventions that were subject to a requirement to comply with the requirement of unity of invention under PCT Rule 13 or a requirement for restriction under 35 U.S.C. 121 in the prior-filed application and not elected for examination and not examined in any prior-filed application. See 35 U.S.C. 121 ("[i]f two or more independent and distinct inventions are claimed in one application, the Director may require the application to be restricted to one of the inventions [and i]f the other invention is made the subject of a divisional application which complies with the requirements of [35 U.S.C.] 120 * * *."). The Office will revise the definition of divisional application in MPEP § 201.06 in the next revision of the MPEP. An application that claims the benefit of a prior-filed divisional application as defined in § 1.78(a)(2), and claims the same patentable invention as the prior-filed divisional application, would not be a divisional application as defined by § 1.78(a)(2). Instead, such an application would be a continuation application.

Section 1.78(a)(3) defines a "continuation application" as a continuing application as defined in § 1.78(a)(1) that discloses and claims only an invention or inventions that were disclosed in the prior-filed application. See MPEP § 201.07 (defines a continuation application as an application that discloses (or discloses and claims) only subject matter that was disclosed in the prior-filed nonprovisional application).

Section 1.78(a)(4) defines a "continuation-in-part application" as a continuing application as defined in § 1.78(a)(1) that discloses subject matter that was not disclosed in the prior-filed application. See MPEP § 201.08 (a continuation-in-part repeats some substantial portion or all of the earlier nonprovisional application and adds matter not disclosed in the prior-filed nonprovisional application).

Section 1.78(b) addresses claims under 35 U.S.C. 119(e) for the benefit of a prior-filed provisional application. Under 35 U.S.C. 119(e)(1), a provisional application must disclose the invention claimed in at least one claim of the later-filed application in the manner provided by 35 U.S.C. 112, ¶ 1, for the later-filed application to receive the benefit of the filing date of the provisional application. See New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co., 298 F.3d 1290, 1294, 63 U.S.P.Q.2d 1843, 1846 (Fed. Cir. 2002) (for a nonprovisional application to actually receive the benefit of the filing date of the provisional application, "the specification of the provisional [application] must 'contain a written description of the invention and the manner and process of making and using it, in such full, clear, concise, and exact terms,' 35 U.S.C. 112 ¶ 1, to enable an ordinarily skilled artisan to practice the invention claimed in the nonprovisional application"). Section 1.78(b), however, does not also state (as did former § 1.78(a)(4)) that the provisional application must disclose the invention claimed in at least one claim of the later-filed application in the manner provided by 35 U.S.C. 112, ¶ 1, because it is not necessary for the rules of practice to restate provisions of a statute.

Section 1.78(b)(1) provides that the nonprovisional application or international application designating the United States of America must be filed not later than twelve months after the date on which the provisional application was filed, and that this twelve-month period is subject to 35 U.S.C. 21(b) and § 1.7(a). 35 U.S.C. 21(b) and § 1.7(a) provide that when the day, or the last day, for taking any action (e.g., filing a nonprovisional application within twelve months of the date on which the provisional application was filed) or paying any fee in the Office falls on Saturday, Sunday, or a Federal holiday within the District of Columbia, the action may be taken, or fee paid, on the next succeeding secular or business day. Section 1.78(b) otherwise contains the provisions of former § 1.78(a)(4) and (a)(5).

Sections 1.78(b)(2) through (b)(5) contain the provisions of former 1.78(a)(4) and (a)(5). Section 1.78(c) contains provisions relating to delayed claims under 35 U.S.C. 119(e) for benefit of prior-filed provisional applications. Section 1.78(c) contains the provisions of former § 1.78(a)(6).

Section 1.78(d) contains provisions relating to claims under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed nonprovisional or international application.

Section 1.78(d)(1) provides conditions under which an application may claim the benefit under 35 U.S.C. 120, 121, or 365(c) and § 1.78 of a prior-filed nonprovisional application or international application designating the United States of America. Section 1.78(d)(1) also provides that the Office

**46730**   Federal Register / Vol. 72, No. 161 / Tuesday, August 21, 2007 / Rules and Regulations

will refuse to enter, or will delete if present, any specific reference to a prior-filed application that is not permitted by § 1.78(d)(1). If the claim for the benefit of a prior-filed nonprovisional application or international application designating the United States of America is not permitted by § 1.78(d)(1), the Office will refuse benefit. Section 1.78(d) also provides that the entry of or failure to delete a specific reference to a prior-filed application that is not permitted by § 1.78(d)(1) does not constitute a waiver of the provisions of § 1.78(d)(1). The grant of a petition under § 1.78(d)(1)(vi) or waiver of a requirement of § 1.78(d)(1) would be only by an explicit decision by an official who has been delegated the authority to decide such a petition or waiver. It would not occur by implication due to the entry of or failure to delete a specific reference to a prior-filed application that is not permitted by § 1.78(d)(1).

These provisions of § 1.78(d)(1) were included in the proposed changes to § 1.78(d)(3). *See Changes to Practice for Continuing Applications, Requests for Continued Examination Practice, and Applications Containing Patentably Indistinct Claims*, 71 FR at 54, 60, 1302 *Off. Gaz. Pat. Office* at 1323, 1328.

