# EXHIBIT 6

Dockets.Justia.com

48    Federal Register / Vol. 71, No. 1 / Tuesday, January 3, 2006 / Proposed Rules

§ 31.6011(a)–1  Returns under Federal Insurance Contributions Act.

(a) * * *

(5) [The text of proposed § 31.6011(a)–1(a)(5) is the same as the text of § 31.6011(a)–1T(a)(5) published elsewhere in this issue of the Federal Register].

*    *    *    *    *

Par. 3. Section 31.6011(a)–4 is amended by revising paragraph (a)(4) to read as follows:

§ 31.6011(a)–4  Returns of income tax withheld.

(a) * * *

(4) [The text of proposed § 31.6011(a)–4(a)(4) is the same as the text of § 31.6011(a)–4T(a)(4) published elsewhere in this issue of the Federal Register].

*    *    *    *    *

Par. 4. Section 31.6302–1 is amended by revising paragraphs (b)(4), (c)(5) and 6, (d) *Example 6*, (f)(4), and (f)(5) *Example 3* to read as follows:

§ 31.6302–1  Federal tax deposit rules for withhold income taxes and taxes under the Federal Insurance Contributions Act (FICA) attributable to payments made after December 31, 1992.

*    *    *    *    *

(b) * * *

(4) * * *

(i) [The text of the proposed § 31.6302–1(b)(4)(i) is the same as the text of § 31.6302–1T(b)(4)(i) published elsewhere in this issue of the Federal Register].

(ii) [The text of the proposed § 31.6302–1(b)(4)(ii) is the same as the text of § 31.6302–1T(b)(4)(ii) published elsewhere in this issue of the Federal Register].

(c) * * *

(5) [The text of proposed § 31.6302–1(c)(5) is the same as the text of § 31.6302–1T(c)(5) published elsewhere in this issue of the Federal Register].

(6) [The text of proposed § 31.6302–1(c)(6 is the same as the text of § 31.6302–1T(c)(6) published elsewhere in this issue of the Federal Register].

(d) * * *

*Example 6.* [The text of proposed § 31.6302–1(d) *Example 6* is the same as the text of § 31.6302–1T(d) *Example 6* published elsewhere in this issue of the Federal Register].

*    *    *    *    *

(f) * * *

(4) *De minimis rule*—(i) *De minimis deposit rule for quarterly and annual return periods beginning on or after January 1, 2001.* If the total amount of accumulated employment taxes for the return period is *de minimis* and the amount is fully deposited or remitted

with a timely filed return for the return period, the amount deposited or remitted will be deemed to have been timely deposited. The total amount of accumulated employment taxes is *de minimis* if it is less than $2,500 for the return period or if it is *de minimis* pursuant to paragraph (f)(4)(ii) of this section.

(ii) *De minimis deposit rule for quarterly return periods.* For purposes of paragraph (f)(4)(i) of this section, if the total amount of accumulated employment taxes for the immediately preceding quarter was less than $2,500, unless paragraph (c)(3) of this section applies to require a deposit at the close of the next banking day, then the employer will be deemed to have timely deposited the employer's employment taxes for the current quarter if the employer complies with the time and method of payment requirements contained in paragraph (f)(4)(i) of this section.

(iii) [The text of proposed § 31.6302–1T(f)(4)(iii) is the same as the text of § 31.6302–1T(f)(4)(iii) published elsewhere in this issue of the Federal Register].

(5) * * *

*Example 3.* [The text of proposed § 31.6302–1(f)(5) *Example 3* is the same as the text of § 31.6302–1T(f)(5) *Example 3* published elsewhere in this issue of the Federal Register]

*    *    *    *    *

Mark E. Matthews,

*Deputy Commissioner for Services and Enforcement.*

[FR Doc. 05–24563 Filed 12–30–05; 8:45 am]

BILLING CODE 4830–01–P

## DEPARTMENT OF COMMERCE

### Patent and Trademark Office

### 37 CFR Part 1

[Docket No.: 2005–P–066]

RIN 0651–AB93

### Changes To Practice for Continuing Applications, Requests for Continued Examination Practice, and Applications Containing Patentably Indistinct Claims

AGENCY: United States Patent and Trademark Office, Commerce.

ACTION: Notice of proposed rule making.

SUMMARY: Continued examination practice, including the use of both continuing applications and requests for continued examination, permits applicants to obtain further examination and advance an application to final

agency action. This practice allow applicants to craft their claims in light of the examiner's evidence and arguments, which in turn may lead to well-designed claims that give the public notice of precisely what the applicant regards as his or her invention. However, each continued examination filing, whether a continuing application or request for continued examination, requires the United States Patent and Trademark Office (Office) to delay taking up a new application and thus contributes to the backlog of unexamined applications before the Office. In addition, current practice allows an applicant to generate an unlimited string of continued examination filings from an initial application. In such a string of continued examination filings, the exchange between examiners and applicants becomes less beneficial and suffers from diminishing returns as each of the second and subsequent continuing applications or requests for continued examination in a series is filed. Moreover, the possible issuance of multiple patents arising from such a process tends to defeat the public notice function of patent claims in the initial application.

The Office is making every effort to become more efficient, to ensure that the patent application process promotes innovation, and to improve the quality of issued patents. With respect to continued examination practice, the Office is proposing to revise the patent rules of practice to better focus the application process. The revised rules would require that second or subsequent continued examination filings, whether a continuation application, a continuation-in-part application, or a request for continued examination, be supported by a showing as to why the amendment, argument, or evidence presented could not have been previously submitted. It is expected that these rules will make the exchange between examiners and applicants more efficient and effective. The revised rules should also improve the quality of patents, making them easier to evaluate, enforce, and litigate. Moreover, under the revised rules patents should issue sooner, thus giving the public a clearer understanding of what is patented.

The revised rules would also ease the burden of examining multiple applications that have the same effective filing date, overlapping disclosure, a common inventor, and common assignee by requiring that all patentably indistinct claims in such applications be submitted in a single application.

The changes proposed in this notice will also allow the Office to focus its patent examining resources on new applications instead of multiple continued examination filings that contain amendments or evidence that could have been submitted earlier, and thus allow the Office to reduce the backlog of unexamined applications. This will mean faster and more effective examination for the vast majority of applicants without any additional work on the applicant's part. Additional resources would be devoted to multiple continued examination filings only where necessary.

*Comment Deadline Date:* To be ensured of consideration, written comments must be received on or before May 3, 2006. No public hearing will be held.

**ADDRESSES:** Comments should be sent by electronic mail message over the Internet addressed to *AB93Comments@uspto.gov.* Comments may also be submitted by mail addressed to: Mail Stop Comments—Patents, Commissioner for Patents, P.O. Box 1450, Alexandria, VA, 22313–1450, or by facsimile to (571) 273–7735, marked to the attention of Robert W. Bahr. Although comments may be submitted by mail or facsimile, the Office prefers to receive comments via the Internet. If comments are submitted by mail, the Office prefers that the comments be submitted on a DOS formatted 3½ inch disk accompanied by a paper copy.

Comments may also be sent by electronic mail message over the Internet via the Federal eRulemaking Portal. See the Federal eRulemaking Portal Web site (*http://www.regulations.gov*) for additional instructions on providing comments via the Federal eRulemaking Portal.

The comments will be available for public inspection at the Office of the Commissioner for Patents, located in Madison East, Tenth Floor, 600 Dulany Street, Alexandria, Virginia, and will be available via the Office Internet Web site (*address: http://www.uspto.gov*). *Because comments will be made available for public inspection, information that is not desired to be made public, such as an address or phone number, should not be included in the comments.*

**FOR FURTHER INFORMATION CONTACT:** Robert W. Bahr, Senior Patent Attorney, Office of the Deputy Commissioner for Patent Examination Policy, by telephone at (571) 272–8800, by mail addressed to: Mail Stop Comments—Patents, Commissioner for Patents, P.O. Box 1450, Alexandria, VA, 22313–1450, or

by facsimile to (571) 273–7735, marked to the attention of Robert W. Bahr.

**SUPPLEMENTARY INFORMATION:** The current volume of continued examination filings—including both continuing applications and requests for continued examination—and duplicative applications that contain "conflicting" or patentably indistinct claims, are having a crippling effect on the Office's ability to examine "new" (*i.e.,* non-continuing) applications. The cumulative effect of these continued examination filings is too often to divert patent examining resources from the examination of new applications to new technology and innovations, to the examination of applications that have already been examined, have issued as patents, or have been abandoned. In addition, when the continued examination process fails to reach a final resolution, and when multiple applications containing claims to patentably indistinct inventions are filed, the public is left uncertain as to what the set of patents resulting from the initial application will cover. Thus, these practices impose a burden on innovation both by retarding the Office's ability to examine new applications and by undermining the function of claims to notify the public as to what technology is or is not available for use.

Commentators have noted that the current unrestricted continuing application and request for continued examination practices preclude the Office from ever finally rejecting an application or even from ever finally allowing an application. *See* Mark A. Lemley and Kimberly A. Moore, *Ending Abuse of Patent Continuations,* 84 B.U. L. Rev. 63, 64 (2004). The burdens imposed by the repetitive filing of applications (as continuing applications) on the Office (as well as on the public) is not a recent predicament. *See To Promote the Progress of Useful Arts, Report of the President's Commission on the Patent System,* at 17–18 (1966) (recommending changes to prevent the repetitive filing of dependent (*i.e.,* continuing) applications). Unrestricted continued examination filings and multiple applications containing patentably indistinct claims, however, are now having such an impact on the Office's ability to examine new applications that it is now appropriate for the Office to clarify the applicant's duty to advance the application to final action by placing some restrictions on the filing of multiple continuing applications, requests for continued examination, and other multiple applications to the same invention. *See* 35 U.S.C. 2(b) (authorizes

the Office to establish regulations, not inconsistent with law, which shall govern the conduct of proceedings in the Office, and shall facilitate and expedite the processing of patent applications). This would permit the Office to apply the patent examining resources currently absorbed by these applications to the examination of new applications and thereby reduce the backlog of unexamined applications.

