# EXHIBIT 11



1655 Ft. Myer Drive, Suite 850
Arlington, VA 22209
Tel. 703-524-2549
Fax. 703-524-3940

May 3, 2006

The Honorable Jon Dudas
Under Secretary of Commerce for Intellectual Property
 and Director of the United States Patent and Trademark Office
Mail Stop Comments
P.O. Box 1450
Alexandria, VA 22313-1450

Attn: Robert W. Bahr (AB93comments@uspto.gov)
     Robert A. Clarke (AB94comments@uspto.gov)

>Comments on Proposed Rules:
>"Changes to Practice for the Examination of Claims in Patent Applications" 71 Fed. Reg. 61 (January 3, 2006) and
>"Changes to Practice for Continuing Applications, Requests for Continued Examination Practice, and Applications Containing Patentably Indistinct Claims" 71 Fed. Reg. 48 (January 3, 2006)

Dear Under Secretary Dudas:

The National Venture Capital Association ("NVCA") would like to thank the U.S. Patent and Trademark Office ("PTO") for the opportunity to offer comments regarding the proposed rules directed to changes to practice for the examination of claims of patent applications, published at 71 Fed. Reg. 61 (January 3, 2006), and the changes to practice for continuing applications, requests for continued examination practice, and applications containing patentably indistinct claims, published at 71 Fed. Reg. 48 (January 3, 2006).

The NVCA represents more than 480 venture capital firms in the United States. Venture capital is one of the primary investment means that supports the creation and development of new, growth-oriented businesses. Venture capital backed companies are critical to the U.S. economy in terms of creating jobs, generating revenue, and fostering innovation. This segment of the economy, the entrepreneurial segment, is the true differentiator for the U.S. in terms of global competitiveness. U.S. companies originally funded with venture capital now represent 10% of annual GDP and employment, despite accounting for only 2% of invested capital. These organizations include AOL, Intel, Cisco, Home Depot, Google, EBay, Starbucks, FedEx, Archipelago, and Genentech.

A01459


National Venture Capital Association

Under Secretary Dudas
May 3, 2006
Page 2 of 4

Although the changes proposed by the PTO to reduce the number of examined claims and the number of continuations, continuations-in-part, and requests for continued examination filed based on a single invention are intended to allow the PTO to achieve the laudable goal of reducing the pendency of patent applications, the NVCA is concerned that the PTO has not considered the significant impact that the proposed changes will have on a particular class of PTO customers, namely, new venture capital backed, growth-oriented businesses.

Many venture-backed companies start with an idea and a product that is under development, and spend their time and resources developing and selling one product or class of products based on that idea. Under current law, patent applicants are well-advised to file patent applications as soon as possible. A venture backed company therefore may not have products to sell, and thus no revenue, when filing patent applications to avoid bar dates. Any additional burdens placed on a fledgling company at this stage of its development compounds the already steep challenges faced by new businesses, and increases the likelihood that the company will fail to properly protect its technology, or worse, fail altogether.

Current practice allows applicants to obtain different claims that use different words, in the same applications and in continuation applications, to protect their inventions. With the proposed changes to reduce the number of claims that can be prosecuted in a single application, as well as to reduce the number of applications that can be filed, the PTO is assuming that an invention can be adequately protected with a small number of claims. The NVCA is concerned, however, that fundamental inventions such as those frequently pursued by venture backed companies may require many different claims to effectively capture and protect them.

Current continuation practice allows applicants to file applications that disclose numerous aspects of their core technology, but allows applicants to defer final decisions about the best way to claim the inventions until a later date. The ability to postpone such decisions until a later date allows a new company to better understand the invention to be patented, the product(s) to be protected, the competitive landscape, and any prior art that may have been unavailable prior to filing. It also defers decisions until a time that is later in the company's life, when the company may have a better understanding about what aspects of its technology are valuable and worth pursuing, and more resources to pursue them.

Current continuation-in-part practice enables companies to file for patents on a particular class of invention, while still investigating the invention's broader applicability and further developing specific implementations. Limiting a company's ability to obtain



Under Secretary Dudas
May 3, 2006
Page 3 of 4

coverage through continuation-in-part applications makes it harder to protect fundamental research for which development continues after a first patent application has been filed. Again, for a variety of reasons, venture backed companies often are the venue for commercialization of fundamental research.

Thus, current PTO practice affords venture backed companies the opportunity to defer critical decisions until more information and resources are available. The NVCA is concerned that the proposed changes would make the early stages of the already expensive patent process even more difficult and costly, and force applicants to make decisions before sufficient information and resources are available.

By simultaneously reducing the number of claims and applications that may be pursued, the PTO would force applicants to make irreversible decisions regarding the specific claims to pursue very early in the process. The NVCA is concerned that for many new venture backed companies, this change in timing simply is not workable.

In many industry sectors, the degree of competitive advantage that a company stands to gain from patent protection will have a significant effect on whether venture capital investors decide to invest. The NVCA is concerned that the proposed changes, which would have an overall effect of weakening the degree of intellectual property protection that is available to new companies, would reduce the attractiveness of those new companies to venture investors. This, in turn, would result in the seemingly unintended consequence of a shift in investment from earlier to later-stage companies, or to companies operating in sectors of the economy that do not depend as heavily on patent protection.

Any change to the patent process that might affect the crucial, delicate balance between the protection necessary to inspire and promote invention and new businesses, on the one hand, and constraints that would stifle them, on the other hand, is of the greatest concern to our members. Reduction in a company's ability to obtain patent protection may very well drive investment decisions away from what could have been important advances in technology that would otherwise contribute to the country's economic growth. For these reasons, the NVCA is very concerned about the proposed rule changes.

A01461



Under Secretary Dudas
May 3, 2006
Page 4 of 4

We appreciate the opportunity to provide comments.

Yours truly,

Mark Heesen, President
National Venture Capital Association

A01462

**Jones, Eugenia**

**From:** Heffan, Ira [IHeffan@goodwinprocter.com]
**Sent:** Wednesday, May 03, 2006 9:04 PM
**To:** AB93Comments; AB94Comments
**Cc:** Jennifer Dowling
**Subject:** Comments of the National Venture Capital Association

Attached are the comments of the National Venture Capital Association.

--
Ira Heffan
Goodwin | Procter
Exchange Place
Boston, MA 02109
tel. +1 617.570.1777
fax. +1 617 523.1231

<<Comments-of-NVCA.pdf>>

************************************************************

IRS CIRCULAR 230 DISCLOSURE:
To ensure compliance with requirements imposed by the IRS, we inform
you that any U.S. tax advice contained in this communication
(including any attachments) is not intended or written to be used,
and
cannot be used, for the purpose of (i) avoiding penalties under the
Internal Revenue Code or (ii) promoting, marketing or recommending
to
another party any transaction or matter addressed herein.

************************************************************

************************************************************

This message is intended only for the designated recipient(s). It
may
contain confidential or proprietary information and may be subject

5/5/06

A01463

to
the attorney-client privilege or other confidentiality protections.
If you are not a designated recipient, you may not review, copy or
distribute this message. If you receive this in error, please
notify
the sender by reply e-mail and delete this message. Thank you.
**************************************************************

5/5/06

A01464