# EXHIBIT 24
# PART 2

Dockets.Justia.com

independent claims and designated dependent claims that are disclosed by the references cited; (4) a detailed explanation of how each of the independent claims and designated dependent claims are patentable over the references cited with the particularity required by § 1.111(b) and (c); (5) a concise statement of the utility of the invention as defined in each of the independent claims; and (6) a showing of where each limitation of the independent claims and the designated dependent claims finds support under 35 U.S.C. 112, ¶ 1, in the written description of the specification (and if the application claims the benefit of one or more applications under title 35, United States Code, the showing must also include where each limitation of the independent claims and the designated dependent claims finds support under 35 U.S.C. 112, ¶ 1, in each such application in which such support exists).

Section 1.133(a)(2) was recently amended to permit an interview before first Office action in any application if the examiner determines that such an interview would advance prosecution of the application. If the examiner, after considering the application and examination support document, still has questions concerning the invention or how the claims define over the prior art or are patentable, the examiner may request an interview before first Office action. If the applicant declines such a request for an interview or if the interview does not result in the examiner obtaining the necessary information, the examiner may issue a requirement for information under § 1.105 to obtain such information.

19

Proposed § 1.261(b) provides that the preexamination search referred to in § 1.261(a)(1) must involve U.S. patents and patent application publications, foreign patent documents, and non-patent literature, unless the applicant can justify with reasonable certainty that no references more pertinent than those already identified are likely to be found in the eliminated source and includes such a justification with the statement required by § 1.261(a)(1). Proposed § 1.261(b) also provides that the preexamination search referred to in § 1.261(a)(1) must encompass all of the features of the independent claims and must cover all of the features of the designated dependent claims separately from the claim or claims from which the dependent claim depends, giving the claims the broadest reasonable interpretation. A search report from a foreign patent office will not satisfy the requirement in § 1.261(a)(1) for a preexamination search unless the search report satisfies the requirements for a preexamination search set forth in § 1.261.

Proposed § 1.261(c) provides that the applicant will be notified and given a one-month time period within which to file a corrected or supplemental examination support document to avoid abandonment if: (1) the examination support document or pre-examination search is deemed to be insufficient; (2) an explanation of the invention or how the independent and designated dependent claims define the invention is deemed necessary; or (3) the claims have been amended such that the examination support document no longer covers each independent claim. Proposed § 1.261(c) further provides that this one-month period is not extendable under § 1.136(a).

20

Section 1.704:  Section 1.704(c) is proposed to be amended to provide that the failure to file an examination support document in compliance with § 1.261 when necessary under § 1.75(b) is a circumstance that constitutes a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application under 35 U.S.C. 154(b)(2)(C) because the failure to provide an examination support document in compliance with § 1.261 when necessary under § 1.75(b) will delay processing or examination of an application because the Office must issue a notice and await the applicant's reply before examination of the application may begin.  Therefore, proposed § 1.704(c) provides that where there is a failure to file an examination support document in compliance with § 1.261 when necessary under § 1.75(b), the period of adjustment set forth in § 1.703 shall be reduced by the number of days, if any, beginning on the day after the date that is the later of the filing date of the amendment necessitating an examination support document in compliance with § 1.261, or four months from the filing date of the application in an application under 35 U.S.C. 111(a) or from the date on which the national stage commenced under 35 U.S.C. 371(b) or (f) in an application which entered the national stage from an international application after compliance with 35 U.S.C. 371, and ending on the date that either an examination support document in compliance with § 1.261, or an amendment, a suggested restriction requirement and election (§ 1.75(b)(3)(iii)) that obviates the need for an examination support document under § 1.261, was filed.

21

The proposed changes to §§ 1.75 and 1.104 (if adopted) would be applicable to any application filed on or after the effective date of the final rule, as well as to any application in which a first Office action on the merits (§ 1.104) was not mailed before the effective date of the final rule. The Office will provide applicants who filed their applications before the effective date of the final rule and who would be affected by the changes in the final rule with an opportunity to designate dependent claims for initial examination, and to submit either an examination support document under § 1.261 (proposed) or a new set of claims to avoid the need for an examination support document (if necessary). The Office appreciates that making the changes in the final rule also applicable to certain applications filed before its effective date will cause inconvenience to some applicants. The Office is also requesting suggestions for ways in which the Office can make the changes in the final rule also applicable to these pending applications with a minimum of inconvenience to such applicants.

**Regulatory Flexibility Act**: For the reasons set forth herein, the Deputy General Counsel for General Law of the United States Patent and Trademark Office has certified to the Chief Counsel for Advocacy of the Small Business Administration that changes proposed in this notice will not have a significant economic impact on a substantial number of small entities. <u>See</u> 5 U.S.C. 605(b).

This notice proposes to require an examination support document that covers each independent claim and each dependent claim designated for initial examination if: (1) the

22

application contains or is amended to contain more than ten independent claims; or
(2) the number of independent claims plus the number of dependent claims designated for
initial examination is greater than ten. There are no fees associated with this proposed
rule change.

The changes proposed in this notice will not affect a substantial number of small entities.
The Office's PALM records (PALM records as of October 13, 2005) show that the Office
has received 216,327 nonprovisional applications (65,785 small entity) since January 1,
2005, with about 2,522 (866 small entity) of these nonprovisional applications including
more than ten independent claims. Thus, since January 1, 2005, only 1.2 percent of all
nonprovisional applications and 1.3 percent of the small entity nonprovisional
applications contain or were amended to contain more than ten independent claims. In
addition, Office experience is that most applications which contain more than ten
independent claims contain claims that are directed to inventions that are independent and
distinct under 35 U.S.C. 121, and the proposed rule permits an applicant to avoid
submitting an examination support document by suggesting a requirement for restriction
accompanied by an election of an invention to which there are drawn no more than ten
independent claims. Therefore, the Office estimates that the proposed examination
support document requirement would not impact a substantial number of small entities.
It is also noted that the proposed rule change would not disproportionately impact small
entity applicants.

