# EXHIBIT 24
# PART 4

Dockets.Justia.com

(e) Delayed claims under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed nonprovisional application or international application. If the reference required by 35 U.S.C. 120 and paragraph (d)(3) of this section is presented after the time period provided by paragraph (d)(4) of this section, the claim under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed copending nonprovisional application or international application designating the United States of America may be accepted if the reference identifying the prior-filed application by application number or international application number and international filing date was unintentionally delayed. A petition to accept an unintentionally delayed claim under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed application will not be granted in an application in which a request for continued examination under § 1.114 has been filed. A petition to accept an unintentionally delayed claim under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed application must be accompanied by:

(1) The reference required by 35 U.S.C. 120 and paragraph (d)(3) of this section to the prior-filed application, unless previously submitted;

(2) The surcharge set forth in § 1.17(t); and

(3) A statement that the entire delay between the date the claim was due under paragraph (d)(4) of this section and the date the claim was filed was unintentional. The Director may require additional information where there is a question whether the delay was unintentional.

(f) Applications and patents naming at least one inventor in common. (1) If a nonprovisional application has a filing date that is the same as or within two months of

56

the filing date of one or more other pending or patented nonprovisional applications, taking into account any filing date for which a benefit is sought under title 35, United States Code, names at least one inventor in common with the one or more other nonprovisional applications, and is owned by the same person, or subject to an obligation of assignment to the same person, as the one or more other nonprovisional applications, the applicant must identify each such other application by application number (i.e., series code and serial number) and patent number (if applicable). The identification of such one or more other nonprovisional applications if required by this paragraph must be submitted within four months from the actual filing date of a nonprovisional application filed under 35 U.S.C. 111(a), or within four months from the date on which the national stage commenced under 35 U.S.C. 371(b) or (f) in a nonprovisional application which entered the national stage from an international application after compliance with 35 U.S.C. 371.

(2) If a nonprovisional application has the same filing date as the filing date of one or more other pending or patented nonprovisional applications, taking into account any filing date for which a benefit is sought under title 35, United States Code, names at least one inventor in common with the one or more other pending or patented nonprovisional applications, is owned by the same person, or subject to an obligation of assignment to the same person, and contains substantial overlapping disclosure as the one or more other pending or patented nonprovisional applications, a rebuttable presumption shall exist that the nonprovisional application contains at least one claim that is not patentably distinct from at least one of the claims in the one or more other pending or patented

57

A07443

nonprovisional applications. In this situation, the applicant in the nonprovisional application must either:

(i) Rebut this presumption by explaining to the satisfaction of the Director how the application contains only claims that are patentably distinct from the claims in each of such other pending applications or patents; or

(ii) Submit a terminal disclaimer in accordance with § 1.321(c). In addition, where one or more other pending nonprovisional applications have been identified, the applicant must explain to the satisfaction of the Director why there are two or more pending nonprovisional applications naming at least one inventor in common and owned by the same person, or subject to an obligation of assignment to the same person, which contain patentably indistinct claims.

(3) In the absence of good and sufficient reason for there being two or more pending nonprovisional applications naming at least one inventor in common and owned by the same person, or subject to an obligation of assignment to the same person, which contain patentably indistinct claims, the Office may require elimination of the patentably indistinct claims from all but one of the applications.

(g) Applications or patents under reexamination naming different inventors and containing patentably indistinct claims. If an application or a patent under reexamination and at least one other application naming different inventors are owned by the same party and contain patentably indistinct claims, and there is no statement of record indicating that the claimed inventions were commonly owned or subject to an obligation of assignment to the same person at the time the later invention was made, the Office may

58

A07444

require the assignee to state whether the claimed inventions were commonly owned or subject to an obligation of assignment to the same person at the time the later invention was made, and if not, indicate which named inventor is the prior inventor.

(h) <u>Parties to a joint research agreement</u>. If an application discloses or is amended to disclose the names of parties to a joint research agreement (35 U.S.C. 103(c)(2)(C)), the parties to the joint research agreement are considered to be the same person for purposes of this section. If the application is amended to disclose the names of parties to a joint research agreement under 35 U.S.C. 103(c)(2)(C), the identification of such one or more other nonprovisional applications as required by paragraph (f)(1) of this section must be submitted with the amendment under 35 U.S.C. 103(c)(2)(C) unless such identification is or has been submitted within the four-month period specified in paragraph (f)(1) of this section.

3.     Section 1.114 is amended by revising the introductory text of paragraph (a) and by adding a new paragraph (f) to read as follows:

### § 1.114 Request for continued examination.

(a) If prosecution in an application is closed, an applicant may, subject to the conditions of this section, file a request for continued examination of the application by filing a submission and the fee set forth in § 1.17(e) prior to the earliest of:

* * * * *

59

(f) An applicant may not file more than a single request for continued examination under this section in any application, and may not file any request for continued examination under this section in any continuing application (§ 1.78(a)(1)) other than a divisional application in compliance with § 1.78(d)(1)(ii), unless the request for continued examination also includes a petition accompanied by the fee set forth in § 1.17(f) and a showing to the satisfaction of the Director that the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the application. Any other proffer of a request for continued examination in an application not on appeal will be treated as a submission under § 1.116. Any other proffer of a request for continued examination in an application on appeal will be treated only as a request to withdraw the appeal.

4.      Section 1.495 is amended by revising paragraph (g) to read as follows:

§ 1.495 Entering the national stage in the United States of America.

* * * * *

(g) The documents and fees submitted under paragraphs (b) and (c) of this section must be clearly identified as a submission to enter the national stage under 35 U.S.C. 371. If the documents and fees contain conflicting indications as between an application under 35 U.S.C. 111 and a submission to enter the national stage under 35 U.S.C. 371, the

60

A07446

documents and fees will be treated as a submission to enter the national stage under

35 U.S.C. 371.

\* \* \* \* \*

Date:_____    _____

JON W. DUDAS
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office

61

A07447

# Appendix L Patent Laws

## United States Code Title 35 - Patents

**35 U.S.C. 2 Powers and duties.**

(a) IN GENERAL.— The United States Patent and Trademark Office, subject to the policy direction of the Secretary of Commerce—

(1) shall be responsible for the granting and issuing of patents and the registration of trademarks; and

(2) shall be responsible for disseminating to the public information with respect to patents and trademarks.

(b) SPECIFIC POWERS.— The Office—

(1) shall adopt and use a seal of the Office, which shall be judicially noticed and with which letters patent, certificates of trademark registrations, and papers issued by the Office shall be authenticated;

(2) may establish regulations, not inconsistent with law, which—

(A) shall govern the conduct of proceedings in the Office;

(B) shall be made in accordance with section 553 of title 5;

(C) shall facilitate and expedite the processing of patent applications, particularly those which can be filed, stored, processed, searched, and retrieved electronically, subject to the provisions of section 122 relating to the confidential status of applications;

(D) may govern the recognition and conduct of agents, attorneys, or other persons representing applicants or other parties before the Office, and may require them, before being recognized as representatives of applicants or other persons, to show that they are of good moral character and reputation and are possessed of the necessary qualifications to render to applicants or other persons valuable service, advice, and assistance in the presentation or prosecution of their applications or other business before the Office;

(E) shall recognize the public interest in continuing to safeguard broad access to the United States patent system through the reduced fee structure for small entities under section 41(h)(1) of this title; and

(F) provide for the development of a per-formance-based process that includes quantitative and qualitative measures and standards for evaluating cost-effectiveness and is consistent with the principles of impartiality and competitiveness;

(3) may acquire, construct, purchase, lease, hold, manage, operate, improve, alter, and renovate any real, personal, or mixed property, or any interest therein, as it considers necessary to carry out its functions;

(4)(A) may make such purchases, contracts for the construction, or management and operation of facilities, and contracts for supplies or services, without regard to the provisions of subtitle I and chapter 33 of title 40, title III of the Federal Property and Administrative Services Act of 1949 (41 U.S.C. 251 et seq.), and the McKinney-Vento Homeless Assistance Act (42 U.S.C. 11301 et seq.);

(B) may enter into and perform such purchases and contracts for printing services, including the process of composition, platemaking, presswork, silk screen processes, binding, microform, and the products of such processes, as it considers necessary to carry out the functions of the Office, without regard to sections 501 through 517 and 1101 through 1123 of title 44;

(5) may use, with their consent, services, equipment, personnel, and facilities of other departments, agencies, and instrumentalities of the Federal Government, on a reimbursable basis,

**ATTACHMENT C**

# Appendix L Patent Laws

## United States Code Title 35 - Patents

**35 U.S.C. 2 Powers and duties.**

(a) IN GENERAL.— The United States Patent and Trademark Office, subject to the policy direction of the Secretary of Commerce—

(1) shall be responsible for the granting and issuing of patents and the registration of trademarks; and

(2) shall be responsible for disseminating to the public information with respect to patents and trademarks.

