# EXHIBIT C

Part 1 of 2

Dockets.Justia.com

**46790    Federal Register/Vol. 72, No. 161/Tuesday, August 21, 2007/Rules and Regulations**

claims, and application size fees) on filing an application for patent. *See* 35 U.S.C. 41(a). The payment of these patent filing fees does not amount to a purchase of patent protection but are simply to help cover the costs of examination and application processing.

Section 1.75 does not limit the number of claims that applicant can present in an application. Section 1.75(b)(1) permits an applicant to present five independent claims and twenty-five total claims for examination without the need for an examination support document. An applicant who considers five independent claims or twenty-five total claims to be insufficient may present more than five independent claims or twenty-five total claims by submitting an examination support document under § 1.265 before the first Office action on the merits of an application.

*Comment 177:* One comment suggested that if the rules are implemented, the Office should reduce the examination fee and wait to charge the excess claim fees, or refund the excess claim fees if the application goes abandoned.

*Response:* The basic filing, search, examination, and excess claims fees are set by statute, which the Office cannot change by rule making. The filing fees are due upon filing of the application and the excess claims fees are due when the claims are presented. *See* 35 U.S.C. 41. Applicant may request a refund of any previously paid search and excess claims fees if applicant expressly abandons an application filed under 35 U.S.C. 111(a) on or after December 8, 2004, by filing a petition under § 1.138(d) before an examination has been made of the application. An "examination has been made of the application" for purposes of § 1.138(d) once there has been a requirement for restriction including an election of species, requirement for information under § 1.105, first Office action on the merits, notice of allowability or allowance, or action under *Ex parte Quayle*. Applicant may also request a refund of any excess claims fees paid on or after December 8, 2004, if an amendment canceling the excess claims is filed before an examination on the merits has been made of the application. *See* § 1.117. An "examination on the merits has been made of the application" for purposes of § 1.117(a) once there has been a first Office action on the merits, notice of allowability or allowance, or action under *Ex parte Quayle*.

*Comment 178:* One comment argued that the small number of problematic cases with excessive claims that confuse or obscure the invention can be adequately handled through the use of undue multiplicity rejections.

*Response:* Undue multiplicity rejections based on 35 U.S.C. 112, ¶ 2, are rare. *See* MPEP § 2173.05(n). The rule changes are designed to provide a more focused quality examination of all applications. The Office would not be able to obtain the desired gains in efficiency and quality by merely relying on the use of undue multiplicity rejections.

*Comment 179:* One comment argued that the impact of the rules on the backlog will be minimal and referred to the Inspector General Report of 2004 which identified suboptimal incentives for examiners as the cause of the backlogs, not the excess number of claims.

*Response:* The September 2004 Inspector General Report (Final Inspection Report No. IPE–15722), available at *http://www.oig.doc.gov/oig/reports/2004/USPTO-IPE-15722-09-04.pdf*, concluded that the Office should reevaluate patent examiner production goals, appraisal plans, and award systems. The September 2004 Inspector General Report was not the result of a general study of the causes of the growing backlog of unexamined patent applications, but was the result of a review of only patent examiner production goals, appraisal plans, and award systems. Thus, the September 2004 Inspector General Report does not discuss other causes of the growing backlog of unexamined patent applications (*e.g.*, changes in applicant filing tendencies) and does not warrant the conclusion that the September 2004 Inspector General Report identifies suboptimal incentives for examiners as the sole cause of the growing backlog of unexamined patent applications. In any event, the Office is in the process of reassessing patent examiner production goals, appraisal plans, and award systems as recommended in the September 2004 Inspector General Report. Absent significant changes to the patent examination process, the Office does not consider it reasonable to expect that changes to patent examiner production goals, appraisal plans, and award systems alone will be sufficient to address the growing backlog of unexamined patent applications while maintaining a sufficient level of quality.

*Comment 180:* One comment argued that the Office admitted to previously abandoning a proposal to limit the number of total and independent claims. The comment argued that if such a proposal was deemed inappropriate, it is difficult to see how limiting claims before initial examination is also not inappropriate.

*Response:* The previous proposal was not abandoned because it was deemed inappropriate; rather, it was abandoned because it was unpopular. The Office subsequently sought increases in excess claims fees via legislative change. There was insufficient public support for all the fee increases that the Office considered necessary and the current fees are not adequately addressing the problem of large numbers of claims. The comments submitted in response to the Claims Proposed Rule indicate that many view an approach similar to that proposed in 1998 to be preferable. The changes being adopted in this final rule (in contrast to the changes proposed in 1998) do not place a limit on the number of claims (independent or dependent) that may be presented in an application. These changes adopted in this final rule simply require the submission of an examination support document if an applicant chooses to present more than five independent claims or more than twenty-five total claims in an application. Furthermore, the backlog of unexamined applications has increased from 224,446 at the end of fiscal year 1998 to 701,147 at the end of fiscal year 2006. The Office expects the backlog of unexamined applications to continue to increase without significant changes to the patent examination process. In addition, the average number of claims per application has not decreased since 1998. Thus, the Office does not consider the fact that the changes being adopted in this final rule may not be popular to be an adequate reason for not going forward at this time.

*Comment 181:* One comment pointed out inconsistencies between proposed § 1.75(b)(3)(iii), which requires a suggested restriction to be drawn to "no more than ten" claims, and the preamble to the proposed rule, which requires the restriction to be drawn to "fewer than ten" claims.

*Response:* Proposed § 1.75(b)(3)(iii) provided that an applicant may file a suggested requirement for restriction accompanied by an election without traverse of an invention to which there are drawn no more than ten independent claims and no more than ten representative claims. This final rule did not adopt the proposed "representative claims" examination approach, but requires applicant to file an examination support document when the application contains more than five independent claims or more than twenty-five total claims. Under § 1.142(c) as adopted in this final rule, applicant may file a suggested