# EXHIBIT F

## Part 2 of 2

    E.   ?   withdraw the smoke detector application from issue and submit the IDS with arguments as to why the claims are still patentable.

    F.   ?   let the smoke detector application issue without having the Examiner consider the Japanese reference.

    G.   ?   let the smoke detector application issue, filing the IDS knowing it may not be considered by the Examiner for non-compliance with 37 CFR 1.97.

    H.   ?   none of the above.

14. On October 14, 2005, you filed a patent application on a digitally-activated virtual window for use in urban environments and a method of activating the same. On August 9, 2006, the examiner makes a telephonic restriction requirement and you elect without traverse to prosecute the virtual window. On October 1, 2007, you file a divisional application on the activating method, with the same disclosure as the original application and the same claims that were withdrawn after election (and you do this while the original application is under a non-final rejection).

Under 37 CFR 1.78(f)(2), there will be a rebuttable presumption that a nonprovisional application contains at least one claim that is not patentably distinct from at least one of the claims in another pending application if: A) the two applications have the same filing dates, taking into account their priority dates; B) the two applications have at least one inventor in common; C) the two applications are owned by or obligated to the same entity; and D) the two applications have overlap in disclosure such that one application could support a claim in the other under 35 USC 112.

True or False: There will be a rebuttable presumption that the claims in the divisional application are not patentably distinct from the claims in the original application.

    A.   ?   True

    B.   ?   False

15. Considering again the case of the "not patentably distinct" claims presumed by literal wording of 37 CFR 1.78(f)(2)(i):

On October 17, 2005, you filed a patent application on three new species J, K, L of perfluoropolyethers. On February 26, 2007, the Examiner issued a restriction requirement, and you elected to prosecute the species J (without traverse). On September 28, 2007, you two file divisional applications, with the original disclosure of the parent application and the original claims directed towards the respective species K and L.

Within 4 months of the filing date of the divisional applications (or, for applications filed prior to November 1, 2007, by February 1, 2008), the applicant must rebut the presumption, as specified in 1.78(f)(ii) and 1.78(f)(iii).

By or before February 1, 2008, you should:

A. ? file a paper explaining how the divisional applications for the species K and L contain only claims that are patentably distinct.

B. ? file a terminal disclaimer pursuant to 1.78(f)(ii)(B).

C. ? invoke 35 USC 121.

D. ? fight the new rules in a court of law.

E. ? abandon both divisional applications.

16. On January 5, 2006, you filed a continuation-in-part of an original patent application on a sea water desalinator, abandoning the parent case. The CIP application included four embodiments, A, B, and C from the parent case as well as new embodiment D. The four embodiments are covered by independent Claim 1 (which is generic and links all four embodiments) and by ten dependent claims each, for 41 claims total. In response to an initial restriction requirement dated July 2, 2007, you elected to prosecute the eleven claims directed toward the embodiment A. On November 27, 2007, you receive a first Office action allowance, without having filed an ESD. Congratulations!

Now, how do you proceed to fully protect the embodiments B, C, and D, in addition to the embodiment A, understanding that independent Claim 1 may at some point be found to be invalid? (More than one answer may be correct.)

A. ? After allowance, ask the Examiner to rejoin the thirty non-elected claims (directed to the embodiments B, C, and D) to the allowed linking claim and issue the patent with 41 claims.

B. ? Let the first application issue with claims directed only to embodiment A, and file three divisionals each having the same independent claim that was allowed in the first application and the dependent claims for the respective embodiment B, C, or D.

C. ? Let the first application issue with claims directed only to embodiment A, and file three divisionals each having a somewhat-unique independent claim (so as to avoid statutory double patenting) and the dependent claims for the respective embodiments B, C, or D.

D. ? Cancel at least 16 claims, ask for rejoinder, check your malpractice

insurance, and hope your client wouldn't have relied on those canceled claims for validity.

E. [ ? ] Cancel the claims to two embodiments, ask for rejoinder of the other 10 claims, and then file two "divisionals" covering to the extent possible the features of the cancelled claims.

F. [ ? ] Fight the new rules in a court of law.

---

17. On January 6, 2006, you filed an application on a micromachined gyroscope. The application included three embodiments X, Y, Z, each being covered by two non-generic independent claims and no dependent claims, for 6 independent claims total. On August 23, 2007, you filed a suggested requirement for restriction (SRR), electing embodiment X without traverse, in an attempt to minimize the impact of the new rules for your client. On December 18, 2007, the Examiner picks up your case to work on. The holidays are coming, and he's a little behind on his counts for the quarter. He's also overworked, under appreciated, exasperated at management, and tired. What should the Examiner do, from an efficiency and a career standpoint, under the new rules? (Please choose from an Examiner's point-of-view, noting that more than one answer may be correct.)

A. [ ? ] Restrict you, and the search one embodiment and examine two claims, doing normal examination work.

B. [ ? ] Not restrict you, give you the two-month time period of 1.75(b)(3), and wait for you to abandon and refile the continuation (because of the ESD requirements and short time limit), thereby receiving two counts.

C. [ ? ] Not restrict you immediately, have you file the ESD which analyzes the prior art and six claims for him, and then restrict you in a subsequent Office action (e.g. before or after FAOM). That way he can use your ESD work in his office action on the single embodiment that you elect (e.g. X), and also have your additional work (on the embodiments Y and Z) held "in reserve" should you later file applications on the other non-elected embodiments.

D. [ ? ] Not restrict, have you file the ESD which analyzes the prior art and six claims for him, and then examine all three embodiments (X, Y, and Z) using your ESD work in his Office action.

---

18. On January 4, 2004, you filed a patent application on an ultra-pasteurization process with 32 claims. After a final rejection on November 6, 2006, you filed a request for continued examination (RCE). Then in a subsequent final rejection dated August 22, 2007, the Examiner rejected your two broadest claims but he allowed or objected to the other 30 claims.

