Tafas v. Dudas et al

Doc. 174 Att. 3

# Exhibit 9

**Presentation to Office of Management and Budget by parties including Polestar (June 15, 2007)**

**Part 3: Attachment N (beginning) (P000339-74)**

Dockets.Justia.com

# Attachment N

# Materials Received from USPTO by FOIA Request, Including USPTO's "Town Hall" Slides

**Culver, Jennifer**

OFFICE OF THE GENERAL COUNSEL
2006 APR -3 AM 9: 29
U.S. PATENT AND TRADEMARK OFFICE

06-176

**From:** Boundy, David [dboundy@willkie.com]
**Sent:** Saturday, April 01, 2006 6:11 PM
**To:** EFOIA
**Subject:** FOIA request

The following requests for documents are presented pursuant to the Freedom of Information Act.

**Request 1**. Attached is one of the slides from the PTO's recent Townhall presentations on the proposed rule changes, showing projected pendency.

<<From townhall slides - pendency projection.ppt>>
Kindly provide all documents that demonstrate (a) any data and assumptions on which the projections of this slide are based, and (b) the methodology or analysis used to generate the slide's projections from the data and assumptions.

In particular, please provide documents that support the projection that pendency will increase as projected for 2008-2011 (the red projection), and the projection that pendency will fall sharply if all rule proposals are enacted (the two purple declining projections).

The following documents are within the scope of this request. The relevant time period is at least the years 1996 to 2011 (the time period covered by the slide):

- documents showing the number of applications actually filed, and projected to be filed
- documents showing historical and projected examiner hours per application
- documents comparing examiner hours per original application vs. examiner hours per continuation application or RCE

- documents showing historic and projected examiner hiring and attrition
- any spreadsheet or other calculations that correlate or generate the projected pendency numbers from the underlying data and assumptions

- any documents that reflect applicants' likely response and adjustments to the proposed rules, and how that response/adjustment will affect pendency estimates.

**Request 2**. Please provide documents sufficient to identify the proportion of examiners, supervisory examiners, special program examiners, and Technology Center Directors that have law degrees.

**Request 3**. Please provide documents sufficient to identify the rate of disposition of "obviousness-type double patenting" issues during appeal conference and *ex parte* appeal to the Board of Patent Appeals and interferences for recent years.

Thank you.

Electronic documents, such as spreadsheets, may be emailed to DBoundy@Willkie.com This would be the appropriate vehicle for providing spreadsheets, as the spreadsheets would contain the formulas that show the relationship between underlying data and conclusions.

Paper documents may be mailed to the address below.

David Boundy

Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York NY 10021

(212) 728 8757
(212) 728 9757 (FAX)



Pendency Using FY 2005 Actual Filings at 8.1%
1,000 Hires & Low Attrits
Plus Claims & Continuation Limits
Plus Patenttability Report
Without Strategic Plan
1,000 Hires&Low Attrits&> Filings
Plus Claims & Continuation Limits&> Filings
Plus Patentabliity Report&> Filings
Historic
45.0
35.0
25.0
15.0
Overall Pendency
1982
1984
1986
1988
1990
1992
1994
1996
1998
2000
2002
2004
2006
2008
2010
Fiscal Year



UNITED STATES PATENT AND TRADEMARK OFFICE

GENERAL COUNSEL

JUN - 5 2006

Mr. David Boundy
Willkie Farr & Gallagher, LLP
787 Seventh Ave.
New York, NY 10021

Re: Freedom of Information Act (FOIA)/Privacy Act Request No. 06-176

Dear Mr. Boundy:

The Office of the General Counsel received your e-mail dated April 11, 2006, in which you requested, under the provisions of the Freedom of Information Act, 5 U.S.C. § 552, a copy of

"(1) documents showing the number of applications actually filed, and projected to be filed;

(2) documents showing historical and projected examiner hours per application;

(3) documents comparing examiner hours per original application vs. examiner hours per continuation application or RCE;

(4) documents showing historic and projected examiner hiring and attrition;

(5) any spreadsheet or other calculation that correlate or generate the projected pendency numbers from the underlying data and assumptions;

(6) any documents that reflect applicants' likely response and adjustments to the proposed rules, and how that response/adjustment will affect pendency estimates;

(7) documents sufficient to identify the proportion of examiners, supervisory examiners, special program examiners, and Technology Center Directors that have law degrees;

(8) documents sufficient to identify the rate of disposition of 'obviousness-type double patenting' issues during appeal conference and ex parte appeal to the Board of Appeals and Interferences for recent years."

P000343

The United States Patent and Trademark Office identified 74 pages of documents that are responsive to your request. A copy of this material is enclosed.

The processing fee was less than $20.00, and is hereby waived.

Sincerely,

Robert Fawcett
Program Manager



Table 2: Patent Applications Filed Case 1:07-cv-00846-JCC-TRJ Document 174-4 Filed 12/27/2007 Page 8 of 37 Page 1 of 3

United States Patent and Trademark Office

ABOUT

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

Reports > USPTO Annual Reports

## Performance and Accountability Report Fiscal Year 2005
### Other Accompanying Information

Table of Contents | Management | Financial | Supplementary | Auditor | IG | Other

### TABLE 2: PATENT APPLICATIONS FILED (FY 1985 - FY 2005)

| Year | Utility | Design | Plant | Reissue | Total |
|---|---|---|---|---|---|
| 1985 | 115,893 | 9,504 | 244 | 290 | 125,931 |
| 1986 | 120,988 | 9,792 | 291 | 332 | 131,403 |
| 1987 | 125,677 | 10,766 | 364 | 366 | 137,173 |
| 1988 | 136,253 | 11,114 | 377 | 439 | 148,183 |
| 1989 | 150,418 | 11,975 | 418 | 495 | 163,306 |
| 1990 | 162,708 | 11,140 | 395 | 468 | 174,711 |
| 1991 | 166,765 | 10,368 | 414 | 536 | 178,083 |
| 1992 | 171,623 | 12,907 | 335 | 581 | 185,446 |
| 1993 | 173,619 | 13,546 | 362 | 572 | 188,099 |
| 1994 | 185,087 | 15,431 | 430 | 606 | 201,554 |
| 1995 | 220,141 | 15,375 | 516 | 647 | 236,679 |
| 1996 | 189,922 | 15,160 | 557 | 637 | 206,276 |
| 1997 | 219,486 | 16,272 | 680 | 607 | 237,045 |
| 1998 | 238,850 | 16,576 | 658 | 582 | 256,666 |
| 1999 | 259,618 | 17,227 | 759 | 664 | 278,268 |
| 2000 | 291,653 | 18,563 | 786 | 805 | 311,807 |
| 2001 | 324,211 | 18,636 | 914 | 956 | 344,717 |
| 2002 | 331,580 | 19,706 | 1,134 | 974 | 353,394 |
| 2003 | 331,729 | 21,966 | 785 | 938 | 355,418 |
| 2004 [1] | 353,319 | 23,457 | 1,212 | 996 | 378,984 |
| **2005** | **381,797** | **25,304** | **1,288** | **1,143** | **409,532** |

**Notes:**

1: Revised to reflect final FY 2004 data. *(back to text)*

< Previous Page | Next Page >

*Is there a question about what the USPTO can or cannot do that you cannot find an answer for? Send questions about USPTO programs and services to the* **USPTO** D00045

http://www.uspto.gov/web/offices/com/annual/2005/060402_table2.html 6/5/06



# 2007 BUDGET

## 2007 President's Budget

UNITED STATES PATENT AND TRADEMARK OFFICE

# UNITED STATES PATENT AND TRADEMARK OFFICE

# FISCAL YEAR 2007 PRESIDENT'S BUDGET

**February 6, 2006**

# Table of Contents

1) USPTO Budget at a Glance ....................1

Executive Summary .................... 3

2) Section 1 – Fiscal Year 2007 Budget Request By Business Line ....................9

