# Exhibit 9

**Presentation to Office of Management and Budget by parties including Polestar
(June 15, 2007)**

**Part 6: Attachment N (end) to Q (P000507-541)**

Dockets.Justia.com



**United States Patent and Trademark Office**                    **PATENTS**

Home| Site Index| Search| FAQ| Glossary| Guides| Contacts| eBusiness| eBiz alerts| News| Help

Patents > Office of the Deputy Commissioner for Patent Examination Policy > Proposed Rule Changes to Focus the Patent Process in the 21st Century

Proposed Rule
Changes to Focus the
Patent Process in the
21st Century
1. Claims Practice
2. Continuation Practice
3. Accelerated
Examination
4. IDS Practice
Presentation Materials
Presentation Schedule

## Background

The U.S. Patent and Trademark Office (USPTO) continues to propose new initiatives to make its operations more efficient, to ensure that the patent application process promotes innovation, and to improve the quality of issued patents. These pages have been developed to provide full transparency to the public about these ongoing efforts.

On July 10, 2006, the USPTO proposed new rule changes related to Information Disclosure Statements. Applicants list information for the examiner to consider in a communication called an Information Disclosure Statement (IDS). These proposed IDS rule changes are designed to encourage patent applicants to provide the USPTO the most relevant information related to their inventions in the early stages of the review process.

On June 26, 2006, the USPTO published new procedures for accelerated examination, offering filers a final decision by the examiner within 12 months on whether their application for a patent will be granted or denied. The accelerated examination procedure is designed to give applicants quality patents in less time.

The USPTO inaugurated these pages with information about rule changes proposed on January 3, 2006 related to claims practice and continuation practice. These proposed rule changes will make the patent examination process more effective and efficient by reducing the amount of rework by the USPTO and reducing the time it takes for the patent review process.

The information below includes an explanation of the challenges the USPTO faces, the reasons why proposed rule changes are necessary, the proposed rule changes, and supporting material. Additionally, the information below includes a schedule of dates and places where USPTO representatives have made presentations concerning the proposed rule changes, and scheduling information for new presentations. These pages will be updated as new information or proposals are unveiled.

No rule change will be effective before October 1, 2006, and at least 30 days advance notice of the changes shall be given.

### USPTO Requesting More Timely and Useful Information Disclosure Statements (IDSs)

As part of its ongoing efforts to promote investment in innovation and spur economic growth, the USPTO announced on July 10, 2006, new proposed IDS rule changes that would encourage patent applicants to provide the USPTO the most relevant information related to their inventions in the early stages of the review process. As a result, patent applications could be processed in a more streamlined and effective manner.

The USPTO has observed that applicants sometimes provide information in a way that hinders rather than helps timely, accurate examination. For example, some applicants send a very large number of documents to the examiner, without identifying why they have been submitted, thus tending to obscure the most relevant information. Additionally, some applicants send very long documents without pointing out what part of the document makes it relevant to the claimed invention. Sometimes applicants delay sending key information to the examiner. These practices make it extremely difficult for the patent examiner to find and properly consider the most relevant information in the limited time available for examination of an application.

The proposed IDS rule changes are designed to address the above-mentioned issues by encouraging early submission of relevant information, and discouraging submission of information that is unimportant or does not add something new for the examiner to consider. With the proposed IDS rule changes, patent examiners would not have to review documents that do not directly relate to the claimed invention, or that duplicate other information already

P000507

submitted.

**USPTO to Give Patent Filers Accelerated Review Option**

The USPTO published procedures on June 26, 2006, setting forth requirements for patent applicants who want, within 12 months, a final decision by the examiner on whether their application for a patent will be granted or denied. To be eligible for "accelerated examination," applicants who file under this procedure will be required to provide specific information so that review of the application can be completed rapidly and accurately.

Applicants have a duty to disclose to the USPTO material prior art of which they are aware, but are not required to search for prior art. Under the USPTO's accelerated examination procedure, applicants will be required to conduct a search of the prior art, to submit all prior art that is closest to their invention, and explain what the prior art teaches and how their invention is different.

In addition to providing and explaining any prior art references, applicants must explicitly state how their invention is useful and must show how the written description supports the claimed invention. The proposal also limits the number of claims allowed in each application and shortens the time periods for responding to most USPTO communications.

The accelerated examination procedure is designed to give applicants quality patents in less time. In exchange for quick examination, patent examiners will receive more focused and detailed information about the invention and the closest prior art from the applicants. This increased disclosure upfront by applicants will help examiners more quickly make the correct decision about whether a claimed invention deserves a patent.

**USPTO Focused on New Rules on Claims and Continuations at Meetings Across the Nation**

Between February 1 and the end of April at meetings around the country, representatives of the USPTO provided thousands of patent attorneys, patent agents, independent inventors and members of the small business community with background information regarding proposed rule changes related to claims and continuation. Additionally, USPTO convened three meetings on the topic. The USPTO meetings were held in Chicago on February 1st, in Berkeley on February 28th, and in Alexandria at the USPTO on April 25th.

Specifically, these initiatives will prioritize the claims reviewed during the examination process and better focus the agency's examination of patent applications by requiring applicants to identify the most important claims to the invention. Some continuations are necessary; however, an excessive number detracts from the agency's ability to examine new patent applications. Also, over 40% of new applications in FY 2004 had more than 20 claims. Although the initial examination of large numbers of claims may sometimes be necessary in certain complex applications, measures are needed to ensure they don't absorb a disproportionate amount of the limited time the USPTO has to review applications.

**Complete slide set presented at the Chicago Town Hall Meeting** (html version) (zip version)
For background and justification, see slides 8-30 and 48-60.
For proposals on continuations, see **slides 31-38 and 72-85**.
For proposals on claims, see slides **39-47 and 61-71**.

---

(top of page)


# *1. Claims Practice*

Federal Register - 71 *Fed. Reg.* 61 (03 January 2006)

P000508

Official Gazette - 1302 OG 1329 (24 January 2006)

Topics: **Changes to Practice for the Examination of Claims in Patent Applications, Notice of proposed rule making** (03Jan2006) [PDF]

Examples

**Comments from Public**

(top of page)

## 2. Continuation Practice

Federal Register - 71 *Fed. Reg.* 48 (03 January 2006)

Official Gazette - 1302 OG 1318 (24 January 2006)

Topics: **Proposed Changes to Practice for Continuing Applications, Requests for Continued Examination Practice, and Applications Containing Patentably Indistinct Claims, Notice of proposed rulemaking** (03Jan2006) [PDF]

Examples

**Comments from Public**

(top of page)

## 3. Accelerated Examination

Federal Register - 71 *Fed. Reg.* 36323 (26 June 2006)

Official Gazette

Topics: **Changes to Practice for Petitions in Patent Applications To Make Special and for Accelerated Examination, Notice (26Jun2006)** [PDF]

Slides: **Revised Accelerated Examination Program and Petition to Make Special Procedures (html version)(zip version)**

Comments from Public

(top of page)

## 4. IDS Practice

Federal Register - 71 *Fed. Reg.* 38808 (10 July 2006)

Official Gazette

Topics: **Changes To Information Disclosure Statement Requirements and Other Related Matters (10 July 2006)** [PDF]

**Executive Summary** [PDF], **Detailed Summary** [PDF]

Slides: **IDS NPR (html version)(zip version)
The Four Time Periods for Submitting an IDS and Their Corresponding Requirements (html version)(zip version)
Application Prosecution Timeline (html version)(zip version)**

**Comments from Public**

P000509
10/12/06

(top of page)

## *Presentation Materials*

In addition to the Chicago Town Hall slides described and available above, the following presentation materials are available:

**Slides** (25 January 2006 presentation by James Toupin regarding background and justification) (html version) **(zip version)**

Slides (25 January 2006 presentation by Robert Spar regarding Claims Practice) (html version) **(zip version)**

**Slides** (25 January 2006 presentation by Robert Spar regarding Continuation Practice) **(**html version**)** **(zip version)**

**Slides** (29 March 2006 presentation by Robert Spar regarding Claims Practice and Continuation Practice) **(**html version**)** **(zip version)**

(top of page)

## *Presentation Schedule*

Additional Town Hall meetings sponsored by the USPTO. Check www.uspto.gov for additional information or contact the Office of Public Affairs at 571-272-8400.

**02/28/2006 – Boalt Hall School of Law – Berkeley, CA**
**03/22/2006 – University of Houston Law Center – Houston, TX**
**04/25/2006 – USPTO – Alexandria, VA**

The following is a list of events that are *not* sponsored by the USPTO, but USPTO representatives will make (or have made) presentations. For more information on these events, please contact the sponsor unless otherwise identified below.

