# Exhibit 12

**Ron Katznelson, Submission [under Paperwork Reduction Act] of comments to [OMB Office of Information and Regulatory Affairs] for PTO 0651-0031 package, ICR 200707-0651-005 (October 22, 2007)**

Dockets.Justia.com

Submission as PRA comments to OIRA for PTO 0651-0031 package,  ICR 200707-0651-005

**By Email  Robert.Clarke@uspto.gov**

**To: Robert A. Clarke,**
**Director, Office of Patent Legal Administration,**
**U.S. Patent and Trademark Office**

October 22, 2007

> RE:   RINs 0651−AB93; 0651−AB94.
> TITLE: *Changes To Practice for Continued Examination Filings, Patent Applications Containing Patentably Indistinct Claims, and Examination of Claims in Patent Applications[1],* ("Final Rule"), **Section N. *Paperwork Reduction Act*.**

Dear Mr. Clarke,

I am an inventor and an entrepreneur who has used the US patent system for a quarter of a century.  I am writing to express my concerns about the Final Rules' impact on information collection by the U.S. Patent and Trademark Office ("USPTO").  In the following sections, I show why the information collection burdens submitted by the USPTO to the Office of Information and Regulatory Affairs, Office of Management and Budget, ("OMB") are understated by several orders of magnitude.  I show that they contradict USPTO's own data and that in providing inadequate material and flawed analysis of these burdens on small entities, the USPTO failed to comply with the Regulatory Flexibility Act.

In the Final Rule, the USPTO indicated that it has resubmitted an information collection package to OMB for its review and approval under OMB control number 0651−0031.  The title, description and respondent description of the information collection under OMB control number 0651−0031 was shown with an estimate of the annual reporting burdens.  Included in the estimate is the time for reviewing instructions, gathering and maintaining the data needed, and completing and reviewing the collection of information.[2]  Since the package referred to in the Final Rule had not been approved by OMB and expired on September 30, 2007, the USPTO submitted the package with some amendments under OMB Control No: 0651-0031, ICR Reference No. 200707-0651-005, on September 26, 2007.  In these comments I address only three of the items in the 0031 package, the Examination Support Document, the Petition for Requesting Continued Examination and the Petition for filing a second Continuation or Continuation In Part.  Although the Final Rule requested comments on earlier versions of these ICRs, my comments are directed to their latest version, as filed with OMB as specified above.

# 1   EXAMINATION SUPPORT DOCUMENT BURDENS

Under §1.75(b)(1) of the Final Rule, an applicant must file an Examination Support Document ("ESD") in compliance with § 1.265 that covers each claim (whether in independent or dependent form) before the issuance of a first Office action on the merits of the application if the application contains or is amended to contain more than ***five independent claims or more than twenty-five total claims,*** (the "5/25" threshold).  Thus, in order to file claims in excess of the threshold, applicants must file an ESD.

---

[1]  **72 *Fed. Reg.* 46716**, (Aug 21, 2007).
[2]  Final Rule at 46835, col 1-2.

P000542

In response to many comments expressing concerns that applicants would be practically prevented from submitting more than 5/25 claims in an application, the USPTO has repeatedly stressed the fact that no limits are imposed on the number of claims applicants can file. Its typical response, which it repeated several times in the Final Rule text, is as follows:

> The Office is **not seeking to limit the number of claims** in an application. Instead, the Office **aims to improve the quality of examination**. The changes to § 1.75 in this final rule permit an applicant to present up to five independent claims and twenty-five total claims in the application without submitting an examination support document in compliance with § 1.265. The changes to § 1.75 in this final rule also permit an applicant to present more than five independent claims or more than twenty-five total claims if the applicant submits an examination support document in compliance with 1.265. If an examination support document in compliance with § 1.265 is not filed before the issuance of a first Office action on the merits of the application, the application may not contain or be amended to contain more than five independent claims or more than twenty-five total claims. Thus, the changes being adopted in this final rule **are not placing a limit** on the number of claims.[3] (Emphasis added).

> "[t]his final rule does not preclude an applicant from presenting more than five independent claims or more than twenty-five total claims. Rather, an applicant may present more than five independent claims or more than twenty-five total claims in an application with an examination support document in compliance with § 1.265 if the applicant **considers it necessary or desirable in the particular application**".[4] (Emphasis added).

The only factors that the USPTO attributed to applcant's decision to file more than 5/25 claims is whether the applicant **considers it necessary or desirable in the particular application.** As shown below, one in every three applicants consider it necessary or desirable in their particular application to file more than5/25 claims (see the analysis cited in note 13 below). Indeed, a USPTO internal memo attached in Appendix C states that as of February 28, 2007, 30% of the 708,000 applications in the back-file that received no office action contain more than 5/25 claims.

In its latest submission on the ESD item[5], the USPTO estimates that an average ESD will take only 22 hours to complete and that only 5,000 submissions per year from large entities and **none** ( **0 !**) from small entities will be submitted to the USPTO. This is remarkable given that the USPTO predicts that it will receive 479,200 patent applications in FY 2008.[6] This means that 143,760 (=479,200 x 0.3) applications would be subject to the 5/25-rule and would require a submission of an ESD. Given that the Final Rule is applied retroactively to the back-file described above (and to any new application received by November 1, 2007), at least another 212,400 (=708,000 X 0.3) applications would be subject to the 5/25-rule. At an arrival rate exceeding 143,000 new applications per year subject to the ESD requirement, it is puzzling how the USPTO figured that only 5,000 ESD would be filed per year.

