# Exhibit 14

**PTO's cover memorandum and Supporting Statement under Paperwork
Reduction Act (Dec. 22, 2005), A07328-47**

Dockets.Justia.com



## UNITED STATES PATENT AND TRADEMARK OFFICE

OFFICE OF THE CHIEF INFORMATION OFFICER

December 22, 2005

Memorandum

To:     David Rostker, Desk Officer
        Office of Information and Regulatory Affairs
        Office of Management and Budget

From:   Susan K. Brown, Records Officer
        Office of Data Architecture and Services
        Data Administration Division

Subject: Submission of a proposed addition of a currently approved collection

We are submitting information collection package 0651-0031 Patent Processing (Updating), for OMB's consideration in accordance with your guidelines for revisions of existing information collections. This package is being submitted in support of a notice of proposed rulemaking, "Changes to Practice for the Examination of Claims in Patent Applications" (RIN 0651-AB94) and a notice of proposed rulemaking "Changes to Practice for Continuing Applications, Requests for Continued Examination Practice, and Applications Containing Patentably Indistinct Claims" (RIN 0651-AB93), which will be forwarded to the *Federal Register* for publication.

## ABSTRACT

This information is required by 35 U.S.C. § 101 et seq. and administered by the United States Patent and Trademark Office (USPTO) through various sections of the rules of practice in 37 CFR Part 1. The changes being proposed by the USPTO will allow the USPTO to apply the patent examining resources currently absorbed by applications containing an excessive number of claims and multiple continuing applications and requests for continued examination that simply recycle earlier applications to the examination of new applications and thus allow the USPTO to reduce the backlog of unexamined applications. The changes being proposed will mean faster, more efficient examination for the typical applicant without any additional work on the applicant's part, but a small minority of applicants who consume a disproportionate share of USPTO resources will be required to share the burden they place on the agency.

Thank you for your ongoing support.

Attachment

A007328

**DATES:** January 19, 2006.

*Time:* 8 a.m. Central Standard Time.

**ADDRESSES:** New Orleans Marriott, 555 Canal Street, New Orleans, Louisiana, 70130. This program will be physically accessible to people with disabilities. Requests for sign language interpretation or other auxiliary aids should be submitted no later than November 25, 2005, to J. Marc Chittum, U.S. Travel and Tourism Advisory Board, Room 4043, 1401 Constitution Avenue, NW., Washington, DC 20230, telephone (202) 482–4501, or e-mail *Marc.Chittum@mail.doc.gov.* Seating is limited and will be on a first come, first served basis.

**FOR FURTHER INFORMATION CONTACT:** J. Marc Chittum, U.S. Travel and Tourism Advisory Board, Room 4043, 1401 Constitution Avenue, NW., Washington, DC 20230, telephone 202–482–4501, or e-mail *Marc.Chittum@mail.doc.gov.*

Dated: December 22, 2005.

**J. Marc Chittum,**

*Designated Federal Officer, U.S. Travel and Tourism Advisory Board.*

[FR Doc. 05–24594 Filed 12–28–05; 8:45 am]

**BILLING CODE 3510–DR–P**

---

## DEPARTMENT OF COMMERCE

### Patent and Trademark Office

### Submission for OMB Review; Comment Request

The United States Patent and Trademark Office (USPTO) has submitted to the Office of Management and Budget (OMB) for clearance the following proposal for collection of information under the provisions of the Paperwork Reduction Act (44 U.S.C. Chapter 35).

*Agency:* United States Patent and Trademark Office (USPTO).

*Title:* Patent Processing (Updating).

*Form Number(s):* PTO/SB/08, PTO/ SB/17i, PTO/SB/17P, PTO/SB/21–27, PTO/SB/24B, PTO/SB/30–32, PTO/SB/ 35–39, PTO/SB/42–43, PTO/SB/61–64, PTO/SB/64a, PTO/SB/67–68, PTO/SB/ 91–92, PTO/SB/96–97, PTO–2053–A/B, PTO–2054–A/B, PTO–2055–A/B, PTOL/ 413A.

*Agency Approval Number:* 0651– 0031.

*Type of Request:* Revision of a currently approved collection.

*Burden:* 2,807,641 hours.

*Number of Respondents:* 2,317,539 responses.

*Avg. Hours per Response:* 1 minute 48 seconds to 12 hours. The USPTO estimates that it will take 12 hours to complete the examination support document covering the independent claims and the designated dependent claims; 2 hours to complete the petition (filed in a continuation or continuation-in-part application) containing a showing as to why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the prior-filed application; 2 hours to complete the petition (filed with a request for continued examination) with a showing as to why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the application; and 1 hour to complete the explanation (filed in a nonprovisional application) of either how the claims are patentably distinct or why there are patentably indistinct claims filed in multiple applications. This includes time to gather the necessary information, create the documents, and submit the completed request.

*Needs and Uses:* The proposed examination support document covering the independent claims and designated dependent claims will assist the applicant in preparing a schedule of claims that are patentable (i.e., novel and non-obvious) over the prior art, and will assist the USPTO in the examination process in determining whether the claims are patentable over the prior art. The proposed petition for a continuation or continuation-in-part application showing why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the application will assist the USPTO in determining whether the continuation or continuation-in-part application or request for continued examination is a bona fide attempt to advance the application to final agency action or is simply being filed to delay examination. The proposed explanation in nonprovisional applications, when multiple applications having a common inventor and a common assignee have been filed on the same day, of either how the claims are patentably distinct or why there are patentably indistinct claims filed in multiple applications, will assist the USPTO in determining whether double patenting exists and whether the USPTO should merge the applications. This collection in support of a notice of proposed rulemaking entitled "Changes to Practice for the Examination of Claims in Patent Applications" (RIN 0651–AB94); and a notice of proposed rulemaking entitled "Changes to Practice for Continuing Applications, Requests for Continued Examination Practice, and Applications Containing Patentably Indistinct Claims" (RIN 0651–AB93). There are no forms associated with this final rulemaking.

*Affected Public:* Individuals or households; business or other for-profit; not-for-profit institutions; farms, the Federal Government, and State, Local or Tribal Governments.

*Frequency:* On occasion.

*Respondent's Obligation:* Required to obtain or retain benefits.

