# Exhibit 17

**PTO Commissioner Doll Says That Limiting Continuations Will Improve Patent Landscape, 72 Patent Trademark and Copyright Journal (BNA) 704 (Oct 27, 2006)**

**BNA's Patent, Trademark & Copyright Journal**®

Volume 72 Number 1791
Friday, October 27, 2006
ISSN 1522-4325

Page 704

## News

### Patents/Conferences

## PTO Commissioner Doll Says That Limiting Continuations Will Improve Patent Landscape

John J. Doll, commissioner for patents at the Patent and Trademark Office, Oct. 19 argued at the American Intellectual Property Law Association's annual meeting in Washington, D.C., that the agency's proposed rules for limiting the number of continuation applications will substantially improve patent examination and reduce the backlog of pending applications. When questioned on whether the agency had the statutory authority to make the rules changes, Doll said a lawsuit is highly likely and the agency has "better than a 50/50 chance of prevailing."

**Proposed Changes to 37 C.F.R. §1.78**

In January, the PTO proposed a set of rules changes aimed at improving the patent examination process by putting certain limits on the practice of filing continuation patent applications. 71 Fed. Reg. 48 (71 PTCJ 223, 1/6/06 ). The proposed revisions quickly touched off complaints from stakeholders at a PTO "town hall" forum, where Doll insisted that the agency would consider public comments before implementing the rules as final (71 PTCJ 715, 4/28/06 ).

Doll began his presentation by addressing one large source of concern for the patent bar--the proposed placement at 37 C.F.R. §1.78(d)(1) of four alternative conditions that must be met for a nonprovisional application to claim the priority benefit of one or more prior-filed copending nonprovisional applications or international applications. These four alternative conditions of proposed Section 1.78(d)(1) are as follows:

● Subsection (i) provides that a nonprovisional application or a continuation-in-part application (CIP) may only claim the benefit of a single prior-filed application if: (1) the benefit of such prior-filed application is not claimed in any other provisional application other than a divisional application; and (2) no request for continued examination (RCE) under Section 1.114 has been filed in the prior-filed application.

● Subsection (ii) provides that a nonprovisional application that is a divisional application may claim the benefit of only a single prior-filed application.

● Subsection (iii)--like condition (i) in the context of continuation or CIP of an original application--provides that a nonprovisional application that is either a continuation or CIP application may claim the benefit of only a single divisional application in which no RCE under §1.114 has been filed in such prior-filed divisional application.

● Subsection (iv) provides that an applicant may have only a single continued examination unless the applicant can show, to the PTO's satisfaction, why an argument, amendment, or evidence to be presented in a second or subsequent continued examination could not have been previously submitted.

P000568

### Doll Defends Proposed Changes to Continuation

"Many of you here today do not agree with this proposed change, and some of you have expressed your disagreement in statements we have posted on the PTO Web site," Doll acknowledged. "However, we have taken a long look at continuation practice, and we believe that this change will go a long way in improving patent quality and reducing the backlog of pending applications," he said.

"We can't hire our way out of the patent application backlog, and that is certain," Doll said. "We hired 1,200 new examiners this year, and will do the same next year. This hiring helps in the long term, but in the short term it requires taking resources offline because someone has to train these new hires." That diversion, he said, puts a strain on the overall system and challenges consistency of practice across the office.

The complaint from the bar, Doll said, is that "you're giving me only one continuing application." That's not the PTO's intent, he insisted. "We're saying that we want to give you as many as you need, but that after the first free continuation, the second and subsequent continuations will be granted with good and sufficient reasons," he stressed.

In 2006, applications grew over 9 percent, according to Doll. The PTO took on some 35,000 new cases, over 18,000 of which were requests for continuing applications, or RCEs, Doll reported. He said that this growth rate for RCEs is 33 percent above last year.

A major concern at the PTO is pendency rates, Doll continued. Right now, the agency has a million pending applications in backlog, over 700,000 of which are brand new and waiting examination, according to Doll. Pendency can span from 16 months to 31 months, depending on the technology, and it only increases with more continuing applications, he argued.

For support, Doll cited a sample test that the PTO recently conducted on first action allowances that were RCEs.

"Our numbers are showing that allowing two continuing applications would substantially diminish efficiency," Doll contended. He said that a small sample of cases recently studied showed that only seven percent of the cases the PTO gets are second continuations. When one extends that number to 450,000 new filings a year, "that's a lot of work," Doll argued.

