# Exhibit 27 – Part 1

**Examples of Applications Delayed by Examiner Failure to Follow PTO's Procedural Rules**

Dockets.Justia.com

PATENT                                                    ATTORNEY DOCKET NO. 114595-02

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Serial No.:        09/611,548              Confirmation No.:    6763
Applicant:         Douglas G. Lowenstein, et al.
Title:             FINANCING OF TENANT IMPROVEMENTS
Filed:             July 7, 2000
Art Unit:          3692
Examiner:          S. Chencinski

Atty. Docket:      114595-02
Customer No.       38492

## SUPPLEMENTARY AMENDMENT

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

   This is <u>not</u> a response to the Office's paper of November 1, 2006. Rather, it is an observation that the November 2006 paper is too incomplete to meet the requirements of 37 C.F.R. § 1.104, MPEP § 2106, and MPEP §§ 2171-72, and is therefore <u>not</u> an Office Action under § 1.104. The November 2006 paper raises no issue to which a response is required, beyond pointing out the paper's inadequacy. Rather, this paper is a supplementary amendment, in response to an invitation to submit such an amendment made by the examiners during the interview of December 13, 2006.

AMENDMENTS TO THE CLAIMS begin on page 2 of this paper.

QUESTIONS, DEFICIENCY NOTICES, AND REQUESTS FOR COMPLETION OF EXAMINATION
   begin on page 36 of this paper.

I certify that this correspondence, along with any documents referred to therein, is being filed in duplicate: (a) by electronic filing, and (b) deposited with the United States Postal Service on February 26, 2007 as First Class Mail in an envelope with sufficient postage addressed to Mail Stop Amendment, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

Application Serial No. 09/611,548
Attorney Docket No. 114595-02
Amendment Dated February 26, 2007

QUESTIONS, DEFICIENCY NOTICES, AND REQUESTS FOR COMPLETION OF EXAMINATION

I.    Amendment to Specification of October 3, 2005 ...................................................38

II.   The Amendments to the Claims Are Not New Matter, and Are Not Narrowing ..................38

III.  Legal Standard for Legal and Valid Action by Federal Agencies Such as the Patent
      Office – When These Standards are Violated, the Agency Has Not Acted At All..................39

IV.   Paragraph 3 of the November 2006 Paper Raises No Issue Under § 112 or Any Other
      Provision of the Patent Act or Rules – No Claim is Rejected, No Examination Has
      Occurred.............................................................................................................................41

V.    Paragraph 2 is Too Incomplete to Raise Any Issue Under § 101 or Any Other
      Provision of the Patent Act or Rules With Regard to the Method Claims ............................43

      A.    Procedural Requirements for Raising any § 101 Rejection ...................................43

      B.    Examiner Poinvil's Understanding of the Claims is Wrong..................................45

      C.    The November 2006 Paper is Dead Silent on Any Showing that the
            Method Claims are not "Processes"......................................................................46

      D.    The PTO Acted Unconstitutionally In Failing to Articulate or Apply Any
            Written Standard for its Determinations of "Abstract".........................................46

      E.    The November 2006 Paper Makes No Attempt to Show that Any Claim
            Recites Any "Law of Nature, Natural Phenomenon or Abstract Principle"..........49

            1.    The November 2006 Paper is Dead Silent on a Required "Finding" ........49

            2.    The November 2006 Paper is Dead Silent on *State Street* Showings........49

            3.    The November 2006 Paper is Dead Silent on Any Attempt to
                  Distinguish *Lundgren*...........................................................................50

      F.    The November 2006 Paper Makes Up of the Law Out of Thin Air, And
            Fails to Consider The "Applicable Statutes and Rules" as Required by 37
            C.F.R. § 1.104 ...................................................................................................51

      G.    The November 2006 Paper is Dead Silent On Claim Limitations that Are
            "Practical Applications" or "Useful, Concrete and Tangible Results" of
            Any Abstract Subject Matter ...............................................................................53

      H.    The November 2006 Paper Makes no *Bona Fide* Attempt to Show that
            Any Claim Recites "Non-Functional Descriptive Matter" ..................................55

VI.   Paragraph 2 is Too Incomplete to Raise Any Issue Under § 101 or Any Other
      Provision of the Patent Act or Rules With Regard to Apparatus Claims 28 or 53 .................55

      A.    The November 2006 Paper Makes No Attempt to Show that Claims 26
            and 53 Are Not Within the Statutory Categories ..................................................56

      B.    The November 2006 Paper Makes No Attempt to Show that Claims 26
            and 53 Recite Any "Law of Nature, Natural Phenomenon, or Abstract
            Principle" ...........................................................................................................56

      C.    Claims 28 and 56 Are Straightforward *Beauregard* Claims..................................58

VII.  Applicant Requests That the Office Carry Out its Duties...........................................58

Application Serial No. 09/611,548
Attorney Docket No. 114595-02
Amendment Dated February 26, 2007

VIII.    No Petition for Extension of Time is Required – Conditional Petition for
Extension of Time .................................................................................................................60

Exhibit A:  Definition of "Lease" from Black's Law Dictionary

Exhibit B:  Affidavit of Douglas G. Lowenstein

Exhibit C:   Financial Accounting Standards Board, "Accounting for Leases" (exceprts)

Exhibit D:  *Ex parte Lundgren*, Appeal No. 96-0519, 08/093,516 (BPAI Nov. 23, 1998)


By this paper, Applicant respectfully requests that the application be examined for compliance with the Patent Act (35 U.S.C. §§ 101, 102, 103, 112, *et seq.*) and Rules of Practice (37 C.F.R.), as interpreted by those with authority to do so.

Applicant's goal in this paper is simple: to get a good faith examination that is as complete as required by PTO rules and policies, and allowance if no rejection can be framed within the law.  It is believed that if examination is done carefully as required by law and as requested here, the examiner's work load will be reduced, because the application will be allowed.  Applicant notes that the **entire** rework burden on both the Examiner and Applicant has been **entirely** caused by **Examiner error, omissions of claim limitations and elements of *prima facie* patentability**.  So far, **every** contested issue has revolved around something the Examiner was required to do, and failed to do – over and over.  Had the work simply been done completely and carefully the first time, this case would have been allowed long ago.

To assist the Examiner in considering all of the issues that may result in allowance, and to break the pattern of error by omission, this paper breaks the proper analysis down into very simple steps.  Asking for things in this way is expensive for this Applicant, and regrettably may not be perceived as helpful by the Examiner.  However, this paper only asks for the careful step-by-step analysis that the Director's instructions and principles of administrative law have demanded all along.  It is believed that this paper asks for nothing more burdensome than was required in a first Office Action.  Applicant has requested full examination in every conceivable way, nothing has worked.  If there is a less-intrusive way for an applicant to request that an examiner carry out his legal and professional obligations, Applicant's attorney is eager to learn of it, and would accept whatever suggestion the Office has to offer.

In absence of any alternative, Applicant now presents a series of specific traverses to the omissions in the November 2006 paper.  This application will soon pass its seven year mark.  PTO Rules demand that the Office's **seventh** paper either be an allowance, or a **complete** first Office Action that reflects a *bona fide* effort to consider *every* claim limitation and every *prima facie* element of each law thought to apply, under a recognizable legal standard, and that "Answers **All** Material Traversed" as required by MPEP § 707.07(f).

Claims 1-178 are now pending, a total of 178 claims.  Claims 1, 2, 28, 31, 53, 56, 60, 74, 93, 102, 119, 130, 140, 148, 154, 158, 161, and 172 are independent.  All claims are indicated as reciting allowable subject matter.  As shown below, no claim is rejected on any ground.

## I.    Amendment to Specification of October 3, 2005

Applicant again requests confirmation that the amendment to the specification of October 3, 2005 is entered, that is, that the issued patent will be printed with this specification, and not some other.

The basis for the question is that the IFW indicates the status of the Amendment of October 3, 2005 as "Amendment not Entered."  The examiner's paper of April 20, 2006 states that "The Replacement Specification received October 3, 2005 has been entered into the record."  Merely "entered into the record" is irrelevant – "entered into the record" is a completely different thing than being "entered" as an amendment.

Applicant requests correction of the status in the IFW, confirmation that the amendment is <u>entered</u> to amend the application, and confirmation that the October 2005 specification will be the specification of the patent that will be published.

