# EXHIBIT A

Brief of *Amicus Curiæ*
TELES AG Informationstechnologien
Supporting The Plaintiffs' Summary Judgment Motions

Submitted With

Motion of *Amicus Curiæ* TELES AG
Informationstechnologien For Leave To File a Brief
Supporting The Plaintiffs' Summary Judgment Motions

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| TRIANTAFYLLOS TAFAS,<br><br>                    Plaintiff,<br>     v.<br><br>(JCC/TRJ)<br>JON W. DUDAS, *et al.*,<br><br>                    Defendants. | Civil Action No.:<br>1:07-cv-846 (JCC/TRJ) |

CONSOLIDATED WITH

| | |
|---|---|
| SMITHKLINE BEECHAM<br>CORPORATION, *et al.*<br><br>                    Plaintiffs,<br>     v.<br><br>(JCC/TRJ)<br>JON W. DUDAS, *et al.*,<br><br>                    Defendants. | Civil Action No.:<br>1:07-cv-846 (JCC/TRJ) |

**Brief Of *Amicus Curiæ* TELES AG Informationstechnologien
Supporting The Plaintiffs' Summary Judgment Motions**

David W. Long, No. 458029
HOWREY LLP
1299 Pennsylvania Ave., NW
Washington, DC 20004
Tel.: (202) 783-0800
Fax: (202) 383-6610
Email: longd@howrey.com

ATTORNEYS FOR *AMICUS CURIÆ*
*TELES AG INFORMATIONSTECHNOLOGIEN*

TELES AG Informationstechnologien ("TELES AG") is a small high-technology company based in Germany that develops and sells products/services worldwide in the telecommunications and information technologies industries. TELES AG supports the Plaintiffs' challenge to the U.S. Patent & Trademark Office's ("PTO") "Final Rules"[1] that impose new, substantive restrictions and duties on continuing applications and patent claims. The Final Rules will irreparably harm TELES AG (and other similarly situated companies) based on lost patent rights in pending or future patent applications that counsel this Court to vacate the Final Rules and permanently enjoin the PTO from enforcing them.

## I. Interest of *Amicus Curiæ* TELES AG

TELES AG Informationstechnologien ("TELES AG") is a small high-technology company based in Germany that develops and sells products/services worldwide in the telecommunications and information technologies industries.[2] TELES AG has no financial interest in any of the Plaintiffs. TELES AG relies on the strength of its patents sought in the U.S. and abroad to protect its investment in developing innovations and bringing them to market. The Final Rules at issue here threaten to substantively and improperly diminish those patent rights.

## II. Industry Background

For nearly 25 years TELES AG has focused on developing and distributing leading-edge technologies in fast-growth areas within the global telecommunication and information technology industries.[3] For example, TELES AG has been instrumental in

---

[1] "Changes to Practice for Continued Examination Filings, Patent Applications Containing Patentably Indistinct Claims, and Examination of Claims in Patent Applications," 72 Fed. Reg. 46716 (Aug. 21, 2007) (to be codified at 37 C.F.R. pt. 1) (hereinafter "Final Rules").

[2] Schindler Dec. ¶¶1-2 (Ex. 1).

[3] *Id.* at ¶2.

developing infrastructure equipment used in Voice Over Internet Protocol ("VoIP") technology that is quickly replacing traditional telephony services.[4]

Inventions in these industries often may be implemented in many different ways to achieve many different purposes.[5] For example, an invention may provide innovative functionality or intelligence that can be distributed in many possible ways and combinations throughout a telecommunication system between the end users of the system and network providers.[6] Therefore, it often may be difficult to capture in just a few broad patent claims the innumerable combinations in which telecommunication and information technology inventions may be implemented.[7] Attempting to do so has many risks:

- **Invalidity**. A broad claim might be invalidated based on prior art that the inventor was not aware of when prosecuting the patents.[8]

- **Joint Infringement**. A broad claim might cover so many different actors in the telecommunication chain that the patent owner must go through the difficult and costly process of trying to establish "joint infringement."[9]

- **Claim Diversity**. A competitor may avoid a "method" claim by performing part of the invention outside the United States even though the competitor might not have avoided an additional, similar claim to a "system".[10]

- **Claim Construction**. A claim that the inventor intended to be broad might be construed narrowly based on a court limiting the claim to specific embodiments shown in the patent or changes in the cannons of claim construction.[11]

---

[4] *Id.* at ¶2.

