IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| TRIANTAFYLLOS TAFAS,        ) | |
|           ) | |
|       Plaintiff,     ) | |
|           ) | |
|     v.          ) | Case No. 1:07cv846 (JCC/TRJ) |
|           ) | |
| JON W. DUDAS, et al.,     ) | |
|           ) | |
|       Defendants.   ) | |

CONSOLIDATED WITH

| | |
|---|---|
| SMITHKLINE BEECHAM     ) | |
| CORPORATION, et al.,     ) | |
|           ) | |
|       Plaintiff,     ) | |
|           ) | |
|     v.          ) | Case No. 1:07cv1008 (JCC/TRJ) |
|           ) | |
| JON W. DUDAS, et al.,     ) | |
|           ) | |
|       Defendants.   ) | |

**DECLARATION OF KURT L. EHRESMAN IN SUPPORT OF *AMICUS CURIAE*
THE PENNSYLVANIA GREENHOUSES' BRIEF IN SUPPORT OF
PLAINTIFFS' ANTICIPATED MOTIONS FOR SUMMARY JUDGMENT**

I, Kurt L. Ehresman, do hereby state the following:

1.  I am a registered U.S. patent attorney, with over twelve years in private

practice experience, including domestic and international patent prosecution matters.  I am a

Partner at Saul Ewing LLP, where I am a member of the Intellectual Property & Technology and

1

Life Sciences practice groups. I am admitted to practice before the Pennsylvania Supreme Court, the U.S. District Court for the Middle and Eastern districts of Pennsylvania, and the U.S. Patent and Trademark Office. I am a member of the American Bar Association's Intellectual Property and Science and Technology Sections, and I am also the Chair of the Licensing Committee of the Pennsylvania Bar Association's Intellectual Property Section. I hold a J.D. degree from Widener University School of Law and a B.S. degree in Biochemistry from Lehigh University. Prior to entering private practice of law, I enjoyed a career within the research-based pharmaceutical industry, and held various positions of authority within a Fortune 100 pharmaceutical company, including responsibilities for development, manufacture, clinical trials, regulatory approvals, and intellectual property protection for FDA regulated pharmaceutical products.

2. I represent established and emerging life sciences companies, such as pharmaceutical, medical device, biotechnology, nanotechnology, and materials science companies, as well as several universities and life sciences incubators, in a variety of intellectual property and business law matters. Among the clients that I represent are the "Pennsylvania Greenhouses," namely the Life Sciences Greenhouse of Central Pennsylvania ("LSGPA"), the Pittsburgh Life Sciences Greenhouse ("PLSG"), and BioAdvance, the Biotechnology Greenhouse of Southeastern Pennsylvania ("BioAdvance").

3. I personally know Barbara S. Schilberg, Managing Director and Chief Executive Officer of BioAdvance. Furthermore, I am familiar with the analytical decision process that BioAdvance uses when deciding whether to invest in a life sciences company, especially the importance that BioAdvance places on intellectual property protection for a company's innovations.

2

4. I personally know Mel Billingsley, Ph.D., President & Chief Executive Officer of LSGPA. Furthermore, I am familiar with the analytical decision process that LSGPA uses when deciding whether to invest in a life sciences company, especially the importance that LSGPA places on intellectual property protection for a company's innovations.

5. I personally know John W. Manzetti, President and Chief Executive Officer of PLSG. Furthermore, I am familiar with the analytical decision process that PLSG uses when deciding whether to invest in a life sciences company, especially the importance that PLSG places on intellectual property protection for a company's innovations.

6. Based upon my experience in working with life science companies, continuations practice is more prominent with respect to life science patents than those in other technology areas, such as in the electronic and mechanical arts. Further, continuations practice is particularly critical for emerging life science organizations, whose platform technologies typically develop from a single innovation in a limited field of science. My life science clients have relied upon the certainty of current, existing patent rules in filing applications, as in current continuation rules to obtain protection for their inventions.

7. As a patent practitioner involved in the preparation and prosecution of hundreds of patent applications, I have frequently encountered situations where more than two continuations and Request for Continued Examination ("RCE") patent applications were necessary to secure a single issued patent for a single invention. Additionally, I have frequently encountered situations wherein patent examiners rejected claims in a parent application and later allowed the same claims in a continuation.

8.  It has been my experience that the patent application process is highly subjective and unpredictable, and that the interpretation and application of patent law (35 U.S.C.), PTO rules (37 C.F.R.), and PTO procedures (Manual of Patent Examining Procedure), and facts varies unpredictably among PTO patent examiners, art units, the Office of Petitions, and the Board of Patent Appeals and Interferences.

9.  I have prosecuted patent applications for early-stage companies wherein the cost of continuations, RCEs, and appeals forced the patent applicants to accept a patent having claims that were less than they were legally entitled to.

10.  I have personally encountered occurrences wherein a PTO examiner advised that the filing of a Petition to Make Special resulted in the delay of examination of the pending application.

11.  Many of my clients are early-stage life science companies whose sole assets are their intellectual property.  They typically do not own office space, lab space, computers, laboratory equipment, and the like—such items are often rented or leased.  They also typically do not have any substantial revenue or accounts receivable.  Accordingly, the valuation of such life science companies is often based almost entirely on the quality of their intellectual property portfolios, especially their patents, pending patent applications, and inventions.

