# EXHIBIT 1

Declaration of Sigram Schindler

Submitted With

Brief of *Amicus Curæ*
TELES AG Informationstechnologien
Supporting The Plaintiffs' Summary Judgment Motion

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| TRIANTAFYLLOS TAFAS, ) | |
| ) | |
| Plaintiff, ) | Civil Action No.: |
| v. ) | 1:07-cv-846 (JCC/TRJ) |
| ) | |
| (JCC/TRJ) ) | |
| ) | |
| JON W. DUDAS, et al., ) | |
| ) | |
| Defendants. ) | |

CONSOLIDATED WITH

| | |
|---|---|
| SMITHKLINE BEECHAM ) | |
| CORPORATION, et al. ) | |
| ) | |
| Plaintiffs, ) | Civil Action No.: |
| v. ) | 1:07-cv-846 (JCC/TRJ) |
| ) | |
| (JCC/TRJ) ) | |
| ) | |
| JON W. DUDAS, et al., ) | |
| ) | |
| Defendants. ) | |

**DECLARATION OF SIGRAM SCHINDLER**

I, Sigram Schindler, hereby declare under the penalty of perjury that:

1.     I am the Chief Executive Officer of TELES AG Informationstechnologien ("TELES"), a small telecommunication and information technology company based in Berlin, Germany, and publicly listed on the Prime Segment of the Frankfurt Stock Exchange.

2.     I have taught and worked in the field of information technology for over 35 years. I have a doctoral degree that included studies and work on satellite systems and operating systems in the field of information technologies. Since 1972, I have been a full Professor of Operating Systems (later changed to Communication Systems) in the Department of Information Technology at the Technical University in Berlin. Since the 1970s, I have led a number of academic and industry committees in the fields of telecommunications and information technology. I originally founded TELES in 1983 as business focused on developing and distributing internationally leading edge telecommunication technologies and systems. TELES efforts have included high growth areas such as value-added Internet services or groundbreaking infrastructure equipment to support the rapidly growing Voice Over Internet Protocol ("VoIP") technology that is now replacing traditional telephony services. TELES currently has about 250 employees, world wide, most of them with academic degrees, and is a rising international technology leader in VoIP technology and Next Generations Networks (NGN).

3.     As a result of my academic and professional work, I have substantial experience in developing new products in emerging technologies and bringing them to market. I am the lead inventor on many domestic and foreign patents. My roles as

inventor, marketer and leader of the TELES business has given me substantial experience in developing, managing and enforcing patent and other intellectual property rights that are essential for smaller companies like TELES to compete in the global market by bringing to it technically advanced products. TELES relies heavily on seeking and obtaining U.S. patent rights in order to aid TELES's entry into the U.S. VoIP market that, like other markets worldwide, will greatly benefit from TELES' innovations in this emerging field.

4.      My experience in developing and marketing emerging technologies in telecommunications and information technologies has shown that inventions in these fields often can be implemented in many different ways to serve many different purposes. For example, an invention that has its geneses in computer software may provide innovative functionality or intelligence that can be distributed in many possible ways and combinations throughout a telecommunication system, covering the whole area between Network Service Providers and network users. The patent priority laws in different countries and the U.S., however, encourage inventors to file patent applications early in order to protect their investments and claims to their inventions. For example, it is my understanding that most (if not all) European countries award the priority right to an invention to the first inventor who files a patent application that discloses the invention (sometimes called "first-to-file" patent systems). Delay in filing a patent application, therefore, can cause an inventor and his/her employer to lose significant patent rights to which they had committed substantial time and resources to develop.

5.      At the time a patent application is originally filed, the inventor and the company decision makers may not have had an opportunity to fully investigate which of

innumerable aspects of the invention to allocate resources toward protecting through the time and expense of drafting claims. The efficient allocation of resources is an important issue to smaller companies, like TELES, that have limited resources to direct toward the patent prosecution process. For example, committing inventor time and resources toward patent prosecution takes away from the inventor time and financial resources that the company can direct toward implementing the invention into a commercial product or researching and developing other new inventions. It is important, therefore, that the company efficiently spend its prosecution resources on the aspects of the invention that promise the best return on the company's investment. The inventor or company often find that filing continuation applications may be the only practical way to fully protect their investments by directing applications to aspects of the invention that their continued experience indicates are worth dedicating resources toward.

6. Because inventions in the telecommunication and information technology industry may be implemented in many different ways for different purposes, it can be very costly and difficult to attempt to draft claims covering what can be thousands of combinations and applications of the invention. Attempting to draft only a few broad claims to cover all possible combinations has many practical risks that can cause the inventor or company to lose their investment in developing the invention. For example, broad claims may later be construed narrowly beyond what the inventor intended and properly sought to protect if a court uses the exemplar embodiments shown in the patent to limit the claims to just those specific embodiments. Further, after a patent has been issued, the inventor might discover prior art that he/she was not aware of when prosecuting this patent and that could render overly broad claims invalid. These concerns

counsel seeking many claims with varying claim scope in order to protect investments and patent rights to the invention. My experience has shown that, in the telecommunication and information technology industry, inventors and companies seek to draft patent claims that balance the financial costs and risks in seeking too many claims or too few claims directed to particular aspects of the invention.

7. Based on the foregoing, my experience has shown that reliance on continuing applications and seeking additional claims is important to protect investments made by companies like TELES to develop and bring to market new inventions in the telecommunication and information technology industries. I understand that the U.S. Patent & Trademark Office ("Patent Office") is seeking to implement new rules at issue in this case that would effectively limit the number of continuing applications and claims that TELES and others can seek to protect their investments. For example, it is my understanding that the Patent Office is seeking to effectively limit inventors to only 2 continuing applications. It is also my understanding that the Patent Office is seeking to effectively limit each patent application to only 25 patent claims of which only 5 can be independent claims. As discussed above, my experience shows that an inventor and company in the telecommunications and information technology industries may not have a full opportunity to discern which aspects of its inventions warrant dedicating resources in the patent prosecution process. My experience also shows that it is difficult to limit the number of patent claims in trying to fairly and fully protect investments made in the invention by covering the large number of possible combinations and uses of the invention. For example, in some instances 100 dependent claims may be necessary in an attempt to cover the many possible ways that a single aspect of an invention may be

implemented. My experience shows that the effective limit on continuing applications and number of patent claims that appear to result from the Patent Office's rules at issue here will cause at least TELES and similar companies to lose substantial rights in patent applications already pending and in future applications such that we could not fully protect the substantial investment of time and resources directed to developing and bringing to market innovations in the telecommunications and information technologies industry.

_____          Dated: 12/21/07
Sigram Schindler
Chief Executive Officer
Teles AG Informationstechnologien
Ernst-Reuter-Platz 8
10587 Berlin
Germany