# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | |
|---|---|
| TRIANTAFYLLOS TAFAS, <br><br> Plaintiff, <br><br> v. <br><br> JON W. DUDAS, et al., <br><br> Defendants. | Civil Action No. 1:07cv846 (JCC) |

### CONSOLIDATED WITH

| | |
|---|---|
| SMITHKLINE BEECHAM CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> JON W. DUDAS, et al., <br><br> Defendants. | Civil Action No. 1:07cv1008 (JCC) |

**BRIEF OF INTEL CORPORATION AS *AMICUS CURIAE* IN CONNECTION WITH
THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT**

In its preliminary injunction ruling, this Court suggested that the lack of *amicus* briefs supporting the PTO's new rules indicated that the public interest favored enjoining those rules. With this *amicus* brief, Intel Corporation is coming forward to explain why, to the contrary, both the law and the public interest strongly support the PTO's "2+1 Rules," which merely require the small percentage of applicants who file more than two continuation applications or more than one request for continued examination to explain why they did not submit their new evidence, arguments or claims earlier.

**Intel's Interest as *Amicus Curiae***

Intel is the world's leader in developing microprocessors and other semiconductor chips and the platforms and technologies for implementing them. It has multiple interests in this case.

To begin with, Intel is at heart a technology company, and it relies heavily on intellectual property protection for its innovations. Intel invests billions of dollars each year in research and development, and it prosecutes and obtains thousands of U.S. patents annually, regularly placing it among the top 10 recipients. Because Intel's technology is complex, its patent prosecutions also tend to be complex and sometimes extended. Intel accordingly relies on continuation practice to ensure full and adequate consideration of its patent applications, and it would not favor statutes, rules or regulations that would abolish continuations or unduly limit their use.

On the other hand, as a leading patentee, Intel is also frustrated by the time it is taking the PTO to process applications. The PTO is undoubtedly correct in concluding that its backlogs are due in part to applicants' propensity to file virtually endless chains of related applications. Continuation applications now account for a quarter to a third of all applications, and the flood of such applications delays the PTO's action on new applications, which typically have lower priority because they have newer effective filing dates. .

In addition, Intel faces patent infringement claims from time to time, and it has found itself increasingly a victim of abuses of continuation practice. Most notably, Intel was one of several hundred companies sued by the Lemelson Foundation Partnership for infringing patents that issued in the 1980s and 1990s yet claimed priority to applications that Lemelson had filed in the 1950s and 1960s. Lemelson and his patent lawyers observed how the modern semiconductor and other high-technology industries had evolved, then mined old, vaguely written applications and drafted claims that were designed to cover modern practices yet still enjoy decades-old priority dates because Lemelson had kept the chains alive through continuation practice. Many

2

of Lemelson's patents were ultimately found unenforceable due to prosecution laches – but only after almost 900 companies paid nearly $1.5 billion in licensing fees.

Although Lemelson was no doubt extreme, he was hardly unique. Intel and other high technology companies have encountered many other instances were patentees have kept application chains alive for long periods—not due to any difficulty in prosecution, but so that they could write new claims around new products and processes that Intel and others had developed entirely independently. Unfortunately, the 1995 amendments limiting patent terms to 20 years from the original filing date has not stopped such tactics. For example, in *MicroUnity Systems Engineering, Inc. v. Dell, Inc.,* No. 2:04-CV-120 (E.D. Tex.), one original patent application filed in 1995 spawned 40 continuation applications, the most recent of which was filed in 2007. In another of Intel's recent cases, a new application was filed just this year even though the original application was filed in 1991.

Intel thus believes that the PTO is well justified in trying to ensure that continuation practice is used for proper purposes and not for delay.

## Summary of Argument

This brief is limited to one subject: the PTO's new "2+1 Rules" codified at 37 C.F.R. 1.78(d) and 1.114. Although the plaintiffs suggest that those rules **bar** more than two continuation applications and one request for continued examination (RCE), they do no such thing. They simply require those who file third continuations or multiple RCEs to explain why they could not have raised the new issues earlier—why they have not engaged in undue delay. The PTO is well within its authority in asking applicants to provide such explanations. Federal Circuit cases make clear that the PTO may deny patent protection if an applicant unduly delays in filing or prosecuting a patent application. They also confirm that the PTO has broad authority to require applicants to provide information designed to help the PTO decide whether an

3

applicant is entitled to a patent. Thus, the PTO may reasonably require applicants who are causing delay to explain why they have not *unduly* delayed.

