IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| TRIANTAFYLLOS TAFAS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:07cv846 (JCC) |
| | ) | |
| JON W. DUDAS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

CONSOLIDATED WITH

| | | |
|---|---|---|
| SMITHKLINE BEECHAM CORPORATION, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:07cv1008 (JCC) |
| | ) | |
| JON W. DUDAS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Plaintiff
Triantafyllos Tafas's Objection to Magistrate Jones's Opinion and
Order Denying Tafas's Motion to Compel and Quashing Tafas's
Notices of Depositions for Senior USPTO Officials.[1] For the
reasons stated below, the Court will deny Tafas's Objection.

---

[1]

On December 12, 2007, GSK filed a Response to Plaintiff Tafas's Rule
72(a) Objections indicating that it would "take no position" on the matter.

1

Dockets.Justia.com

## I. Background

On January 3, 2006, Defendant United States Patent & Trademark Office (the "USPTO") proposed a series of changes to the rules governing the procedure by which patent applications would be submitted to, and considered by, the USPTO. After a four month public comment period where the USPTO received more than five hundred (500) written comments, the USPTO published its Final Rules on August 21, 2007. These Final Rules were originally set to take effect on November 1, 2007. Plaintiff Triantafyllos Tafas ("Tafas") filed a Complaint in this Court on August 22, 2007, which he then amended on September 7, 2007. On October 5, 2007, the USPTO filed with this Court the nearly 10,000-page administrative record, which included the 127-page *Federal Register* notice that set out the Final Rules and explained their rationale.

On October 9, 2007, Plaintiff SmithKline Beecham Corporation ("GSK") filed its own Complaint against the USPTO, and that case was consolidated with Tafas's case on October 17, 2007. After extensive briefing and argument, on October 31, 2007, this Court granted GSK's motion for a preliminary injunction preventing the Final Rules from taking effect. Prior to the entry of the preliminary injunction, Tafas and the USPTO had agreed on a briefing schedule, which this Court approved in a Consent Order dated September 21, 2007. On October 22, 2007,

this Court then approved an Amended Consent Order, which
recognized the possibility of litigation over the adequacy or
completeness of the record but did not mention a discovery
period.

On November 5, 2007, Tafas noticed the depositions of
four (4) USPTO officials who Tafas believed were significantly
involved in the promulgation of the Final Rules: Defendant
Undersecretary of Commerce Jon W. Dudas, Commissioner of Patents
Jon J. Doll, Deputy Commissioner for Patent Examination John L.
Love, and USPTO Senior Patent Attorney Robert Bahr.  On November
9, 2007, the USPTO filed a Motion for Issuance of a Proposed
Briefing Schedule in Lieu of a Standard Initial Scheduling Order
in which it demanded that summary judgment briefs be filed no
later than December 20, 2007.  The USPTO also asked the Court to
quash Tafas's notices of deposition and to enter an order barring
all discovery in this case.  In response, Tafas argued that the
USPTO had engaged in a biased and results-oriented rulemaking
process, acted in bad faith, and withheld factual information and
documents from the administrative record such that discovery
concerning the USPTO's inconsistent positions and incomplete
administrative record was warranted.  Tafas further contended
that discovery was permissible concerning his bad faith
certification claim under the Regulatory Flexibility Act ("RFA")
as well as on his constitutional claims.

On November 16, 2007, Magistrate Judge Jones held a hearing on the USPTO's Motion. At that hearing, Tafas argued that the USPTO had provided an incomplete administrative record and that it was improperly refusing to provide a privilege log. Magistrate Judge Jones took the matter under advisement and asked the parties to submit additional memoranda concerning the privilege issue and whether discovery should be permitted with respect to Tafas's constitutional claims. Subsequently, GSK filed a Motion for an order requiring the USPTO to submit a privilege log and a Motion to Compel a complete administrative record. Tafas, in addition to filing two supplemental memoranda, also filed a Motion to Compel on November 20, 2007, requesting that the USPTO produce all materials that were required to be placed in the administrative record and to substantiate any excisions from the record based on claims of privilege.

Magistrate Judge Jones then held another hearing on November 27, 2007. In an oral ruling from the bench, the Magistrate Judge granted the USPTO's Motion for a protective order and denied Tafas's Motion to Compel and GSK's two Motions. This oral ruling was supplemented by a written Order on November 28, 2007, in which Magistrate Judge Jones wrote that Tafas and GSK were seeking discovery in order to "go on a classic 'fishing expedition.'" Magistrate Judge Jones's Mem. Op. and Order at 2. The following day, the Magistrate Judge issued an Order setting

4

the schedule for the parties' submission of motions for summary judgment.

On December 7, 2007, Tafas filed his Objection to Magistrate Jones's Opinion and Order Denying Tafas's Motion to Compel and Quashing Tafas's Notices of Depositions for Senior USPTO Officials. This matter is currently before the Court.

