UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

Alexandria Division



FILED
JAN 1 0 2008
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

TRIANTAFYLLOS TAFAS,
    Plaintiff,
v.

JON. W. DUDAS, *et al.*,
    Defendants.

1:07cv846 (JCC/TRJ)

CONSOLIDATED WITH

SMITHKLINE BEECHAM
CORPORATION, *et al.*,
    Plaintiff,
v.

JON. W. DUDAS, *et al.*,
    Defendants.

1:07cv1008 (JCC/TRJ)

# MOTION OF *AMICUS CURIAE* DR. RON D. KATZNELSON FOR LEAVE TO SUBMIT ATTACHMENTS ELECTRONICALLY

*Amicus Curiae* Ron D. Katznelson, *pro se*, hereby moves for leave to submit electronic attachments to the *Amicus Curiae* brief in support of the Tafas and GSK plaintiffs (Docket No. 198 and attachments to Docket No. 211). In a prior motion filed with this Court on December 26, 2007 (Docket No. 172), I moved for leave to file my *Amicus Curiae* brief electronically. The Court granted my motion for filing the brief on January 8, 2008 (Docket No. 220) but was silent as to my request to file electronically.

For the purposes of introducing a substitute corrected brief as further described in the accompanying Notice of Correction, I now withdraw my earlier broader request to file electronically and move for leave to file only certain attachments electronically by means of a

1

CD-ROM, to be used by the Court's ECF data entry staff. All material requiring signatures are provided in paper form including original signatures. In this way, I do not require an ECF access account and all my singed documents are physically available and authenticated.

I request that the Court accept my attachments and insert them in their original PDF form into its ECF system. Under the current local rules, *pro-se* parties can only file briefs by paper. My prior attachments were submitted on paper and were scanned by the clerk and inserted into the court's EM/ECF electronic system for dissemination. My attachments include exhibits with graphics and charts that were produced with patterns and color keys that reproduce legibly when printed directly from a PDF file. However, they suffer from critical readability and clarity loss after having been printed, scanned in half-toned quantized pixels and printed again. The information utility of such graphics is all but vanished, as evident from the samples attached hereto.

The resulting large file size inefficiencies may also cause them to be split into multiple exhibit parts, taxing further the court's administrative resources. I have prepared the attachment files so that they meet the file size requirements and they are clearly named for electronic insertion. In the interest of avoiding graphic ambiguities and loss of information, the Court and the parties in this action would benefit from the Court accepting my electronic attachments, thereby affording me the same advantages available to all other parties represented by counsel.

I am authorized to state that counsel for the GSK Plaintiffs in C.A. No. 1:07cv 1008 and for Dr. Tafas in C.A. No. 1:07cv846 have consented to this motion. I was advised by counsel for Defendants that Defendants express no objection to the instant motion and consents to not having oral argument on this motion. In light of the parties' views on this motion for leave, no hearing is requested on this motion for leave.

For the foregoing reasons, I, *amicus curiae* Ron D. Katznelson, request that the Court grant leave to file my attachments electronically.

Respectfully submitted,

*/s/ Ron Katznelson/* January 9, 2008.

Ron D. Katznelson, Ph.D.
*Pro-Se*
Encinitas, CA
Office: (760) 753-0668
rkatznelson@roadrunner.com

# ATTACHMENT

Samples comparing an original print and the ECF scanned graphics.

*3.3.2  Financial Incentives For Applications With Reduced Number of Claims.*

The USPTO has recently obtained information on the effect of claim fee changes on the average number of claims filed in an application. Effective December 2004, the USPTO obtained the authority to impose higher fees on applicants based on the number of claims they file. The fee for claims in excess of 20 was raised from $18 to $50, and for independent claims in excess of 3 was raised from $86 to $200.[50] In response, applicants have reduced the average number of claims they filed and the USPTO must have recorded a decline in the average number of claims submitted by applicant. Independent research data on this US effect was recently published by researchers at the EPO as shown in Figure 6. Two observations are worthy of note:

1) Applicant's behavior appears to indicate some permanence to the change, indicating that the relative decrement step in the number of claims can be expected to remain in the long term.

2) A reduction of approximately 20% in the average number of claims appears to have taken place, although foreign applicants were slower to absorb the price increase information.

A detailed study that can only be done by the USPTO can reveal the price elasticity associated by this 20% decrease in claim count. However, given that by cutting down, applicants probably saved several hundred dollars on average, one can envision structuring an incentive to applicants that credits them by several hundred dollars in exchange for further reducing their total claims. While another 20% reduction is unlikely, perhaps a 10% reduction may be feasible. Another alternative is for the USPTO to ask Congress to authorize yet another graduated fee increase, with slope breakpoints at 10 and 15 claims and at two independent claims.



**Figure 6.** A decline in the average number of claims filed in US patent applications after an increase in claim fees in December 2004. USPTO applicants from North America appeared more informed and responded quickly while applicants from Europe and Japan responded more slowly. *Source*: Archontopoulos et al, note 25, Courtesy Elsevier B.V.

---

[50] See changes to 37 C.F.R. § 1.17 from that in 2004.

*3.5.2  The disproportionate adverse impact on small entities*

Generally, as Figure 3 shows, small entities rely on more patent claims than large entities. The USPTO did not adequately analyze its data to determine whether small entities are disproportionately affected. By USPTO's own criteria for economic impact, its claims distribution data shows that small entities are 40% more likely than large entities to be impacted by the Claims-Limit Rule.[59] Small entities particularly affected are those in industries requiring larger number of claims in applications, such as the Biotechnology and Pharmaceutical industries, as described below. Moreover, as discussed in Section 3.2 above, small entity applications have more references cited therein than those by large entities, disproportionately increasing their ESD costs compared to large entities. By failing to properly analyze the disproportionate adverse impact on small entities in key growth industries, the USPTO failed to consider an important aspect of the problem.

