**UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| **TRIANTAFYLLOS TAFAS,** | |
|         **Plaintiff,** | |
|    **v.** | **CIVIL ACTION: 1:07cv846 (JCC/TRJ)** |
| **JON W. DUDAS,** in his official capacity as Under-Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office, and the **UNITED STATES PATENT AND TRADEMARK OFFICE,** | **and Consolidated Case (below)** |
|         **Defendants.** | |
| **SMITHKLINE BEECHAM CORPORATION,** | |
|         **Plaintiff,** | |
|    **v.** | |
| **JON W. DUDAS,** in his official capacity as Under-Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office, and the **UNITED STATES PATENT AND TRADEMARK OFFICE,** | |
|         **Defendants.** | |

## PLAINTIFF TRIANTAFYLLOS TAFAS' MEMORANDUM OF LAW
## IN SUPPORT OF HIS MOTION FOR RECONSIDERATION

| | |
|---|---|
| William R. Golden Jr., Esq. (Of Counsel) | Joseph D. Wilson, III, Esq. |
| Steven Moore, Esq. (*Pro Hac Vice*) | Joanna E. Baden-Mayer, Esq. |
| James E. Nealon, Esq. (*Pro Hac Vice*) | KELLEY DRYE & WARREN LLP |
| Delphine Knight Brown, Esq. (Of Counsel) | Washington Harbor, Suite 400 |
| KELLEY DRYE & WARREN LLP | 3050 K Street, NW |
| 101 Park Avenue | Washington, DC 20007 |
| New York, New York 10178-0002 | Telephone: (202) 342-8400 |
| Telephone: (212) 808-7992 | Facsimile: (202) 342-8451 |
| Facsimile: (212) 808-7897 | E-mail: jwilson@kelleydrye.com |
| E-mail: wgolden@kelleydrye.com |        jbaden-mayer@kelleydrye.com |
|       smoore@kelleydrye.com | |
|       jnealon@kelleydrye.com | |
| | |
| Counsel for Plaintiff Triantafyllos Tafas | |

Dockets.Justia.com

**PRELIMINARY STATEMENT**

The Plaintiff, Dr. Triantafyllos Tafas ("Tafas"),  by and through his undersigned attorneys, KELLEY DRYE & WARREN LLP, hereby respectfully submits this memorandum of law in support of his motion for reconsideration of the Court's January 9, 2008 Memorandum Opinion (the "Decision") overruling Tafas' Objection to Magistrate Thomas Rawles Jones, Jr.'s written Order dated November 28, 2007, which granted Defendant's motion for a protective order and denied Tafas' and Smithkline Beecham Corporation's ("GSK") respective motions to compel production of a complete administrative record and a privilege log.  GSK did not file FRCP 72 Objections after Magistrate Jones' denied GSK's motions to compel discovery. [1]

Tafas files the present motion because the Court appears to have misapprehended the parties positions on certain key facts in the record and, in the process, accepted erroneous interpretations of the law espoused by the USPTO.  In its Decision, the Court has seemingly departed from long-standing administrative law precedents, inter alia, by essentially redefining the proper scope of an administrative record in the rule making context; by recognizing a new quasi-form of privilege for "deliberative materials"; and, dispensing with the traditional requirement that privilege logs must be provided to substantiate privilege claims.

First, the Court's Decision seemingly endorses a new form of sweeping quasi-privilege for so called "deliberative materials" -- independent of the exacting requirements of the very narrowly construed deliberative process privilege.   The Decision also appears to alter the longstanding rule that an administrative record properly consists of all documents and information reviewed or considered, directly or indirectly, by the agency.  The Court appears to

---

[1] In the interests of brevity and assuming the Court's familiarity with the very recent proceedings, Tafas respectfully refers the Court to and begs leave to incorporate by reference the applicable procedural history of the present proceedings as set forth in the Decision and the underlying motion papers.

be authorizing the USPTO to withhold -- on relevance grounds -- *deliberative materials* that the USPTO considered, reviewed or relied upon as part of its rule making even where the documents may not otherwise satisfy all of the necessary multiple elements of the deliberative process privilege or other privileges.   Tafas respectfully submits that no such relevance exception exists and that the proper scope of relevance is defined simply by whether or not the materials in question were considered or reviewed by the agency.    While a government agency is entirely free to withhold privileged documents that it may have considered or relied upon from the administrative record it files for judicial review, these privilege assertions must be substantiated and logged.

Reconsideration is also warranted because the Court found, that the thousands of documents being withheld from the present record by the USPTO constitute "*deliberative materials*" exempt from inclusion in the administrative record.  This finding is despite the fact that neither the Court, the USPTO's own counsel in this action nor Tafas have ever seen the documents nor, for that matter, even a list of the same.   Moreover, the Court seemingly overlooked the fact that the USPTO was also asserting attorney-client and attorney work product privileges.  Accordingly, at a minimum, a privilege log should at least have been required for these type of documents, which obviously are not fairly encompassed within the Court's newly minted "deliberative materials" exemption.

The practical implication of the Decision is to effectively render an agency's privilege calls absolutely immune to judicial review, particularly if the agency simply classifies the withheld documents as irrelevant deliberative materials (rather than as privileged),  because the Court has excused the normal requirement of a privilege log or *en camera* review.   The Decision also seemingly reverses the customary burden of proof for substantiating privilege

claims by shifting it from the proponent of the privilege (i.e., the USPTO) to the party challenging the privilege (i.e., Tafas). There is no practical way for Tafas to carry this newly shifted burden of disproving the USPTO's blunderbuss privilege assertion for thousands of documents because he is being denied the tools necessary to do so (i.e., production of a privilege log, *en camera* review, etc.).

In sum, the Court's Decision exempting the need for a privilege log in an APA rule-making setting is a blank check to government agencies that will give them unfettered discretion to shape their rule-making records with the awareness that any documents they classify as *deliberative materials* will never be known to the parties or the Court -- no less subject to challenge. Consequently, Tafas submits that the Decision creates a dangerous precedent that will adversely affect the quality and completeness of the administrative record in both this case and in all future judicial review of agency rule making.

Additionally, the Court's decision not to require the USPTO to produce a privilege log was predicated in substantial part, if not entirely, on the Court's apparent belief that the USPTO was <u>not</u> actually asserting privileges for the thousands of internal documents it was admittedly withholding from the record. Here, the Court plainly misapprehended the USPTO's position because the USPTO repeatedly admitted (both under oath and otherwise) that it was claiming attorney-client, attorney work product or deliberative process privileges for these documents. The production of an administrative record in an APA case is a mandatory disclosure and there is no exemption in FRCP 26(b)(5)(A) excusing the need for privilege logs in APA cases.

Second, the Court not only overlooked the fact that Tafas did identify specific documents missing from the record in the proceedings before Magistrate Jones, but also the fact

that the USPTO <u>admits</u> to withholding much of the material that Tafas has identified as missing from the administrative record.   Thus, Tafas is not merely speculating or theorizing that documents are missing from the record as stated in the Court's Decision.

Third, the missing record documents attached to Tafas' Objection to Magistrate Jones' Ruling were brought to Magistrate Jones' attention (even if not physically handed to the Magistrate for a document-by-document review).   The DOJ adamantly represented that the administrative record was complete both before Magistrate Jones and before this Court.   The fact that Tafas is able to present documents to the Court *at any time* reflecting either that the record may be incomplete and/or that the USPTO's assurances of completeness to the Court were erroneous are compelling grounds for reconsideration.