Section 1.78(d)(1)(i) provides for continuation applications or continuation-in-part applications that do not claim the benefit of a divisional application (either directly or indirectly). Section 1.78(d)(1)(i) permits such a continuation application or continuation-in-part application of a prior-filed nonprovisional application or international application designating the United States of America if: (1) The application is a continuation application as defined in § 1.78(a)(3) or a continuation-in-part application as defined in § 1.78(a)(4) that claims the benefit under 35 U.S.C. 120, 121, or 365(c) of no more than two prior-filed applications; and (2) any application whose benefit is claimed under 35 U.S.C. 120, 121, or 365(c) in such nonprovisional application has its benefit claimed in no more than one other nonprovisional application. This does not include any nonprovisional application that satisfies the conditions set forth in § 1.78(d)(1)(ii), (d)(1)(iii) or (d)(1)(vi).

Section 1.78(d)(1)(i) permits an applicant to continue prosecution of an application via two continuation applications (in parallel or serially), a continuation application and a continuation-in-part application (in parallel or serially), or two continuation-in-part applications (in parallel or serially). Applicants choosing to file applications (whether continuing or non-continuing) in parallel are reminded that § 1.75(b)(4) provides that, if certain conditions are met, the Office will treat each such application as having the total number of claims present in all of such applications for purposes of determining whether an examination support document is required by § 1.75(b). *See also* § 1.78(f) concerning additional provisions that are applicable if there are multiple applications that have the same claimed filing or priority date, substantial overlapping disclosure, a common inventor, and common assignee.

If an application is identified as a continuation-in-part application, however, § 1.78(d)(3) provides that the applicant must identify the claim or claims in the continuation-in-part application for which the subject matter is disclosed in the manner provided by 35 U.S.C. 112, ¶ 1, in the prior-filed application. *See* discussion of § 1.78(d)(3). Any claims in the continuation-in-part application that are not identified under § 1.78(d)(3) as supported by the prior-filed application will be subject to prior art based on the actual filing date of the continuation-in-part application.

For a continuation-in-part application that contains one or more claims for which the subject matter is not disclosed in the manner provided by 35 U.S.C. 112, ¶ 1, in the prior-filed application, § 1.78(d)(1)(i) will permit an applicant to continue prosecution of the claims that are directed solely to subject matter added in such continuation-in-part application via two continuation applications (or a continuation application and a continuation-in-part application, or two continuation-in-part applications). However, the "additional" continuation or continuation-in-part applications cannot claim the benefit of the prior-filed application relative to the first continuation-in-part application. The subject matter of at least one claim of a later-filed application must be disclosed in the prior-filed application in the manner provided by 35 U.S.C. 112, ¶ 1, for the later-filed application to actually receive the benefit of the filing date of the prior-filed application under 35 U.S.C. 120. *See Studiengesellschaft Kohle m.b.H. v. Shell Oil Co.*, 112 F.3d 1561, 1564–65, 42 U.S.P.Q.2d 1674, 1677–78 (Fed. Cir. 1997). In addition, the term of any resulting patent will be measured under 35 U.S.C. 154(a)(2) from the filing date of the prior-filed application, even if the later-filed application never receives any benefit from the prior-filed application. *See Abbott Labs. v. Novopharm Ltd.*, 104 F.3d 1305, 1309, 41 U.S.P.Q.2d 1535, 1537 (Fed. Cir. 1997) (rejecting patentee's argument that it should not be bound by the filing date of the prior-filed application because the later-filed application never received any actual benefit from the prior-filed application). Thus, the Office will not require that such "additional" continuation or continuation-in-part applications contain a showing that all of the claims are directed solely to subject matter added in the first continuation-in-part application. Rather, § 1.78(d)(1)(i) permits the "additional" continuation or continuation-in-part application to claim the benefit of the first continuation-in-part application, but does not permit the "additional" continuation or continuation-in-part application to also claim the benefit of the prior-filed initial application (the prior-filed application relative to the first continuation-in-part application). For example, consider an applicant who files: (1) An initial application "A"; (2) a first continuation-in-part application "B" that claims the benefit of application "A"; (3) a second continuation (or continuation-in-part) application "C" that claims the benefit of applications "B" and "A"; and (4) an additional continuation (or continuation-in-part) application "D" that claims the benefit of applications "C" and "B". Under § 1.78(d)(1)(i), application "D" may claim the benefit of application "C" and continuation-in-part application "B", but may not claim any benefit of application "A" (except as permitted under § 1.78(d)(1)(vi)).

Applicants are permitted to file two continuation or continuation-in-part applications (§ 1.78(d)(1)) and one request for continued examination (§ 1.114) without any justification. The provisions of § 1.78(d)(1) are independent of the provisions of § 1.114. Therefore, the filing of a request for continued examination does not preclude an applicant from filing two continuation or continuation-in-part applications. In addition, an applicant may not agree to forgo a continuation application (or continuation-in-part application) to obtain a second or third request for continued examination, nor can an applicant agree to forgo a request for continued examination in exchange for a third continuation or continuation-in-part application. For example, an applicant cannot file a second request for continued examination without any justification instead of filing one of the two permitted continuation applications; and an applicant cannot file three continuation applications

A09405