The Office also notes that not every applicant comes to the Office prepared to particularly point out and distinctly claim what the applicant regards as his invention, for example, where the applicant's attorney or agent has not adequately reviewed or revised the application documents (often a literal translation) received from the applicant. In these situations examination of what applicants actually regard as their invention may not begin until after one or more continued examination filings. Applicants should not rely on an unlimited number of continued examination filings to correct deficiencies in the claims and disclosure that applicant or applicant's representative have not adequately reviewed. In addition, a small minority of applicants have misused continued examination practice with multiple continued examination filings in order to simply delay the conclusion of examination. This skirts applicant's duty to make a *bona fide* attempt to advance the application to final agency action and impairs the ability of the Office to examine new and existing applications. It also prejudices the public by permitting applicants to keep applications in pending status while awaiting developments in similar or parallel technology and then later amending the pending application to cover the developments. The courts have permitted the addition of such claims, when supported under 35 U.S.C. 112, ¶ 1, to encompass products or processes discovered in the marketplace. *See PIN/NIP, Inc.,* v. *Platt Chemical Co.,* 304 F.3d 1235, 1247, 64 USPQ2d 1344, 1352 (Fed. Cir. 2002). However, the practice of maintaining continuing applications for the purpose of adding claims after such discoveries is not calculated to advance prosecution before the Office.

The Office, in light of its backlog and anticipated continued increase in applications is making every effort to become more efficient. Achieving greater efficiency requires the cooperation of those who provide the input into the examination process, the applicants and their representatives. With respect to continued examination practice, the Office is proposing to

50          Federal Register / Vol. 71, No. 1 / Tuesday, January 3, 2006 / Proposed Rules

revise the rules of practice to assure that multiple continued examination filings from a single application do not absorb agency resources unless necessary for effective examination. The revised rules would require that second or subsequent continuation or continuation-in-part applications and second or subsequent requests for continued examination of an application include a showing as to why the amendment, argument, or evidence presented could not have been previously submitted. It is expected that these rules will make the exchange between examiners and applicants more efficient, get claims to issue faster, and improve the quality of issued patents. The revised rules would also ease the burden of examining multiple applications that have the same effective filing date, overlapping disclosure, a common inventor, and common assignee by requiring that all patentably indistinct claims in such applications be submitted in a single application absent good and sufficient reason.

The Office's Patent Application Locating and Monitoring (PALM) records show that, in fiscal year 2005, the Office received approximately 317,000 nonprovisional applications, and that about 62,870 of these nonprovisional applications were continuing applications. In addition, the Office's PALM records show that the Office received about 52,750 requests for continued examination in fiscal year 2005. Thus, about thirty percent (63,000 + 52,000)/(317,000 + 52,000) of the Office's patent examining resources must be applied to examining continued examination filings that require reworking earlier applications instead of examining new applications.

In comparison, the Office issued over 289,000 first Office actions on the merits in fiscal year 2005. Had there been no continued examination filings, the Office could have issued an action for every new application received in 2005 and reduced the backlog by issuing actions in 35,000 older cases. Instead, the Office's backlog grew because of the large number of continued examination filings.

Thus, current continued examination practice and the filing of multiple applications containing patentably indistinct claims are impairing the Office's ability to examine new applications without real certainty that these practices effectively advance prosecution, improve patent quality, or serve the typical applicant or the public. These proposed changes to the rules in title 37 of the Code of Federal Regulations (CFR) are intended to ensure that continued examination

filings are used efficiently to move applications forward. The Office expects that the new rules will lead to more focused and efficient examination, improve the quality of issued patents, result in patents that issue faster, and give the public earlier notice of just what patentees claim. The changes to the rules also address the growing practice of filing (by a common applicant or assignee) of multiple applications containing patentably indistinct claims.

Of the roughly 63,000 continuing applications filed in fiscal year 2005, about 44,500 were designated as continuation/continuation-in-part (CIP) applications, and about 18,500 were designated as divisional applications. About 11,800 of the continuation/CIP applications were second or subsequent continuation/CIP applications. Of the over 52,000 requests for continued examination filed in fiscal year 2005, just under 10,000 were second or subsequent requests for continued examination. Thus, the Office's proposed requirements for seeking second and subsequent continuations will not have an effect on the vast majority of patent applications.

35 U.S.C. 111(a) and 120, respectively, permit an applicant to file a nonprovisional application and to claim the benefit of a prior-filed nonprovisional application. Similarly, 35 U.S.C. 363 and 365(c), respectively, permit an applicant to file an international application under Patent Cooperation Treaty (PCT) Article 11 and 35 U.S.C. 363 and, if the international application designates the United States of America, claim the benefit of a prior-filed international application designating the United States of America or a prior-filed nonprovisional application. Similarly again, 35 U.S.C. 111(a) and 365(c) permit an applicant to file a nonprovisional application (filed under 35 U.S.C. 111(a)) and claim the benefit of a prior-filed international application designating the United States of America (under 35 U.S.C. 365(c)).

The practice of filing "continuation applications" arose early in Office practice mainly as a procedural device to effectively permit the applicant to amend an application after rejection and receive an examination of the "amended" (or new) application. See In re Bogese, 22 USPQ2d 1821, 1824 (Comm'r Pats. 1991) (Bogese I). The concept of a continuation application per se was first recognized in Godfrey v. Eames, 68 U.S. (1 Wall.) 317, 325–26 (1864). See Bogese I, 22 USPQ2d at 1824. 35 U.S.C. 120 is a codification of the continuation application practice

recognized in Godfrey v. Eames. See id (citing In re Hogan, 559 F.2d 595, 603, 194 USPQ 527, 535 (CCPA 1977)).

Applicants should understand, however, that there is not an unfettered right to file multiple continuing applications without making a bona fide attempt to claim the applicant's invention. See In re Bogese, 303 F.3d 1362, 64 USPQ2d 1448 (Fed. Cir. 2002) (Bogese II). While Bogese II was an extreme case, one of prosecution laches, it makes clear that applicants face a general requirement of good faith in prosecution and that the Director has the inherent authority, rooted in 35 U.S.C. 2, to ensure that applicants comply with that duty. See Bogese II, 303 F.3d at 1368 n.5, 64 USPQ2d at 1452 n.5.

The proposed rules are not an attempt to codify Bogese II or to simply combat such extreme cases of prosecutions laches. Nor do these rules set a per se limit on the number of continuing applications. Compare In re Henriksen, 399 F.2d 253, 158 USPQ 224 (CCPA 1968). Rather, they require that applicants who file multiple continuing applications from the same initial application show that the third and following applications in the chain are necessary to advance prosecution. In particular, the proposed rules require that any second or subsequent continuing application show to the satisfaction of the Director that the amendment, argument, or evidence could not have been submitted during the prosecution of the initial application or the first continuing application.

The Office is aware of case law which suggests that the Office has no authority to place an absolute limit on the number of copending continuing applications originating from an original application. See In re Hogan, 559 F.2d at 603–05, 194 USPQ at 565–66; and Henriksen, 399 F.2d at 262, 158 USPQ at 231. The Office does not attempt that here. No limit is placed on the number of continuing applications. Rather applicants are required to show that later-filed applications in a multiple-continuing chain are necessary to claim the invention—and do not contain unnecessarily delayed evidence, arguments, or amendments that could have been presented earlier. In addition, in those earlier cases the Office had not promulgated any rules, let alone given the public adequate notice of, or an opportunity to respond to, the ad hoc limits imposed. See Henriksen, at 399 F.2d at 261–62, 158 USPQ at 231 (characterizing the action of the Office as akin to a retroactive rule change that had no support in the rules of practice or Manual of Patent Examining

*Procedure*). Furthermore, the Court in *Bogese II* rejected the view that its previous case law (*e.g., Henriksen*) stood for the broad proposition that 35 U.S.C. 120 gave applicants *carte blanche* to prosecute continuing applications in any desired manner. *See Bogese II*, 303 F.3d at 1368 n.5, 64 USPQ2d at 1452 n.5.

35 U.S.C. 132(b) provides for the request for continued examination practice set forth in § 1.114. Unlike continuation application practice, the request for continued examination practice was recently added to title 35, U.S.C., in section 4403 of the American Inventors Protection Act of 1999. *See* Pub. L. 106–113, 113 Stat. 1501, 1501A–560 (1999). 35 U.S.C. 132(b) provides (*inter alia*) that the Office "shall prescribe regulations to provide for the continued examination of applications for patent at the request of the applicant." Nothing in 35 U.S.C. 132(b) or its legislative history suggests that the Office must or even should permit an applicant to file an unlimited number of requests for continued examination in an application. Therefore, the Office is proposing rules that allow applicants to file their first request for continued examination without any justification, but require applicants to justify the need for any further requests for continued examination in light of the past prosecution.

The Office appreciates that appropriate continued examination practice permits an applicant to obtain further examination and advance an application to final action. The current unrestricted continued examination practice, however, does not provide adequate incentives to assure that the exchanges between an applicant and the examiner during the examination process are efficient. The marginal value vis-a-vis the patent examination process as a whole of exchanges between an applicant and the examiner during the examination process tends to decrease after the first continued examination filing. The Office resources absorbed by the examination of a second or subsequent continued examination filing are diverted away from the examination of new applications, thus increasing the backlog of unexamined applications. Therefore, the Office is proposing to require that an applicant filing a second or subsequent continuing application or second or subsequent request for continued examination include a showing as to why the amendment, argument, or evidence could not have been previously submitted.