23

A07371

<u>The changes proposed in this notice will not have a significant economic impact upon small entities</u>. The primary impact of this change would be to require applicants who submit an excessive number of claims to share the burden of examining the application by filing an examination support document covering the independent claims and the designated dependent claims. There are no fees associated with this proposed rule change. The American Intellectual Property Law Association (AIPLA) 2003 Report of the Economic Survey indicates that the seventy-fifth percentile charge (for those reporting) for a patent novelty search, analysis, and opinion was $2,500.00. Given that the pre-filing preparation of an application containing more than ten independent claims should involve obtaining such a patent novelty search, analysis, and opinion, the Office does not consider the additional cost of providing an examination support document to be a significant economic impact on an applicant who is submitting an application containing more than ten independent claims. In any event, any applicant may avoid the costs of such an examination support document simply by refraining from presenting more than ten independent claims in an application.

**Executive Order 13132:** This rule making does not contain policies with federalism implications sufficient to warrant preparation of a Federalism Assessment under Executive Order 13132 (Aug. 4, 1999).

**Executive Order 12866:** This rule making has been determined to be significant for purposes of Executive Order 12866 (Sept. 30, 1993).

24

A07372

**Paperwork Reduction Act**: This notice involves information collection requirements which are subject to review by the Office of Management and Budget (OMB) under the Paperwork Reduction Act of 1995 (44 U.S.C. 3501 et seq.). The collection of information involved in this notice has been reviewed and previously approved by OMB under OMB control number 0651-0031. This notice proposes to require an examination support document that covers each independent claim and each dependent claim designated for initial examination if: (1) the application contains or is amended to contain more than ten independent claims; or (2) the number of independent claims plus the number of dependent claims designated for initial examination is greater than ten. The United States Patent and Trademark Office is resubmitting an information collection package to OMB for its review and approval because the changes in this notice do affect the information collection requirements associated with the information collection under OMB control number 0651-0031.

The title, description and respondent description of the information collection under OMB control number 0651-0031 is shown below with an estimate of the annual reporting burdens. Included in the estimate is the time for reviewing instructions, gathering and maintaining the data needed, and completing and reviewing the collection of information.

OMB Number: 0651-0031.

Title: Patent Processing (Updating).

25

Form Numbers: PTO/SB/08, PTO/SB/17i, PTO/SB/17p, PTO/SB/21-27, PTO/SB/24B, PTO/SB/30-32, PTO/SB/35-39, PTO/SB/42-43, PTO/SB/61-64, PTO/SB/64a, PTO/SB/67-68, PTO/SB/91-92, PTO/SB/96-97, PTO-2053-A/B, PTO-2054-A/B, PTO-2055-A/B, PTOL-413A.

Type of Review: Approved through July of 2006.

Affected Public: Individuals or Households, Business or Other For-Profit Institutions, Not-for-Profit Institutions, Farms, Federal Government and State, Local and Tribal Governments.

Estimated Number of Respondents: 2,284,439.

Estimated Time Per Response: 1 minute and 48 seconds to 12 hours.

Estimated Total Annual Burden Hours: 2,732,441 hours.

Needs and Uses: During the processing of an application for a patent, the applicant or applicant's representative may be required or desire to submit additional information to the United States Patent and Trademark Office concerning the examination of a specific application. The specific information required or which may be submitted includes: Information disclosure statement and citation, examination support documents, requests for extensions of time, the establishment of small entity status, abandonment and revival of abandoned applications, disclaimers, appeals, petitions, expedited examination of design applications, transmittal forms, requests to inspect, copy and access patent applications, publication requests, and certificates of mailing, transmittals, and submission of priority documents and amendments.

26

Comments are invited on: (1) whether the collection of information is necessary for proper performance of the functions of the agency; (2) the accuracy of the agency's estimate of the burden; (3) ways to enhance the quality, utility, and clarity of the information to be collected; and (4) ways to minimize the burden of the collection of information to respondents.

Interested persons are requested to send comments regarding these information collections, including suggestions for reducing this burden, to: (1) the Office of Information and Regulatory Affairs, Office of Management and Budget, New Executive Office Building, Room 10202, 725 17th Street, N.W., Washington, D.C. 20503, Attention: Desk Officer for the Patent and Trademark Office; and (2) Robert J. Spar, Director, Office of Patent Legal Administration, Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Notwithstanding any other provision of law, no person is required to respond to nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a currently valid OMB control number.

27

A07375

**List of Subjects**

37 CFR Part 1

Administrative practice and procedure, Courts, Freedom of Information, Inventions and

patents, Reporting and record keeping requirements, Small Businesses.

For the reasons set forth in the preamble, 37 CFR Part 1 is proposed to be amended as

follows:

**PART 1 - RULES OF PRACTICE IN PATENT CASES**

1.      The authority citation for 37 CFR Part 1 continues to read as follows:

**Authority:**  35 U.S.C. 2(b)(2).

2.      Section 1.75 is amended by revising paragraphs (b) and (c) to read as follows:

**§ 1.75  Claim(s)**

* * * * *

        (b) More than one claim may be presented provided they differ substantially from

each other and are not unduly multiplied.  One or more claims may be presented in

dependent form, referring back to and further limiting another claim or claims in the same

28

A07376

application. Claims in dependent form shall be construed to include all the limitations of the claim incorporated by reference into the dependent claim. Unless a dependent claim has been designated for initial examination prior to when the application has been taken up for examination, the examination of such dependent claim may be held in abeyance until the application is otherwise in condition for allowance. The mere presentation of a dependent claim in an application is not a designation of the dependent claim for initial examination.