(b) SPECIFIC POWERS.— The Office—

(1) shall adopt and use a seal of the Office, which shall be judicially noticed and with which letters patent, certificates of trademark registrations, and papers issued by the Office shall be authenticated;

(2) may establish regulations, not inconsistent with law, which—

(A) shall govern the conduct of proceedings in the Office;

(B) shall be made in accordance with section 553 of title 5;

(C) shall facilitate and expedite the processing of patent applications, particularly those which can be filed, stored, processed, searched, and retrieved electronically, subject to the provisions of section 122 relating to the confidential status of applications;

(D) may govern the recognition and conduct of agents, attorneys, or other persons representing applicants or other parties before the Office, and may require them, before being recognized as representatives of applicants or other persons, to show that they are of good moral character and reputation and are possessed of the necessary qualifications to render to applicants or other persons valuable service, advice, and assistance in the presentation or prosecution of their applications or other business before the Office;

(E) shall recognize the public interest in continuing to safeguard broad access to the United States patent system through the reduced fee structure for small entities under section 41(h)(1) of this title; and

(F) provide for the development of a per-formance-based process that includes quantitative and qualitative measures and standards for evaluating cost-effectiveness and is consistent with the principles of impartiality and competitiveness;

(3) may acquire, construct, purchase, lease, hold, manage, operate, improve, alter, and renovate any real, personal, or mixed property, or any interest therein, as it considers necessary to carry out its functions;

(4)(A) may make such purchases, contracts for the construction, or management and operation of facilities, and contracts for supplies or services, without regard to the provisions of subtitle I and chapter 33 of title 40, title III of the Federal Property and Administrative Services Act of 1949 (41 U.S.C. 251 et seq.), and the McKinney-Vento Homeless Assistance Act (42 U.S.C. 11301 et seq.);

(B) may enter into and perform such purchases and contracts for printing services, including the process of composition, platemaking, presswork, silk screen processes, binding, microform, and the products of such processes, as it considers necessary to carry out the functions of the Office, without regard to sections 501 through 517 and 1101 through 1123 of title 44;

(5) may use, with their consent, services, equipment, personnel, and facilities of other departments, agencies, and instrumentalities of the Federal Government, on a reimbursable basis,

and cooperate with such other departments, agencies, and instrumentalities in the establishment and use of services, equipment, and facilities of the Office;

(6) may, when the Director determines that it is practicable, efficient, and cost-effective to do so, use, with the consent of the United States and the agency, instrumentality, Patent and Trademark Office, or international organization concerned, the services, records, facilities, or personnel of any State or local government agency or instrumentality or foreign patent and trademark office or international organization to perform functions on its behalf;

(7) may retain and use all of its revenues and receipts, including revenues from the sale, lease, or disposal of any real, personal, or mixed property, or any interest therein, of the Office;

(8) shall advise the President, through the Secretary of Commerce, on national and certain international intellectual property policy issues;

(9) shall advise Federal departments and agencies on matters of intellectual property policy in the United States and intellectual property protection in other countries;

(10) shall provide guidance, as appropriate, with respect to proposals by agencies to assist foreign governments and international intergovernmental organizations on matters of intellectual property protection;

(11) may conduct programs, studies, or exchanges of items or services regarding domestic and international intellectual property law and the effectiveness of intellectual property protection domestically and throughout the world;

(12)(A) shall advise the Secretary of Commerce on programs and studies relating to intellectual property policy that are conducted, or authorized to be conducted, cooperatively with foreign intellectual property offices and international intergovernmental organizations; and

(B) may conduct programs and studies described in subparagraph (A); and

(13)(A) in coordination with the Department of State, may conduct programs and studies cooperatively with foreign intellectual property offices and international intergovernmental organizations; and

(B) with the concurrence of the Secretary of State, may authorize the transfer of not to exceed $100,000 in any year to the Department of State for the purpose of making special payments to international intergovernmental organizations for studies and programs for advancing international cooperation concerning patents, trademarks, and other matters.

(c) CLARIFICATION OF SPECIFIC POWERS.—

(1) The special payments under subsection (b)(13)(B) shall be in addition to any other payments or contributions to international organizations described in subsection (b)(13)(B) and shall not be subject to any limitations imposed by law on the amounts of such other payments or contributions by the United States Government.

(2) Nothing in subsection (b) shall derogate from the duties of the Secretary of State or from the duties of the United States Trade Representative as set forth in section 141 of the Trade Act of 1974 (19 U.S.C. 2171).

(3) Nothing in subsection (b) shall derogate from the duties and functions of the Register of Copyrights or otherwise alter current authorities relating to copyright matters.

(4) In exercising the Director's powers under paragraphs (3) and (4)(A) of subsection (b), the Director shall consult with the Administrator of General Services.

(5) In exercising the Director's powers and duties under this section, the Director shall consult with the Register of Copyrights on all copyright and related matters.

(d) CONSTRUCTION.— Nothing in this section shall be construed to nullify, void, cancel, or interrupt any pending request-for-proposal let or contract issued by the General Services Administration for the specific purpose of relocating or leasing space to the United States Patent and Trademark Office.

(Amended Jan. 2, 1975, Public Law 93-596, sec. 1, 88 Stat. 1949; amended Nov. 29, 1999, Public Law 106-113, sec. 1000(a)(9), 113 Stat. 1501A-572 (S. 1948 sec. 4712); subsection (b)(4)(A) amended Oct. 30, 2000, Public Law 106-400, sec. 2, 114 Stat. 1675; subsections (b)(2)(B) and (b)(4)(B) amended Nov. 2, 2002, Public Law 107-273, sec. 13206, 116 Stat. 1904; subsection (b)(4)(A) amended Dec. 15, 2003, Public Law 108-178, sec. 4(g), 117 Stat. 2641.)

## CHAPTER 12 — EXAMINATION OF APPLICATION

**35 U.S.C. 131 Examination of application.**

The Director shall cause an examination to be made of the application and the alleged new invention; and if on such examination it appears that the applicant is entitled to a patent under the law, the Director shall issue a patent therefor.

(Amended Nov. 29, 1999, Public Law 106-113, sec. 1000(a)(9), 113 Stat. 1501A-582 (S. 1948 sec. 4732(a)(10)(A)).)

**35 U.S.C. 132 Notice of rejection; reexamination.**

(a) Whenever, on examination, any claim for a patent is rejected, or any objection or requirement made, the Director shall notify the applicant thereof, stating the reasons for such rejection, or objection or requirement, together with such information and references as may be useful in judging of the propriety of continuing the prosecution of his application; and if after receiving such notice, the applicant persists in his claim for a patent, with or without amendment, the application shall be reexamined. No amendment shall introduce new matter into the disclosure of the invention.

(b) The Director shall prescribe regulations to provide for the continued examination of applications for patent at the request of the applicant. The Director may establish appropriate fees for such continued examination and shall provide a 50 percent reduction in such fees for small entities that qualify for reduced fees under section 41(h)(1) of this title.

(Amended Nov. 29, 1999, Public Law 106-113, sec. 1000(a)(9), 113 Stat. 1501A-560, 582 (S. 1948 secs. 4403 and 4732(a)(10)(A)).)

# Appendix R PATENT RULES

# Title 37 - Code of Federal Regulations Patents, Trademarks, and Copyrights

## SPECIFICATION

1    Detailed description and specification of the invention.
2    Title and abstract.
3    Summary of the invention.
4    Reference to drawings.
5    Claim(s).
6    Application data sheet.
7    Arrangement of application element

## PECIFICATION

8    Detailed description and specification of the invention.
9    Title and abstract.
10   Summary of the invention.
11   Reference to drawings.
12   Claim(s).
13   Application data sheet.
14   Arrangement of application element

### ACTION BY APPLICANT AND FURTHER CONSIDERATION

**§ 1.75 Claim(s).**

(a) The specification must conclude with a claim particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention or discovery.

(b) More than one claim may be presented provided they differ substantially from each other and are not unduly multiplied.

(c) One or more claims may be presented in dependent form, referring back to and further limiting another claim or claims in the same application. Any dependent claim which refers to more than one other claim ("multiple dependent claim") shall refer to such other claims in the alternative only. A multiple dependent claim shall not serve as a basis for any other multiple dependent claim. For fee calculation purposes under § 1.16, a multiple dependent claim will be considered to be that number of claims to which direct reference is made therein. For fee calculation purposes also, any claim depending from a multiple dependent claim will be considered to be that number of claims to which direct reference is made in that multiple dependent claim. In addition to the other filing fees, any original application which is filed with, or is amended to include, multiple dependent claims must have paid therein the fee set forth in § 1.16(j). Claims in dependent form shall be construed to include all the limitations of the claim incorporated by reference into the dependent claim. A multiple dependent claim shall be construed to incorporate by reference all the limitations of each of the particular claims in relation to which it is being considered.

A07452

(d)(1) The claim or claims must conform to the invention as set forth in the remainder of the specification and the terms and phrases used in the claims must find clear support or antecedent basis in the description so that the meaning of the terms in the claims may be ascertainable by reference to the description. (See § 1.58(a)).

(2) See §§ 1.141 to 1.146 as to claiming different inventions in one application.

(e) Where the nature of the case admits, as in the case of an improvement, any independent claim should contain in the following order:

(1) A preamble comprising a general description of all the elements or steps of the claimed combination which are conventional or known,

(2) A phrase such as "wherein the improvement comprises," and

(3) Those elements, steps, and/or relationships which constitute that portion of the claimed combination which the applicant considers as the new or improved portion.

(f) If there are several claims, they shall be numbered consecutively in Arabic numerals.

(g) The least restrictive claim should be presented as claim number 1, and all dependent claims should be grouped together with the claim or claims to which they refer to the extent practicable.

(h) The claim or claims must commence on a separate physical sheet or electronic page. Any sheet including a claim or portion of a claim may not contain any other parts of the application or other material.

(i) Where a claim sets forth a plurality of elements or steps, each element or step of the claim should be separated by a line indentation.

[31 FR 12922, Oct. 4, 1966; 36 FR 12690, July 3, 1971; 37 FR 21995, Oct. 18, 1972; 43 FR 4015, Jan. 31, 1978; para. (c), 47 FR 41276, Sept. 17, 1982, effective Oct. 1, 1982; para. (g) amended, paras. (h) and (i) added, 61 FR 42790, Aug. 19, 1996, effective Sept. 23, 1996; para. (h) revised, 68 FR 38611, June 30, 2003, effective July 30, 2003; para. (h) revised, 68 FR 38611, June 30, 2003, effective July 30, 2003; para. (c) revised, 70 FR 3880, Jan. 27, 2005, effective Dec. 8, 2004]

### § 1.78 Claiming benefit of earlier filing date and cross-references to other applications.

(a)(1) A nonprovisional application or international application designating the United States of America may claim an invention disclosed in one or more prior-filed copending nonprovisional applications or international applications designating the United States of America. In order for an application to claim the benefit of a prior-filed copending nonprovisional application or international application designating the United States of America, each prior-filed application must name as an inventor at least one inventor named in the later-filed application and disclose the named inventor's invention claimed in at least one claim of the later-filed application in the manner provided by the first paragraph of 35 U.S.C. 112. In addition, each prior-filed application must be:

(i) An international application entitled to a filing date in accordance with PCT Article 11 and designating the United States of America; or

(ii) Entitled to a filing date as set forth in § 1.53(b) or § 1.53(d) and have paid therein the basic filing fee set forth in § 1.16 within the pendency of the application.