In your response to the August 22, 2007 final rejection, you present on September

28, 2007 supplemental evidence regarding secondary considerations of non-obviousness, but the Examiner advises you on October 29, 2007 that the supplemental evidence raises new issues and will not be considered. With his advisory action, he also advises you of the new rules limiting RCEs, continuations, and claims, and provides you with the USPTO FAQs and the Federal Register notice regarding the rules, which you study diligently.

Cognizant of the new rules, you deliberately file a continuation on November 16, 2007 with the same 32 claims and the same supplemental evidence regarding secondary considerations of non-obviousness. In calculated remarks filed with your continuation, you argue strenuously that an ESD under new 1.265 is not required since the effective filing date of your application, as well as all evidence in the record, predates the effective date of the new rules.

Your next communication from the Office will likely be:

A. ? an action on the merits of the continuation case by the Examiner.

B. ? a notice under 37 CFR 1.75(b)(3) setting a two-month non-extendable time period to either cancel claims or file an ESD in the continuation case.

C. ? a notice that the application has been abandoned without setting the two-month time period.

D. ? None of the above, or we don't know, or a disciplinary notice under 37 CFR 10.18(b)(2)(i) with associated penalties.

---

19. On January 4, 2006, you filed a patent application on a radiation detector with 40 claims. You researched the prior art before filing, and meticulously complied with all applicable statutes including 35 U.S.C. 101, 102, 103, and 112, as well as with the regulations which were in effect at the time of filing. It would therefore appear that, having satisfied all statutory requirements, you are entitled to a patent under the law (35 USC 151). And so you were expecting to receive a first Office action allowance in the summer of 2008.

On November 5, 2007, you receive a Rule 75(b) notice from the USPTO indicating that your application will be abandoned within two months (extendable to 6 months under 37 CFR 1.136(a) for applications filed before November 1, 2007; FR 46728) unless you either 1) cancel claims, or b) submit an Examination Support Document within two months of the notice date.

On January 4, 2008, you respond to the Rule 75(b) notice, contesting the Director's authority to make such requirements retroactive to previously filed applications, requesting reconsideration, examination on the merits, and allowance of the application. On May 12, 2008, you receive a notice of abandonment for non-compliance with Rule 75(b).

New Rule 75(b) is:

A. ?  consistent with law.

B. ?  inconsistent with law, but permitted under 35 USC 2.

C. ?  inconsistent with law and proscribed by 35 USC 2

D. ?  effective in causing the applicant to help focus examination by providing additional information to the Office because this application places an "extensive burden on the Office."

20. Regarding the reduction of the Patent Term Adjustment (PTA) period in 37 CFR 1.704:

Rule 704(c)(11) indicates that, for applications with more than 5/25 claims, the period of adjustment set forth in 1.703 shall be reduced by the number of days that pass between 1) the later of the date that an amendment rendering the application in violation of the 5/25 limitation of Rule 75(b) is filed and four months after the application filing date, and 2) the earliest date that a) the application is brought into compliance with Rule 75(b) by i) filing an ESD in compliance with 1.265, ii) making an election in response to an Examiner's restriction requirement to withdraw from consideration the excess claims, or iii) cancelling the excess claims, or b) a suggested restriction requirement (SRR) in compliance with 1.142(c) is filed.

It would appear then, that if you inadvertently file an application with a non-compliant ESD and 6/30 claims, and the USPTO fails to pick up your application for a first action for 52 months, that you will risk losing 48 months of any patent term adjustment period unless you:

A. ?  submit a corrected ESD within two months of receiving the notice of non-compliance under 1.265(e)

B. ?  filed an SRR in compliance with 1.142(c) when you filed the case.

C. ?  cancel 1/5 claims within two months of receiving the notice of non-compliance under 1.265(e)

D. ?  file a continuation of the application that was inadvertently filed with the non-compliant ESD and the 6/30 claims, together with an SRR or a corrected ESD.

21. Regarding applications filed before November 1, 2007 and naming at least one inventor in common, new Rule 1.78(f)(1) requires that the applicant *must* either a) rebut a presumption that the claims in the applications are not patentably distinct or b) file a terminal disclaimer explaining why two applications contain patentably

indistinct claims by the "compliance date" (FR, 46717) if the following four conditions exist: 1) the filing dates of the applications are the same, 2) the applications name a common inventor, 3) they are owned by the same person or subject to common obligation of assignment, and 4) they contain substantial overlapping disclosure (such that one specification could support a claim in the other application under 35 USC 112).

It is possible that the USPTO will not be sending out notices for applications in which compliance under 1.78(f)(1) is required.

If the applicant fails to rebut the presumption or file the terminal disclaimer by the compliance date, the penalty under the new rule is:

A. ? both applications will become abandoned.

B. ? the application with the claim that was supported by the specification of the other application will become abandoned.

C. ? all claims presumed to be not distinct will be eliminated by the Office in both applications.

D. ? all claims presumed to be not distinct will be eliminated by the Office in the later filed application.

E. ? apparently not specified in the Rules or the Federal Register notice.

---

22. If a PCT application designating the U.S. has more than one invention, and the applicant files a Demand and pays the additional examination fees and all of the inventions are examined in the international application, and subsequently in the National Phase a U.S. Examiner issues a restriction requirement and claims directed to one of the inventions are elected by the applicant, can the applicant then file a divisional application to cover the non-elected claims under new Rule 78?

A. ? Yes, of course, since the U.S. Examiner has issued the restriction requirement.

B. ? No, because the non-elected invention was examined within the meaning of 37 CFR 1.78(d)(1)(ii) in the international application designating the U.S.