Patents .................... 9

Trademarks .................... 13

Summary of Accomplishments and Future Challenges .................... 17

Management Priorities.................... 20

Commitment to the President's Management Agenda .................... 21

*The USPTO 21st Century Strategic Plan* .................... 24

3) Section II – Fiscal Year 2007 Budget Request by Performance Goal....................25

Goal 1 –
Improve the quality of patent products and services and optimize patent processing time ....................25

Goal 2 –
Improve quality of trademark products and services and optimize trademark processing time ....................33

Goal 3 –
Create a more flexible organization through transitioning patent and trademark operations to an e-Government environment and advancing IP development worldwide....................36

4) Budget Exhibits....................45

Exhibit 3A – USPTO Resource Requirements by Performance Goal .................... 45

Exhibit 5 – Summary of Resource Requirements .................... 52

Exhibit 6 – Summary of Reimbursable Obligations .................... 54

Exhibit 7 – Summary of Financing .................... 55

Exhibit 8 – Adjustments to Base .................... 56

Exhibit 9 – Justification of Adjustments to Base .................... 57

Exhibit 16 – Summary of Requirements by Object Class .................... 65

Exhibit 17 – Detailed Requirements by Object Class .................... 67

Appendix

Interim Adjustment Document

# USPTO Budget-at-a-Glance

## DEPARTMENT OF COMMERCE STRATEGIC GOAL 2

*"Foster science and technological leadership by protecting intellectual property..."*

| | Actuals[1] | Enacted | Budget | Outyear Estimates | | | |
|---|---|---|---|---|---|---|---|
| Dollars in '000s | FY 2005 | FY 2006 | FY 2007 | FY 2008 | FY 2009 | FY 2010 | FY 2011 |
| ***USPTO Goal 1*: Improve quality of patent products and services and optimize patent processing time** | | | | | | | |
| Amount | $1,213,162 | $1,335,124 | $1,472,479 | $1,603,349 | $1,757,646 | $1,975,383 | $2,198,128 |
| Total UPR Production Units | 288,315 | 311,900 | 343,900 | 372,900 | 414,400 | 458,700 | 509,400 |
| Allowance Error Rate | 4.6% | 4.0%[2] | 4.0% | 4.0% | 4.0% | 4.0% | 4.0% |
| Average First Action Pendency/UPR (Months) | 21.1 | 22.0[3] | 23.0 | 23.7 | 23.9 | 23.8 | 23.5 |
| ***USPTO Goal 2*: Improve quality of trademark products and services and optimize trademark processing time** | | | | | | | |
| Amount | $141,605 | $142,776 | $148,264 | $153,742 | $158,910 | $163,518 | $169,697 |
| Total Units of Production[4] | 666,687 | 706,900 | 787,200 | 820,500 | 850,000 | 888,500 | 932,700 |
| First Action Deficiency Rate[5] | 4.7% | 6.5% | 6.0% | 5.5% | 5.0% | 4.5% | 4.0% |
| Final Action Deficiency Rate | 5.9% | 6.5% | 6.0% | 5.5% | 5.0% | 4.5% | 4.0% |
| First Action Pendency (Months) | 6.3 | 5.3 | 3.7 | 3.0 | 3.0 | 3.0 | 3.0 |
| ***USPTO Goal 3*: Create a more flexible organization through transitioning patent and trademark processing to an e-** | | | | | | | |
| Amount | $153,625 | $205,186 | $222,223 | $237,906 | $243,345 | $256,888 | $267,243 |
| Applications Managed Electronically: Patents | 96.7% | 99.0%[6] | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% |
| Applications Managed Electronically: Trademarks | 99.9% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% |
| IP Technical Activities Completed | 59 | 82 | 84 | 84 | 84 | 84 | 84 |
| **USPTO Appropriation** | **$1,508,392** | **$1,683,086** | **$1,842,966** | **$1,994,997** | **$2,159,901** | **$2,395,789** | **$2,635,068** |

[1] The USPTO consolidated statement of financing, status of budgetary resources, reimbursable obligations incurred for year ending September 30, 2005.
[2] The quality goal target has been revised from the fiscal year 2006 President's Budget based on fiscal year 2005 performance results, resource requirements, and customer feedback.
[3] Fiscal year 2006 target revised and the long term pendency goal of 18 months will not be achieved in the near term because of (1) priority emphasis on quality initiatives, (2) actual application growth rates above those assumed for planning purposes and, (3) implementation delays and legislative requirements which had the effect of postponing competitive sourcing efforts.
[4] Total units of production were previously based on an "action point" standard. The standard was changed to "balanced disposals" with the implementation of a new performance appraisal plan in the second half of fiscal year 2005; units of production were revised based on the new standard. The production standard for examining attorneys has changed from action points to balanced disposals beginning in fiscal year 2006 with the implementation of a negotiated performance appraisal plan.
[5] The deficiency rate for assessing the quality of first and final office actions have been revised based on actual experience and expectations for improvement since the criteria for assessing the substantive decision making of examiner's action was first implemented in fiscal year 2004.
[6] This goal has been modified as it has been determined that a small percentage of documents, such as applications under security review, may not be managed electronically.

USPTO PRESIDENT'S BUDGET FOR FISCAL YEAR 2007

**This Page is Intentionally Left Blank**

- 2 -

P000350

# Fiscal Year 2007 Budget Request

## EXECUTIVE SUMMARY

The USPTO's fiscal year 2007 budget submission is for $1,843 million and represents a $160 million, or a 9.5 percent increase over the enacted fiscal year 2006 budget. This requirement will provide $1,641 million for completing over 349,100 first actions on patentability determinations and over 338,700 patent application disposals; and $202 million for completing 418,000 first actions on trademark applications and 326,100 office disposals. In addition, this budget submission applies funds towards the accomplishment of strategic and other initiatives associated with the performance goals contained in the USPTO *21st Century Strategic Plan* to transform the agency into a quality-focused, highly productive and responsive organization that supports a market-driven intellectual property system. Our strategic goals will enhance the agility, capability, and productivity of both primary business lines, as well as the expanded intellectual property protection and enforcement program. The corresponding fee income estimates for fiscal year 2007 are $1,641 million for Patents and $202 million for Trademarks and assume continuation of the fee levels based on the provisions of Title VIII in the Consolidated Appropriations Act, 2005 (P.L. 108-447).

The USPTO fiscal year 2007 budget request supports the Department of Commerce in its goal to foster science and technological leadership by protecting intellectual property. The growth proposed in this request is guided by the President's Management Agenda (PMA) strategy for improving the management and performance on five key Government-wide areas: strategic management of human capital, competitive sourcing, improved financial performance, expanded electronic government, and budget and performance integration.

### Mission Statement

The mission of the USPTO is to ensure that the intellectual property system contributes to a strong national and global economy, encourages investment in innovation, and fosters entrepreneurship. This mission is accomplished by the USPTO through its two distinct business lines, Patents and Trademarks, which embodies Intellectual Property inventions or creations and aims to:

- Promote the progress of science and the useful arts by securing, for limited times to inventors, the exclusive rights to their respective discoveries (Article 1, Section 8 of the United States Constitution).
- Provide businesses with enhanced protection of trademark rights and notices of the trademark rights claimed by others, as well as protect consumers against confusion and deception in the marketplace.
- Build the infrastructure for innovation and lead the way in creating a quality-focused, highly productive, responsive organization that supports a market-driven Intellectual Property system for the 21st Century.