02/11/2006 – ABA Counsel – Chicago, IL
02/13/2006 – Orange County Bar Assoc. – Newport Beach, CA
02/14/2006 – Century City Bar Assoc. – Century City, CA
02/17/2006 – Duke Law School – Durham, NC
02/23/2006 – Franklin Pierce Law School – Concord, NH (contact: 603-228-1541 ext 1150)
02/28/2006 – Federal Circuit Bar Assoc. – Washington, DC
03/09/2006 – Biotechnology Industry Org. – San Francisco, CA (contact: www.bio.org/ip/ipmeeting)
03/20/2006 – State Bar of Michigan Intellectual Property Law Section – East Lansing, MI (contact: 877-229-4350)
03/29/2006 – Connecticut Intellectual Property Law Asssoc. – New Haven, CT (contact: 860-286-2929)
04/05/2006 – Georgetown Law Center – Washington, DC
04/07/2006 – American Intellectual Property Law Assoc. – New York, NY (contact: www.aipla.org)
04/12/2006 – Biotechnology Industry Org. – Chicago, IL (contact: www.bio.org)
04/19/2006 – Patent Lawyers Club of Washington – Rosslyn, VA (contact: 202-478-5300)
04/28/2006 – Tennessee Bar Assoc. Intellectual Property Forum – Nashville, TN (contact: www.tba.org)
07/17/2006 – National Assoc. of Patent Practitioners – Alexandria, VA (contact: www.napp.org)
07/18/2006 – George Mason Univ. School of Law – Arlington, VA (contact: 202-824-3246)

(top of page)

P000510

NOTE: The information contained on this page was correct at the time of original publication. Some information may no longer be applicable. Amendments may have been made to the rules of practice since the original date of a publication, there may have been a change in any fees indicated, and certain references to publications may no longer be valid. Wherever there is a reference to a statute or rule, please check carefully whether the statute or rule in force at the date of publication of the information has since been amended.

For questions concerning the proposals, please contact the Office of Patent Legal Administration at 571-272-7701 or **Patent.Practice@uspto.gov.**

Some contents linked to on this page require a plug-in for **ZIP, PDF** and **PowerPoint** Files.

---

KEY: ✍=online business system   $=fees   📋=forms   🏷=help   ⚖=laws/regulations   ⊚=definition (glossary)

---

The **Inventors Assistance Center** is available to help you on patent matters. Send questions about USPTO programs and services to the **USPTO Contact Center (UCC)**. You can suggest USPTO webpages or material you would like featured on this section by E-mail to the **webmaster@uspto.gov**. While we cannot promise to accommodate all requests, your suggestions will be considered and may lead to other improvements on the website.

---

Last Modified: 09/13/2006 11:59:41

P000511

P000512

10/12/06



**United States Patent and Trademark Office**                                    **PATENTS**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

Patents > Office of the Deputy Commissioner for Patent Examination Policy > Office of Patent Legal Administration > Proposed Rule Changes to Focus the Patent Process in the 21st Century > The State of the Patent System Background For Rule Proposals (text version)

## THE STATE OF THE PATENT SYSTEM BACKGROUND FOR RULE PROPOSALS

Los Angeles Intellectual Property Law Association "Washington and the West" Conference January 25, 2006

UPR Applications Filed

FY 05 plan 375,080 (5.5% above FY 04)

FY 05 actual 384,228 (8.1% above FY04)

2.6% over plan

| Year | 1995 | 1996 | 1997 | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 | |
|---|---|---|---|---|---|---|---|---|---|---|
| Numbers | 221,304 | 191,116 | 220,773 | 240,090 | 261,041 | 293,244 | 326,081 | 333,688 | 333,452 | 3! |

TC Application Inventory

| | 1600 | 1700 | 2100 | 2600 | 2800 | 3600 | 3700 | Total* | Design |
|---|---|---|---|---|---|---|---|---|---|
| New Applications[1] 9/30/2004 | 55,402 | 63,923 | 71,778 | 97,380 | 77,651 | 56,738 | 65,005 | 508,878 | 18,451 |
| New Applications[1] 9/30/2005 | 62,644 | 72,697 | 76,529 | 115,585 | 94,425 | 70,354 | 83,225 | 586,580 | 24,534 |

1 "New Application inventory" is the number of new applications designated or assigned to a technology center aw assigned to a particular TC, awaiting processing either pre- or post-examination.

Patent Pendency (as of 1/1/2006)

| Technology Center | Average 1st Action Pendency (months)[1] | Average Total Pendency (months)[2] |
|---|---|---|
| 1600-Biotechnology and Organic Chemistry | 23.3 | 33.5 |
| 1700- Chemical and Materials Engineering | 20.6 | 29.8 |
| 2100-Computer Architecture Software and Information Security | 33.1 | 44.8 |
| 2600-Communications | 31.2 | 43.9 |
| 2800-Semiconductor, Electrical, Optical Systems | 15.0 | 25.0 |
| 3600-Transportation, Construction, Electronic Commerce | 19.8 | 27.5 |
| 3700-Mechanical Engineering, Manufacturing Products | 18.6 | 26.6 |
| UPR Total as of (10/01/2005) | 21.8 | 30.6 |

1 "Average 1st action pendency" is the average age from filing to first action for a newly filed application, complete the average age from filing to issue or abandonment of a newly filed application, completed during October-Decem!

P000513

**First Action Pendency by Art Areas**

| High Pendency Art Areas | Pendency[1] (months) | Low Pendency Art Areas | Penden |
|---|---|---|---|
| 1640-Immunology, Receptor/Ligands, Cytokines, Recombinant Hormones, and Molecular Biology | 27.7 | 1620-Heterocyclic Compounds and Uses | 16.9 |
| 1743-Analytic Chemistry & Wave Energy | 30.8 | 1752-Radiation Imagery | 12.1 |
| 2123-Simulation and Modeling, Emulation of Computer Components | 39.7 | 2125-Manufacturing Control Systems and Chemical/Mechanical/Electrical Control | 20.00 |
| 2617-Interactive Video Distribution | 50.4 | 2651-Dynamic Information Storage & Retrieval | 16.1 |
| 2836-Control Circuits | 24.3 | 2833-Electrical Connectors | 8.8 |
| 3628-Finance & Banking, Accounting | 52.1 | 3612-Land Vehicles | 12.0 |
| 3731-Surgery: Cutting, Clamping, Suturing | 30.9 | 3723-Tools & Metal Working | 10.9 |

1 "Average 1st action pendency" is the average age from filing to first action for a newly filed application, complete

**Inventory by Art Examples**

| High Inventory Art Areas | Months of Inventory* | Low Inventory Art Areas | Mo |
|---|---|---|---|
| 1614, 1615, and 1617-Drugs Bio-affecting and Body Treatment | 38-51 | 1620-Organic Chemistry | 15 |
| 1753-Radiation Imagery | 34 | 1734-Adhesive Bonding and Coating Apparatus | 10 |
| 2127-Computer Task Management | 46 | 2125-Manufacturing Control Systems and Chemical/Mechanical/Electrical Control | 10 |
| 2611-Interactive Video Distribution | 114 | 2651,2653-Information Storage and Retrieval | 12 |
| 2836-Control Circuits | 22 | 2831-Electrical Conductors | 8 |
| 3620-Business Methods | 22-136 | 3651-Conveying | 12 |
| 3731 and 3737-Medical Instruments, Diagnostic Equipment | 38-47 | 3742-Thermal and Combustion Technology | 8 |

*The number of months it would take to reach a first action on the merits (e.g., an action addressing patentability is production rate. Today's production rate means that there are no changes in production due to hiring, attrition, cha that applications are taken up in the order of filing in the given art unit/area. Of course, USPTO is taking aggressive inventory rates in high-inventory art areas.

**Quality of Products – FY 05**

| | FY 04 | 1600 | 1700 | 2100 | 2600 | 2800 | 3600 | 3700 | Design | FY05 | FY05 Target |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Patent In-Process Examination Compliance Rate[1]* | 82.0% | 81.7% | 82.9% | 84.7% | 90.9% | 84.4% | 86.6% | 94.3% | 86.2% | 86.2% | 84.0% |
| Patent Allowance Error Rate[2]* | 5.32% | 4.88% | 6.46% | 3.56% | 2.25% | 4.43% | 4.9.4% | 6.43% | 1.6% | 4.55% | 4.0% |

*Compliance and error rates as measured by OPQA.

P000514

[1] Compliance is the percent of office actions reviewed and found to be free of any in-process examination deficiency (an error tha

[2] Patent allowance error rate is the percent of allowed applications reviewed having at least one claim which is considered unpate "Allowance" occurs before a patent is issued, so these errors are caught before any patent is actually granted.