The USPTO must provide support for its burden estimate of only 5,000 ESDs per year. Nowhere in its rulemaking record did the USPTO establish that the consequences of its rules would be the cutoff of applicants' claims beyond the 5/25 claims in an application. If the USPTO somehow believes that its rule will foster more "efficient claiming" by applicants, it necessarily implies that some 2.5 million claims per year now filed in excess of the 5/25 threshold are an **economic private dead-weight** which applicants do not really need. If so, the USPTO must bear the burden

---

[3] Final Rule at 46825, col. 3.
[4] Final Rule at 46795, col. 2.
[5] Examination Support Document Transmittal, PTO/SB/216. See Appendix B. Available online at http://www.reginfo.gov/public/do/PRAViewIC?ref_nbr=200707-0651-005&icID=178966
[6] *See* USPTO, FY2008 President's Budget Request, (February 2007), p. 20. at http://www.uspto.gov/web/offices/ac/comp/budg/fy08pbr.pdf

P000543

of showing what value it assigned in its economic impact analysis to those 2.5 million claims that according to the USPTO would vanish into thin air every year.  Moreover, the USPTO's assumption that *no* small entity would exceed the 5/25 threshold would imply that small businesses are particularly heavy in economic dead weight.  This clearly contradicts the well-known fact that these entities are leading in innovations.[7]

It is beyond the scope of these comments to analyze the private property value lost by applicants under the USPTO's implied assumption.  Perhaps its entry in the OMB information collection submission was in error, although this appears unlikely given that this number was recently cut down from a prior estimate of 10,000 ESDs.  I will be pleased to respond to a specific answer or correction by the USPTO, which it is obligated to publish.  In that response, I will also show that based on the distribution of the number of claims in applications with more than 5/25 claims, these claims provide over 60% of the claim fee revenue for the USPTO.  Nowhere in the USPTO budget for FY 2008, can one find a claim fee collection *reduction* consistent with its assumption that all these 2.5 million claims will not be filed.  Moreover, as the USPTO assumes in its ESD burden submission, applicants who have applications with more than 5/25 in the back-file will apparently cancel their excess claims.  However, they would be entitled to claim fee refunds under §1.117.  The USPTO refund liability would be for a substantial portion of its claim fee revenue it collected in the last 2-3 years.  No such liability is shown in the USPTO FY 2008 budget.

In addition to this apparently gross underestimation of the number of ESDs that would be filed under the Final Rule, the USPTO provides an estimate for preparing and submitting an ESD that is smaller by several factors compare to that estimated based on realistic commercial parameters.  The following sections describe a detailed estimate based on actual claim profiles and cited references characteristics for both large and small entities' originated applications.

## 1.1    Small Business patentees cite more references than large entities.

The average number of references cited in U.S. patents appear to change little in the last decade, running at approximately 19-20 references.[8]  A sample of patents issued on the week of July 25, 2006 shows that the frequency distribution of the number of references cited in these patents is highly skewed, having a long "tail" and wherein the distribution has a mean of about 19 references.[9]  However, the number of citations averaged across all patents underestimates the actual citations in applications subject to the 5/25 ESD rule.  Using these estimates to determine the actual burden for preparing ESDs is conservative because it does not take into account the following factors:

(1) Patent applications having more than 5/25 claims are by *no means* average patent

---

[7]  See the innovation report on small businesses by CHI referenced in note 12.

[8]  J. Callaert, B. Van Looy, A. Verbeek, K. Debackere, B. Thijs, Traces of Prior Art: An analysis of non-patent references found in patent documents, *Scientometrics*, **69**(1), pp. 3–20, (2006) (Showing in Figure 1 that issued US patents applied for during the late 1990's cite an average of approximately 13 patent references and 7 non-patent references.

[9]  Comments of S. Bennett and T. Curtis on RIN 0651–AB95, "Changes to Information Disclosure Statement and Other Matters", August 24, 2006, available at http://www.uspto.gov/web/offices/pac/dapp/opla/comments/ab95/bennett_curtis.pdf, (stating that the empirical frequency distribution they found for the number of references cited in patents is consistent with a Rayleigh probability density, having a standard deviation of 10.  By the relation $Mean = [\pi/(4-\pi)]^{1/2} StdDev$ for a Rayleigh distribution, one obtains a mean of 19.1 references).

3

P000544

applications.   The number of cited references in patents have been shown to positively correlate with the number of claims[10].  Because the applications subject to the ESD rule have almost double the number of claims compared to the average across all patents, the average number of citations in these patent applications  must  also  be larger than that averaged across all patents.

(2) Applicants typically submit fewer references than those obtained under their prior art search.  However, applicants do invest time to acquire and read them and determine their lack of relevance to patentability.

Moreover, there are quantifiable differences among entity types when it comes to patent citations.  Allison and Lemley reported that small business patentees have more references cited in their patents[11], a fact that was corroborated by a special citation study by the research firm CHI.[12]  To some extent, this is not surprising as small entities have patents that are also more likely to have a larger number of total claims, as seen in the following section.