*OMB Desk Officer:* David Rostker, (202) 395–3897.

Copies of the above information collection proposal can be obtained by any of the following methods:

• *E-mail: Susan.Brown@uspto.gov.* Include "0651–0031 copy request" in the subject line of the message.

• *Fax:* 571–273–0112, marked to the attention of Susan Brown.

• *Mail:* Susan K. Brown, Records Officer, Office of the Chief Information Officer, Office of Data Architecture and Services, Data Administration Division, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313–1450.

Written comments and recommendations for the proposed information collection should be sent on or before January 30, 2006, to David Rostker, OMB Desk Officer, Room 10202, New Executive Office Building, 725 17th Street, NW., Washington, DC 20503.

Dated: December 22, 2005.

**Susan K. Brown,**

*Records Officer, USPTO, Office of Data Architecture and Services, Data Administration Division.*

[FR Doc. E5–8018 Filed 12–28–05; 8:45 am]

**BILLING CODE 3510–16–P**

---

## DEPARTMENT OF COMMERCE

### Patent and Trademark Office

### Submission for OMB Review; Comment Request

The United States Patent and Trademark Office (USPTO) has submitted to the Office of Management and Budget (OMB) for clearance the following proposal for collection of information under the provisions of the Paperwork Reduction Act (44 U.S.C. Chapter 35).

*Agency:* United States Patent and Trademark Office (USPTO).

*Title:* Patent and Trademark Financial Transactions (formerly Payment of Patent and Trademark Office Fees by Credit Card).

*Form Number(s):* PTO–2038, PTO– 2231, PTO–2232, PTO–2233, PTO–2234, PTO–2236.

*Agency Approval Number:* 0651– 0043.

A007329

# PAPERWORK REDUCTION ACT SUBMISSION

Please read the instructions before completing this form. For additional forms or assistance in completing this form, contact your agency's Paperwork Clearance Officer. Send two copies of this form, the collection instrument to be reviewed, the supporting statement, and any additional documentation to: Office of Information and Regulatory Affairs, Office of Management and Budget, Docket Library, Room 10102, 725 17th Street NW, Washington, DC 20503.

| | |
|---|---|
| 1. Agency/Subagency originating request<br>Department of Commerce.<br>United States Patent and Trademark Office (USPTO) | 2. OMB control number        b. [ ] None<br><br>0651 - 0031 |

3. Type of information collection (*check one*)

a. [ ] New Collection

b. [X] Revision of a currently approved collection

c. [ ] Extension of a currently approved collection

d. [ ] Reinstatement, without change, of a previously approved collection for which approval has expired

e. [ ] Reinstatement, with change, of a previously approved collection for which approval has expired

f. [ ] Existing collection in use without an OMB control number

For b-f, note Item A2 of Supporting Statement instructions

4. Type of review requested (*check one*)
a. [X] Regular submission
b. [ ] Emergency - Approval requested by ___ / ___ / ___
c. [ ] Delegated

5. Small entities
Will this information collection have a significant economic impact on a substantial number of small entities?    [ ] Yes    [X] No

6. Requested expiration date
a. [ ] Three years from approval date  b. [X] Other Specify 07/31/2006

7. Title
PATENT PROCESSING (UPDATING)

8. Agency form number(s) (*if applicable*)
PTO/SB/08, PTO/SB/17i, PTO/SB/17P, PTO/SB/21-27, PTO/SB/24B, PTO/SB/30-32, PTO/SB/35-39, PTO/SB/42-43, PTO/SB/61-64, PTO/SB/64a, PTO/SB/67-68, PTO/SB/91-92, PTO/SB/96-97, PTO-2053-A/B, PTO-2054-A/B, PTO-2055-A/B, PTOL/413A

9. Keywords
Inventions and patents, patent application

10. Abstract
This collection of information is required by 35 U.S.C. § 101 et seq. and is administered through 37 CFR Part 1. During the pendency of a patent application or the period of enforceability of a patent, situations arise that require collection of information for the USPTO to further process the patent or application. This information can be used by the USPTO to continue the processing of the patent or application or to ensure that applicants are complying with the patent regulations. The USPTO is submitting this collection in support of a notice of proposed rulemaking, "Changes to Practice for the Examination of Claims in Patent Applications" (RIN 0651-AB94) and a notice of proposed rulemaking, "Changes to Practice for Continuing Applications, Requests for Continued Examination Practice, and Applications Containing Patentably Indistinct Claims (RIN 0651-0093). The affected public includes individuals or households; businesses or other for-profit; not-for-profit institutions; farms; state, local or tribal government; and the Federal Government.

| 11. Affected public (*Mark primary with "P" and all others that apply with "x"*)<br>a. _P_ Individuals or households   d. _X_ Farms<br>b. _X_ Business or other for-profit   e. _X_ Federal Government<br>c. _X_ Not-for-profit institutions   f. _X_ State, Local or Tribal Government | 12. Obligation to respond (*check one*)<br>a. [ ] Voluntary<br>b. [X] Required to obtain or retain benefits<br>c. [ ] Mandatory |
|---|---|

| 13. Annual record keeping and reporting burden | | 14. Annual reporting and record keeping cost burden (*in thousands of dollars*) | |
|---|---|---|---|
| a. Number of respondents | 2,317,539 | a. Total annualized capital/startup costs | $2,639 |
| b. Total annual responses | 2,317,539 | b. Total annual costs (O&M) | $120,392 |
| 1. Percentage of these responses collected electronically | 0.7% | c. Total annualized cost requested | $123,031 |
| c. Total annual hours requested | 2,807,641 | d. Current OMB inventory | $118,938 |
| d. Current OMB inventory | 2,732,441 | e. Difference | $4,093 |
| e. Difference | 75,200 | f. Explanation of difference | |
| f. Explanation of difference | | 1. Program change | $4,093 |
| 1. Program change | 75,200 | 2. Adjustment | |
| 2. Adjustment | | | |

| 15. Purpose of information collection (*Mark primary with "P" and all others that apply with "X"*)<br>a. _P_ Application for benefits      e.___ Program planning or management<br>b. ___ Program evaluation            f.___ Research<br>c. ___ General purpose statistics    g. _X_ Regulatory or compliance<br>d. ___ Audit | 16. Frequency of record keeping or reporting (*check all that apply*)<br>a. [ ] Record keeping    b. [ ] Third party disclosure<br>c. [X] Reporting<br> 1. [X] On occasion  2. [ ] Weekly        3. [ ] Monthly<br> 4. [ ] Quarterly    5. [ ] Semi-annually  6. [ ] Annually<br> 7. [ ] Biennially   8. [ ] Other (describe) _____ |
|---|---|

| 17. Statistical methods<br>Does this information collection employ statistical methods<br>[ ] Yes    [ X ] No | 18. Agency Contact (person who can best answer questions regarding the content of this submission)<br><br>Name:    Robert J. Spar<br>Phone:    571-272-7700 |
|---|---|