The average examiner last year completed 78.3 applications, he said. To allow more and more continuing applications adds to the examiner workload and requires even further hiring of new examiners just to keep pace with the incoming work, he insisted.

The PTO invited the AIPLA board to take a look at the agency's models and the assumptions they are based upon. Those models will reveal that the PTO's proposed change to continuation practice will turn the backlog situation around, Doll said. One thing is certain, though, Doll predicted: "If we don't do something, there will be 1.3 million new cases in backlog by 2010."

"I don't know of any other court or judicial body in the United States where one can constantly resubmit more and more arguments and evidence until he obtains the desired result," Doll said referring to the practice of filing multiple continuation patent applications. "Try that with the IRS."

### Other Plans Explained

Another step toward improvement, according to Doll, is the "suite of patent products" proposed in the PTO's new draft strategic plan (72 PTCJ 484, 9/1/06 ). Providing a variety of patent application procedures and protections under the plan may help the PTO serve the

industry and take care of the needs of stakeholders, Doll said.

"We look at this as being different levels of examination and different levels of presumption of validity," he said, adding, " I'm not sure every patent needs the same level of examination."

A menu of choices for patent applicants "may well be the silver bullet" that takes care many of the PTO's problems, he said.

Moreover, Doll noted that the PTO has also altered the Manual of Patent Examining Procedure to allow an interview before first office action on the merits. "If you don't think the examiner understands the technology or the art is difficult, ask for that first interview," he urged.

### Rebuttal to Proposed Continuation Changes

In response to Doll's comments, Charles Van Horn of Finnegan Henderson Farabow, Garrett & Dunner, Washington, D.C., argued that the "significant" rules changes proposed at Section 1.178(d)(1) will create a complicated batch of problems for attorneys prosecuting patents.

Van Horn first pointed out that the four proposed alternative conditions are in addition to the four existing statutory requirements for getting the benefit of an earlier filed application.

Proposed condition (i) would not only limit the number of parent applications to one, but would also limit to one the number of continuations or CIPs that could be based on a single parent application, Van Horn said. So, no longer would you be able to file more than one continuing application based on a single application, he said. These provisions and restrictions apply to both continuing applications and to RCE practice, he added.

Proposed condition (ii) is a "significant departure from present practice" he said. In addition to changing the definition of "divisional" application, this provision is limited to an invention that was identified and not selected for prosecution in the parent application, Van Horn explained. Thus, one can claim the benefit of only a single prior-filed application, and the claims must be only to an invention identified and not selected for examination in the parent. So, if one has subject matter not claimed in the original application, and thus not part of a restriction requirement, one would have to file a continuation application and perhaps lose his only opportunity to file a continuation to claim that subject matter in the original application, he stated.

As to proposed condition (iii), Van Horn expressed concerns similar to those for proposed condition (i).

Proposed condition (iv)--the option of convincing the PTO that a continuation should be granted because evidence or argument could not have been presented earlier--is really no option at all, Van Horn suggested. "This is not where you want to find yourself," he said. If the office makes all of these changes to reduce the 22,000 to 30,000 cases that Doll cited earlier, it is not likely that many continuations will be granted under this proposed provision, he commented.

### PTO: 'Better Than 50-50' Chance in Court

At the close of Van Horn's comments, panel moderator Michael D. Stein of Woodcock, Washburn LLP, Seattle, asked about an issue raised by the AIPLA and others in the comments to these proposed rules: Does the PTO have the statutory authority to make these changes?

"We've looked into this extensively," Doll said. "There is no clear indication whether or not we

P000570

have statutory authority to do this or not. There is some question. We know we're going to get sued. We've weighed the options. We know we have better than a 50/50 chance of prevailing," Doll quipped, drawing laughter from the crowd.

Van Horn said that he sees those chances as "a whole lot less than 50-50."

*By Eric Yeager*

_____
Contact customer relations at: customercare@bna.com or 1-800-372-1033
ISSN 1522-4325

Copyright © 2006, The Bureau of National Affairs, Inc.
Copyright FAQs | Internet Privacy Policy | BNA Accessibility Statement | License

Reproduction or redistribution, in whole or in part, and in any form,
without express written permission, is prohibited except as permitted by the BNA Copyright Policy,
http://www.bna.com/corp/index.html#V



P000571