## II.    The Amendments to the Claims Are Not New Matter, and Are Not Narrowing

The amendments to claims 1, 2, 28, 31, 53, 56, 60, 74, 93, 102 and, 119 merely add an explicit definition of the verb "leasing" as that term is understood by those of ordinary skill, as the claim was required to be interpreted even without this definition.  MPEP § 2111.01.  The definition is taken from Black's Law Dictionary (attached as Exhibit A), as modified by the understanding of those of ordinary skill (Affidavit of Douglas Lowenstein ¶ 5, Exhibit B).  Stating the ordinary understanding of the verb "lease" is not new matter.  *In re Salem*, 553 F.2d

Application Serial No. 09/611,548
Attorney Docket No. 114595-02
Amendment Dated February 26, 2007

676, 683, 193 USPQ 513, 518-19 (CCPA 1977); *Ex parte Kharasch*, 67 USPQ 21, 22 (Pat. Off. Bd. App. 1943) (permitting addition of an explicit definition of the term "organic catalyst" so long as consistent with the ordinary understanding); MPEP § 2163.07(I) ("The mere inclusion of dictionary or art recognized definitions … would not be considered new matter.")

Merely setting forth the dictionary definition of the "broadest reasonable interpretation" introduces no new issues that would require new grounds under final rejection practice, and is an amendment that "should reasonably have been expected to be claims" in view of Examiner Poinvil's statement during the December 2006 interview that he did not credit dictionary definitions or definitions stating the ordinary understanding in the art, unless stated in the claims themselves.[1]  MPEP § 706.07.

Merely setting forth the standard definition of a term is not a "narrowing" amendment.

As noted below, no rejection is pending against any claim, and thus no amendment is made for a statutory reason.

New claims 133-178 are added in response to the examiners' suggestion to present claims to a separate phase of the invention, "receiving a payment" under a lease.  The addition of new claims is intended to make clear that there is no disclaimer of subject matter claimed under the pre-existing claims.

## III.    Legal Standard for Legal and Valid Action by Federal Agencies Such as the Patent Office – When These Standards are Violated, the Agency Has Not Acted At All

When an agency employee acts short of "requirements of the applicable departmental regulations," then the employee's action is "illegal and of no effect."  *Vitarelli v. Seaton*, 359 U.S. 535, 545 (1959); *IMS, P.C. v Alvarez*, 129 F.3d 618, 621 (D.C. Cir. 1997) (it is a "well-settled rule that an agency's failure to follow its own regulations is fatal to the deviant action").  Agency decisions are void – that is, they have no legal existence – when an agency fails to make the showings required in the agency's own procedural handbook.  *Service v. Dulles*, 354 U.S.

---

[1]  Examiner Poinvil's view is contrary to the Director's instructions in MPEP § 2111.01 (claim terms are to be given "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention").  Examiner Poinvil's examination practices are outside the scope of the delegation given by the Office.

Application Serial No. 09/611,548
Attorney Docket No. 114595-02
Amendment Dated February 26, 2007

363, 388-89 (1957). "*Ad hoc* departures from [an agency's] rules, even to achieve laudable aims, cannot be sanctioned." *Reuters v. F.C.C.*, 781 F.2d 946, 950-51 (D.C. Cir. 1986).

To raise any rejection, the Office must fulfill all requirements of 37 C.F.R. § 1.104:

**§ 1.104 Nature of examination.**

(a) *Examiner's action.*

(1) … The examination <u>shall be complete</u> with respect both to compliance of the application or patent under reexamination with the <u>applicable statutes and rules</u> and to the patentability of the invention as claimed….

…

(b) *Completeness of examiner's action.* <u>The examiner's action will be complete as to all matters</u>, ….

§ 1.104 forbids examination for compliance with an examiner's personal and unwritten preferences, rather than the "applicable statutes and rules," and forbids incomplete papers. If a paper breaches § 1.104, then it lacks the authority of the Director, and was not issued pursuant to either 35 U.S.C. § 131 or 37 C.F.R. § 1.104. In the words of the Supreme Court, such a paper is "illegal and of no effect." *Vitarelli*, 359 U.S. at 545. 37 C.F.R. § 1.110 specifically notes that it only becomes applicable when the Office acts within § 1.104.

An agency decision must be set aside if it is "arbitrary [or] capricious" 5 U.S.C. § 706(2)(A). An agency action is arbitrary and capricious if it fails to consider relevant factors or makes an unexplained departure from past norms, *Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 19, 57 (1983) ("an agency changing its course must supply a reasoned analysis ..."); *Atchison Topeka & Santa Fe Rwy Co. v. Wichita Board of Trade*, 412 U.S. 800, 808 (1973). "Arbitrary and capricious" review is non-deferential when an agency has failed to address all relevant factors or all exceptions raised, has acted inconsistently with its own precedent, or has violated its own procedures. 5 U.S.C. § 557(c); *see Motor Vehicle Mfr's Assn.*, 463 U.S. at 48 ("an agency must cogently explain why it has exercised its discretion in a given manner"); *Atchison*, 412 U.S. at 806-07. Agencies only receive deference when their written decisions reflect a *bona fide* effort to engage in rational decision making.

The initial burden to come forward with evidence and an articulated explanation always remains with the examiner. *In re Glau*g, 283 F.3d 1335, 1338, 62 USPQ2d 1151, 1152 (Fed. Cir. 2003) ("During patent examination the PTO bears the initial burden of presenting a *prima*

Application Serial No. 09/611,548
Attorney Docket No. 114595-02
Amendment Dated  February 26, 2007

*facie* case of unpatentability.  If the PTO fails to meet this burden, then the applicant is <u>entitled to the patent</u>."); *Ex parte Berg*, 2002 WL 32346092 at *2 (BPAI Feb. 6, 2003) ("the examiner must present a full and reasoned explanation of the rejection in the statement of the rejection, specifically identifying underlying facts and any supporting evidence, in order for appellants to have a meaningful opportunity to respond"); *Ex parte Schricker*, 56 USPQ2d 1723, 1725 (BPAI 2000) (examiner must not leave an applicant to "guess" at the reasons underlying any refusal to allow an application).  <u>No *prima facie* rejection exists</u>, and <u>no</u> burden shifts to the applicant until the examiner has addressed every element of a *prima facie* case of unpatentability, supported the with appropriate evidence, and explained the application of that evidence to the particular words of the pending claims.  *Id.*

## IV.     Paragraph 3 of the November 2006 Paper Raises No Issue Under § 112 or Any Other Provision of the Patent Act or Rules – No Claim is Rejected, No Examination Has Occurred

Paragraph 3 of the Office paper of November 2006 makes no facial attempt to raise any legally relevant issue.  Instead, it creates a new rule out of thin air, to impose a requirement that a claim recite "what the <u>examiner</u> regards as applicant's invention."  The Patent Act and the relevant sections of the MPEP forbid what was done here.  Paragraph 3 of the November 2006 paper is "illegal and of no effect."

The relevant sections of the MPEP are set forth below (underline and square-bracketed interpolations added):

### 2171 Two Separate Requirements for Claims Under 35 U.S.C. 112, Second Paragraph

The second paragraph of 35 U.S.C. 112 is directed to requirements for the claims:

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

There are <u>two separate requirements</u> set forth in this paragraph:

(A) the claims must set forth the subject matter that <u>applicants</u> regard as their invention; and

(B) the claims must particularly point out and distinctly define the metes and bounds of the subject matter that will be protected by the patent grant.

The first requirement is a subjective one because it is dependent on what the applicants for a patent [**not** the examiner] regard as their invention. …

Application Serial No. 09/611,548
Attorney Docket No. 114595-02
Amendment Dated  February 26, 2007

### 2172 Subject Matter Which Applicants Regard as Their Invention

### I. FOCUS FOR EXAMINATION

A rejection based on the failure to satisfy this requirement is appropriate **only where applicant has stated**, somewhere other than in the application as filed, that the invention is something different from what is defined by the claims. In other words, the invention set forth in the claims must be presumed, in the absence of evidence to the contrary, to be that which applicants regard as their invention. *In re Moore*, 439 F.2d 1232, 169 USPQ 236 (CCPA 1971).

### II. EVIDENCE TO THE CONTRARY

Evidence that shows that a claim does not correspond in scope with that which applicant regards as applicant's invention may be found, for example, in contentions or admissions contained in briefs or remarks filed by applicant....