[5] *Id.* at ¶4.

[6] *Id.*.

[7] *Id.* at ¶6.

[8] *Id.*.

[9] *BNC Resources v. Paymentech*, 498 F.3d 1373, 1380-82 (Fed. Cir. 2007).

[10] *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1313-1324 (Fed. Cir. 2005) (internationally distributedcommunication system could not infringe method claims as a matter of law, but could infringe system claims).

- **Prosecution Foresight.** The Federal Circuit's jurisprudence may lean toward drafting many patent claims to cover foreseeable variances in claim scope.[12]

Thus, in order to protect its investment and patent rights, a company's patent prosecution strategy will include drafting several different types of patent claims of varying scope.

Further, the emerging industries in which TELES AG competes experience fast-paced change as the market goes through trial-and-error growing pains. Thus, it may be difficult at the time a particular invention is conceived to fully assess and draft claims to the myriad of ways that the invention may be implemented in current and future systems. The patent systems in the U.S. and abroad, however, are designed to encourage inventors to file patent applications sooner rather than later.[13] As a result, at the time a company originally files a patent application, it may not have fully evaluated which of innumerable aspects of the invention deserve protection and drafted claims accordingly.[14] The company's prosecution strategy, therefore, necessarily may rely on continuing applications in which to seek additional patent claims.[15]

---

[11] Schindler Dec. ¶6 (Ex. 1). Also see, for example, the Federal Circuit's decisions in *Texas Digital* and *Phillips* that denoted major shifts between broad and narrow cannons of claim construction. *Cf. Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002) (court gave greater emphasis to dictionary definitions and less prominent role to the patent specification and file history); *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (overruled Texas Digital and gave grater prominence to the patent specification and file history and less prominence to dictionary definitions).

[12] *See, e.g., Sage Prods., Inc. v. Devon Industries, Inc.*, 126 F.3d 1420, 1425 (Fedi. Cir. 1997) ("However, as between the patentee who had a clear opportunity to negotiate broader claims bud did not do so, and the public at large, it is the patentee who must bear the cost of its failure to seek protection for this foreseeable alteration of its claimed structure."); *accord BMC*, 498 F.3d at 1381 ("The concerns over a party avoiding infringement by arms-length cooperation can usually be offset by proper claim drafting.").

[13] Schindler Dec. ¶4; 35 U.S.C. § 102(b) (precluding claim to invention if patent application filed more than a year after it has been offered for sale in the U.S. or disclosed in a printed publication).

[14] Schindler Dec. ¶¶4-5.

[15] Schindler Dec. ¶¶5-6.

These prosecution strategies must be balanced by the reality that small high-technology companies like TELES AG often have limited resources (time and money) to direct toward the patent prosecution process.[16] For example, the time that an inventor expends in the patent prosecution process takes away from time that the inventor directs toward bringing the invention to market or developing other new inventions.[17] Such lost inventor time can have a relatively significant impact on a small high-technology companies whose work force is much smaller than their global giant competitors. Thus, such small companies must efficiently direct their patent prosecution resources toward aspects of their inventions that will give the greatest protection of their invention and return on their investment.[18]

### III. Patent Office's Final Rules Improperly Will Cause Irreparable Harm And Forfeiture of Substantial Patent Rights

As cogently argued by Plaintiffs, the PTO's Final Rules will effectively limit patentees to two continuing applications and 25 patent claims.[19] The resultant harm is particularly acute for small, high-technology companies like TELES AG.