12.  I personally retrieved via the Internet the document attached as Appendix A hereto, which purports to be a slide presentation presented by John Doll of the PTO to the AIPLA on or about May 11, 2005.  The attached document was retrieved from the following location: http://www.aipla.org/Content/ContentGroups/Speaker_Papers/Spring_Meeting/ 20057/doll_johnppt.pdf (as accessed on December 17, 2007).

4

13.  I personally retrieved the document attached as Appendix B hereto, which is an excerpt (page 134) of the "USPTO Performance and Accountability Report for Fiscal Year 2007."

14.  I declare under penalty of perjury that to the best of my knowledge the foregoing is true and correct.

12/27/07
Date

Kurt L. Ehresman, Esq.
Partner, Saul Ewing LLP
USPTO Reg. No. 50758
PA Bar #77707

# APPENDIX A

EHRESMAN DECLARATION, APPENDIX A



## The United States
## Patent and Trademark Office

*AIPLA May 11, 2005*



## Contact Information

■ **John Doll**

**Acting Commissioner for Patents &**

**Deputy Commissioner for Patents Resources and Planning**

**e-mail:**        john.doll@uspto.gov

**Office Phone:**   571 – 272 – 8800

**Direct Line:**    571 – 272 – 8250



## Accelerated Examination

- **Current Version under Petition to Make Special**
  - MPEP 708.2 [R-2] VIII, 37 CFR 1.102
- **Current provisions:**
  - A. Petition/Fee
  - B. Single invention or election without traverse to grant
  - C. Pre-exam search listing field of search
  - D. One copy each reference deemed closest art (NPL, foreign)
  - E. Distinguish references from the claims



## Accelerated Examination

**Under Current Practice:**

- **Quality of search and explanation of references varies greatly**

- **Special status of granted petitions to make special not being enforced in the Corps**

2



# Accelerated Examination Section VIII Petition Statistics

Fiscal Year Petition Filed

|  | FY03 | FY04 | FY05 | Grand Total |
|---|---|---|---|---|
| Number of undecided Petitions for Accelerated Examination VIII | 3 | 9 | 72 | 84* |
| Number of Granted Petitions for Accelerated Examination VIII Waiting First Action | 24 | 108 | 202 | 334 |
| Total Number of Initial (still undecided) and Decided Accelerated Examination VIII Petitions | 534 | 573 | 618 | 1725 |

\* 2 in allowed status and 1 in appealed status



# Accelerated Examination Section VIII Petition Disposition

| | FY Petition Filed | | | |
|---|---|---|---|---|
| | FY03 | FY04 | FY05 | Grand Total |
| Denied | 41 | 28 | 20 | 89 |
| Dismissed | 86 | 91 | 258 | 435 |
| Granted | 404 | 445 | 268 | 1117 |
| Pending | 3 | 9 | 72 | 84 |
| Grand Total | 534 | 573 | 618 | 1725 |



# Processing Times for Accelerated Examination Section VIII Petitions



| TC | | FY03 | FY04 | FY05 |
|----|---|------|------|------|
| | | FY Petition Filed ** | | |
| 1600 | VIII Petitions Granted | 22 | 39 | 14 |
| | Aver. Days from petition filing to first action | 362.0 | 194.4 | 91.1 |
| 1700 | VIII Petitions Granted | 14 | 16 | 9 |
| | Ave. days from petition filing to first action | 225.0 | 179.3 | 88.7 |
| 2100 | VIII Petitions Granted | 64 | 66 | 3 |
| | Ave. days from petition filing to first action | 235.1 | 200.5 | 106.7 |
| 2600 | VIII Petitions Granted | 89 | 62 | 12 |
| | Ave. days from petition filing to first action | 230.3 | 156.5 | 98.8 |
| 2800 | VIII Petitions Granted | 55 | 32 | 9 |
| | Ave. days from petition filing to first action | 200.1 | 182.3 | 103.1 |
| 3600 | VIII Petitions Granted | 61 | 60 | 8 |
| | Ave. days from petition filing to first action | 258.1 | 202.3 | 56.6 |
| 3700 | VIII Petitions Granted | 64 | 43 | 3 |
| | Ave. days from petition filing to first action | 204.4 | 197.4 | 139.7 |
| | VIII Petitions Total | 369 | 318 | 58 |
| | Average Total | 234.4 | 188.2 | 92.7 |

*Includes only those that have had a first action after the petition decision
** As of May 1, 2005



# Accelerated Examination

- Features of the proposed revision:

  - **Move to the head of the line**
  - **Final Disposition within 12 months**
  - **e-file application and all follow on papers**
  - **Single Invention**
  - **Limited Number of Claims**
  - **Patentability Report**
  - **Voluntary Interview before 1st Action**
  - **Shortened Statutory Period**
  - **Enforcement of special status in the Corps**