That is enough to resolve this lawsuit. The plaintiffs speculate that the PTO will apply the new rules unduly rigidly and effectively impose a strict limit on the number of permissible continuations. This Court, however, should exercise judicial restraint and limit itself to the case before it: a facial challenge to a regulation that merely requires applicants to supply information. If the PTO applies its rules overly strictly, the courts can provide redress in the concrete context of an as-applied challenge to the agency's actions in a particular case.

## Argument

The PTO and independent researchers have amply documented the abuse that has plagued continuation practice and the detrimental effects that the flood of continued examination filings[1] has had on the PTO, other patent applicants, and the public at large. Intel will not belabor the point here. The plain fact is that the percentage of continued examination filings has nearly tripled since 1980, climbing to nearly 30 percent of all applications. *Changes to Practice for Continued Examination Filings, Patent Applications Containing Patentably Indistinct Claims, and Examination of Claims in Patent Applications,* 72 Fed. Reg. 46716, 46718 (Aug. 21, 2007) ("Final Rules"); *Changes to Practice for Continued Examination Filings, Patent Applications Containing Patentably Indistinct Claims,* 71 Fed. Reg. 48, 50 (Jan. 3, 2006) ("Proposed Rules"). These applications inevitably divert resources from new applications, resulting in enormous backlogs. Proposed Rules, 71 Fed. Reg. at 50. Today, the backlog has reached hundreds of thousands of unexamined applications. In Intel's experience, it is taking the

---

[1] The PTO defines "continued examination filings" to include continuation applications, continuation-in-part applications, and requests for continued examination.

PTO two and a half to nearly four years to issue first office actions on new applications in many fields, and some recently filed applications can expect a delay of six years.

The PTO has found that many of these continued examination filings are unnecessary. In some cases, original applications are poorly drafted and fail to comply with 35 U.S.C. § 112. 72 Fed. Reg. at 46719. In other cases, the continued filings are part of a calculated strategy to delay final conclusion of the examination: to keep the chain pending so that the applicant can draft additional claims and cover independently developed products and processes that appear in the marketplace. *Id.* In some instances, the applicant may follow a "submarine" strategy, delaying issuance of claims until companies have committed to a technology, then surfacing and demanding royalties. In others, the applicant secures relatively narrow claims early on, then drafts broader or parallel claims when others develop technology that does not fall within the early patent. With continuations readily available and each application pending for an average of two to six years, it is easy for an applicant to stretch out the application process for a decade or more. *See, e.g., Hyatt v. Dudas,* 492 F.3d 1365 (Fed. Cir. 2007) (applications pending since the 1970s). As Professor Lemley and then-Professor (now Federal Circuit Judge) Moore have observed, unrestricted continuation practice means that no rejection or allowance is ever truly final. Mark A. Lemley & Kimberly A. Moore, *Ending Abuse of Patent Continuations,* 84 B.U. L. REV. 63, 64 (2004). The problems are compounded as a practical matter because continuation patents are more likely to be litigated. *Id.* at 70.

These concerns led to the 2+1 Rules at issue in this case. The new rules are designed to distinguish between cases where multiple continued examinations are truly appropriate to deal with the vagaries of prosecution and cases where the applicant has unduly delayed in prosecuting its claims. Contrary to the plaintiffs' suggestion, the new rules do ***not*** impose any strict

5

limitations on the numbers of continuation applications that an applicant may file. Nowhere do they forbid filing more than two continuation or continuation-in-part applications and one RCE. Instead, they merely require that applicants who file a third continuation application or a second RCE *explain why they did not raise the new amendment, argument or evidence earlier*. 37 C.F.R. § 1.78(d)(1)(i)-(vi) & 1.114(f) & (g); *see* 72 Fed. Reg. at 46719-20. Indeed, even the explanation requirement is not rigid: an applicant may ask the PTO to waive it if providing the information would be unjust in a particular case. *See* 37 C.F.R. § 1.183; 72 Fed. Reg. at 46769.