## II. Standard of Review

Rule 72(a) of the Federal Rules of Civil Procedure permits a party to submit objections to a magistrate judge's ruling on non-dispositive matters, such as discovery orders. Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *see Federal Election Comm'n v. The Christian Coalition*, 178 F.R.D. 456, 459-60 (E.D. Va. 1998)(citing *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990)). As a non-dispositive matter, the review of a magistrate's discovery order is properly governed by the "clearly erroneous or contrary to law" standard of review. *See Jesselson v. Outlet Assocs. of Williamsburg, Ltd. Partnership*, 784 F. Supp. 1223, 1228 (E.D. Va. 1991).

Only if a magistrate judge's decision is "clearly erroneous or contrary to law" may a district court judge modify or set aside any portion of the decision. Fed. R. Civ. P. 72(a); *see* 28 U.S.C. § 636(b)(1)(A). A court's "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite

5

and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948); *see also Harman v. Levin*, 772 F.2d 1150, 1152 (4th Cir. 1985). A treatise on federal practice and procedure describes altering a magistrate's non-dispositive orders as "extremely difficult to justify." 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 3069 (2d ed. 1997). However, the same treatise admits that "although an abuse-of-discretion attitude should apply to many discovery and related matters, it need not curtail the power of the district judge to make needed modifications in the magistrate judge's directives." *Id.*

### III. Analysis

Tafas argues that Magistrate Judge Jones's ruling on the USPTO's Motion and Tafas's Motion to Compel was clearly erroneous and contrary to law. Tafas contends that Magistrate Judge Jones erred in: (1) not compelling the USPTO to produce all documents and information that the USPTO considered in proposing and promulgating its new rules; (2) not permitting Tafas some "reasonable latitude" to pursue additional evidence in support of his claims of bad faith; (3) not ordering that the administrative record be developed through supplementation of the record and Tafas's requested depositions; (4) not requiring the USPTO to substantiate their claims of deliberative process and attorney-

client privilege; and (5) precluding Tafas from taking limited and reasonable discovery in aid of his constitutional claims. The Court will address each of these arguments in turn.[2]

### A. Failure to Compel a Complete Administrative Record

Tafas argues that Magistrate Judge Jones committed clear error by rejecting Tafas's claim that the administrative record was incomplete on its face and by denying his request for additional discovery.  Tafas's Mem. of Law in Support of his Objection to Magistrate Judge Jones's Op. and Order at 9 ("Tafas's Mem. in Support of his Objection"); Magistrate Judge Jones's Mem. Op. and Order at 2.  Tafas contends that the Magistrate Judge gave undue deference to the USPTO's reliance on the "presumption of regularity," particularly in light of the fact that Tafas provided numerous examples of the "glaring holes in the administrative record where one would logically expect there to be a multitude of documents."  Tafas's Mem. in Support of his Objection at 9-10.  In addition, Tafas believes that Magistrate Judge Jones may have been proceeding under the improper assumption that the omission of material from an administrative record would actually be helpful to a party challenging agency action.  *Id.* at 10.

---

[2]     Because Tafas's contention that the Magistrate Judge erred by not ordering the development of the administrative record is encompassed by several of his other arguments, the Court will not separately address it.

This lawsuit is an action for judicial review of agency action under the Administrative Procedure Act ("APA").  A court must review an agency regulation promulgated pursuant to 5 U.S.C. § 553 under the "arbitrary and capricious" standard of 5 U.S.C. § 706(2)(A), where the court asks whether the agency's final decision articulates a rational connection between its factual judgments and its ultimate policy choice.  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  If the agency's decision is found to be arbitrary and capricious, the court must remand the matter to the agency for additional investigation or explanation.  *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985).

In applying the arbitrary and capricious standard, "the focal point for judicial review should be the administrative record already in existence."  *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *see also Fort Sumter Tours, Inc. v. Babbitt*, 66 F.3d 1324, 1335-36 (4th Cir. 1995)(finding that judicial review of agency action is "generally confined to the administrative record").  Section 706 of the APA commands the reviewing court to review the "whole record or those parts of it cited by a party." 5 U.S.C. § 706.  Thus, the agency must produce a complete and true record for the court to review.  *See*, *e.g.*, *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)(finding that a court reviewing agency action under the APA

8

must consider "the full administrative record that was before the [decision-maker] at the time he made his decision"); *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993)(finding that on arbitrary and capricious review the district court "must have before it the 'whole record' on which the agency acted"); *Walter O. Boswell Memorial Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984)(holding that the reviewing court "should have before it neither more nor less information than did the agency when it made its decision"). The whole administrative record includes pertinent but unfavorable information, and an agency may not exclude information on the ground that it did not "rely" on that information in its final decision. *See, e.g., Thompson v. United States Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989)("The 'whole' administrative record . . . consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position"); *Ad Hoc Metals Coalition v. Whitman*, 227 F. Supp. 2d 134, 139 (D.D.C. 2002)(holding that a complete record must include any materials that were "referred to, considered by, or used by [the agency] before it issued its final rule"); *Environmental Defense Fund, Inc. v. Blum*, 458 F. Supp. 650, 661 (D.D.C. 1978)("The agency may not . . . skew the 'record' for review in its favor by excluding from that 'record' information

in its own files which has great pertinence to the proceeding in question.").