*3.5.3  The disproportionate adverse impact on emerging growth industry segments*



**Figure 4.** Small entities' total claims distribution by technology center for applications in FY 2006. This chart is based on all but the 1.1% of applications with more than 10 independent claims. *Source:* USPTO A04757.

The USPTO failed to analyze its data and consider whether the New Rules would disproportionately affect applicants in certain industry segments. As shown in Figure 4 and Table 1, applicants particularly affected are those in emerging technology industries requiring larger number of claims in applications. Top among the disproportionately affected are the Biotechnology, Organic Chemistry and Pharmaceutical industries. The impact on such industries is not only due to the increased fraction of applications subject to the ESD filing

---

[59] Email from Robert Bahr to John Collier, May 6, 2007, (A08241), (The claims by application family spreadsheet shows that of the 94,613 applications filed by small entities, 5,948 (6.3%) were in families with more than 15/75 claims and that of the 232,461 applications filed by large entities, 10,239 (4.4%) were in families with more than 15/75 claims. Thus, by USPTO's own measure, small entities are 1.4 (6.3/4.4) times more likely to be affected).

16

**Printed from the ECF scanned image**

*3.3.2   Financial Incentives For Applications With Reduced Number of Claims.*

The USPTO has recently obtained information on the effect of claim fee changes on the average number of claims filed in an application. Effective December 2004, the USPTO obtained the authority to impose higher fees on applicants based on the number of claims they file. The fee for claims in excess of 20 was raised from $18 to $50, and for independent claims in excess of 3 was raised from $86 to $200.[50] In response, applicants have reduced the average number of claims they filed and the USPTO must have recorded a decline in the average number of claims submitted by applicant. Independent research data on this US effect was recently published by researchers at the EPO as shown in Figure 6. Two observations are worthy of note:

1) Applicant's behavior appears to indicate some permanence to the change, indicating that the relative decrement step in the number of claims can be expected to remain in the long term.

2) A reduction of approximately 20% in the average number of claims appears to have taken place, although foreign applicants were slower to absorb the price increase information.

A detailed study that can only be done by the USPTO can reveal the price elasticity associated by this 20% decrease in claim count. However, given that by cutting down, applicants probably saved several hundred dollars on average, one can envision structuring an incentive to applicants that credits them by several hundred dollars in exchange for further reducing their total claims. While another 20% reduction is unlikely, perhaps a 10% reduction may be feasible. Another alternative is for the USPTO to ask Congress to authorize yet another graduated fee increase, with slope breakpoints at 10 and 15 claims and at two independent claims.



**Figure 6.** A decline in the average number of claims filed in US patent applications after an increase in claim fees in December 2004. USPTO applicants from North America appeared more informed and responded quickly while applicants from Europe and Japan responded more slowly. *Source*: Archontopoulos et al, note 25, Courtesy Elsevier B.V.

---

[50] See changes to 37 C.F.R. § 1.17 from that in 2004.

# Printed from the ECF scanned image

### 3.5.2  The disproportionate adverse impact on small entities

Generally, as Figure 3 shows, small entities rely on more patent claims than large entities. The USPTO did not adequately analyze its data to determine whether small entities are disproportionately affected. By USPTO's own criteria for economic impact, its claims distribution data shows that small entities are 40% more likely than large entities to be impacted by the Claims-Limit Rule.[59] Small entities particularly affected are those in industries requiring larger number of claims in applications, such as the Biotechnology and Pharmaceutical industries, as described below. Moreover, as discussed in Section 3.2 above, small entity applications have more references cited therein than those by large entities, disproportionately increasing their ESD costs compared to large entities. By failing to properly analyze the disproportionate adverse impact on small entities in key growth industries, the USPTO failed to consider an important aspect of the problem.

### 3.5.3  The disproportionate adverse impact on emerging growth industry segments



Figure 4. Small entities' total claims distribution by technology center for applications in FY 2006. This chart is based on all but the 1.1% of applications with more than 10 independent claims. *Source*: USPTO A04757.

The USPTO failed to analyze its data and consider whether the New Rules would disproportionately affect applicants in certain industry segments. As shown in Figure 4 and Table 1, applicants particularly affected are those in emerging technology industries requiring larger number of claims in applications. Top among the disproportionately affected are the Biotechnology, Organic Chemistry and Pharmaceutical industries. The impact on such industries is not only due to the increased fraction of applications subject to the ESD filing

---

[59] Email from Robert Bahr to John Collier, May 6, 2007, (A08241), (The claims by application family spreadsheet shows that of the 94,613 applications filed by small entities, 5,948 (6.3%) were in families with more than 15/75 claims and that of the 232,461 applications filed by large entities, 10,239 (4.4%) were in families with more than 15/75 claims. Thus, by USPTO's own measure, small entities are 1.4 (6.3/4.4) times more likely to be affected).

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of January 2008, I sent the foregoing for filing with the Clerk of the Court, which upon entry will send electronic notification of such filing (NEF) to all counsel of record.

By: *[signature: Ron Katznelson]*
Ron D. Katznelson, Ph.D.
Encinitas, CA.
Office: (760) 753-0668
rkatznelson@roadrunner.com