Finally, the Court applied the wrong legal standard by requiring Tafas to make a "strong showing" of bad faith and/or incompleteness of the administrative record as a precondition to being able to take discovery calculated to insure a complete administrative record.   The <u>Morgan</u> line of cases relied upon by the USPTO and adopted by the Court involved adjudicatory/quasi-judicial administrative proceedings with full and transparent records -- an informal agency rule-making as is the case here.   The requirement of a "strong showing" of bad faith in the <u>Morgan</u> line of cases was driven by a perceived need to protect the integrity of the <u>judicial</u> or <u>quasi-judicial</u> type decision-making process.   Those courts were justifiably concerned about protecting administrative law judges from being routinely deposed concerning their subjective thoughts about the official record of the adjudicatory proceedings (<u>e.g.</u>, the pleadings, evidence, hearing transcripts, memoranda of law, etc.) akin to the way that judges and jurors are not normally subject to deposition in court proceedings.   The same considerations, however, simply do not apply to an informal agency rule making where the administrative record springs

out of an agency "black box" and involves <u>policy making</u> over more then two years -- as distinguished from the various <u>adjudicatory</u> proceedings with closed and transparent records as are reflected in all the cases cited by the USPTO.

<u>S</u>TANDARD OF <u>R</u>EVIEW

"An interlocutory order is subject to reconsideration at any time prior to the entry of a final judgment." <u>Fayetteville Investors v. Commercial Builders, Inc.</u> , 936 F.2d 1462, 1469 (4th Cir. 1991). "A Court's decision to reconsider an interlocutory order ' is not subject to the strict standards applicable to motions for reconsideration of a final judgment' but is instead committed to the discretion of the Court." <u>Terry v. June</u>, 420 F. Supp. 2d 493, 498 ( W.D.Va. 2006) (quoting, <u>American Canoe Ass'n v. Murphy Farms, Inc.</u>, 326 F.3d 504, 514-15 (4th Cir. 2003)). The District Court has broad discretion to reconsider its interlocutory judgments. <u>Id</u>. at 515.

Motions for reconsideration of interlocutory orders "are left within the **plenary power** of the Court that rendered them to afford such relief from them **as justice requires**." <u>Fayetteville Investors</u>, 936 F.2d at 1473-74 (emphasis added)(citing, 7 Moore's Federal Practice ¶ 60.20, p.60-170). There need only be an appropriate basis for revisiting an interlocutory decision. <u>See</u> <u>e.g.</u> <u>In re Chong Kil Yom</u>, 2007 WL 2886357, at * 2 (E.D.Va.Bkr. Sept. 27, 2007)(subsequent taken deposition testimony need not be newly discovered evidence to provide an adequate basis for reconsideration)(slip op.)(citing, <u>American Canoe</u> (exceptional circumstances require reconsideration, i.e. evidence not previously considered). Motions to reconsider interlocutory orders are particularly appropriate if the Court has misapprehended a party's position or the facts or applicable law, or when the party produces new evidence that

could not have been obtained through the exercise of due diligence. See e.g. United States v. Duke Energy, 218 F.R.D. 468, 474 (M.D.N.C. 2003).

This Court has previously recognized the appropriateness of a motion for reconsideration where the Court had misunderstood a party or committed an error of apprehension. See Simchick v. Fairfax County School Bd., 2006 WL 1390557 (E.D.Va. May 17, 2006). This Court has also been guided by Rule 60(b) which allows a court to modify an order on grounds of mistake, inadvertence, excusable neglect or any other reason justifying relief. See e.g. Deshazo v. Smith, 2006 WL 3424045 (E.D.Va. Nov. 22, 2006)(motion for reconsideration granted in the interests of justice); Konan v. Sengel, 2006 WL 3304214 (E.D.Va. Nov. 7, 2006).

### ARGUMENT

### Point I

### THE COURT MISAPPREHENDED THE PARTIES' POSITION AND APPLICABLE LAW BY NOT REQUIRING THE USPTO TO PROVIDE A PRIVILEGE LOG

**A.. The Court Misapprehended That The USPTO Is Not Asserting Attorney-Client, Attorney Work Product or Deliberative Process Privileges**.

In its Decision, the Court seemingly agreed with Tafas that a government agency carries the burden of substantiating any claims of privilege on a document-by-document basis:

> Although neither the Fourth Circuit nor the Federal Circuit have specifically addressed the question of when a privilege log is required in an APA proceeding, other district courts have considered similar questions and have reached consistent conclusions. Once a court has determined that a plaintiff has provided enough evidence for the court to conclude that the agency has omitted otherwise relevant material from the administrative record, the agency must explain its decision to do so. Although "some agency documents, such as purely internal deliberative materials, may be protected from inclusion in the administrative record, ... *Defendants must make a specific*

7

> *showing establishing the application of a privilege for <u>each</u> document that it contends that it may withhold based on privilege.*" <u>People of State of Cal. ex rel. Lockyer v. U.S. Dep't of Agriculture</u>, WL 708914, at *3-4 (N.D.Cal. Mar. 16, 2006)(citing <u>Arizona Rehabilitation Hospital, Inc. v. Shalala,</u> 185 F.R.D. 263, 267 (D.Ariz.1998)).

Decision, 2008 WL 112043 at p. 10 (Emphasis Added).

> Furthermore, when claiming deliberative process privilege, **"[t]he initial burden of establishing the applicability of the privilege is on the government. In addition to showing that withheld documents fall within the claim of privilege, the government must comply with formal procedures necessary to invoke the privilege," including the provision of a privilege log**. <u>Greenpeace v. National Marine Fisheries Service,</u> 2000 WL 343906, at *1 (W.D.Wash. Feb. 24, 2000)(citing <u>Redland Soccer Club,</u> 55 F.3d 827, 854 (3rd Cir.1995); <u>Exxon Corp.,</u> 91 F.R.D. at 43-44; <u>Mobil Oil Corp. v. Dep't of Energy,</u> 520 F.Supp. 414, 416 (N.D.N.Y.1981)). "Blanket assertions of the privilege are insufficient" to demonstrate its applicability to a particular document, <u>Greenpeace,</u> 2000 WL 343906, at *1 (citing <u>Exxon Corp.,</u> 91 F.R.D. at 43), and an agency's failure to have "made the objection [of privilege] with respect to certain documents ... could be construed as a waiver of its claim to privilege." <u>Miami Nation of Indians of Indiana, Inc. v. Babbitt,</u> 979 F.Supp. 771, 778 (N.D.Ind.1996) (citing <u>Mary Imogene Bassett Hospital v. Sullivan,</u> 136 F.R.D. 42, 44 (N.D.N.Y.1991)).

Decision, 2008 WL 112043 at p. 11 (Emphasis Added).

Despite agreeing with the above line of cases, the Court nonetheless refused to compel the USPTO to produce a privilege log reasoning that the USPTO had <u>not</u> actually asserted a privilege for the documents in question:

> As discussed in Part III.A. of this Opinion, however, the USPTO's claim is that the omitted documents, though they may very well be subject to the deliberative process privilege, were withheld from the record on the ground that they are irrelevant to arbitrary and capricious review. **Were the USPTO to claim privilege for certain excluded documents that should otherwise be a part of the administrative record, Tafas's request for a privilege log would stand on stronger ground**.

Decision, 2008 WL 112043 at p. 11 (Emphasis Added)(Citations Omitted).