The Office also appreciates that applicants sometimes use continued

examination practice to obtain further examination rather than file an appeal to avoid the delays that historically have been associated with the appeal process. The Office, however, has taken major steps to eliminate such delays. The Board of Patent Appeals and Interferences (BPAI) has radically reduced the inventory of pending appeals from 9,201 at the close of fiscal year 1997 to 882 at the close of fiscal year 2005. The Office has also adopted an appeal conference program to review the rejections in applications in which an appeal brief has been filed to ensure that an appeal will not be forwarded to the BPAI for decision absent the concurrence of experienced examiners. *See Manual of Patent Examining Procedure* section 1208 (8th ed. 2001) (Rev. 3, August 2005) (MPEP). The Office is also in the process of adopting a pre-brief appeal conference program to permit an applicant to request that a panel of examiners review the rejections in his or her application prior to the filing of an appeal brief. *See New Pre-Appeal Brief Conference Program*, 1296 *Off. Gaz. Pat. Office* 67 (July 12, 2005). These programs provide for a relatively expeditious review of rejections in an application under appeal. Thus, for an applicant faced with a rejection that he or she feels is improper from a seemingly stubborn examiner, the appeal process offers a more effective resolution than seeking further examination before the examiner.

Efficient examination also requires that applicants share some of the burden of examination when they file multiple applications containing "conflicting" or patentably indistinct claims. The rules of practice currently provide that "[w]here two or more applications filed by the same applicant contain conflicting claims, elimination of such claims from all but one application may be required in the absence of good and sufficient reason for their retention during pendency in more than one application." *See* current § 1.78(b). The Office is proposing to revise this rule so that, when an applicant (or assignee) files multiple applications with the same effective filing date, a common inventor and overlapping disclosures, the Office will presume that the applications contain patentably indistinct claims. In such a situation, the applicant must either rebut this presumption by explaining to the satisfaction of the Director how the applications contain only patentably distinct claims, or submit the appropriate terminal disclaimers and explain to the satisfaction of the Director why two or more pending

applications containing "conflicting" or patentably indistinct claims should be maintained. The effect of this proposed rule will be to share the burden of examining multiple applications, with overlapping disclosure, a common inventor, and the same filing date, for double patenting.

Double patenting exists because a party (or parties to a joint research agreement under the Cooperative Research and Technology Enhancement Act of 2004 (CREATE Act), Public Law 108–453, 118 Stat. 3596 (2004)) has filed multiple patent applications containing patentably indistinct claims. The applicant (or the owner of the application) is in a far better position than the Office to determine whether there are one or more other applications or patents containing patentably indistinct claims. For this reason, where an applicant chooses to file multiple applications that are substantially the same, it will be the applicant's responsibility to assist the Office in resolving potential double patenting situations rather than taking no action until faced with a double patenting rejection.

Finally, the Office has a first action final rejection practice under which the first Office action in a continuing application may be made final under certain circumstances. See MPEP § 706.07(b). If the changes proposed in this notice are adopted, the Office will discontinue this practice as no longer necessary in continuing applications under 35 U.S.C. 120, 121, or 365(c) and in requests for continued examination under 35 U.S.C. 132(b). The Office, however, does not plan any change to the final action practice for the Office action following a submission under § 1.129(a). *See Changes to the Transitional Procedures for Limited Examination After Final Rejection in Certain Applications Filed Before June 8, 1995*, 70 FR 24005 (May 6, 2005), 1295 *Off. Gaz. Pat. Office* 22 (Jun. 7, 2005).

## Discussion of Specific Rules

Title 37 of the Code of Federal Regulations, Part 1, is proposed to be amended as follows:

*Section 1.78:* Section 1.78 is proposed to be reorganized as follows: (1) § 1.78(a) contains definitions of continuing application, continuation application, divisional application, and continuation-in-part application; (2) § 1.78(b) contains provisions relating to claims under 35 U.S.C. 119(e) for the benefit of a prior-filed provisional application; (3) § 1.78(c) contains provisions relating to delayed claims under 35 U.S.C. 119(e) for the benefit of

52          Federal Register / Vol. 71, No. 1 / Tuesday, January 3, 2006 / Proposed Rules

a prior-filed provisional application; (4) § 1.78(d) contains provisions relating to claims under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed nonprovisional or international application; (5) § 1.78(e) contains provisions relating to delayed claims under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed nonprovisional or international application; (6) § 1.78(f) contains provisions relating to applications naming at least one inventor in common and containing patentably indistinct claims; (7) § 1.78(g) contains provisions relating to applications or patents under reexamination having different inventors and containing patentably indistinct claims; and (8) § 1.78(h) contains provisions pertaining to the treatment of parties to a joint research agreement under the CREATE Act.

Proposed 1.78(a)(1) defines a "continuing application" as a nonprovisional or international application designating the United States of America that claims the benefit under 35 U.S.C. 120, 121, or 365(c) of a prior-filed nonprovisional application or international application designating the United States of America. Proposed 1.78(a)(1) further provides that an application that does not claim the benefit under 35 U.S.C. 120, 121, or 365(c) of a prior-filed application, is not a continuing application even if the application claims the benefit under 35 U.S.C. 119(e) of a provisional application, claims priority under 35 U.S.C. 119(a)– (d) or 365(c) to a foreign application, or claims priority under 35 U.S.C. 365(a) or (b) to an international application designating at least one country other than the United States of America. A continuing application must be one of a continuation application, a divisional application, or a continuation-in-part application. See MPEP § 201.11 ("To specify the relationship between the applications, applicant must specify whether the application is a continuation, divisional, or continuation-in-part of the prior application. Note that the terms are exclusive. An application cannot be, for example, both a continuation and a divisional or a continuation and a continuation-in-part of the same application.").

Proposed 1.78(a)(2) defines a "continuation application" as a continuing application as defined in § 1.78(a)(1) that discloses and claims only an invention or inventions that were disclosed in the prior-filed application. See MPEP § 201.07 (defines a continuation application as an application that discloses (or discloses

and claims) only subject matter that was disclosed in the prior-filed nonprovisional application).

Proposed § 1.78(a)(3) defines a "divisional application" as a continuing application as defined in § 1.78(a)(1) that discloses and claims only an invention or inventions that were disclosed and claimed in the prior-filed application, but were subject to a requirement of unity of invention under PCT Rule 13 or a requirement for restriction under 35 U.S.C. 121 and not elected for examination in the prior-filed application. MPEP § 201.06 defines a divisional application as an application for an independent and distinct invention, which discloses and claims only subject matter that was disclosed in the prior-filed nonprovisional application. Proposed § 1.78(a)(3), however, limits a the definition of "divisional application" to an application that claims only an invention or inventions that were subject to a requirement of unity of invention under PCT Rule 13 or a requirement for restriction under 35 U.S.C. 121 and not elected for examination in the prior-filed application. See 35 U.S.C. 121 ("[i]f two or more independent and distinct inventions are claimed in one application, the Director may require the application to be restricted to one of the inventions [and i]f the other invention is made the subject of a divisional application which complies with the requirements of [35 U.S.C.] 120 * * *").

Proposed § 1.78(a)(4) defines a "continuation-in-part application" as a continuing application as defined in § 1.78(a)(1) that discloses subject matter that was not disclosed in the prior-filed application. See MPEP § 201.08 (a continuation-in-part repeats some substantial portion or all of the earlier nonprovisional application and adds matter not disclosed in the prior-filed nonprovisional application).

Proposed § 1.78(b) contains provisions relating to claims under 35 U.S.C. 119(e) for the benefit of a prior-filed provisional application. 35 U.S.C. 119(e)(1) requires that a provisional application disclose the invention claimed in at least one claim of the later-filed application in the manner provided by 35 U.S.C. 112, ¶ 1, for the later-filed application to actually receive the benefit of the filing date of the provisional application. See New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co., 298 F.3d 1290, 1294, 63 USPQ2d 1843, 1846 (Fed. Cir. 2002) (for a nonprovisional application to actually receive the benefit of the filing date of the provisional application, "the

specification of the provisional [application] must 'contain a written description of the invention and the manner and process of making and using it, in such full, clear, concise, and exact terms,' 35 U.S.C. 112 ¶ 1, to enable an ordinarily skilled artisan to practice the invention claimed in the nonprovisional application"). Proposed § 1.78(b), however, does not also state (as does current § 1.78(a)(4)) that the provisional application discloses the invention claimed in at least one claim of the later-filed application in the manner provided by 35 U.S.C. 112, ¶ 1, because: (1) It is not necessary for the ⁹ rules of practice to restate provisions of statute; and (2) the Office does not require or check for such a disclosure as a condition of permitting an application to claim the benefit of the filing date of a provisional application.

Proposed § 1.78(b) also provides that the nonprovisional application or international application designating the United States of America must be filed not later than twelve months after the date on which the provisional application was filed (35 U.S.C. 119(e)), and that this twelve-month period is subject to 35 U.S.C. 21(b) and § 1.7(a) (proposed § 1.78(b)(1)). 35 U.S.C. 21(b) and § 1.7(a) provide that when the day, or the last day, for taking any action (e.g., filing a nonprovisional application within twelve months of the date on which the provisional application was filed) or paying any fee in the Office falls on Saturday, Sunday, or a Federal holiday within the District of Columbia, the action may be taken, or fee paid, on the next succeeding secular or business day. Proposed § 1.78(b) otherwise contains the provisions of current § 1.78(a)(4) and (a)(5) (with the changes in Provisions for Claiming the Benefit of a Provisional Application with a Non-English Specification and Other Miscellaneous Matters, 70 FR 56119 (Sept. 26, 2005), 1299 Off. Gaz. Pat. Office 142 (Oct. 25, 2005) (final rule)).

Proposed § 1.78(c) contains provisions relating to delayed claims under 35 U.S.C. 119(e) for the benefit of a prior-filed provisional application. Proposed § 1.78(c) contains the provisions of current § 1.78(a)(6).

Proposed § 1.78(d) contains provisions relating to claims under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed nonprovisional or international application.

Proposed § 1.78(d)(1) provides certain conditions under which an application may claim the benefit of a prior-filed nonprovisional application or international application designating the United States of America under 35 U.S.C. 120, 121, or 365(c) and § 1.78.