(1) An applicant must submit an examination support document in compliance with § 1.261 that covers each independent claim and each dependent claim designated for initial examination if either:

(i) The application contains or is amended to contain more than ten independent claims; or

(ii) The number of independent claims plus the number of dependent claims designated for initial examination is greater than ten. A dependent claim (including a multiple dependent claim) designated for initial examination must depend only from a claim or claims that are also designated for initial examination.

(2) A claim that refers to another claim but does not incorporate by reference all of the limitations of the claim to which such claim refers will be treated as an independent claim for fee calculation purposes under § 1.16 (or § 1.492) and for purposes of paragraph (b)(1) of this section. A claim that refers to a claim of a different statutory class of invention will also be treated as an independent claim for fee calculation purposes under § 1.16 (or § 1.492) and for purposes of paragraph (b)(1) of this section.

29

A07377

(3) The applicant will be notified if an application contains or is amended to contain more than ten independent claims, or the number of independent claims plus the number of dependent claims designated for initial examination in such an application is greater than ten, but an examination support document under § 1.261 has been omitted. If prosecution of the application is not closed and it appears that omission was inadvertent, the notice will set a one-month time period that is not extendable under § 1.136(a) within which, to avoid abandonment of the application, the applicant must:

(i) File an examination support document in compliance with § 1.261 that covers each independent claim and each dependent claim designated for initial examination;

(ii) Cancel the requisite number of independent claims and rescind the designation for initial examination of the requisite number of dependent claims that necessitate an examination support document under § 1.261; or

(iii) Submit a suggested requirement for restriction accompanied by an election without traverse of an invention to which there are drawn no more than ten independent claims as well as no more than ten total independent claims and dependent claims designated for initial examination.

(4) If a nonprovisional application contains at least one claim that is patentably indistinct from at least one claim in one or more other nonprovisional applications or patents, and if such one or more other nonprovisional applications or patents and the first nonprovisional application are owned by the same person, or are subject to an obligation of assignment to the same person, and if such patentably indistinct claim has support under the first paragraph of 35 U.S.C. 112 in the earliest of such one or more other

30

nonprovisional applications or patents, the Office may require elimination of the patentably indistinct claims from all but one of the nonprovisional applications. If the patentably indistinct claims are not eliminated from all but one of the nonprovisional applications, the Office will treat the independent claims and the dependent claims designated for initial examination in the first nonprovisional application and in each of such other nonprovisional applications or patents as present in each of the nonprovisional applications for purposes of paragraph (b)(1) of this section.

(c) Any dependent claim which refers to more than one other claim ("multiple dependent claim") shall refer to such other claims in the alternative only. A multiple dependent claim shall not serve as a basis for any other multiple dependent claim. For fee calculation purposes under § 1.16 (or § 1.492) and for purposes of paragraph (b)(1) of this section, a multiple dependent claim will be considered to be that number of claims to which direct reference is made therein. For fee calculation purposes under § 1.16 (or § 1.492) and for purposes of paragraph (b)(1) of this section, any claim depending from a multiple dependent claim will be considered to be that number of claims to which direct reference is made in that multiple dependent claim. In addition to the other filing fees, any original application which is filed with, or is amended to include, multiple dependent claims must have paid therein the fee set forth in § 1.16(j). A multiple dependent claim shall be construed to incorporate by reference all the limitations of each of the particular claims in relation to which it is being considered.

* * * * *

31

A07379

3.    Section 1.104 is amended by revising paragraphs (a)(1), (b), and (c)(1) to read as follows:

§ 1.104 Nature of examination.

(a) Examiner's action.

(1) On taking up an application for examination or a patent in a reexamination proceeding, the examiner shall make a thorough study thereof and shall make a thorough investigation of the available prior art relating to the subject matter of the invention as claimed in the independent and the designated dependent claims. The examination shall be complete with respect both to compliance of the application or patent under reexamination with the applicable statutes and rules and to the patentability of the invention as claimed in the independent and the designated dependent claims, as well as with respect to matters of form, unless otherwise indicated.

*  *  *  *  *

(b) Completeness of examiner's action. The examiner's action will be complete as to all matters, except that in appropriate circumstances, such as misjoinder of invention, fundamental defects in the application, and the like, the action of the examiner may be limited to such matters before further action is made. However, matters of form need not be raised by the examiner until a claim is found allowable. The examination of a dependent claim that has not been designated for initial examination may be held in abeyance until the application is otherwise in condition for allowance.

32

A07380

(c) <u>Rejection of claims</u>.

(1) If the invention claimed in the independent and designated dependent claims is not considered patentable, the independent and the designated dependent claims, or those considered unpatentable, will be rejected.

\* \* \* \* \*

4.    Section 1.105 is amended by adding a new paragraph (a)(1)(ix) to read as follows:

§ 1.105  **Requirements for information.**

(a)(1) \* \* \*

(ix) <u>Support in the specification</u>:  Where (by page or paragraph and line) the specification of the application, or any application the benefit of whose filing date is sought under title 35, United States Code, provides written description support for the invention as defined in the claims (independent or dependent), and of manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the invention, under the first paragraph of 35 U.S.C. 112.

\* \* \* \* \*

33

A07381

5.    Section 1.117 is added to read as follows:

**§ 1.117 Refund due to cancellation of claim.**

(a) If an amendment canceling a claim is submitted in reply to a notice under § 1.75(b)(3) and prior to the first examination on the merits of the application, the applicant may request a refund of any fee paid on or after December 8, 2004, for such claim under § 1.16(h), (i), or (j) or under § 1.492(d), (c), or (f).

(b) A claim in an application filed under 35 U.S.C. 111(a) will also be considered canceled for purposes of this section if a declaration of express abandonment under § 1.138(d) has been filed in an application containing such claim in sufficient time to permit the appropriate officials to recognize the abandonment and remove the application from the files for examination before the application has been taken up for examination.