(2)(i) Except for a continued prosecution application filed under § 1.53(d), any nonprovisional application or international application designating the United States of America claiming the benefit of one or more prior-filed copending nonprovisional applications or international applications designating the United States of America must contain or be amended to contain a reference to each such prior-filed application, identifying it by application number (consisting of the series code and serial number) or international application number and

international filing date and indicating the relationship of the applications. Cross references to other related applications may be made when appropriate (see § 1.14).

(ii) This reference must be submitted during the pendency of the later-filed application. If the later-filed application is an application filed under 35 U.S.C. 111(a), this reference must also be submitted within the later of four months from the actual filing date of the later-filed application or sixteen months from the filing date of the prior-filed application. If the later-filed application is a nonprovisional application which entered the national stage from an international application after compliance with 35
U.S.C. 371, this reference must also be submitted within the later of four months from the date on which the national stage commenced under 35 U.S.C. 371

(b) or (f) in the later-filed international application or sixteen months from the filing date of the prior-filed application. These time periods are not extendable. Except as provided in paragraph (a)(3) of this section, the failure to timely submit the reference required by 35 U.S.C. 120 and paragraph (a)(2)(i) of this section is considered a waiver of any benefit under 35 U.S.C. 120, 121, or 365(c) to such prior-filed application. The time periods in this paragraph do not apply if the later-filed application is:

(A) An application for a design patent;

(B) An application filed under 35 U.S.C. 111 (a) before November 29, 2000; or

(C) A nonprovisional application which entered the national stage after compliance with 35 U.S.C. 371 from an international application filed under 35 U.S.C. 363 before November 29, 2000.

(iii) If the later-filed application is a non-provisional application, the reference required by this paragraph must be included in an application data sheet (§ 1.76), or the specification must contain or be amended to contain such reference in the first sentence(s) following the title.

(iv) The request for a continued prosecution application under § 1.53(d) is the specific reference required by 35 U.S.C. 120 to the prior-filed application. The identification of an application by application number under this section is the identification of every application assigned that application number necessary for a specific reference required by 35 U.S.C. 120 to every such application assigned that application number.

(3) If the reference required by 35 U.S.C. 120 and paragraph (a)(2) of this section is presented after the time period provided by paragraph (a)(2)(ii) of this section, the claim under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed copending non-provisional application or international application designating the United States of America may be accepted if the reference identifying the prior-filed application by application number or international application number and international filing date was unintentionally delayed. A petition to accept an unintentionally delayed claim under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed application must be accompanied by:

(i) The reference required by 35 U.S.C. 120 and paragraph (a)(2) of this section to the prior-filed application, unless previously submitted;

between the date the claim was due under paragraph (a)(2)(ii) of this section and the date the claim was filed was unintentional. The Director may require additional information where there is a question whether the delay was unintentional.

(4) A nonprovisional application, other than for a design patent, or an international application designating the United States of America may claim an invention disclosed in one or more prior-filed provisional applications. In order for an application to claim the benefit of one or more prior-filed provisional applications, each prior-filed provisional application must name as an inventor at least one inventor named in the later-filed application and disclose the named inventor's invention claimed in at least one claim of the later-filed application in the manner provided by the first paragraph of 35 U.S.C. 112. In addition, each prior-filed provisional

application must be entitled to a filing date as set forth in § 1.53(c), and the basic filing fee set forth in § 1.16(d) must be paid within the time period set forth in § 1.53(g).

(5)(i) Any nonprovisional application or international application designating the United States of America claiming the benefit of one or more prior-filed provisional applications must contain or be amended to contain a reference to each such prior-filed provisional application, identifying it by the provisional application number (consisting of series code and serial number).

(ii) This reference must be submitted during the pendency of the later-filed application. If the later-filed application is an application filed under 35 U.S.C. 111(a), this reference must also be submitted within the later of four months from the actual filing date of the later-filed application or sixteen months from the filing date of the prior-filed provisional application. If the later-filed application is a nonprovisional application which entered the national stage from an international application after compliance with 35 U.S.C. 371, this reference must also be submitted within the later of four months from the date on which the national stage commenced under 35 U.S.C. 371(b) or (f) in the later-filed international application or sixteen months from the filing date of the prior-filed provisional application. These time periods are not extendable. Except as provided in paragraph(a)(6) of this section, the failure to timely submit the reference is considered a waiver of any benefit under 35 U.S.C. 119(e) to such prior-filed provisional application. The time periods in this paragraph do not apply if the later-filed application is:

(A) An application filed under 35 U.S.C. 111(a) before November 29, 2000; or

(B) A nonprovisional application which entered the national stage after compliance with 35 U.S.C. 371 from an international application filed under 35 U.S.C. 363 before November 29, 2000.

(iii) If the later-filed application is a non-provisional application, the reference required by this paragraph must be included in an application data sheet (§ 1.76), or the specification must contain or be amended to contain such reference in the first sen-tence(s) following the title.

(iv) If the prior-filed provisional application was filed in a language other than English and an English-language translation of the prior-filed provisional application and a statement that the translation is accurate were not previously filed in the prior-filed provisional application or the later-filed nonprovisional application, applicant will be notified and given a period of time within which to file an English-lan-guage translation of the non-English-language prior-filed provisional application and a statement that the translation is accurate. In a pending nonprovisional application, failure to timely reply to such a notice will result in abandonment of the application.

(6) If the reference required by 35 U.S.C. 119(e) and paragraph (a)(5) of this section is presented in a nonprovisional application after the time period provided by paragraph (a)(5)(ii) of this section, the claim under 35 U.S.C. 119(e) for the benefit of a prior filed provisional application may be accepted during the pendency of the later-filed application if the reference identifying the prior-filed application by provisional application number was unintentionally delayed. A petition to accept an unintentionally delayed claim under 35 U.S.C. 119(e) for the benefit of a prior-filed provisional application must be accompanied by:

(i) The reference required by 35 U.S.C. 119(e) and paragraph (a)(5) of this section to the prior-filed provisional application, unless previously submitted;

(ii) The surcharge set forth in § 1.17(t); and

(iii) A statement that the entire delay between the date the claim was due under paragraph (a)(5)(ii) of this section and the date the claim was filed was unintentional. The Director may require additional information where there is a question whether the delay was unintentional.

(b) Where two or more applications filed by the same applicant contain conflicting claims, elimination of such claims from all but one application may be required in the absence of good and sufficient reason for their retention during pendency in more than one application.

A07455

(c) If an application or a patent under reexamination and at least one other application naming different inventors are owned by the same person and contain conflicting claims, and there is no statement of record indicating that the claimed inventions were commonly owned or subject to an obligation of assignment to the same person at the time the later invention was made, the Office may require the assignee to state whether the claimed inventions were commonly owned or subject to an obligation of assignment to the same person at the time the later invention was made, and if not, indicate which named inventor is the prior inventor. Even if the claimed inventions were commonly owned, or subject to an obligation of assignment to the same person, at the time the later invention was made, the conflicting claims may be rejected under the doctrine of double patenting in view of such commonly owned or assigned applications or patents under reexamination.

[36 FR 7312, Apr. 17, 1971; 49 FR 555, Jan. 4, 1984; paras. (a), (c) & (d), 50 FR 9380, Mar. 7, 1985, effective May 8, 1985; 50 FR 11366, Mar. 21, 1985; para. (a) revised 58 FR 54504, Oct. 22, 1993, effective Jan. 3, 1994; paras. (a)(1) and (a)(2) revised and paras. (a)(3) and (a)(4) added, 60 FR 20195, Apr. 25, 1995, effective June 8, 1995; para.

(c) revised and para. (d) deleted, 61 FR 42790, Aug. 19, 1996, effective Sept. 23, 1996; para. (a) revised, 62 FR 53131, Oct. 10, 1997, effective Dec. 1, 1997; para. (a)(3) revised, 65 FR 14865, Mar. 20, 2000, effective May 29, 2000 (adopted as final, 65 FR 50092, Aug. 16, 2000); paras. (a)(2), (a)(4), and (c) revised, 65 FR 54604, Sept. 8, 2000, effective Sept. 8, 2000; paras. (a)(2), (a)(3), and (a)(4) revised and paras. (a)(5) and (a)(6) added, 65 FR 57024, Sept. 20, 2000, effective Nov. 29, 2000; para. (a) revised, 66 FR 67087, Dec. 28, 2001, effective Dec. 28, 2001; paras. (a)(3)(iii) & (a)(6)(iii) revised, 68 FR 14332, Mar. 25, 2003, effective May 1, 2003; para (a)(3) revised, 68 FR 70996, Dec. 22, 2003, effective Jan. 21, 2004; paras. (a)(1), (a)(2)(iii), (a)(5)(iii) and (c) revised, 69 FR 56481, Sept. 21, 2004, effective Sept. 21, 2004; para. (a)(4) revised, 70 FR 3880, Jan. 27, 2005, effective Dec. 8, 2004; para.(a)(1)(iii) removed and para. (a)(1)(ii) revised, 70 FR 30360, May 26, 2005, effective July 1, 2005]

### § 1.114 Request for continued examination.

(a) If prosecution in an application is closed, an applicant may request continued examination of the application by filing a submission and the fee set forth in § 1.17(e) prior to the earliest of:

(1) Payment of the issue fee, unless a petition under § 1.313 is granted;

(2) Abandonment of the application; or

(3) The filing of a notice of appeal to the U.S. Court of Appeals for the Federal Circuit under 35 U.S.C. 141, or the commencement of a civil action under 35 U.S.C. 145 or 146, unless the appeal or civil action is terminated.

(b) Prosecution in an application is closed as used in this section means that the application is under appeal, or that the last Office action is a final action (§ 1.113), a notice of allowance (§ 1.311), or an action that otherwise closes prosecution in the application.

(c) A submission as used in this section includes, but is not limited to, an information disclosure statement, an amendment to the written description, claims, or drawings, new arguments, or new evidence in support of patentability. If reply to an Office action under 35 U.S.C. 132 is outstanding, the submission must meet the reply requirements of § 1.111.

(d) If an applicant timely files a submission and fee set forth in § 1.17(e), the Office will withdraw the finality of any Office action and the submission will be entered and considered. If an applicant files a request for continued examination under this section after appeal, but prior to a decision on the appeal, it will be treated as a request to withdraw the appeal and to reopen prosecution of the application before the examiner. An appeal brief (§ 41.37 of this title) or a reply brief (§ 41.41 of this title), or related papers, will not be considered a submission under this section.