### USPTO Strategic Plan

The USPTO is dedicated to the goal of *The 21st Century Strategic Plan* which is to transform the USPTO into a responsive and flexible agency capable of competing in a global, market-driven economy. The ambitious plan was first issued in June 2002. In response to stakeholder input, a revised plan was submitted as part of the USPTO's fiscal year 2004 budget request, including legislative changes to USPTO's patent and trademark fee schedules. The plan was internally adjusted in fiscal years 2003 and 2004 to revise planned accomplishments to align with enacted funded levels. In December 2004, with the passage of the Consolidated Appropriations Act, 2005 (P.L. 108-447), the proposed fee changes were enacted for two fiscal years and the USPTO received full access to its projected fee income for 2005, which allowed the USPTO to move forward with many of the initiatives contained in *The 21st Century*

*Strategic Plan.* Since it's conception, the USPTO has been anticipating an improvement in the economy and has been planning for increased workloads. Over the last two years, however, the overall direction of the U.S. economy and the global economy, in general, has been more positive than anticipated. The USPTO has experienced even higher than projected growth in patent and trademark applications in fiscal years 2004 and 2005. *The 21st Century Strategic Plan* has laid the foundation to facilitate improvements in Patent and Trademark quality and address increases in pendency due to the growing complexity of applications and increasing workloads. The USPTO will continue to explore all opportunities available to optimize Patent and Trademark quality and processing time, including working with our Intellectual Property (IP) partners on worksharing initiatives, expanding and training our examination staff and focusing them on the core examination functions, and working with our customers and stakeholders on changes to our processes which will aid the USPTO in meeting the workload challenges it faces. Additionally, the USPTO is focused on increasing the number of applications and communications received and processed electronically and other e-government initiatives. Strengthening worldwide protection and enforcement of intellectual property is also a priority of the USPTO and many initiatives address this effort. Achievement of the USPTO's outyear goals is dependent upon permanent authorization of the revised fee schedule that was set forth in the Consolidated Appropriations Act, 2005.

The continued challenges of forecasting economic change and volatility in demand for products and services present the USPTO with ambitious transformation opportunities to leverage innovative solutions that are geared toward making the organization a value-creating, customer-focused partner in business results.

## President's Management Agenda

The USPTO is committed to the objectives of the PMA. This is evidenced by the progress we have made in improving the strategic management of human capital, competitive sourcing, improved financial performance, expanded e-government, and budget and performance integration. One such notable progress is the competitive sourcing plan for searches done in cases filed pursuant to the Patent Cooperation Treaty (PCT). At the end of fiscal year 2005, the USPTO began to competitively source PCT searches. This will serve as a pilot for the competitive sourcing of U.S. application searches. Additionally, the USPTO continues to enhance our electronic business center which is available at the USPTO web site www.uspto.gov, and provides consumers with online services for fee payment, obtaining historical patent and trademark information, filing applications and correspondence for pending applications and maintaining patents and registered marks, viewing patent and trademark documents, and locating registered patent attorneys or agents. The USPTO's web site has received recognition for its design, content, services offered, help features, navigation, site legitimacy, and accessibility.

By design, our annual performance plan is linked to our fiscal year 2007 budget submission and reflects the priorities of the Under Secretary and goals contained in *The 21st Century Strategic Plan.* The annual budget request is a consequence of USPTO managers integrating their funding requirements to the plan, which contain measurable objectives and milestones for each business goal. The annual integrated budget/performance plan is the most effective and efficient way of establishing accountability by making sure that performance measures are consistent with the views of the Administration and the Congress. The USPTO utilizes the Program Assessment Rating Tool (PART), and other assessment evaluations and modeling techniques to effectively enhance delivery of services and achieve improved program results. The agency routinely monitors program performance targets to ensure achievement of actual results to performance goals. Organizational goals and crosscutting performance measures are also included in senior executive members' performance appraisal plans to ensure alignment with agency mission, goals, and strategic objectives.

## The Economy and USPTO Workloads

USPTO workloads are dependent upon many factors, including economic activity in the U.S. and around the world. In addition to the normal difficulties associated with determining business cycle turning points, the economic outlook over the last few years has been extremely uncertain because of worldwide security concerns. Today, while many of the national security uncertainties remain, the overall direction of the U.S. economy and the global economy, in general, is positive. With the world and especially the U.S. economy improving, the workload outlook for the USPTO is also positive. Based on this outlook, the projected demand for patents and trademarks is expected to continue to grow.

## Economic Assumptions

In projecting future workloads, the USPTO considers a number of factors, prominently including the overall condition of the global and U.S. economies and the state of research and development within the United States. Such projections are always uncertain, with national security concerns and record petroleum prices the Assumptions sources of uncertainty in the current projection.

### U.S. Economy

U.S. economic activity has continued to expand since the recession of 2001 and the general expectation is that the U.S. economy will continue to grow in 2006 and remain strong at least over the next one to two years. As compared to this time last year, forecasts of the U.S. economy from the Congressional Budget Office (CBO) have been revised downward slightly for near-term GDP growth and slightly upward for mid-term GDP growth.[7] CBO is currently optimistic, envisioning recent rapid growth moderating only to a small extent through 2007.

Corporate profits and equity markets have recovered from the recent downturn and unemployment levels have improved, although employment gains have been below expectations to some extent. The prognosis for both consumer spending and business investment is good. Moreover, from the USPTO's prospective, it is important to note that continuing healthy economic growth over the next two years will be led by business investment spending, which will undoubtedly be further reflected in continued growth in patent and trademark filings.

For the remainder of fiscal year 2006, U.S. real GDP growth is expected to be near 3.4 percent. According to the CBO and private forecasters, such as those represented in the Blue Chip survey, fiscal years 2006 and 2007 growth is expected to be above 3.0 percent, absent significant external shocks resulting from terrorist activity in the U.S. or abroad, or from record high petroleum prices. Based on the probable overall economic growth path alone, the USPTO should experience steady demand for patents and trademark filings through fiscal year 2007. There is little evidence thus far, however, that points to a resumption of the extremely high rates of workload growth that the USPTO experienced in the late 1990s.

### Research and Development

Another key factor influencing the direction of USPTO workload is R&D expenditures, which is a useful leading indicator of patent application filings. The latest revised figures available from the National Science Foundation (NSF) show that total U.S. R&D expenditures increased by $7.4 billion to $283.8 billion in 2003. About two-thirds of this total was funded by private industry. When the figures are adjusted for inflation, U.S. R&D expenditures are estimated to have increased by only about one-tenth of a percent in 2003.

Annual growth rates of U.S. R&D expenditures are estimated to have improved since 2003. According to the Battelle-R&D Magazine annual funding forecast, U.S. R&D expenditures were estimated to have reached about $301.5 billion in 2004 or about 6.2 percent higher than the 2003 level. For 2005, R&D expenditure growth is expected to be about 3.5 percent higher than the 2004 level. Historically, the USPTO has found R&D expenditures impact its patent filings workload approximately one year later.

### Global Economy

Since intellectual property protection is a world-wide concern, the global economy is an important component of the USPTO's workload outlook. Approximately 45.0 percent of patent application filings and about 19.0 percent of trademark application filings originate in foreign countries.

7 CBO develops a domestic forecast twice a year and presents it formally in testimony before Congress, making it both timely and authoritative. The current forecast is as of August 15, 2005. In particular, it can be viewed as an official update of the forecasts appearing in the Economic Report of the President.

Global economic growth has been strong in recent years, with world output increasing 4.0 percent in 2003 and 5.1 percent in 2004. For calendar year 2005, the current growth rate estimate is 4.3 percent. The outlook remains positive, but economic growth will likely decelerate in the future and return to a more sustainable rate of expansion that reflects higher oil prices. According to the International Monetary Fund, world output is expected to increase at a 4.3 percent rate in 2006. Continued global economic growth would suggest that patent and trademark filings from overseas are also likely to continue to increase through 2006 and 2007.