**Technology Centers Rework\* Statistics**

|  | FY 2002 | FY 2003 | FY 2004 | FY 2005 |
|---|---|---|---|---|
| **TC Summary** | **% FAOM Rework** | **% FAOM Rework** | **% FAOM Rework** | **% FAOM Rework** |
| 1600 | 36.4% | 39.7% | 40.3% | 42.4% |
| 1700 | 25.2% | 26.9% | 27.1% | 28.0% |
| 2100 | 23.9% | 24.0% | 24.6% | 28.2% |
| 2600 | 24.8% | 24.1% | 24.3% | 25.4% |
| 2800 | 19.1% | 22.0% | 24.9% | 24.1% |
| 3600 | 17.7% | 21.2% | 23.1% | 28.5% |
| 3700 | 22.2% | 25.1% | 24.0% | 28.1% |
| UPR | 23.2% | 25.3% | 26.1% | 28.3% |

\* Rework first actions are those actions that are in a Continuing (CONs and CIPs), RCE, CPA or 129(a) applications (excludes Di

**Continuation Filing Rates**

| Fiscal Year | FY80 | FY81 | FY82 | FY83 | FY84 | FY85 | FY86 | FY87 | FY88 | FY89 | FY90 | FY91 | FY92 | FY93 | FY94 | FY95 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Continuations (CON, CPA/RCE) | 6,022 | 6764 | 9097 | 6764 | 9509 | 11882 | 14036 | 15466 | 16923 | 19184 | 19962 | 22346 | 26086 | 28067 | 31750 | 39175 |
| CIPs | 8,192 | 5743 | 5871 | 5023 | 5903 | 6648 | 7383 | 7745 | 8432 | 9282 | 10222 | 10980 | 11968 | 12690 | 13753 | 15881 |

**Continuation Filing Percentage**

| Fiscal Year | FY80 | FY82 | FY84 | FY86 | FY88 | FY90 | FY92 | FY94 | FY96 | FY98 | F |
|---|---|---|---|---|---|---|---|---|---|---|---|
| % Continuations (CON, CPA/RCE) of Total Filings | 6.42% | 7.79% | 8.68% | 11.54% | 12.35% | 12.20% | 15.12% | 17.06% | 15.05% | 14.09% | 17 |

**Alternative: Appeal**

|  | FY01 | FY02 | FY03 | FY04 | FY05 |
|---|---|---|---|---|---|
| Inventory Reduction Measure | 11.8 | 7.7 | 6 | 3.5 | 3.8 |
| Time to Renew from Docketing |  |  | 14.5 | 9.9 | 4.8 |

**Appeal Conference Initiatives**

- Pre-Brief Appeal Conference Pilot Program
  - o 1296 Off. Gaz. Pat. Office 67 (July 12, 2005)
  - o The USPTO is extending the program until further notice.
- Appeal Conferee Specialists Pilot Program

**Average Number of Claims at Filing**

P000515

**Rule Makings on Representative Claims and Continuing Applications**

- Rule Makings on Representative Claims and Continuing Applications
  - Better focused examination – help us get it right the first time
  - Create greater finality in examination:
    - To help the Office turn to new inventions and create public certainty on patent protection

**Pendency Reduction Action Plan**

| KEY: ⟳ =online business system   $ =fees  ▦ =forms  ⟶ =help  ▦ =laws/regulations  ▦ =definition (glossary) |
| --- |

*The Inventors Assistance Center is available to help you on patent matters. Send questions about USPTO programs and services to the USPTO Contact Center (UCC). You can suggest USPTO webpages or material you would like featured on this section by E-mail to the webmaster@uspto.gov. While we cannot promise to accommodate all requests, your suggestions will be considered and may lead to other improvements on the website.*

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

Last Modified: 03/31/2006 15:59:01

Case 1:07-cv-00846-JCC-TRJ Document 174-7 Filed 12/27/2007 Page 12 of 36

P000517



Patents > Office of the Deputy Commissioner for Patent Examination Policy > Office of Patent Legal Administration > Proposed Rule Changes to Focus the Patent Process in the 21st Century

## John Doll – Commissioner for Patents

February 1, 2006

Agency developing new strategic plan
- Part of budget process
- Planning for at least six-year period
- Anticipate, plan for USPTO role in changing environment
- Seeking broad perspective:
  - o input from interested persons, stakeholders, including
  - o Industries (large and small business), inventors, employees, practitioners
  Please send ideas/thoughts/suggestions to StrategicPlanning1@uspto.gov

### EFS-Web: Newly Improved On-Line Solution For Patent Filers

- EFS-Web will allow patent filers, anywhere, anytime, to submit patent applications, related documents, and pay fees online
- Currently in Beta-testing
- Rollout to all comers expected mid-March 2006

### EFS-Web Advantages to Patent Filers

- File applications and related documents using existing technologies and workflows.
- Submit applications and related documents by simply attaching PDF files.
- Staff may transmit filing on behalf of patent practitioners.
- Verifies and validates files before submission.
- Automatic electronic acknowledgement receipt confirming submission.
- Rapid access to PAIR to view submission and status and to confirm documents safely and accurately received.

### EFS-Web Schedule and Support

- Electronic Business Center (EBC) support available from 6 a.m. to 12 Midnight Eastern Monday-Friday
- EBC Contact Numbers:
  - o 1-866-217-9197
  - o 571-272-4100
  - o 571-273-0177 (fax)
- E-mail: ebc@uspto.gov
- Online Training Available

### Questions

- EFS Web receipt time or filing date is based on USPTO East Coast time as defined by Statute.
- What can be filed in EFS-Web?
  - o New Applications: Utility, Provisional, Design with Color Drawings, 371 National Stage
  - o Follow-on submission associated with an Application
  - o Over 80 document descriptions - Amendments, Petitions, Board of Appeals Documents, Non-Patent Literature, For References Cited etc etc
- Numerous Fees
  - o Filing Fees
  - o Extensions of Time
  - o Petition Fees

### Newly Proposed 12 Month Accelerated Examination Procedure

- Goal: A final disposition of an application can be reached within 12 months from the filing date of the application.

P000518

- o Final disposition: allowance, abandonment, or appeal.
- An OG notice will soon be published.
  - o Revising the requirements and procedures for petitions to make special under the accelerated examination program CFR 1.102(c)(2), set forth in MPEP 708.02.

## Application Filings and Examiner Production

UPR Applications Filed

- FY 05 plan 375,080 (5.5% above FY 04)
- FY 05 actual 384,228 (8.1% above FY04)
- 2.6% over plan

## Production

|                              | FY 04   | FY 05 Target | FY 05   |
|------------------------------|---------|--------------|---------|
| UPR[1] FAOM[2]               | 288,315 | 297,614      | 297,287 |
| UPR Disposals[3]             | 287,188 | 295,456      | 279,345 |
| UPR Production Units[4]      | 287,752 | 296,535      | 288,316 |
| PCT Production Units[5]      | 16,882  | 22,916       | 15,147  |

[1] "UPR" = Utility, Plant, and Reissue Applications.

[2] "FAOM" = First Action on the Merits – first action count by an examiner after the filing of an application (does not include restrict other miscellaneous actions).

[3] "Disposal" = An examiner allowance, abandonment, or disposals following a board decision.

[4] "Production Unit" = First action count plus disposal count divided by 2.

[5] "PCT" = Patent Cooperation Treaty. PCT applications are processed differently and tracked separately from US National stage applications. For FY 05, 15,147 PU's is 35,389 processed applications.

## PENDENCY. . . vs the Backlog

First Action Pendency by Art Areas

| High Pendency Art Areas | Pendency[1] (months) | Low Pendency Art Areas | Pendency[1] (months) |
|-------------------------|----------------------|------------------------|----------------------|
| 1640 – Immunology, Receptor/ Ligands, Cytokines, Recombinant Hormones, and Molecular Biology | 27.7 | 1620 – Heterocyclic Compounds and Uses | 16.9 |
| 1743 – Analytic Chemistry & Wave Energy | 30.8 | 1752 – Radiation Imagery | 12.1 |
| 2123 – Simulation and Modeling, Emulation of Computer Components | 39.7 | 2125 – Manufacturing Control Systems and Chemical/ Mechanical/Electrical Control | 20.0 |
| 2617 – Interactive Video Distribution | 50.4 | 2651 – Dynamic Information Storage & Retrieval | 16.1 |
| 2836 – Control Circuits | 24.3 | 2651 – Dynamic Information Storage & Retrieval | 8.8 |
| 3628 – Finance & Banking, Accounting | 52.1 | 3612 – Land Vehicles | 12.0 |
|  |  |  |  |

P000519

| 3731 – Surgery: Cutting, Clamping, Suturing | 30.9 | 3723 – Tools & Metal Working | 10.9 |

[1] "Average 1st action pendency" is the average age from filing to first action for a newly filed application, completed during October – December 2005.

**Inventory by Art Examples**

| High Inventory Art Areas | Months of Inventory* | Low Inventory Art Areas | Months of Inventory* |
|---|---|---|---|
| 1614, 1615, and 1617 – Drugs, Bio-affecting and Body Treatment | 38-51 | 1620 – Organic Chemistry | 15 |
| 1753 – Radiation Imagery | 34 | 1734 – Adhesive Bonding and Coating Apparatus | 10 |
| 2127 – Computer Task Management | 46 | 2125 – Manufacturing Control Systems and Chemical/ Mechanical/Electrical Control | 10 |
| 2611 – Interactive Video Distribution | 114 | 2651, 2653 – Information Storage and Retrieval | 12 |
| 2836 – Control Circuits | 22 | 2831 – Electrical Conductors | 8 |
| 3620 – Business Methods | 22-136 | 3651 – Conveying | 12 |
| 3731 and 3737 – Medical Instruments, Diagnostic Equipment | 38-47 | 3742 – Thermal and Combustion Technology | 8 |

*The number of months it would take to reach a first action on the merits (e.g., an action addressing patentability issues) on a new application filed in July 2005 at today's production rate. Today's production rate means that there are no changes in production due hiring, attrition, changes to examination processing or examination efficiencies, and that applications are taken up in the order of given art unit/area. Of course, USPTO is taking aggressive steps to ensure changes that will significantly lower the inventory rates inventory art areas.