That said, applicants submit Information Disclosure Statements ("IDS") that contain only a fraction of the citations on the patent.  The rest are cited by the examiner.  The number of references used in the attached estimates is consistent with the fact that the overall citation averages are obtained from a share of small and large entity patents corresponding to 28% and 72% respectively as found in the FY 2006 application data.[13]  An average of the citation intensity ratios reported by CHI and by Allison & Lemley was adopted, yielding a ratio of 1.4.  In consideration of these points and assuming that the average IDS in a 5/25-plus application is significantly longer than an average IDS, this model assumes that the average number of references to be listed in an ESD would be 10 for small entities and 7.1 for large entities. Despite the seemingly "modest" requirement that an ESD only contain a listing of the references deemed most closely related to the subject matter of each of the claims in compliance with §1.265(c), this reduced number of references might be considered conservative by some patentees.  This is because applicants would be reluctant to selectively list only certain references and not others in apprehension of a later costly allegation of inequitable conduct.

## 1.2    Small Business applicants file more claims in their applications and are more likely to exceed the 5/25-claim threshold.

As seen in Figure 1, small entities would be disproportionately impacted by the 5/25 ESD rule. For estimating the ESD burdens, the conditional means of dependent and independent claims for each entity type is required.  For the full set of all entity applications, this was obtained by the **_joint_** two-dimensional distribution of independent and dependent claim numbers as compiled by the USPTO.[13]

---

[10]   J.O. Lanjouw and M. Schankerman, Patent Quality And Research Productivity: Measuring Innovation With Multiple Indicators, *The Economic Journal*, **114**, pp. 441–465, (April, 2004) (see Table 1).

[11]   J.R. Allison and M.A. Lemley, Who's Patenting What? An Empirical Exploration of Patent Prosecution, *Vanderbilt Law Review*, **53**, p. 2099, (2000) (reporting on a sample of patents applied for in the early 1990's and issued in 1996-1998 in Table 31 "Prior Art References by Entity Size".  At that time, small business patentees cited 18.03 while large entity patentees cited an average of 14.31 references, yielding a ratio of about 1.26).

[12]   CHI Research, *Small Serial Innovators: The Small Firm Contribution To Technical Change,* CHI Research, Inc. Haddon Heights, NJ, (February 27, 2003),at  http://www.sba.gov/advo/research/rs225tot.pdf , at 20 ("Small firm patents contain longer lists of references to prior patents.  An index of patent reference list length … takes the value of 1.81 for the small firm patents and 1.18 for the large firm patents".  The study covered patents issued in 1996-2000.  The ratio for this later study is therefore 1.53).

[13]   Joint frequency distribution for FY 2004 was obtained through USPTO data documents produced in the *Tafas v. USPTO* (2007) case.  It was found that 34% of all applications have more than 5 independent claims or have more

4



**Figure 1.** The frequency distribution of the number of claims in UPR applications in FY 2006 for which claim information was available. It is based on a total of 237,758 applications from large entities and 95,938 from small entities. *Sources*: USPTO Document production, *Tafas v. USPTO*, (2007).

Because the distributions shown above are **_marginal_** one-dimensional distributions and the joint two-dimensional distribution of independent and dependent claim number is not available separately for small and large entities, it is difficult to determine precisely the claim mix differences among entity types. However, because the number of independent claims in excess of 5 for small entities' applications is only slightly higher than that of large entities, the conditional average is approximated for both entity types by that found in the combined set, 5.2 (see note 13). Therefore, in this model, only the average number of dependent claims is assumed to differ among applications for large or small entities. With these assumptions, the following section estimates the ESD burdens.

## 1.3    ESD cost estimates by entity size

The results of the ESD estimates for large and small entities are shown in Table 1 and Table 2 respectively. The first cost component to both entities include the cost of the patentability search. Quotes for such searches were obtained and reproduced in Appendix A. The first two sources used in this study quoted fees that depend on the number of claims. The average of these fees across firms were inserted (in accordance with the average claim number in each case) in Table 1 and Table 2. Items shown in Table 2 as not required are items identified by §1.265(f) that small entities are under no obligation to provide.

---

than 25 total claims. The conditional average number of independent claims over this set was 5.2 and the conditional average number of independent claims was 36.9, yielding a conditional average total number of claims in this set of 42.1 claims. The conditional total average number of claims in the FY 2006 set described in Figure 1 and subject to the 5/25 rule is slightly smaller, wherein applications in the set have an average of 42.6 claims and 39.1 for small entities and large entities respectively.

P000546

## AVERAGE ESD COSTS FOR LARGE ENTITY

| Cost Element | | Unit Cost (Source) | Average number of units per application (Source) | Extended cost per application |
|---|---|---|---|---|
| *Per Application Elements* | | | | |
| **Patentability Search**: US patents, foreign patents and non-patent literature, based on all claim elements. Report on search strategy, terms used and classification | | $10,866 (a) | 1.1 (d) | $11,953 |
| | | References: | 7.1 (e) | |
| *Per Reference Elements* | Per Reference Unit Cost (Source) | Unit Cost extended over all references | | |
| Reading, identifying pertinent parts and summarizing | $200 (b) | $1,429 | | $1,429 |
| **Per-first-independent claim**: written comparison to reference, element-by-element, for all elements | $150 (b) | $1,071 | 1 | $1,071 |
| **Per-extra-independent claim**: written comparison to reference, element-by-element, for all elements | $100 (b) | $714 | 4.21 (f) | $3,005 |
| **Per-dependent claim**: written comparison to reference, element-by-element, for all elements | $20 (b) | $143 | 33.86 (g) | $4,837 |
| **Per-first independent claim**: detailed explanation pointing out the claim patentability over the reference | $100 (c) | $714 | 1 | $714 |
| **Per-extra independent claim**: detailed explanation pointing out the claim patentability over the reference | $75 (c) | $536 | 4.21 (f) | $2,253 |
| **Per-each independent claim**: showing §112P1 support in the specification for each limitation of the claim. | | $150 | 5.21 (f) | $781 |
| **Per-each dependent claim**: showing §112 P1 support in the specification for each limitation of the claim. | | $20 | 33.86 (g) | $677 |

| | |
|---|---|
| **Total Estimated ESD cost per Application Exceeding the 5/25 claims threshold** | **$26,720** |