A007330

## 19. Certification for Paperwork Reduction Act Submissions

On behalf of this Federal Agency, I certify that the collection of information encompassed by this request complies with 5 CFR 1320.9

**NOTE:** The text of 5 CFR 1320.9, and the related provisions of 5 CFR 1320.8(b)(3), appear at the end of the instructions. *The certification is to be made with reference to those regulatory provisions as set forth in the instructions.*

The following is a summary of the topics, regarding the proposed collection of information, that the certification covers:

(a) It is necessary for the proper performance of agency functions;

(b) It avoids unnecessary duplication;

(c) It reduces burden on small entities;

(d) It uses plain, coherent, and unambiguous terminology that is understandable to respondents;

(e) Its implementation will be consistent and compatible with current reporting and record keeping practices;

(f) It indicates the retention period for record keeping requirements;

(g) It informs respondents of the information called for under 5 CFR 1320.8(b)(3):

    (i)   Why the information is being collected;

    (ii)  Use of information;

    (iii) Burden estimate;

    (iv)  Nature of response (voluntary, required for a benefit, mandatory);

    (v)   Nature and extent of confidentiality; and

    (vi)  Need to display currently valid OMB control number;

(h) It was developed by an office that has planned and allocated resources for the efficient and effective management and use of the information to be collected (see note in Item 19 of instructions);

(i) It uses effective and efficient statistical survey methodology; and

(j) It makes appropriate use of information technology.

If you are unable to certify compliance with any of the provisions, identify the item below and explain the reason in Item 18 of the Supporting Statement.

| Agency Certification (signature of the Director of a Program)<br>Signature<br><br><br>Robert J. Spar, Director<br>Office of Patent Legal Administration, Office of the Commissioner for Patents | Date<br><br>12/21/05 |
|---|---|
| Signature of Senior Official or designee<br><br><br>Holly Higgins, Executive<br>Architecture, Engineering and Technical Support Services | Date<br><br>21 Dec 2005 |

**SF-83 SUPPORTING STATEMENT**
**PAPERWORK REDUCTION ACT – OMB CONTROL NUMBER 0651-0031**
**Proposed addition to**
**PATENT PROCESSING (Updating)**

## A.    JUSTIFICATION

### 1.    Necessity of Information Collection

The United States Patent and Trademark Office (USPTO) is required by 35 U.S.C. § 101 et seq. to examine an application for patent and, when appropriate, issue a patent.    Also, the USPTO is required to publish patent applications, with certain exceptions, promptly after the expiration of a period of eighteen months from the earliest filing date for which a benefit is sought under Title 35, United States Code ("eighteen-month publication").    Certain situations may arise that require additional information to be supplied in order for the USPTO to further process the patent or application.    The USPTO administers the statutes through various sections of the rules of practice in 37 CFR Part 1.

The USPTO will be forwarding a notice of proposed rulemaking entitled "Changes to Practice for the Examination of Claims in Patent Applications" (RIN 0651-AB94) (Attachment A), and a notice of proposed rulemaking entitled "Changes to Practice for Continuing Applications, Requests for Continued Examination Practice, and Applications Containing Patentably Indistinct Claims" (RIN 0651-AB93) (Attachment B) to the Federal Register.    In support of these proposed rulemakings, the USPTO is submitting this information collection to introduce the following new information requirements:

Under the patent statute (35 U.S.C. § 112, ¶ 1), a nonprovisional patent application must include a specification containing a written description of the invention and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and setting forth the best mode contemplated by the inventor of carrying out the invention.    The specification must conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as the invention (35 U.S.C. § 112, ¶ 2).    A claim may be written in independent (does not refer to any other claim) or dependent form (refers back to and further limits a previous claim) (35 U.S.C. § 112, ¶ 3).    The patent statute (35 U.S.C. § 131) further provides that the Director of the USPTO shall cause an examination to be made of the nonprovisional application and the invention as defined in the claims; and if, on such examination, it appears that the application is entitled to a patent under the law, the Director shall issue a patent.    Part of the examination process involves determining whether the invention, as defined by the claims, is novel and non-obvious over the prior art, as is required by the patent statute

for an applicant to be entitled to a patent (35 U.S.C. §§ 102 and 103). Copies of the relevant provisions of the patent code are included as Attachment C.

The patent statute and rules of practice do not limit the number of claims (independent or dependent) that may be presented in an application. A small but significant minority (about two percent) of patent applications contain an excessive number of claims. These applications absorb an inordinate amount of patent examining resources, as they are extremely difficult to properly process and examine. The extra time and effort spent on these applications has a negative ripple effect, resulting in delays in the processing and examination of all applications, which, in turn, results in an increase in pendency for all applications.

With respect to examination of claims in patent applications, the USPTO is proposing to require that applications containing ten or more independent claims, and applications in which the number of independent claims plus the number of dependent claims designated for initial examination is greater than ten, include an examination support document covering the independent claims and the designated dependent claims.

Under the statute (35 U.S.C. §§ 111(a), 120, 365(c)), an applicant may file a nonprovisional application (filed under 35 U.S.C. § 111(a)) and claim the benefit of a prior-filed nonprovisional application (under 35 U.S.C. § 120) or claim the benefit of a prior-filed international application (under 35 U.S.C. § 365(c)). These applications are referred to as "continuing applications." A continuing application may be a continuation application, a divisional application, or a continuation-in-part application. Under the statute (35 U.S.C. § 132(b)), an applicant may also request continued examination of a nonprovisional application.