### 2173.04 Breadth Is Not Indefiniteness

Breadth of a claim is not to be equated with indefiniteness. *In re Miller*, 441 F.2d 689, 169 USPQ 597 (CCPA 1971). If the scope of the subject matter embraced by the claims is clear, and if applicants have not otherwise indicated that they intend the invention to be of a scope different from that defined in the claims, then the claims comply with 35 U.S.C. 112, second paragraph....

A decision of the Federal Circuit, *Carl Zeiss Stiftung v. Renishaw PLC*, 945 F.2d 1173, 1180-81, 20 USPQ2d 1094, 1100 (Fed. Cir. 1991) confirms that there is no legal principle analogous that that suggested in the November 2006 paper (emphasis added, citations and quotations omitted):

The district court misapplied the claim definiteness requirement in holding claim 3 to be invalid for failure to claim the subject matter regarded as the invention.  Focusing on the fact that claim 3 omits any electrical circuitry or other signaling means, the court concluded that the claim "does not describe [the patentee's] invention."  ...  Stating that "the arbitrary presentation of part of an invention does not constitute a claim of a valid invention," the court essentially ruled that [the patentee] cannot claim a part of his invention separate from the rest.  This reasoning is legal error.

It has long been held, and we today reaffirm, that it is entirely consistent with the claim definiteness requirement of the second paragraph of section 112, to present "subcombination" claims, drawn to only one aspect or combination of elements of an invention that has utility separate and apart from other aspects of the invention.  As one of our predecessor courts stated, "it is not necessary that a claim recite each and every element needed for the practical utilization of the claimed subject matter," as it is "entirely appropriate, and consistent with § 112, to present claims to only [one] aspect." Thus, the holding of invalidity that rests on a conclusion of lack of claim definiteness is legally incorrect.

**Traverse 1.**    In the interview of December 2006, both Examiner Chencinski and Examiner Poinvil conceded that they did not even know the particular requirements of § 112 ¶ 2, let alone know how to apply them.  (Interview Summary, ¶¶ 20, 21.)  No "applicable statute or

Application Serial No. 09/611,548
Attorney Docket No. 114595-02
Amendment Dated February 26, 2007

rule" was considered in the paper of November 2006. That paper is not an "Office action" to which any reply is required.

**Traverse 2.**    If the Examiner believes that Paragraph 3 of the November 2006 paper is authorized by any written document bearing the authority of the Director or any higher official, Applicant requests particularized identification of that document, by name, section number, and page. In absence of such identification, Applicant respectfully requests that the Examiner not make up the law out of thin air.

**Traverse 3.**    The November 2006 paper makes no showing whatsoever that the claims deviate from "the subject matter that <u>applicants</u> regard as their invention." The November 2006 paper makes no attempt to make any of the showings required by the relevant portions of the MPEP. Instead, the November 2006 paper discusses only unsupported irrelevancies that have no bearing on any legally-relevant issue. Under the law that defines legal actions of federal agencies (§ III of this paper), paragraph 3 of the Office paper of November 2006 is "illegal and of no effect." Paragraph 3 is insufficient to raise any obligation to respond, or to start any time period running against the application.

## V.    Paragraph 2 is Too Incomplete to Raise Any Issue Under § 101 or Any Other Provision of the Patent Act or Rules With Regard to the Method Claims

The November 2006 paper is **dead silent** on every "finding" required by MPEP § 2106. It simply sets forth a misstatement of the law, and then falls silent on any comparison of the facts to even that misstated law. Paragraph 2 reflects no examination of <u>this</u> application under the "applicable statutes and rules," and therefore is not part of a § 1.104 Office action.

Because Paragraph 2 makes no good faith attempt to comply with MPEP § 2106 or 37 C.F.R.§ 1.104, paragraph 2 of the November 2006 paper was issued outside the authority delegated by the Director. It raises no rejection of any claim, and no response is required or possible.

### A.    Procedural Requirements for Raising any § 101 Rejection

The Director of the United States Patent and Trademark Office has set the following boundaries on the delegation of his authority to any examiner. If an examiner deviates from the following instructions, the examiner's action is without the authority of the Director or the

Application Serial No. 09/611,548
Attorney Docket No. 114595-02
Amendment Dated February 26, 2007

Office, and is not a § 1.104 "Office action," and is "illegal" under the administrative law.

*Vitarelli*, 359 U.S. at 545. MPEP § 2106 requires as follows:

> **2106 Patent Subject Matter Eligibility** [R-5]
> **II.    DETERMINE WHAT APPLICANT HAS INVENTED AND IS SEEKING TO PATENT**
>
> <u>It is essential</u> that patent applicants obtain a … <u>complete examination</u> of their applications. … Thus, USPTO personnel should <u>state all reasons and bases for rejecting claims in the first Office action</u>. <u>Deficiencies should be explained clearly</u>, particularly when they serve as a basis for a rejection. … A failure to follow this approach can lead to unnecessary delays in the prosecution of the application.
>
> **IV.    DETERMINE WHETHER THE CLAIMED INVENTION COMPLIES WITH 35 U.S.C. 101**
> **D.    Establish on the Record a Prima Facie Case**
>
> … "<u>The examiner bears the initial burden … of presenting a *prima facie* case of unpatentability</u>." *In re Oetiker*, 977 F.2d 1443, 1445, 24 USPQ2d 1443, 1444 (Fed. Cir. 1992). If the record as a whole suggests that it is more likely than not that the claimed invention would be considered a practical application of an abstract idea, natural phenomenon, or law of nature, then USPTO personnel should not reject the claim.
>
> After USPTO personnel identify and <u>explain in the record the reasons why a claim is for an abstract idea with no practical application</u>, ...
>
> For further discussion of case law defining the line between eligible and ineligible subject matter, as well as a summary of improper tests for subject matter eligibility, see Annex II and Annex III of *Interim Guidelines for Examination of Patent Applications for Patent Subject Matter Eligibility*, 1300 *Off. Gaz. Pat. Office* 142 (Nov. 22, 2005)(Patent Subject Matter Eligibility Interim Guidelines).
>
> **VII.    CLEARLY COMMUNICATE FINDINGS, CONCLUSIONS AND THEIR BASES**
>
> Once USPTO personnel have concluded the above analyses of the claimed invention under all the statutory provisions … they should review all the proposed rejections and their bases to confirm that they are able to <u>set forth a *prima facie* case</u> of unpatentability. Only then should any rejection be imposed in an Office action. <u>The Office action should clearly communicate the findings, conclusions and reasons which support them</u>.

Mere statements of conclusions, with no consideration of the particular words of the claims or any other facts, is not authorized. The Director specified that the examiner's consideration of the facts must be set forth <u>on the record</u>.

Similarly, the Board of Patent Appeals has made clear that a failure to state findings based on evidence of record, to explain the reasoning, and to follow the guidelines of *State Street Bank & Trust Co. v. Signature Financial Group Inc.*, 149 F.3d 1368, 47 USPQ2d 1596 (Fed.

Application Serial No. 09/611,548
Attorney Docket No. 114595-02
Amendment Dated February 26, 2007

Cir. 1998) and *AT&T Corp. v. Excel Communications, Inc.*, 172 F.3d 1352, 50 USPQ2d 1447 (Fed. Cir. 1999) are reversible error. *Ex parte Visser*, http://www.uspto.gov/go/dcom/bpai/ decisions/fd012403.pdf at 5, 2006 WL 25281880 at *2 (BPAI Aug. 28, 2003); *see also Ex parte Phillips*, …/fd002225.pdf at 5, 2006 WL 2523865 at *2 (BPAI Aug 12., 2002) (examiner's mere statement of position, without "explain[ing] why he has reached this position" is error).

### B.    Examiner Poinvil's Understanding of the Claims is Wrong

The first requirement for examination under § 101 is to determine the scope of the claims. MPEP § 2106(II).  "USPTO personnel must <u>always</u> use the perspective of one of ordinary skill in the art."  MPEP § 2106(II)(C) (emphasis added). Examiner Poinvil explained to be his method of claim analysis – "What I see when I look at these claims…" – and declined invitations to view the claims through the definitions in use among those in the art.  (Interview Summary ¶ 30.) Examiner Poinvil failed to use any legally-recognized method of claim interpretation.