As discussed above, the telecommunication and information technology industries in which TELES AG competes often involve inventions that may require more than 25 patent claims – *e.g.*, 100 claims – in order to address the innumerable implementations of them.[20] By analogy, although some simple court filings (*e.g.*, *pro hac vice* applications)

---

[16] Schindler Dec. ¶5.

[17] *Id.*

[18] Schindler Dec. ¶5-6.

[19] *See, e.g.*, GSK Memo at 21-22 (discussing "*de facto* limit on continuing applications"); *id.* at 25 (discussing PTO concession that Final Rules "limit[] the number of claims that an applicant may seek."); Tafas Memo at 7 (the "very narrow exception" to continuation limits will "totally swallow[] the rule."); *id.* at 14 (discussing ESD burden foreclosing applicant from seeking optimum number of claims to protect invention).

[20] *See* Schindler Dec. ¶7 (Ex. 1).

can be done in a page or two, other complex court filings (*e.g.*, summary judgment motions) could not be done in a single page without the risk of a party losing substantial rights because they failed to adequately address issues presented by the motion. Similarly, high-technology companies like TELES AG may risk losing substantial patent rights if they do not pursue more than 25 patent claims, because too few claims may not adequately address the issues discussed at pages 3-4 above on invalidity, joint infringement, claim diversity, claim construction and prosecution foresight.

Although a hundred or more patent claims may be needed to adequately protect its patent rights, small, high-technology companies like TELES AG often do not have the resources their larger competitors may have to prepare the Examination Support Document ("ESD") that the Final Rules require when seeking over 25 patent claims. The new Final Rules, therefore, will cause substantial harm to small companies like TELES AG by either the loss of patent rights when seeking only 25 patent claims, or the new costs and burdens of preparing ESDs that diverts precious resources away from endeavors needed to compete in the market.

Further, as discussed above, the fast-paced changes in the high-growth industry in which TELES AG and similar companies compete make it difficult to predict which particular aspects and implementations of the invention will be adopted by the market.[21] Continuing applications allow such companies the opportunity to gain experience and make informed decisions about their patent prosecution strategy.[22] The Final Rule limit on continuing applications, however, will require undue speculation in drafting initial application claims that forfeit patent rights to aspects of the invention that the company's experience may later show to be the most worthy of protection.[23]

---

[21] Schindler Dec. ¶¶5, 7. (Ex. 1).

[22] *Id.*.

[23] *Id.*.

As cogently argued by Plaintiffs, the PTO has no authority to retroactively apply the new Final Rules, because they impose new duties and impair existing rights.[24] As discussed above, companies like TELES AG seek to protect their investments and inventions by balancing the different procedural and substantive tools provided by the patent system, such as using continuing applications and varying patent claims. For patent applications filed before the Final Rules, the decisions about the number of continuing applications and claims to seek within each had been made in reliance on the rules existing at the time. The new Final Rule limits on continuing applications and patent claims may effectively cause a forfeiture of patent rights that the patent owner could have pursued using additional claims or continuing applications, but may be precluded from pursuing now because prior applications already exceed the new limits.

## IV. Conclusion

For the reasons stated herein, the Court should vacate the Final Rules that impose new limits on continuing applications and the number of patent claims, and permanently enjoin the PTO from enforcing them.

DATED: December 27, 2007              Respectfully submitted,

/s/David W. Long
David W. Long, No. 458029
HOWREY LLP
1299 Pennsylvania Ave., NW
Washington, DC 20004
Tel.: (202) 783-0800
Fax: (202) 383-6610
Email: longd@howrey.com

ATTORNEYS FOR AMICUS CURIÆ
TELES AG INFORMATIONSTECHNOLOGIEN

---

[24] *See* GSK Memo. at 31-34; Tafas Memo. at 26.