 **Contact Information**

- **John Doll**

  **Acting Commissioner for Patents &**

  **Deputy Commissioner for Patents Resources and Planning**

  **e-mail:**        john.doll@uspto.gov

  **Office Phone:**   571 – 272 – 8800

  **Direct Line:**    571 – 272 – 8250

# APPENDIX B

OTHER ACCOMPANYING INFORMATION

| TABLE 24 | ACTIONS ON PETITIONS TO THE COMMISSIONER OF PATENTS AND TRADEMARKS (FY 2003 - FY 2007) | | | | |
|---|---|---|---|---|---|
| **NATURE OF PETITION** | **2003** | **2004** | **2005** | **2006** | **2007** |
| **Patent matters** | | | | | |
| **Actions on patent petitions, total** | **49,049** | **46,568** | **44,361** | **41,271** | **51,420** |
| Acceptance of: | | | | | |
| Late assignments | 42 | 33 | 432 | 477 | 619 |
| Late issue fees | 2,362 | 1,441 | 938 | 1,195 | 1,787 |
| Late priority papers | 1,184 | 1,112 | 27 | 16 | 7 |
| Access | 3 | - | 10 | 5 | 12 |
| Certificates of correction | 32,455 | 30,406 | 27,763 | 23,129 | 28,715 |
| Deferment of issue | 40 | 40 | 21 | 13 | 20 |
| Entity Status Change | - | 1,621 | 1,289 | 963 | 1,389 |
| Filing date | 1,776 | 1,267 | 1,815 | 1,129 | 1,090 |
| Maintenance fees | 2,002 | 1,913 | 2,208 | 2,038 | 2,355 |
| Revivals | 4,154 | 4,400 | 5,190 | 6,075 | 8,279 |
| Rule 47 (37 CFR 1.47) | 2,045 | 1,519 | 2,055 | 1,492 | 1,864 |
| Supervisory authority | 196 | 69 | 131 | 163 | 137 |
| Suspend rules | 1,441 | 1,006 | 290 | 272 | 214 |
| Withdrawal from issue | 881 | 1,451 | 1,950 | 1,996 | 1,476 |
| Withdrawals of holding of aband./pat. lapse | 468 | 290 | 242 | 2,308 | 3,456 |
| Late Claim for Priority* | - | 531 | 843 | 788 | 981 |
| Withdraw as Attorney* | - | - | - | 3,030 | 5,246 |
| Matters Not Provided For (37 CFR 1.182)* | - | 788 | 1,270 | 961 | 994 |
| To Make Special* | - | - | - | 2,018 | 3,913 |
| Patent Term Adjustment/Extension* | - | 369 | 684 | 687 | 608 |
| **Trademark matters** | | | | | |
| **Actions on trademark petitions, total** | **18,493** | **17,791** | **22,377** | **17,590** | **21,755** |
| Affidavits of Use and extensions | 3 | - | - | - | 1 |
| Decision by examiner | 20 | 23 | 10 | 19 | 24 |
| Filing date restorations[1] | 495 | 270 | 211 | 65 | 72 |
| Grant application filing date | 21 | 8 | 17 | 11 | 4 |
| Inadvertently issued registrations | 516 | 220 | 181 | 217 | 173 |
| Interferences | - | - | 1 | 2 | - |
| Letters of Protest | - | 765 | 811 | 722 | 735 |
| Madrid Petitions* | - | - | - | 13 | 19 |
| Make special | 138 | 167 | 208 | 185 | 205 |
| Miscellaneous | 46 | 74 | 68 | 81 | 195 |
| Oppositions and extensions | 4 | 1 | 2 | 10 | - |
| Record documents affecting title | 4 | - | - | 15 | 4 |
| Reinstatements[2] | 3,845 | 2,972 | 1,964 | 552 | 575 |
| Restore jurisdiction to examiner | 8 | 19 | 3 | 12 | 27 |
| Review board decisions | 14 | 5 | 8 | 6 | 13 |
| Revive (reviewed on paper) | 12,771 | 12,476 | 18,134 | 4,379 | 4,275 |
| Revive (granted electronically)[3] | - | - | - | 10,689 | 14,850 |
| Section 7 correction/amendment | 10 | 16 | 20 | 30 | 29 |
| Section 9 renewal | 28 | 21 | 10 | 23 | 46 |
| Section 8 or 15 | 61 | 86 | 73 | 112 | 3 |
| Section 44(e) Amendment | 493 | 622 | 629 | 436 | 488 |
| Review Letter of Protest Decision | 2 | 4 | 3 | 4 | 6 |
| Waive fees/refunds | 14 | 42 | 24 | 7 | 11 |
| **Petitions awaiting action as of 9/30** | | | | | |
| Trademark petitions awaiting response | 354 | 253 | 222 | 275 | 166 |
| Trademark petitions awaiting action | 1,791 | 2,179 | 379 | 177 | 117 |
| Trademark pending filing date issues | 8 | 1 | 7 | 22 | 2 |

- Represents zero.
[1] Trademark applications entitled to a particular filing date; based on clear evidence of Trademark organization error.
[2] Trademark applications restored to pendency; inadvertently abandoned by the Trademark organization.
[3] The petition to revive numbers were not separated into two categories (paper versus electronic) in previous years.
* Not reported in previous years.