Critically, this case involves a *facial* challenge to the rules as written, not an *as-applied* challenge to PTO decisions in a particular case or class of cases. The issue before the Court is thus a narrow one. The new rules apply only in the small minority—perhaps three percent—of cases where an applicant has already had at least three opportunities to obtain patent coverage: an original plus two continuation applications; or two applications, one of which was extended after final rejection by a request for continued examination. Furthermore, the regulations merely require an applicant seeking a fourth bite at the apple to explain why it could not have raised the new issues before. The question before the Court, then, is whether the PTO may require applicants to explain why they have not unduly delayed in cases whose prosecution history already reflects extraordinary delay.

As a threshold matter, the PTO undeniably has a legitimate interest in confirming that an applicant has been diligent in pursuing its patent claims. In Section 2 of the Patent Act, Congress gave the PTO the authority to "establish regulations" that "govern the conduct of proceedings in the Office" and "facilitate and expedite the processing of patent applications." 35 U.S.C. § 2(b)(2)(A) & (C) (formerly codified at 35 U.S.C. § 6(a)). Even before the modern patent statutes were enacted in 1952, the Supreme Court had recognized that patents may be

6

denied or declared unenforceable when applicants engage in undue delay during prosecution. *See, e.g., Webster Elec. Co. v. Splitdorf Elec. Co.,* 264 U.S. 463 (1924) (applicant's delay in prosecution forfeited its right to a patent); *Woodbridge v. United States,* 263 U.S. 50 (1923) (likewise holding that patent rights were forfeited by designed delay).[2] The Federal Circuit has confirmed that Congress's codification of continuation practice in Section 120 did not abolish the doctrine of prosecution laches or negate the underlying principle that patent applicants must exercise diligence in prosecuting their claims. *Symbol Techs., Inc. v. Lemelson Med., Educ. & Res. Found., L.P.,* 277 F.3d 1361 (Fed. Cir. 2002); *see also Symbol Techs., Inc. v. Lemelson Med., Educ. & Res. Found., L.P.,* 422 F.3d 1378 (Fed. Cir. 2005) (affirming the district court's finding that Lemelson's patents were unenforceable due to prosecution laches).

Most relevant here, the Federal Circuit in *In re Bogese,* 303 F.3d 1362 (Fed. Cir. 2002), confirmed that the PTO has the authority to reject a patent application for undue delay, as long as the agency affords the applicant due process. Indeed, the court of appeals held that "the PTO's authority to sanction undue delay is even broader than the authority of a district court to hold a patent unenforceable." *Id.* at 1367. It emphasized that "[l]ike other administrative agencies, the PTO may impose reasonable deadlines and requirements on parties that appear before it," that "[t]he PTO has inherent authority to govern procedure before the PTO," and that "that authority allows it to set reasonable deadlines and requirements for the prosecution of applications." *Id.* at 1367-68. Significantly, in *Bogese* the Federal Circuit further observed that nothing in the decision on which plaintiffs here primarily rely, *In re Henriksen,* 399 F.2d 253 (C.C.P.A. 1968),

---

[2] *See also Kendall v. Winsor,* 62 U.S. 322, 329 (1858) (an inventor "may forfeit his rights . . . by an attempt to withhold the benefit of his improvement from the public until a similar or the same improvement should have been made and introduced by others"); *Woodbury Patent Planing-Machine Co. v. Keith,* 101 U.S. 479, 485 (1879) ("an inventor cannot, without cause, hold his application pending during a long period of years, leaving the public uncertain whether he intends ever to prosecute it, and keeping the field of his invention closed against other inventors").

7

"suggest[ed] or impl[ied] that the PTO must allow dilatory tactics in the prosecutions of applications or that the PTO lacks inherent power to prohibit unreasonable delay in prosecution." 303 F.3d at 1368 n.6.

The Federal Circuit has also repeatedly held that PTO may require applicants to supply additional information so that the PTO can decide whether the applicant is entitled to a patent. For example, in *Star Fruits S.N.C. v. United States,* 393 F.3d 1277 (Fed. Cir. 2005), the applicant refused to respond to a PTO "Requirement for Information" regarding the sale or other public distribution of the claimed plaint variety. The PTO deemed the application abandoned and the Federal Circuit affirmed, holding that the PTO was entitled to demand the information pursuant to 35 U.S.C. § 2(b)(2) and 37 C.F.R. § 1.105(a)(1), which authorized examiners to "require the submission . . . of such information as may reasonably be necessary to properly examine or treat the matter." *Id.* at 1281-83. The court of appeals specifically recognized that the PTO was entitled to demand "information relevant to examination either procedurally or substantively." *Id.* at 1282. The 2+1 Rules at issue in this case do just that.