A complete administrative record, however, does not include privileged materials, such as documents that fall within the deliberative process privilege, attorney-client privilege, and work product privilege. *See Town of Norfolk v. U.S. Army Corps of Eng'rs*, 968 F.2d 1438, 1457-58 (1st Cir. 1992). Regarding deliberative materials, the D.C. Circuit long ago held that "internal memoranda made during the decisional process . . . are never included in a record." *Norris & Hirshberg, Inc. v. SEC*, 163 F.2d 689, 693 (D.C. Cir. 1947). Instead, "only the pleadings and the evidence constitute the record upon which the decision must be based," and "[b]riefs, and memoranda made by the [agency] or its staff, are not parts of the record." *Id.*; *see also Portland Audubon Society v. Endangered Species Comm.*, 984 F.2d 1534, 1549 (9th Cir. 1993)(noting that "neither the internal deliberative process of the agency nor the mental processes of individual agency members" are proper components of the administrative record); *Amfac Resorts, L.L.C., v. Department of Interior*, 143 F. Supp. 2d 7, 13 (D.D.C. 2001)("[D]eliberative intra-agency memoranda and other such records are ordinarily privileged, and need not be included in the record."). Only if internal agency documents themselves introduce "factual information not otherwise in the record" must those portions of

the documents be included in the administrative record. *National Courier Ass'n v. Board of Governors*, 516 F.2d 1229, 1242 (D.C. Cir. 1975).

Deliberative materials are excluded from the administrative record for two reasons. First, judicial review of agency action "should be based on an agency's stated justification, not the predecisional process that led up to the final, articulated decision." *Ad Hoc Metals Coalition,* 227 F. Supp. 2d at 143. The "actual subjective motivation of agency decisionmakers is irrelevant as a matter of law." *In re Subpoena Duces Tecum*, 156 F.3d 1279, 1279 (D.C. Cir. 1998). Second, excluding deliberative materials "prevent[s] injury to the quality of agency decisions" by encouraging uninhibited and frank discussion of legal and policy matters. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-52 (1975). Requiring the inclusion of deliberative materials in the administrative record would pressure agencies to conduct internal discussions with judicial review in mind, rendering "agency proceedings . . . useless both to the agency and to the courts." *San Luis Obispo Mothers for Peace v. Nuclear Regulatory Comm'n*, 789 F.2d 26, 44-45 (D.C. Cir. 1986)(en banc).

Because judicial review of agency action is generally limited to the administrative record, discovery is typically not permitted. *See NVE, Inc. v. Dep't of Health & Human Servs.*, 436

11

F.3d 182, 195 (3rd Cir. 2006)("There is a strong presumption against general discovery into administrative proceedings born out of the objective of preserving the integrity and independence of the administrative process."). Courts have allowed discovery, however, in situations where "those challenging agency action have contended the record was incomplete." *Public Power Council v. Johnson*, 674 F.2d 791, 794 (9th Cir. 1982); *see also Bar MK Ranches*, 994 F.2d at 740 ("When a showing is made that the record may not be complete, limited discovery is appropriate to resolve that question.")(citing *Tenneco Oil Co. v. Dep't of Energy*, 475 F. Supp. 299, 317 (D.C. Del. 1979)). The record is incomplete if it fails to provide a court with all of the documents, memoranda, and other evidence that was considered directly or indirectly by the agency. *Exxon Corp. v. Dep't of Energy*, 91 F.R.D. 26, 33 (N.D. Tex. 1981); *Public Power Council*, 674 F.2d at 794; *NRDC, Inc. v. Train*, 519 F.2d 287, 292 (D.C. Cir. 1975).

Plaintiffs seeking discovery, however, must overcome the "presumption of regularity": the presumption that public officers have properly discharged their official duties. *United States v. Chemical Foundation*, 272 U.S. 1, 14-15 (1926). Courts must apply this presumption absent clear evidence that those duties were improperly discharged. *Chemical Foundation*, 272 U.S. at 14-15; *see also National Archives and Records Admin. v. Favish*, 541 U.S. 154, 174 (2004)(finding that where the

12

presumption of regularity is applicable, "clear evidence is usually required to displace it"). Applying this concept to judicial review of agency action, there is a presumption that the agency properly designated the administrative record, and plaintiffs must show clear evidence to the contrary to obtain discovery. *Bar MK Ranches*, 994 F.2d at 740; *see also Blue Ocean Inst. v. Gutierrez*, 503 F. Supp. 2d 366, 369 (D.D.C. 2007)("[T]he agency enjoys a presumption that it properly designated the administrative record."); *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 197 (D.D.C. 2005)(same). Clear evidence may be demonstrated by a "strong," "substantial," or "prima facie" showing that the record is incomplete. *Amfac Resorts*, 143 F. Supp. 2d at 11 (citations omitted).

In his Opposition to the USPTO's Motion for an Expedited Briefing Schedule, Tafas makes three arguments why the administrative record is incomplete. Tafas restates these arguments in his Supplemental Memorandum in Support of Notices for Depositions, and also adds several others, which the Court will discuss below. First, Tafas argues that because the USPTO has been studying and internally debating promulgating the Proposed Rules for many years prior to their publication date, and because the Final Rules "closely track" the Proposed Rules, the vast majority of the true administrative record must necessarily contain documents that predate the Proposed Rules.