Reconsideration of the Court's refusal to compel production of a privilege log is warranted because the Court plainly misapprehended that the USPTO was not claiming privilege with regard to excluded documents. In fact, the PTO has repeatedly taken the position and has admitted over and over again that it is withholding potentially thousands of documents from the administrative record based on grounds of privilege.

For example, in its initial Certification of the Administrative Record dated October 5, 2007 filed with this Court (Docket No. 21), Jennifer McDowell of the USPTO confirmed under oath that the USPTO had excised privilege documents from the administrative record:

> 5. The documents listed in the accompanying Index…and filed with the Court are…a true, accurate and complete copy of the administrative record in this matter.
>
> 6. **Privileged documents reflecting _internal agency deliberations_, attorney-client communications, and attorney work product have been excluded from the administrative record.** Where only a portion of a document is privileged, the privileged information has been redacted....

Sworn Certification of Jennifer McDowell, ¶¶ 5-6 (Emphasis Added)(Docket No. 21; Ex. 5 to Tafas Mem. In Opposition to Motion for Issuance of Expedited Briefing Schedule dated November 14, 2007 (Docket No. 66).

Similarly, the USPTO repeatedly admitted at the November 16, 2007 and November 27, 2007 hearings before Magistrate Jones that it had withheld as privileged a vast amount of documents from the administrative record:

> MS. WETZLER: [T]hese deliberative, they are of course deliberative materials. But deliberative materials don't belong in a record, they are immaterial. And, therefore, we have no obligation to provide a privilege log. We asked --

THE COURT:   Well, Mr. Nealon's point, I expect, is that he needs a privilege log to determine if the materials that you claim were deliberative were in fact deliberative.

MS.  WETZLER:  Your Honor, there is a presumption of regularity of what the government does.

THE COURT:   I understand.

MS. WETZLER:   And <u>unless Mr. Nealon could provide specific reasons to believe</u> **that what we have designated as privileged is not privileged**, the reasoning…is incredibly compelling….

             *          *          *          *

MS. WETZLER:   [T]his is a burden that the Government should not have to bear because in any administrative decision there are going to be deliberative materials, **there are going to be extensive deliberative materials** –

11/16 Hearing Tr. at pp. 40-41 (Emphasis Added).

[T]urning then <u>to the question of deliberative materials.  They are not part of the record.  It's not simply that they are privileged, it is that they are not part of the record</u>.

             *          *          *          *

MS. WETZLER:  That's not the focus.  And, therefore, there is no reason that these deliberative materials should have to come out either themselves in a production or through enumeration in a privilege log.

Producing a privilege log in this case, Your, Honor, would be an extraordinarily burdensome task.  <u>These rules were in development for more than two years.</u>  **One can only imagine** how many, how much deliberation went into this and how many memoranda and e-mails and materials exist.

11/27 Hearing Tr. at pp. 39-40 (Emphasis Added).

MS. WETZLER:   And its not just the task of enumerating those [privileged] materials, its also the task of going back and pulling all those materials.  And I want to explain so that the Court isn't

confused about why it is that they weren't previously pulled at the time this record was generated.

And the reason is, the folks at PTO who worked on generating the record were intimately involved in this rulemaking and they knew where to look for the materials that make up the record. They knew where all the data was, they knew where all the comments were, they knew where all the communications.

The only thing that they were not reviewing were <u>deliberative</u> materials, which they knew to be in the possession of 20-30 attorneys. Therefore, creating a situation where these [deliberative materials] <u>would not only be attorney/client materials, but they would also be deliberative</u>..

THE COURT:   So they assumed that anything in an attorney's possession would be covered by one <u>or the other </u>of the privileges?

        *           *           *           *

11/27 Hearing Tr. at pp. 40-41 (Emphasis Added).

Likewise, the USPTO repeatedly confirmed in its written submissions to the

Court that it viewed the documents it was withholding from the record as subject to attorney-

client, attorney work product and deliberative process privileges:

[T]he USPTO has not withheld documents only because they are subject to the *deliberative process privilege,* <u>though the withheld documents are subject to that privilege, among others,</u> and their disclosure would represent an "extraordinary intrusion" into the workings of an executive agency.

Def. Mem. In Opp. To Plaintiff's Request for a Privilege Log dated November 20, 2007 at p. 3

(Docket No. 74).

7.      If the USPTO were now required to produce a privilege log of documents withheld from the administrative record because they are deliberative in nature, between twenty and thirty employees would have to devote enumerable hours to collecting and <u>reviewing more than two years' worth of their internal communications relating to the Final Rules.</u>

8.      These communications would include, among other categories of documents: emails, memoranda, drafts of the Final Rules and Federal Register notices, contributions to internal discussion boards, issue papers, meeting notes, and more.

9.      I estimate that there are **at a minimum**, several hundred *privileged* documents, **and very possibly <u>thousands</u> of [privileged] documents**.

Jennifer McDowell Declaration dated November 20, 2007 at p. 3 (Docket No. 74-4).

For all the foregoing reasons, the Court has misapprehended the USPTO's position and thus erroneously concluded that no privilege log was necessary because no privilege was being asserted.   Tafas is not "speculating" or "theorizing" that documents are being withheld as privileged.  Quite to the contrary, the USPTO is admitting that it is withholding years of "internal communications" and potentially <u>thousands</u> of documents as **privileged**.   Since the Court has noted in its Decision that a privilege log would be needed in such an instance, reconsideration is warranted.   (<u>See</u> discussion, <u>infra,</u> at pp. 7-8).

Along the same lines, the Court misapprehended the USPTO's position when it conditioned Tafas' ability to obtain a privilege log on him first proving to some high degree of certainty that specific documents are missing from the administrative record.  (<u>See</u> Decision, 2008 WL 112043 at p. 12).   Again, Tafas does not need to speculate or independently prove this because the PTO readily <u>admits</u> that it is withholding hundreds and most probably thousands of documents that would otherwise be included in the administrative record filed with the Court based on various privileges.[2]

---

[2]  The present situation is nothing like <u>Blue Ocean</u>, where there was no indication that any documents were even being withheld by the government based on privilege. See <u>Blue Ocean Institute v. Gutierrez</u>, 503 F. Supp.2d 366, 371-72 (D.D.C. 2007) (Plaintiffs merely theorized unspecified additional documents might exist).

In any event, even assuming *arguendo* that such a requirement existed as a precondition to obtaining a privilege log, it has been satisfied here by the USPTO's own admission.

**B.    There Is No Valid Basis For The USPTO Not To Provide A Privilege Log Concerning Its Assertions of Attorney-Client or Attorney-Work Product Privileges.**

As will be discussed in the next sub-section, Tafas respectfully submits that the USPTO is required to log any claim of privilege regardless of the type of privilege being asserted and that there is no special exemption as a matter of law from this fundamental requirement for so called "deliberative materials" as is implied in the Court's decision

The USPTO has claimed the attorney-client and attorney-work product privilege here as well as the deliberative process privilege for the excluded documents .    Thus, the Court erred in sweeping all the privileges together and extending a blanket "deliberative materials" exemption to the traditional privilege log requirement to materials allegedly covered by attorney-client or attorney-work product privileges.    Accordingly, the USPTO must be required to provide a privilege log with respect to all of its claims of attorney-client and attorney-work product privileges.