A00014

The Office will refuse to enter, or will delete if already present, any specific reference to a prior-filed application that is not permitted by § 1.78(d)(1) (*i.e.,* any claim for the benefit of a prior-filed nonprovisional application or international application designating the United States of America that does not meet one of the conditions specified in §§ 1.78(d)(1)(i) through 1.78(d)(1)(iii) and in which a petition under § 1.78(d)(1)(iv) either has not been filed or is not granted). If the claim for the benefit of a prior-filed nonprovisional application or international application designating the United States of America is not permitted by § 1.78(d)(1), the Office will refuse any benefit under 35 U.S.C. 120, 121, or 365(c) and § 1.78 of the prior-filed nonprovisional application or international application designating the United States of America during proceedings before the Office.

Proposed § 1.78(d)(1) provides that a nonprovisional application that is a continuation application as defined in § 1.78(a)(2) or a continuation-in-part application as defined in § 1.78(a)(4) may claim the benefit under 35 U.S.C. 120, 121, or 365(c)) of only a single prior-filed application, if the benefit of such prior-filed application is not claimed in any other nonprovisional application other than a divisional application in compliance with § 1.78(d)(1)(ii), and no request for continued examination under § 1.114 has been filed in the prior-filed application (proposed § 1.78(d)(1)(i)). This provision will permit an applicant to continue prosecution of an application (other than a continuing application) via a continuation or continuation-in-part application as an alternative to a request for continued examination under § 1.114 (in the event that the prior-filed application is a design application, the applicant needs to add or claim subject matter not disclosed in the prior-filed application, or the applicant has other reasons for preferring a continuation or continuation-in-part application over a request for continued examination under § 1.114).

Proposed § 1.78(d)(1)(i) will also permit an applicant to continue prosecution of claims in a continuation-in-part application (via a "further" continuation or continuation-in-part application) that are directed solely to subject matter added in a "first" continuation-in-part application (provided that the "further" continuation or continuation-in-part application does not also claim the benefit of the prior-filed application relative to the "first" continuation-in-

part application). At least one claim of a later-filed application must be disclosed in the prior-filed application in the manner provided by 35 U.S.C. 112, ¶ 1, for the later-filed application to actually receive the benefit of the filing date of the prior-filed application (35 U.S.C. 120), and the term of any resulting patent will be measured under 35 U.S.C. 154(a)(2) from the filing date of the prior-filed application, even if the later-filed application never receives any benefit from the prior-filed application. *See Abbott Lab.* v. *Novopharm Ltd.,* 104 F.3d 1305, 1309, 41 USPQ2d 1535, 1537 (Fed. Cir. 1997). Thus, the Office is not proposing to require that such "further" continuation or continuation-in-part application contain a showing that all of the claims are directed solely to subject matter added in the "first" continuation-in-part application. Rather, proposed § 1.78(d)(1)(i) permits the "further" continuation or continuation-in-part application to claim the benefit of the first continuation-in-part application, but does not permit the "further" continuation or continuation-in-part application to also claim the benefit of the prior-filed initial application (the prior-filed application relative to the first continuation-in-part application). For example, consider an applicant who files: (1) An initial application, "A": (2) a continuation-in-part application, "B," claiming the benefit of application A; and (3) a "further" continuation or continuation-in-part application "C," claiming the benefit of application B. Under proposed 1.78(d)(1), application C could not claim any benefit from application A (except as permitted under proposed § 1.78(d)(1)(iv)).

Proposed § 1.78(d)(1)(i) will also permit an applicant whose application (other than a continuing application) contains rejected claims and allowed claims to obtain a patent on the allowed claims and continue prosecution of the rejected or other claims in a continuation or continuation-in-part application.

Proposed § 1.78(d)(1) also provides that a nonprovisional application that is a divisional application as defined in § 1.78(a)(3)) may claim the benefit under 35 U.S.C. 120, 121, or 365(c)) of only a single prior-filed application, if the prior-filed application was subject to a requirement of unity of invention under PCT Rule 13 or a requirement for restriction under 35 U.S.C. 121, and the divisional application contains only claims directed to an invention or inventions that were identified in such requirement of unity of invention or for restriction but were not elected for examination in the prior-filed

application (proposed § 1.78(d)(1)(ii)). This will permit an applicant to obtain examination of claims that were withdrawn from consideration in the prior-filed application due to a requirement of unity of invention under PCT Rule 13 or a requirement for restriction under 35 U.S.C. 121. Proposed § 1.78(d)(1)(ii) permits "involuntary" divisional applications (a continuing application filed as a result of a requirement of unity of invention under PCT Rule 13 or requirement for restriction under 35 U.S.C. 121 in the prior-filed application), but does not permit "voluntary divisional" applications (a continuing application not filed as a result of a requirement of unity of invention under PCT Rule 13 or requirement for restriction under 35 U.S.C. 121 in the prior-filed application).

Proposed § 1.78(d)(1) also provides that a nonprovisional application that is either a continuation application as defined in § 1.78(a)(2) or a continuation-in-part application as defined in § 1.78(a)(4) may claim the benefit under 35 U.S.C. 120, 121, or 365(c)) of only either a single divisional application in compliance with § 1.78(d)(1)(ii) and the prior-filed application whose benefit is claimed in such single divisional application, if no request for continued examination under § 1.114 has been filed in the prior-filed divisional application (proposed § 1.78(d)(1)(iii)). This provision will permit an applicant to continue prosecution of a divisional application via a single continuation application or continuation-in-part application as an alternative to a request for continued examination under § 1.114. Proposed § 1.78(d)(1)(iii), however, would not allow an applicant to file more than a single continuation application or continuation-in-part application of a divisional application as of right. Proposed § 1.78(d)(1)(iii) will also permit an applicant whose divisional application contains rejected claims and allowed claims to obtain a patent on the allowed claims, and continue prosecution of the rejected or other claims in a single continuation or continuation-in-part application.

Proposed § 1.78(d)(1) also provides that a continuing nonprovisional application that is filed to obtain consideration of an amendment, argument, or evidence that could not have been submitted during the prosecution of the prior-filed application may claim the benefit under 35 U.S.C. 120, 121, or 365(c) of such prior-filed application (proposed § 1.78(d)(1)(iv)). Proposed § 1.78(d)(1)(iv) specifically provides that such a continuing nonprovisional

application must have filed therein a petition accompanied by the fee set forth in § 1.17(f) and a showing to the satisfaction of the Director that the amendment, argument, or evidence could not have been submitted during the prosecution of the prior-filed application. This will permit an applicant to continue prosecution of an application via a continuing application to obtain consideration of an amendment, argument, or evidence that could not have been submitted during the prosecution of the prior-filed application. Applicants are permitted to submit any desired amendment, argument, or evidence after the first Office action in the prior-filed application, and are further permitted to file either a single continuation or continuation-in-part application (proposed §§ 1.78(d)(1)(i) and 1.78(d)(1)(iii)) or a single request for continued examination under § 1.114 to submit any desired amendment, argument, or evidence before or after the first Office action in the continuation or continuation-in-part application or request for continued examination under § 1.114. Since multiple opportunities are given to submit any desired amendment, argument, or evidence, that an amendment, argument, or evidence is refused entry because prosecution in the prior-filed application is again closed (after the filing of a continuation or continuation-in-part application (proposed §§ 1.78(d)(1)(i) and 1.78(d)(1)(iii)) or a request for continued examination under § 1.114) will not by itself be a sufficient reason to warrant the grant of a petition under § 1.78(d)(1)(iv). Rather, an applicant will be expected to demonstrate why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the prior-filed application. Proposed § 1.78(d)(1)(iv) also sets forth the time period within which such a petition must be provided: (1) If the later-filed continuing application is an application filed under 35 U.S.C. 111(a), within four months from the actual filing date of the later-filed application; and (2) if the later-filed continuing application is a nonprovisional application which entered the national stage from an international application after compliance with 35 U.S.C. 371, within four months from the date on which the national stage commenced under 35 U.S.C. 371(b) or (f) in the later-filed international application.

Proposed § 1.78(d) also provides that the Office will refuse to enter, or will delete if present, any specific reference

to a prior-filed application that is not permitted by proposed § 1.78(d) (proposed § 1.78(d)(3)). If the claim for the benefit of a prior-filed nonprovisional application or international application designating the United States of America is not permitted by § 1.78(d)(1), the Office will refuse any benefit under 35 U.S.C. 120, 121, or 365(c) and § 1.78 of the prior-filed nonprovisional application or international application designating the United States of America during proceedings before the Office. Proposed § 1.78(d) also provides that the entry of or failure to delete a specific reference to a prior-filed application that is not permitted by § 1.78(d)(1) does not constitute a waiver of the provisions of § 1.78(d)(1). The grant of a petition under § 1.78(d)(1)(iv) or waiver of a requirement of § 1.78(d)(1) would be only by an explicit decision by the Office, and would not occur by implication due to the entry of or failure to delete a specific reference to a prior-filed application that is not permitted by § 1.78(d)(1).

Proposed § 1.78(d)(3) also includes the parenthetical "(i.e., whether the later-filed application is a continuation, divisional, or continuation-in-part of the prior-filed nonprovisional application or international application)" to clarify in the rules of practice what is meant by the requirement that an applicant identify (currently stated as indicate) the relationship of the applications. See MPEP § 201.11. Proposed § 1.78(d)(3) also provides that if an application is identified as a continuation-in-part application, the applicant must identify which claim or claims in the continuation-in-part application are disclosed in the manner provided by 35 U.S.C. 112, ¶ 1, in the prior-filed application. Any claim in the continuation-in-part application that is not identified as being disclosed in the manner provided by 35 U.S.C. 112, ¶ 1, in the prior-filed application will be treated as entitled only to the filing date of the continuation-in-part application.

Proposed § 1.78(d) also does not contain the provision that the prior-filed application disclose the invention claimed in at least one claim of the later-filed application in the manner provided by 35 U.S.C. 112, ¶ 1. It is necessary for the prior-filed application to disclose the invention claimed in at least one claim of the later-filed application in the manner provided by 35 U.S.C. 112, ¶ 1, for the later-filed application to actually receive the benefit of the filing date of the prior-filed application (35 U.S.C. 120), but the Office does not require such a disclosure as a condition of permitting

an application to claim the benefit of the filing date of a prior-filed application. See MPEP § 201.08 ("Unless the filing date of the earlier nonprovisional application is actually needed * * *, there is no need for the Office to make a determination as to whether the requirement of 35 U.S.C. 120, that the earlier nonprovisional application discloses the invention of the second application in the manner provided by 35 U.S.C. 112, ¶ 1, is met and whether a substantial portion of all of the earlier nonprovisional application is repeated in the second application in a continuation-in-part situation. Accordingly, an alleged continuation-in-part application should be permitted to claim the benefit of the filing date of an earlier nonprovisional application if the alleged continuation-in-part application complies with the * * * formal requirements of 35 U.S.C. 120.").