(c) Any request for refund under this section must be filed within two months from the date on which the claim was canceled. This two-month period is not extendable.

6.    Section 1.261 is added to read as follows:

**§ 1.261  Examination support document.**

(a) An examination support document as used in this part means a document that includes the following:

(1) A statement that a preexamination search was conducted, including an identification of the field of search by United States class and subclass and the date of the

34

A07382

search, where applicable, and, for database searches, the search logic or chemical structure or sequence used as a query, the name of the file or files searched and the database service, and the date of the search;

(2) An information disclosure statement in compliance with § 1.98 citing the reference or references deemed most closely related to the subject matter of each of the independent claims and designated dependent claims;

(3) For each reference cited, an identification of all the limitations of the independent claims and designated dependent claims that are disclosed by the reference;

(4) A detailed explanation of how each of the independent claims and designated dependent claims are patentable over the references cited with the particularity required by § 1.111(b) and (c);

(5) A concise statement of the utility of the invention as defined in each of the independent claims; and

(6) A showing of where each limitation of the independent claims and the designated dependent claims finds support under the first paragraph of 35 U.S.C. 112 in the written description of the specification. If the application claims the benefit of one or more applications under title 35, United States Code, the showing must also include where each limitation of the independent claims and the designated dependent claims finds support under the first paragraph of 35 U.S.C. 112 in each such application in which such support exists.

(b) The preexamination search referred to in paragraph (a)(1) of this section must involve U.S. patents and patent application publications, foreign patent documents, and

35

A07383

non-patent literature, unless the applicant can justify with reasonable certainty that no references more pertinent than those already identified are likely to be found in the eliminated source and includes such a justification with the statement required by paragraph (a)(1) of this section. The preexamination search referred to in paragraph (a)(1) of this section must be directed to the claimed invention and encompass all of the features of the independent claims and must cover all of the features of the designated dependent claims separately from the claim or claims from which the dependent claim depends, giving the claims the broadest reasonable interpretation. The preexamination search referred to in paragraph (a)(1) of this section must also encompass the disclosed features that may be claimed.

(c) If an examination support document is required, but the examination support document or pre-examination search is deemed to be insufficient, an explanation of the invention or how the independent and designated dependent claims define the invention is deemed necessary, or the claims have been amended such that the examination support document no longer covers each independent claim and each designated dependent claim, applicant will be notified and given a one-month time period within which to file a corrected or supplemental examination support document to avoid abandonment. This one-month period is not extendable under § 1.136(a).

36

7.    Section 1.704 is amended by redesignating paragraph (c)(11) as (c)(12) and adding new paragraph (c)(11) to read as follows:

### § 1.704  Reduction of period of adjustment of patent term.

* * * * *

    (c) * * *

    (11) Failure to file an examination support document in compliance with § 1.261 when necessary under § 1.75(b), in which case the period of adjustment set forth in § 1.703 shall be reduced by the number of days, if any, beginning on the day after the date that is the later of the filing date of the amendment necessitating an examination support document under § 1.261, or four months from the filing date of the application in an application under 35 U.S.C. 111(a) or from the date on which the national stage commenced under 35 U.S.C. 371(b) or (f) in an application which entered the national stage from an international application after compliance with 35 U.S.C. 371, and ending on the date that either an examination support document in compliance with § 1.261, or an amendment or suggested restriction requirement and election (§ 1.75(b)(3)(iii)) that obviates the need for an examination support document under § 1.261, was filed;

* * * * *

Date:_____    _____

                JON W. DUDAS
                Under Secretary of Commerce for Intellectual Property and
                    Director of the United States Patent and Trademark Office

37

A07385

[3510-16-P]

**DEPARTMENT OF COMMERCE**

**United States Patent and Trademark Office**

**37 CFR Part 1**

[Docket No.: 2005-P-066]

**RIN 0651-AB93**

**Changes to Practice for Continuing Applications, Requests for Continued
Examination Practice, and Applications Containing Patentably Indistinct Claims**

**AGENCY:** United States Patent and Trademark Office, Commerce.

**ACTION:** Notice of proposed rule making.

**SUMMARY:** Continued examination practice, including the use of both continuing
applications and requests for continued examination, permits applicants to obtain further
examination and advance an application to final agency action. This practice allow
applicants to craft their claims in light of the examiner's evidence and arguments, which
in turn may lead to well-designed claims that give the public notice of precisely what the
applicant regards as his or her invention. However, each continued examination filing,

**ATTACHMENT B**

[3510-16-P]

**DEPARTMENT OF COMMERCE**

**United States Patent and Trademark Office**

**37 CFR Part 1**

**[Docket No.: 2005-P-066]**

**RIN 0651-AB93**

**Changes to Practice for Continuing Applications, Requests for Continued**

**Examination Practice, and Applications Containing Patentably Indistinct Claims**

**AGENCY:** United States Patent and Trademark Office, Commerce.

**ACTION:** Notice of proposed rule making.

**SUMMARY:** Continued examination practice, including the use of both continuing

applications and requests for continued examination, permits applicants to obtain further

examination and advance an application to final agency action. This practice allow

applicants to craft their claims in light of the examiner's evidence and arguments, which

in turn may lead to well-designed claims that give the public notice of precisely what the

applicant regards as his or her invention. However, each continued examination filing,

whether a continuing application or request for continued examination, requires the United States Patent and Trademark Office (Office) to delay taking up a new application and thus contributes to the backlog of unexamined applications before the Office. In addition, current practice allows an applicant to generate an unlimited string of continued examination filings from an initial application. In such a string of continued examination filings, the exchange between examiners and applicants becomes less beneficial and suffers from diminishing returns as each of the second and subsequent continuing applications or requests for continued examination in a series is filed. Moreover, the possible issuance of multiple patents arising from such a process tends to defeat the public notice function of patent claims in the initial application.