A07456

(e) The provisions of this section do not apply to:

(1) A provisional application;

(2) An application for a utility or plant patent filed under 35 U.S.C. 111(a) before June 8, 1995;

(3) An international application filed under 35 U.S.C. 363 before June 8, 1995;

(4) An application for a design patent; or

(5) A patent under reexamination.

[Added 65 FR 14865, Mar. 20, 2000, effective May 29, 2000; revised 65 FR 50092, Aug. 16, 2000; para. (d) revised, 69 FR 49959, Aug. 12, 2004, effective Sept. 13, 2004]

A07457

# Appendix R PATENT RULES

# Title 37 - Code of Federal Regulations Patents, Trademarks, and Copyrights

## SPECIFICATION

1      Detailed description and specification of the invention.
2      Title and abstract.
3      Summary of the invention.
4      Reference to drawings.
5      Claim(s).
6      Application data sheet.
7      Arrangement of application element

## PECIFICATION

8      Detailed description and specification of the invention.
9      Title and abstract.
10     Summary of the invention.
11     Reference to drawings.
12     Claim(s).
13     Application data sheet.
14     Arrangement of application element

## ACTION BY APPLICANT AND FURTHER CONSIDERATION

### § 1.75 Claim(s).

(a) The specification must conclude with a claim particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention or discovery.

(b) More than one claim may be presented provided they differ substantially from each other and are not unduly multiplied.

(c) One or more claims may be presented in dependent form, referring back to and further limiting another claim or claims in the same application. Any dependent claim which refers to more than one other claim ("multiple dependent claim") shall refer to such other claims in the alternative only. A multiple dependent claim shall not serve as a basis for any other multiple dependent claim. For fee calculation purposes under § 1.16, a multiple dependent claim will be considered to be that number of claims to which direct reference is made therein. For fee calculation purposes also, any claim depending from a multiple dependent claim will be considered to be that number of claims to which direct reference is made in that multiple dependent claim. In addition to the other filing fees, any original application which is filed with, or is amended to include, multiple dependent claims must have paid therein the fee set forth in § 1.16(j). Claims in dependent form shall be construed to include all the limitations of the claim incorporated by reference into the dependent claim. A multiple dependent claim shall be construed to incorporate by reference all the limitations of each of the particular claims in relation to which it is being considered.

(d)(1) The claim or claims must conform to the invention as set forth in the remainder of the specification and the terms and phrases used in the claims must find clear support or antecedent basis in the description so that the meaning of the terms in the claims may be ascertainable by reference to the description. (See § 1.58(a)).

(2) See §§ 1.141 to 1.146 as to claiming different inventions in one application.

(e) Where the nature of the case admits, as in the case of an improvement, any independent claim should contain in the following order:

(1) A preamble comprising a general description of all the elements or steps of the claimed combination which are conventional or known,

(2) A phrase such as "wherein the improvement comprises," and

(3) Those elements, steps, and/or relationships which constitute that portion of the claimed combination which the applicant considers as the new or improved portion.

(f) If there are several claims, they shall be numbered consecutively in Arabic numerals.

(g) The least restrictive claim should be presented as claim number 1, and all dependent claims should be grouped together with the claim or claims to which they refer to the extent practicable.

(h) The claim or claims must commence on a separate physical sheet or electronic page. Any sheet including a claim or portion of a claim may not contain any other parts of the application or other material.

(i) Where a claim sets forth a plurality of elements or steps, each element or step of the claim should be separated by a line indentation.

[31 FR 12922, Oct. 4, 1966; 36 FR 12690, July 3, 1971; 37 FR 21995, Oct. 18, 1972; 43 FR 4015, Jan. 31, 1978; para. (c), 47 FR 41276, Sept. 17, 1982, effective Oct. 1, 1982; para. (g) amended, paras. (h) and (i) added, 61 FR 42790, Aug. 19, 1996, effective Sept. 23, 1996; para. (h) revised, 68 FR 38611, June 30, 2003, effective July 30, 2003; para. (h) revised, 68 FR 38611, June 30, 2003, effective July 30, 2003; para. (c) revised, 70 FR 3880, Jan. 27, 2005, effective Dec. 8, 2004]

## § 1.78 Claiming benefit of earlier filing date and cross-references to other applications.

(a)(1) A nonprovisional application or international application designating the United States of America may claim an invention disclosed in one or more prior-filed copending nonprovisional applications or international applications designating the United States of America. In order for an application to claim the benefit of a prior-filed copending nonprovisional application or international application designating the United States of America, each prior-filed application must name as an inventor at least one inventor named in the later-filed application and disclose the named inventor's invention claimed in at least one claim of the later-filed application in the manner provided by the first paragraph of 35 U.S.C. 112. In addition, each prior-filed application must be:

(i) An international application entitled to a filing date in accordance with PCT Article 11 and designating the United States of America; or

(ii) Entitled to a filing date as set forth in § 1.53(b) or § 1.53(d) and have paid therein the basic filing fee set forth in § 1.16 within the pendency of the application.

(2)(i) Except for a continued prosecution application filed under § 1.53(d), any nonprovisional application or international application designating the United States of America claiming the benefit of one or more prior-filed copending nonprovisional applications or international applications designating the United States of America must contain or be amended to contain a reference to each such prior-filed application, identifying it by application number (consisting of the series code and serial number) or international application number and

A07459

international filing date and indicating the relationship of the applications. Cross references to other related applications may be made when appropriate (see § 1.14).

(ii) This reference must be submitted during the pendency of the later-filed application. If the later-filed application is an application filed under 35 U.S.C. 111(a), this reference must also be submitted within the later of four months from the actual filing date of the later-filed application or sixteen months from the filing date of the prior-filed application. If the later-filed application is a nonprovisional application which entered the national stage from an international application after compliance with 35 U.S.C. 371, this reference must also be submitted within the later of four months from the date on which the national stage commenced under 35 U.S.C. 371

(b) or (f) in the later-filed international application or sixteen months from the filing date of the prior-filed application. These time periods are not extendable. Except as provided in paragraph (a)(3) of this section, the failure to timely submit the reference required by 35 U.S.C. 120 and paragraph (a)(2)(i) of this section is considered a waiver of any benefit under 35 U.S.C. 120, 121, or 365(c) to such prior-filed application. The time periods in this paragraph do not apply if the later-filed application is:

(A) An application for a design patent;
(B) An application filed under 35 U.S.C. 111 (a) before November 29, 2000; or
(C) A nonprovisional application which entered the national stage after compliance with 35 U.S.C. 371 from an international application filed under 35 U.S.C. 363 before November 29, 2000.

(iii) If the later-filed application is a non-provisional application, the reference required by this paragraph must be included in an application data sheet (§ 1.76), or the specification must contain or be amended to contain such reference in the first sentence(s) following the title.

(iv) The request for a continued prosecution application under § 1.53(d) is the specific reference required by 35 U.S.C. 120 to the prior-filed application. The identification of an application by application number under this section is the identification of every application assigned that application number necessary for a specific reference required by 35 U.S.C. 120 to every such application assigned that application number.

(3) If the reference required by 35 U.S.C. 120 and paragraph (a)(2) of this section is presented after the time period provided by paragraph (a)(2)(ii) of this section, the claim under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed copending non-provisional application or international application designating the United States of America may be accepted if the reference identifying the prior-filed application by application number or international application number and international filing date was unintentionally delayed. A petition to accept an unintentionally delayed claim under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed application must be accompanied by:

(i) The reference required by 35 U.S.C. 120 and paragraph (a)(2) of this section to the prior-filed application, unless previously submitted;

between the date the claim was due under paragraph (a)(2)(ii) of this section and the date the claim was filed was unintentional. The Director may require additional information where there is a question whether the delay was unintentional.

(4) A nonprovisional application, other than for a design patent, or an international application designating the United States of America may claim an invention disclosed in one or more prior-filed provisional applications. In order for an application to claim the benefit of one or more prior-filed provisional applications, each prior-filed provisional application must name as an inventor at least one inventor named in the later-filed application and disclose the named inventor's invention claimed in at least one claim of the later-filed application in the manner provided by the first paragraph of 35 U.S.C. 112. In addition, each prior-filed provisional

application must be entitled to a filing date as set forth in § 1.53(c), and the basic filing fee set forth in § 1.16(d) must be paid within the time period set forth in § 1.53(g).

(5)(i) Any nonprovisional application or international application designating the United States of America claiming the benefit of one or more prior-filed provisional applications must contain or be amended to contain a reference to each such prior-filed provisional application, identifying it by the provisional application number (consisting of series code and serial number).

(ii) This reference must be submitted during the pendency of the later-filed application. If the later-filed application is an application filed under 35 U.S.C. 111(a), this reference must also be submitted within the later of four months from the actual filing date of the later-filed application or sixteen months from the filing date of the prior-filed provisional application. If the later-filed application is a nonprovisional application which entered the national stage from an international application after compliance with 35 U.S.C. 371, this reference must also be submitted within the later of four months from the date on which the national stage commenced under 35 U.S.C. 371(b) or (f) in the later-filed international application or sixteen months from the filing date of the prior-filed provisional application. These time periods are not extendable. Except as provided in paragraph(a)(6) of this section, the failure to timely submit the reference is considered a waiver of any benefit under 35 U.S.C. 119(e) to such prior-filed provisional application. The time periods in this paragraph do not apply if the later-filed application is:

(A) An application filed under 35 U.S.C. 111(a) before November 29, 2000; or

(B) A nonprovisional application which entered the national stage after compliance with 35 U.S.C. 371 from an international application filed under 35 U.S.C. 363 before November 29, 2000.

(iii) If the later-filed application is a non-provisional application, the reference required by this paragraph must be included in an application data sheet (§ 1.76), or the specification must contain or be amended to contain such reference in the first sen-tence(s) following the title.