**Economic Outlook Summary**

Economic activity in the U.S. remains strong and many economists are expecting the outlook to remain positive in the near future. With the global economy, and especially with the U.S. economy continuing to expand, the workload outlook for the USPTO remains positive despite some risks, such as rising oil prices, which could negatively impact the future.

USPTO PRESIDENT'S BUDGET FOR FISCAL YEAR 2007

**This Page is Intentionally Left Blank**

- 8 -

P000356

# Fiscal Year 2007 Budget Request By Business Line

The USPTO operates as a performance-based organization based on two mission driven business operations — Patents and Trademarks. The budget presentation takes into account full program costs in order to illustrate a clear link to Patent and Trademark performance goals and targets. The performance plan (performance budget) is organized according to Federal Accounting Standards Advisory Board's (FASAB) managerial cost accounting standards Statement of Federal Financial Accounting Standards (SFFAS) No. 4. Under this cost accounting concept, the tables on pages 11 and 15 depict total budget estimates including (a) direct traceable costs, (b) assigned costs on a cause-and-effect basis and, (c) allocated costs on a consistent and reliable basis that help to establish key Patent and Trademark operational and policy requirements. Direct costs are shown as principle functions of the examination pipeline and indirect costs correspond with other contributing resources.

## PATENT BUSINESS

Patents — The core mission of the Patent Organization is to examine applications and grant valid patents in accordance with the law. This is accomplished by comparing the claimed subject matter of an inventor's application for a patent to a large body of existing technological information to determine whether or not the claimed invention is new, useful, and non-obvious to someone knowledgeable in that subject matter. In the course of examining patent applications, examiners make determinations on patentability, prepare answers to briefs in appeals contesting actions rejecting an application, make holdings of abandonments, recommend institution of interference proceedings to determine priority of invention, and act on other post-examination issues in accordance with the provisions of 35 U.S.C. and 37 C.F.R.

The examination of patent applications consists of several distinct, but interrelated functions, which are described below. Workloads, together with the strategic initiatives, drive all increases in budget estimates for fiscal year 2007.

- ***Initial Examination — $34.000 million***: This function includes the administrative review of all applications filed (including those filed under the Patent Cooperation Treaty) before delivery to the Patent Examining Corps for examination. In this phase, the review is for compliance with requirements of form and content; determination of the adequacy and acceptability of statutory fees; conversion to the Image File Wrapper (IFW), except if filed electronically, for electronic processing of all documents and orders; assignment of the official filing date and application tracking number; and inputting of patent bibliographic data in the Patent Application Location Monitoring (PALM) system.
- ***Examination — $758.724 million:*** In this phase, examiners compare the application's subject matter to a large body of technological information to determine the patentability of a claimed invention, whether or not the invention is new, useful, non-obvious, adequately described or enabled, and claimed in clear and definite terms to individuals knowledgeable in that subject matter. The fiscal year 2007 cost of examination includes a net increase of 530 in examining staff over fiscal year 2006 staffing levels.
- ***Scientific, Technical, and Classification Services — $45.418 million:*** The patent scientific, technical and classification services are an integral part of the patent examination process. These functions are required to maintain a patent classification system by subject matter and to provide

electronic access to all U.S. and foreign patents and related technical literature used for searching. The current examiner search files contain more than 8.4 million U.S. patent documents and 23.0 million foreign patent documents. Examiners also have access to over one thousand commercial databases containing non-patent technical literature documents.

- ***Pre-Grant Publication and Patent Issuance — $102.189 million:*** Pre-grant publication is the process of publishing those applications that are subject to publication 18 months after the earliest effective filing date. The patent issuance function occurs after examiners have allowed applications and includes tasks associated with the preparation for issue and printing of patents and publication of a weekly edition of the electronic *Official Gazette* for dissemination to the public. Also included in the cost of this phase is the printing of reexamination certificates, Statutory Invention Registrations and new effort for searchable database for non-published applications.
- ***Patent Appeals and Interferences — $16.418 million:*** This phase includes post-examination hearing and deciding appeals from examiner adverse decisions concerning patent applications, and conducting interference proceedings to make final determinations as to questions of priority of invention.
- ***Operations, Including Systems Maintenance and Automation Support — $75.911 million:*** Outside of the above patent examination process components, direct support of patent operations includes costs related to patent executive and policy leadership, quality review and training functions. These estimates also include the costs of maintaining all automated information systems that directly support the patent process. As part of this function, patent automation personnel serve as business process experts in working with the Chief Information Officer (CIO) organization to implement information technology systems and to procure and deploy related hardware and software in support of the Patent Business.
- ***Strategic Initiatives — $139.424 million:*** The strategic initiatives supporting the Patent Business include all of the initiatives discussed under Goal 1 — Improve quality of patent products and services and optimize patent processing time. Additionally, the initiatives discussed under Goal 3 that directly support the Patent Business are also captured here.
- ***Other Contributing Resources*** (assigned in direct costs of support functions and miscellaneous general expenses) — ***$468.337 million:*** These costs represent the patent share of agency-wide strategic initiatives such as the share of IT Security and other indirect costs such as rent, utilities, program administration, internal operations and infrastructure that support the entire Agency. The USPTO utilizes an activity-based costing methodology that provides greater transparency to the program's operational performance in identifying various factors that drive program costs.

*Dollars in Thousands*

| **Patents**<br>Operations— Resource Requirements are Driven by Incoming Workloads and Targeted Outputs | **FY 2005**<br>*Actual* | **FY 2006**<br>*Enacted* | **FY 2007**<br>*Budget* |
|---|---|---|---|
| • Initial Examination | $30,674 | $31,269 | $34,000 |
| • Examination | $569,497 | $651,849 | $758,724 |
| • Scientific, Technical and Classification Services | $41,908 | $43,432 | $45,418 |
| • Pre-Grant Publication and Patent Issuance | $98,434 | $101,062 | $102,189 |
| • Patent Appeals and Interferences | $13,683 | $15,389 | $16,418 |
| Operations, Including Systems Maintenance and Automation Support | $71,724 | $71,289 | $75,911 |
| Strategic Initiatives | $65,715 | $136,345 | $139,424 |
| **TOTAL DIRECT** | **$891,635** | **$1,050,635** | **$1,172,084** |
| Other Contributing Resources (Indirect Costs for Support Functions) | $427,381 | $443.039 | $468,337 |
| **GRAND TOTAL** | **$1,319,016** | **$1,493,674** | **$1,640,421** |
| FTEs | 6,020 | 6,996 | 7,582 |
| **KEY PERFORMANCE RESULTS** | | | |
| Efficiency | $3,877 | $4,214 | $4,196 |
| Examiners On-Board at End-of-Year | 4,177 | 4,705 | 5,235 |
| Utility, Plant, and Reissue (UPR) Disposals | 279,345 | 307,200 | 338,700 |
| UPR First Actions | 297,287 | 316,600 | 349,100 |
| **Pendency to First Action (Months)** | **21.1** | **22.0** | **23.0** |
| **Total Pendency (Months)** | **29.1** | **31.3** | **32.0** |

## Planned Performance Results

In fiscal year 2007 the Patent business will:

- Receive 444,000 new UPR applications;
- Complete 349,100 first actions on the merits to achieve a first action pendency of 23.0 months; this production target is 10.3 percent more than the 316,600 first actions planned for fiscal year 2006; and
- Dispose of over 338,700 cases to achieve a total pendency of 32.0 months; and issue and print over 181,200 patents; this target is 13.3 percent more than the 160,000 projected for fiscal year 2006.