TC Application Inventory

| | 1600 | 1700 | 2100 | 2600 | 2800 | 3600 | 3700 | Total* | Design |
|---|---|---|---|---|---|---|---|---|---|
| New Applications[1] 9/30/2004 | 55,402 | 63,923 | 71,778 | 97,380 | 77,651 | 56,738 | 65,005 | 508,878 | 18,451 |
| New Applications[1] 9/30/2005 | 62,644 | 72,697 | 76,529 | 115,585 | 94,425 | 70,354 | 83,225 | 586,580 | 24,534 |
| Overall Pending Applications[2] 9/30/2004 | 95,006 | 105,447 | 102,440 | 138,822 | 137,458 | 101,097 | 108,039 | 809,323 | 27,599 |
| Overall Pending Applications[2] 9/30/2005 | 107,647 | 120,767 | 117,728 | 167,721 | 159,687 | 117,045 | 130,168 | 932,300 | 38,104 |

[1] "New Application inventory" is the number of new applications designated or assigned to a technology center awaiting a first action
[2] "Overall Pending Application inventory" is the total number of applications designated or assigned to a technology center in an a status. Includes new applications; rejected awaiting response; amended; under appeal or interference; suspended; reexams and applications awaiting grant publication.
*Total inventory includes applications not assigned to a particular TC, awaiting processing either pre- or post-examination.

**Patent Quality (Shared Responsibility)**

Quality of Products – FY 05

P000520

Fiscal Year 2005

| | FY 04 | 1600 | 1700 | 2100 | 2600 | 2800 | 3600 | 3700 | Design | FY 05 |
|---|---|---|---|---|---|---|---|---|---|---|
| Patent In-Process Examination Compliance Rate [1]* | 82.0% | 81.7% | 82.9% | 88.1% | 84.7% | 90.9% | 84.4% | 86.6% | 94.3% | 86.2% |
| Patent Allowance Error Rate[2]* | 5.32% | 4.88% | 6.46% | 3.56% | 2.25% | 4.43% | 4.94% | 6.43% | 1.6% | 4.55% |

*Compliance and error rates as measured by OPQA.

[1]Compliance is the percent of office actions reviewed and found to be free of any in-process examination deficiency (an error that significant adverse impact on patent prosecution).

[2]Patent allowance error rate is the percent of allowed applications reviewed having at least one claim which is considered unpate a basis for which a court would hold a patent invalid. "Allowance" occurs before a patent is issued, so these errors are caught bef patent is actually granted.

**Re-Work**

Technology Centers Rework* Statistics

| | FY 2002 | FY 2003 | FY 2004 | FY 2005 |
|---|---|---|---|---|
| TC Summary | % FAOM Rework | % FAOM Rework | % FAOM Rework | % FAOM Rework |
| 1600 | 36.4% | 39.7% | 40.3% | 42.4% |
| 1700 | 25.2% | 26.9% | 27.1% | 28.0% |
| 2100 | 23.9% | 24.0% | 24.6% | 28.2% |
| 2600 | 24.8% | 24.1% | 24.3% | 25.4% |
| 2800 | 19.1% | 22.0% | 24.9% | 24.1% |
| 3600 | 17.7% | 21.2% | 23.1% | 28.5% |
| 3700 | 22.2% | 25.1% | 24.0% | 28.1% |
| UPR | 23.2% | 25.3% | 26.1% | 28.3% |

* Rework first actions are those actions that are in a Continuing (CONs and CIPs), RCE, CPA or 129(a) applications (excludes Di

**Hiring and Retention**

Hires and Attritions

| | 1600 | 1700 | 2100 | 2600 | 2800 | 3600 | 3700 | Corps | Design |
|---|---|---|---|---|---|---|---|---|---|
| FY 04 Hires | 75 | 35 | 115 | 116 | 31 | 26 | 45 | 443 | 15 |
| FY 04 Attritions | 30 | 26 | 58 | 82 | 58 | 43 | 39 | 336 | 4 |
| FY 05 BOY Examiner Staff | 417 | 440 | 563 | 658 | 742 | 422 | 439 | 3681 | 72 |
| FY 05 Hiring | 101 | 58 | 225 | 169 | 184 | 91 | 131 | 959 | 19 |
| FY 05 Attrits | 42 | 39 | 93 | 92 | 54 | 55 | 50 | 425 | 10 |
| FY 06 Hiring Goal | 30 | 35 | 256 | 256 | 178 | 100 | 100 | 1000 | 20 |
| FY 06 hires (1/25/06) | 30 | 19 | 75 | 62 | 40 | 22 | 21 | 269 | 0 |
| FY05 Hires as a Percent of Examiner Staffing in the TC | 24% | 13% | 40% | 26% | 25% | 22% | 30% | 26% | 26% |

**Markush Practice**

P000521

1.  A cell adhesion protein of formula (1),
    A-(B)-(C)-(D)n-E
    or a pharmaceutically acceptable derivative thereof , wherein . . .

A composition molecules for use as tags or tag complements
wherein in each molecule comprises an oligonucleotide selected
from a set of oligonucleotides based on a following groups of
sequences:

| | | | | | |
|---|---|---|---|---|---|
| 1 | 4 | 6 | 8 | 1 | 3 |
| 2 | 4 | 5 | 5 | 2 | 3 |
| 1 | 8 | 1 | 2 | 3 | 4 |
| 1 | 1 | 9 | 2 | 6 | 9 |
| 1 | 2 | 4 | 3 | 9 | 6 |
| 9 | 8 | 9 | 8 | 10 | 9 |
| 9 | 1 | 2 | 3 | 8 | 10 |
| 8 | 8 | 7 | 4 | 3 | 1 |
| 1 | 1 | 1 | 1 | 1 | 2 |
| 2 | 1 | 3 | 3 | 2 | 2 |
| 3 | 1 | 2 | 2 | 3 | 2 |
| 4 | 1 | 4 | 4 | 4 | 2 |
| 1 | 2 | 3 | 3 | 1 | 1 |
| 1 | 3 | 2 | 2 | 1 | 4 |
| 3 | 3 | 3 | 3 | 3 | 4 |
| 4 | 3 | 1 | 1 | 4 | 4 |
| 3 | 4 | 1 | 1 | 3 | 3 |
| 3 | 6 | 6 | 6 | 3 | 5 |
| 6 | 6 | 1 | 1 | 6 | 5 |
| 7 | 6 | 7 | 7 | 7 | 5 |
| 8 | 7 | 5 | 5 | 8 | 8 |
| 2 | 1 | 7 | 7 | 1 | 1 |
| 2 | 3 | 2 | 3 | 1 | 3 |
| 2 | 6 | 5 | 6 | 1 | 6 |
| 4 | 8 | 1 | 1 | 3 | 8 |
| 5 | 3 | 1 | 1 | 6 | 3 |
| 5 | 6 | 8 | 8 | 6 | 6 |
| 8 | 3 | 6 | 5 | 7 | 3 |
| 1 | 2 | 3 | 1 | 4 | 6 |
| 1 | 5 | 7 | 5 | 4 | 3 |
| 2 | 1 | 6 | 7 | 3 | 6 |
| 2 | 6 | 1 | 3 | 3 | 1 |
| 2 | 7 | 6 | 8 | 3 | 1 |
| 3 | 4 | 3 | 1 | 2 | 5 |
| 3 | 5 | 6 | 1 | 2 | 7 |
| 3 | 6 | 1 | 7 | 2 | 7 |
| 4 | 6 | 3 | 5 | 1 | 7 |
| 5 | 4 | 6 | 3 | 8 | 6 |
| 6 | 8 | 2 | 3 | 7 | 1 |
| 7 | 1 | 7 | 8 | 6 | 3 |

| | | | | | |
|---|---|---|---|---|---|
| 7 | 3 | 4 | 1 | 6 | 8 |
| 4 | 7 | 8 | 1 | 2 | 4 |
| 3 | 6 | 5 | 2 | 6 | 3 |
| 1 | 4 | 1 | 4 | 6 | 1 |
| 3 | 3 | 1 | 4 | 8 | 1 |
| 8 | 3 | 3 | 5 | 3 | 8 |
| 1 | 3 | 6 | 6 | 3 | 7 |
| 7 | 3 | 8 | 6 | 4 | 7 |
| 3 | 1 | 3 | 7 | 8 | 6 |
| 10 | 9 | 5 | 5 | 10 | 10 |
| 7 | 10 | 10 | 10 | 7 | 10 |
| 9 | 9 | 7 | 7 | 10 | 9 |
| 9 | 3 | 10 | 3 | 10 | 3 |
| 9 | 6 | 3 | 4 | 10 | 6 |
| 10 | 4 | 10 | 3 | 9 | 4 |
| 3 | 9 | 3 | 10 | 4 | 9 |
| 9 | 10 | 5 | 9 | 4 | 8 |
| 3 | 9 | 4 | 9 | 10 | 7 |
| 3 | 5 | 9 | 4 | 10 | 8 |
| 4 | 10 | 5 | 4 | 9 | 3 |
| 5 | 3 | 3 | 9 | 8 | 10 |
| 5 | 8 | 6 | 9 | 7 | 10 |
| 4 | 5 | 10 | 9 | 6 | 4 |
| 4 | 9 | 8 | 10 | 8 | 3 |
| 7 | 7 | 9 | 10 | 5 | 3 |
| 8 | 8 | 9 | 3 | 9 | 10 |
| 8 | 10 | 2 | 9 | 5 | 9 |
| 9 | 6 | 2 | 2 | 7 | 10 |
| 9 | 7 | 5 | 3 | 10 | 6 |
| 10 | 3 | 6 | 8 | 9 | 2 |
| 10 | 9 | 3 | 2 | 7 | 3 |
| 8 | 9 | 10 | 3 | 6 | 2 |
| 3 | 2 | 5 | 10 | 8 | 9 |
| 8 | 2 | 3 | 10 | 2 | 9 |
| 6 | 3 | 9 | 8 | 2 | 10 |
| 3 | 7 | 3 | 9 | 9 | 10 |
| 9 | 10 | 1 | 1 | 9 | 4 |
| 10 | 1 | 9 | 1 | 4 | 1 |
| 7 | 1 | 10 | 9 | 8 | 1 |
| 9 | 1 | 10 | 1 | 10 | 6 |
| 9 | 6 | 9 | 1 | 3 | 10 |
| 3 | 10 | 8 | 8 | 9 | 1 |
| 3 | 8 | 1 | 9 | 10 | 3 |
| 9 | 10 | 1 | 3 | 6 | 9 |
| 1 | 9 | 1 | 10 | 3 | 1 |
| 1 | 4 | 9 | 6 | 8 | 10 |