**Table 1.** Large entity average ESD cost estimates. *Sources*: (a) Averaged over the first two firms' quotes in Appendix A. See text; (b) ESD generation tasks and their estimated costs as provided to OMB[14].; (c) This author's estimate based on his own experience and the similarity of these tasks to those referenced in (b); (d) This assumes that Supplemental ESDs will have an overhead burden of 10%; (e) Assumed average number of references as discussed in the text; (f) Based on the conditional average number of independent claims in 5/25-plus applications. See note 13.

---

[14]  Dr. Belzer's presentation to OMB entitled *Cost of Complying with the Proposed IDS Rule*, October 18, 2007, available at http://www.whitehouse.gov/omb/oira/0651/meetings/663.pdf, (See attached declaration of a registered patent attorney in Docket No. RIN 0651-AB95, at 5-8).

P000547

**AVERAGE ESD COSTS FOR SMALL ENTITY**

| Cost Element | Unit Cost (Source) | Average number of units per application (Source) | Extended cost per application |
|---|---|---|---|
| *Per Application Elements* | | | |
| **Patentability Search**: US patents, foreign patents and non-patent literature, based on all claim elements. Report on search strategy, terms used and classification | $11,743 (a) | 1.1 (d) | $12,917 |
| *Per Reference Elements* | | References: | 10.0 (e) | |
| | Per Reference Unit Cost (Source) | Unit Cost extended over all references | | |
| Reading, identifying pertinent parts and summarizing | $200 (b) | $2,000 | | $2,000 |
| **Per-first-independent claim**: written comparison to reference, element-by-element, for all elements | $150 (b) | Not Required | 1 | $0 |
| **Per-extra-independent claim**: written comparison to reference, element-by-element, for all elements | $100 (b) | Not Required | 4.21 (f) | $0 |
| **Per-dependent claim**: written comparison to reference, element-by-element, for all elements | $20 (b) | Not Required | 37.37 (g) | $0 |
| **Per-first independent claim**: detailed explanation pointing out the claim patentability over the reference | $100 (c) | $1,000 | 1 | $1,000 |
| **Per-extra independent claim**: detailed explanation pointing out the claim patentability over the reference | $75 (c) | $750 | 4.21 (f) | $3,155 |
| **Per-each independent claim**: showing §112P1 support in the specification for each limitation of the claim. | $150 | | 5.21 (f) | $781 |
| **Per-each dependent claim**: showing §112 P1 support in the specification for each limitation of the claim. | $20 | | 37.37 (g) | $747 |
| **Total Estimated ESD cost per Application Exceeding the 5/25 claims threshold** | | | **$20,600** |

**Table 2.** Small entity average ESD cost estimates. Items shown as "Not required" are items identified by §1.265(f) exempting small entities. *Sources*: same as in Table 1.

As seen in these tables, the break that small entities receive under the ESD rules is rather insignificant and in any event, their costs are significantly higher than that estimated by the USPTO for large entities. The USPTO's certification under §605(b) of the Regulatory Flexibility Act is therefore questioned.

From the data cited above, it is found that in FY 2006, of the applications with more than 5/25 claims, 69.4% and 30.6% were filed by large and small entities respectively. Given this entity share in such applications and the USPTO projections cited above, one obtains that in FY 2008 99,811 and 43,949 applications with claims in excess of the 5/25 threshold would be filed by large and small entities respectively. Since all will require an ESD and the USPTO provided no explanation as to why these will not be filed, the total information collection burden the USPTO must book with OMB for FY 2008 should be given by

$$\$26,720 \times 99,811 + \$20,600 \times 43,949 = \$3,572,296,319$$

This burden is clearly Economically Significant. The USPTO cannot have it both ways. If, alternatively, it wishes to assert its current assumption that only 5,000 applications per year would exceed the 5/25 threshold, than it must assess the private economic impact on applicants. In this case, one need not go far because the USPTO's own loss of claim fee revenue would exceed the threshold of being Economically Significant.

## 2 PETITIONS FOR FILING CONTINUATIONS

Within the same 0031 information collection package described above, the USPTO submitted information collection items for OMB's approval related to its rules on continuations. The two items addressed below are the Petition for Requesting Continued Examination and the Petition

7

for filing a second Continuation or Continuation In Part.

Under §1.114 of the Final Rule, an applicant is permitted to file a single Request for Continued Examination ("RCE") without a petition and showing in a single application family. Otherwise, applicants are required to file a petition for a second RCE showing why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the application. See §1.114(f)(1).

In addition, § 1.78(d)(1) of the Final Rule provides that an application family includes the initial application, and two continuations or C-I-Ps. With the single RCE described above, applicants are therefore able to file "2+1" follow-up applications in a family without filing a petition. Additional continuing applications, or RCEs, require a petition and a showing why the amendment, argument or evidence in the additional continuation could not have been submitted during the prosecution of the prior-filed application. This rule is often referred to as the "3+" continuation rule.