Continuing application practice and request for continued examination practice permit applicants to obtain further examination and advance an application to final agency action. Unfortunately, a small minority of applicants has misused these practices by filing multiple continuing applications and requests for continued examination in order to delay the conclusion of examination. This usage of continuing applications and requests for continued examination skirts the applicant's duty to make a bona fide attempt to advance the application to final agency action and has a negative impact on the ability of the USPTO to examine new and existing applications. It also negatively impacts the public by permitting applicants to keep applications in pending status while awaiting developments in similar or parallel technology and then later amending the pending application to cover the developments to the detriment of the public.

With respect to continuing application practice and request for continued examination practice, the USPTO is proposing to revise the rules of practice to require that second or subsequent continuation or continuation-in-part applications and second or subsequent requests for continued examination of an application include a showing as to why the amendment, argument, or evidence presented were not previously submitted. The USPTO is also proposing to revise the rules of practice to provide that where applications have the same effective filing date, overlapping disclosure, a

A007333

common inventor, and common assignee, the applicant must provide an explanation of either how the claims are patentably distinct or why there are patentably indistinct claims filed in multiple applications.

The changes being proposed by the USPTO will allow the USPTO to apply the patent examining resources currently absorbed by applications containing an excessive number of claims and multiple continuing applications and requests for continued examination that simply recycle earlier applications to the examination of new applications, and thus allow the USPTO to reduce the backlog of unexamined applications. The changes being proposed will mean faster, more efficient examination for the typical applicant without any additional work on the applicant's part, but a small minority of applicants who consume a disproportionate share of USPTO resources will be required to share the burden they place on the agency.

Table 1 identifies the proposed statutory and regulatory provisions that require the USPTO to collect this information:

**Table 1: Information Requirements for Changes to Practice for the Examination of Claims in Patent Applications, and for Changes to Practice for Continuing Applications, Requests for Continued Examination Practice, and Applications Containing Patentably Indistinct Claims**

| Requirement | Statute | Rule |
|---|---|---|
| Examination support document filed in certain nonprovisional applications covering the independent claims and the designated dependent claims | 35 U.S.C. §§ 2(b) and 131 | 37 CFR 1.75(b) (proposed) |
| Petition for a second continuation or continuation-in-part application showing why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the prior-filed application | 35 U.S.C. § 2(b) | 37 CFR 1.78(d)(1)(iv) (proposed) |
| Petition for a second request for continued examination showing why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the application | 35 U.S.C. §§ 2(b) and 132(b) | 37 CFR 1.114(f) (proposed) |
| Explanations filed in certain nonprovisional applications of either how the claims are patentably distinct or why there are patentably indistinct claims filed in multiple applications | 35 U.S.C. § 2(b) | 37 CFR 1.78(f)(2) (proposed) |

## 2.    Needs and Uses

During the processing for an application for a patent, the applicant or applicant's representative may be required or desire to submit additional information to the USPTO concerning the examination of a specific application. The specific information required or which may be submitted includes: information disclosure statement and citation, examination support documents, requests for extension of time, the establishment of small entity status, abandonment and revival of abandoned applications, disclaimers, appeals, petitions, expedited examination of design applications, transmittal forms, requests to inspect, copy and access patent applications, publication requests, and

A007334

certificates of mailing, transmittals, and submission of priority documents and amendments.

The proposed examination support document covering the independent claims and designated dependent claims will assist the applicant in preparing a schedule of claims that are patentable (i.e., novel and non-obvious) over the prior art, and will assist the USPTO in the examination process in determining whether the claims are patentable over the prior art.

The proposed petition for a continuation or continuation-in-part application showing why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the prior-filed application, and the petition for a request for continued examination showing why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the application will assist the USPTO in determining whether the continuation or continuation-in-part application or request for continued examination is a bona fide attempt to advance the application to final agency action or is simply being filed to delay examination.   The proposed explanation in nonprovisional applications, when multiple applications having a common inventor and a common assignee have been filed on the same day, of either how the claims are patentably distinct or why there are patentably indistinct claims filed in multiple applications, will assist the USPTO in determining whether double patenting exists and whether the USPTO should merge the applications.

The Information Quality Guidelines from Section 515 of Public Law 106-554, Treasury and General Government Appropriations Act for Fiscal Year 2001, apply to this information collection and comply with all applicable information quality guidelines, i.e., OMB and specific operating unit guidelines.

This proposed collection of information will result in information that will be collected, maintained, and used in a way consistent with all applicable OMB and USPTO Information Quality Guidelines.   (See Attachment D, the USPTO Information Quality Guidelines.)

Table 2 outlines how this information is used by the public and by the USPTO:

**Table 2:   Needs and Uses for Changes to Practice for the Examination of Claims in Patent Applications, and for Changes to Practice for Continuing Applications, Requests for Continued Examination Practice, and Applications Containing Patentably Indistinct Claims**

| Form and Function | Form # | Needs and Uses |
|---|---|---|
| Examination support document filed in certain nonprovisional applications covering the independent claims and the designated dependent claims (proposed 37 CFR 1.75(b)) | None | • Used by the applicant to prepare a schedule of claims that are patentable (i.e., novel and non-obvious) over the prior art, and to explain how the claims are patentable over the prior art. <br> • Used by the USPTO in determining whether the claims are patentable over the prior art. |

A007335

| | | |
|---|---|---|
| Petition for a second continuation or continuation-in-part application showing why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the prior-filed application (proposed 37 CFR 1.78(d)(1)(iv)) | None | • Used by the applicant to explain how the continuation or continuation-in-part application is a bona fide attempt to advance the application to final agency action.<br>• Used by the USPTO to determine whether the continuation or continuation-in-part application is a bona fide attempt to advance the application to final agency action or is simply being filed to delay examination. |
| Petition for a second request for continued examination showing why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the application (proposed 37 CFR 1.114(f)) | None | • Used by the applicant to explain how the request for continued examination is a bona fide attempt to advance the application to final agency action.<br>• Used by the USPTO to determine whether the request for continued examination is a bona fide attempt to advance the application to final agency action or is simply being filed to delay examination. |
| Explanations filed in certain nonprovisional applications of either how the claims are patentably distinct or why there are patentably indistinct claims filed in multiple applications (proposed 37 CFR 1.78(f)(2)) | None | • Used by the applicant to explain, when multiple applications have been filed on the same day, whether the applications contain only patentably distinct claims or why there are patentably indistinct claims filed in multiple applications.<br>• Used by the USPTO to determine whether double patenting exists and whether the applications should be merged. |