In the interview, Examiner Poinvil stated his definition of the term "lease."  Much of what Examiner Poinvil understands about the verb "lease," as used in these claims, is not even wrong – it unintelligible "gibberish" with no meaning at all.  (Lowenstein Aff. ¶ 4.)  Much of the rest of Examiner Poinvil's understanding is "nonsense" or just plain "wrong."  *Id.*  Mr. Lowenstein states that a correct definition of the verb "lease," as used in the method claims, is as follows:

> **lease**, *vb.*  1.  To grant the possession and use of (land, buildings, rooms, movable property, etc.) to another in return for present payment of or an obligation to pay rent or other consideration…   2. To take a lease of; to hold by a lease…

Examiner Poinvil's "gibberish" and "wrong" views on the definition of the verb "lease" are unsupported by any evidence whatsoever, and do nothing to advance examination of this application.

**Traverse 4.**    If any further Office paper uses any other definition of the verb "leasing," as used in the method claims, on what definition does the Examiner rely?  What is the evidence for that definition?  On what authority does the Examiner overrule both the dominant legal dictionary (Black's), and an affidavit of one of skill in the art (Mr. Lowenstein)?

Application Serial No. 09/611,548
Attorney Docket No. 114595-02
Amendment Dated February 26, 2007

### C.    The November 2006 Paper is Dead Silent on Any Showing that the Method Claims are not "Processes"

**Traverse 5.**    If any further paper contends that any claim does not meet the definition of "process" (under the step set forth in MPEP § 2106(IV)(B)) what definition of "process" is being applied?  The Board of Appeals has held, based on CCPA precedent, that any "series of steps" falls within the statutory class of a "process," subject to the further considerations set forth below.  *Ex parte Richard*, http://www.uspto.gov/go/dcom/bpai/decisions/fd962894.pdf at 5, 1996 WL 33101024 at *2 (BPAI May 28, 1999), *citing In re Sarkar*, 588 F.2d 1330, 1333, 200 USPQ 132, 137 (CCPA 1978).

**Traverse 6.**    MPEP § 2106 requires that an Office Action set forth "findings" if it contends that any claim is not within the statutory categories.  The November 2006 paper alleges that the claims are not processes, but is **dead silent** on any "finding."  The November 2006 paper is therefore not an Office Action to which any reply is required.  Why does any method claim in this application fail to meet the legally recognized definition of "process?"

### D.    The PTO Acted Unconstitutionally In Failing to Articulate or Apply Any Written Standard for its Determinations of "Abstract"

In the interview, the Examiners were repeatedly challenged to state the legally-relevant definition of "abstract" on which they relied.  Neither was able to articulate any standard, or to cite any source that provided the definition they applied.

This is illegal.  It is the very kind of arbitrary action at the unpredictable whim of a government employee that is forbidden by the Due Process Clause of the Fifth Amendment of the United States Constitution:

> If Due Process is to mean anything, it is a fundamental guarantee that stakeholders are provided both sufficient notice and <u>fair procedures</u> when governmental discretion mandates the abrogation of their rights or privileges.  The central purpose of the Due Process clause is to ensure the *accountability* of the government and its administrative agencies to its citizenry:  while discretion is certainly permitted, <u>administrators must</u> provide a public framework for principled decision-making and <u>create clear boundaries for that discretion</u>.  "Courts should require administrative officers to <u>articulate the standards and principles that govern their discretionary decisions in as much detail as possible</u>." … Due Process is best achieved when the integrity of the administrative process is maintained through a framework of <u>publicly available rules and guidelines</u> that provide an opportunity for comment and criticism.  The idea that an administrative agency must provide a reasoned explanation using <u>preordained standards</u> serves a threefold purpose:

[1] enabling the court to give proper review to the administrative determination;
[2] helping to keep the administrative agency within proper authority and discretion, as
well as helping to <u>avoid and prevent arbitrary, discriminatory, and irrational action by the
agency</u>;  and [3] informing the aggrieved person of the grounds of the administrative
action so that <u>he can plan his course of action</u> …

… Due Process <u>requires written standards whose availability provides notice to
the interested public</u>. *See, e.g., White v. Roughton*, 530 F.2d 750, 754 (7th Cir.1976)
(state welfare program's use of <u>unwritten personal standards</u> of eligibility struck down
because "fair and consistent" application of eligibility requirements mandates "<u>written
standards and regulations</u>"); *Holmes v. New York City Housing Auth.*, 398 F.2d 262, 265
(2d Cir.1968) ("[d]ue process requires that selections among applications [in a housing
program] be made in accordance with <u>ascertainable standards</u>"); *Martinez v. Ibarra*, 759
F.Supp. 664, 668 (D.Colo.1991) (due process denied when the procedure for reviewing
Medicaid application "is never articulated in clear, <u>written standards</u>" …); *Baker-Chaput
v. Cammett*, 406 F.Supp. 1134, 1140 (D.N.H.1976) ("[T]he establishment of <u>written,
objective, and ascertainable standards</u> is an elementary and intrinsic part of due
process.").

The D.C. Court of Appeals--in three major decisions--also has recognized the
need for ascertainable, <u>written standards</u> in benefits programs and government decision-
making.  In *Miller v. District of Columbia Bd. of Appeals & Review*, 294 A.2d 365
(1972), the court highlighted "the danger of arbitrary administrative action based upon
<u>unarticulated and unannounced standards</u>."  The court warned that "unless there are some
standards relating the prior conduct of an applicant to the *particular* ... activity for which
he seeks a license [to sell costume jewelry], the power to deny a license inevitably
becomes an <u>arbitrary, and therefore unlawful, exercise of judgment by one official</u>...."…

*Lightfoot v. District of Columbia*, 339 F.Supp.2d 78, 88-89 (D.D.C. 2004) (footnotes, quotations

and citations omitted).

In the Interview of December 2006, both examiners conceded that they did not know the

legal definition of "abstract."  Examiner Poinvil repeatedly refused to allow any legal definition

of "abstract" to enter the conversation – on at least two occasions when such consideration was

proposed, he threatened to end the interview.  Examiner Poinvil's conduct, and attempts to

overrule the Federal Circuit and Board of Patent Appeals was more than illegal, it was

unconstitutional.

The only definition that the Examiners put forward was drawn from Webster's

dictionary.   But Webster's dictionary is not a useful guide to specialized terms of art, such as

legal terms.[2]

---

[2]  The omission of any guidance on this issue from the MPEP violates only statute, the
Commissioner's duty to provide "management and direction" on all issues, 35 U.S.C. § 3(b)(2)(A), but is
not unconstitutional, so long as the PTO recognizes that the written articulation of the standard set forth in
the decisions of the Federal Circuit and Board of Patent Appeals and Interferences must be relied on by

Application Serial No. 09/611,548
Attorney Docket No. 114595-02
Amendment Dated February 26, 2007

**Traverse 7.**    If the Examiner is aware of any constitutionally-permissible alternative to written documents for definitions of legal terms to be applied by federal agencies, that would permit either Examiner Chencinski or Examiner Poinvil to rely on a personal unpublished view, he is requested to identify it.  In absence of such an explanation, the Office concedes that both the November 2006 paper and the examiners' refusal to consider written authority in the December 2006 interview were illegal.

**Definition of the legal term of art "abstract."**  The <u>legal</u> definition of "abstract" applied by the courts and Board, is an "idea existing only in one's mind," "pure numbers," and "a fundamental truth; an original cause; a motive." *Ex parte Pednaul*t, http://www.uspto.gov/go/dcom/bpai/decisions/fd020308.pdf at 4, 2004 WL 4972330 at *2 (BPAI Feb. 24, 2004) ("abstract idea" means "existing only in one's mind"; mathematical algorithm that manipulates numbers in order to make a predictive model that is then used to make predictions "to optimize return on marketing investment" is not abstract); *Ex parte Lundgren*, Appeal No. 96-0519, 08/093,516, at 7 (BPAI Nov. 23, 1998) (attached as Exhibit D) ("We find that the claim language recites subject matter that is a practical application of shifting of physical assets to the manager."); *In re Iwahashi*, 888 F.2d 1370, 1374, 12 USPQ2d 1908, 1911 (Fed. Cir. 1989) ("proscription against patenting has been limited to *mathematical* algorithms and abstract *mathematical* formulae" emphasis in original); *Diamond v. Diehr*, 450 U.S. 175, 185, 186, 209 USPQ 1, 7, 8 (1981) ("a fundamental truth; an original cause; a motive" or "simply a number"); *In re Sarkar*, 588 F.2d 1330, 1333, 200 USPQ 132, 137 (CCPA 1978) ("steps occurring only in the mind").