Earlier this year in *Hyatt v. Dudas,* the Federal Circuit likewise held that the PTO was entitled to require an applicant to submit additional information so that the PTO could decide whether the claims were supported by an adequate written description. 492 F.3d at 1367-72. Because the PTO had established a prima facie case of a written description problem, it was entitled to shift the burden to the applicant and require him to identify an adequate existing written description or make an amendment to address the deficiency. *Id.* at 1371. The issue here is procedural rather than substantive, but the logic is analogous. Just as applicants have a duty to provide an adequate written description, they also have a duty to pursue their claims diligently. Where an applicant has already had three shots at obtaining patent coverage, a question

8

regarding diligence could arise, and the PTO may reasonably require the applicant to explain why it failed to raise the new evidence, arguments or claims previously.

In short, the PTO is entitled to reject patent applications for undue delay, and the PTO accordingly may require applicants in cases that already reflect potentially substantial delay to provide additional information explaining why there has been no undue delay. The new 2+1 Rules are both narrow and reasonable and they will affect only a small minority of relatively extreme cases—yet they are likely to stop many of the most egregious abuses of continuation practice. The plaintiffs' facial challenge to the new regulations should therefore be rejected.

In arguing to the contrary, the plaintiffs speculate that the PTO will be excessively rigid in applying the new rules and that the regulations will be tantamount to a ban on third and subsequent continuations or second and subsequent RCEs. GlaxoSmithKline, for example, describes the new rules as an "arbitrary and mechanical limit" on continuing applications, and accuses the PTO of "imposing a hard limit" because "it will deny a petition for a third continuing application in almost all circumstances." [GlaxoSmithKline Mot. for Summ. Judg. 20-21] But such concerns are pure conjecture at this point. If the PTO applies its regulations in a manner that exceeds its statutory authority, or if it acts arbitrarily or capriciously in rejecting a particular applicant's third continuation application or second RCE, the courts can address the issue then, in the context of an actual case or controversy and a developed record. At this point, the plaintiffs are simply speculating and challenging regulations that on their face are reasonable and well within the PTO's authority.

## Conclusion

The plaintiffs' motion for summary judgment regarding the 2+1 Rules should be denied, and the defendants' motion for summary judgment regarding those rules should be granted. The preliminary injunction against implementation of the 2+1 Rules should be lifted.

Respectfully submitted,

INTEL CORPORATION

Dated: December 28, 2007

_____/s/_____
M. F. Connell Mullins, Jr. (VSB #47213)
Email: cmullins@spottsfain.com
Hugh M. Fain, III (VSB No. 26494)
Email:  hfain@spottsfain.com
Attorneys for Intel Corporation
SPOTTS FAIN PC
411 East Franklin Street, Suite 600
P.O. Box 1555
Richmond, Virginia 23218-1555
Telephone: (804) 697-2000
Facsimile: (804) 697-2100

**CERTIFICATE OF SERVICE**

I hereby certify that on December 28, 2007, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System, which will send a notification of such filing (NEF) to the following:

Joseph D. Wilson, III
Joanna Baden-Mayer
Kelley Drye & Warren LLP
Washington Harbour
3050 K Street NW, Suite 400
Washington, DC  20007
jwilson@kellydrye.com
jbaden-mayer@kellydrye.com

Counsel for Plaintiff Triantafyllos Tafas

Craig C. Reilly
Richards McGettigan Reilly & West, P.C.
1725 Duke Street, Suite 600
Alexandria, Virginia  22314
craig.reilly@rmrwlaw.com

D. Sean Trainor
Kirkland & Ellis LLP
655 15th Street, N.W., Suite 1200
Washington, D.C.  20005
dtrainor@kirkland.com

Elizabeth M. Locke
Kirkland & Ellis LLP
655 15th Street, N.W., Suite 1200
elocke@kirkland.com

Counsel for Consolidated Plaintiffs GlaxoSmithKline et al.

Lauren A. Wetzler
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia  22314
lauren.wetzler@usdoj.gov

Counsel for Defendants Jon W. Dudas et al.