Despite this fact, Tafas notes that only 55 of the 846 documents listed in the USPTO's Index of the Administrative Record were created prior to the publication of the Proposed Rules, and the majority of those consist of internally generated statistical data.  Consequently, Tafas says, the administrative record is "devoid of any meaningful information or documents reflective of how the USPTO actually devised the Proposed Rules," despite the fact that the decisions that went into formulating those rules must have predated their publication.  Tafas's Mem. in Opp'n to Defs.' Mot. for Issuance of Expedited Briefing Schedule at 8-10 ("Tafas's Mem. in Opp'n to Defs.' Mot.").

Second, Tafas contends that the administrative record for the period after the publication of the Proposed Rules is devoid of "any substantial amount of internal USPTO memoranda, email, or other substantive documents" that reflect the weighing process employed by the USPTO.  Tafas's theory is that the "real" decisions regarding the Final Rules were made by the USPTO's senior managers in a private "back-room" process from which the public was excluded and which is not reflected in the record. *Id.*  The public process, by contrast, was merely a "meaningless public show" because the USPTO's senior managers had already privately decided to impose the Proposed Rules.  *Id.* at 10.  Third, Tafas argues that discovery is warranted because the explanatory preamble to the Final Rules cites the USPTO's "past experience" as justification for the new rules, but the

14

administrative record is devoid of any evidence of the content of this experience. *Id.* at 11.

The USPTO responds to Tafas's argument that the record excludes material created prior to the publication of the Proposed Rules on three grounds: (1) many of the materials Tafas argues should be in the record are deliberative; (2) the Final Rules are the "final agency action" that this Court must review and the existing record allows for judicial review of that action; and (3) the USPTO already included in the record any non-deliberative materials generated prior to the publication of the Proposed Rules. Defs.' Omnibus Mem. in Opp'n to Pls.' Requests for Discovery at 12-13 ("Defs.' Omnibus Mem. in Opp'n"). The USPTO succeeds in making its case on this third ground alone, providing several examples of non-deliberative material in the record, including documents regarding the USPTO's initial proposal to limit the number of claims to "ten representative claims" – which it later rejected – and data the USPTO considered with regard to the Examination Support Document ("ESD") requirement. *Id.* at 13 (citing numerous pages of the Administrative Record). Tafas, by contrast, is unable to provide any specific evidence indicating that any other documents created prior to the publication of the Proposed Rules actually exist. Instead, he is "reduced to theorizing that the documents *may* exist, which fails to overcome the presumption that the record is complete." *Blue Ocean Inst.*, 503 F. Supp. 2d at 371. Several of

Tafas's other assertions, such as his claim that only some of the
materials from the public presentations given by the four USPTO
officials he seeks to depose are included in the record, Tafas's
Supplemental Memorandum in Support of Notices for Depositions at
3 ("Tafas's Supplemental Mem. re Deps."), are defeated for the
same reason: speculation about the absence of certain documents
is insufficient to justify discovery.[3]

The USPTO responds to the remainder of Tafas's
arguments by asserting that the allegedly missing materials are
either deliberative in nature or already present in the
administrative record.  Defs.' Omnibus Mem. in Opp'n at 18.  For
example, Tafas contends that the record is "devoid of any
internal USPTO email, correspondence, summaries, drafts, work in
progress or analysis, evidencing USPTO's initial formulation of
the rules or, for that matter, reflecting of any internal
struggle."  Tafas's Supplemental Mem. re Deps. at 6; Tafas's Mem.
in Opp'n to Defs.' Mot. at 11.  Tafas further claims that the
USPTO's responses to negative comments "arise out of thin air"
and that the administrative record lacks evidence of any "spade
work" that would provide a basis for the USPTO's rejection of
those comments.  Tafas's Supplemental Mem. re Deps. at 4.  All of

---

[3]    While Tafas attaches to his brief before the Court material from public
presentations and appearances that he claims were not included in the record,
none of these materials were before Magistrate Judge Jones.  A District Court
must assess whether a Magistrate Judge's decision was "clearly erroneous or
contrary to law" only based on the facts actually before the Magistrate Judge.
Thus, the Court will not consider these omitted materials.

these items, however, are prime examples of deliberative materials that are immaterial as a matter of law and need not be included in the administrative record.  *See In re Subpoena Duces Tecum*, 156 F.3d at 1279.  Any evidence of the USPTO's "internal struggle" or its deliberative "spade work" is irrelevant as it is the stated reasons for the Final Rules that the Court must consider when conducting arbitrary and capricious review.  *Id.*

        The USPTO also demonstrates that much of what Tafas contends is missing from the record is in fact already included in it.  Tafas argues that while there are numerous public reports in the administrative record, any indication of which reports the USPTO credited in promulgating the Final Rules is omitted. Tafas's Supplemental Mem. re Deps. at 4.  The USPTO successfully counters this claim by pointing to pages of the Federal Register where the USPTO discusses how it used the public reports.  Defs.' Omnibus Mem. in Opp'n at 20 (citing 72 Fed. Reg. at 46758, 46815, 46831.)  Finally, Tafas claims that the record omits any source material that would explain the substantive content of the public presentations that were included in the record.  Tafas's Supplemental Mem. re Deps. at 2. This contention is rebutted by the fact that the record contains four thousand (4,000) pages of data that USPTO officials relied on in crafting their presentations.  Defs.' Omnibus Mem. in Opp'n at 20 (citing A03200-A07202).