**C.    The Only Recognized Privilege Is A "Deliberative Process Privilege."  There Is No Separate And Distinct Quasi-Privilege For So Called "Deliberative Materials" Exempt from Privilege Log Requirements.**

This Court's Decision seemingly endorses a new form of sweeping quasi-privilege for so called "deliberative materials" -- independent of the exacting requirements of the very narrowly construed deliberative process privilege.   The Decision also appears to alter the longstanding rule that an administrative record properly consists of all documents and information reviewed or considered, directly or indirectly, by the agency.  The Court appears to

be authorizing the USPTO to withhold -- on relevance grounds -- *deliberative materials* that the USPTO considered, reviewed or relied upon as part of its rule making even where the documents may not otherwise satisfy all of the necessary multiple elements of the deliberative process privilege or other privileges.

There is no precedent that would support the PTO's admitted withholding of documents and materials that were directly or indirectly considered by the decision-makers at the time of decision under the mantra of "deliberative materials". To do so, would frustrate judicial review. The deliberative process privilege applies only to the mental impressions of decision-makers and its proper application is consistent with efficient and effective judicial review of agency decisions.

The Supreme Court made clear in <u>Overton Park</u> that review of an agency decision under APA Section 706 requires "a finding that the actual choice made was not 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'" and "[t]o make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." <u>Citizens to Preserve Overton Park, Inc. v. Volpe</u>, 401 U.S. 402, 416, 91 S.Ct. 814, 823-24, 28 L.Ed.2d 136 (1971). The basis for such plenary review is the "whole record" compiled by the agency defined as "the full administrative record that was before the [Decision-maker] at the time". <u>Id.</u> at 420. The Court acknowledged that a bare record may not disclose the factors that were considered or the decision-maker's construction of the evidence and, therefore, it may be necessary for the District Court to require some explanation in order to determine if the decision-maker acted within the scope of his authority and if his actions were justifiable, including the testimony of administrative officials who participated in the decision to explain their action. <u>Id.</u>

Designation of the administrative record for review by an agency is entitled to a presumption of regularity.  But in this case, the USPTO did not follow the DOJ's Guidelines for compiling the administrative record and, therefore, the USPTO is not entitled to any such presumption.  "An incomplete record must be viewed as a 'fictional account of the actual decision-making process.'" Home Box Office v. Federal Communications Comm'n, 567 F.2d 9, 54 (D.C. Cir. 1977).  The mere fact that the DOJ's promulgated Guidelines to Federal Agencies on Compiling the Administrative Record were missing from the produced administrative record (as opposed to the compiled administrative record) is in itself evidence of an improperly produced administrative record as clearly privilege cannot be asserted as to this document.

This case is most analogous to Tenneco Oil Co. v. Department of Energy.  In Tenneco, the Plaintiff contended that the mental process privilege was simply factually irrelevant  to the items of information sought in its discovery requests and suggested that the DOE was tacitly seeking to advance an executive privilege claim without fulfilling the requirements that  precondition a valid assertion of such a privilege. Tenneco, 475 F. Supp. 299 (D.Del. 1979).  The Delaware District Court agreed that Tenneco was entitled to discover any materials necessary to complete the administrative record holding that "[w]hen a showing is made that the administrative record is not complete, limited discovery is appropriate to resolve that question." Id. at 317.  It is well-established that '[t]he complete administrative record consists of all the documents and materials that were directly or indirectly considered by the decision-makers at the time the decision-makers were rendered." Id.  In Tenneco, the transmitted record contained primarily the Company's submissions to the agency, along with the formal decisions and orders issued.  In allowing limited discovery, the Tenneco Court reasoned that "[i]t strains the Court's imagination to assume that the administrative decision-makers reached their

conclusions without reference to a variety of internal memoranda, guidelines, directives, and manuals and without considering how arguments similar to Tenneco's were evaluated in prior decisions by the agency.  DOE may not unilaterally determine what shall constitute the administrative record and thereby limit the scope of this Court's inquiry." Id.  The Tenneco Court noted that the cases in which deliberative process privilege has been developed involved efforts to depose decision-makers concerning their method and rationale for decision.  The Court in Tenneco also noted that the government had not raised its claims of privilege with regard to particular items and ruled that DOE had "to identify documents or communications with sufficient specificity to enable the Court to meaningfully evaluate whether the information sought involved the internal deliberative process by which a decision or agency position was reached." Id. at 319.  A privilege log would certainly satisfy this particularity requirement.

Tafas respectfully submits that no relevance exception[3] exists to an agency's compilation of an administrative record.  Reconsideration is warranted because the proper scope of relevance is defined, as noted in the Decision, simply by virtue of whether or not the materials in question were considered or reviewed by the agency in its rulemaking, and regardless of whether they were relied upon or actually incorporated into the ultimate rule making:

> Section 706 of the APA commands the reviewing court to review the "whole record or those parts of it cited by a party." 5 U.S.C. § 706. Thus, the agency must produce a  complete and true record for the court to review. See, e.g., Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971)(finding that a court reviewing agency action under the APA must consider "the full

---

[3]  Whether or not so called deliberative material would be admissible at trial with respect to the issue of whether or not the USPTO's new rules are arbitrary and capricious is not the standard for determining whether such materials are discoverable as the USPTO argued and the Court's decision implies. (See Decision, 2008 WL 112043 at pp. 4 and 11).   Rather, the scope of permissible discovery is very broad and the potential inadmissibility at trial of information sought at discovery stage is not grounds for objection if the information appears at least reasonably calculated to lead to the discovery of admissible evidence.  E.g., EEOC v. Electro-Term, Inc.,167 F.R.D. 344 (D. Mass. 1996).

administrative record that was before the [decision-maker] at the time he made his decision"); <u>Bar MK Ranches v. Yuetter,</u> 994 F.2d 735, 739 (10th Cir.1993) (finding that on arbitrary and capricious review the district court "must have before it the 'whole record' on which the agency acted"); <u>Walter O. Boswell Memorial Hosp. v. Heckler,</u> 749 F.2d 788, 792 (D.C.Cir.1984) (holding that the reviewing court "should have before it neither more nor less information than did the agency when it made its decision"). The whole administrative record includes pertinent but unfavorable information, and an agency may not exclude information on the ground that it did not "rely" on that information in its final decision. *See, e.g.,* <u>Thompson v. United States Dep't of Labor,</u> 885 F.2d 551, 555 (9th Cir.1989)("The 'whole' administrative record ... consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position"); <u>Ad Hoc Metals Coalition v. Whitman,</u> 227 F.Supp.2d 134, 139 (D.D.C.2002)(holding that a complete record must include any materials that were "referred to, considered by, or used by [the agency] before it issued its final rule"); <u>Environmental Defense Fund, Inc. v. Blum,</u> 458 F.Supp. 650, 661 (D.D.C.1978)("The agency may not ... skew the 'record' for review in its favor by excluding from that 'record' information in its own files which has great pertinence to the proceeding in question.").

Decision at 2008 WL 112043 at p. 3.


Courts have allowed discovery, however, in situations where "those challenging agency action have contended the record was incomplete." <u>Public Power Council v. Johnson,</u> 674 F.2d 791, 794 (9th Cir.1982); *see also* <u>Bar MK Ranches,</u> 994 F.2d at 740 ("When a showing is made that the record may not be complete, limited discovery is appropriate to resolve that question.")(citing <u>Tenneco Oil Co. v. Dep't of Energy,</u> 475 F.Supp. 299, 317 (D.C.Del.1979)). The record is incomplete if it fails to provide a court with all of the documents, memoranda, and other evidence that was considered directly or indirectly by the agency. <u>Exxon Corp. v. Dep't of Energy,</u> 91 F.R.D. 26, 33 (N.D.Tex.1981); <u>Public Power Council,</u> 674 F.2d at 794; <u>NRDC, Inc. v. Train,</u> 519 F.2d 287, 292 (D.C.Cir.1975).