Proposed § 1.78(d) also provides that cross-references to applications for which a benefit is not claimed under title 35, United States Code, must be located in a separate paragraph from the references required by 35 U.S.C. 119(e) or 120 and § 1.78 to applications for which a benefit is claimed under 35 U.S.C. 119(e), 120, 121, or 365(c) (proposed § 1.78(d)(6)).

Proposed § 1.78(d) otherwise contains the provisions of current § 1.78(a)(1) and (a)(2).

Proposed § 1.78(e) contains provisions relating to delayed claims under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed nonprovisional or international application. Proposed § 1.78(e) provides that a petition to accept an unintentionally delayed claim under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed application will not be granted in an application in which a request for continued examination under § 1.114 has been filed. Proposed § 1.114(f) does not permit a request for continued examination in a continuing application (other than a divisional application in compliance with § 1.78(d)(1)(ii)), without a petition showing to the satisfaction of the Director that the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the application. Thus, proposed § 1.78(e) provides that an applicant may not add a delayed claim under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed application in an application in which a request for continued examination under § 1.114 has been filed. Proposed § 1.78(e) otherwise contains the provisions of current § 1.78(a)(3).

....

Federal Register / Vol. 71, No. 1 / Tuesday, January 3, 2006 / Proposed Rules    55

Proposed § 1.78(f) contains provisions relating to applications naming at least one inventor in common and containing patentably indistinct claims. Proposed § 1.78(f)(1) provides that if a nonprovisional application has a filing date that is the same as or within two months of the filing date of one or more other pending nonprovisional applications or patents, for which a benefit is sought under title 35, United States Code, names at least one inventor in common with the one or more other pending nonprovisional applications or patents, and is owned by the same person, or subject to an obligation of assignment to the same person, as the one or more other pending nonprovisional applications or patents, the applicant must identify each such other application or patent by application number (i.e., series code and serial number) and patent number (if applicable). This identification requirement would also apply to each identified application, because if the identifying application has a filing date that is the same as or within two months of the filing date of the identified application, the identified application has a filing date that is the same as or within two months of the filing date of the identifying application. The application or patent may be identified in the specification in the paragraph containing cross-references to applications for which a benefit is not claimed under title 35, United States Code (proposed § 1.78(d)(6)), or may be identified in a separate paper. Proposed § 1.78(f)(1) also provides that the identification of one or more other nonprovisional applications under this paragraph must be within four months from the actual filing date of a nonprovisional application filed under 35 U.S.C. 111(a), or within four months from the date on which the national stage commenced under 35 U.S.C. 371(b) or (f) in a nonprovisional application which entered the national stage from an international application after compliance with 35 U.S.C. 371.

Proposed § 1.78(f)(2) provides that if the circumstances set forth in proposed § 1.78(f)(1) exist and the nonprovisional application has the same filing date as the one or more other pending nonprovisional applications or patents, taking into account any filing date for which a benefit is sought under title 35, United States Code, and contains substantial overlapping disclosure as the one or more other pending nonprovisional applications or patents, a rebuttable presumption shall exist that the nonprovisional application contains

at least one claim that is not patentably distinct from at least one of the claims in the one or more other pending nonprovisional applications. Proposed § 1.78(f)(2) also provides that in such a situation, the applicant in the nonprovisional application must either: (1) rebut this presumption by explaining to the satisfaction of the Director how the application contains only claims that are patentably distinct from the claims in each of such other pending nonprovisional applications or patents; or (2) submit a terminal disclaimer in accordance with § 1.321(c): In addition, proposed § 1.78(f)(2) provides that where one or more other pending nonprovisional applications containing patentably indistinct claims have been identified, the applicant must explain to the satisfaction of the Director why it is necessary that there are two or more pending nonprovisional applications naming at least one inventor in common and owned by the same person, or subject to an obligation of assignment to the same person, which contain patentably indistinct claims.

As discussed previously, where an applicant chooses to file multiple applications that are substantially the same it will be the applicant's responsibility to assist the Office in resolving potential double patenting situations rather than taking no action until faced with a double patenting rejection. Thus, if an Office action must include a double patenting rejection, it is because the applicant has not yet met his or her responsibility to resolve the double patenting situation by filing the appropriate terminal disclaimer. Therefore, the inclusion of a new double patenting rejection in a second or subsequent Office action will not preclude the Office action from being made final (assuming that the conditions in MPEP § 706.07(a) are otherwise met).

Proposed § 1.78(f)(3) provides that in the absence of good and sufficient reason for there being two or more pending nonprovisional applications naming at least one inventor in common and owned by the same person, or subject to an obligation of assignment to the same person, which contain patentably indistinct claims, the Office may require elimination of the patentably indistinct claims from all but one of the applications. The Office expects to apply this provision primarily in situations covered by proposed § 1.78(f)(2)(ii), under which applicants must explain to the satisfaction of the Director why it is necessary that there are two or more pending nonprovisional applications naming at least one inventor in common

and owned by the same person, or subject to an obligation of assignment to the same person, which contain patentably indistinct claims. The Office, however, may require that an applicant provide good and sufficient reason whenever there are two or more pending nonprovisional applications naming at least one inventor in common and owned by the same person, or subject to an obligation of assignment to the same person, which contain patentably indistinct claims (i.e., in situations other than those covered by § 1.78(f)(2) or even § 1.78(f)(1)).

Proposed § 1.78(g) contains provisions relating to applications or patents under reexamination naming different inventors and containing patentably indistinct claims. Proposed § 1.78(g) contains the provisions of current § 1.78(c), except that "conflicting claims" is proposed to be changed to "patentably indistinct claims" for clarity and for consistency with the language of proposed § 1.78(f).

Proposed § 1.78(h) covers the situation in which parties to a joint research agreement are treated (in essence) as a common owner for purposes of 35 U.S.C. 103 by virtue of the CREATE Act. Proposed § 1.78(h) provides that if an application discloses or is amended to disclose the names of parties to a joint research agreement (35 U.S.C. 103(c)(2)(C)), the parties to the joint research agreement are considered to be the same person for purposes of § 1.78. The CREATE Act amended 35 U.S.C. 103(c) to provide that subject matter developed by another person shall be treated as owned by the same person or subject to an obligation of assignment to the same person for purposes of determining obviousness if three conditions are met: (1) The claimed invention was made by or on behalf of parties to a joint research agreement that was in effect on or before the date the claimed invention was made; (2) the claimed invention was made as a result of activities undertaken within the scope of the joint research agreement; and (3) the application for patent for the claimed invention discloses or is amended to disclose the names of the parties to the joint research agreement. See Changes to Implement the Cooperative Research and Technology Enhancement Act of 2004, 70 FR 1818, 1818 (Jan. 11, 2005), 1291 Off. Gaz. Pat. Office 58, 58–59 (Feb. 8, 2005). Proposed § 1.78(h) also provides that if the application is amended to disclose the names of parties to a joint research agreement under 35 U.S.C. 103(c)(2)(C), the identification of such one or more other nonprovisional applications as required by § 1.78(f)(1)

....

must be submitted with the amendment under 35 U.S.C. 103(c)(2)(C) unless such identification is or has been submitted within the four-month period specified in § 1.78(f)(1).

The proposed changes to § 1.78 (if adopted) would be applicable to any application filed on or after the effective date of the final rule. Thus, any application filed on or after the effective date of the final rule seeking to claim the benefit of more than a single prior-filed nonprovisional application or international application under 35 U.S.C. 120, 121, 365(c) and § 1.78 would need to either meet the requirements specified in proposed § 1.78(d)(1)(iii) or include a petition under proposed § 1.78(d)(1)(iv). That is, an applicant may only file one continuation or continuation-in-part application (and not "one more" continuation or continuation-in-part application) after the effective date of the final rule without meeting the requirements specified in proposed § 1.78(d)(1)(iii) or including a petition under proposed § 1.78(d)(1)(iv).

*Conforming changes:* The proposed reorganization and revision of § 1.78 would also require conforming changes to §§ 1.17, 1.52, 1.53, 1.76, and 1.110.

*Section 1.114:* Proposed § 1.114(a) adds the phrase "subject to the conditions of this section" to make clear that an applicant may not file an unrestricted number of requests for continued examination. Proposed § 1.114(a) otherwise contains the provisions of current § 1.114(a).

Proposed § 1.114(f) provides that an applicant may not file more than a single request for continued examination under § 1.114 in any application, and that an applicant may not file a request for continued examination under § 1.114 in any continuing application (§ 1.78(a)(1)) other than a divisional application in compliance with § 1.78(d)(1)(ii), unless the request for continued examination also includes a petition accompanied by the fee set forth in § 1.17(f) and a showing to the satisfaction of the Director that the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the application. Thus, an applicant may file a single request for continued examination in a non-continuing application, or in a divisional application in compliance with § 1.78(d)(1)(ii), without a showing to the satisfaction of the Director that the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the application. Otherwise, a request for continued examination must be

....

....

accompanied by a petition accompanied by the fee set forth in § 1.17(f) and a showing to the satisfaction of the Director that the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the application. Since multiple opportunities are given to submit any desired amendment, argument, or evidence, that an amendment, argument, or evidence is refused entry because prosecution in the application is again closed (after the filing of a continuation or continuation-in-part application (§§ 1.78(d)(1)(i) and 1.78(d)(1)(iii)) or a request for continued examination under § 1.114) will not by itself be a sufficient reason to warrant the grant of a petition under § 1.114(f). Rather, an applicant will be expected to demonstrate why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the application.