The Office is making every effort to become more efficient, to ensure that the patent application process promotes innovation, and to improve the quality of issued patents. With respect to continued examination practice, the Office is proposing to revise the patent rules of practice to better focus the application process. The revised rules would require that second or subsequent continued examination filings, whether a continuation application, a continuation-in-part application, or a request for continued examination, be supported by a showing as to why the amendment, argument, or evidence presented could not have been previously submitted. It is expected that these rules will make the exchange between examiners and applicants more efficient and effective. The revised rules should also improve the quality of issued patents, making them easier to evaluate,

2

A07388

enforce, and litigate. Moreover, under the revised rules patents should issue sooner, thus giving the public a clearer understanding of what is patented.

The revised rules would also ease the burden of examining multiple applications that have the same effective filing date, overlapping disclosure, a common inventor, and common assignee by requiring that all patentably indistinct claims in such applications be submitted in a single application.

The changes proposed in this notice will also allow the Office to focus its patent examining resources on new applications instead of multiple continued examination filings that contain amendments or evidence that could have been submitted earlier, and thus allow the Office to reduce the backlog of unexamined applications. This will mean faster and more effective examination for the vast majority of applicants without any additional work on the applicant's part. Additional resources will be devoted to multiple continued examination filings only where necessary.

**COMMENT DEADLINE DATE**: To be ensured of consideration, written comments must be received on or before [Insert date 120 days after publication in the FEDERAL REGISTER]. No public hearing will be held.

**ADDRESSES**: Comments should be sent by electronic mail message over the Internet addressed to AB93Comments@uspto.gov. Comments may also be submitted by mail

3

A07389

addressed to:  Mail Stop Comments--Patents, Commissioner for Patents, P.O. Box 1450,
Alexandria, VA, 22313-1450, or by facsimile to (571) 273-7735, marked to the attention
of Robert W. Bahr.  Although comments may be submitted by mail or facsimile, the
Office prefers to receive comments via the Internet.  If comments are submitted by mail,
the Office prefers that the comments be submitted on a DOS formatted 3 ½ inch disk
accompanied by a paper copy.

Comments may also be sent by electronic mail message over the Internet via the Federal
eRulemaking Portal.  See the Federal eRulemaking Portal Web site
(http://www.regulations.gov) for additional instructions on providing comments via the
Federal eRulemaking Portal.

The comments will be available for public inspection at the Office of the Commissioner
for Patents, located in Madison East, Tenth Floor, 600 Dulany Street, Alexandria,
Virginia, and will be available via the Office Internet Web site (address:
http://www.uspto.gov).  **Because comments will be made available for public
inspection, information that is not desired to be made public, such as an address or
phone number, should not be included in the comments.**

**FOR FURTHER INFORMATION CONTACT:**  Robert W. Bahr, Senior Patent
Attorney, Office of the Deputy Commissioner for Patent Examination Policy, by
telephone at (571) 272-8800, by mail addressed to:  Mail Stop Comments--Patents,

4

A07390

Commissioner for Patents, P.O. Box 1450, Alexandria, VA, 22313-1450, or by facsimile
to (571) 273-7735, marked to the attention of Robert W. Bahr.

**SUPPLEMENTARY INFORMATION:** The current volume of continued examination
filings–including both continuing applications and requests for continued
examination–and duplicative applications that contain "conflicting" or patentably
indistinct claims, are having a crippling effect on the Office's ability to examine "new"
(i.e., non-continuing) applications. The cumulative effect of these continued examination
filings is too often to divert patent examining resources from the examination of new
applications to new technology and innovations, to the examination of applications that
have already been examined, have issued as patents, or have been abandoned. In
addition, when the continued examination process fails to reach a final resolution, and
when multiple applications containing claims to patentably indistinct inventions are filed,
the public is left uncertain as to what the set of patents resulting from the initial
application will cover. Thus, these practices impose a burden on innovation both by
retarding the Office's ability to examine new applications and by undermining the
function of claims to notify the public as to what technology is or is not available for use.

Commentators have noted that the current unrestricted continuing application and request
for continued examination practices preclude the Office from ever finally rejecting an
application or even from ever finally allowing an application. See Mark A. Lemley and
Kimberly A. Moore, Ending Abuse of Patent Continuations, 84 B.U. L. Rev. 63, 64

5

(2004). The burdens imposed by the repetitive filing of applications (as continuing

applications) on the Office (as well as on the public) is not a recent predicament. See To

Promote the Progress of Useful Arts, Report of the President's Commission on the Patent

System, at 17-18 (1966) (recommending changes to prevent the repetitive filing of

dependent (i.e., continuing) applications). Unrestricted continued examination filings and

multiple applications containing patentably indistinct claims, however, are now having

such an impact on the Office's ability to examine new applications that it is now

appropriate for the Office to clarify the applicant's duty to advance the application to final

action by placing some restrictions on the filing of multiple continuing applications,

requests for continued examination, and other multiple applications to the same

invention. See 35 U.S.C. 2(b) (authorizes the Office to establish regulations, not

inconsistent with law, which shall govern the conduct of proceedings in the Office, and

shall facilitate and expedite the processing of patent applications). This would permit the

Office to apply the patent examining resources currently absorbed by these applications to

the examination of new applications and thereby reduce the backlog of unexamined

applications.