(iv) If the prior-filed provisional application was filed in a language other than English and an English-language translation of the prior-filed provisional application and a statement that the translation is accurate were not previously filed in the prior-filed provisional application or the later-filed nonprovisional application, applicant will be notified and given a period of time within which to file an English-lan-guage translation of the non-English-language prior-filed provisional application and a statement that the translation is accurate. In a pending nonprovisional application, failure to timely reply to such a notice will result in abandonment of the application.

(6) If the reference required by 35 U.S.C. 119(e) and paragraph (a)(5) of this section is presented in a nonprovisional application after the time period provided by paragraph (a)(5)(ii) of this section, the claim under 35 U.S.C. 119(e) for the benefit of a prior filed provisional application may be accepted during the pendency of the later-filed application if the reference identifying the prior-filed application by provisional application number was unintentionally delayed. A petition to accept an unintentionally delayed claim under 35 U.S.C. 119(e) for the benefit of a prior-filed provisional application must be accompanied by:

(i) The reference required by 35 U.S.C. 119(e) and paragraph (a)(5) of this section to the prior-filed provisional application, unless previously submitted;

(ii) The surcharge set forth in § 1.17(t); and

(iii) A statement that the entire delay between the date the claim was due under paragraph (a)(5)(ii) of this section and the date the claim was filed was unintentional. The Director may require additional information where there is a question whether the delay was unintentional.

(b) Where two or more applications filed by the same applicant contain conflicting claims, elimination of such claims from all but one application may be required in the absence of good and sufficient reason for their retention during pendency in more than one application.

(c) If an application or a patent under reexamination and at least one other application naming different inventors are owned by the same person and contain conflicting claims, and there is no statement of record indicating that the claimed inventions were commonly owned or subject to an obligation of assignment to the same person at the time the later invention was made, the Office may require the assignee to state whether the claimed inventions were commonly owned or subject to an obligation of assignment to the same person at the time the later invention was made, and if not, indicate which named inventor is the prior inventor. Even if the claimed inventions were commonly owned, or subject to an obligation of assignment to the same person, at the time the later invention was made, the conflicting claims may be rejected under the doctrine of double patenting in view of such commonly owned or assigned applications or patents under reexamination.

[36 FR 7312, Apr. 17, 1971; 49 FR 555, Jan. 4, 1984; paras. (a), (c) & (d), 50 FR 9380, Mar. 7, 1985, effective May 8, 1985; 50 FR 11366, Mar. 21, 1985; para. (a) revised 58 FR 54504, Oct. 22, 1993, effective Jan. 3, 1994; paras. (a)(1) and (a)(2) revised and paras. (a)(3) and (a)(4) added, 60 FR 20195, Apr. 25, 1995, effective June 8, 1995; para.

(c) revised and para. (d) deleted, 61 FR 42790, Aug. 19, 1996, effective Sept. 23, 1996; para. (a) revised, 62 FR 53131, Oct. 10, 1997, effective Dec. 1, 1997; para. (a)(3) revised, 65 FR 14865, Mar. 20, 2000, effective May 29, 2000 (adopted as final, 65 FR 50092, Aug. 16, 2000); paras. (a)(2), (a)(4), and (c) revised, 65 FR 54604, Sept. 8, 2000, effective Sept. 8, 2000; paras. (a)(2), (a)(3), and (a)(4) revised and paras. (a)(5) and (a)(6) added, 65 FR 57024, Sept. 20, 2000, effective Nov. 29, 2000; para. (a) revised, 66 FR 67087, Dec. 28, 2001, effective Dec. 28, 2001; paras. (a)(3)(iii) & (a)(6)(iii) revised, 68 FR 14332, Mar. 25, 2003, effective May 1, 2003; para (a)(3) revised, 68 FR 70996, Dec. 22, 2003, effective Jan. 21, 2004; paras. (a)(1), (a)(2)(iii), (a)(5)(iii) and (c) revised, 69 FR 56481, Sept. 21, 2004, effective Sept. 21, 2004; para. (a)(4) revised, 70 FR 3880, Jan. 27, 2005, effective Dec. 8, 2004; para.(a)(1)(iii) removed and para. (a)(1)(ii) revised, 70 FR 30360, May 26, 2005, effective July 1, 2005]

## § 1.114 Request for continued examination.

(a) If prosecution in an application is closed, an applicant may request continued examination of the application by filing a submission and the fee set forth in § 1.17(e) prior to the earliest of:

(1) Payment of the issue fee, unless a petition under § 1.313 is granted;

(2) Abandonment of the application; or

(3) The filing of a notice of appeal to the U.S. Court of Appeals for the Federal Circuit under 35 U.S.C. 141, or the commencement of a civil action under 35 U.S.C. 145 or 146, unless the appeal or civil action is terminated.

(b) Prosecution in an application is closed as used in this section means that the application is under appeal, or that the last Office action is a final action (§ 1.113), a notice of allowance (§ 1.311), or an action that otherwise closes prosecution in the application.

(c) A submission as used in this section includes, but is not limited to, an information disclosure statement, an amendment to the written description, claims, or drawings, new arguments, or new evidence in support of patentability. If reply to an Office action under 35 U.S.C. 132 is outstanding, the submission must meet the reply requirements of § 1.111.

(d) If an applicant timely files a submission and fee set forth in § 1.17(e), the Office will withdraw the finality of any Office action and the submission will be entered and considered. If an applicant files a request for continued examination under this section after appeal, but prior to a decision on the appeal, it will be treated as a request to withdraw the appeal and to reopen prosecution of the application before the examiner. An appeal brief (§ 41.37 of this title) or a reply brief (§ 41.41 of this title), or related papers, will not be considered a submission under this section.

A07462

(e) The provisions of this section do not apply to:

(1) A provisional application;

(2) An application for a utility or plant patent filed under 35 U.S.C. 111(a) before June 8, 1995;

(3) An international application filed under 35 U.S.C. 363 before June 8, 1995;

(4) An application for a design patent; or

(5) A patent under reexamination.

[Added 65 FR 14865, Mar. 20, 2000, effective May 29, 2000; revised 65 FR 50092, Aug. 16, 2000; para. (d) revised, 69 FR 49959, Aug. 12, 2004, effective Sept. 13, 2004]

## Information Quality Guidelines

### I. BACKGROUND

The United States Congress recognized a need to improve the quality of information disseminated to the public by the Federal Government.  In Section 515 of the Treasury and General Government Appropriations Act for Fiscal Year 2001 (Public Law 106-554; H.R. 5658) Congress directed the Office of Management and Budget (OMB) to issue, by September 30, 2001, government-wide guidelines that "provide policy and procedural guidance to Federal agencies for ensuring and maximizing the quality, objectivity, utility, and integrity of information (including statistical information) disseminated by Federal agencies."  OMB issued proposed information quality guidelines, which were published in the *Federal Register* on June 28, 2001 (Vol. 66, No. 125, pp. 34489-34493).  After public comment and revision, OMB issued final information quality guidelines in the *Federal Register* on September 28, 2001 (Vol. 66, No. 189, pp. 49718-49725).  In the OMB final information quality guidelines issued in September 2001, OMB requested additional public comment on the "capable of being substantially reproduced" standard and the related definition of "influential, scientific, or statistical information" (paragraphs V.3.B, V.9, and V.10), which were issued on an interim final basis.  The OMB final information quality guidelines were published in the *Federal Register* on January 3, 2002 (Vol. 67, No. 2, pp. 369-378); corrected on February 5, 2002 (Vol. 67, No. 24, pg. 5365); and reprinted in their entirety February 22, 2002 (Vol. 67, No. 36, pp. 8451-8460). Federal agencies subject to the Paperwork Reduction Act (44 U.S.C. Chapter 35) were directed by OMB to (A) issue their own guidelines ensuring and maximizing the quality, objectivity, utility, and integrity of information (including statistical information) disseminated by the agency; (B) establish administrative mechanisms allowing affected persons to seek and obtain correction of information maintained and disseminated by the agency; (C) report periodically to the Director of OMB – (i) the number and nature of complaints received by the agency regarding the accuracy of information disseminated by the agency and; (ii) how such complaints were handled by the agency.

Pursuant to the OMB information quality guidelines, the USPTO published a *Federal Register* Notice of Availability on May 2, 2002 (Vol. 67, No.85, pg. 22052), requesting public comment on the "Proposed guidelines for ensuring and maximizing the quality, objectivity, utility, and integrity of information disseminated by the USPTO".  The proposed USPTO information quality guidelines were posted on the USPTO website in the News & Notices section from April 30, 2002 – May 31, 2002.

During the public comment period (May 1, 2002 – May 31, 2002) on the proposed USPTO information quality guidelines, the USPTO received six sets of comments. All six sets of comments were reviewed and considered in the preparation of the final USPTO information quality guidelines.

### II. INTRODUCTION

After OMB review, USPTO consideration of OMB comments, and appropriate revision; these final USPTO information quality guidelines implement Section 515 of the Treasury and General Government Appropriations Act for Fiscal Year 2001 (Public Law 106-554; H.R. 5658) and fulfill the OMB requirements published in the

## ATTACHMENT D

## Information Quality Guidelines

### I. BACKGROUND

The United States Congress recognized a need to improve the quality of information disseminated to the public by the Federal Government. In Section 515 of the Treasury and General Government Appropriations Act for Fiscal Year 2001 (Public Law 106-554; H.R. 5658) Congress directed the Office of Management and Budget (OMB) to issue, by September 30, 2001, government-wide guidelines that "provide policy and procedural guidance to Federal agencies for ensuring and maximizing the quality, objectivity, utility, and integrity of information (including statistical information) disseminated by Federal agencies." OMB issued proposed information quality guidelines, which were published in the *Federal Register* on June 28, 2001 (Vol. 66, No. 125, pp. 34489-34493). After public comment and revision, OMB issued final information quality guidelines in the *Federal Register* on September 28, 2001 (Vol. 66, No. 189, pp. 49718-49725). In the OMB final information quality guidelines issued in September 2001, OMB requested additional public comment on the "capable of being substantially reproduced" standard and the related definition of "influential, scientific, or statistical information" (paragraphs V.3.B, V.9, and V.10), which were issued on an interim final basis. The OMB final information quality guidelines were published in the *Federal Register* on January 3, 2002 (Vol. 67, No. 2, pp. 369-378); corrected on February 5, 2002 (Vol. 67, No. 24, pg. 5365); and reprinted in their entirety February 22, 2002 (Vol. 67, No. 36, pp. 8451-8460). Federal agencies subject to the Paperwork Reduction Act (44 U.S.C. Chapter 35) were directed by OMB to (A) issue their own guidelines ensuring and maximizing the quality, objectivity, utility, and integrity of information (including statistical information) disseminated by the agency; (B) establish administrative mechanisms allowing affected persons to seek and obtain correction of information maintained and disseminated by the agency; (C) report periodically to the Director of OMB – (i) the number and nature of complaints received by the agency regarding the accuracy of information disseminated by the agency and; (ii) how such complaints were handled by the agency.