## Critical Events

- Increase the capacity of the patent examining corps by hiring 1,000 new patent examiners. To support the training and inclusion of this large number of new hires, Patents will establish a new training program, the USPTO Patent Training Academy, and will graduate new hire examiners with the ability to work with reduced oversight thereby reducing the training burden faced by the Supervisory Patent Examiners (SPE). New examiners will be hired in incoming classes of approximately 128 new hires who will remain in the training environment for approximately 8 months. Courses will be a combination of large lectures and small "labs" with groups of approximately 16 who will work in a similar (or same) technology environment.
- Implement retention incentives to retain a highly qualified and productive workforce and continue an enhanced performance-based award package for SPEs and managers. Efforts are underway to ensure that all internal and external factors that influence the retention of examiners are identified and assessed. Programs will be established to reward examiners throughout their career and additionally ensure that the best-qualified examiners seek supervisory positions by providing the potential to be rewarded at the same level as examiners.
- Increase participation in telework by implementing a patent hoteling program that will also allow for the expansion of the patent examining corps without incurring additional office space costs.
- Continue an enhanced performance-based award package for SPEs and managers.
- Collaborate with other Intellectual Property partners to maximize work-sharing opportunities and competitively source the search function, to allow the USPTO to generate gains in examiner resources by focusing examiners on making patentability determinations rather than spending substantial amounts of time on searching.
- Continue the deployment of the Patent File Wrapper (PFW) functionality including the new text and image file repository, the new automated workflow, redesigned scanning operations, and expanded electronic filing and correspondence providing a more comprehensive and productive set of integrated information technology (IT) tools to accomplish end-to-end electronic application processing.

# TRADEMARKS

Trademarks — The core mission of the Trademark Organization is to register marks that meet the requirements of the Trademark Act of 1946, as amended, and provide notice to the public and businesses of the trademark rights claimed in the pending applications and existing registrations of others. With such notice, readily available at www.uspto.gov, a business can make an informed decision when it wishes to adopt a new mark or expand the goods or services marketed under an existing mark. Federal registration provides enhanced protection for the owner's investment in the mark and in the goods and services sold under the registered mark.

The core process within the Trademark Organization is the examination of applications for trademark registration. As part of that examination, examining attorneys must make determinations of registrability under the provisions of the Trademark Act of 1946, as amended, including searching the electronic databases for any pending or registered marks that are confusingly similar to the mark in a subject application, preparing letters informing applicants of the attorney's findings, approving applications to be published for opposition, and examining Statements of Use in applications filed under the Intent-to-Use provisions of the Trademark Act.

The examination of trademark applications consists of several distinct functions, which are:

- ***Initial Examination — $6.697 million:*** When an application for trademark registration is received it is reviewed for adherence to filing requirements. If basic filing requirements are met, the application is classified and data is transferred into trademark automated systems. Trademark automated systems are the source for application data that is used in the processing and examination of trademarks. The automated system also provides information available to the public through the USPTO web site. Initial examination also encompasses the processing of applications filed under the Madrid Protocol.
- ***Examination — $61.769 million:*** In this phase of the process, examining attorneys determine if the mark in the application is entitled to registration under the provisions of the Trademark Act of 1946, as amended. As part of the examination process, examining attorneys evaluate many types of marks, such as trademarks, service marks, certification marks, collective marks, and membership marks. Examining attorneys must search a database of about 1,200,000 registered marks and more than 500,000 pending marks in order to determine if a mark in the subject application is confusingly similar to an existing mark.
- ***Publication and Registration — $3.719 million:*** This phase includes the publication of applications for opposition or notice that the mark has been approved, the registration of allowed applications that have demonstrated use, and the processing of allowed intent-to-use applications awaiting statements of use.
- ***Post Registration — $3.338 million:*** Between the fifth and the sixth year after registration and at ten year intervals after registration or renewal, the registrant must file an affidavit and proof that the mark shown in the registration is being used in commerce, or that grounds for excusable non-use exists. Failure to file the required affidavit and proof of use results in cancellation of the registration. These requirements serve to remove trademarks from the register when the mark is no longer in use.
- ***Appeals and Inter Partes Proceedings — $9.908 million:*** This phase includes review, at applicant request, of adverse registrability determinations, opposition hearings where an existing trademark holder believes that an allowed application may be confusingly similar, and other proceedings involving registrations where a third party wishes to challenge the validity of a registration.

- ***Operations, Including Systems and Automation Support — $19.944 million:*** Outside of the above trademark examination process components, direct support of trademark operations includes costs related to trademark executive and policy leadership, customer assistance, quality review and training functions. These estimates also include the costs of maintaining all automated information systems that directly support the trademark process. Dedicated trademark support personnel serve as business process experts in working with the CIO organization to implement information technology systems and to procure and deploy related hardware and software in support of trademark operations.
- ***Strategic Initiatives — $9.864 million:*** These are the costs of those strategic initiatives that are discussed under Goal 3, that directly support the Trademark Business.
- ***Other Contributing Resources*** (indirect costs for support functions that are reasonably allocated to programs and activities on a prorated basis using a consistent cost allocation methodology) — ***$87.306 million:*** These costs represent the trademark share of agency-wide strategic initiatives such as the share of IT Security and other indirect costs such as rent, utilities, program administration, internal operations and infrastructure that support the entire Agency. The USPTO utilizes an activity-based costing methodology that provides greater transparency to the program's operational performance in identifying various factors that drive program costs.

*Dollars in Thousands*

| **Trademarks**<br>Operations — Resource Requirements are Driven by Incoming Workloads and Targeted Outputs | **FY 2005**<br>*Actual* | **FY 2006**<br>*Enacted* | **FY 2007**<br>*Budget* |
|---|---|---|---|
| • Initial Examination | $10,734 | $7,520 | $6,697 |
| • Examination | $57,993 | $57,657 | $61,769 |
| • Publication and Registration | $2,217 | $2,889 | $3,719 |
| • Post Registration | $2,399 | $3,163 | $3,338 |
| • Appeals and Inter Partes Proceedings | $8,408 | $8,835 | $9,908 |
| Operations, Including Systems and Automation Support | $20,777 | $20,872 | $19,944 |
| Strategic Initiatives | $9,484 | $10,101 | $9,864 |
| **TOTAL DIRECT** | **$112,012** | **$111,037** | **$115,239** |
| Other Contributing Resources (Indirect Costs for Support Functions) | $77,364 | $78,375 | $87,306 |
| **GRAND TOTAL** | **$189,376** | **$189,412** | **$202,545** |
| **FTEs** | **805** | **879** | **975** |
| **KEY PERFORMANCE RESULTS** | | | |
| Efficiency | $677 | $635 | $621 |
| Examining Attorney FTE on production at End-of-Year | 357 | 359 | 414 |
| Total Office Disposals | 252,275 | 298,100 | 326,100 |
| Total First Actions | 317,757 | 371,600 | 418,000 |
| **Pendency to First Action (Months)** | **6.3** | **5.3** | **3.7** |
| **Total Pendency (Months)** | **19.6** | **18.8** | **17.3** |

## Planned Performance Results

In fiscal year 2007 the Trademark business will:

- Receive 376,000 new applications for registration;
- Complete 418,000 first actions to achieve a first action pendency of 3.7 months; this production target is about 12.5 percent more than the 371,600 first actions planned for fiscal year 2006;
- Complete 787,200 balanced disposals[8]; this production target is 11.4 percent more than the 706,900 balanced disposals planned for fiscal year 2006; and
- Complete 326,100 office disposals to achieve a total pendency of 17.3 months; this production target is 9.4 percent more than the 298,100 disposals planned for fiscal year 2006.

## Critical Events

- Expand the Trademark Work-at-Home program to 280 participants;
- Continue to complete the transition to a fully electronic workflow, and;
- Implement *The 21st Century Strategic Plan* initiative for non-attorney examination of statements of use.

[8] All of the following count as one balanced disposal per class: First action, Approval for publication and allowance on the Principal or Supplemental Register, and Abandonment (initial examination). Examiners have the potential to earn up to 2 balanced disposals per class. The production standard was changed from action points to balanced disposals with the implementation of a negotiated performance appraisal plan in 2005.