| | | | | | |
|---|---|---|---|---|---|
| 3 | 3 | 9 | 6 | 1 | 10 |
| 5 | 3 | 1 | 6 | 9 | 10 |
| 6 | 1 | 8 | 10 | 9 | 6 |
| 5 | 9 | 9 | 4 | 10 | 3 |
| 2 | 10 | 9 | 1 | 9 | 5 |
| 10 | 10 | 7 | 2 | 1 | 9 |
| 10 | 9 | 9 | 1 | 8 | 2 |
| 1 | 8 | 6 | 8 | 9 | 10 |
| 1 | 9 | 1 | 3 | 8 | 10 |
| 9 | 8 | 9 | 10 | 1 | 2 |
| 1 | 10 | 8 | 9 | 9 | 2 |
| 1 | 9 | 6 | 7 | 2 | 9 |
| 4 | 3 | 9 | 3 | 5 | 1 |
| 5 | 11 | 10 | 14 | 12 | 1 |
| 7 | 12 | 4 | 13 | 3 | 2 |
| 5 | 5 | 4 | 4 | 12 | 9 |
| 2 | 13 | 13 | 11 | 13 | 13 |
| 10 | 2 | 5 | 4 | 12 | 7 |
| 11 | 7 | 4 | 11 | 6 | 4 |
| 12 | 12 | 1 | 9 | 11 | 11 |
| 12 | 9 | 4 | 14 | 12 | 6 |
| 12 | 7 | 13 | 2 | 9 | 11 |
| 9 | 11 | 3 | 4 | 1 | 3 |
| 10 | 5 | 12 | 11 | 4 | 4 |
| 4 | 13 | 8 | 13 | 1 | 5 |
| 9 | 13 | 10 | 11 | 11 | 6 |
| 10 | 14 | 14 | 10 | 1 | 3 |
| 2 | 14 | 1 | 10 | 4 | 5 |
| 10 | 12 | 12 | 8 | 11 | 10 |
| 9 | 11 | 2 | 12 | 8 | 11 |
| 2 | 8 | 5 | 2 | 12 | 14 |
| 1 | 8 | 13 | 3 | 7 | 8 |
| 9 | 4 | 7 | 5 | 4 | 2 |
| 13 | 2 | 12 | 7 | 1 | 12 |
| 11 | 10 | 9 | 7 | 5 | 11 |
| 8 | 12 | 2 | 2 | 12 | 7 |
| 5 | 2 | 14 | 3 | 4 | 18 |
| 1 | 8 | 8 | 1 | 5 | 9 |
| 14 | 5 | 11 | 10 | 13 | 3 |
| 14 | 1 | 4 | 13 | 2 | 4 |
| 4 | 4 | 5 | 11 | 3 | 10 |
| 10 | 9 | 2 | 3 | 3 | 11 |
| 11 | 4 | 8 | 14 | 3 | 4 |
| 5 | 1 | 14 | 8 | 11 | 2 |
| 14 | 3 | 11 | 6 | 12 | 5 |
| 13 | 4 | 4 | 1 | 10 | 1 |

P000524

| 6 | 10 | 11 | 6 | 5 | 1 |
|---|----|----|---|---|---|
| 5 | 8 | 12 | 5 | 1 | 7 |
| 4 | 5 | 9 | 6 | 9 | 2 |
| 13 | 2 | 4 | 4 | 2 | 3 |
| 11 | 2 | 2 | 5 | 9 | 3 |
| 8 | 1 | 10 | 12 | 2 | 8 |
| 12 | 7 | 9 | 11 | 4 | 1 |
| 12 | 1 | 4 | 14 | 3 | 13 |
| 11 | 2 | 7 | 10 | 4 | 1 |
| 3 | 4 | 12 | 11 | 11 | 11 |
| 3 | 3 | 4 | 2 | 12 | 11 |
| 1 | 5 | 9 | 4 | 2 | 1 |
| 6 | 1 | 12 | 2 | 10 | 5 |
| 10 | 5 | 1 | 12 | 2 | 14 |
| 2 | 11 | 7 | 9 | 4 | 11 |
| 7 | 4 | 4 | 5 | 14 | 12 |
| 12 | 5 | 2 | 1 | 10 | 12 |
| 5 | 9 | 2 | 11 | 6 | 1 |
| 12 | 14 | 3 | 6 | 1 | 14 |
| 5 | 9 | 11 | 10 | 1 | 4 |
| 2 | 5 | 12 | 14 | 10 | 10 |
| 4 | 5 | 8 | 4 | 5 | 6 |
| 10 | 12 | 4 | 6 | 12 | 5 |
| 4 | 2 | 1 | 13 | 6 | 8 |
| 9 | 10 | 10 | 14 | 5 | 3 |
| 6 | 14 | 10 | 11 | 3 | 3 |
| 2 | 9 | 10 | 12 | 5 | 7 |
| 13 | 3 | 7 | 10 | 5 | 12 |
| 6 | 4 | 1 | 2 | 5 | 13 |
| 6 | 1 | 13 | 4 | 14 | 13 |
| 2 | 12 | 1 | 14 | 1 | 9 |
| 4 | 11 | 13 | 2 | 6 | 10 |
| 1 | 10 | 7 | 4 | 5 | 8 |
| 7 | 2 | 2 | 10 | 13 | 4 |
| 8 | 2 | 11 | 4 | 6 | 14 |
| 4 | 8 | 2 | 6 | 2 | 3 |
| 7 | 1 | 12 | 11 | 2 | 9 |
| 5 | 6 | 10 | 4 | 13 | 4 |
| 5 | 10 | 4 | 11 | 9 | 3 |
| 3 | 11 | 9 | 3 | 2 | 3 |
| 8 | 15 | 6 | 20 | 17 | 19 |
| 21 | 10 | 15 | 3 | 7 | 11 |
| 11 | 7 | 17 | 20 | 14 | 9 |
| 16 | 6 | 17 | 13 | 21 | 21 |
| 15 | 7 | 17 | 10 | 22 | 22 |
| 3 | 20 | 8 | 15 | 20 | 16 |

P000525

| 17 | 21 | 10 | 16 | 6  | 22 |
|----|----|----|----|----|----|
| 6  | 21 | 14 | 14 | 14 | 16 |
| 7  | 17 | 3  | 20 | 10 | 7  |
| 16 | 19 | 14 | 17 | 7  | 21 |
| 20 | 16 | 7  | 15 | 22 | 10 |
| 20 | 10 | 18 | 11 | 22 | 18 |
| 18 | 7  | 19 | 15 | 7  | 22 |
| 21 | 18 | 7  | 21 | 16 | 3  |
| 14 | 13 | 7  | 22 | 17 | 13 |
| 19 | 7  | 8  | 12 | 10 | 17 |
| 15 | 3  | 21 | 14 | 9  | 7  |
| 19 | 6  | 15 | 7  | 14 | 14 |
| 4  | 17 | 10 | 15 | 20 | 19 |
| 21 | 6  | 18 | 4  | 20 | 16 |
| 2  | 19 | 8  | 17 | 6  | 13 |
| 13 | 12 | 6  | 17 | 4  | 20 |
| 16 | 21 | 12 | 10 | 19 | 16 |
| 14 | 14 | 15 | 2  | 7  | 21 |
| 8  | 16 | 21 | 6  | 22 | 16 |
| 14 | 17 | 22 | 14 | 17 | 20 |
| 10 | 21 | 7  | 15 | 21 | 18 |
| 16 | 13 | 20 | 18 | 21 | 12 |
| 15 | 7  | 4  | 22 | 14 | 13 |
| 7  | 19 | 14 | 8  | 15 | 4  |
| 4  | 5  | 3  | 20 | 7  | 16 |
| 22 | 18 | 6  | 18 | 13 | 20 |
| 19 | 6  | 16 | 3  | 13 | 3  |
| 18 | 6  | 22 | 7  | 20 | 18 |
| 10 | 17 | 11 | 21 | 8  | 13 |
| 7  | 10 | 17 | 19 | 10 | 14 |

Wherein:
(A) each of 1 to 22 is a 4mer selected from the group of 4mers consisting of WWWW, WWWX, WWWY, WWXW, WWXX, WWXY, WWYW, WWYY, WXWW, WXWX, WXWY, WXXW, WXXX, WXXY, WXYW, WXYX, WXYY, WYWW, WYWX, WYWY, WYXW, WYXX, WYXY, WYYW, WYYX, WYYY, XWWW, XWWX, XWWY, XWXW, XWXX, XWXY, XWYW, XWYX, XWYY, XXWW, XXWX, XXWY, XXXW, XXXX, XXXY, XXYW, XXYX, XXYY, XYWW, XYWX, XYWY, XYXW, XYXX, XYXY, XYYW, XYYX, XYYY, YWWW, YWWX, YWWY, YWXW, YWXX, YWXY, YWYW, YWYX, YWYY, YXWW, YXWX, YXWY, YXXW, YXXX, YXXY, YXYW, YXYX, YXYY, YYWW, YYWX, YYWY, YYXW, YYXX, YYXY, YYYW, YYYX, AND YYYY, AND

(B) each of 1 to 22 is selected so as to be different from all of the others of 1 to 22;

(C) each of W, X, and Y is a base in which:
(i) (a) W=one of A, T/U, G and C
X=one of A, T/U, G and C,
Y=one of A, T/U, G and C,
And each of W, X, and Y is selected so as to be different from all of the others of W, X, and Y,
(b) an unselected said base of (i)(a) can be substituted any number of times for any one of W, X and Y, or
(II)(a)W=G or C,
X=A OR T/U
Y=A OR T/U
AND X-Y AND
(B) a base not selected in (II) (a) can be inserted into each sequence at one or more locations, the location of each insertion being same in all sequences.