In response to many comments expressing concerns that applicants would be practically prevented from filing more continuations, the USPTO has repeatedly stressed the fact that no limits are imposed on the number of continuations applicants can file. Its typical response, which it repeated several times in the Final Rule text, is as follows:

> "The changes in this final rule **do not set a per se limit** on the number of continuing applications. Nor are the changes intended to address extreme cases of prosecution laches ... Rather, the rules require that applicants who file multiple continuing applications from the same initial application show that the third and following applications, and any second or subsequent request for continued examination in an application family, be filed to obtain consideration of an amendment, argument, or evidence that could not have been previously submitted.[15] (Emphasis added).

> The Office **did not place a per se limit** on the number of continuing applications and requests for continued examination. The rules require applicant to show why a third or subsequent continuing application or second or subsequent request for continued examination is necessary to advance prosecution. … The changes being adopted in this final rule are appropriately tailored to permit applicants to file the initial application, two continuation or continuation-in-part applications, and a request for continued examination in any one of these three applications without any justification. An applicant who **considers this to be insufficient** may file any additional continuation or continuation-in-part application or request for continued examination with a petition and showing as to why the amendment, argument, or evidence sought to be entered could not have been submitted earlier.[16] (Emphasis added).

Nowhere in the record does the USPTO suggest that filing a petition or meeting its showing requirements would be burdensome to applicants so as to stop them from filing and having such petitions granted. Nowhere in its analysis on record did the USPTO suggest or present a fraction of "3+" applications that it deemed unworthy of consideration. The only factor that the USPTO attributed to applicant's decision to file more than the third non-original application is whether the applicant **considers this [number] to be insufficient.** Evidently, as shown in an internal USPTO memo attached in Appendix C, 11,326 applicants considered the "3+" number to be insufficient in FY 2006 and filed more continuations. Of those, 3,320 were applications of small entities and 8,006 were from large entities.

With these facts at hand, the USPTO represented to OMB, that, on average, the petition for filing a second RCE would take 4 hours to prepare and that only 1,000 such petitions would be filed

---

[15] Final Rule at 46720, col. 2.
[16] Final Rule at 46757, col. 3.

P000549

per year by large entity applicants and **none** (**0 !**) by small entities.[17]   In addition, the USPTO represented to OMB, that, on average, the petition for filing a third continuation or continuation-in-part application would take 4 hours to prepare and that only 1,000 such petitions would be filed per year by large entity applicants and **none** (**0 !**) by small entities.[18]   Thus, the USPTO expects only 2,000 "3+" petitions to be filed per year and that none would be filed by small entities.  This is a material distortion of the facts known to USPTO and the USPTO must book correctly the petition burdens for both entity types.

Alternatively, the USPTO must provide support for its burden estimate of only 2,000 petitions per year and provide its estimate of the private economic value lost in nearly 9,000  continuation patents per year that could have otherwise issued.  This author has shown that such loss would be Economically Significant under Executive Order 12,866.[19]   Nowhere in its rulemaking record did the USPTO establish that the consequences of its rules would be the reduction per se of "3+" applications.  The USPTO must explain how many of the roughly 9,000 "3+" applications would not be filed under its new rule because applicants judge the economic benefits from such continuation patents to be less than the 4-hour burden of preparing a petition.  One can only infer that applicants would believe that their petition would be denied for those cases not in this first category – a result contrary to the USPTO assertion that by its rule, it does not limit the number of continuations.  Moreover, the USPTO must explain how its models find that small entities would be more susceptible to the threat of having their petition denied and therefore not petiton.

---

[17]  Petition for a second request for continued examination. See Appendix B. Available online at
http://www.reginfo.gov/public/do/PRAViewIC?ref_nbr=200707-0651-005&icID=178969

[18]  Petition for a second continuation or continuation-in-part application. See Appendix B. Available online at
http://www.reginfo.gov/public/do/PRAViewIC?ref_nbr=200707-0651-005&icID=178967

[19]  Letter from R.D. Katznelson to Susan Dudley of June 29, 2007, available at
http://www.whitehouse.gov/omb/oira/0651/comments/460.pdf  (See Table 2.)

P000550

# 3   CONCLUSION

The USPTO must book the correct information collection burden for submission of ESDs and petitions for continuations. The USPTO must not treat accounting of the information collection burdens on small businesses in such disregard for the spirit and the letter of the Regulatory Flexibility Act and the Paperwork Reduction Act. Booking zero burdens on small entities in these items is clearly wrong. The USPTO should correctly assess the cost for each ESD and correctly provide a supportable assessment of the number of ESD filed each year. Either way, based on the costs on both sides, the USPTO should redesignate the rule as Economically "Significant Regulatory Action". A Regulatory Impact Analysis fully compliant with OMB Circular A-4 should be prepared and published for public comment. All influential information used to support this analysis should adhere to the principles of OMB's Information Quality Guidelines.

Sincerely,

Dr. Ron D. Katznelson,
Encinitas, CA
Office: (760) 753-0668
Mobile: (858) 395-1440
rkatznelson@roadrunner.com

## Appendix A    Patent search firm's quotes for patentability search reports

**1. Mogambo Solutions, LLC. (** www.mogambosolutions.com **)**

-----Original Message-----
**From:** Chirag Shah [mailto:chirag@mogambosolutions.com]
**Sent:** Friday, October 19, 2007 1:51 PM
**To:** rkatznelson@roadrunner.com
**Subject:** AES Questions

Dr. Katznelson:

(1) We quote projects on a fixed fee basis.  For the AES searches, the cost is $4000.00 for the first 10 claims, and $300.00 per claim thereafter.  The standard turnaround time is 21 days, and can be expedited to 5-10 days for an additional fee.