## 3.    Use of Information Technology

Generally, the USPTO does not use automated, electronic, mechanical, or other technologies to collect information for this collection. The USPTO has recently changed 37 CFR 1.4 to allow applicants to use an electronic signature for patent application and reexamination proceeding documents created with a word processor as well as the fillable forms that can be accessed through the USPTO website.  The electronic signature may be any combination of numbers and/or letters, and may contain spaces and the appropriate punctuation marks.  The electronic signature must be placed between two forward slashes and cannot contain any additional forward slashes.  In order to process electronically signed documents quickly, the USPTO will only consider the data contained between the two forward slashes as an electronic signature.  This signature method is also consistent with international standards for electronic signatures.

The electronic signature should be the signer's name and must be "personally inserted" (or typed directly on a keyboard) by the signer.  If the signer's name is not part of the electronic signature, the signer must print or type his or her name conspicuously adjacent to or immediately below the electronic signature.  Practitioners signing pursuant to 37 CFR 1.33(b)(1) or 1.33(b)(2) must either include the registration number in the electronic signature or place their registration number adjacent to their electronic signature.  The number character (#) may be used in the electronic signature if it is part of the registration number; however, other non-text/number characters cannot be part of the signature.

Official USPTO correspondence cannot be filed with the USPTO through e-mail, although the USPTO is considering permitting electronically created documents to be

A007336

transmitted to the USPTO as an e-mail attachment using the proposed electronic signature requirements. The USPTO believes that this proposed change will facilitate the movement of documents between practitioners, applicants, and the USPTO.

The USPTO currently accepts the electronic filing of some patent applications and certain related documents through the Electronic Filing System (EFS). EFS supports the authoring, preparation, secure submission, receipt, and receipt validation of patent applications electronically via the Internet and direct transmission. Documents submitted through EFS can also be signed using electronic signatures. New features and capabilities are being added to EFS as it undergoes further development, and customers will eventually be able to file all applications and related documents electronically through EFS. As the USPTO expands the use of electronic filing, it may become feasible in some cases to collect more information in this collection electronically. If electronic collection does become feasible, the USPTO will submit the associated electronic forms to OMB for review as necessary.

The USPTO provides secure access to information about patent applications through the Patent Application Information Retrieval (PAIR) system, which is available at the USPTO web site. PAIR allows authorized individuals secure and immediate access to up-to-date patent application status and history information over the Internet. PAIR uses digital certificates issued from USPTO's Public Key Infrastructure (PKI) to provide strong authentication to permit only authorized individuals to access patent application information and to maintain the confidentiality and integrity of the information as it is transmitted over the Internet. Information for granted patents and published applications is available to the general public.

### 4.    Efforts to Identify Duplication

This information is collected during the pendency of a patent application. It does not duplicate information or collection of data found elsewhere.

### 5.    Minimizing the Burden to Small Entities

No significant impact is placed on small entities. Small entities simply need to identify themselves as such to obtain the benefits of small entity status.

Pursuant to 35 U.S.C. § 41(h)(1), the USPTO provides a fifty percent (50%) reduction in the fees charged under 35 U.S.C. § 41(a) and (b) for small entities. The USPTO's regulations concerning the payment of reduced patent fees by small entities are at 37 CFR 1.27 and 1.28, and reduced patent fees for small entity applicants are shown in 37 CFR 1.16, 1.17, 1.18 and 1.20.

### 6.    Consequences of Less Frequent Collection

This information is collected only as required to process a patent application or enforceable patent, and is not collected elsewhere. Therefore, this collection of

6

information could not be conducted less frequently.     If this information were not collected, the USPTO would not be able to comply with the patent statute (35 U.S.C. § 131).

## 7.    Special Circumstances in the Conduct of Information Collection

There are no special circumstances associated with this collection of information.

## 8.    Consultation Outside the Agency

The USPTO will be forwarding a notice of proposed rulemaking entitled "Changes to Practice for the Examination of Claims in Patent Applications" (RIN 0651-AB94), and a notice of proposed rulemaking entitled "Changes to Practice for Continuing Applications, Requests for Continued Examination Practice, and Applications Containing Patentably Indistinct Claims" (RIN 0651-AB93) to the *Federal Register* for publication.

In addition, the USPTO consults with the Public Advisory Committees, which were created by statute in the American Inventors Protection Act of 1999 to advise the Under Secretary of Commerce for Intellectual Property and Director of the USPTO on the management of the patent and the trademark operations. The Advisory Committees consist of citizens of the United States chosen to represent the interests of the diverse users of the USPTO. The Advisory Committees review the policies, goals, performance, budget, and user fees of the patent and trademark operations, respectively, and advise the Director on these matters.

The USPTO also has long-standing relationships with patent bar associations, inventor groups, and users of our public facilities.   Their views are expressed in regularly scheduled meetings and considered in developing proposals for information collection requirements.    Also, the USPTO meets regularly with groups from whom patent application data is collected, such as the American Intellectual Property Law Association (AIPLA).

## 9.    Payment or Gifts to Respondents

This information collection does not involve a payment or gift to any respondent. Response to this information collection is necessary to obtain a patent.

## 10.    Assurance of Confidentiality

Confidentiality of patent applications is governed by statute (35 U.S.C. § 122) and regulation (37 CFR 1.14).   Upon publication of an application or issuance of an application as a patent, the entire file contents of the application are available to the public (subject to the provisions for providing only a redacted copy of the filed contents). The disclosure of the invention in the application is the quid pro quo for the property right conferred by the patent grant, and the very means by which the patent statute achieves its constitutional objective of "promot[ing] the progress of science and useful

7

arts." The prosecution history contained in the application file is critical to determining the scope of the property right conferred by a patent grant.