**Traverse 8.**    If the Examiner disagrees with the Board, CCPA or Supreme Court, Applicant requests (a) an articulation of the legal standard being applied, (b) a written statement from signed by someone at T.C. Director or Board of Appeals level or above authorizing the examiner to disagree with these superior tribunals, and (c) a published written document that

---

examiners during ordinary examination.  So long as no other written standard exists, the PTO must make clear to examiners that this is the written standard they must apply.  The refusal of the examiners to honor the Office's only written articulation of its legal standards violates administrative law, 37 C.F.R. § 1.104, and constitutional due process.

Application Serial No. 09/611,548
Attorney Docket No. 114595-02
Amendment Dated  February 26, 2007

makes that Office's standard available to the public, as required by Constitutional Due Process, explaining the definition of "abstract."

**Traverse 9.**   If the Examiner believes that Webster's Dictionary is entitled to weight on the definition of a legal term of art, such as "abstract," and may override the Supreme Court, the Federal Circuit, and the Board of Patent Appeals and Interferences, Applicant requests a written statement to that effect signed by or issued with the authority of an official at the T.C. Director or Board of Appeals level or above.

**Traverse 10.**   In the alternative, Applicant requests a written statement from the examiner that the above definitions are being applied, that there is no difference of opinion on the definition of "abstract," and that no claim limitation in any claim as now pending is a "purely mental" "fundamental truth, original cause, or motive" or otherwise "abstract."

### E.    The November 2006 Paper Makes No Attempt to Show that Any Claim Recites Any "Law of Nature, Natural Phenomenon or Abstract Principle"

#### 1.    The November 2006 Paper is Dead Silent on a Required "Finding"

**Traverse 11.**   What particular claim language recites a "law of nature, natural phenomenon or abstract principle?"  This step of the analysis must identify particular language in the claim – "abstract" subject matter in the specification or otherwise, but not directly recited in the claims, does not support a finding of "abstract."[3]  *Diehr*, 450 U.S. at 191, 209 USPQ at 10 ("when a <u>claim recites</u> a mathematical formula (or scientific principle or phenomenon of nature), an inquiry must be made…"); *AT&T Corp. v. Excel Communications Inc*, 172 F.3d 1352, 1358, 50 USPQ2d 1447, 1452 (Fed. Cir. 1999) (the mere use of the Boolean operator AND in the specification to implement certain claim language does not trigger any "abstract" inquiry if not recited literally in the claim).  The November 2006 paper is **dead silent** on the required "findings," and thus raises no rejection.

#### 2.    The November 2006 Paper is Dead Silent on *State Street* Showings

**Traverse 12.**   The Board of Patent Appeals and Interferences held, in *Ex parte Visser*, …/fd012403.pdf at 5, 2006 WL 25281880 at *2 (BPAI Aug. 28, 2003) that it is error for an

---

[3]  In this respect, the test for "abstract" is somewhat different than the test for "useful, concrete and tangible," which <u>may</u> rely on the specification.  See § V.G of this paper.

Application Serial No. 09/611,548
Attorney Docket No. 114595-02
Amendment Dated February 26, 2007

examiner to fail to set forth findings on the facts discusses in the following passage from *State Street*, discussing "useful, concrete and tangible," non-abstract subject matter, 149 F.3d 1368, 1373, 47 USPQ2d 1596, 1601 (Fed. Cir. 1998):

> Today, we hold that the transformation of data, <u>representing discrete dollar amounts, by a machine through a series of mathematical calculations</u> into a final share price, constitutes a practical application of a mathematical algorithm, formula, or calculation, because it produces "a useful, concrete and tangible result"--a final share price momentarily fixed <u>for recording and reporting purposes</u> and even <u>accepted and relied upon by regulatory authorities</u> and in subsequent trades.

Why did the November 2006 paper make no showings relevant to the guidelines in *State Street*?

**Traverse 13.**   The Affidavit of Douglas Lowenstein (Exhibit B) states as follows:

> 6.  Leases have monetary value.  The monetary values involved in leases are <u>accepted and relied upon by regulatory authorities</u>.  For example, sale of a lease may be a taxable realization of income under the Tax Code, and the value of future lease payments due to the lessor may be included in financial reports required by financial regulators. The <u>monetary value of a lease is often realized in subsequent transactions</u> – for example, it is reasonably common to "sell" a lease to a subsequent lessor.
>
> 7.  Computer processing relating to a lease involves transformation of data that <u>represent discrete dollar amounts, by a machine through a series of mathematical calculations</u>.

As shown in Exhibit C, for companies subject to financial accounting standards to comply with their obligations to various regulatory agencies, the value of a lease must often be "fixed for recording and reporting purposes."  If the Examiner disagrees with Mr. Lowenstein and the regulatory agencies that rely on the definition of "leasing" used by Generally Accepted Accounting Principles, or otherwise asserts that the verb "leasing" as used in these claims is a "law of nature, natural phenomenon, or abstract principle," in spite of the close parallelism between the facts of this case and the facts of *State Street*, Applicant requests an explanation. The explanation must be based on the reasoning set forth in *State Street* or written documents of similar authority – the Office has no authority to deviate from the guidelines and analytical framework set forth in *State Street*.  *Visser*, /fd012403.pdf at 5, 2006 WL 25281880 at *2.

> **3.    The November 2006 Paper is Dead Silent on Any Attempt to Distinguish *Lundgren***

Examiner Poinvil absolutely refused to discuss *Lundgren* in the interview of December 2006 – when it was suggested that the facts of this case are very similar to those of *Lundgren*, he threatened to end the interview.  Unfortunately, Examiner Poinvil's refusal to discuss the facts of

*Lundgren* in an interview puts the burden on Examiner Chencinski to fully develop the Offices' position in writing.

**Traverse 14.**  *Ex parte Lundgren*, Appeal No. 96-0519, 08/093,516, at 7 (BPAI Nov. 23, 1998) (attached as Exhibit D), *reaffirmed* 76 USPQ2d 1385 (BPAI 2005) (*en banc*), holds that "shifting of physical assets" is a "practical application," not "abstract."  If the Examiner disagrees with the Board's definition that "shifting of physical assets" is "practical application," not "abstract," Applicant requests a principled explanation, based on a document with sufficient precedential value to overrule both *Lundgren* cases.

**Traverse 15.**  If the Examiner disagrees with Mr. Lowenstein's affidavit, and believes that the definition of the verb "lease," as understood by those of ordinary skill in the real estate and equipment finance (and related) arts, is inconsistent with "To grant the possession and use of (land, buildings, rooms, movable property, etc.) to another…"  (Black's Dictionary (Exhibit A); Lowenstein Aff. ¶ 5), that is, to shift possession of a physical asset, Applicant requests a statement of the Examiner's position, and identification of a document signed by or issued with the authority of a T.C. Director or above that gives the Examiner authority to override an art-specific dictionary and an Affidavit.

**Traverse 16.**  If the Examiner asserts that the verb "lease" as used in the method claims is "abstract" within *Lundgren*'s legal definition of that term, Applicant requests a principled explanation, with citation to a published document having sufficient precedential value to overrule both *Lundgren* cases.

If the Examiner cannot identify particular language said to be "abstract," then the inquiry may stop here, with the allowance of all method claims.

**F.     The November 2006 Paper Makes Up of the Law Out of Thin Air, And Fails to Consider The "Applicable Statutes and Rules" as Required by 37 C.F.R. § 1.104**

The December 2006 paper states as follows:

1) In the claim, the practical application of an algorithm or idea results in a useful, concrete, tangible result.

This statement appears nowhere in any court decision or Patent Office document locatable by Google.  It is directly contrary to a number of statements in published court and PTO documents.

Application Serial No. 09/611,548
Attorney Docket No. 114595-02
Amendment Dated  February 26, 2007

Because the Examiner failed to read the MPEP carefully and instead made up new rules out of thin air, the Examiner makes three errors in a single sentence.

**Traverse 17.**   MPEP § 2106(IV)(C)(2)(B) expressly states that producing a "useful, concrete and tangible result" is merely one of several ways to satisfy the "practical application" requirement.  There is no requirement for two separate steps, a "practical application" and a "useful concrete and tangible result."  The two may be one and the same thing.  If the Examiner has not simply made up a new requirement out of thin air, Applicant requests a published document that states this requirement for patentability.