Randall K. Miller
Arnold & Porter LLP
1600 Tysons Boulevard, Suite 900
McLean, Virginia  22102
randall_miller@aporter.com

Counsel for *Amici* Biotechnology Industry Organization and Monsanto Company

Scott J. Pivnick
Pillsbury Winthrop Shaw Pittman LLP
1650 Tysons Boulevard, Suite 1400
McLean, Virginia  22102
scott.pivnick@pillsburylaw.com

Rebecca M. Carr
Pillsbury Winthrop Shaw Pittman LLP
2300 N Street, N.W.
Washington, D.C.  20037
rebecca.carr@pillsburylaw.com

Counsel for *Amicus* Elan Pharmaceuticals, Inc.

Thomas J. O'Brien
Morgan Lewis & Bockius
1111 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
to'brien@morganlewis.com

Counsel for *Amicus* American Intellectual Property Law Association

Dawn-Marie Bey
King & Spalding LLP
1700 Pennsylvania Avenue, N.W., Suite 200
Washington, D.C.  20006
dbey@kslaw.com

Counsel for *Amici* Hexas, LLC, The Roskamp Institute and Tikvah Therapeutics, Inc.

Robert E. Scully, Jr.
Stites & Harbison, PLLC
1199 N. Fairfax Street, Suite 900
Alexandria, Virginia  22314
rscully@stites.com

Counsel for *Amicus* Human Genome Sciences, Inc.

Craig J. Franco
Odin Feldman & Pittleman P.C.
9302 Lee Highway, Suite 1100
Fairfax, Virginia  22031
craig.franco@ofplaw.com

Counsel for *Amici* Polestar Capital Associates, LLC and Norseman Group, LLC

Jonathan D. Link
McGuireWoods LLP
1750 Tysons Boulevard, Suite 1800
McLean, Virginia  22102
jlink@townsend.com

Counsel for *Amicus* CFPH, LLC

Robert C. Gill
Saul Ewing LLP
2600 Virginia Avenue, N.W., Suite 1000
Washington, D.C.  20037

Counsel for *Amici* PA Bioadvance, Life Sciences Greenhouse of Central Pennsylvania, and Pittsburgh Life Sciences Greenhouse

Charles Gorenstein
Birch Stewart Kolasch & Birch LLP
8110 Gatehouse Road
Falls Church, Virginia  22040
cg@bskb.com

Counsel for *Amicus* Intellectual Property Institute of William Mitchell College of Law

Mathew Christian Schruers
Computer & Communications Industry Association
900 17th Street, N.W., Suite 1100
Washington, D.C.  20006
mschruers@ccianet.org

Counsel for *Amici* Public Patent Foundation, Computer and Communications Industry Association, AARP, Consumer Federation of America, Essential Action, Foundation for Taxpayer and Consumer Rights, Initiative for Medicines, Access and Knowledge, Knowledge Ecology International, Prescription Access Litigation, Public Knowledge, Research on Innovation, and Software Freedom Law Center

John C. Maginnis, III
1350 Connecticut Avenue, N.W., Suite 301
Washington, D.C.  20036
maginnislaw2@verizon.net

Counsel for *Amicus* CropLife America

M. F. Connell Mullins, Jr.
Spotts Fain P.C.
411 East Franklin Street, Suite 600
Richmond, Virginia  23218
cmullins@spottsfain.com

Counsel for *Amicus* Micron Technology, Inc.

Jackson D. Toof
Robins Kaplan Miller & Ciresi LLP
1875 Eye Street, N.W., Suite 300
Washington, D.C.  20006
toof.jackson@arentfox.com

Counsel for *Amicus* Valspar Corporation

Kenneth C. Bass, III
Sterne Kessler, Goldstein & Fox
1100 New York Avenue, N.W., Suite 600
Washington, D.C.  20005
kbass@skgf.com

Counsel for *Amici* AmberWave Systems Corporation, Fallbrook Technologies Inc., Interdigital Communications LLC, Nano-Terra Inc., and Tessera, Inc.

Kevin Michael Henry
Sidley Austin Brown & Wood, LLP
1501 K Street, N.W.
Washington, D.C.  20005
khenry@sidley.com

Counsel for *Amicus* Washington Legal Foundation

                                                /s/
M. F. Connell Mullins, Jr. (VSB #47213)
Attorney for Intel Corporation
Spotts Fain PC
411 East Franklin Street, Suite 600

14

P.O. Box 1555
Richmond, Virginia 23218-1555
Telephone: (804) 697-2000
Facsimile: (804) 697-2100
Email: cmullins@spottsfain.com

15