17

For this Court to overturn Magistrate Judge Jones's
decision to deny Tafas's request to compel a complete
administrative record, that decision must be "clearly erroneous
or contrary to law."  It is the Court's opinion that Tafas has
not made a sufficiently strong or substantial showing of
incompleteness to overcome the presumption that the USPTO
properly designated the administrative record.  Thus, the Court
will deny Tafas's objection to this portion of Magistrate Judge
Jones's decision.

## B. Failure to Permit Discovery Concerning Tafas's Bad Faith Claims

Tafas also argues that Magistrate Judge Jones erred in
concluding that Tafas was not entitled to discovery despite
making a "strong *prima facie* showing of bad faith both as a
matter of fact and law."  Tafas's Mem. in Support of his
Objection at 26.  In the context of judicial review of agency
action under the APA, courts have allowed discovery where there
has been a "strong showing of bad faith or improper behavior."
*Cmty. for Creative Non-Violence v. Lujan*, 908 F.2d 992, 997 (D.C.
Cir. 1990)(citing *Overton Park*, 401 U.S. at 420).  However, mere
allegations of "bad faith" are inadequate to overcome the
presumption that government officials have acted "properly and in
good faith."  *Mullins v. U.S. Dept. of Energy*, 50 F.3d 990, 993
(Fed. Cir. 1995).  Instead, to obtain discovery beyond the

18

administrative record on the basis of bad faith there must be a "strong preliminary showing" of impropriety. *Nat'l Nutritional Foods Assoc. v. Food & Drug Admin.*, 491 F.2d 114, 1145 (2d Cir. 1974); *see also Friends of the Shawangunks, Inc. v. Watt*, 97 F.R.D. 663, 667-68 (N.D.N.Y. 1983)("[I]n order to overcome the presumption . . . a party seeking to depose an administrative official must show specific facts to indicate that the challenged action was reached because of improper motives.").

Courts have imposed a high standard on plaintiffs seeking to demonstrate bad faith. *See, e.g.*, *Mar. Mgmt. v. United States*, 242 F.3d 1326, 1335 (11th Cir. 2001)(permitting discovery after finding that the government had "purposefully withheld negative documents"); *Newton County Wildlife Ass'n v. Rogers*, 141 F.3d 803, 807-08 (8th Cir. 1998)(finding allegation of bad faith "woefully inadequate to justify going outside the administrative record" where plaintiff identified a discrepancy between the agency's conduct and its predecisional assessments); *Mullins*, 50 F.3d at 993 (Fed. Cir. 1995)(finding no bad faith absent a showing of "fraud or clear wrongdoing"); *United States v. Shaffer*, 11 F.3d 450, 460-61 (4th Cir. 1993)(finding bad faith where agency employee filed fraudulent documents and "perjured himself repeatedly"). Importantly, disagreement with an agency's ultimate decision, or with its interpretation of the factual

materials before it, is not bad faith. *Sierra Club v. U.S. Army Corps of Engineers*, 701 F.2d 1011, 1044 (2d Cir. 1983).

Tafas makes two primary allegations of bad faith. First, Tafas claims that there is a strong appearance of bad faith on the part of USPTO officials with respect to its changes to the examination of claims. Tafas argues that, contrary to statements made to the public and to the Court, the USPTO designed its ESD rule to seriously restrict the number of claims. Additionally, contrary to statements made to the public on the non-limiting nature of the 5/25 ESD Rule, the USPTO supplied data to the Office of Management and Budget (the "OMB") indicating that the USPTO knew that the rule would severely restrict an applicant's right to file more than five (5) independent claims or more than twenty-five (25) total claims. Tafas believes that this data manipulation at the OMB calls into question the entire statistical analysis relied upon by the USPTO in the formulation of its rules package. Tafas's Mem. in Opp'n to Defs.' Mot. at 12-18.

Second, Tafas claims that there is a strong appearance of bad faith on the part of USPTO officials with respect to its changes to the practice of filing for continued examinations. Tafas argues that the foundation for passing these changes is flawed in a manner that is readily apparent. In addition, Tafas asserts that, contrary to statements made to the public about the non-limiting and "flexible nature" of its new proposed petition

20

process for three or more continuation requests, the USPTO
supplied data to the OMB indicating that the USPTO knew it would
not deliberately consider petitions and knew that its rule would
severely restrict an applicant's right to file more than two
continuations.  Tafas also argues that the USPTO in bad faith
failed to disclose to the public and to the OMB its anticipated
significant restrictions on the right to appeal in conjunction
with the limitation on continuation filings.  *Id.* at 18-24.