Decision at 2008 WL 112043 at p. 4.

The practical implication of the Decision is to effectively render an agency's privilege calls absolutely immune to judicial review, particularly if the agency simply classifies the withheld documents as irrelevant deliberative materials (rather than as privileged), because the Court has excused the normal requirement of a privilege log or *en camera* review. There is no practical way for Tafas to carry this newly shifted burden of disproving the USPTO's blunderbuss privilege assertion for thousands of documents because he is being denied the tools necessary to do so (i.e., production of a privilege log, *en camera* review, etc.). The practical implication of the Decision is to effectively render an agency's privilege calls absolutely immune to judicial review, particularly if the agency simply classifies the withheld documents as irrelevant deliberative materials (rather than as privileged), because the Court has excused the normal requirement of a privilege log or *en camera* review. The Decision also seemingly reverses the customary burden of proof for substantiating privilege claims by shifting it from the proponent of the privilege (i.e., the USPTO) to the party challenging the privilege (i.e., Tafas).

Of course, it is axiomatic that the whole *raison d'etre* of the privilege log requirement is to create at least some limited means for judicial oversight concerning privilege redactions and to enable adverse parties to intelligently evaluate any privilege claim:

> The purpose of preparing a privilege log is to assist the court and the parties in performing the careful analysis that a privilege or immunities evaluation demands….

Horace Mann Ins. Co. v. Nationwide Mutual Ins. Co., 240 F.R.D. 44, 47 (D. Conn. 2007).

In sum, the Court's Decision exempting the need for a privilege log in an APA rule-making setting is the equivalent of a blank check to government agencies that will give them unfettered discretion to shape their rule making records with the awareness that any documents they classify as *deliberative materials* will never be known to the parties or the Court -- no less subject to challenge. Consequently, Tafas submits that the Decision should be reconsidered

because it creates a dangerous precedent that will adversely affect the quality and completeness of the administrative record in both this case and in all future judicial review of agency rule-making.

While a government agency is entirely within its rights to withhold privileged documents that it may have considered or relied upon from the administrative record it files for judicial review, these privilege assertions/excisions must be substantiated and logged with the government bearing the burden of establishing on a document-by-document basis that each document meets each and everyone of the numerous requirements and preconditions necessary to establish a deliberative process privilege.

As such, to the extent that any of the thousands of documents the USPTO is withholding from the record do not satisfy each and every necessary element of the applicable privileges being asserted, then both by logical extension, and very definition, the record here would be incomplete because it does not contain all documents or materials considered in connection with the USPTO's rule-making.

### D. The Norris Line Of Cases Dealt with Complete Records of Adjudication Proceedings Where Privilege Logs Were Not Necessary

The cases relied on by this Court in its Decision involve complete records of adjudications where the proposed discovery was designed to probe the mental processes of decision-makers in the extreme such that a privilege log would be not be required.

In Town of Norfolk v. U.S. Army Corps of Engineers, the Town took the position that every oral communication with a government agency should be included in the administrative record, even if these documents are not in the possession of the agency. Town of Norfolk v. U.S. Army Corps of Engineers, 968 F.2d 1438, 1456 (1st Cir. 1992). Town of Norfolk involved a challenge to an order issued by the Army Corps. of Engineers after an

19

adjudicatory process and plaintiffs sought extensive discovery outside the administrative record without even an allegation of bad faith. Tafas on the other hand merely requests all documents that were directly or indirectly considered in the rule-making and if any such documents are withheld based on the deliberative process privilege that they be included on a privilege log so this Court can determine the applicability of the privilege and whether the record for review is complete

Internal memoranda prepared by SEC employees analyzing the evidence received by the trial examiner were deemed part of the Commission's decisional process and thus subject to the deliberative process privilege in Norris v. Hirschberg, Inc., 163 F.2d 689 (D.C. Cir. 1947). Norris involved a company seeking judicial review of an SEC order that adversely effected it. Norris did not rule that the documents the SEC employees considered either directly or indirectly could be excluded from the administrative record as "deliberative materials". This Court is the first to make this extension. See Decision at p. 10. The Norris Court appropriately preserved the internal decisional process in an adjudicatory proceeding from being probed on appeal in the absence of a showing of bad faith.

The Ninth Circuit Court of Appeal in Portland Audubon Society v. Endangered Species Comm'n, recognized the deliberative process privilege for the internal deliberative process of the agency or mental processes of individual agency members but ruled that the record should be supplemented with any improper *ex parte* communications between agency decision-makers and outside parties because "materials" the agency relied on should be included in the record. Portland Audubon Society v. Endangered Species Comm'n, 984 F.2d 1534 (9th Cir. 1993). This case too involved an adjudicatory proceeding but plaintiffs had asserted bad faith so the court recognized that limited discovery to complete the record might be warranted

consistent with <u>Morgan</u> and its progeny.  The Ninth Circuit thus also recognized the narrow scope of the deliberative process privilege consistent with the paramount concern that the record be complete.

In <u>Amfac Resorts, LLC v. U.S. Dep't. of the Interior</u>, the District of Columbia District Court, when defining the scope of judicial review to exclude "deliberative intra-agency memoranda and other such records" from the <u>produced</u> administrative record as falling under the deliberative process privilege, reiterated that "a complete administrative record should include all materials that 'might have influenced the agency's decision' and not merely those on which the agency relied." <u>Amfac Resorts, LLC v. U.S. Dep't. of the Interior,</u>143 F. Supp.2d 7, 12 (D.D.C. 2001).  The <u>Amfac</u> Court illustrates quite clearly that there is no reliance test when compiling an administrative record even in adjudicatory cases where discovery outside the record is foreclosed absent a showing of bad faith.   The District Court in <u>Amfac</u> went on to note that even "if the agency decision-maker based his decision on the work and recommendations of subordinates, those materials should be included" in the record, <u>id.</u>, to reflect that "deliberative intra-agency memoranda ***and other such records***" should not be broadly interpreted.

The Court in <u>National Courier Association v. Board of Governors</u>, conducted an *en camera* of the redacted portions of internal agency memoranda and found such portions to consist of record summaries and expert or legal opinions properly withheld pursuant to the deliberative process privilege. <u>National Courier Association v. Board of Governors</u>, 516 F.2d 1229 (D.C.Cir. 1975). There was no bad faith showing in <u>National </u>Courier.  However, the Court nonetheless conducted an *en camera* review to ensure that redactions fell within the deliberative process privilege.  This Court should at the very least review *en camera* the documents the

USPTO has excluded from the record to determine whether the narrow deliberative process privilege applies to any of them before concluding that they need not be included in the record.