Proposed § 1.114(f) further provides that any other proffer of a request for continued examination in an application not on appeal will be treated as a submission under § 1.116, and that any other proffer of a request for continued examination in an application on appeal will be treated only as a request to withdraw the appeal. Thus, a second or subsequent request for continued examination that does not include the required petition will not have the same effect as a first request for continued examination.

The proposed changes to § 1.114 (if adopted) would be applicable to any application in which a request for continued examination is filed on or after the effective date of the final rule. Thus, any request for continued examination filed on or after the effective date of the final rule in an application in which a request for continued examination has previously been filed must include a petition under proposed § 1.114(f). That is, an applicant may only file one request for continued examination (and not "one more" request for continued examination) after the effective date of the final rule without a petition under proposed § 1.114(f).

*Section 1.495:* Proposed § 1.495(g) provides that if the documents and fees contain conflicting indications as between an application under 35 U.S.C. 111 and a submission to enter the national stage under 35 U.S.C. 371, the documents and fees will be treated as a submission to enter the national stage under 35 U.S.C. 371. It is Office experience that, in the majority of cases, documents and fees that contain conflicting indications as between an application under 35 U.S.C. 111 and a

submission to enter the national stage under 35 U.S.C. 371 were intended as a submission under 35 U.S.C. 371. In addition, the changes to § 1.78 (if adopted) would render the option of filing of a "bypass" continuation application under 35 U.S.C. 111(a) less preferable to simply entering the national stage under 35 U.S.C. 371 in an international application. A "bypass" continuation application is an application for patent filed under 35 U.S.C. 111(a) that claims the benefit of the filing date of an earlier international application that did not enter the national stage under 35 U.S.C. 371.

## Rule Making Considerations

*Regulatory Flexibility Act:* For the reasons set forth herein, the Deputy General Counsel for General Law of the United States Patent and Trademark Office has certified to the Chief Counsel for Advocacy of the Small Business Administration that the changes proposed in this notice will not have a significant economic impact on a substantial number of small entities. *See* 5 U.S.C. 605(b).

In Fiscal Year 2005, the Office received approximately 317,000 nonprovisional applications. Of those, about 62,870 (about 19,700 small entity) were continuing applications. In addition, the Office received about 52,750 (about 8,970 small entity) requests for continued examination. This notice proposes to require that: (1) Any second or subsequent continuation or continuation-in-part application and any second or subsequent request for continued examination include a showing to the satisfaction of the Director as to why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution after a single continuation or continuation-in-part application or request for continued examination; and (2) multiple applications that have the same effective filing date, overlapping disclosure, a common inventor, and a common assignee include either an explanation to the satisfaction of the Director of how the claims are patentably distinct, or a terminal disclaimer and explanation to the satisfaction of the Director of why patentably indistinct claims have been filed in multiple applications.

*Continuing Applications:* This notice proposes to require that any second or subsequent continuation or continuation-in-part application include a petition (with a $400.00 petition fee) with a showing to the satisfaction of the Director as to why the amendment, argument, or evidence could not have been submitted prior to the close of

prosecution in the prior-filed application.

This proposed rule change will not affect a substantial number of small entities. Of the 62,870 continuing applications filed in fiscal year 2005, about 44,500 (about 15,665 small entity) were designated as continuation or continuation-in-part applications, and about 11,790 (about 4,470 small entity) of these applications were a second or subsequent continuation or continuation-in-part application. Therefore, the proposed petition fee and showing requirement would impact relatively few applications (about 3.7 percent or 11,790 out of 317,000) and relatively few small entity applications (about 4.8 percent or 4,470 out of 93,000). It is also noted that this proposed would not disproportionately impact small entity applicants. The primary impact of this change would be to require applicants to make a *bona fide* attempt to advance the application to final agency action by submitting any desired amendment, argument, or evidence prior to the close of prosecution after a single continuation or continuation-in-part application or single request for continued examination (except as permitted by § 1.116 or § 41.33).

The notice does not propose any petition fee or showing requirement for a divisional application, but only requires that a divisional application be the result of a requirement of unity of invention under PCT Rule 13 or a requirement for restriction under 35 U.S.C. 121 in the prior-filed application. Thus, an applicant may obtain examination of claims to an invention in the prior-filed application because the Office did not impose a requirement of unity of invention under PCT Rule 13 or a requirement for restriction under 35 U.S.C. 121 in the prior-filed application, or the applicant may obtain examination of claims to an invention in a divisional application because the Office did impose a requirement of unity of invention under PCT Rule 13 or a requirement for restriction under 35 U.S.C. 121 in the prior-filed application. Of the 62,870 continuing applications filed in fiscal year 2005, about 18,370 (about 4,000 small entity) were designated as divisional applications.

*Requests for Continued Examination:* This notice proposes to require that any second or subsequent request for continued examination include a petition (with a $400.00 petition fee) with a showing to the satisfaction of the Director as to why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution.

This proposed rule change will not affect a substantial number of small entities. Of the 52,750 requests for continued examination filed in fiscal year 2005, about 9,925 (about 1,796 small entity) were a second or subsequent request for continued examination. Therefore, the proposed petition fee and showing requirement would impact relatively few applicants (about 3.1 percent or 9,925 out of 317,000) and relatively few small entity applicants (about 1.9 percent or 1,796 out of 93,000). It is also noted that this proposed change would not disproportionately impact small entity applicants. The primary impact of this change would be to require applicants to make a *bona fide* attempt to advance the application to final agency action by submitting any desired amendment, argument, or evidence prior to the close of prosecution after a single continuation application or single request for continued examination (except as permitted by § 1.116 or § 41.33).

*Patentably Indistinct Claims:* Finally, this notice proposes that applicants (or assignees) who file multiple applications having the same effective filing date, overlapping disclosure, and a common inventor include either an explanation of how the claims are patentably distinct, or a terminal disclaimer and explanation of why there are patentably indistinct claims in multiple applications. An applicant who files multiple applications containing patentably indistinct claims must in any case submit the appropriate terminal disclaimers to avoid double patenting. *See In re Berg,* 140 F.3d 1428, 1434, 46 USPQ2d 1226, 1231 (Fed. Cir. 1998) (applicants who may file all of their claims in a single application, but instead chose to file such claims in multiple applications, are not entitled to two-way double patenting test).

This proposed rule change does not affect a substantial number of small entities. The Office received about 17,600 (about 3,850 small entity) terminal disclaimers in fiscal year 2004. Based upon the Office's experience with double patenting situations, most of these double patenting situations involved an application and a patent (rather than two applications) containing patentably indistinct claims. In addition, § 1.78(b) currently provides where two or more applications filed by the same applicant contain conflicting (*i.e.,* patentably indistinct) claims, elimination of such claims from all but one application may be required in the absence of good and sufficient reason for their retention during pendency in more than one application). Therefore,

the requirement for an explanation up front as to why there are two or more pending applications by the same applicant (or assignee) containing patentably indistinct claims when that is the case would impact relatively few applicants (about 5.7 percent or 17,600 out of 310,000) and relatively few small entity applicants (about 4.1 percent or 3,850 out of 93,000). It is also noted that this proposed change would not disproportionately impact small entity applicants. Moreover, there are no fees associated with this proposed rule change.

*Executive Order 13132:* This rule making does not contain policies with federalism implications sufficient to warrant preparation of a Federalism Assessment under Executive Order 13132 (Aug. 4, 1999).

*Executive Order 12866:* This rule making has been determined to be significant for purposes of Executive Order 12866 (Sept. 30, 1993).

*Paperwork Reduction Act:* This notice involves information collection requirements which are subject to review by the Office of Management and Budget (OMB) under the Paperwork Reduction Act of 1995 (44 U.S.C. 3501 *et seq.*). The collection of information involved in this notice has been reviewed and previously approved by OMB under OMB control number 0651–0031. This notice proposes to require that: (1) Any second or subsequent continuation or continuation-in-part application and any second or subsequent request for continued examination include a showing to the satisfaction of the Director as to why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution after a single continuation application or request for continued examination; and (2) multiple applications that have the same effective filing date, overlapping disclosure, a common inventor, and a common assignee include either an explanation to the satisfaction of the Director of how the claims are patentably distinct, or a terminal disclaimer and explanation to the satisfaction of the Director of why patentably indistinct claims have been filed in multiple applications. The United States Patent and Trademark Office is resubmitting an information collection package to OMB for its review and approval because the changes in this notice do affect the information collection requirements associated with the information collection under OMB control number 0651–0031.

The title, description and respondent description of the information collection under OMB control number 0651–0031 is shown below with an estimate of the

...

annual reporting burdens. Included in the estimate is the time for reviewing instructions, gathering and maintaining the data needed, and completing and reviewing the collection of information.

The title, description and respondent description of the information collection under OMB control number 0651–0031 is shown below with an estimate of the annual reporting burdens. Included in the estimate is the time for reviewing instructions, gathering and maintaining the data needed, and completing and reviewing the collection of information.

*OMB Number:* 0651–0031.

*Title:* Patent Processing (Updating).

*Form Numbers:* PTO/SB/08, PTO/SB/ 17i, PTO/SB/17p, PTO/SB/21–27, PTO/ SB/24B, PTO/SB/30–32, PTO/SB/35–39, PTO/SB/42–43, PTO/SB/61–64, PTO/ SB/64a, PTO/SB/67–68, PTO/SB/91–92, PTO/SB/96–97, PTO–2053–A/B, PTO– 2054–A/B, PTO–2055–A/B, PTOL– 413A. ...

*Type of Review:* Approved through July of 2006.

*Affected Public:* Individuals or households, business or other for-profit institutions, not-for-profit institutions, farms, Federal Government and State, Local and Tribal Governments.

*Estimated Number of Respondents:* 2,284,439.

*Estimated Time per Response:* 1 minute and 48 seconds to 12 hours.

*Estimated Total Annual Burden Hours:* 2,732,441 hours.