The Office also notes that not every applicant comes to the Office prepared to particularly

point out and distinctly claim what the applicant regards as his invention, for example,

where the applicant's attorney or agent has not adequately reviewed or revised the

application documents (often a literal translation) received from the applicant. In these

situations examination of what applicants actually regard as their invention may not begin

6

until after one or more continued examination filings. Applicants should not rely on an unlimited number of continued examination filings to correct deficiencies in the claims and disclosure that applicant or applicant's representative have not adequately reviewed. In addition, a small minority of applicants have misused continued examination practice with multiple continued examination filings in order to simply delay the conclusion of examination. This skirts applicant's duty to make a bona fide attempt to advance the application to final agency action and impairs the ability of the Office to examine new and existing applications. It also prejudices the public by permitting applicants to keep applications in pending status while awaiting developments in similar or parallel technology and then later amending the pending application to cover the developments. The courts have permitted the addition of such claims, when supported under 35 U.S.C. 112, ¶ 1, to encompass products or processes discovered in the marketplace. See PIN/NIP, Inc., v. Platt Chemical Co., 304 F.3d 1235, 1247, 64 USPQ2d 1344, 1352 (Fed. Cir. 2002). However, the practice of maintaining continuing applications for the purpose of adding claims after such discoveries is not calculated to advance prosecution before the Office.

The Office, in light of its backlog and anticipated continued increase in applications is making every effort to become more efficient. Achieving greater efficiency requires the cooperation of those who provide the input into the examination process, the applicants and their representatives. With respect to continued examination practice, the Office is proposing to revise the rules of practice to assure that multiple continued examination

7

filings from a single application do not absorb agency resources unless necessary for effective examination. The revised rules would require that second or subsequent continuation or continuation-in-part applications and second or subsequent requests for continued examination of an application include a showing as to why the amendment, argument, or evidence presented could not have been previously submitted. It is expected that these rules will make the exchange between examiners and applicants more efficient, get claims to issue faster, and improve the quality of issued patents. The revised rules would also ease the burden of examining multiple applications that have the same effective filing date, overlapping disclosure, a common inventor, and common assignee by requiring that all patentably indistinct claims in such applications be submitted in a single application absent good and sufficient reason.

The Office's Patent Application Locating and Monitoring (PALM) records show that, in fiscal year 2005, the Office received approximately 317,000 nonprovisional applications, and that about 62,870 of these nonprovisional applications were continuing applications. In addition, the Office's PALM records show that the Office received about 52,750 requests for continued examination in fiscal year 2005. Thus, about thirty percent $(63,000 + 52,000)/(317,000 + 52,000)$ of the Office's patent examining resources must be applied to examining continued examination filings that require reworking earlier applications instead of examining new applications.

8

A07394

In comparison, the Office issued over 289,000 first Office actions on the merits in fiscal year 2005. Had there been no continued examination filings, the Office could have issued an action for every new application received in 2005 and reduced the backlog by issuing actions in 35,000 older cases. Instead, the Office's backlog grew because of the large number of continued examination filings.

Thus, current continued examination practice and the filing of multiple applications containing patentably indistinct claims are impairing the Office's ability to examine new applications without real certainty that these practices effectively advance prosecution, improve patent quality, or serve the typical applicant or the public. These proposed changes to the rules in title 37 of the Code of Federal Regulations (CFR) are intended to ensure that continued examination filings are used efficiently to move applications forward. The Office expects that the new rules will lead to more focused and efficient examination, improve the quality of issued patents, result in patents that issue faster, and give the public earlier notice of just what patentees claim. The changes to the rules also address the growing practice of filing (by a common applicant or assignee) of multiple applications containing patentably indistinct claims.

Of the roughly 63,000 continuing applications filed in fiscal year 2005, about 44,500 were designated as continuation/continuation-in-part (CIP) applications, and about 18,500 were designated as divisional applications. About 11,800 of the continuation/CIP applications were second or subsequent continuation/CIP applications. Of the over

9

52,000 requests for continued examination filed in fiscal year 2005, just under 10,000 were second or subsequent requests for continued examination. Thus, the Office's proposed requirements for seeking second and subsequent continuations will not have an effect on the vast majority of patent applications.

35 U.S.C. 111(a) and 120, respectively, permit an applicant to file a nonprovisional application and to claim the benefit of a prior-filed nonprovisional application. Similarly, 35 U.S.C. 363 and 365(c), respectively, permit an applicant to file an international application under Patent Cooperation Treaty (PCT) Article 11 and 35 U.S.C. 363 and, if the international application designates the United States of America, claim the benefit of a prior-filed international application designating the United States of America or a prior-filed nonprovisional application. Similarly again, 35 U.S.C. 111(a) and 365(c) permit an applicant to file a nonprovisional application (filed under 35 U.S.C. 111(a)) and claim the benefit of a prior-filed international application designating the United States of America (under 35 U.S.C. 365(c)).

The practice of filing "continuation applications" arose early in Office practice mainly as a procedural device to effectively permit the applicant to amend an application after rejection and receive an examination of the "amended" (or new) application. See In re Bogese, 22 USPQ2d 1821, 1824 (Comm'r Pats. 1991) (Bogese I). The concept of a continuation application per se was first recognized in Godfrey v. Eames, 68 U.S. (1 Wall.) 317, 325-26 (1864). See Bogese I, 22 USPQ2d at 1824. 35 U.S.C. 120 is a

10

codification of the continuation application practice recognized in Godfrey v. Eames. See
id (citing In re Hogan, 559 F.2d 595, 603, 194 USPQ 527, 535 (CCPA 1977)).

Applicants should understand, however, that there is not an unfettered right to file
multiple continuing applications without making a bona fide attempt to claim the
applicant's invention. See In re Bogese, 303 F.3d 1362, 64 USPQ2d 1448 (Fed. Cir.
2002) (Bogese II). While Bogese II was an extreme case, one of prosecution laches, it
makes clear that applicants face a general requirement of good faith in prosecution and
that the Director has the inherent authority, rooted in 35 U.S.C. 2, to ensure that
applicants comply with that duty. See Bogese II, 303 F.3d at 1368 n.5, 64 USPQ2d at
1452 n.5.