Pursuant to the OMB information quality guidelines, the USPTO published a *Federal Register* Notice of Availability on May 2, 2002 (Vol. 67, No.85, pg. 22052), requesting public comment on the "Proposed guidelines for ensuring and maximizing the quality, objectivity, utility, and integrity of information disseminated by the USPTO". The proposed USPTO information quality guidelines were posted on the USPTO website in the News & Notices section from April 30, 2002 – May 31, 2002.

During the public comment period (May 1, 2002 – May 31, 2002) on the proposed USPTO information quality guidelines, the USPTO received six sets of comments. All six sets of comments were reviewed and considered in the preparation of the final USPTO information quality guidelines.

### II. INTRODUCTION

After OMB review, USPTO consideration of OMB comments, and appropriate revision, these final USPTO information quality guidelines implement Section 515 of the Treasury and General Government Appropriations Act for Fiscal Year 2001 (Public Law 106-554; H.R. 5658) and fulfill the OMB requirements published in the *Federal Register* February 22, 2002 (Vol. 67, No. 36, pp. 8451-8460). The USPTO

collaborated closely with the Department of Commerce (DOC) in preparing these independent guidelines. This document may be revised periodically and re-disseminated, based upon direction from OMB, evolving requirements at the USPTO, or concerns expressed by the public. Effective October 1, 2002, information disseminated by the USPTO will comply with all applicable OMB and (these) USPTO information quality guidelines.

In implementing the USPTO information quality guidelines, the USPTO acknowledges that improving the quality of information is an important management objective that takes its place alongside other USPTO objectives, such as ensuring the success of USPTO missions, observing budget and resource priorities and constraints, and providing useful information to the public in a timely manner. The USPTO intends to implement these guidelines in a way that will achieve all of these objectives in a harmonious way.

### III. MILESTONES

- **April 1, 2002 (extended to May 1, 2002 by OMB):** Federal agencies must publish a notice of availability of their proposed information quality guidelines in the *Federal Register*, and post the proposed information quality guidelines on the agency's website, to provide an opportunity for public comment.
- **July 1, 2002 (extended to August 8, 2002 by OMB):** Federal agencies upon consideration of public comment and after appropriate revision, must submit revised information quality guidelines to OMB for review regarding consistency with the OMB guidelines.
- **September 16, 2002:** Federal agencies upon consideration of the OMB specific agency comments, the September 5, 2002 OMB memorandum, and after appropriate revision, must electronic mail (e-mail) their second draft of the final information quality guidelines to OMB for a second review regarding consistency with the OMB guidelines.
- **October 1, 2002:** Federal agencies upon consideration of OMB comments and after appropriate revision, must publish a notice of availability of their final information quality guidelines in the *Federal Register*, and post the final information quality guidelines on the agency's website.
- **October 1, 2002 (continued):** Federal agencies' information quality guidelines become effective. Federal agencies' must conduct pre-dissemination review of information that the agency first disseminates on or after the effective date. In addition, Federal agencies' must allow the public to seek correction of agency maintained or disseminated information that does not comply with the OMB or agency's information quality guidelines.
- **January 1, 2004:** The first annual fiscal-year report to the Director of OMB is due covering the complaints, appeals, and resolutions from October 1, 2002 – September 30, 2003.

### IV. DEFINITIONS

A. The definitions below are from the OMB information quality guidelines and apply throughout the USPTO information quality guidelines.

1. **"Dissemination"** means agency initiated or sponsored distribution of information to the public. Dissemination does not include: distribution to government employees or agency contractors or grantees; intra- or inter-agency use or sharing of government information; and responses to requests for agency records under the Freedom of Information Act (FOIA), the Privacy Act, the Federal Advisory Committee Act or other similar law. This definition also does not include: distribution of correspondence with individuals or

2

A07466

persons, press releases, archival records, public filings, subpoenas or adjudicative processes.

a. **"Agency initiated distribution of information to the public"** refers to information that the agency distributes or releases which reflects, represents, or forms any part of the support of the policies of the agency. In addition, if the agency, as an institution, distributes or releases information prepared by an outside party in a manner that reasonably suggests that the agency agrees with the information, this would be considered agency initiated distribution and hence agency dissemination because of the appearance of having the information represent agency views. By contrast, the agency does not "initiate" the dissemination of information when an agency employee, contractor, sub-contractor, or grantee publishes and communicates their respective research findings in the same manner as their colleagues, even if the agency retains ownership or other intellectual property rights because the Federal government paid for the research.

b. **"Agency sponsored distribution of information to the public"** refers to situations where the agency has directed a third party to distribute or release information, or where the agency has the authority to review and approve the information before release. By contrast, if the agency simply provides funding to support research, and if the researcher (not the agency) decides whether to distribute the results and – if the results are to be released – determines the content and presentation of the distribution, then the agency has not "sponsored" the dissemination even though it has funded the research and even if the agency retains ownership or other intellectual property rights because the Federal government paid for the research. Note that subsequent agency dissemination of such information would require that the information adhere to the agency's information quality guidelines even if it was initially covered by a disclaimer.

2.  **"Government information"** means information created, collected, processed, disseminated, or disposed of by or for the Federal Government.
3.  **"Influential"**, when used in the phrase "influential scientific, financial, or statistical information", means information that will have or does have a clear and substantial impact on important public policies or important private sector decisions.
4.  **"Information"** means any communication or representation of knowledge such as facts or data, in any medium or form, including textual, numerical, graphic, cartographic, narrative, or audiovisual forms. This definition includes information that an agency disseminates from a web page, but does not include the provision of hyperlinks to information that others disseminate. This definition does not include opinions, where the agency's presentation makes it clear that what is being offered is someone's opinion rather than fact or the agency's views.
5.  **"Information dissemination product"** means any books, paper, map, machine-readable material, audiovisual production, or other documentary material, regardless of physical form or characteristic, an agency disseminates to the public. This definition includes any electronic document, optical disc (i.e., CD-ROM, DVD-ROM, etc.), or web page.
6.  **"Quality"** is an encompassing term comprising *objectivity, utility,* and *integrity*. These guidelines sometimes refer to these three statutory terms collectively as "quality".

a. **"Objectivity"** involves two distinct elements, presentation and substance. The presentation element includes whether disseminated information is being presented in an accurate, clear, complete, unbiased manner, and within a proper context. Sometimes, in disseminating certain types of

3

A07467

information to the public, other information must be disseminated in order to ensure an accurate, complete, and unbiased presentation. Sources of the disseminated information (to the extent possible, consistent with confidentiality protections) and, in a scientific, or statistical context, the supporting data and models need to be identified, so that the public can assess for itself whether there may be some reason to question the objectivity of the sources. Where appropriate, supporting data shall have full, accurate, transparent documentation, and error sources affecting data quality shall be identified and disclosed to users. The substance element focuses on ensuring accurate, reliable, and unbiased information. In a scientific, or statistical context, the original or supporting data shall be generated, and the analytical results shall be developed, using sound statistical and research methods. If the results have been subject to formal, independent, external peer review, the information can generally be considered of acceptable objectivity. In those situations involving influential scientific or statistical information, the results must be capable of being substantially reproduced, if the original or supporting data are independently analyzed using the same models. Reproducibility does not mean that the original or supporting data have to be capable of being replicated through new experiments, samples, or tests. Making the data and models publicly available will assist in determining whether analytical results are capable of being substantially reproduced. However, these guidelines do not alter the otherwise applicable standards and procedures for determining when and how information is disclosed. Thus, the objectivity standard does not override other compelling interests, such as privacy, trade secrets, and other confidentiality protections.

b. **"Utility"** refers to the usefulness of the information to its intended users, including the public. In assessing the usefulness of information that the agency disseminates to the public, the agency considers the uses of the information not only from its own perspective but also from the perspective of the public.

c. **"Integrity"** refers to the security of information – the protection of information from unauthorized access or revision, to ensure that the information is not compromised through corruption or falsification.

7.   **"Reproducibility"** means that the information is capable of being substantially reproduced, subject to an acceptable degree of imprecision. For information judged to have more (less) important impacts, the degree of imprecision that is tolerated is reduced (increased). With respect to analytical results, "capable of being substantially reproduced" means that independent analysis of the original or supporting data using identical methods would generate similar analytical results, subject to an acceptable degree of imprecision or error.

B.   The definitions below are not from the OMB information quality guidelines, and apply throughout the USPTO information quality guidelines:

1.   **"Affected person"** is any individual who uses, benefits from, or is harmed by the disseminated information at issue.
2.   **"Business unit"** is a sub-organization of the USPTO responsible for carrying out specified substantive functions (i.e., program area).
3.   **"General Information"** is a category of information that the USPTO maintains or disseminates. It includes anything that is not patent or trademark related.

4

A07468

4.  **"Patents"** is a category of information that the USPTO maintains or disseminates. It includes patent applications, patent grants, and patent related documents.
5.  **"Person"** is an individual, partnership, corporation, association, public or private organization, or State or local government.
6.  **"Pre-Dissemination Review "** is a process for reviewing the quality (including the objectivity, utility, and integrity) of information before it is disseminated.
7.  **"Trademarks"** is a category of information that the USPTO maintains or disseminates. It includes trademark applications, registered trademarks, and trademark related documents.

## V. INTENT

The USPTO is fully committed to ensuring and maximizing the quality of information that it disseminates and fully supports the idea of basic information quality standards established in the Paperwork Reduction Act (44 U.S.C. Chapter 35) (PRA), in OMB Circular A-130, and in the OMB information quality guidelines. The USPTO will establish a basic standard of quality (including objectivity, utility, and integrity) as a performance goal by adopting the OMB information quality guidelines and will take appropriate steps to incorporate information quality criteria into agency information dissemination practices.