# SUMMARY OF ACCOMPLISHMENTS AND FUTURE CHALLENGES

## Strengthening Intellectual Property Protection Worldwide

During the course of fiscal year 2005, strengthening intellectual property protection and enforcement continued to be one of the main themes of USPTO efforts worldwide. Officials from the USPTO continue to discuss ways of enhancing protection for copyrights, geographical indications, patents, trademarks, trade secrets and other forms of intellectual property in China, Brazil, Paraguay, Mexico, Eastern Europe, the Republic of Korea, the Philippines, and many other countries, and for the countries in which the United States is negotiating or has negotiated Free Trade Agreements (Morocco, Bahrain, the Central American countries, Australia, Panama, the Andean countries, Thailand, the Southern Africa Customs Union, Chile, Jordan, and Singapore).

In fiscal year 2005, the USPTO expanded its intellectual property protection and enforcement program based on the provisions in the Consolidated Appropriations Act, 2005 (P.L. 108-447) to include training assistance programs, special work assignments aimed at enhancing technical assistance, a public awareness campaign, and studies on key intellectual property issues.

## Electronic Government

The USPTO has made significant progress in maximizing electronic tools to make the patent and trademark examination process fully transparent and accessible to the public. Anyone with Internet access anywhere in the world can use the USPTO web site to track the status of, and review documents in, published patent applications through Public Patent Application and Information Retrieval (PAIR), and the full contents of all pending trademark application files through the Trademark Document Retrieval (TDR) system, including all decisions made by the examiners and their reasons for making them.

Patent applications become eligible for publication 18 months after the earliest effective filing date and trademark applications are added as they are filed. The USPTO projects that about 343,900 new published patent application files and 376,000 trademark applications will become available to the public in 2007. The E-Patent Reference system is available to applicants to access U.S. references referred to in examiners' office actions for patent documents that are not yet available to the public, eliminating the need for mailing paper copies of U.S. patents and published application references to applicants.

The Patent Organization has eliminated the movement of paper patent applications by creating an electronic image of patent applications filed since June 30, 2003, and pending applications filed before that date. The IFW system is used by all patent examiners, technical support staff, and other adjunct users. Full implementation of the USPTO's "Electronic Patent Processing Pipeline" is based on a two-phased approach. The first phase was an image-based solution, achieved through the IFW system. The second phase is a text-based process that will allow the USPTO to provide more automation of manual processes and will improve accuracy and reliability. In order to increase the number of electronically filed patent applications, the USPTO will move to PDF as an alternative to the earlier XML solution. Development of the second phase began in fiscal year 2006.

The USPTO established more options for filing for trademark registration, consistent with *The 21st Century Strategic Plan*, to create financial and market-based incentives and encourage greater participation in the U.S. trademark system. Trademark owners can now select the option that best meets their needs – with higher fees for filing on paper, and lower fees for filing electronically. Changes in the fee structure and system improvements have lead to an increase in the number of applications that are filed through the award-winning Trademark Electronic Application System (TEAS). More than 90.0 percent of applications for registration are now filed electronically, making it easier than ever to file for Federal registration. Electronic communications make it possible to conduct a preliminary search prior to filing an application, determine the status of pending and registered trademarks, respond to office actions, access general

information on marks published, registered and renewed, file initial applications and maintain a registered mark through the USPTO website. The USPTO has continued to enhance the system and expand the number and type of transactions that can be completed on-line. 26 TEAS forms are available and provide the means to handle most trademark transactions electronically.

The award-winning Trademark Work-at-Home program was expanded to include 69.0 percent of eligible examiners by the end of fiscal year 2005. In all, 220 employees are working nearly exclusively from home due to the success of this program with the number projected to increase to 280 by fiscal year 2007. The program has demonstrated a number of benefits including retention of experienced employees and has allowed the USPTO to expand its examining corps to address filing increases without incurring additional costs for office space.

The USPTO has made significant progress in achieving its long-term goal to create an e-government operation and now relies exclusively on trademark data and images submitted through electronic forms or captured from paper documents to support examination, publish documents, and issue trademark registrations. All trademark examination is conducted directly from electronic records. Examiners access applications for examination, take subsequent actions and transactions, and manage their individual case dockets from electronic records and systems. A complete electronic records database covering all trademark applications, including on-going correspondence, has been created by capturing the text and image of approximately 500,000 pending paper files and documents. The USPTO is well on its way to completing the integration of existing automated systems with an electronic file management system that will eliminate manual paper based processes altogether.

The Trademark Trial and Appeal Board (TTAB) now operates with a completely electronic workflow system, permits electronic filing of all documents, and makes available on the USPTO web site image copies of all its proceeding files.

As a result of the tremendous efforts made by the USPTO in e-government, the Winter Corporation recognized our Oracle database for electronic patent processing as one of the largest transactional databases in the world. The database consists of patent records and images that support the electronic processing of patent applications. The database is growing at the rate of over one terabyte every two months and is approaching 20 terabytes in size. This database automatically replicates every transaction for backup and protection.

## Quality Enhancements

The USPTO is committed to improving the quality of its products and services by continuing to implement the initiatives set forth in *The 21st Century Strategic Plan.* In the patent examining corps, an enhanced Quality Assurance Program has been implemented that includes end product reviews, in-process reviews and enhanced "second pair of eyes" reviews. The feedback from these reviews is used to identify and develop training modules and other quality enhancements. Additionally, to ensure that primary patent examiners maintain the knowledge, skills, and abilities (KSAs) necessary to perform a high quality examination, primary examiners are evaluated and re-certified every three years. This program includes mandatory continuing education courses with quizzes and expanded work product reviews. Also, a certification program was implemented to ensure that junior examiners have the required KSAs prior to promotion to the level where they are given legal and negotiation authority. This program includes a "Patent Law and Evidence" course and requires passing a certification examination before promotion to the GS-13 level. Programs that aim to monitor and improve the quality of work performed by the technical support staff and the quality of the examination of international applications filed under the Patent Cooperation Treaty (PCT) have also been developed.

The USPTO has instituted new measures and criteria to create a more comprehensive and meaningful review of what constitutes quality of trademark examination. The results of an examiner's first and final

office action are reviewed for the quality of the substantive basis for decision making, search strategy, evidence, and writing. Based on the data collected from those reviews, the Office has targeted both electronic and traditional training initiatives addressing specific problem areas. In addition, this program provides prompt feedback to examining attorneys when their work products are reviewed. Specific comments on any work product, which is either "excellent" or "deficient," are sent to the appropriate examining attorney and supervisor. As a result, training takes place both on the micro level, with specific feedback, as well as on the macro level, with training modules that address trends, targeting topics that warrant improvement. Examiners are required to take a series of self-paced e-learning tutorials, as part of the USPTO's commitment to improve quality of examination and ensure that all examiners possess the KSAs necessary to perform their jobs. The Office has developed a schedule to implement new e-learning modules throughout the year based on topics that are identified through quality review evaluations.

## Growth in Application Filings

The number of patent and trademark applications that were filed increased during fiscal year 2005 from the previous year at an average growth rate of 8.0 percent each. In the near future, patent and trademark applications are expected to continue to increase at this growth rate, with a slight decrease in the outyears The continued growth in patent application filings has been further magnified by an overall increase in the technological complexity of patent applications, which together make pendency improvements challenging and complicated. More applications, both in numbers and as a percentage of overall filings, seek patent protection in technology areas that are more complex, and the time spent on complex technology applications is almost double that required for traditional applications.