P000526

Up to three bases can be inserted at any location of any of the sequences or up to three bases can be deleted from any of the sec

(E) all of the sequences or a said group of oligonucleotides are read 5' to 3' or are read 3' to 5'; and
wherein each oligonucleotide of a said set has a sequence of at least ten contiguous bases of the sequences on which it is basec that:

(F)(I) the quotient of the sum of G and C divided by the sum of A, T/U, G and C for all combined sequences of the set is between and 0.40 and said quotient for each sequence of the set does not vary from the quotient for the combined sequences by more tha

(II) for any phantom sequence generated from any pair of first and second sequences of the set $L_1$ $L_2$ in length, respectively, by s from the first and second sequences of identical bases in identical sequences with each other:

(i) any consecutive sequence of bases in the phantom sequence which is identical to a consecutive sequence of bases in each of and second sequences from which it is generated is less than $((3/4 \times L)-1)$ bases in length;

(ii) the phantom sequences, if greater than or equal to $(5/6xL)$ in length, contains at least three insertions/deletions or mismatches compared to the first and second sequences from which it is generated; and

(iii) the phantom sequences is not greater than or equal to $(11/12xL)$ in length;

where $L=L_1$; or $L_1L=_2$, where L is the greater of $L_1$ and $L_2$; and

where in any base present may be substituted by an analogue thereof.

We claim:
1. A penetrating peptide comprising at least one amino acid sequence selected from the group consisting of:
a. $(BX)_4Z(BX)_2ZXB$;
b. $ZBXB_2XBXB_2XBX_3BXB_2X_2B_2$;
c. $ZBZE_2B_4XB_3ZXB_4Z_2B_2$;
d. $ZB_9XBX_2B_2ZBXZBX_2$;
e. $BZB_8XB_9X_2ZXB$
f. $B_2ZXZB_5XB_2X_2BZB_2$;
g. $XB_9XBXB_6X_3B$;
h. $X_2B_3XB_4XB_9XB$;
i. $XB_2XZBXBZXB_2ZXBX_3BZXBX_3B$;
j. $BZXBXZX_2B_4XBX_2BXB_4X2$;
k. $BZXBXZX_2B_4XBX_2BXB_4$;
l. $B_2XZ_2XB_4XBX_2B_5X_2B_2$;
m. $B_qX_TZB_MX_qB_4XBX_nB_MZB_2X_2B_2$;
n. $B_2ZX_3ZB_mX_qB_4XBX_NB_MZB_2X_2B_2$;
o. $X_3ZB_6BZB_2X_2B_2$; AND
p. at least 12 contiguous amino acids of any of peptides a) through o)
wherein
q is O or 1;
m is 1 or 2;
n is 2 or 3;
t is 1 or 2 or 3; and
X is any amino acid;
B is hydrophobic amino acid; and
Z is charged amino acid;
wherein said penetrating peptide is capble of translocationg accross a biological barrier.

**Production**
**We Can Not Hire Our Way Out !!!**

Production Graph **[D]**

P000527

**Contact Information**

John Doll
Commissioner for Patents
e-mail: john.doll@uspto.gov
Phone: 571 272 8250

**James Toupin – General Counsel February 1, 2006**

**Summary of Proposed Rule Changes to Continuations, Double Patenting, and Claims**

**Continuations/Double Patenting Proposed Rulemaking**

- Main objectives:
  - o Assure adequate opportunity for prosecution to provide appropriate invention protection
  - o Limit the "recycling" of old applications to permit the USPTO to focus examining resources on "new" applications
  - o Create greater public certainty on scope of patent protection
  - o Reduce the burden on the USPTO to review applications for double patenting

**Central Provisions on Continuation Practice**

- No change for the vast majority of applications
- One continuation (broadly defined) always available as of right, whether in the form of
  - o continuation application, or a request for continued examination (RCE); but with
  - o with special rules for divisionals and continuations-in-part (CIPs)
- Additional continuations available if applicant can show that the amendment, argument or evidence could not have been e submitted

**Divisionals**

- Only involuntary divisionals to be permitted:
  - o Prior application subject to unity of invention (PCT Rule 13) requirement or restriction requirement (35 USC 121); a
  - o Divisional contains only claims to inventions identified in the requirement and not elected in prior-filed application
- Divisional application may claim the benefit of only a single prior-filed nonprovisional application.

**Continuations-in-Part**

- Identify what claims are supported by the parent's disclosure
  - o Identified claims (which are supported by parent's disclosure) are given the earlier filing date
  - o Claims not identified are only entitled to the filing date of the CIP
- A continuation of the CIP is permitted but all claims only entitled to benefit of filing date of CIP
  - o Practice consequence: Only include "new matter" claims in continuation from CIP

**Identification of Related Applications and Double-Patenting**

- Identify any other application or patent having:
  - o Common inventor;
  - o Common assignee, or those so treated under CREATE Act; and
  - o Filed within two months (taking into account priority/benefit claims)
- A rebuttable presumption of double-patenting is established for identified applications/patents if have:
  - o Same effective filing date
  - o Substantially overlapping disclosure

**Double-Patenting: Rebutting the Rebuttable Presumption**

- Applicant must:
  - o Show claims of application are patentably distinct from claims of other patent or application, or
  - o Submit a terminal disclaimer and explanation of why patentably indistinct claims in two or more such applications sl maintained
- If USPTO finds claims patentably indistinct, it may merge or require cancellation of indistinct claims unless good and suffic

P000528

reason shown

## Claims Proposed Rulemaking

- Main Purposes
  - o Applicant Assistance to Improve Focus of Examination
    - ■ Narrow scope of initial examination so the examiner is addressing discrete number of issues
    - ■ Improve the quality of first Office actions
  - o Addressing Disproportionate Burdens on Examination System Posed by Applications with Large Numbers of Claim

## Central Provisions: Representative Claims

- Normal Pattern: Applicant to identify 10 representative claims for initial examination
  - o Must include all independent claims
  - o If independent claims fewer than 10, designate additional dependent claims until total of 10 reached
- Full initial examination of all designated representative claims
- No first action final

## Non-Designated Dependent Claims

- If representative claim is allowed, all its non-designated dependent claims will be examined for compliance with 35 USC 1( 112
- If representative claim is rejected, applicant may, for example:
  - o Traverse rejection; or
  - o Amend the claim, including adding subject matter from a non-designated dependent claim; or
  - o Submit substitute representative claim

## Distribution of Independent Claims at Filing


Distribution of Independent Claims at Filing Graph
[D]

## Beyond 10 Claims: When Initial Examination of 10 Isn't Enough

- Circumstance should arise rarely
- Circumstance may arise:
  - o where Applicant needs more than 10 independent claims
  - o if Applicant cannot prioritize dependent claims so that there are only 10 representative (all independent and designa dependent) claims

## Beyond the 10 Claims: Assistance to Examination Document Required

- Applicant must:
  - o Provide search report of all representative claims
  - o Identify all limitations of representative claims that are disclosed by cited prior art references
  - o Explain how all representative claims are patentable over the cited references

## Strategic Choices: Before or During Prosecution

- Decision may be made in course of prosecution
  - o Applicant may choose additional representative claims after first action. If total available representative claims exce examination support document is req'd.
- Rather than provide the support for examination document if there are more than 10 representative claims, applicant may:
  - o Cancel designated (or independent) claims
    - ■ Excess Claim fees paid on/after December 8, 2004 refunded
- Remove designation of dependent claims to bring total representative claims to 10 or less

## Comments Appreciated

- Proposed Rules published in January 3, 2006, Federal Register
  - o Continuations: 71 Fed. Reg. 48

P000529

- o Claims: 71 Fed. Reg. 61
- 120-day comment period
  - o Comments due May 3, 2006
  - o File by fax, e-mail, mail or Internet

**Contact Information**

James Toupin
General Counsel
e-mail: james.toupin@uspto.gov    .
Phone: 571 272 7000

**John Doll – Commissioner for Patents**
**February 1, 2006**

**Pendency Projections**

| x | Pendency Using FY 2005 Actual Filings at 8.1% graph **[D]** |

**Pendency Using FY 2005 Actual Filings at 8.1% Graph**

| x | Pendency Using FY 2005 Actual Filings at 8.1% Graph **[D]** |

**Pendency Using FY 2005 Actual Filings at 8.1% Graph**

| x | Pendency Using FY 2005 Actual Filings at 8.1% Graph **[D]** |

**Pendency Using FY 2005 Actual Filings at 8.1% Graph**

| x | Pendency Using FY 2005 Actual Filings at 8.1% Graph **[D]** |

**Pendency Using FY 2005 Actual Filings at 8.1% Graph**

| x | Pendency Using FY 2005 Actual Filings at 8.1% Graph **[D]** |

**Stats and Stuff**

**Total Continuation Filing Rates**

| x | Total Continuation Filing Rates Graphs **[D]** |

Distribution of Independent Claims at Filing



[D]

Distribution of Total Claims at Filing



[D]

Total Claims at Filing and Issue



[D]

**Distribution of the Number of References Cited in Applications**

☒ Distribution of the Number of References Cited in Applications graph
[D]

**Changes to Practice for the Examination of
Claims in Patent Applications
Examples**

**Election of Claims – Example 1**

☒ Election of Claims - Example 1    [D]

- All independent claims must be elected.
- The election of claim 3 is improper. An elected dependent claim must depend from another elected claim. Applicant can ch re-write claim 3 to depend from 1, or also elect claim 2 to be examined.