(2) If your accelerated patent examination application is rejected for lack of a thorough search, we will conduct another search in accordance with the examiner's class and keyword recommendations at no additional cost.

If after delivery of the initial report you would like for us to refine the search scope (more narrow or broader), we are happy to conduct another search at no additional cost.

If you would like us to re-search on amended claims, the fee will vary on how substantively different the amended claims are from the initial claims.

(3) The AES search will include a search of US and foreign patent databases.  We also conduct a non-patent literature search of various technical and scientific journals and articles.  We will provide full-text PDFs of all references we cite (patents and NPLs).  There is no additional charge for this.

I have attached a sample AES search - you can see the citation on page 4.  Our NPL list is starts on page 10.  Please note that this sample report is redacted and provided so you can get an idea of how we present our results.

Please feel free to email or call me at 1.800.849.1094 if you have any further questions.

We look forward to working with you.

Regards,

Chirag Shah

Mogambo Solutions, LLC
1940 Duke St., Suite 200
Alexandria, VA 22314

(T) 1.800.849.1094
(F) 206.888.6712
www.mogambosolutions.com

P000552

**2. Clearly Understood, Inc. (** www.clearlyunderstood.com **)**

-----Original Message-----
**From:** Bill Brody [mailto:bill@clearlyunderstood.com]
**Sent:** Friday, October 19, 2007 11:25 AM
**To:** rkatznelson@roadrunner.com
**Subject:** Draft pricing

Ron

It was good talking to you and I hope this will help.

Bill

# DRAFT Pricing

ESD Areas needing additional information.  These may affect effort and thus final pricing.

1. We do not know what the compliance manual is going to be to know exactly what we are going to need to do.  An example what we will exactly be able to supply the attorney and what the attorney is going to have to supplement.

2. The Final OMB ESD form is not yet available.  All we have are only good through November 30, 2007.

3. The classification search may produce questionable results.  The USPTO is moving to the international classification standards, and thus changing classifications of many existing patents.  Also, many patents are miss-classified in the current system.  To the best of our knowledge classification searches have not been used for a number of years.  The patent attorney is expected to provide the probable classification of the concept/application submitted.

4. Some foreign patents and non patent literature will not be searchable.  They are not in machine readable form, or in a language that is difficult to electronically search.

Below is our Draft of Pricing for new search procedures to comply with the new patent law changes.

### ESD Estimate – with Pricing Table

The following provides our Six Step ESD Search and Documentation Process with Incremental Pricing. Concepts and Inventions with up to 5 independent or 25 total claims continue to follow our current process and pricing. Once this claim threshold is exceeded the ESD process is required. Our six step ESD process allows you and your client to determine to proceed or stop at each point in the process, based upon the results to that point.

Your comments, questions and recommendations are always appreciated.

P000553

Clearly Understood, Inc.
37 CFR 1.265 Examination Support Documentation (ESD)
Six Step Search Process & Pricing

| Step | Action | Pricing | |
| --- | --- | --- | --- |
| | | Step | Incremental |
| Concept Search | | | |
| 1 | USPTO (Patents, Applications, Class) | $750 | |
| 2 | Foreign Patent Documents | $750 | |
| 3 | Global Non-Patent Literature | $2,500 | |

| | Attorney Prepares Patent Application | 1-5 Independent or | |
| --- | --- | --- | --- |
| | Patentability Search by Claim w/ ESD Audit Trail | 1-25 Total Claims | Each Additional Claim |
| 4 | USPTO (Patents, Applications, Class) | $1,250 | $50 |
| 5 | Foreign Patent Documents | $1,250 | $50 |
| 6 | Global Non-Patent Literature | $3,500 | $100 |
| | Total Base Price | $10,000 | $200 |

Best Regards,
Bill Brody
President
Clearly Understood, Inc.
972-419-8000
Email: bill@clearlyunderstood.com

P000554

**3. Patent Hawk, LLC.** ( http://www.patenthawk.com )

-----Original Message-----
**From:** Patent Hawk [mailto:info@patenthawk.com]
**Sent:** Friday, October 19, 2007 8:43 PM
**To:** 'Ron Katznelson'
**Subject:** RE: ESD estimate



Hi Ron:

Thanks for calling.
As we discussed on the phone, you are well aware of the USPTO ESD circumstance and requirements. Besides extensive cross-referential search, including tedious class/subclass search, for an ESD, documentation is non-trivial.

Patent Hawk rate is $160/hour. Any ESD matter Patent Hawk would take would be budget estimated, but without a not-to-exceed guarantee; the nature of the work itself being somewhat unpredictable. My estimate, for computer related technologies, is that an ESD at the low end may take 35-40 hours: $5600-$6400 minimum, and, depending upon the technology, i.e. how heavily patented or extensive the prior art thicket, could easily run to 60-80 hours: $9600-$12800.

My work ethic is to complete matters as expeditiously as possible while affording confidence in the quality of the work, and work product. The above estimates are hypothetical, but based upon eight years of experience as a professional prior art searcher.

Hope this helps.