To further define the boundaries of the confidentiality of patent applications in light of the eighteen-month publication of patent applications introduced under the American Inventors Protection Act of 1999, the USPTO amended 37 CFR 1.14 to maintain the confidentiality only of applications that have not been published as a U.S. patent application publication. 37 CFR 1.14 now provides that the public can obtain status information about the application, such as whether the application is pending, abandoned, or patented, whether the application has been published under 35 U.S.C. § 122(b), and the application "numerical identifier." This information can be supplied to the public under certain conditions. The public can also receive copies of an application-as-filed and the file wrapper, as long as it meets certain criteria.

The confidentiality, security, integrity, authenticity, and non-repudiation of patent applications submitted electronically through EFS is maintained using PKI technology and digital certificates. The ePAVE submission software encrypts the electronic patent application package. The authorized filer electronically signs the application and then it is "digitally" signed using the digital certificates. Because ePAVE is also cryptographic software, it is subject to export and import restrictions of the United States. The license agreement informs those installing and using this software that they cannot export or import this software, nor can they be located in, under the control of, or a national or resident of countries that are under export or import restrictions.

## 11.    Justification for Sensitive Questions

None of the required information is considered to be of a sensitive nature.

## 12.    Estimate of Hour and Cost Burden to Respondents

Table 3 calculates the anticipated burden hours and costs of this information collection to the public, based on the following factors:

- **Respondent Calculation Factors**
  The USPTO estimates that it will receive the following number of responses to this information annually:
  - 2,900 examination support documents (filed in nonprovisional applications) covering the independent claims and the designated dependent claims (proposed 37 CFR 1.75(b))
  - 5,700 petitions (filed in continuation or continuation-in-part applications) containing a showing as to why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the prior-filed application (proposed 37 CFR 1.78(d)(1)(iv))
  - 4,500 petitions (filed with requests for continued examination) with a showing as to why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the application (proposed 37 CFR 1.114(f))

8

- 20,000 explanations (filed in nonprovisional applications) of either how the claims are patentably distinct or why there are patentably indistinct claims filed in multiple applications (proposed 37 CFR 1.78(f)(2))

- **Burden Hour Calculation Factors**
  The USPTO estimates that it will take:  12 hours to complete the examination support document (filed in nonprovisional applications) covering the independent claims and the designated dependent claims (proposed 37 CFR 1.75(b)); 2 hours to complete the petition (filed in a continuation or continuation-in-part application) containing a showing as to why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the prior-filed application (proposed 37 CFR 1.78(d)(1)(iv)); 2 hours to complete the petition (filed with a request for continued examination) with a showing as to why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the application (proposed 37 CFR 1.114(f)); and 1 hour to complete the explanation (filed in a nonprovisional application) of either how the claims are patentably distinct or why there are patentably indistinct claims filed in multiple applications (proposed 37 CFR 1.78(f)(2)).  This includes time to gather the necessary information and submit the information in this collection. No forms are being added to this information collection for these requirements.

- **Cost Burden Calculation Factors**
  The USPTO believes that attorneys and paralegals will together supply the information requested for the examination support document (filed in nonprovisional applications) covering the independent claims and the designated dependent claims.  The USPTO estimates that one-third of the time for supplying this information (4 hours) will be by an attorney and that the remaining two-thirds of the time for supplying this information (8 hours) will be by a paraprofessional.  The professional rate of $286/hour is the median rate for associate attorneys in private firms as published in a report by the 2003 Committee on Economics of Legal Practice of the American Intellectual Property Law Association (AIPLA).  The paraprofessional rate is $81/hour.  These are fully loaded hourly rates.  Using one-third of the attorney-professional rate of $286/hour ($96/hour) and two-thirds of the paraprofessional rate of $81/hour ($54/hour), the estimated rate for respondents for this information is approximately $150/hour.

  The USPTO believes that attorneys will supply the information requested for:  the petition (filed in a continuation or continuation-in-part application) containing a showing as to why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the prior-filed application (proposed 37 CFR 1.78(d)(1)(iv)); the petition (filed with a request for continued examination) with a showing as to why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the application (proposed 37 CFR 1.114(f)); and the explanation (filed in a nonprovisional application) of either how the claims are patentably distinct or why there are patentably indistinct claims filed in multiple applications (proposed 37 CFR 1.78(f)(2)).  Thus, the rate for respondents to this information is the professional rate of $286/hour.

**Table 3:  Burden Hour/Burden Cost to Respondents for Changes to Practice for the Examination of Claims in Patent Applications, and for Changes to Practice for Continuing Applications, Requests for Continued Examination Practice, and Applications Containing Patentably Indistinct Claims**

A007340

| Item | Hours (a) | Responses (yr) (b) | Burden (hrs/yr) (a) x (b) (c) | Rate ($/hr) (d) | Total Cost ($/hr) (c) x (d) (e) |
|---|---|---|---|---|---|
| Examination support document filed in certain nonprovisional applications covering the independent claims and the designated dependent claims (proposed 37 CFR 1.75(b)) | 12.0 | 2,900 | 34,800 | $150.00 | $5,220,000.00 |
| Petition for a second continuation or continuation-in-part application showing why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the prior-filed application (proposed 37 CFR 1.78(d)(1)(iv)) | 2.0 | 5,700 | 11,400 | $286.00 | $3,260,400.00 |
| Petition for a second request for continued examination showing why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the application (proposed 37 CFR 1.114(f)) | 2.0 | 4,500 | 9,000 | $286.00 | $2,574,000.00 |
| Explanation filed in certain nonprovisional applications of either how the claims are patentably distinct or why there are patentably indistinct claims filed in multiple applications (proposed 37 CFR 1.78(f)(2)) | 1.0 | 20,000 | 20,000 | $286.00 | $5,720,000.00 |
| Total | - - - - - | 33,100 | 75,200 | - - - - - | $16,774,400.00 |

The currently approved information collection carries a total of 2,284,439 responses, 2,732,441 burden hours, and $161,049,848 in burden hour costs to the respondent. The changes due to the two proposed rulemakings regarding claims and continuing applications would increase this burden by 33,100 responses, 75,200 burden hours, and $16,774,400 in respondent burden hour costs. The proposed addition to this information collection, plus the currently approved totals, will result in the total estimates shown below:

Current inventory responses = 2,284,439
Current inventory burden hours = 2,732,441
Current inventory respondent burden hour costs = $161,049,848

Response impact due to proposed rulemakings = increase of 33,100
Burden hour impact due to proposed rulemakings = increase of 75,200
Burden hour costs impact due to proposed rulemakings = increase of $16,774,400

Total estimated responses after proposed rulemakings = 2,317,539
Total estimated burden hours after proposed rulemakings = 2,807,641
Total estimated burden hour costs after proposed rulemakings = $177,824,248

## 13.    Total Annualized Cost Burden

There are no additional capital start-up, maintenance, or record keeping costs associated with this proposed rule submission. There are, however, non-hour costs due to filing fees and postage costs that need to be added into the total annual non-hour cost burden for this collection.