**Traverse 18.**   There is no requirement that the "useful, concrete and tangible result" be stated directly "in the claim."  Such a requirement is inconsistent with *State Street*.  Recall that *State Street* held that a "share price" was a "useful, concrete and tangible result."  (see the relevant quote in § V.E, above).  Here is the claim from *State Street* – note that the words "share price" do not appear anywhere in the claim, even with the additional interpolations provided by the Court pursuant to § 112 ¶ 6:

> 1. A data processing system for managing a financial services configuration of a portfolio established as a partnership, each partner being one of a plurality of funds, comprising:
>
> (a) computer processor means [a personal computer including a CPU] for processing data;
>
> (b) storage means [a data disk] for storing data on a storage medium;
>
> (c) first means [an arithmetic logic circuit configured to prepare the data disk to magnetically store selected data] for initializing the storage medium;
>
> (d) second means [an arithmetic logic circuit configured to retrieve information from a specific file, calculate incremental increases or decreases based on specific input, allocate the results on a percentage basis, and store the output in a separate file] for processing data regarding assets in the portfolio and each of the funds from a previous day and data regarding increases or decreases in each of the funds, [sic, funds'] assets and for allocating the percentage share that each fund holds in the portfolio;
>
> (e) third means [an arithmetic logic circuit configured to retrieve information from a specific file, calculate incremental increases and decreases based on specific input, allocate the results on a percentage basis and store the output in a separate file] for processing data regarding daily incremental income, expenses, and net realized gain or loss for the portfolio and for allocating such data among each fund;
>
> (f) fourth means [an arithmetic logic circuit configured to retrieve information from a specific file, calculate incremental increases and decreases based on specific input, allocate the results on a percentage basis and store the output in a separate file] for processing data regarding daily net unrealized gain or loss for the portfolio and for allocating such data among each fund;  and

Application Serial No. 09/611,548
Attorney Docket No. 114595-02
Amendment Dated February 26, 2007

    (g) fifth means [an arithmetic logic circuit configured to retrieve information from specific files, calculate that information on an aggregate basis and store the output in a separate file] for processing data regarding aggregate year-end income, expenses, and capital gain or loss for the portfolio and each of the funds.

Both *State Street* and *AT&T v. Excel* expressly rely on the specification to identify the "useful, concrete and tangible result," and *Diehr* suggests that it is appropriate to do so. *Pednault* (see 0, above) holds that disclosure of a specific "example of a useful concrete and tangible result" in the <u>specification</u> is sufficient to meet § 101, even if that result is not directly recited in the claims. If the Examiner believes otherwise, he is requested to provide a published document, having sufficient "force of law" to overrule *State Street*, *AT&T*, and *Pednault*, that states his proposed legal test.

    **Traverse 19.** The November 2006 paper suggests that "practical application" and the "useful, concrete, tangible result" must be separate things in a "results in" relationship. No known document states such a requirement. MPEP § 2106(IV)(C)(2)(B) expressly states the opposite, that they may be one and the same thing. If the Examiner is not making up the law out of thin air, Applicant requests a published document signed by or issued with the authority of an official at the T.C. Director or Board level or higher.

### G. The November 2006 Paper is Dead Silent On Claim Limitations that Are "Practical Applications" or "Useful, Concrete and Tangible Results" of Any Abstract Subject Matter

    **Traverse 20.** All of the method claims recite language such as "at least some portion of originating, managing, or analyzing the improvements lease is performed on a computer" or "at least some portion of the improvements lease is performed with assistance of a computer." The November 2006 paper is **dead silent** on this claim language. Why is it not a "practical application?" Why was there no discussion of this claim language in the November 2006 paper?

    **Traverse 21.** As noted at page 52, above, *State Street* clearly holds that the "share price" is a "useful, concrete and tangible result" that renders the claim statutory, even though it appears only in the specification, not the claim. Why was no analysis given to the "useful, concrete and tangible results" described in the specification?

    **Traverse 22.** Why is the lease disclosed in the specification, with the benefits described in the specification, not "useful, concrete and tangible?"

Application Serial No. 09/611,548
Attorney Docket No. 114595-02
Amendment Dated  February 26, 2007

**Traverse 23.**  *Ex parte Ng*, …/fd971416.pdf at 6, 1997 WL 33147781 at *2 (BPAI 2000) holds that "a method being run on a computer inherently has practical utility and represents more than a mere abstract idea. An abstract idea is no longer abstract when it becomes tied to implementation on a computer. As long as this computer-implemented process satisfies other conditions of Title 35, it is properly the subject of patent protection."  If the Examiner has any reason to disagree with the Board's holding that a lease (even if thought to be abstract, which it is not), is "no longer abstract when it becomes tied to implementation on a computer," Applicant requests an explanation, based on a published, written document signed by someone at T.C. Director or Board of Appeals level or above.

**Traverse 24.**  *Ex parte Bradley*, …/fd992609.pdf  at 3, 5, 2001 WL 34373629 at *1, *2 (BPAI Nov. 26, 2001) holds a claim patentable on two entirely separate and parallel grounds:

(a) "the manipulation of the real estate data to generate a weighted final estimate of the valuation of the real estate entity would be a 'useful, concrete, and tangible result'."  -  The Board specifically **does not** rely on any requirement that this manipulation be performed on a computer, it merely notes that the data represent real world financial data, and are therefore statutory.

(b)  the "claimed computer implemented process and apparatus producing a final estimate for the value of the real estate entity has real world value and produces a useful, concrete and tangible result"

If the Examiner believes that the manipulation of real estate data in the present invention is distinguishable from *Bradley*, <u>and</u> that the computer processing recited in the claims is distinguishable from *Bradley*, Applicant requests (a) identification of a specific written legal principle stated in some document that has force of law, signed by or issued with the authority of a T.C. Director, the Board of Appeals, or higher (Applicant requests that the Examiner read documents that have "force of law" and the MPEP **carefully**, so as to avoid making up the law out of thin air), and (b) a principled explanation of basis to distinguish <u>both</u> grounds of *Bradley*.

**Traverse 25.**  *Pednault* (from 0) holds that method steps that are computer-implemented are *prima facie* statutory subject matter.  The final paragraph of each method claim in this application requires at least some computer-implemented step.  If any claim of this application is distinguishable from *Pednault*, Applicant requests (a) identification of a specific written legal principle stated in some document that has force of law, signed by or issued with the authority of

a T.C. Director, the Board of Appeals, or higher, and (b) a principled explanation of basis to distinguish <u>both</u> grounds of *Pednault*.

      **Traverse 26.** *Ex parte Bilski*, Appeal 2002-2257, slip op. at 7 (BPAI Sep. 26 2006), states that the USPTO is "entirely dedicated" to the patentability of "business methods" and that they business methods are "considered statutory subject matter when performed by a machine." Does the Examiner agree or disagree? Why is the language "performed on a computer" or "performed with the assistance of a computer" in these claims not sufficient to meet whatever standard the Office sets forth in some published document, which the Examiner will identify, signed by or issued by the authority of the Commissioner, Director, Board of Appeals, or higher authority?

### H.    The November 2006 Paper Makes no *Bona Fide* Attempt to Show that Any Claim Recites "Non-Functional Descriptive Matter"

The Office Action uses the words "non-functional descriptive language."

      **Traverse 27.** The November 2006 paper is **dead silent** on identifying any claim language as being "descriptive matter" or "printed matter." What precise claim language is thought to be "printed matter" or "descriptive matter?"

      **Traverse 28.** The November 2006 paper is **dead silent** on any showing that any "descriptive matter" or "printed matter" is "non-functional." What is the Examiner's reason for any such conclusion?

      **Traverse 29.** If such a subject matter exception exists, it is confined to "printed matter *per se*," that is, a claim that recites "printed matter" *and nothing else*. Each ground of traverse from § V.G is repropounded with respect to whatever "printed matter" or "descriptive matter" issue might be thought to exist – why is the recitation of "performed on a computer" not sufficient to cure any supposed defect?

### VI.    Paragraph 2 is Too Incomplete to Raise Any Issue Under § 101 or Any Other Provision of the Patent Act or Rules With Regard to Apparatus Claims 28 or 53

The November 2006 paper is **dead silent** on any showing relevant to § 101 and claims 28 and 53. The November 2006 paper raises no rejection of these claims.