        The USPTO responds by focusing on what it sees as
Tafas's "central charge": that the USPTO in bad faith excluded
from the administrative record two documents, one submitted to
the OMB on June 22, 2007 and the other on September 26, 2007
pursuant to the Paperwork Reduction Act ("PRA"), 44 U.S.C. §
3501, *et seq.*  Defs.' Omnibus Mem. in Opp'n at 22.  According to
the USPTO, the June 22, 2007 PRA submission was not included in
the record because it was related to a USPTO initiative – pre-
first Office action interviews – that was wholly distinct from
the Final Rules under review in this case.  In addition, the
September 26, 2007 PRA submission was excluded from the record
because it was published after the Final Rules were published,
and thus did not constitute material "directly or indirectly"
considered by the USPTO in promulgating its Final Rules.  *Id*. at
22-23.

        These claims, however, are unpersuasive.  While the
June 22, 2007 submission might have pertained to a different

initiative, the data contained in it may very well have been directly or indirectly considered by the USPTO in the formulation of the Final Rules. Similarly, while the September 26, 2007 submission was filed with the OMB after the Final Rules were promulgated, the data contained in it may also have been considered by the USPTO in the formulation of the Final Rules. Nevertheless, the Court is persuaded by the USPTO's argument that Tafas has not made a "strong showing" of impropriety. While Tafas claims bad faith, he has not provided sufficient evidence that, for example, the USPTO "purposefully withheld" allegedly harmful information, or that any information included in the record, such as the December 22, 2006 and March 13, 2007 PRA submissions, was fraudulent. *See Mar. Mgmt.* 242 F.3d at 1335; *Shaffer*, 11 F.3d at 460-61. Indeed, as mentioned above, the USPTO provides innocent explanations for the non-inclusion of the June 22, 2007 and September 26, 2007 OMB submissions. Moreover, the minor discrepancies that do exist between the various submissions are "woefully inadequate to justify going outside the administrative record." *Newton County Wildlife Ass'n*, 141 F.3d at 807-08. The same can be said for Tafas's other bad faith arguments. *See* Tafas.' Mem. in Opp'n to Defs.' Mot. at 13-14, 19, 22-23.

  Tafas makes a separate claim for discovery on the ground that the USPTO made erroneous and bad faith certifications under the RFA that the Proposed Rules and Finals Rules would not

have a substantial economic impact on a substantial number of small entities. Tafas's Mem. in Opp'n to Defs.' Mot. at 24-29; Tafas's Supplemental Mem. re Deps. at 5. The RFA "imposes no substantive requirements on an agency; rather, its requirements are 'purely procedural' in nature." *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't Agric.*, 415 F.3d 1078, 1100 (9th Cir. 2005)(quoting *U.S. Cellular Corp. v. FCC*, 254 F.3d 78, 88 (D.C. Cir. 2001)). Moreover, an agency need only put forth a "reasonable, good-faith effort" to fulfill these procedural requirements. *U.S. Cellular*, 254 F.3d at 88. The USPTO contends that the *Federal Register* notice, as well as the 1,100 pages dedicated to the RFA in the administrative record, are sufficient for this Court to determine whether the USPTO made a "reasonable, good-faith effort" to comply with the RFA's procedural requirements. The Court agrees that the existing record is sufficient to make this determination. *See* 72 Fed. Reg. at 46830-35; A07203-A08329.

For this Court to overturn Magistrate Judge Jones's decision to deny Tafas's request to compel discovery on his bad faith claims, that decision must be "clearly erroneous or contrary to law." It is the Court's opinion that Tafas has not made a sufficiently strong showing of bad faith to overcome the presumption that the USPTO acted properly and in good faith. Thus, the Court will deny Tafas's objection to this portion of Magistrate Judge Jones's decision.

## C. Failure to Compel a Privilege Log

In his Motion to Compel, Tafas also requested that the USPTO be required to provide a privilege log delineating the documents that would be part of the administrative record were they not privileged.  Magistrate Judge Jones found that no discovery was warranted, and therefore denied Tafas's request for a privilege log.  *See* Magistrate Judge Jones's Mem. Op. and Order at 2.

Both parties note that there is no controlling Fourth Circuit authority dictating when an agency is required to prepare a privilege log.  The USPTO relies upon the lack of specific, controlling precedent to argue that, since there is no controlling law, Magistrate Judge Jones's Memorandum Opinion and Order cannot be construed as contrary to law and thus should not be overturned.  Defs.' Opp'n to Tafas's Objections at 17-18.

Tafas attacks the Magistrate's decision as erroneous for several reasons.  He first argues that the USPTO's position that it need not provide a log is contrary to Department of Justice ("DOJ") guidelines for administrative agencies.  Tafas's Mem. in Support of his Objection at 15.  The USPTO counters that the DOJ memorandum relied upon by Tafas was promulgated by a different component of the DOJ – the Environmental and Natural Resources Division – that does not give direction to the USPTO.  Furthermore, the memorandum does not describe a formal department policy or create any legally-enforceable rights or impose any

limitations on the parties.  Defs.' Opp'n to Tafas's Objections
at 15-16.  In addition, the USPTO contends that Tafas did not
provide the DOJ guidelines to Magistrate Judge Jones, and thus
they should not be considered in this Court's review of the
Magistrate Judge's decision.  *Id.* at 16.  The Court finds the
USPTO's argument on this point to be the more persuasive one.