The District Court for the District of Columbia in <u>Blue Ocean Institute v. Gutierrez</u>, did not permit discovery to supplement an administrative record based on the presumption of regularity because plaintiff merely theorized that other documents existed.  <u>Blue Ocean Institute v. Gutierrez</u>, 503 F. Supp. 2d 366 (D.D.C. 2007).  The Plaintiff in <u>Blue Ocean</u> sought unspecified documents that it thought were likely to exist based solely on other documents that included in the record.  Consequently, the Court did not require a privilege log. Tafas knows excluded documents exist from outside sources and has so informed this Court. Tafas is not required to show bad faith in this review of a non-adjudicatory, rule-making proceeding to be entitled to the limited discovery sought but merely show the record is incomplete -- which Tafas has done (and it is not disputed).    Furthermore, unlike the agency in <u>Blue Ocean</u>, the USPTO in this case cannot point to specific portions of the record to explain its reasoning thus indicating the record is incomplete.

**E.    There Is No APA Exemption Under the Federal Rules of Civil Procedure or Applicable Law Excusing A Governmental Agency From Providing A <u>Privilege Log</u>.**

In its Decision, the Court seemingly agreed with Tafas that production by the USPTO of the true and complete administrative record was <u>mandatory</u> and that the USPTO -- not Tafas -- would of course carry the burden of proving the applicability of any privilege.  (<u>See</u> Decision at 2008 WL 112043 at pp. 10-11).

The USPTO's circular argument that a privilege log would only be required with respect to matter that would otherwise be part of a produced administrative record (as opposed to the compiled administrative record) filed in court and that privileged documents would never be

part of a produced administrative record filed in court is a tautology.  If the same logic was

applied in every federal court case, there would never be a need for a privilege log because it

would always be assumed that blanket assertions of privilege are valid and incontestable.[4]  This

makes no sense and is bad policy.

Tafas respectfully contends that the Decision is internally inconsistent concerning

whether a privilege log is required in this type of APA case.   On one hand, the Court approves

of and cites in its Decision to various cases cited by Tafas for the proposition that a government

agency has a duty to substantiate claims of deliberative privilege in an APA case (i.e.,

Greenpeace, Lockyer, Miami Nations, Tummino).[5]  Yet on the other hand, the Court simply

accepts the USPTO's tautological and entirely circular argument, based on Blue Ocean, that no

privilege log is necessary because privileged documents do not belong in a produced

administrative record on the grounds of relevancy.   With all due respect, Blue Ocean read this

way cannot be reconciled with the Greenpeace line of cases, which clearly approve of and

mandate that assertions of privilege need to be substantiated in APA cases.   The logic advanced

by the USPTO, and adopted by this Court, with respect to Blue Ocean  would entirely excuse

---

[4]  The USPTO's position would be akin to a litigant saying that no privilege log is required in a
routine case under the Federal Rules of Civil Procedure because even its liberal discovery rules
do not contemplate parties being forced to turn over privileged documents.  Of course, this is not
correct in that the Federal Rules contemplate privileged documents being withheld from
production based on privilege so long as claims of privilege are properly claimed and able to be
substantiated if challenged.  There is no reason for any exception to this same principle in the
APA context.

[5]  See also Trout Unlimited v. Lohn, 2006 WL 1207901 at *5 (W.D. Wash. 2006) (requiring
production of privilege log and in camera review);  Eugene Burger Mgmt. Corp. v. U.S. Dept. of
Housing and Urban Development, 192 F.R.D. 1 (D.D.C. Jul 12, 1999)(agency required to
produce privilege log);  Center for Biological Diversity v. Norton, 336 F.Supp.2d 1149, 1157-
1163 (D.N.M. 2004)(the government has the burden of establishing all the elements of the
deliberative process privilege and, to fulfill this burden, agencies typically submit declarations or
affidavits explaining in detail why the privilege applies): U.S. v. Farley, 11 F.3d 1385, 1388-
1391 (7th Cir. Ill. 1993)(approving of district court's use of privilege log and in camera review

any requirement to substantiate privilege claims in every APA case contrary to the <u>Greenpeace</u> line of cases.

Moreover, unlike FRCP 26(a)(1)(E) which exempts APA cases from initial mandatory disclosure requirements, there is <u>no</u> APA exemption in FRCP 26(b)(5)(A) which clearly <u>requires assertions of privilege to be substantiated by production of a privilege log</u> "…to enable the other parties to assess the applicability of the privilege or protection." <u>Compare</u> FRCP 26(a)(1)(E) and 26(b)(5)(a).

The only question now is whether the content of the thousands of documents the USPTO has failed to include in the produced administrative record actually qualify for the privileges being asserted (which is unknown and unknowable given the Court's rulings thus far). Whether or not the so called "deliberative materials" being withheld by the USPTO need to be produced from the compiled administrative record turns entirely on whether their privileged classification is supportable.   In other words, if these documents are <u>not</u> subject to a valid attorney-client, attorney work product or **deliberative process privilege** they must be now produced if they were considered directly or indirectly by the USPTO as part of this rule-making. In all events, all privileged documents must be logged as mandated by FRCP 26(b)(5)(A).

F.    **The Court Lacked Any Foundation In The Record To Conclude That The <u>Withheld Documents Were Either Deliberative Materials or Privileged</u>**.

Tafas respectfully submits that the Court misapprehended the legal standard for determining privilege by finding that entire classes and types of documents withheld from the administrative record over a more than two year period were in fact subject to a deliberative privilege <u>without ever reviewing the actual documents or even a privilege log</u>.  Instead, the Court

to determine challenges to agency's assertion of attorney-client and deliberative process privilege).

seemingly assumed that any internal USPTO communications must be subject to a deliberative

process privilege no matter what the content or context of each applicable document was:

> [T]afas contends that the record is "devoid of any <u>internal USPTO
> email, correspondence, summaries, drafts, work in progress or
> analysis</u>, evidencing USPTO's initial formulation of the rules or,
> for that matter, reflecting of any internal struggle." Tafas further
> claims that the USPTO's responses to negative comments "arise
> out of thin air" and that the administrative record lacks evidence of
> any "spade work" that would provide a basis for the USPTO's
> rejection of those comments. <u>All of these items, however, are
> prime examples of deliberative materials</u>….

> *          *          *          *

> [T]he USPTO argues, and the Court agrees, that these <u>internal
> emails</u>, <u>correspondence</u>, <u>summaries</u>, and <u>drafts</u> that Tafas seeks are
> not properly part of the administrative record in the first place.

Decision at 2008 WL 112043 at p. 11  (Emphasis Added).

The Court has reached this conclusion with respect to thousands of documents

that the Court and Tafas have never laid eyes on -- particularly where these same documents

have not even been located, no less reviewed by Jennifer McDowell (who certified the record)

and/or by the USPTO's Department of Justice attorneys in this case. [6]  (<u>See</u> McDowell

Quotations, <u>infra</u>, at pp.11-12).

---

[6]  The "burden" that the USPTO does not want to bear (referenced above) is not just the sheer
mechanical or administrative task of typing up a privilege log, <u>but rather taking the time and
effort to locate, segregate and review potentially internal deliberative material to determine
whether each such document is even privileged at all</u>.   The USPTO would prefer to simply
<u>assume</u> that all internal communications and a broad grouping of other categories of internal
documents are presumptively privileged (as obviously happened in this instance) thus obviating
the need for any actual search and review process.  Of course, this turns well established due
diligence requirements for the proper assertion of privilege on their head.

**Point II**

**TAFAS IS NOT SPECULATING THAT THE**
**ADMINISTRATIVE RECORD IS INCOMPLETE**

The USPTO has confirmed that it is withholding hundreds or thousands of such

documents and that they need not be produced because they are "deliberative materials."   Thus,

to the extent Tafas was speculating with respect to this class of documents his speculation has

been confirmed.   As discussed in Point I (infra), whether or not all internal communications at

the USPTO may properly be withheld by the USPTO turns on whether there is valid deliberative

materials privilege or some other type of legally cognizable privilege (e.g., work product,

attorney-client or deliberative process).  The outcome of this question will turn on how the Court

decides the issues presented in Point I and require no further discussion here.