*Needs and Uses:* During the processing of an application for a patent, the applicant or applicant's representative may be required or desire to submit additional information to the United States Patent and Trademark Office concerning the examination of a specific application. The specific information required or which may be submitted includes: Information disclosure statement and citation, examination support documents, requests for extensions of time, the establishment of small entity status, abandonment and revival of abandoned applications, disclaimers, appeals, petitions, expedited examination of design applications, transmittal forms, requests to inspect, copy and access patent applications, publication requests, and certificates of mailing, transmittals, and submission of priority documents and amendments.

*Comments are invited on:* (1) Whether the collection of information is necessary for proper performance of the functions of the agency; (2) the accuracy of the agency's estimate of the burden; (3) ways to enhance the quality, utility, and clarity of the information to be collected; and (4) ways to minimize the

...

burden of the collection of information to respondents.

Interested persons are requested to send comments regarding these information collections, including suggestions for reducing this burden, to: (1) The Office of Information and Regulatory Affairs, Office of Management and Budget, New Executive Office Building, Room 10202, 725 17th Street, NW., Washington, DC 20503, Attention: Desk Officer for the Patent and Trademark Office; and (2) Robert J. Spar, Director, Office of Patent Legal Administration, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313–1450.

Notwithstanding any other provision of law, no person is required to respond to nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a currently valid OMB control number.

**List of Subjects in 37 CFR Part 1**

Administrative practice and procedure, Courts, Freedom of information, Inventions and patents, Reporting and recordkeeping requirements, Small businesses.

For the reasons set forth in the preamble, 37 CFR part 1 is proposed to be amended as follows:

**PART 1—RULES OF PRACTICE IN PATENT CASES**

1. The authority citation for 37 CFR part 1 continues to read as follows:

**Authority:** 35 U.S.C. 2(b)(2).

2. Section 1.78 is revised to read as follows:

**§ 1.78  Claiming benefit of earlier filing date and cross-references to other applications.**

(a) *Definitions.* (1) *Continuing application.* A continuing application is a nonprovisional application or an international application designating the United States of America that claims the benefit under 35 U.S.C. 120, 121, or 365(c) of a prior-filed nonprovisional application or international application designating the United States of America. An application that does not claim the benefit under 35 U.S.C. 120, 121, or 365(c) of a prior-filed application, is not a continuing application even if the application claims the benefit under 35 U.S.C. 119(e) of a provisional application, claims priority under 35 U.S.C. 119(a)– (d) or 365(b) to a foreign application, or claims priority under 35 U.S.C. 365(a) or (b) to an international application

designating at least one country other than the United States of America.

(2) *Continuation application.* A continuation application is a continuing application as defined in paragraph (a)(1) of this section that discloses and claims only an invention or inventions that were disclosed in the prior-filed application.

(3) *Divisional application.* A divisional application is a continuing application as defined in paragraph (a)(1) of this section that discloses and claims only an invention or inventions that were disclosed and claimed in the prior-filed application, but were subject to a requirement of unity of invention under PCT Rule 13 or a requirement for restriction under 35 U.S.C. 121 and not elected for examination in the prior-filed application.

(4) *Continuation-in-part application.* A continuation-in-part application is a continuing application as defined in paragraph (a)(1) of this section that discloses subject matter that was not disclosed in the prior-filed application.

(b) *Claims under 35 U.S.C. 119(e) for the benefit of a prior-filed provisional application.* A nonprovisional application, other than for a design patent, or an international application designating the United States of America may claim the benefit of one or more prior-filed provisional applications under the conditions set forth in 35 U.S.C. 119(e) and this paragraph.

(1) The nonprovisional application or international application designating the United States of America must be filed not later than twelve months after the date on which the provisional application was filed. This twelve-month period is subject to 35 U.S.C. 21(b) and § 1.7(a).

(2) Each prior-filed provisional application must name as an inventor at least one inventor named in the later-filed application, must be entitled to a filing date as set forth in § 1.53(c), and the basic filing fee set forth in § 1.16(d) must be paid within the time period set forth in § 1.53(g).

(3) Any nonprovisional application or international application designating the United States of America claiming the benefit of one or more prior-filed provisional applications must contain or be amended to contain a reference to each such prior-filed provisional application, identifying it by the provisional application number (consisting of series code and serial number). If the later-filed application is a nonprovisional application, the reference required by this paragraph must be included in an application data sheet (§ 1.76), or the specification must

contain or be amended to contain such reference in the first sentence(s) following the title.

(4) The reference required by paragraph (b)(3) of this section must be submitted during the pendency of the later-filed application. If the later-filed application is an application filed under 35 U.S.C. 111(a), this reference must also be submitted within the later of four months from the actual filing date of the later-filed application or sixteen months from the filing date of the prior-filed provisional application. If the later-filed application is a nonprovisional application which entered the national stage from an international application after compliance with 35 U.S.C. 371, this reference must also be submitted within the later of four months from the date on which the national stage commenced under 35 U.S.C. 371(b) or (f) in the later-filed international application or sixteen months from the filing date of the prior-filed provisional application. These time periods are not extendable. Except as provided in paragraph (c) of this section, the failure to timely submit the reference is considered a waiver of any benefit under 35 U.S.C. 119(e) of each prior-filed provisional application. The time periods in this paragraph do not apply if the later-filed application is:

(i) An application filed under 35 U.S.C. 111(a) before November 29, 2000; or

(ii) An international application filed under 35 U.S.C. 363 before November 29, 2000.

(5) If the prior-filed provisional application was filed in a language other than English and both an English-language translation of the prior-filed provisional application and a statement that the translation is accurate were not previously filed in the prior-filed provisional application, applicant will be notified and given a period of time within which to file, in the prior-filed provisional application, the translation and the statement. If the notice is mailed in a pending nonprovisional application, a timely reply to such a notice must include the filing in the nonprovisional application of either a confirmation that the translation and statement were filed in the provisional application, or an amendment or Supplemental Application Data Sheet withdrawing the benefit claim, or the nonprovisional application will be abandoned. The translation and statement may be filed in the provisional application, even if the provisional application has become abandoned.

(c) *Delayed claims under 35 U.S.C. 119(e) for the benefit of a prior-filed*

*provisional application.* If the reference required by 35 U.S.C. 119(e) and paragraph (b)(3) of this section is presented in a nonprovisional application after the time period provided by paragraph (b)(4) of this section, the claim under 35 U.S.C. 119(e) for the benefit of a prior-filed provisional application may be accepted if submitted during the pendency of the later-filed application and if the reference identifying the prior-filed application by provisional application number was unintentionally delayed. A petition to accept an unintentionally delayed claim under 35 U.S.C. 119(e) for the benefit of a prior-filed provisional application must be accompanied by:

(1) The reference required by 35 U.S.C. 119(e) and paragraph (b)(3) of this section to the prior-filed provisional application, unless previously submitted;

(2) The surcharge set forth in § 1.17(t); and

(3) A statement that the entire delay between the date the claim was due under paragraph (b)(4) of this section and the date the claim was filed was unintentional. The Director may require additional information where there is a question whether the delay was unintentional.

(d) *Claims under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed nonprovisional or international application.* A nonprovisional application (including an international application that has entered the national stage after compliance with 35 U.S.C. 371) may claim the benefit of one or more prior-filed nonprovisional applications or international applications designating the United States of America under the conditions set forth in 35 U.S.C. 120 and this paragraph.

(1) A nonprovisional application claiming the benefit of one or more prior-filed copending nonprovisional applications or international applications designating the United States of America must satisfy at least one of the following conditions:

(i) The nonprovisional application is either a continuation application as defined in paragraph (a)(2) of this section or a continuation-in-part application as defined in paragraph (a)(4) of this section that claims the benefit under 35 U.S.C. 120, 121, or 365(c) of only a single prior-filed application, the benefit of such prior-filed application not being claimed in any other nonprovisional application other than a divisional application in compliance with paragraph (d)(1)(ii) of this section, and no request for continued examination under § 1.114

has been filed in the prior-filed application.

(ii) The nonprovisional application is a divisional application as defined in paragraph (a)(3) of this section that claims the benefit under 35 U.S.C. 120, 121, or 365(c) of only a single prior-filed application, the prior-filed application was subject to a requirement of unity of invention under PCT Rule 13 or a requirement for restriction under 35 U.S.C. 121, and the divisional application contains only claims directed to an invention or inventions that were identified in such requirement of unity of invention or requirement for restriction but were not elected for examination in the prior-filed application.

(iii) The nonprovisional application is either a continuation application as defined in paragraph (a)(2) of this section or a continuation-in-part application as defined in paragraph (a)(4) of this section that claims the benefit under 35 U.S.C. 120, 121, or 365(c) of only a single divisional application in compliance with paragraph (d)(1)(ii) of this section and the single prior-filed application whose benefit is claimed in such divisional application, and no request for continued examination under § 1.114 has been filed in such prior-filed divisional application.

(iv) The nonprovisional application is a continuing application as defined in paragraph (a)(1) of this section that claims the benefit under 35 U.S.C. 120, 121, or 365(c) of a prior-filed application, which continuing application is filed to obtain consideration of an amendment, argument, or evidence that could not have been submitted during the prosecution of the prior-filed application. The nonprovisional application must have filed therein a petition accompanied by the fee set forth in § 1.17(f) and a showing to the satisfaction of the Director that the amendment, argument, or evidence could not have been submitted during the prosecution of the prior-filed application. If the later-filed continuing application is an application filed under 35 U.S.C. 111(a), this petition must be submitted within four months from the actual filing date of the later-filed continuing application, and if the later-filed continuing application is a nonprovisional application which entered the national stage from an international application after compliance with 35 U.S.C. 371, this petition must be submitted within four months from the date on which the national stage commenced under 35

U.S.C. 371(b) or (f) in the later-filed international application.

(2) Each prior-filed application must name as an inventor at least one inventor named in the later-filed application and must be either an international application entitled to a filing date in accordance with PCT Article 11 and designating the United States of America, or a nonprovisional application under 35 U.S.C. 111(a) that is entitled to a filing date as set forth in § 1.53(b) or § 1.53(d) and have paid therein the basic filing fee set forth in § 1.16 within the pendency of the application.