The proposed rules are not an attempt to codify Bogese II or to simply combat such
extreme cases of prosecutions laches. Nor do these rules set a per se limit on the number
of continuing applications. Compare In re Henriksen, 399 F.2d 253, 158 USPQ 224
(CCPA 1968). Rather, they require that applicants who file multiple continuing
applications from the same initial application show that the third and following
applications in the chain are necessary to advance prosecution. In particular, the proposed
rules require that any second or subsequent continuing application show to the
satisfaction of the Director that the amendment, argument, or evidence could not have
been submitted during the prosecution of the initial application or the first continuing
application.

11

A07397

The Office is aware of case law which suggests that the Office has no authority to place an absolute limit on the number of copending continuing applications originating from an original application. See In re Hogan, 559 F.2d at 603-05, 194 USPQ at 565-66; and Henriksen, 399 F.2d at 262, 158 USPQ at 231. The Office does not attempt that here. No limit is placed on the number of continuing applications. Rather applicants are required to show that later-filed applications in a multiple-continuing chain are necessary to claim the invention–and do not contain unnecessarily delayed evidence, arguments, or amendments that could have been presented earlier. In addition, in those earlier cases the Office had not promulgated any rules, let alone given the public adequate notice of, or an opportunity to respond to, the ad hoc limits imposed. See Henriksen, at 399 F.2d at 261-62, 158 USPQ at 231 (characterizing the action of the Office as akin to a retroactive rule change that had no support in the rules of practice or Manual of Patent Examining Procedure). Furthermore, the Court in Bogese II rejected the view that its previous case law (e.g., Henriksen) stood for the broad proposition that 35 U.S.C. 120 gave applicants carte blanche to prosecute continuing applications in any desired manner. See Bogese II, 303 F.3d at 1368 n.5, 64 USPQ2d at 1452 n.5.

35 U.S.C. 132(b) provides for the request for continued examination practice set forth in § 1.114. Unlike continuation application practice, the request for continued examination practice was recently added to title 35, U.S.C., in section 4403 of the American Inventors Protection Act of 1999. See Pub. L. 106-113, 113 Stat. 1501, 1501A-560 (1999). 35 U.S.C. 132(b) provides (inter alia) that the Office "shall prescribe regulations to

12

provide for the continued examination of applications for patent at the request of the applicant." Nothing in 35 U.S.C. 132(b) or its legislative history suggests that the Office must or even should permit an applicant to file an unlimited number of requests for continued examination in an application. Therefore, the Office is proposing rules that allow applicants to file their first request for continued examination without any justification, but require applicants to justify the need for any further requests for continued examination in light of the past prosecution.

The Office appreciates that appropriate continued examination practice permits an applicant to obtain further examination and advance an application to final action. The current unrestricted continued examination practice, however, does not provide adequate incentives to assure that the exchanges between an applicant and the examiner during the examination process are efficient. The marginal value vis-a-vis the patent examination process as a whole of exchanges between an applicant and the examiner during the examination process tends to decrease after the first continued examination filing. The Office resources absorbed by the examination of a second or subsequent continued examination filing are diverted away from the examination of new applications, thus increasing the backlog of unexamined applications. Therefore, the Office is proposing to require that an applicant filing a second or subsequent continuing application or second or subsequent request for continued examination include a showing as to why the amendment, argument, or evidence could not have been previously submitted.

13

The Office also appreciates that applicants sometimes use continued examination practice to obtain further examination rather than file an appeal to avoid the delays that historically have been associated with the appeal process. The Office, however, has taken major steps to eliminate such delays. The Board of Patent Appeals and Interferences (BPAI) has radically reduced the inventory of pending appeals from 9,201 at the close of fiscal year 1997 to 882 at the close of fiscal year 2005. The Office has also adopted an appeal conference program to review the rejections in applications in which an appeal brief has been filed to ensure that an appeal will not be forwarded to the BPAI for decision absent the concurrence of experienced examiners. See Manual of Patent Examining Procedure § 1208 (8th ed. 2001) (Rev. 3, August 2005) (MPEP). The Office is also in the process of adopting a pre-brief appeal conference program to permit an applicant to request that a panel of examiners review the rejections in his or her application prior to the filing of an appeal brief. See New Pre-Appeal Brief Conference Program, 1296 Off. Gaz. Pat. Office 67 (July 12, 2005). These programs provide for a relatively expeditious review of rejections in an application under appeal. Thus, for an applicant faced with a rejection that he or she feels is improper from a seemingly stubborn examiner, the appeal process offers a more effective resolution than seeking further examination before the examiner.

Efficient examination also requires that applicants share some of the burden of examination when they file multiple applications containing "conflicting" or patentably indistinct claims. The rules of practice currently provide that "[w]here two or more

14

applications filed by the same applicant contain conflicting claims, elimination of such
claims from all but one application may be required in the absence of good and sufficient
reason for their retention during pendency in more than one application." See current
§ 1.78(b). The Office is proposing to revise this rule so that, when an applicant (or
assignee) files multiple applications with the same effective filing date, a common
inventor and overlapping disclosures, the Office will presume that the applications
contain patentably indistinct claims. In such a situation, the applicant must either rebut
this presumption by explaining to the satisfaction of the Director how the applications
contain only patentably distinct claims, or submit the appropriate terminal disclaimers
and explain to the satisfaction of the Director why two or more pending applications
containing "conflicting" or patentably indistinct claims should be maintained. The effect
of this proposed rule will be to share the burden of examining multiple applications, with
overlapping disclosure, a common inventor, and the same filing date, for double
patenting.