The USPTO information quality guidelines are intended to improve the quality of the information disseminated by the USPTO to the public by formalizing the existing pre-dissemination review processes, and establishing a new administrative mechanism with a feedback loop, "allowing affected persons to seek and obtain correction of information maintained and disseminated by the agency". They are not intended to be, and should not be construed as, legally binding regulations or mandates. As such, these guidelines do not create any right or benefit, substantive or procedural, enforceable at law or equity, by any party against the United States; or the USPTO, to include its Director, employees, contractors, sub-contractors, grantees, or any person(s).

Historically, a variety of mechanisms for achieving basic information quality standards for patent and trademark information have been maintained at the USPTO. The information quality guidelines described in this document complement any pre-existing administrative mechanisms, guidelines, or procedures at the USPTO. All pre-existing administrative mechanisms, guidelines, and procedures for achieving information quality remain in place.

Specifically, for errors not covered by these guidelines, the USPTO has administrative mechanisms, guidelines, and procedures in place to correct or change patent applications, patent grants, trademark applications, and registered trademarks (some examples follow). Full details of the procedures are available in the Manual of Patent Examining Procedure (MPEP) and the Trademark Manual of Examining Procedure (TMEP) both available on the USPTO Website at: www.uspto.gov/web/offices/pac/mpep/index.html and www.uspto.gov/web/offices/tac/tmep/index.html

- *Certificates of Correction* (35 U.S.C. 254 and 255; 15 U.S.C. 1057). Certificates of Correction are used to correct typographical errors and misspellings in patent grants and trademark registrations but cannot be used to add new matter.
- *Disclaimers* (35 U.S.C. 253). The patentee may disclaim one or more claims of his/her patent by filing a disclaimer with the USPTO.

5

A07469

- **Reissues (35 U.S.C. 251).** If defects are found in the original patent, the patentee may apply for a reissue patent with proposed changes to correct these errors. Following an examination, a reissue patent may be granted to replace the original for the balance of the un-expired term. However, the nature of the changes that can be made by means of the reissue are rather limited; new matter cannot be added.

Additionally, a new procedure "allowing affected persons to seek and obtain correction of information maintained and disseminated by the agency" will be in place by October 1, 2002, and shall apply to information that is maintained or disseminated on or after October 1, 2002.

## VI. SCOPE

**A. USPTO SPECIFIC EXEMPTIONS:** The following types of information maintained or disseminated by the USPTO are not subject to the USPTO information quality guidelines or requests for correction:

1. Public Filings – The content of public filings and any errors in the documents as received are not within the scope of these guidelines. There are independent administrative or legal processes in place that permit correction of errors in these publicly filed documents. However, data entry errors or scanning errors committed by USPTO personnel or contractors that result in the substance of a public filing being inaccurately disseminated are subject to these guidelines. Public filings include but are not limited to:

   a. Patent Applications

   b. Patent Assignments

   c. Patent Petitions

   d. Trademark Applications

   e. Trademark Assignments

   f. Trademark Petitions

2. Adjudicative Processes – Documents developed as a result of adjudicative processes have independent legal significance and any errors in the documents themselves are not within the scope of these guidelines. There are independent administrative or legal processes in place that permit correction of errors in these adjudicative documents. However, data entry errors or scanning errors committed by USPTO personnel or contractors that result in the substance of an adjudicative document being inaccurately disseminated are subject to these guidelines. Adjudicative documents include but are not limited to:

   a. Patent Grants

   b. Registered Trademarks

**B. GENERAL EXEMPTIONS:** The following types of information maintained or disseminated by the USPTO are not subject to the USPTO information quality guidelines or requests for correction:

6

A07470

1. Information with distribution intended for government employees or USPTO contractors, sub-contractors, or grantees.
2. Information with distribution intended for intra- or inter-agency use or sharing of government information.
3. Responses to requests for USPTO records under the Freedom of Information Act (FOIA), the Privacy Act, the Federal Advisory Committee Act or other similar law.
4. Information from adjudicative processes, such as pleadings, including information developed during the conduct of any criminal or civil action or administrative enforcement action, investigation or audit against specific parties, or information distributed in documents for an administrative action determining the rights and liabilities of specific parties under applicable statutes and regulations.
5. Information with distribution intended as correspondence with individuals or persons, regardless of media, to include but not limited to: electronic mail (e-mail), facsimiles, U.S. Mail, Airmail, or overnight courier packages.
6. Press releases, press conferences, press materials or similar communications in any medium that announce, support the announcement, or give public notice of information the USPTO has disseminated elsewhere.
7. Subpoenas.
8. Solicitations (e.g., program announcements, vacancy announcements, requests for proposals).
9. Archival records or archival information disseminated by the USPTO before October 1, 2002, and still maintained by the USPTO as archival material. This includes Patent and Trademark Depository Library holdings.
10. Hyperlinks to information that others disseminate, as well as paper-based information from other sources referenced, but not approved or endorsed by the USPTO.
11. Policy manuals and management information produced for the internal management and operations of the USPTO, and not intended for public dissemination.
12. Information presented to Congress as part of legislative or oversight processes, such as testimony of USPTO officials, and information or drafting assistance provided to Congress in connection with proposed or pending legislation that is not simultaneously disseminated to the public. However, information that would otherwise be covered by applicable guidelines is not exempted from compliance merely because it is presented to Congress.
13. Documents not authored by the USPTO and not intended to represent the USPTO's views, including information authored and distributed by USPTO grantees, as long as the documents are not *disseminated* (See Definitions, Section IV.A.1.a.b.) by the USPTO.
14. Research data, findings, reports and other materials published or otherwise distributed by USPTO employees, contractors, sub-contractors, or grantees that are identified as not representing the USPTO views.

## VII. USPTO STANDARD OF QUALITY FOR DISSEMINATED INFORMATION

The objectivity, utility, and integrity standards below are for the three categories of information that the USPTO disseminates: *Patents, Trademarks,* and *General Information* (See Definitions, Section IV.B.(3., 4., and 7.)).

### A. OBJECTIVITY

Objectivity involves presentation and substance. Presentation focuses on disseminating information in an accurate, clear, complete, unbiased manner, and within a proper context. Substance focuses on ensuring accurate, reliable, and unbiased information.

A07471

The majority of information that the USPTO disseminates consists of public filings or adjudicative documents, the substance of which is exempt from these guidelines. The USPTO controls the accuracy of this information through independent administrative or legal processes, (See the MPEP or TMEP), that permit correction of errors and ensure the substance of these documents is accurately disseminated.

The USPTO's information dissemination products are listed and described in the "USPTO Products and Services Catalog from the USPTO Information Dissemination Services" available on the USPTO website at the following address: http://www.uspto.gov/web/offices/ac/ido/oeip/catalog/index.html

Historically, a pre-dissemination review process of all USPTO information disseminated is incorporated into the normal process of formulating the information. This review is at a level appropriate to the information, taking into account the information's importance, balanced against the resources required and the time available to conduct the review. The USPTO's business units treat information quality as integral to every step of the USPTO's development of information, including creation, collection, maintenance, and dissemination. The USPTO receives and relies on feedback from both internal and external customers if the accuracy or completeness of the information disseminated is below standard. Corrective measures are taken immediately to limit the impact and re-disseminate the corrected information. In an unbiased manner, the USPTO makes every effort to provide complete databases on the USPTO website of all patents and trademarks that have ever been captured electronically. All USPTO information dissemination products are labeled and initially distributed with the accompanying file specifications for clarity and proper context. Several file specifications are available on the USPTO website. The USPTO reliably disseminates patent grants, trademark applications, and registered trademarks every Tuesday and disseminates patent applications every Thursday (excluding Federal holidays).

"Influential Information" disseminated by the USPTO, or information that will have or does have clear and substantial impact on important public policies or important private sector decisions consists primarily of statistical information on USPTO filings and operations. "Reproducibility" of these analytic results does include "especially rigorous robustness checks" and when asked the USPTO does provide disclosure of the data sources that have been used and the specific quantitative methods and assumptions (if any) that have been employed. Patent applications, patent grants, trademark applications, and registered trademarks while influential are exempt from these guidelines as discussed above in (Scope, Section VI.).

"Financial Information", the USPTO adopts and follows all applicable Federal government financial procedures, rules, and laws and uses commonly accepted accounting practices, and independent accounting firms.

Regarding "Analysis of Risks to Human Health, Safety and the Environment", the USPTO currently does not disseminate influential information that constitutes assessment of risks to human health, safety, or the environment. Therefore, the USPTO is not required to adopt as an objectivity standard the principles of the Safe Drinking Water Act Amendments of 1996 (SDWA) respecting risk assessments.

Regarding "Third-Party Information", the USPTO currently does not disseminate third-party information. Third-party information sources are not directly subject to the OMB or USPTO information quality guidelines. However, if in the future the USPTO develops information products or forms the basis of a decision or policy on third-party information, the third-party information must be of known quality and consistent with all applicable OMB and (these) USPTO information quality guidelines. When such

8

information is used, any limitations, assumptions, collection methods, or uncertainties concerning it are taken into account and disclosed.

**B. UTILITY**

Utility means that disseminated information is useful to its intended users, including the public. "Useful" means that the content of the information is helpful, beneficial, or serviceable to its intended users, or that the information supports the usefulness of other disseminated information by making it more accessible or easier to read, see, understand, obtain, or use.

The USPTO strives to continually improve the usefulness of its information products and the manner in which they are disseminated. The USPTO is a global organization, and has customers worldwide. The USPTO interacts with its customers through users' groups, open forums, customer focus sessions, meetings, workshops, surveys, product reviews, and other mechanisms to assess and improve the utility and accessibility of its products.

The USPTO disseminates information products in a manner that allows them to be accessible and understandable to a broad range of users. The USPTO meets the needs of its customers by disseminating information through a variety of media including but not limited to: USPTO Website, electronically by File Transfer Protocol (FTP), optical disc (i.e., CD-ROM, DVD-ROM, etc.), floppy disk, magnetic tape, facsimile, and paper. The USPTO also utilizes international standards for patent and trademark information, and other standard data formats to ensure information is usable by a broad spectrum of users with varying computer equipment, operating systems, and software.