## MANAGEMENT PRIORITIES

- ***Shift in Complexity of Filings /Growing Backlog of Applications / Sustained Emphasis on Quality***— Technology has become increasingly complex, and demands from the public for higher quality products and services have grown in importance. In order to meet customer needs, USPTO is continuing to address the challenges of rising workloads and the shift of applications from traditional arts to more complex technologies by hiring additional examiners and exploring process changes to reduce the amount of examination resources required. Quality is the most important component of *The 21st Century Strategic Plan*. The USPTO has in place several quality initiatives including an enhanced Quality Assurance Program for end product reviews, in-process reviews, and enhanced "second pair of eyes" reviews. Additionally, to ensure that our primary patent examiners maintain the KSAs necessary to perform a high quality examination, the USPTO implemented a recertification program, with primary examiners being recertified once every three years. Quality will be assured throughout the process by striving to identify the people most likely to become the best patent examiners, certifying their knowledge and competencies throughout their careers, and focusing on quality throughout the patent examination process.
- ***Sustained Funding Stream***— Permanent enactment of the fee changes made with the Consolidated Appropriations Act, 2005 is necessary to provide a stable and predictable funding stream for the agency. In the U.S., demands for products and services have created substantial workload challenges in the processing of patents. The Congress, the owners of intellectual property, the patent bar, and the public-at-large have all told the Department of Commerce that it must address these challenges aggressively and promptly. Permanent enactment of these fee changes and continued implementation of *The 21st Century Strategic Plan* initiatives and timeframes will address many of the challenges.
- ***Electronic Workplace*** — The USPTO's Patent and Trademark operations are rapidly moving to eliminate paper documents from their processes. Electronic communications will continue to be improved, encouraging more applicants to do business electronically with the delivery of web-based text and image systems. Patent and Trademark operations have made significant progress in achieving the long-term goal to create an e-government operation, and Trademarks now relies exclusively on trademark data submitted or captured electronically to support examination, publish documents, and print registrations.
- ***Multilateral and Bilateral Agreements*** — Under *The 21st Century Strategic Plan*, the USPTO continues to work with its intellectual property (IP) partners to improve the efficiency of our processing systems. To streamline the IP system and protections, the USPTO must consult with, and receive the support of, other IP offices in structuring new bilateral and multilateral initiatives and agreements. Reaching bilateral and multilateral agreements will require all sides to openly communicate and strive toward a more global convergence of patent and trademark standards.

# COMMITMENT TO THE PRESIDENT'S MANAGEMENT AGENDA

The USPTO is committed to the implementation of the PMA. This is evidenced by the progress made in improving the strategic management of human capital, competitive sourcing, improved financial performance, expanded electronic government, and budget and performance integration.

- ***Strategic Management of Human Capital:*** *The 21st Century Strategic Plan*, together with the *USPTO Strategic Workforce/Restructuring Plan* lay out an explicit workforce planning strategy that is linked to the Agency's strategic and program planning efforts. The Agency has projected its current and future human capital needs, including the size of the workforce and its deployment across the organization, and has identified key competencies needed to fulfill the agency's mission and strategic goals. *The 21st Century Strategic Plan* and the *USPTO Strategic Workforce/Restructuring Plan* demonstrate that the USPTO is focused on building competencies in response to customer demands for enhanced quality. The USPTO also is leveraging competitive sourcing and e-government to better manage time devoted to examination of patent and trademark applications. The Office has become a recognized leader in Federal Government telework programs, and was the recipient of the 2004 Telework in the Federal Government Leadership Award for leadership in enterprise-wide telework programs. As a consequence of this recognized success, other Federal agencies have sought our assistance in establishing their own telework programs. *The 21st Century Strategic Plan* also views workforce planning from an international perspective, and incorporates how work sharing among IP offices can have an impact on USPTO's human capital planning and management. In addition, the USPTO's current organizational structure supports decision-making at the lowest appropriate level.

- ***Competitive Sourcing:*** The USPTO is committed to achieving performance enhancements and cost-savings through competitive sourcing. In recent years, we have competitively sourced many functions, such as payroll, mail processing/handling, clerical support, data transcription, systems maintenance and development, help desk support, etc. In particular, service contracts have presented an excellent opportunity to help us deal with fluctuating workloads and to minimize the impact on our employees as the Office transitions to a fully electronic workplace. Currently, approximately 35.0 percent of the USPTO's total workforce consists of contract personnel working either onsite or offsite at contractor facilities. *The 21st Century Strategic Plan* offers new approaches for performing work that is currently accomplished by Federal employees. While preserving the inherently governmental responsibility for examination, the USPTO is committed to increasing total patent examiner output by competitively sourcing prior art searches. At the end of fiscal year 2005, the USPTO began to competitively source Patent Cooperation Treaty searches. This will serve as a pilot for the competitive sourcing of U.S. patent application searches. In fiscal year 2006, a Request for Proposal was issued for reclassification functions. Reclassification of existing classification schemes serves to improve quality of examination by updating the existing schedules to reflect emerging technology and growth, as well as harmonizing with international systems. Additionally, the USPTO has completed two competitions for commercial activities in accordance with OMB Circular A-76, Performance of Commercial Activities. A streamlined A-76 competition for the Pre-Grant Publication Classification requirements resulted in a private sector performance decision. Based on that decision, a Request For Proposal for the private sector competition was released in the first quarter of fiscal year 2006.

  The USPTO also made strides in performance-based services acquisition and, as a result, was awarded the government-wide FY 2004 Excellence in Performance-Based Services Acquisition Award sponsored by the General Services Administration and the Performance Institute.

- ***Improved Financial Performance:*** The USPTO is in compliance with all Federal accounting principles and standards and has encountered no instances of material weaknesses in internal controls

or non-compliance with Federal accounting regulations. We will continue to maintain and strengthen our internal controls and improve the timeliness and usefulness of our financial management information. For fiscal year 2005, the USPTO met all quarterly financial reporting requirements instituted by OMB and the Treasury and accelerated the fiscal year 2004 annual reporting requirement. Again, the USPTO sustained its clean audit opinion with fiscal year 2005 marking the thirteenth consecutive unqualified audit opinion and the ninth consecutive year with no material weaknesses. The USPTO has a certified and accredited, fully integrated financial management system that routinely produces timely information and uses a data warehouse to accommodate both financial and operational data. The data warehouse is used by managers for analyzing financial results and performance and by SPEs for managing patent processing timeframes. The USPTO also operates a mature Activity Based Cost (ABC) Accounting system that captures costs of core mission activities and both direct and indirect costs for the entire agency. Managers use data from the ABC system to analyze the cost of operations when making decisions regarding improving processes, setting fees, or allocating budgetary resources. Additionally, the USPTO met its fiscal year 2004 financial performance measurement goals. Finally, for the third year in a row, the Association of Government Accountants awarded USPTO the prestigious Certificate of Excellence in Accountability Reporting for the agency's fiscal year 2004 Performance and Accountability Report.

- ***Expanded E-Government:*** USPTO is accelerating deployment of critical automated information systems, particularly the electronic end-to-end processing of patent and trademark applications. In addition, the USPTO is currently working on ways to improve delivery schedules, reliability, performance, security and monitoring the cost of its automated information systems. USPTO continues to work towards the completion of the Trademark Information System (TIS), the file management system that will create a fully electronic workflow system to manage all transactions throughout the examination, petition and post registration process.

  USPTO met its target to deliver an electronic operating process for patent applications by completing the image-based IFW system, which was developed in conjunction with the EPO's image-based system. This collaboration will help to achieve common goals and share systems already in use or in development. The system implemented in 2004 creates an image-based patent file wrapper system that includes an electronic image of all incoming and outgoing paper documents. The next phase of the patent e-government strategy will be to shift to a text-based system.