**Election of Claims – Example 2**

Claims
1. An apparatus comprising....
...
...
The method of using the apparatus of claim 1 to .....
Claim 7 is an independent method claim and will be treated as such for the purposes of claim election. Therefore, it must be elect examined.

**Election of Claims – Example 3**

Claims:
1. An apparatus comprising....
...
...
An apparatus as claimed in one of claims 1-3 further comprising....
For the purposes of election, proper multiply dependent claim 4 will be treated as 3 separate claims. Thus, 3 claims will be counte determine whether the applicant has exceeded the 10 claim limit to avoid submission of an examiner support document.

**Election of Claims – Example 4**

P000532

Applicant files an application with claims to a single invention. The application is filed with 10 total claims: 3 independent c 7 dependent claims.
For examination purposes:
- If the applicant designates all 7 dependent claims for initial examination, the Office will give initial examination to all 10 clai
- If the applicant does not designate any dependent claims for initial examination, the Office will give initial examination only independent claims.

### Election of claims – Example 5

Applicant files an application with claims to a single invention. The application is filed with 10 total claims: 3 independent claims a dependent claims. The applicant designates all dependent claims, in addition to the independent claims, as representative claims examination.

Applicant files an amendment which (a) cancels 3 claims (1 independent and 2 dependent) and (b) adds 11 claims (4 independer dependent). The application, as amended, now contains 18 claims: 6 independent claims and 12 dependent claims.

- If the applicant does not change the original designation of dependent claims,*
  - the applicant must submit an examination support document covering the 11 representative claims, or
  - reduce the number of representative claims to 10 or fewer by canceling independent claims, rescinding the designa dependent claims for initial examination, or a combination of thereof.
  *In this instance, there are now 11 designated representative claims: 6 independent claims and 5 dependent claims.

### Election of claims – Example 6

Applicant files an application with claims to a single invention. The application is filed with 20 total claims: 3 independent claims a dependent claims.

- If applicant does not designate any dependent claims for initial examination, the Office will give initial examination only to t independent claims.
- If applicant designates 7 dependent claims for initial examination, the Office will give initial examination to 10 claims; 3 ind claims and 7 designated dependent claims.

### Election of claims – Example 7

Applicant files an application with claims to a single invention. The application is filed with 20 total claims: 3 independent c 17 dependent claims.
If applicant designates all 17 dependent claims for initial examination, the application will have 20 representative claims. A must:
- submit an examination support document covering the 20 representative claims, or
- reduce the number of representative claims to 10 or fewer by canceling independent claims, rescinding the designating of dependent claims for initial examination, or a combination thereof.

### Election of claims – Example 8

Example 1: An applicant files an application with claims to 3 distinct inventions. The application is filed with 30 claims: 3 in claims and 27 dependent claims.
If applicant does not designate any dependent claims for initial examination:
- The Office give initial examination only to the 3 independent claims.
- The Office may still restrict the application to a single invention

### Election of claims – Example 9

An applicant files an application with claims to 3 distinct inventions. The application is filed with 30 claims: 3 independent c 27 dependent claims If the applicant designates 7 dependent claims for initial examination:
- The Office will give initial examination to 10 claims: 3 independent claims and 7 designated dependent claims.
- The Office may still restrict the application to a single invention.

### Election of claims – Example 10

An applicant files an application with claims to 3 distinct inventions. The application is filed with 30 claims: 3 independent c 27 dependent claims.

P000533

If applicant designates all 27 dependent claims for initial examination, the application will have 30 representative claims. T applicant must:

- submit an examination support document covering the 30 representative claims;
- reduce the number of representative claims to 10 or fewer by canceling independent claims, rescinding the designating of dependent claims for initial examination, or a combination thereof; and/or
- reduce the number of representative claims to 10 or fewer by suggesting a requirement for restriction and election w/out tr such representative claims.

**Changes to Practice for Continuing Applications**
**Examples**

**Continuations Benefit Claims under 35 USC 120, 121, or 365(c)**

One RCE, Continuation, or CIP Permitted

1. Provisional Application
2. Nonprovisional Application claiming the benefit of the provisional application, 35 USC 119(e)
3. Applicant may file: an RCE, or a continuation or a CIP application, claiming a benefit under 35 USC 120, 121 or 365(c)

Divisional Applications Can Only Claim Benefit of One Prior Nonprovisional Application That Was Subject to a Restriction or Unity Invention Requirement

1. Nonprovisional Application with claims to inventions A, B, and C

   Restriction made in Application #1 Applicant elected invention A and canceled claims directed to B, and C
2. Applicant may file Divisional Applications claiming only the benefit of application #1 and the claims must be directed non-e inventions in application #1
3. Applicant may file Divisional Applications claiming only the benefit of application #1 and the claims must be directed non-e inventions in application #1

One Continuing Filing after a Divisional Permitted

1. Provisional Application
2. Nonprovisional Application claiming the benefit of the provisional application, 35 USC 119(e)
3. Divisional Application (as defined in proposed rule) to non-elected invention
4. Applicant may file: a single RCE, or continuation or CIP application of the divisional application

Second Continuing Filing Requires Petition & Showing That the Amendment, Argument, or Evidence Could Not Have Been Earlie Submitted

1. Provisional Application
2. Nonprovisional Application claiming the benefit of the provisional application
3. A first continuing application or an RCE
4. Applicant may file a second or subsequent RCE or continuing application w/ a petition and showing

**Continuations – Example 1**

   Scenario: Applicant files application #1 with 65 claims. The USPTO requires restriction between the following groups:
1. Invention 1 - 15 claims; 3 independent + 12 dependent claims
2. Invention 2 - 30 claims; 5 independent + 25 dependent claims
3. Invention 3 - 20 claims; 1 independent + 19 dependent claims

Applicant may file two divisional applications, one each for inventions 2 and 3.

- But, both will need to be filed during the pendency of application #1 in order to be entitled to claim the benefit of application filing date. If divisional #3 is filed during the pendency of divisional #2, but not during pendency of application #1, it will only entitled to the filing date of divisional #2.

**Continuations – Example 2**

Scenario: Applicant files application #1 claiming only 1 invention. Later, applicant files application #2 with the same disclosure but

direction to a different invention. In application #2, the applicant claims the priority of application #1's filing date.

This is permitted, but application #2 will be treated as the one continuation of application #1 allowed as a matter of right.
- Therefore, neither applications #1 or #2 can have any additional RCEs or continuations absent a petition.
- Also, as both applications have the same effective filing date, there will be rebuttable presumption of double patenting. The will need to file a terminal disclaimer or argue persuasively that the claims are patentably distinct.

## Examples of a Showing for Filing a Second Continuing Application

Example 1: In a continuation application,
- An interference is declared in an application containing both claims corresponding to the count(s) and claims not correspo the count(s), and
- The APJ suggests that the claims not corresponding to the count(s) be canceled from the application in interference and p a separate application.
Example 2: In a continuation application,
- Data necessary to support a showing of unexpected results just became available to overcome a final rejection under 35 U 103, and
- The data is the result of a lengthy experimentation that was started after applicant received the rejection for the first time.

Example 3: In a continuation application,
- The final rejection contains a new ground of rejection that could not have been anticipated by the applicant, and
- The applicant seeks to submit evidence which could not have been submitted earlier to overcome this new rejection.

## Examples of Unacceptable Showing for Filing a Second Continuing Application

Example 1:
- An argument that a final rejection in one of the prior applications was premature.
- Applicant should address the propriety of the final rejection during prosecution of the prior application, and not collaterally petition for a continuation application.