For your convenience, my business card (Outlook vCard) is attached.
Regards,

Gary Odom
Patent Hawk LLC

Email: gary@patenthawk.com
Web: http://www.patenthawk.com
Weblog: The Patent Prospector - http://www.patenthawk.com/blog/
Voice: 206.529.5146
Fax:   985.923.0291
123 NW 12th Avenue, #1545, Portland, OR 97209

14

P000555

### 4. Other search firms

Other patent search firms were contacted but did not respond with a standard quote. They either declined to provide a public quote or declined to provide a standard quote because they quote based on the specific attributes of the case. These firms are listed below:

**(a) Cardinal Intellectual Property** ( www.cardina-ip.com )

> 1603 Orrington Avenue
> 20th Floor
> Evanston, IL 60201
>
> Phone 847-905-7122
> Fax 847-905-7123
> mail@cardinal-ip.com

**(b) Landon IP, Inc.** ( www.landon-ip.com )

> Suite 450
> 1700 Diagonal Road
> Alexandria, Virginia 22314
>
> Phone 703-486-1150
> Fax 703-892-4510
> mail@landon-ip.com

**(c) Nerac, Inc.** ( www.nerac.com )

> One Technology Drive
> Tolland, CT 06084
>
> Phone 860-872-7000

**(d) Lexis/Nexis-Reedfax Intellectual Property Services** ( www.reedfax.com )

> 7 Walnut Grove Drive
> Horsham, PA 19044
>
> Phone 800-422-1337 or 215-441-4768
> Fax 800-421-5585 or 215-441-5463
> email@reedfax.com

**(e) Intellevate, LLC** ( www.cpaglobal.com/patents/intellevate )

> 900 2nd Ave S, Suite 1700
> Minneapolis, MN 55402
>
> Phone (612) 236-9990
> Fax (612) 677 3572
> Email info@intellevate.com

P000556

**Appendix B    USPTO's Information Collection Submissions to OMB.**

P000557

**GSA** Services Administration

Office of Management and Budget

# RegInfo.gov

Where to find Federal Regulatory Information

## View Information Collection (IC)

**IC Title:**     Examination Support Document Transmittal          **Agency IC Tracking Number:**

**Is this a Common Form?** No          **IC Status:** Modified

**Obligation to Respond:** Required to Obtain or Retain Benefits

**CFR Citation:** 37 CFR 1.75(b)

**Information Collection Instruments:**

| Document Type | Form No. | Form Name | Instrument File | URL | Available Electronically? | Can Be Submitted Electronically? | Electronic Capability |
|---|---|---|---|---|---|---|---|
| Form and Instruction | PTO/SB/216 | Examination Support Document Transmittal | sb0216.pdf | | No | | Paper Only |

**Federal Enterprise Architecture Business Reference Module**
**Line of Business:** Economic Development          **Subfunction:** Intellectual Property Protection

**Privacy Act System of Records Title:**          **FR Citation:**

**Number of Respondents:** 5,000          **Number of Respondents for Small Entity:** 0

**Affected Public:** Private Sector          **Private Sector:** Businesses or other for-profits, Not-for-profit institutions

**Percentage of Respondents Reporting Electronically:**  0 %

| | Requested | Program Change Due to New Statute | Program Change Due to Agency Discretion | Change Due to Adjustment in Agency Estimate | Change Due to Potential Violation of the PRA | Previously Approved |
|---|---|---|---|---|---|---|
| Annual Number of Responses for this IC | 5,000 | 0 | -5,000 | 0 | 0 | 10,000 |
| Annual IC Time Burden (Hours) | 110,000 | 0 | -130,000 | 0 | 0 | 240,000 |
| Annual IC Cost Burden (Dollars) | 2,900 | 0 | -1,000 | 0 | 0 | 3,900 |

**Documents for IC**

| Title | Document | Date Uploaded |
|---|---|---|
| | *No associated records found* | |

Blank fields in records indicate information that was not collected or not collected electronically prior to July 2006.

Disclosure  |  Accessibility  |  Privacy Policy  |  Contact Us

GSA
Services
Administration

Office of
Management
and Budget

# RegInfo.gov
Where to find Federal Regulatory Information

Home | Unified Agenda and Regulatory Plan    EO 12866 Regulatory Review    Information Collection Review

Information Collection Review    Advanced Search    XML Reports

## View Information Collection (IC)

**IC Title:** Petition for a second request for continued examination showing why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the application

**Agency IC Tracking Number:**

**Is this a Common Form?** No

**IC Status:** Modified

**Obligation to Respond:** Required to Obtain or Retain Benefits

**CFR Citation:** 37 CFR 1.114(f)

**Information Collection Instruments:**

| Document Type | Form No. | Form Name | Instrument File | URL | Available Electronically? | Can Be Submitted Electronically? | Electronic Capability |
|---|---|---|---|---|---|---|---|

**Federal Enterprise Architecture Business Reference Module**
**Line of Business:** Economic Development

**Subfunction:** Intellectual Property Protection

**Privacy Act System of Records Title:**

**FR Citation:**

**Number of Respondents:** 1,000

**Number of Respondents for Small Entity:** 0

**Affected Public:** Private Sector

**Private Sector:** Not-for-profit institutions, Businesses or other for-profits

**Percentage of Respondents Reporting Electronically:** 0 %

|  | Requested | Program Change Due to New Statute | Program Change Due to Agency Discretion | Change Due to Adjustment in Agency Estimate | Change Due to Potential Violation of the PRA | Previously Approved |
|---|---|---|---|---|---|---|
| Annual Number of Responses for this IC | 1,000 | 0 | 0 | 0 | 0 | 1,000 |
| Annual IC Time Burden (Hours) | 4,000 | 0 | 0 | 0 | 0 | 4,000 |
| Annual IC Cost Burden (Dollars) | 400,580 | 0 | 0 | 190 | 0 | 400,390 |

**Documents for IC**

| Title | Document | Date Uploaded |
|---|---|---|
| *No associated records found* | | |

Blank fields in records indicate information that was not collected or not collected electronically prior to July 2006.