A007341

There are filing fees associated with the petitions, which are part of the non-hour cost burden for this collection. There are two new petitions added into the collection.

The petition for a second continuation or continuation-in-part application showing why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the prior-filed application includes a petition fee of $400 (37 CFR 1.17(f)).

The petition for a second request for continued examination showing why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the application also includes a petition fee of $400 (37 CFR 1.17(f)).

There are no filing fees associated with the examination support document (filed in a nonprovisional application) covering the independent claims and the designated dependent claims (proposed 37 CFR 1.75(b)), or the explanation (filed in a nonprovisional application) of either how the claims are patentably distinct or why there are patentably indistinct claims filed in multiple applications (proposed 37 CFR 1.78(f)(2)).

The addition of the two petitions adds $4,080,000 in filing fees as a result of the proposed rulemakings associated with this information collection.

The minimum total annual filing fee/non-hour cost burden to respondents is outlined in Table 4 below:

**Table 4: Filing Fees – Non-hour cost burden for Changes to Practice for the Examination of Claims in Patent Applications, and for Changes to Practice for Continuing Applications, Requests for Continued Examination Practice, and Applications Containing Patentably Indistinct Claims**

| Item | Responses (a) | Filing Fees (b) | Total Cost (a) x (b) (c) |
|---|---|---|---|
| Examination support document filed in certain nonprovisional applications covering the independent claims and the designated dependent claims (proposed 37 CFR 1.75(b)) | 2,900 | $0.00 | $0.00 |
| Petition for a second continuation or continuation-in-part application showing why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the prior-filed application (proposed 37 CFR 1.178(d)(1)(iv)) | 5,700 | $400.00 | $2,280,000.00 |
| Petition for a second request for continued examination showing why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the application (proposed 37 CFR 1.114(f) | 4,500 | $400.00 | $1,800,000.00 |
| Explanations filed in certain nonprovisional applications of either how the claims are patentably distinct or why there are patentably indistinct claims filed in multiple applications (proposed 37 CFR 1.178(f)(2)) | 20,000 | $0.00 | $0.00 |
| Totals | 33,100 | - - - - - - - | $4,080,000.00 |

A007342

The public may submit the information associated with the notice of proposed rulemaking entitled "Changes to Practice for the Examination of Claims in Patent Applications" (RIN 0651-AB94), and the notice of proposed rulemaking entitled "Changes to Practice for Continuing Applications, Requests for Continued Examination Practice, and Applications Containing Patentably Indistinct Claims" (RIN 0651-AB93), by mail through the United States Postal Service. All correspondence may include a certificate of mailing for each piece of correspondence enclosed, stating the date of deposit or transmission to the USPTO in order to receive credit for timely filing. The USPTO estimates that the average first-class postage cost for a mailed submission may amount to 39 cents each (based on the approved change of postage rates going into effect January 8, 2006). Postage for the certificates of mailing themselves are not calculated into this estimate as they are included with the individual pieces of correspondence that are being deposited with the United States Postal Service. The USPTO estimates that it will receive an additional 33,100 responses subject to mailing costs per year as a result of the proposed rulemaking, for a cost of $12,909 annually in postage fees.

The annual postage cost for the items in this collection is outlined in Table 5 below:

Table 5: Postage Fees – Non-hour Cost Burden for Changes to Practice for the Examination of Claims in Patent Applications, and for Changes to Practice for Continuing Applications, Requests for Continued Examination Practice, and Applications Containing Patentably Indistinct Claims

| Item | Responses (a) | Postage Fee ($) (b) | Total Non-Hour Cost Burden (a) x (b) (c) |
|---|---|---|---|
| Examination support document covering the independent claims and the designated dependent claims (proposed 37 CFR 1.75(b)) | 2,900 | $0.39 | $1,131.00 |
| Petition for a second continuation or continuation-in-part application showing why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the prior-filed application (proposed 37 CFR 1.78(d)(1)(iv)) | 5,700 | $0.39 | $2,223.00 |
| Petition for a second request for continued examination showing why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the application (proposed 37 CFR 1.114(f)) | 4,500 | $0.39 | $1,755.00 |
| Explanation of either how the claims are patentably distinct or why there are patentably indistinct claims filed in multiple applications (proposed 37 CFR 1.78(f)(2)) | 20,000 | $0.39 | $7,800.00 |
| Total | 33,100 | | $12,909.00 |

The currently approved information collection carries a total annualized (non-hour) cost burden of $118,938,2488, with $115,441,725 in filing fees and $857,313 in postage costs. The changes due to the two proposed rulemakings regarding claims and continuing applications would add $4,080,000 in filing fees and $12,909 in postage costs to this collection.

A007343

The proposed changes to 0651-0031 due to the proposed rulemakings would result in the total estimates for annualized cost burden for this information collection shown below:

Currently approved capital start-up costs = $2,638,760
Currently approved record keeping costs = $450
Currently approved filing fees = $115,441,725
Currently approved postage costs = $857,313
Total currently approved non-hour cost burden = $118,938,248

Change in capital start-up costs due to proposed rulemakings = no change
Change in record keeping costs due to proposed rulemakings = no change
Change in filing fees due to proposed rulemakings = increase of $4,080,000
Change in postage costs due to proposed rulemakings = increase of $12,909
Total change in non-hour cost burden due to proposed rulemakings = increase of $4,092,909

Total estimated capital start-up costs after proposed rulemakings = $2,638,760
Total estimated record keeping costs after proposed rulemakings = $450
Total estimated filing fees after proposed rulemakings = $119,521,725
Total estimated postage costs after proposed rulemakings = $870,222
Total estimated non-hour cost burden after proposed rulemakings = $123,031,157

## 14.    Annual Cost to the Federal Government

The USPTO estimates that it takes a GS-5, step 1, six minutes (0.10 hours) to process the three petitions and the explanation in this collection. The hourly rate for a GS-5, step 1, is currently $13.71 according to the U.S. Office of Personnel Management's (OPM's) wage chart, including locality pay for the Washington, DC area. When 30% is added to account for a fully loaded hourly rate (benefits and overhead), the rate per hour for a GS-5, step 1, is $17.82 ($13.71 + $4.11).