Application Serial No. 09/611,548
Attorney Docket No. 114595-02
Amendment Dated February 26, 2007

**A.    The November 2006 Paper Makes No Attempt to Show that Claims 26 and 53 Are Not Within the Statutory Categories**

The November 2006 paper makes the bald statement that claims 26 and 53 are not within any statutory category.  The November 2006 expressly declines to consider whether these claims fall within the statutory categories of "machine" or "manufacture."

**Traverse 30.**   What is the Examiner's basis for rewriting the statute to redefine the statutory categories?

**Traverse 31.**   The term "manufacture" is defined to include: "Every article devised by man except machinery upon the one side, and compositions of matter and designs on the other." *Ex parte Mass*, http://www.uspto.gov/go/dcom/bpai/decisions/fd952552.pdf (BPAI Sep. 29, 1997).  What definition of "manufacture" is being used by the Examiner?

**Traverse 32.**   The United States Supreme Court stated the following definition of "machine:"  "a concrete thing, consisting of parts or of certain devices and combinations of devices." *Burr v. Duryee*, 68 U.S. (1 Wall.) 531, 570 (1863); Annex II of the November 2005 Interim Guidelines.  The Examiner was required to consider this definition.  MPEP § 2106 (requiring examiners to take account of Annex II to the November 2005 Interim Guidelines). What definition of "machine" is being used by the Examiner?

**Traverse 33.**   Why do claims 26 and 53, each of which recite "A computer,…" not fall within the definition of "machine" or "manufacture?"

**B.    The November 2006 Paper Makes No Attempt to Show that Claims 26 and 53 Recite Any "Law of Nature, Natural Phenomenon, or Abstract Principle"**

**Traverse 34.**   The November 2006 paper is **dead silent** where MPEP § 2106 requires that the Examiner set forth "findings" on the record.  What abstract principle is recited in the claims?  This question is elaborated further in § V.E.

**Traverse 35.**   In the interview of December 2006, Examiner Poinvil stated that he believed that the "abstract principle" of these claims was "displaying a prompt to a user."  This language does not appear in any claim.  *AT&T Corp. v. Excel Communications Inc*, 172 F.3d 1352, 50 USPQ2d 1447 (Fed. Cir. 1999) makes clear that indirect suggestion of an abstract principle is not itself "abstract," and does not start the inquiry.  If the Examiner disagrees with

Application Serial No. 09/611,548
Attorney Docket No. 114595-02
Amendment Dated February 26, 2007

the Board, Applicant requests an explanation, based on a published, written document signed by or issued with the authority of someone at T.C. Director or Board of Appeals level or above.

**Traverse 36.** *In re Alappat*, 33 F.3d 1526, 31 U.S.P.Q.2d 1545 (Fed. Cir. 1994) (*en banc*) holds that processing a waveform trace for display (without actually displaying it within the claim) is "useful, concrete and tangible," not "abstract." Displaying a "prompt" on a computer is necessarily not "abstract." If the Examiner disagrees with the Federal Circuit, Applicant requests an explanation, based on a published, written document signed by or issued with the authority of someone at T.C. Director or Board of Appeals level or above.

**Traverse 37.** *Ex parte Pomerance*, …/fd061523, 2006 WL 2556855 (BPAI Aug. 31, 2006) holds that a process performed "at a computer" by a human (as opposed to "by a computer") is not abstract. "Displaying a prompt" on a computer is necessarily not "abstract," according to *Pomerance*. If the Examiner disagrees with this proposition of law, Applicant requests an explanation, based on a published, written document signed by or issued with the authority of someone at T.C. Director or Board of Appeals level or above.

**Traverse 38.** *Ex parte Parks*, …/fd040344.pdf, 2004 WL 4979154 (BPAI Aug 19, 2004) holds that providing a display on computer display device for a user to react to is "useful, concrete and tangible." "Displaying a prompt" on a computer is such a type of display, and is necessarily not "abstract." If the Examiner disagrees with the Board, Applicant requests an explanation, based on a published, written document signed by or issued with the authority of someone at T.C. Director or Board of Appeals level or above.

**Traverse 39.** If the Examiner believes any other language of any claim is directed to a "law of nature, natural phenomenon, or abstract principle," the MPEP requires that the Examiner set forth specific findings, and Applicant specifically raises a traverse and requests an answer, to the following questions: (a) identification of specific language of the claims, and (b) an explanation, based on a published, written document signed by or issued with the authority of someone at T.C. Director or Board of Appeals level or above, explaining why the identified claim language is a "law of nature, natural phenomenon, or abstract principle."

Application Serial No. 09/611,548
Attorney Docket No. 114595-02
Amendment Dated  February 26, 2007

### C.    Claims 28 and 56 Are Straightforward *Beauregard* Claims

In 1995, the Commissioner of Patents and Trademarks, now the Director, represented to

the Federal Circuit that certain subject matter is patentable subject matter within § 101.  *In re*

*Beauregard*, 53 F.3d 1583, 35 USPQ2d 1383 (Fed. Cir. 1995)

> … The Commissioner now states "that computer programs embodied in a
> tangible medium, such as floppy diskettes, are patentable subject matter under 35 U.S.C.
> Section 101 and must be examined under 35 U.S.C. Sections 102 and 103."  The
> Commissioner states that he agrees with Beauregard's position on appeal that the printed
> matter doctrine is not applicable.

The November 2006 paper is **dead silent** with respect to claims 28 and 56 and the standard to

which the Director bound himself in *Beauregard*.

**Traverse 40.**  Why is a "computer" with its associated storage media and devices not

merely one form of "tangible medium?"

**Traverse 41.**  Why is a "computer programmed to…" not merely one kind of "computer

program embodied in a tangible medium?"

**Traverse 42.**  MPEP § 2106.01 states that any "descriptive matter" issue cannot apply to

a program stored in a computer component.  Why was this provision of MPEP § 2106.01 ignored

in the November 2006 paper?

## VII.    Applicant Requests That the Office Carry Out its Duties

In emails of Sunday, October 29 and Monday, October 30, 2006, this attorney reminded

Examiner Chencinski and Supervisory Examiner Chilcotte that § 101 issues[4] had been raised and

resolved twice before in this application.  Applicant's emails requested that before any § 101

issue was raised for a third time, that the Office take care to set forth the specific showings

required by MPEP § 2016.  The emails specifically requested as follows:

> … For step 1, be sure to precisely identify any "law of nature, natural phenomenon, or
> abstract idea" so the rest of the analysis of that portion of the claim makes sense.  For
> step 2, please be sure to identify any basis to believe that the "performed on a computer"

---

[4]  Applicant notes that all papers issued by the Office have been too incomplete to raise any
rejection, or to constitute either a first action on the merits under either 37 C.F.R. § 1.104 or a
"notification under [35 U.S.C.] §132" which requires "stating the reasons for such rejection … together
with such information and references as may be useful in judging the propriety of continuing the
prosecution of his application."  Because the Office has never stated "reasons" or provided the
"information" required of § 132, the patent term protections of § 154(b)(1)(A)(i) continue to run.

Application Serial No. 09/611,548
Attorney Docket No. 114595-02
Amendment Dated  February 26, 2007

language is insufficient to establish the "application" prong of step 2, in spite of the Office's precedent.  Please be sure to explain why whatever you identify as a "law of nature, natural phenomenon, or abstract idea" is unlike the "share price" in State Street or the "PIC indicator" in AT&T, both of which were held to be "useful, concrete and tangible."

I think the claims are allowable - at least on § 101 issues - as they are.  If they aren't, please make a complete showing.  I'm sure you'll understand that after 6 years, it's not appropriate to raise a totally new rejection without a fully-considered basis stated on paper.

These two simple showings, both of which are required by MPEP § 2106, are not even attempted in the November 2006 paper.  Why not?  After **five** previous Office Actions were all shown to be **wrong** because they omitted consideration of key issues, it is difficult to believe that a **sixth** paper that **omits consideration of essentially every relevant issue**, that **re-raises a twice-resolved issue for a third time**, and that **baldly ignores MPEP requirements** after they were brought to the Examiner's and SPE's attention, is an innocent oversight.  Is the Office deliberately obstructing prosecution?