      With respect to the deliberative process privilege,
Tafas contends that letting the Magistrate Judge's decision stand
will set a precedent of allowing federal agencies to hide behind
assertions of privilege without any review or judicial oversight.
He describes the purported limitations of the deliberative
process privilege, claiming that it is inapplicable when it is
the decision-making process, not another aspect of agency action,
that is the subject of litigation.  Tafas then argues that this
is a situation in which the deliberative process privilege should
be overridden in the interest of judicial fact-finding.
Moreover, according to Tafas the government must demonstrate on a
document-by-document basis that a given document is subject to
the deliberative process privilege.  After that determination, a
plaintiff must be allowed to demonstrate that its need for the
document is greater than the agency's desire for non-disclosure.
Tafas argues that Magistrate Judge Jones clearly erred by relying
solely on agency declarations rather than requiring a privilege
log that would allow review of each of the claims of deliberative

process privilege.  *See* Tafas's Mem. in Support of his Objection
at 16-23.

      Although neither the Fourth Circuit nor the Federal
Circuit have specifically addressed the question of when a
privilege log is required in an APA proceeding, other district
courts have considered similar questions and have reached
consistent conclusions.  Once a court has determined that a
plaintiff has provided enough evidence for the court to conclude
that the agency has omitted otherwise relevant material from the
administrative record, the agency must explain its decision to do
so.  Although "some agency documents, such as purely internal
deliberative materials, may be protected from inclusion in the
administrative record, . . . Defendants must make a specific
showing establishing the application of a privilege for each
document that it contends that it may withhold based on
privilege." *People of State of Cal. ex rel. Lockyer v. U.S.
Dep't of Agriculture,* WL 708914, at *3-4 (N.D. Cal. Mar. 16,
2006)(citing *Arizona Rehabilitation Hospital, Inc. v. Shalala*,
185 F.R.D. 263, 267 (D. Ariz. 1998)).

      Two requirements must be met in order for the
deliberative process privilege to apply: (1) the document must be
predecisional; and (2) it must be deliberative in nature.  *F.T.C.
v. Warner Communications, Inc.*, 742 F.2d 1156, 1161 (9th Cir.
1984).  Additionally, the privilege is a qualified one.  A party
may obtain deliberative materials "if his or her need for the

materials and the need for accurate fact-finding override the government's interest in non-disclosure." *Id.* at 1161.  A court must make this determination by considering: (1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions.  *Id.* (citations omitted).[4]

Furthermore, when claiming deliberative process privilege, "[t]he initial burden of establishing the applicability of the privilege is on the government.  In addition to showing that withheld documents fall within the claim of privilege, the government must comply with formal procedures necessary to invoke the privilege," including the provision of a privilege log. *Greenpeace v. National Marine Fisheries Service,* 2000 WL 343906, at *1 (W.D. Wash. Feb. 24, 2000)(citing *Redland Soccer Club*, 55 F.3d 827, 854 (3rd Cir. 1995); *Exxon Corp.*, 91 F.R.D. at 43-44; *Mobil Oil Corp. v. Dep't of Energy*, 520 F. Supp. 414, 416 (N.D.N.Y. 1981)).  "Blanket assertions of the privilege are insufficient" to demonstrate its applicability to a particular document, *Greenpeace*, 2000 WL 343906, at *1 (citing *Exxon Corp.*, 91 F.R.D. at 43), and an agency's failure to have

---

[4]    Additionally, the deliberative process privilege is inapplicable if the agency acted in bad faith.  *Tummino v. C. Von Eschenbach*, 427 F. Supp. 2d 212, 234 (E.D.N.Y. 2006)(citing *Overton Park*, 401 U.S. at 420).

"made the objection [of privilege] with respect to certain documents . . . could be construed as a waiver of its claim to privilege." *Miami Nation of Indians of Indiana, Inc. v. Babbitt*, 979 F. Supp. 771, 778 (N.D. Ind. 1996)(citing *Mary Imogene Bassett Hospital v. Sullivan*, 136 F.R.D. 42, 44 (N.D.N.Y. 1991)).

As discussed in Part III.A. of this Opinion, however, the USPTO's claim is that the omitted documents, though they may very well be subject to the deliberative process privilege, were withheld from the record on the ground that they are irrelevant to arbitrary and capricious review. *See* Defs.' Mem. in Opp'n to Pls.' Req. for a Privilege Log on the Admin. R. at 4-6 ("Defs.' Mem. in Opp'n to Pls.' Req."); *supra* pp. 16-17. Were the USPTO to claim privilege for certain excluded documents that should otherwise be a part of the administrative record, Tafas's request for a privilege log would stand on stronger ground. Instead, the USPTO argues, and the Court agrees, that these internal emails, correspondence, summaries, and drafts that Tafas seeks are not properly part of the administrative record in the first place. *Supra* pp. 16-17. Thus, as the U.S. District Court for the District of Columbia held in *Blue Ocean Institute*, it would be "unfair to criticize [the USPTO] for not claiming a privilege and filing a privilege log as to documents that it claims should not be in the administrative record in the first place." *Blue Ocean Inst.*, 503 F. Supp. 2d at 372 n.4.