As concerns the documents that Tafas contends are missing concerning the

USPTO proposing the rules in January 2006, Tafas is likewise not speculating that such

documents are missing because the USPTO admitted at the November 27th hearing that it

perceived no obligation to provide such documents.  (See Hearing 11/27/06 Hearing Tr. at pp. 37

line 19 to 38 line 24).

Tafas did in fact identify to Magistrate Jones documents missing from the record,

either in his papers and/or at the two (2) hearings, including the powerpoints attached to the

Objection to Magistrate Jones' ruling.   See Tafas Mem. In Opposition to Scheduling Order

dated November 14, 2007, pp. 8-24 and exhibits); Tafas Supp. Mem. in Support of Notices of

Deposition dated November 20, 2007 at pp. 2-6; November 27, 2007 Hearing Tr. at pp. 10-15;

19-26).   The missing record documents attached to Tafas' Objection to Magistrate Jones' Ruling

were brought to Magistrate Jones' attention (even if not physically handed to the Magistrate for a

document-by-document review).   The only reason that these were not actually physically

presented and handed up the Magistrate Jones at the bench is the USPTO did not specifically challenge the veracity of the statements made concerning the PowerPoints. The focus of debate at the hearing quickly shifted to relevancy and privilege issues. In any event, the fact that Tafas is able to present documents to the Court *at any time* reflecting either that the record may be incomplete and/or that the USPTO's assurances of completeness to the Court were erroneous are compelling grounds for reconsideration – particularly since the so called new exhibits provide proof-positive that the assurances of regularity and completeness being repeatedly conveyed to the Court by the USPTO were in fact erroneous. This is a case of crucial public importance and interest and all the parties and the Court should exert its best efforts to insure that the administrative record on which the case will be decided is complete and accurate.

**Point IIII**

**THIS COURT ERRED IN HOLDING TAFAS TO A BAD FAITH STANDARD FOR OBTAINING DISCOVERY IN ADJUDICATORY CASES IN THIS RULE-MAKING CASE**

Finally, the Court applied the wrong legal standard by requiring Tafas to make a strong showing of bad faith or incompleteness of the administrative record as a precondition to being able to take discovery calculated to ensure a complete administrative record. A strong showing of bad faith or improper behavior must be made before inquiry can be had of administrative officials who participated in a decision to explain their action, if findings were made at the time of decision and the process was a quasi-judicial proceeding. See Morgan v. United States, 298 U.S. 468, 480, 56 S.Ct. 906, 911, 80 L.Ed. 1288 (1936) (Morgan I). In general such inquiry might be necessary for the District Court to determine whether the decision-maker acted within the scope of his authority and if his actions were justifiable. But the Supreme Court in the Morgan cases foreclosed such inquiry in adjudication cases. See Morgan v. United States, 313 U.S. 409, 422, 61 S.Ct 999, 85 L.Ed 1429 (1941) (Morgan IV).

The Supreme Court in <u>Morgan I</u> made clear that "[a] proceeding of this sort requiring the taking and weighing of evidence, determinations of fact based upon the consideration of the evidence, and the making of an order supported by such findings, has a quality resembling that of a judicial proceeding." <u>Id.</u> at 480.  The Supreme Court highlighted the "full hearing" requirement as critical to the distinction that the trier of fact who receives and weighs evidence "shall be bound in good conscience to consider the evidence, to be guided by that alone, and to reach his conclusion uninfluenced by extraneous considerations which in other fields might have play in determining purely executive action." <u>Id.</u>  With these safeguards, discovery to explain agency action is not necessary and should not be countenanced absent a showing of bad faith.

The <u>Morgan</u> cases involved an adjudicatory process resulting in an administrative order.   The <u>Morgan</u> progeny cases cited by the USPTO and relied on by this Court in the Memorandum Opinion are inapposite to this case because they too deal with adjudication cases and extreme requests for discovery outside the administrative record.  This case involves an informal rule-making process that resulted in a change to USPTO policy and procedure.  Rule-making is simply not a "collaborative instrumentality of justice" entitled to the same deference from this Court as adjudication and, therefore, no bad faith showing is necessary for limited discovery beyond the record in aid of judicial review.

The same considerations, simply do not apply to an informal agency rule-making where the administrative record springs out of  a "black box" and involves <u>policy making</u> -- as distinguished from the various <u>adjudicatory</u> proceedings with closed and transparent records as are reflected in all the cases cited by the USPTO.    There simply is no threat to the integrity of the adjudicative process as was the case in <u>Morgan</u> and its progeny nor any reason to impose

insurmountable hurdles to the taking of limited discovery directed at the salutary objective of ensuring that the administrative record for an agency rule making is complete.

**CONCLUSION**

WHEREFORE, for all the foregoing reasons, as well as those set forth in Tafas' motion, and the proceedings below, Tafas respectfully moves the Court to reconsider its Decision, and to provide such other, further and different relief as the Court deems just, equitable and proper.

Dated: January 18, 2008                          Respectfully submitted,

                                                 ___/s/ Joanna Baden-Mayer_____
                                                 Joanna Baden-Mayer (VSB # 67920)
                                                 Joseph D. Wilson (VSB # 43693)
                                                 Steven J. Moore, Esq. *(pro hac vice)*
                                                 James E. Nealon, Esq. *(pro hac vice)*
                                                 KELLEY DRYE & WARREN LLP
                                                 Washington Harbor, Suite 400
                                                 3050 K Street, NW
                                                 Washington, DC 20007
                                                 Telephone: (202) 342-8400
                                                 Facsimile: (202) 342-8451
                                                 E-mail: jwilson@kelleydrye.com
                                                         jbaden-mayer@kelleydrye.com
                                                         jnealon@kelleydrye.com
                                                         smoore@kelleydrye.com

                                                 *Counsel for Plaintiff Triantafyllos Tafas*

Of counsel:

William R. Golden Jr., Esq.
Delphine Knight Brown, Esq.
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178-0002

Telephone:  (212) 808-7992
Facsimile:  (212) 808-7897
E-mail:  wgolden@kelleydrye.com
        dkbrown@kelleydrye.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Elizabeth Marie Locke
Kirkland & Ellis LLP
655 15th Street, NW, Suite 1200
Washington, DC  20005
Email:  elocke@kirkland.com

Craig Crandell Reilly
Richard McGettingan Reilly & West PC
1725 Duke Street, Suite 600
Alexandria, VA  22314
Email:  craig.reilly@rmrwlaw.com

Daniel Sean Trainor
Kirkland & Ellis LLP
655 15th Street, NW, Suite 1200
Washington, DC  20005
Email:  dtrainor@kirkland.com

*Counsel for Plaintiffs SmithKline Beecham Corp. d/b/a GlaxoSmithKline, SmithKline Beecham PLC, and Glaxo Group Limited, d/b/a GlaxoSmithKline*

Thomas J. O'Brien
Morgan, Lewis & Bockius
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Email:  to'brien@morganlewis.com

*Counsel for Amicus American Intellectual Property Lawyers Association*

Dawn-Marie Bey
Kilpatrick Stockton LLP
700 13th Street NW
Suite 800
Washington, DC  20005
Email:  dbey@kslaw.com