(3) Except for a continued prosecution application filed under § 1.53(d), any nonprovisional application, or international application designating the United States of America, claiming the benefit of one or more prior-filed copending nonprovisional applications or international applications designating the United States of America must contain or be amended to contain a reference to each such prior-filed application, identifying it by application number (consisting of the series code and serial number) or international application number and international filing date and identifying the relationship of the applications (i.e., whether the later-filed application is a continuation, divisional, or continuation-in-part of the prior-filed nonprovisional application or international application). If an application is identified as a continuation-in-part application, the applicant must identify which claim or claims in the continuation-in-part application are disclosed in the manner provided by the first paragraph of 35 U.S.C. 112 in the prior-filed application. If the later-filed application is a nonprovisional application, the reference required by this paragraph must be included in an application data sheet (§ 1.76), or the specification must contain or be amended to contain such reference in the first sentence(s) following the title. The Office will refuse to enter, or will delete if present, any specific reference to a prior-filed application that is not permitted by paragraph (d)(1) of this section. The entry of or failure to delete a specific reference to a prior-filed application that is not permitted by paragraph (d)(1) of this section does not constitute a waiver of the provisions of paragraph (d)(1) of this section.

(4) The reference required by 35 U.S.C. 120 and paragraph (d)(3) of this section must be submitted during the pendency of the later-filed application. If the later-filed application is an application filed under 35 U.S.C. 111(a),

this reference must also be submitted within the later of four months from the actual filing date of the later-filed application or sixteen months from the filing date of the prior-filed application. If the later-filed application is a nonprovisional application which entered the national stage from an international application after compliance with 35 U.S.C. 371, this reference must also be submitted within the later of four months from the date on which the national stage commenced under 35 U.S.C. 371(b) or (f) in the later-filed international application or sixteen months from the filing date of the prior-filed application. These time periods are not extendable. Except as provided in paragraph (e) of this section, the failure to timely submit the reference required by 35 U.S.C. 120 and paragraph (d)(3) of this section is considered a waiver of any benefit under 35 U.S.C. 120, 121, or 365(c) to such prior-filed application. The time periods in this paragraph do not apply if the later-filed application is:

(i) An application for a design patent;

(ii) An application filed under 35 U.S.C. 111(a) before November 29, 2000; or

(iii) An international application filed under 35 U.S.C. 363 before November 29, 2000.

(5) The request for a continued prosecution application under § 1.53(d) is the specific reference required by 35 U.S.C. 120 to the prior-filed application. The identification of an application by application number under this section is the identification of every application assigned that application number necessary for a specific reference required by 35 U.S.C. 120 to every such application assigned that application number.

(6) Cross-references to other related applications may be made when appropriate (see § 1.14). Cross-references to applications for which a benefit is not claimed under title 35, United States Code, must be located in a separate paragraph from the references required by 35 U.S.C. 119(e) or 120 and this section to applications for which a benefit is claimed under 35 U.S.C. 119(e), 120, 121, or 365(c).

(e) Delayed claims under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed nonprovisional application or international application. If the reference required by 35 U.S.C. 120 and paragraph (d)(3) of this section is presented after the time period provided by paragraph (d)(4) of this section, the claim under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed copending nonprovisional application or international application designating the United States of America may be

accepted if the reference identifying the prior-filed application by application number or international application number and international filing date was unintentionally delayed. A petition to accept an unintentionally delayed claim under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed application will not be granted in an application in which a request for continued examination under § 1.114 has been filed. A petition to accept an unintentionally delayed claim under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed application must be accompanied by:

(1) The reference required by 35 U.S.C. 120 and paragraph (d)(3) of this section to the prior-filed application, unless previously submitted;

(2) The surcharge set forth in § 1.17(t); and

(3) A statement that the entire delay between the date the claim was due under paragraph (d)(4) of this section and the date the claim was filed was unintentional. The Director may require additional information where there is a question whether the delay was unintentional.

(f) Applications and patents naming at least one inventor in common. (1) If a nonprovisional application has a filing date that is the same as or within two months of the filing date of one or more other pending or patented nonprovisional applications, taking into account any filing date for which a benefit is sought under title 35, United States Code, names at least one inventor in common with the one or more other nonprovisional applications, and is owned by the same person, or subject to an obligation of assignment to the same person, as the one or more other nonprovisional applications, the applicant must identify each such other application by application number (i.e., series code and serial number) and patent number (if applicable). The identification of such one or more other nonprovisional applications if required by this paragraph must be submitted within four months from the actual filing date of a nonprovisional application filed under 35 U.S.C. 111(a), or within four months from the date on which the national stage commenced under 35 U.S.C. 371(b) or (f) in a nonprovisional application which entered the national stage from an international application after compliance with 35 U.S.C. 371.

(2) If a nonprovisional application has the same filing date as the filing date of one or more other pending or patented nonprovisional applications, taking into account any filing date for which a benefit is sought under title 35, United

States Code, names at least one inventor in common with the one or more other pending or patented nonprovisional applications, is owned by the same person, or subject to an obligation of assignment to the same person, and contains substantial overlapping disclosure as the one or more other pending or patented nonprovisional applications, a rebuttable presumption shall exist that the nonprovisional application contains at least one claim that is not patentably distinct from at least one of the claims in the one or more other pending or patented nonprovisional applications. In this situation, the applicant in the nonprovisional application must either:

(i) Rebut this presumption by explaining to the satisfaction of the Director how the application contains only claims that are patentably distinct from the claims in each of such other pending applications or patents; or

(ii) Submit a terminal disclaimer in accordance with § 1.321(c). In addition, where one or more other pending nonprovisional applications have been identified, the applicant must explain to the satisfaction of the Director why there are two or more pending nonprovisional applications naming at least one inventor in common and owned by the same person, or subject to an obligation of assignment to the same person, which contain patentably indistinct claims.

(3) In the absence of good and sufficient reason for there being two or more pending nonprovisional applications naming at least one inventor in common and owned by the same person, or subject to an obligation of assignment to the same person, which contain patentably indistinct claims, the Office may require elimination of the patentably indistinct claims from all but one of the applications.

(g) *Applications or patents under reexamination naming different inventors and containing patentably indistinct claims.* If an application or a patent under reexamination and at least one other application naming different inventors are owned by the same party and contain patentably indistinct claims, and there is no statement of record indicating that the claimed inventions were commonly owned or subject to an obligation of assignment to the same person at the time the later invention was made, the Office may require the assignee to state whether the claimed inventions were commonly owned or subject to an obligation of assignment to the same person at the time the later invention was made, and if not, indicate which named inventor is the prior inventor.

....

(h) *Parties to a joint research agreement.* If an application discloses or is amended to disclose the names of parties to a joint research agreement (35 U.S.C. 103(c)(2)(C)), the parties to the joint research agreement are considered to be the same person for purposes of this section. If the application is amended to disclose the names of parties to a joint research agreement under 35 U.S.C. 103(c)(2)(C), the identification of such one or more other nonprovisional applications as required by paragraph (f)(1) of this section must be submitted with the amendment under 35 U.S.C. 103(c)(2)(C) unless such identification is or has been submitted within the four-month period specified in paragraph (f)(1) of this section.

3. Section 1.114 is amended by revising the introductory text of paragraph (a) and by adding a new paragraph (f) to read as follows:

**§ 1.114   Request for continued examination.**

(a) If prosecution in an application is closed, an applicant may, subject to the conditions of this section, file a request for continued examination of the application by filing a submission and the fee set forth in § 1.17(e) prior to the earliest of:

\*       \*       \*       \*       \*

(f) An applicant may not file more than a single request for continued examination under this section in any application, and may not file any request for continued examination under this section in any continuation application (§ 1.78(a)(1)) other than a divisional application in compliance with § 1.78(d)(1)(ii), unless the request for continued examination also includes a petition accompanied by the fee set forth in § 1.17(f) and a showing to the satisfaction of the Director that the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the application. Any other proffer of a request for continued examination in an application not on appeal will be treated as a submission under § 1.116. Any other proffer of a request for continued examination in an application on appeal will be treated only as a request to withdraw the appeal.

4. Section 1.495 is amended by revising paragraph (g) to read as follows:

**§ 1.495   Entering the national stage in the United States of America.**

\*       \*       \*       \*       \*

(g) The documents and fees submitted under paragraphs (b) and (c) of this section must be clearly identified as a submission to enter the national stage under 35 U.S.C. 371. If the documents and fees contain conflicting indications as between an application under 35 U.S.C. 111 and a submission to enter the national stage under 35 U.S.C. 371, the documents and fees will be treated as a submission to enter the national stage under 35 U.S.C. 371.

\*       \*       \*       \*       \*

Dated: December 19, 2005.

Jon W. Dudas,

*Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office.*

[FR Doc. 05–24528 Filed 12–30–05; 8:45 am]

BILLING CODE 3510–16–P

---

**DEPARTMENT OF COMMERCE**

**Patent and Trademark Office**

**37 CFR Part 1**

[Docket No.: 2005–P–067]

RIN 0651–AB94

**Changes to Practice for the Examination of Claims in Patent Applications**

**AGENCY:** United States Patent and Trademark Office, Commerce.

**ACTION:** Notice of proposed rule making.

**SUMMARY:** The United States Patent and Trademark Office (Office) is proposing to revise the rules of practice relating the examination of claims in patent applications. The Office is proposing to focus its initial examination on the claims designated by the applicant as representative claims. The representative claims will be all of the independent claims and only the dependent claims that are expressly designated by the applicant for initial examination. The Office is also proposing that if an application contains more than ten independent claims (a rare occurrence), or if the applicant wishes to have initial examination of more than ten representative claims, then the applicant must provide an examination support document that covers all of the independent claims and the dependent claims designated for initial examination. The changes proposed in this notice will allow the Office to do a better, more thorough and reliable examination since the number of claims receiving initial examination will be at a level which can be more effectively and efficiently evaluated by an examiner.

*Comment Deadline Date:* To be ensured of consideration, written comments must be received on or before May 3, 2006. No public hearing will be held.

A00023