Double patenting exists because a party (or parties to a joint research agreement under the
Cooperative Research and Technology Enhancement Act of 2004 (CREATE Act),
Pub. L. 108-453, 118 Stat. 3596 (2004)) has filed multiple patent applications containing
patentably indistinct claims. The applicant (or the owner of the application) is in a far
better position than the Office to determine whether there are one or more other
applications or patents containing patentably indistinct claims. For this reason, where an
applicant chooses to file multiple applications that are substantially the same, it will be

15

the applicant's responsibility to assist the Office in resolving potential double patenting situations rather than taking no action until faced with a double patenting rejection.

Finally, the Office has a first action final rejection practice under which the first Office action in a continuing application may be made final under certain circumstances. See MPEP § 706.07(b). If the changes proposed in this notice are adopted, the Office will discontinue this practice as no longer necessary in continuing applications under 35 U.S.C. 120, 121, or 365(c) and in requests for continued examination under 35 U.S.C. 132(b). The Office, however, does not plan any change to the final action practice for the Office action following a submission under § 1.129(a). See Changes to the Transitional Procedures for Limited Examination After Final Rejection in Certain Applications Filed Before June 8, 1995, 70 FR 24005 (May 6, 2005), 1295 Off. Gaz. Pat. Office 22 (Jun. 7, 2005).

**Discussion of Specific Rules**

Title 37 of the Code of Federal Regulations, Part 1, is proposed to be amended as follows:

Section 1.78: Section 1.78 is proposed to be reorganized as follows: (1) § 1.78(a) contains definitions of continuing application, continuation application, divisional application, and continuation-in-part application; (2) §1.78(b) contains provisions relating to claims under 35 U.S.C. 119(e) for the benefit of a prior-filed provisional application;

16

A07402

(3) §1.78(c) contains provisions relating to delayed claims under 35 U.S.C. 119(e) for the benefit of a prior-filed provisional application; (4) § 1.78(d) contains provisions relating to claims under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed nonprovisional or international application; (5) § 1.78(e) contains provisions relating to delayed claims under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed nonprovisional or international application; (6) § 1.78(f) contains provisions relating to applications naming at least one inventor in common and containing patentably indistinct claims; (7) § 1.78(g) contains provisions relating to applications or patents under reexamination naming different inventors and containing patentably indistinct claims; and (8) § 1.78(h) contains provisions pertaining to the treatment of parties to a joint research agreement under the CREATE Act.

Proposed 1.78(a)(1) defines a "continuing application" as a nonprovisional application or international application designating the United States of America that claims the benefit under 35 U.S.C. 120, 121, or 365(c) of a prior-filed nonprovisional application or international application designating the United States of America. Proposed 1.78(a)(1) further provides that an application that does not claim the benefit under 35 U.S.C. 120, 121, or 365(c) of a prior-filed application, is not a continuing application even if the application claims the benefit under 35 U.S.C. 119(e) of a provisional application, claims priority under 35 U.S.C. 119(a)-(d) or 365(b) to a foreign application, or claims priority under 35 U.S.C. 365(a) or (b) to an international application designating at least one country other than the United States of America. A continuing application must be one of

17

A07403

a continuation application, a divisional application, or a continuation-in-part application.
See MPEP § 201.11 ("To specify the relationship between the applications, applicant
must specify whether the application is a continuation, divisional, or continuation-in-part
of the prior application. Note that the terms are exclusive. An application cannot be, for
example, both a continuation and a divisional or a continuation and a continuation-in-part
of the same application.").

Proposed 1.78(a)(2) defines a "continuation application" as a continuing application as
defined in § 1.78(a)(1) that discloses and claims only an invention or inventions that were
disclosed in the prior-filed application. See MPEP § 201.07 (defines a continuation
application as an application that discloses (or discloses and claims) only subject matter
that was disclosed in the prior-filed nonprovisional application).

Proposed § 1.78(a)(3) defines a "divisional application" as a continuing application as
defined in § 1.78(a)(1) that discloses and claims only an invention or inventions that were
disclosed and claimed in the prior-filed application, but were subject to a requirement of
unity of invention under PCT Rule 13 or a requirement for restriction under 35 U.S.C.
121 and not elected for examination in the prior-filed application. MPEP § 201.06
defines a divisional application as an application for an independent and distinct
invention, which discloses and claims only subject matter that was disclosed in the
prior-filed nonprovisional application. Proposed § 1.78(a)(3), however, limits a the
definition of "divisional application" to an application that claims only an invention or

18

A07404

inventions that were subject to a requirement of unity of invention under PCT Rule 13 or
a requirement for restriction under 35 U.S.C. 121 and not elected for examination in the
prior-filed application. See 35 U.S.C. 121 ("[i]f two or more independent and distinct
inventions are claimed in one application, the Director may require the application to be
restricted to one of the inventions [and i]f the other invention is made the subject of a
divisional application which complies with the requirements of [35 U.S.C.] 120 . . . .").

Proposed § 1.78(a)(4) defines a "continuation-in-part application" as a continuing
application as defined in § 1.78(a)(1) that discloses subject matter that was not disclosed
in the prior-filed application. See MPEP § 201.08 (a continuation-in-part repeats some
substantial portion or all of the earlier nonprovisional application and adds matter not
disclosed in the prior-filed nonprovisional application).

Proposed § 1.78(b) contains provisions relating to claims under 35 U.S.C. 119(e) for the
benefit of a prior-filed provisional application. 35 U.S.C. 119(e)(1) requires that a
provisional application disclose the invention claimed in at least one claim of the
later-filed application in the manner provided by 35 U.S.C. 112, ¶ 1, for the later-filed
application to actually receive the benefit of the filing date of the provisional application.
See New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co., 298 F.3d 1290, 1294, 63 USPQ2d
1843, 1846 (Fed. Cir. 2002) (for a nonprovisional application to actually receive the
benefit of the filing date of the provisional application, "the specification of the
provisional [application] must 'contain a written description of the invention and the

19