**C. INTEGRITY**

Integrity equates to security. Regardless of the distribution media, USPTO information is safeguarded before, during, and after dissemination from improper access, modification, or destruction, to a degree commensurate with the risk and magnitude of harm that could result from the loss, misuse, or unauthorized access to or modification of such information.

All electronic information disseminated to the public by the USPTO adheres to the standards set out in Appendix III, "Security of Automated Information Resources," OMB Circular A-130, the Government Information Security Reform Act, the Computer Security Act, the computer security provisions in the Paperwork Reduction Act (44 U.S.C. Chapter 35) (PRA), and the Federal Managers Financial Integrity Act. Compliance with the above standards or guidelines is detailed in the USPTO's Automated Information System Security Controls Manual.

Confidentiality of personal data collected by the USPTO is safeguarded under legislation, the Privacy Act and Titles 13, 15, and 22 of the U.S. Code. The Privacy Policy Statement for the USPTO is available on the USPTO Website at: **www.uspto.gov/web/doc/privact.htm**

**VIII. PRE-DISSEMINATION REVIEW PROCESS**

All business units within the USPTO must incorporate the following pre-dissemination review process that applies to information disseminated on or after October 1, 2002.

Information quality is an integral part of the pre-dissemination review of information disseminated by the USPTO. Information quality is also integral to information

9

A07473

collections conducted by the USPTO, and is incorporated into the clearance process required by the Paperwork Reduction Act (44 U.S.C. Chapter 35) (PRA) to help improve the quality of information that the USPTO collects and disseminates to the public. The USPTO is already required to demonstrate in their PRA submissions to OMB the "practical utility" of a proposed collection of information that they plan to disseminate. Additionally, for all proposed collections of information that will be disseminated to the public, the USPTO should demonstrate in their PRA clearance submissions to OMB that the proposed collection of information will result in information that will be collected, maintained, and used in a way consistent with all applicable OMB and (these) USPTO information quality guidelines.

Pre-dissemination review can be accomplished in a number of ways (including but not limited to combinations of the following):

> a. Active personal review of information by supervisors and managers, either by reviewing each individual document, or selected samples, or by any other reasonable method.
>
> b. Use of quality check lists, charts, statistics, or other means of tracking quality, completeness, and usefulness.
>
> c. Process design and monitoring to ensure that the process itself imposes checks on information quality.
>
> d. Review during information preparation.
>
> e. Use of management controls.
>
> f. Any other method that serves to enhance the accuracy, reliability, and objectivity of the information.

### IX. BUSINESS UNIT RESPONSIBILITIES

Business units within the USPTO will be responsible for agency compliance with the final USPTO information quality guidelines, appoint individuals to be points-of-contact, make decisions regarding the corrective action to be taken, and decide appeals. The business units will be required to update or close problem ticket records with decisions or steps taken to resolution and communicate the decisions to the affected person(s) via electronic mail (e-mail), telephone, or U.S. Postal Service.

### X. CIO RESPONSIBILITIES

The Chief Information Officer of the USPTO will be responsible for the administrative mechanisms to track complaints, appeals, resolutions; and on a fiscal-year basis, submit a report to the Director of OMB providing information (both quantitative and qualitative, where appropriate) on the number and nature of complaints received by the agency regarding agency compliance with the OMB information quality guidelines and how such complaints were resolved.

### XI. AFFECTED PERSON RESPONSIBILITIES

A. Requests to correct information maintained and disseminated by the U.S. Patent and Trademark Office (USPTO) that are subject to all applicable OMB and (these) USPTO information quality guidelines.

10

1. Any affected person may request, where appropriate, correction of USPTO information that does not comply with all applicable OMB and (these) USPTO information quality guidelines. The burden is on the affected person to show both the necessity for correction and type of correction sought. Additionally, the affected person has the burden of rebutting the presumption that information subjected to formal, independent peer review is objective. Any affected person may submit a request directly to the USPTO, in accordance with the procedures contained in these guidelines.

2. Initial requests for correction of USPTO information must first be made through the USPTO USPTO Contact Center (UCC) (GISD) Help Desk for tracking and reporting purposes. The GISD Help Desk will route requests to the appropriate business unit within the USPTO.

3. All requests must be made using one of the following methods:

   a. Electronic Mail:
   usptoinfo@uspto.gov
   Please include "Data Quality" in the Subject Line.

   b. Telephone:
   800-786-9199 or 703-308-4357 – at the prompt, press 1 for General Patent and Trademark Information
   Please let the GISD Help Desk person know that you are reporting a Data Quality problem.

   c. U.S. Postal Service:
   U.S. Patent and Trademark Office
   USPTO Contact Center (UCC)
   ATTN: Data Quality
   Crystal Plaza 3, Room 2C02
   Washington, DC  20231
   U.S.A.

4. A request for correction of USPTO disseminated information will not be considered under these guidelines concerning:

   a. A matter not involving "information", as that term is defined in (Section IV.A.4.).
   b. Information that has not actually been "disseminated", as that term is defined in (Section IV.A.1.a.b.).
   c. Disseminated information the correction of which would serve no useful purpose.
   d. Requests that are duplicative, repetitious, or frivolous may be rejected. This does not preclude a request for correction alleging a recurring or systemic problem resulting in repeated similar or consistent errors.

5. Initial requests for correction must include:

   a. requester's name
   b. requester's telephone number
   c. requester's electronic mail (e-mail) address (optional if submitting by telephone, U.S. Postal Service, or overnight courier)
   d. requester's return address (required only if submitting by U.S. Postal Service, or overnight courier)
   e. an accurate citation to and a description of the particular information disseminated that is the subject of the request for correction (For recurring or systemic errors, please provide a few examples (no more than 50)).
   f. an explanation of:

11

A07475

       i. how the requester is affected by the alleged error
       ii. how the information at issue fails to comply with (these) USPTO
       information quality guidelines or the applicable OMB guidelines
       iii. why the requester believes that the disseminated information is
       not correct

6.  Affected persons will be given a problem ticket number for each request via one of the following methods: electronic mail (e-mail), telephone, or U.S. Postal Service.

7.  For proper requests (i.e., requests that include all applicable elements of (Section XI.A.5. above)), the business unit will notify the requester via electronic mail (e-mail), telephone, or U.S. Postal Service of the initial decision within 60 calendar days after receipt of the request with an appropriate explanation of the decision being made. If the request requires more than 60 calendar days to resolve, the business unit will inform the requester within the first 60 calendar days that more time is required indicating the reason why more time is required and an estimated decision date.

8.  If a problem ticket gets misdirected to the wrong USPTO business unit, additional effort will be taken by the USPTO to identify and route the problem ticket to the appropriate business unit. Once the misdirected problem ticket gets to the appropriate business unit, the business unit will have 60 calendar days from receipt to respond to the requester via electronic mail (e-mail), telephone, or U.S. Postal Service.

9.  A proper request received concerning information disseminated as part of and during the pendency of the comment period on a proposed rule, plan, or other action, including a request concerning the information forming the record of decision for such proposed rule, plan or action will be treated as a comment filed on that proposed rulemaking, plan, or action, and be addressed in the issuance of any final rule, plan, or action. However, where the requester demonstrates immediate actual harm or the substantial likelihood of actual harm arising from that dissemination prior to issuance of the final rule, plan, or action, the USPTO will provide a timely response before issuing the final rule, plan or action, if doing so will not significantly delay the issuance of the final rule, plan or action.

10. For improper requests (i.e., requests that do not include all applicable elements of (Section XI.A.5. above) or contain errors), the requester will be contacted and notified of the omission or error within 60 calendar days. The requester has the option of amending or correcting the problem ticket record by contacting the GISD Help Desk. If the original request is not amended or corrected, the USPTO will close the problem ticket. If the requester cannot be contacted because of an omission or error, the problem ticket is closed. All requests will be counted in the USPTO's annual fiscal year report to OMB.

11. If the USPTO decides not to correct the disseminated information, then the affected person may appeal that decision within 60 calendar days. The appeal will follow the same path as Initial Requests, with the following exceptions:

    a. Upon receipt of an initial adverse decision (not to correct), the initial requester has 60 calendar days to submit an appeal. The appeal should be submitted according to (Section XI.A.5. above). Additionally, the appeal should include a statement of the reason(s) why the requester believes the initial adverse decision was incorrect.

    b. To maintain continuity, the USPTO requires the problem ticket number from the initial request. The original problem ticket will be reopened/updated to reflect an appeal and assigned to the next highest organizational level.

12

c. If the appeal requester is not able to provide the previous problem ticket number, then the request will be considered an initial request and not an appeal. A new problem ticket number will be assigned by the GISD Help Desk.

d. The designated person at the next highest organizational level will notify the appeal requester via electronic mail (e-mail), telephone, or U.S. Postal Service of the appeal decision within 60 calendar days after receipt of the appeal with an appropriate explanation of the decision being made. If the appeal requires more than 60 calendar days to resolve, the business unit will inform the requester within the first 60 calendar days that more time is required indicating the reason why more time is required and an estimated decision date.

12. No opportunity for personal appearance, oral argument, or hearing on appeal is provided.

For additional information regarding the final USPTO Information Quality Guidelines Contact:

Trisha Michel – Director, Office of Electronic Information Products
**Trisha.Michel@uspto.gov**
(703) 306-2600

Christopher Leithiser – Computer Scientist, Information Products Division
**Chris.Leithiser@uspto.gov**
(703) 306-2622

Electronic Mail:
**Data.Quality@uspto.gov**

Facsimile:
Information Products Division
ATTN: Data Quality
(703) 306-2737

U.S. Postal Service:
United States Patent and Trademark Office
Information Products Division
ATTN: Data Quality
2231 Crystal Drive, Suite 441
Arlington, VA 22202

*Is there a question about what the USPTO can or cannot do that you cannot find an answer for? Send questions about USPTO programs and services to the USPTO Contact Center (UCC). You can suggest USPTO webpages or material you would like featured on this section by E-mail to the webmaster@uspto.gov. While we cannot promise to accommodate all requests, your suggestions will be considered and may lead to other improvements on the website.*

A07477