  USPTO seeks to choose IT projects that best support its mission and comply with its enterprise architecture. Individual projects are evaluated in the broader context of technical alignment with other IT systems as well as the investment's impact on the USPTO IT portfolio's performance, as measured by cost, benefit, and risk. As part of the Capital Planning and Investment Control (CPIC) process, USPTO prioritizes each investment and decides which projects will be funded in subsequent fiscal years. Once selected, each project is managed and monitored consistently throughout its life cycle. At key milestone dates, progress reviews are conducted to compare the project's status to planned benefit, cost, schedule, and technical efficiency and effectiveness measures. All major IT system investments are included in the fiscal year 2007 Exhibit 53.

- ***Budget and Performance Integration:*** Since 1999, the USPTO has developed an annual corporate plan that links the annual performance plan and budget request such that resource requirements for continuing programs and new initiatives are aligned with outputs and performance goals. Subsequently, in June 2002, the USPTO introduced *The 21st Century Strategic Plan* and an updated version of the plan in February 2003 in order to address issues raised by intellectual property stakeholders. *The 21st Century Strategic Plan* is a multi-year plan that identifies critical tasks designed to provide the USPTO and external stakeholders with a long-term vision of agency goals, potential funding levels, and planned outcomes. Following development of the Plan, USPTO has refined its

budget formulation process for better integration of budgetary resources with both enterprise-wide strategic goals and individual unit performance targets.

The USPTO made interim adjustments to *The 21st Century Strategic Plan* originally issued June 2002. These interim adjustments are provided as an addendum to the fiscal year 2007 Budget Request. Additionally, the USPTO will formally update *The 21st Century Strategic Plan* during fiscal year 2006 in concert with the development of the fiscal year 2008 budget cycle.

# THE USPTO 21ST CENTURY STRATEGIC PLAN

This budget request provides an inclusive perspective by deciding on and identifying critical Patent and Trademark requirements, challenges, approaches and initiatives along with corresponding proposed legislation necessary for successful multi-year implementation of *The 21st Century Strategic Plan.* All of our business line requirements center on three broad strategic themes:

- ***Agility:*** Address the 21st century economy by Becoming a More Agile Organization— We will create a flexible organization and work processes that can handle the increasing expectations of our markets, the growing complexity and volume of our work, and the globalization that characterize the 21st century economy. We will work, both bilaterally and multilaterally, with our partners to create a stronger, better-coordinated and more streamlined framework for protecting intellectual property around the world. We will transform the USPTO workplace by radically reducing labor-intensive paper processing.
- ***Capability:*** Enhance Quality through Workforce and Process Improvements— We will make patent and trademark quality our highest priority by emphasizing quality in every component of *The 21st Century Strategic Plan.* Through the timely issuance of high-quality patent and trademark registrations, we will respond to market forces by promoting advances in technology, expanding business opportunities and creating jobs.
- ***Productivity:*** Accelerate Processing Times Through Focused Examination— We will control patent and trademark pendency, reduce time to first Office action, and recover our investments in people, processes and technology.

The USPTO has three supporting performance goals with measures. Two of the strategic themes— *Agility* and *Productivity* — have a direct relationships with the three USPTO performance goals, while one crosscutting strategic theme— *Capability*— spans all three performance goals.

The *Agility* theme is linked to the third performance goal and incorporates ongoing initiatives in e-government and collaboration with our IP partners worldwide. As a first priority, the USPTO has made electronic end-to-end processing of both patents and trademarks the centerpiece of its business model by deploying critical automated information systems. In addition, the USPTO is currently working on ways to improve delivery schedules, reliability, performance, security and cost control of all our automated information systems. Further, the USPTO is enhancing existing, and establishing new alliances with our friends in other national and international IP organizations to strengthen intellectual property rights around the world.

The *Productivity* theme is linked to Performance Goals 1 and 2 and addresses the planned longer-term reduction in patent and trademark pendency as measured by the average first action pendency and the average total pendency. Costs related to pendency reduction initiatives are depicted in examination.

The *Capability* theme crosses all performance goals, emphasizes the quality and process improvement element in the USPTO, and permeates throughout all our activities and operations. Quality will be assured throughout the process by hiring the people who make the best patent and trademark examiners, certifying their knowledge and competencies throughout their careers at the USPTO, and focusing on quality throughout the examination of patent and trademark applications.

The budget request for fiscal year 2007 follows and is presented by each of USPTO's three performance goals.

# Fiscal Year 2007 Budget Request by Performance Goal

## GOAL 1 — BUDGET AND PERFORMANCE

### *Improve quality of patent products and services and optimize patent processing time*

The core process under Goal 1 is the examination of an inventor's application for a patent by comparing the claimed subject matter of the application to a large body of technological information to determine whether the claimed invention is new, useful, and non-obvious to someone knowledgeable in that subject matter. A quality review of the examination requirements and practice includes reviewing a random sample of both in process and allowed applications for quality. The patent examination process also includes deciding appeals regarding issues of patentability and preparing interference proceedings.

Other phases of the patent process include the initial administrative review of applications filed before examination and the publication of applications 18 months from the earliest effective filing date and upon issuance for dissemination to the public. Additionally, the Patent Organization is responsible for managing automation requirements for implementing and maintaining classification schemes for organizing and retrieving technical information contained in patents and other documents in the search files, and for acquiring, maintaining, and providing access to scientific and technical literature in support of the examination process.

Although the long term patent pendency goal remains 18 months, this goal will not be achieved in the near term because of (1) prior constraints on funding for new hires, which resulted in priority through fiscal year 2004 being placed on quality initiatives, (2) actual application growth rates for fiscal year 2005 above those assumed for planning purposes (with a growth rate of 8.0 percent), and (3) implementation delays and legislative requirements which have had the effect of postponing the realization of the competitive sourcing efforts. Additionally, of the applications filed, a higher percentage are being filed in the very high complexity art areas such as data processing, telecommunications, and biotechnology. These applications require more hours to examine than applications in the relatively less complex areas such as general mechanical and traditional chemical technologies. The time spent by an examiner on complex technology applications is almost double that of traditional applications. The USPTO is committed to an 18 month patent first action pendency goal. In fiscal years 2006 and 2007 the USPTO will be addressing pendency by hiring additional examiners, continuing competitive sourcing and worksharing opportunities and exploring other potential options with our customers and stakeholders.

As stated above, the USPTO began implementing several quality initiatives, including an enhanced Quality Assurance Program that includes end product reviews, in-process reviews, and enhanced "second pair of eyes" reviews. The feedback from these reviews is used to identify and develop training modules and other quality enhancements. In fiscal years 2006 and 2007, we will continue the quality efforts currently implemented. Additionally, we will continue to enhance the pre-employment assessment of patent examiner applicants to make sure they have the needed competencies. We will review work products throughout prosecution to ensure compliance with examination practice and procedures standards.

Additionally, in fiscal year 2007, we will continue to focus on the enhancement of the skill sets of the examination staff via the examiner certification program. The certification program, which includes the development and delivery of a patent law and evidence course, is now mandatory for examiners before promotion to a GS-13. In addition to this certification program for junior examiners, the Patent Organization also initiated a re-certification course for all primary examiners. This re-certification, which

will take place every three years, ensures that primary examiners are maintaining the necessary KSAs in current patent law, practice, and procedure. In fiscal years 2006 and 2007, we will continue both the certification and re-certification programs requiring the examiners to pass a comprehensive test that attests to their understanding of the content of the completed training. In combination, all of these quality initiatives will provide improved patent quality by providing review of work product, feedback to examiners on areas for improvement, targeted training, and safeguards to ensure competencies.

Focus on employee skill sets to improve overall patent quality has also been implemented at the technical support staff level. A comprehensive quality review program began in the second half of fiscal year 2004 and covers technical support staff work related to the processing of new applications, amendments, and issued patents. Employee-level assessments are generated and have been included as part of their annual performance plans. In fiscal years 2006 and 2007, we will continue to monitor quality at key training and certification points to ensure that implemented actions translate into improved work products of the technical support staff.