Example 2:
- An argument that an amendment after final rejection should have been entered in the prior application.
- Applicant should address the non-entry in the prior application, and not collaterally in a petition for a continuation applicatic

## To Submit Comments:

Comments should be sent by electronic mail to the following addresses:
Continuations – AB93Comments@uspto.gov
Claims – AB94Comments@uspto.gov

## Contact Information

John Doll
Commissioner for Patents
e-mail: john.doll@uspto.gov
Phone: 571 272 8250

KEY: ⚙ =online business system  $ =fees  ✎ =forms  ☂ =help  ⚖ =laws/regulations  📖 =definition (glossary)

*The Inventors Assistance Center is available to help you on patent matters. Send questions about USPTO programs and services to the USPTO Contact Center (UCC). You can suggest USPTO webpages or material you would like featured on this section by E-mail to the webmaster@uspto.gov. While we cannot promise to accommodate all requests, your suggestions will be considered and may lead to other improvements on the website.*

# Attachment O

# Relevant Statutes

P000536

# CONSOLIDATED PATENT LAWS

## United States Code Title 35 - Patents

**Editor's Note (January 2007): The Patent Laws reproduced below supersede those reproduced in the last revision of the Manual of Patent Examining Procedure (MPEP) dated August 2006. The Public Laws are the authoritative source and should be consulted if a need arises to verify the authenticity of the language reproduced below.**

### PART I — UNITED STATES PATENT AND TRADEMARK OFFICE

### CHAPTER 1 — ESTABLISHMENT, OFFICERS AND EMPLOYEES, FUNCTIONS

Sec.
1    Establishment.
2    Powers and Duties.
3    Officers and employees.
4    Restrictions on officers and employees as to interest in patents.
5    Patent and Trademark Office Public Advisory Committees.
6    Board of Patent Appeals and Interferences.
7    Library.
8    Classification of patents.
9    Certified copies of records.
10   Publications.
11   Exchange of copies of patents and applications with foreign countries.
12   Copies of patents and applications for public libraries.
13   Annual report to Congress.

### CHAPTER 2 — PROCEEDINGS IN THE PATENT AND TRADEMARK OFFICE

21   Filing date and day for taking action.
22   Printing of papers filed.
23   Testimony in Patent and Trademark Office cases.
24   Subpoenas, witnesses.
25   Declaration in lieu of oath.
26   Effect of defective execution.

### CHAPTER 3 — PRACTICE BEFORE PATENT AND TRADEMARK OFFICE

31   [Repealed].
32   Suspension or exclusion from practice.
33   Unauthorized representation as practitioner.

### CHAPTER 4 — PATENT FEES; FUNDING; SEARCH SYSTEMS

41   Patent fees; patent and trademark search systems.
42   Patent and Trademark Office funding.

### PART II — PATENTABILITY OF INVENTIONS AND GRANT OF PATENTS

### CHAPTER 10 — PATENTABILITY OF INVENTIONS

100  Definitions.
101  Inventions patentable.
102  Conditions for patentability; novelty and loss of right to patent.
103  Conditions for patentability; non-obvious subject matter.
104  Invention made abroad.
105  Inventions in outer space.

### CHAPTER 11 — APPLICATION FOR PATENT

111  Application.
112  Specification.
113  Drawings.
114  Models, specimens.
115  Oath of applicant.
116  Inventors.
117  Death or incapacity of inventor.
118  Filing by other than inventor.
119  Benefit of earlier filing date; right of priority.
120  Benefit of earlier filing date in the United States.
121  Divisional applications.
122  Confidential status of applications; publication of patent applications.

### CHAPTER 12 — EXAMINATION OF APPLICATION

131  Examination of application.

January 2007
P000537

**Attachment P**

**Relevant Provisions of the Code of Federal Regulations**

P000538

# CONSOLIDATED PATENT RULES

## Title 37 - Code of Federal Regulations
## Patents, Trademarks, and Copyrights

**Editor's Note (May 16, 2007): All final rules that became effective since the last revision of the Manual of Patent Examining Procedure (MPEP) dated August 2006 are identified below by the *Federal Register* Notice cites and the *Official Gazette* Notice cites, where applicable. These final rules have been incorporated in Title 37 – Code of Federal Regulations document below. The *Federal Register* Notices are the authoritative source in the event that there are discrepancies between the patent rules in this document and the rules as published in the *Federal Register.***

**TITLE:** Changes To Implement Priority Document Exchange Between Intellectual Property Offices
**ACTION:** Final Rule
**FEDERAL REGISTER:** 72 FR 1664 (January 16, 2007)
**OFFICIAL GAZETTE:** 1315 O.G. 63 (February 13, 2007)
**EFFECTIVE DATE:** January 16, 2007

**TITLE:** Changes To Facilitate Electronic Filing of Patent Correspondence
**ACTION:** Final Rule
**FEDERAL REGISTER:** 72 FR 2770 (January 23, 2007)
**OFFICIAL GAZETTE:** 1315 O.G. 57 (February 13, 2007)
**EFFECTIVE DATE:** January 23 , 2007

**TITLE:** Changes To Eliminate the Disclosure Document Program
**ACTION:** Final Rule
**FEDERAL REGISTER:** 71 FR 64636 (November 3, 2006)
**OFFICIAL GAZETTE:** 1312 O.G. 137 (November 28, 2006)
**EFFECTIVE DATE:** February 1, 2007

**TITLE:** Revisions and Technical Corrections Affecting Requirements for *Ex Parte* and *Inter Partes* Reexamination
**ACTION:** Final Rule
**FEDERAL REGISTER:** 72 FR 18892 (April 16, 2007)
**OFFICIAL GAZETTE:**
**EFFECTIVE DATE:** May 16, 2007

## CHAPTER I — UNITED STATES PATENT AND TRADEMARK OFFICE, DEPARTMENT OF COMMERCE

### SUBCHAPTER A - GENERAL

#### PATENTS

Part
1   Rules of practice in patent cases
3   Assignment, recording and rights of assignee
4   Complaints regarding invention promoters
5   Secrecy of certain inventions and licenses to export and file applications in foreign countries

Index I  - Rules pertaining to patents

#### PRACTICE BEFORE THE PATENT AND TRADEMARK OFFICE

10   Representation of others before the Patent and Trademark Office

11   Representation of others before the United States Patent and Trademark Office

Index II - Rules relating to practice before the United States Patent and Trademark Office

15   [Reserved]
15a [Reserved]

41   Practice before the Board of Patent Appeals and Interferences

### SUBCHAPTER B — ADMINISTRATION

100   [Reserved]
101   [Reserved]
102   Disclosure of government information
104   Legal processes

**Attachment Q**

**Relevant Sections from the Manual of Patent Examining Procedure (MPEP)**

# Chapter 1700 Miscellaneous

1701    Office Personnel Not To Express Opinion on Validity, Patentability, or Enforceability of Patent
1701.01      Office Personnel Not To Testify
1702    Restrictions on Practice in Patent Matters
1703    The *Official Gazette*
1704    Application Records and Reports
1705    Examiner Docket, Time, and Activity Recordation
1706    Disclosure Documents
1711    U.S.-Philippines Search Exchange
1720    Dissemination of Court and Board of Patent Appeals and Interferences Decisions
1721    Treatment of Court and Board of Patent Appeals and Interferences Decisions Affecting Patent and Trademark Office Policy and Practice
1730    Information Sources

## 1701    Office Personnel Not To Express Opinion on Validity*>,< Patentability>, or Enforceability< of Patent [R-3]

Every patent is presumed to be valid. 35 U.S.C. 282, first sentence. Public policy demands that every employee of the United States Patent and Trademark Office (USPTO) refuse to express to any person any opinion as to the validity or invalidity of, or the patentability or unpatentability of any claim in any U.S. patent, except to the extent necessary to carry out

(A) an examination of a reissue application of the patent,

(B) a reexamination proceeding to reexamine the patent, or

(C) an interference involving the patent.

The question of validity or invalidity is otherwise exclusively a matter to be determined by a court. >Likewise, the question of enforceability or unenforceability is exclusively a matter to be determined by a court.< Members of the patent examining corps are cautioned to be especially wary of any inquiry from any person outside the USPTO, including an employee of another U.S. Government agency, the answer to which might indicate that a particular patent

should not have issued. No USPTO employee may pursue a bounty offered by a private sector source for identifying prior art. The acceptance of payments from outside sources for prior art search activities may subject the employee to administrative disciplinary action.

When a field of search for an invention is requested, examiners should routinely inquire whether the invention has been patented in the United States. If the invention has been patented, no field of search should be suggested.

Employees of the USPTO, particularly patent examiners who examined an application which matured into a patent or a reissued patent or who conducted a reexamination proceeding, should not discuss or answer inquiries from any person outside the USPTO as to whether or not a certain reference or other particular evidence was considered during the examination or proceeding and whether or not a claim would have been allowed over that reference or other evidence had it been considered during the examination or proceeding. Likewise, *employees* are cautioned against answering any inquiry concerning any entry in the patent or reexamination file, including the extent of the field of search and any entry relating thereto. The record of the file of a patent or reexamination proceeding must speak for itself.

Practitioners **>shall not make< improper inquiries of members of the patent examining corps. Inquiries from members of the public relating to the matters discussed above must of necessity be refused and such refusal should not be considered discourteous or an expression of opinion as to validity *>,< patentability >or enforceability.

The definitions set forth in 37 CFR 104.1 and the exceptions in 37 CFR 104.21 are applicable to this section.<

## 1701.01    Office Personnel Not To Testify [R-3]

It is the policy of the United States Patent and Trademark Office (USPTO) that its employees, including patent examiners, will not appear as witnesses or give testimony in legal proceedings, except under the conditions specified in 37 CFR Part 104, Subpart C. >The definitions set forth in 37 CFR 104.1 and the exceptions in 37 CFR 104.21 are applicable to