Disclosure | Accessibility | Privacy Policy | Contact Us

GSA Services Administration

# RegInfo.gov
Where to find Federal Regulatory Information

Office of Management and Budget

## View Information Collection (IC)

**IC Title:** Petition for a second continuation or continuation-in-part application showing why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the prior fil

**Agency IC Tracking Number:**

**Is this a Common Form?** No

**IC Status:** Modified

**Obligation to Respond:** Required to Obtain or Retain Benefits

**CFR Citation:** 37 CFR 1.78(d)(1)(iv)

**Information Collection Instruments:**

| Document Type | Form No. | Form Name | Instrument File | URL | Available Electronically? | Can Be Submitted Electronically? | Electronic Capability |
|---|---|---|---|---|---|---|---|

**Federal Enterprise Architecture Business Reference Module**
**Line of Business:** Economic Development

**Subfunction:** Intellectual Property Protection

**Privacy Act System of Records Title:**

**FR Citation:**

**Number of Respondents:** 1,000

**Number of Respondents for Small Entity:** 0

**Affected Public:** Private Sector

**Private Sector:** Businesses or other for-profits, Not-for-profit institutions

**Percentage of Respondents Reporting Electronically:**  0 %

| | Requested | Program Change Due to New Statute | Program Change Due to Agency Discretion | Change Due to Adjustment in Agency Estimate | Change Due to Potential Violation of the PRA | Previously Approved |
|---|---|---|---|---|---|---|
| Annual Number of Responses for this IC | 1,000 | 0 | -1,000 | 0 | 0 | 2,000 |
| Annual IC Time Burden (Hours) | 4,000 | 0 | -4,000 | 0 | 0 | 8,000 |
| Annual IC Cost Burden (Dollars) | 400,580 | 0 | -400,200 | 0 | 0 | 800,780 |

**Documents for IC**

| Title | Document | Date Uploaded |
|---|---|---|
| | *No associated records found* | |

Blank fields in records indicate information that was not collected or not collected electronically prior to July 2006.

Disclosure  |  Accessibility  |  Privacy Policy  |  Contact Us

**Appendix C     USPTO Internal Memos.**

P000561

**Bahr, Robert**

| | |
|---|---|
| **From:** | Morse, Gregory |
| **Sent:** | Thursday, March 22, 2007 12:34 PM |
| **To:** | Bahr, Robert |
| **Subject:** | Re: |

Before you say that, let me check how many are in the early stages of processing. Ninety pct of cases that get through OIPE have claim data.

----- Original Message -----
From: Bahr, Robert
To: Morse, Gregory
Sent: Thu Mar 22 12:31:09 2007
Subject: RE:

WRT--

4.     The number of applications in the backlog (as some date) and the number of applications in the backlog that contain (??) more than 5/25

As of 2/28/07, 708,321 UPR cases in the backlog. 29% of the non-small entity cases were over 5 or 25, and 30% of the small entity cases were over 5 and 25. Only about 95% have claims data, so misleading to give a raw number.  In addition some cases other than the 95% have not yet been processed enough to determine large/small entity or claims.

Any objection to me saying--

    Of the applications currently awaiting examination for which claims data is available in PALM (which is over ninety percent of such applications), about thirty percent contain more than five independent claims or more than twenty-five total claims.

-----Original Message-----
From: Morse, Gregory
Sent: Wednesday, March 21, 2007 5:03 PM
To: Bahr, Robert
Subject:

Let me know what else you need - I still need to get you issued claims over 5/25.

1

**Bahr, Robert**

| | |
|---|---|
| **From:** | Morse, Gregory |
| **Sent:** | Thursday, March 15, 2007 2:12 PM |
| **To:** | Bahr, Robert |
| **Subject:** | FW: Numbers |

3320 Small entity; 8006 non-small entity

-----Original Message-----
From: Morse, Gregory
Sent: Wednesday, March 14, 2007 3:43 PM
To: Doll, John
Cc: Love, John; Focarino, Margaret (Peggy); Fleisher, Mindy; Bahr,
Robert; Mielcarek, John
Subject: RE: Numbers

Number of 3 CON/CIP filings or 4+ CON/CIP/RCE/CPA filings, by TC, as of 3/13/07:

I apologize that these were not available when you asked.

(2006 numbers, 2006 filings 419,760 UPR, all based on analysis of PALM data)

| TC | Filings | 3 CON or 4+ | Percent |
|---|---|---|---|
| 1600 | 41,756 | 2,356 | 5.6% |
| 1700 | 57,368 | 1,189 | 2.1% |
| 2100 | 44,425 | 1,295 | 2.9% |
| 2600 | 65,974 | 1,401 | 2.1% |
| 2800 | 94,851 | 1,927 | 2.0% |
| 3600 | 51,661 | 1,131 | 2.2% |
| 3700 | 63,725 | 2,027 | 3.2% |
| UPR | 419,760 | 11,326 | 2.7% |

Of the 11326, 2621 were 3rd CON/CIP filings, and 8705 were 4+ of any combination.

In discussions with Undersecretary Dudas, we previously estimated the 8,705 as "about 8,000" and the overall number as "about 10,000".
-----Original Message-----
From: Doll, John
Sent: Monday, March 12, 2007 4:07 PM
To: Morse, Gregory
Subject: Numbers


Do we have the distribution of 3+ CONs / RCEs by TC ?!?



BlackBerry Wireless

P000563