Table 6 calculates the processing hours and costs of this information collection to the Federal Government for the new requirements as a result of the notice of proposed rulemaking:

**Table 6:  Burden Hour/Burden Cost to the Federal Government for Changes to Practice for the Examination of Claims in Patent Applications, and for Changes to Practice for Continuing Applications, Requests for Continued Examination Practice, and Applications Containing Patentably Indistinct Claims**

| Item | Hours (a) | Responses (yr) (b) | Burden (hrs/yr) (a) x (b) (c) | Rate ($/hr) (d) | Total Cost ($/hr) (c) x (d) (e) |
|---|---|---|---|---|---|
| Examination support document filed in certain nonprovisional applications covering the independent claims and the designated dependent claims (proposed 37 CFR 1.75(b)) | 0.10 | 2,900 | 290 | $17.82 | $5,168.00 |

A007344

| | | | | | |
|---|---|---|---|---|---|
| Petition for a second continuation or continuation-in-part application showing why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the prior-filed application (proposed 37 CFR 1.78(d)(1)(v)) | 0.10 | 5,700 | 570 | $17.82 | $10,157.00 |
| Petition for a second request for continued examination showing why the amendment, argument, or evidence could not have been submitted prior to the close of prosecution in the application (proposed 37 CFR 1.114(f)) | 0.10 | 4,500 | 450 | $17.82 | $8,019.00 |
| Explanation of either how the claims are patentably distinct or why there are patentably indistinct claims filed in multiple applications (proposed 37 CFR 1.78(f)(2)) | 0.10 | 20,000 | 2,000 | $17.82 | $35,640.00 |
| Total | - - - - - | 33,100 | 3,310 | - - - - - | $58,984.00 |

With this submission, a total of 3,310 burden hours have been added to the currently approved burden hour total attributed to the Federal Government. This increases the burden hours for this information collection from 311,313 to 314,623 per year. The increase in burden hours is due to program changes as a result of the notices of proposed rulemaking, which are bringing the above-mentioned two new petitions and two new information requirements into the collection. The increased cost to the Federal Government includes a fully-loaded hourly rate for the Federal employee. Therefore, this information collection would have an increase in burden hour costs of $58,984, for a total burden hour cost to the Federal government of $3,981,379.

## 15.    Reason for Change in Burden

This information collection is approved by OMB with a total of 2,284,439 responses and 2,732,441 burden hours per year. Based on the changes included in the attached notice of proposed rulemaking entitled "Changes to Practice for the Examination of Claims in Patent Applications" (RIN 0651-AB94), and the attached notice of proposed rulemaking entitled "Changes to Practice for Continuing Applications, Requests for Continued Examination Practice, and Applications Containing Patentably Indistinct Claims" (RIN 0651-AB93), the USPTO estimates that the total annual responses will amount to 2,317,539 and the total annual burden hours will be 2,807,641, which is an increase of 33,100 responses and 75,200 burden hours from the currently approved burden for this collection. This burden increase is due to a program change resulting from the addition of three new petitions along with two new information requirements. There is no change for the remaining items in this collection. **Therefore, this information collection would have a total burden increase of 75,200 hours due to program changes.**

This collection was previously approved with an estimated respondent cost burden of $161,049,848. The changes in the notice of proposed rulemaking entitled "Changes to Practice for the Examination of Claims in Patent Applications" (RIN 0651-AB94), and the notice of proposed rulemaking entitled "Changes to Practice for Continuing Applications, Requests for Continued Examination Practice, and Applications

A007345

Containing Patentably Indistinct Claims" (RIN 0651-AB93), would increase the respondent cost burden by $16,774,400. This would bring the total estimated respondent burden hour costs, after approval of proposed rulemakings, to $177,824,248.

Annualized (non-hour) costs are being added to the burden in the form of additional filing fees and postage costs. Based on the changes included in the notices of proposed rulemaking associated with this information collection, $4,080,000 in filing fees and $12,909 in postage costs (for a total of $4,092,909) are proposed to be added to the currently approved annualized (non-hour) cost burden total. This is an increase from the already approved $118,938,248 to the present estimate of $123,031,157 in annualized (non-hour) cost burden. Program changes caused the increase.

In sum, if approved, this information collection will have a total annualized (non-hour) cost burden of $123,031,157, with $2,638,760 in the form of capital start-up costs, $450 in the form of record keeping requirements, $19,521,725 in the form of filing fees, and $870,222 in the form of postage costs. **Therefore, there is an increase of $4,092,909 in annualized (non-hour) cost burden associated with this collection due to program changes.**

## 16.    Project Schedule

There is no plan to publish this information for statistical use. No special publication of the items discussed in this justification statement is planned. However, plant and utility patents granted are published weekly in the *Official Gazette of the United States Patent and Trademark Office*.

## 17.    Display of Expiration Date of OMB Approval

The forms in this information collection will display the OMB Control Number and expiration date.

## 18.    Exception to the Certificate Statement

This collection of information does not include any exceptions to the certificate statement.

A007346

**B.    COLLECTIONS OF INFORMATION EMPLOYING STATISTICAL METHODS**

This collection of information does not employ statistical methods.

**LIST OF ATTACHMENTS**

A.    Notice of proposed rulemaking entitled "Changes to Practice for the Examination of Claims in Patent Applications" (RIN 0651-AB94), submitted for publication in the Federal Register

B.    Notice of proposed rulemaking, entitled "Changes to Practice for Continuing Applications, Requests for Continued Examination Practice, and Applications Containing Patentably Indistinct Claims" (RIN 0651-AB93), submitted for publication in the Federal Register

C.    Relevant Provisions of the Patent Code

D.    USPTO Information Quality Guidelines

A007347