Pursuant to MPEP § 707.02, if the application is not allowed, Applicant requests an action plan signed by Supervisory Examiner Chilcotte describing how he will ensure that his examiners follow the rules completely, how he will ensure that no further incomplete papers are mailed, and how he will ensure that the Office will rely solely on its written rules for any requirement it wishes to impose on this application.

The Examiner is reminded once again of the obligation to "Answer <u>All</u> Material Traversed."  MPEP § 707.07(f).  This provision exists for the benefit of the Examiner, to improve the Examiner's efficiency.  Every claim is patentable for at least one of the reasons set forth above.  If the Examiner fails to carefully consider a ground traversed above, and the claims turn out to be patentable for that reason, whatever effort the Examiner exerts on the other irrelevant issues will have been wasted.  The Examiner is requested to recall how much of his own effort was totally wasted because he omitted claim limitations from consideration during the §§ 102/103 phase of this application.  Much time and embarrassment could have been avoided if the Examiner had simply followed the rules and done a complete job of "compact prosecution" the first time, rather than the extended "piecemeal examination" that has pervaded the examination of this application.

Application Serial No. 09/611,548
Attorney Docket No. 114595-02
Amendment Dated February 26, 2007

## VIII.    No Petition for Extension of Time is Required – Conditional Petition for Extension of Time

As shown above the November 2006 paper raises no rejection. It was issued without agency authority, and is illegal and of no effect. It is insufficient to raise any requirement to which any response is required, or to start any time period running against the application. No extension of time is required.

Nonetheless, in the event that an officer of the United States Patent and Trademark Office who has sufficient authority to override the MPEP so opines (it is believed that such authority lies at most with Director Dudas, Deputy Director Pinkos, and Commissioner Doll personally, and no delegate of theirs, and it is questionable whether even they have the power to waive the requirements to which the Office has bound itself), Applicant requests a written statement by that official that the November 2006 paper constituted a duly-issued Office Action under 37 C.F.R. § 1.104 that required a response, and that each and every deficiency and rule of law noted above is within the authority granted by the Office to examiners. In that event, and only in that event, Applicant petitions for a one-month extension of time to respond to the paper of November 1, 2006, to and including March 1, 2007. In that event, and only in that event, please charge the petition fee to Deposit Account No. 23-2405, Order No. 114595-02

Applicant respectfully submits that the claims are in condition for allowance, and requests that the application be passed to issue in due course. The Examiner is urged to telephone Applicant's undersigned counsel at the number noted below if it will advance the prosecution of this application. Kindly charge any additional fee, or credit any surplus, to Deposit Account No. 23-2405, Order No. 114595-02.

Respectfully submitted,

Dated: February 26, 2007        By:    /David E. Boundy/
                                       David E. Boundy
                                       Registration No. 36,461

                                       LAW OFFICES OF DONNA L. ANGOTTI
                                       140 Broadway, Suite 4600.
                                       New York, New York  10005
                                       (212) 294-7848
                                       (212) 858-7750 Fax

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/611,548 | 07/07/2000 | DOUGLAS G. LOWENSTEIN | 114595-2 | 6763 |

| | | | EXAMINER |
|---|---|---|---|
| 38492 | 7590 | 11/01/2006 | CHENCINSKI, SIEGFRIED E |

WILLKIE FARR & GALLAGHER LLP
INTELLECTUAL PROPERTY LEGAL ASSISTANTS
787 SEVENTH AVE
NEW YORK, NY  10019-6099

| ART UNIT | PAPER NUMBER |
|---|---|
| 3692 | |

DATE MAILED: 11/01/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

A000790

| **Office Action Summary** | Application No. | Applicant(s) |
| --- | --- | --- |
| | 09/611,548 | LOWENSTEIN ET AL. |
| | Examiner | Art Unit | |
| | Siegfried E. Chencinski | 3692 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☒ Responsive to communication(s) filed on <u>20 July 2006</u>.

2a)☐ This action is **FINAL**.      2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

4)☒ Claim(s) <u>1-125</u> is/are pending in the application.

   4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-125</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

## Application Papers

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   a)☐ All   b)☐ Some * c)☐ None of:

   1. ☐ Certified copies of the priority documents have been received.

   2. ☐ Certified copies of the priority documents have been received in Application No. _____.

   3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

   * See the attached detailed Office action for a list of the certified copies not received.

## Attachment(s)

1) ☐ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☐ Information Disclosure Statement(s) (PTO/SB/08)
   Paper No(s)/Mail Date _____.

4) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date. _____ .
5) ☐ Notice of Informal Patent Application
6) ☐ Other: _____.

Application/Control Number: 09/611,548                                          Page 2
Art Unit: 3692

## DETAILED ACTION

### *Reopening of Prosecution*

1.      Applicant's request for reconsideration of the finality of the rejection of the last

Office action is persuasive and, therefore, the finality of that action is withdrawn. The

amendments filed by applicant after the final rejection have therefore been entered.

### *Claim Rejections - 35 USC § 101*

35 U.S.C. 101 reads as follows:

Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter,
or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and
requirements of this title.

2.      **Claims 1-118 are rejected** because the claimed invention is directed to non-

statutory subject matter.  Claims 1-118 are not directed to any one of the areas of

patentable subject matter, such as product, process, process of making or composition.

For a claim to be statutory under 35 USC 101 the following two conditions must be met:

        1) In the claim, the practical application of an algorithm or idea results in a useful,

concrete, tangible result,

                According to the above guidelines, Applicant's claims are limited to

the manipulation of abstract ideas in the context of patentability using non-functional

descriptive language.

**The independent claims** can be made to become statutory subject matter by

restructuring the steps of originating a lease, analyzing a lease, and managing a lease

in the logical order of the invention as supported in the embodiments described in  the

specification.

Applicant is advised to satisfy the statutory requirements for the claims. Applicant is also

advised not to add any new matter to the specification or the claims.

Application/Control Number: 09/611,548                                    Page 3
Art Unit: 3692

### *Claim Rejections - 35 USC § 112*

The following is a quotation of the second paragraph of 35 U.S.C. 112:

> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

3.    **Claims 1-125 are rejected under 35 U.S.C. 112, second paragraph,** as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention. The steps for originating a lease, analyzing a lease, and managing a lease, critical or essential to the practice of Applicant's invention, are not recited in the claim(s). Omission of such steps in a method claim make the claim indefinite because it is unclear how to implement the steps of the invention. Correction is required.

### *Allowable Subject Matter*

4.    **Claims 1, 2, 28, 31, 60, 74, 93, 102 and 119 are allowed** because the claimed limitations read over the prior art of record.

      **Claims 3-27, 29-30, 32-52, 54, 55, 61-73, 75-83, 94-101, 103-118 and 120-125 are allowed** due to their dependency on independent claims 1, 2, 28, 31, 60, 74, 93, 102 and 119.

### *Response to Arguments*

5.    Applicant's arguments filed July 20, 2006 have been reconsidered but are moot in view of the new ground(s) of rejection.

### *Conclusion*

6.    Any inquiry concerning this communication or earlier communications from the Examiner should be directed to Siegfried Chencinski whose telephone number is

Application/Control Number: 09/611,548                                    Page 4
Art Unit: 3692

(571)272-6792. The Examiner can normally be reached Monday through Friday, 9am to

6pm.

If attempts to reach the Examiner by telephone are unsuccessful, the Examiner's

supervisor, Richard E. Chilcot, can be reached on (571) 272-6777.

Information regarding the status of an application may be obtained from the
Patent Application Information Retrieval (PAIR) system. Status information for
published applications may be obtained from either Private PAIR or Public PAIR.
Status information for unpublished applications is available through Private PAIR
only. For more information about the PAIR system, see http://pair-direct.uspto.gov.
Should you have questions on access to the Private PAIR system, contact the
Electronic Business Center (EBC) at 866-217-9197 (toll-free).

Any response to this action should be mailed to:

**_Commissioner of Patents and Trademarks, Washington D.C. 20231_**

or (571)*273-8300*   [Official communications; including After Final communications

labeled "Box AF"]


*(571) 273-6792*    [Informal/Draft communications, labeled "PROPOSED" or

                    "DRAFT"]

Hand delivered responses should be brought to the address found on the above

USPTO web site in Alexandria, VA.


SEC

October 27, 2006



RICHARD E. CHILCOT, JR.
SUPERVISORY PATENT EXAMINER

A000794