28

Tafas also argues that a privilege log is required to allow him to investigate possible privilege waivers that may have occurred, particularly of attorney-client privilege. According to Tafas, public appearances and presentations made by the USPTO's general counsel – the materials from which Tafas claims were excluded from the record – may have waived areas of otherwise privileged information. Tafas contends that without a privilege log, neither Tafas nor the Court can determine whether the USPTO waived the privilege for some of the information it is now claiming it does not have to produce. *See* Tafas's Mem. in Support of his Objection at 23-25. This argument, however, fails because Tafas is unable to show, based on the evidence before Magistrate Judge Jones, that the record is incomplete and missing any necessary materials. *Supra* pp. 15-16 & n.3.

Before Tafas can demand that the USPTO produce a privilege log substantiating any claims of privilege, he must first show that documents that belong in the administrative record are missing. *See Blue Ocean Inst.*, 503 F. Supp. 2d at 371-72. Because Tafas failed to make this showing, the USPTO was not required to produce a privilege log, and Magistrate Judge Jones did not commit legal error by failing to order the production of one. The Court will thus deny Tafas's objection to this portion of Magistrate Judge Jones's decision.

29

**D. Failure to Permit Discovery Concerning Tafas's**

**Constitutional Claims**

In his brief before the Court, Tafas asserts, but does not thoroughly re-argue, his contention that he is entitled to discovery regarding his constitutional claims. Tafas's constitutional claims are based in part on his allegation that the USPTO violated the constitutional duties imposed upon it by the Patent Clause of the Constitution, U.S. Const. Art. I, § 8, cl. 8. Tafas's Mem. in Opp'n to Defs.' Mot. at 30. Tafas argues for discovery on this claim "to establish that the [USPTO's] senior decision-makers purposefully sought to circumnavigate around and/or to overreach their limited constitutional authority under the Patent Clause." *Id.* He contends that Magistrate Judge Jones's decision to deny discovery on these claims was contrary to law because it accepted the "non-controlling and distinguishable precedents" cited by the USPTO. Tafas's Mem. in Support of his Objection at 26.

When a court is reviewing the constitutional validity of agency action pursuant to 5 U.S.C. § 706(2)(B), it should make "an independent assessment of a citizens' claim of constitutional right." *Porter v. Califano*, 592 F.2d 770, 780 (5th Cir. 1979). As a result, in adjudicating constitutional claims under the APA, courts have permitted plaintiffs to submit evidence that was not part of the administrative record. *See, e.g., Rydeen v. Quigg*, 748 F. Supp. 900, 906 (D.D.C. 1990)(allowing plaintiffs to submit

30

two additional affidavits not in the record); *National Medical Enterprises, Inc. v. Shalala*, 826 F. Supp. 558, 565 n.11 (D.D.C. 1993)(allowing plaintiffs to submit an additional declaration not in the record).  However, even where plaintiffs have asserted constitutional claims, "wide-ranging discovery is not blindly authorized at a stage in which an administrative record is being reviewed." *Puerto Rico Public Housing Admin. v. United States Dep't of Housing and Urban Development*, 59 F. Supp. 2d 310, 327 (D. P.R. 1999).

        To survive a constitutional challenge under the Patent Clause, the USPTO need only show that there is a rational basis for the conclusion that the Final Rules "promote the progress of science and the useful arts." U.S. Const., Art. I, Sec. 8, Cl. 8; *Eldred v. Ashcroft*, 537 U.S. 186, 212-13 (2003); *Figueroa v. United States*, 466 F.3d 1023, 1031-32 (Fed. Cir. 2007).  Despite the availability of limited discovery, the USPTO contends that Tafas is not entitled to discovery on his constitutional claims because the administrative record already contains all of the documents required to determine whether the Final Rules are rationally related to the promotion of the progress of science. Defs.' Omnibus Mem. in Opp'n at 28 (citing 72 Fed. Reg. at 46719).  The Court agrees with the USPTO that the administrative record is sufficient for the Court to render a final decision as to the constitutionality of the Final Rules under the Patent Clause.  In addition, the Court finds that the wide-ranging

31

discovery Tafas seeks exceeds the scope of what is permitted by 5 U.S.C. § 706(2)(B) review.  Thus, the Court will deny Tafas's objection to this portion of Magistrate Judge Jones's decision.

### IV. Conclusion

For the reasons stated above, the Court will deny Tafas's Objection to Magistrate Jones's Opinion and Order Denying Tafas's Motion to Compel and Quashing Tafas's Notices of Depositions for Senior USPTO Officials.

An appropriate Order will issue.


January 9, 2008                    _____/s/_____
Alexandria, Virginia                       James C. Cacheris
                                   UNITED STATES DISTRICT COURT JUDGE

32