*Counsel for Amicus Hexas, LLC, The Roskamp Institute, Tikvah Therapeutics, Inc.*

James Murphy Dowd
Wilmer Cutler Pickering Hale & Dorr LLP
1455 Pennsylvania Avenue NW
Washington, DC  20004
Email:  james.dowd@wilmerhale.com

*Counsel for Amicus Pharmaceutical Research and Manufacturers of America*

Randall Karl Miller
Arnold & Porter LLP
1600 Tysons Blvd, Suite 900
McLean, VA  22102
Email: randall_miller@aporter.com

*Counsel for Amici Biotechnology Industry Organization and Monsanto Company*

Rebecca M. Carr
Pillsbury Winthrop Shaw Pittman, LLP
2300 N Street, NW
Washington, DC 20037
Email:  Rebecca.carr@pillsburylaw.com

Scott J. Pivnick
Pillsbury Winthrop Shaw Pittman
1650 Tysons Boulevard
McLean, Virginia 22102-4856
Email:  Scott.pivnick@pillsburylaw.com

*Counsel for Amicus Elan Pharmaceuticals, Inc.*

Robert Christian Bertin
Swidler Berlin LLP
3000 K Street, NW, Suite 300
Washington, DC 20007
Tel: (202) 373-6672
Email: r.bertin@bingham.com

*Counsel for Amicus Bar Association of the District of Columbia*

Robert C. Gill
Saul Ewing LLP
2600 Virginia Avenue, NW, Suite 1000
Washington, DC 20037
Tel: (202) 295-6605
Fax: (202) 295-6705
Email: rgill@saul.com

*Counsel for Amici BioAdvance, Life Sciences
Greenhouse of Central Pennsylvana, and
Pittsburgh Life Sciences Greenhouse*

Matthew Schruers
Computer & Communications
Industry Association
900 17th Street, NW, Suite 1100
Washington, DC 20006
Tel.: (202) 783-0070
Fax: (202) 783-0534
Email: mschruers@ccianet.org

*Counsel for Amici Public Patent Foundation,
Computer & Communications Industry
Association, AARP, Consumer Federation of
America, Essential Action, Foundation for
Taxpayer and Consumer Rights, Initiative for
Medicines, Access & Knowledge, Knowledge
Ecology International, Prescription Access
Litigation, Public Knowledge, Public Patent
Foundation, Research on Innovation, and Software
Freedom Law Center*

Kenneth Carrington Bass, III
Sterne, Kessler, Goldstein & Fox
1100 New York Avenue, NW, Suite 600
Washington, DC 20005
Tel: (202) 722-8825
Fax: (202) 371-2540
Email: kbass@skgf.com

Mark Fox Evens
Thelen, Reid & Priest, LLP
701 Eighth Street, NW, Fifth Floor
Washington, DC 20001-3721
Tel: (202) 722-8888
Email: mevens@skgf.com
*Counsel for Amici AmberWave Systems
Corporation, Fallbrook Technologies, Inc.,
InterDigital Communications LLC, Nano-
Terra Inc., and Tessera, Inc.*

Robert E. Scully Jr.
Stites & Harbison PLLC
1199 North Fairfax Street, Suite 900
Alexandria, Virginia 22314
(703) 739-4900
Fax: (703) 739-9577
Email: rscully@stites.com

*Counsel for Amicus Human
Genome Sciences, Inc.*

Charles Gorenstein
Birch, Stewart, Kolasch and Birch, LLP
8110 Gatehouse Rd., Suite 100 East
Falls Church, Virginia 22042
Email: cg@bskb.com

*Counsel for Amicus Intellectual Property Institute
of the William Mitchell College of Law*

Lauren A. Wetzler
Assistant United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22134
Tel: (703) 299-3752
Fax: (703) 299-3983
Email: Lauren.Wetzler@usdoj.gov

*Counsel for All Defendants*

Jonathan Dyste Link
Townsend and Townsend and Crew LLP
1301 K Street, NW, 9th Floor – East Tower
Washington, DC 20005
Tel: (202) 481-9900
Fax: (202) 481-3972
Email: jlink@townsend.com

*Counsel for Amicus CFPH, LLC*

Blair Elizabeth Taylor
Covington & Burling
1201 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 662-5669
Fax: (202) 778-5669
Email: btaylor@cov.com

*Counsel for Amicus Intellectual Property Owners
Association*

Kevin Michael Henry
Sidley Austin Brown & Wood LLP
1501 K Street, NW
Washington, DC 20005
Tel: (202) 736-8000
Email: khenry@sidley.com

*Counsel for Amicus Washington Legal Foundation*

John C. Maginnis, III
1350 Connecticut Avenue, NW, Suite 301
Washington, DC 20036
Tel: (202) 659-4420
Email: maginnislaw2@verizon.net

*Counsel for Amicus CropLife America*

Jackson David Toof
Robins, Kaplan Miller & Ciresi LLP
1875 Eye Street, NW, Suite 300
Washington, DC 20006
Tel: (202) 857-6130
Fax: (202) 223-8604
Email: toof.jackson@arentfox.com

*Counsel for Amici Anchor Wall Systems, Inc.,
Donaldson Company, Inc., Ecolab, Inc.,
General Mills, Inc., and Valspar Corporation*

Timothy A. Molino
Bingham McCutchen LLP
2020 K Street, NW
Washington, DC 2006
Tel: (202) 373-6161
Fax: (202) 373-6001
Email: timothy.molino@bingham.com

*Counsel for Amicus Federation Internationale
Des Conseils En Proprit Industrielle*

Craig James Franco
Odin Feldman & Pittleman PC
9302 Lee Highway, Suite 1100
Fairfax, VA 22031
Tel: (703) 218-2100
Email: craig.franco@ofplaw.com

*Counsel for Amici Norseman Group, LLC and
Polestar Capital Associates, LLC*

David Wayne Long
Howrey Simon Arnold & White LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 783-0800
Email: longd@howrey.com

*Counsel for Amicus Teles AG
Informationstechnologien*

Maurice Francis Mullins
Spotts Fain PC
411 E Franklin Street, Suite 600
PO Box 1555
Richmond, VA 23218
Tel: (804) 697-2069
Fax: (804) 697-2169
Email: cmullins@spottsfain.com

*Counsel for Amici Intel Corporation and
Micron Technology, Inc.*

I have also caused copies of the foregoing, with attachments, to be sent to the following non-ECF users by first-class mail (where an address has been proved to the Court) or electronic mail (where it has not been):

Ron D. Katnelson
Encinatas, CA
rkatznelson@roadrunner.com

*Amicus curiae Pro Se*

Robert Lelkes
Geigenbergerstr.3
81477 Munich
Germany

*Amicus Curiae Pro Se*

Jennifer Sue Martinez
Stanford Law School
599 Nathan Abbott Way
Stanford, CA 94305
Tel: (650) 725-2749

*Counsel for Amicus Intellectual Property and
Administrative Law and Public Health Professors*


      /s/ Joanna Baden-Mayer
Joanna Baden-Mayer (VSB # 67920)
KELLEY DRYE & WARREN LLP
Washington Harbor, Suite 400
3050 K Street, NW
Washington, DC 20007
Telephone: (202) 342-8400
Facsimile: (202) 342-8451
E-mail: jbaden-mayer@kelleydrye.com

*Counsel for Plaintiff Triantafyllos Tafas*