# EXHIBIT 27

Dockets.Justia.com



# AIPLA

## AMERICAN INTELLECTUAL PROPERTY LAW ASSOCIATION

2001 JEFFERSON DAVIS HIGHWAY ▪ SUITE 203 ▪ ARLINGTON, Virginia 22202

April 24, 2006

The Honorable Jon Dudas
Under Secretary of Commerce for Intellectual Property
  and Director of the United States Patent and Trademark Office
Mail Stop Comments
P.O. Box 1450
Alexandria, VA 22313-1450

> Attn:  Robert W. Bahr
>        Senior Patent Attorney
>        Office of the Deputy Commissioner
>          for Patent Examination Policy

> Comments on Proposed Rules: "Changes to Practice for
> the Examination of Claims in Patent Applications"
> 71 Fed. Reg. 61 (January 3, 2006)

Dear Under Secretary Dudas:

The American Intellectual Property Law Association (AIPLA) appreciates the opportunity to offer comments regarding the U.S. Patent and Trademark Office ("PTO") proposed rules directed to changes to practice for the examination of claims of patent applications published at 71 Fed. Reg. 61 (January 3, 2006).

AIPLA is a national bar association whose 16,000 members are primarily lawyers in private and corporate practice, in government service, and in the academic community. AIPLA represents a wide and diverse spectrum of individuals, companies, and institutions involved directly or indirectly in the practice of patent, trademark, copyright and unfair competition law, as well as other fields of law affecting intellectual property. Our members represent both patent owners and users of intellectual property.

## General Comments

The PTO has proposed dramatic and complex changes to the claim examination process to "focus its initial examination on the claims designated by the applicant as representative claims" presented in an application for patent. At

A00669

the same time, it has also proposed changes to the current continued examination practice available to applicants (discussed by AIPLA in a separate letter) to expedite the examination process, make it more efficient, and improve the quality of issued patents.

These proposed changes, taken both individually and together, are very troubling. In this rule proposal, the Office proposes to severely limit the number of claims it would accept in an application for initial examination by the Office. We believe that this would tend to limit the ability of an applicant to obtain claims for an invention that is commensurate with the full scope of the contribution by the inventors. In the other rule proposal, the Office proposes to severely limit the opportunity for continued presentation of claims by means of continuation and continued examination practice; we believe that this proposal by itself would be disadvantageous to applicants by prematurely truncating prosecution of their applications. However, it would further disadvantage applicants when combined with the limited number of claims proposed to be accepted for initial examination. Together, as a practical matter, these proposals would tend to require applicants (1) to reduce the scope of the claims pursued (whether in the same or unrelated applications) and (2) to accept more narrow claims as a result of the more limited opportunity for continued presentation of claims.[1]

AIPLA fully supports the PTO in undertaking reasonable efforts to become more efficient and to improve the quality of issued patents. There is considerable concern, however, that the changes being proposed would not lead to greater efficiency in the examination process, would not reduce the pendency of patent applications, and would not improve the quality of issued patents. More likely, the proposed changes would protract the examination process and divert scarce resources from examining activity to administrative tasks.

## Administrative Tasks Would Detract From Examination

The PTO is proposing changes to the claim examination process to focus its initial examination on the claims designated by the applicant as representative claims. Representative claims must include all the independent claims in an application and may include dependent claims up to a maximum of ten representative claims without triggering any further requirement. An applicant may obtain initial examination of more than ten claims if an examination support document is filed that covers all the independent and dependent claims designated as representative.

---

[1] The Office argues that neither proposal is "absolute" in the sense that applicants are not absolutely precluded from filing a second continuation application or a second request for continuing examination, nor are they absolutely precluded from presenting more than ten claims for examination. However, in a practical sense, these alternatives would be of little comfort to applicants, who would have to accept the higher costs of doing the initial search and examination themselves, the higher cost of pursuing continued claim presentation opportunities through the more costly administrative route of petition and/or appeal, and a much higher potential for subsequent inequitable conduct allegations.

A00670

The PTO notice states that the proposed changes would allow the Office to do a better, more thorough and reliable examination since the number of claims receiving initial examination would be low enough to be effectively and efficiently evaluated by an examiner.

AIPLA believes that the proposed changes would introduce several administrative tasks both for patent examiners and applicants that are likely to detract from patent examination efficiency. The number of disputes prior to examination, especially with respect to the proper designation of claims and the adequacy of an examination support document, is certain to add to the period of pendency, examiner inefficiency and the overall cost of obtaining a patent. A guiding principle of patent examination over the last 40 years has been that quality and efficiency are promoted by an initial, thorough consideration of the prior art followed by a complete first Office action. Before changing this time-honored policy, the PTO should be able to demonstrate that this alternative policy and practice would lead to a better, more thorough and reliable examination. The PTO has not made such a demonstration.

**Effort Is Not Wasted**

The PTO suggests that the current practice for examining claims is not efficient because it requires an initial patentability examination of every claim in an application, notwithstanding that this effort is wasted when the patentability of the dependent claims stand or fall together with the independent claim from which they directly or indirectly depend. This may be true in the small percentage of cases where the initial examination determines that all of the claims are patentable. It is not true, however, where a complete search and examination of the independent claims comes to a different conclusion.

The PTO notice makes a false analogy of the proposed representative claim practice to the court and Board of Patent Appeals and Interferences practice of using representative claims to focus issues in a case. The analogy fails because the claims going to the Board have already been examined and are supported by a fully developed record. An appellant's recognition that certain claims stand or fall together is informed by that fully developed record, but such a record would not exist in the case of a patent application that has not yet received a first Office action on the merits.

**Failure to Examine Claims**

The statement by the PTO that it would examine every claim in an application before issuing a patent on the application is misleading. The PTO does not intend to search and examine independent claims in excess of ten unless an applicant submits an examination support document for those claims. It would only be able to "examine every claim" by first requiring applicants to cancel claims so that only the requisite number of independent claims remained

3

A00671

in an application. Similarly, the PTO would only examine dependent claims not designated as representative when the independent claims from which they depend are determined to be patentable, and then would only examine them for compliance with sections 101 and 112 of title 35. This proposal raises serious implications for the presumption of validity for any such claim depending from an independent claim found invalid in litigation.

There is a serious question as to whether the statute permits the PTO to ignore claims for which search and examination fees have been paid. The courts have long recognized that the statute prohibits the rejection of claims as unnecessary. In re Wakefield, 422 F.2d 897, 164 USPQ 636 (CCPA 1970). As noted in that decision, an applicant should be allowed to determine the necessary number and scope of claims, provided the required fees are paid and the applicant otherwise complies with the statutes.

The practice of deferring the examination of undesignated dependent claims until the application is otherwise ready for allowance appears to be an inefficient piecemeal examination approach. It would likely prolong both pendency and the resolution of many issues that arguably could and should have been identified in a complete first Office action. It would also complicate and extend prosecution because the examiner has not identified limitations in undesignated dependent claims that would place a claim in condition for allowance.

In many cases, the examiner would have to perform a wasteful duplicate search when additional limitations are introduced from dependent claims that were not initially designated for examination. Valuable patent rights could be lost because the PTO has not done a complete search and examination or because the right dependent claim has not been designated as representative.

The value and enforceability of issued patents examined through this piecemeal practice may be called into question during litigation or in license negotiations. For example, one can only wonder how the courts would view the presumption of validity and enforceability or the burden to overcome the presumption associated with this piecemeal examination practice. Treating an undesignated claim differently than a designated claim during examination violates the fundamental principle that each claim is a separate definition of the invention. At the very least, the different treatment serves to create additional uncertainty and risks for the patent holder.

## Excessive Claiming

AIPLA recognizes that PTO statistics indicate that a small minority of applicants engage in claiming practices that may be regarded as excessive (1.2% if one were to use the PTO's definition of excessive), and that such excessive claiming may make an application more difficult to thoroughly examine than the average application. However, all applicants should not be subject to

4

A00672

the proposed representative claim examination practice because of the actions of these very few.

Given the small minority of applications using unusually difficult claiming practices, the problem should be addressed on a case-by-case basis in a balanced and reasonable way. It is neither balanced nor reasonable to penalize all applicants and burden the PTO staff that must administer these complex proposals based on the "excessive practices" of a small minority of applicants.

We suggest that the Office address excessive claiming concerns in a simple and straightforward manner. This could be done most directly by limiting the number of claims permitted and fully examined under the basic fee structure to, for example, 6 independent and 30 total numbered claims, and allowing multiple-dependent on multiple-dependent claims, each counting as a single numbered claim. To the extent that an applicant believes that a particular invention cannot be appropriately protected within these constraints, allow such applicants to opt to file additional numbered claims at a very high per-claim cost. The higher fees would discourage inadvertent or unnecessary excess claiming. Additional examiner time and credit could be given in the few cases in which this would occur. This approach would permit applicants to effectively claim their inventions and have all claims examined in a first Office action on the merits. Our combined initiative would obviate any need for the complex proposed rules and the piecemeal examination that would result from them.

## Greater Efficiency and Improved Quality Are Doubtful

In addition to the concerns about the inefficiencies of piecemeal examination, the PTO should determine whether the PTO and applicants would be the beneficiaries of greater efficiency and improved quality of examination if an examiner is given more time to initially focus on some claims and ignore others. It is far from clear that this would result in either improved efficiency or an improved work product from the examining corps as a whole.

The following comments address the specific provisions of the proposed rules along with alternative suggestions for implementation if these proposals are adopted.

*Section 1.75(b) Dependent Claim*

The proposed amendment to this paragraph specifies that unless a dependent claim has been designated for initial examination prior to the time when the application has been taken up for examination, the examination of such dependent claim may be held in abeyance until the application is otherwise in condition for allowance. The mere presentation of a dependent claim in an application containing only ten claims would not act as a designation of that dependent claim for initial examination. This places an affirmative duty on an

5

A00673

applicant to designate claims for initial examination in almost all applications. Failure to designate up to ten claims in an application would result in the initial examination of only the independent claims.

It seems manifestly unfair and wholly unnecessary to impose such a requirement on all applicants, particularly those who prepare a modest claim schedule for examination. If these proposed rules are adopted, their application should be limited to the small minority of applications that place an excessive burden on the PTO. As suggested above, applicants who present up to 6 independent claims and no more than 30 total numbered claims should be exempt from a requirement to designate representative claims. In that case, all presented claims should be examined.

*Section 1.75(b)(1) Examination Support Document Requirement*

This proposed paragraph provides that an applicant must submit an examination support document in compliance with § 1.261 that covers each representative claim if either: (1) the application contains, or is amended to contain, more than ten independent claims; or (2) the number of representative claims is greater than ten. Applicants would be able to avoid the high costs and risks associated with submitting an examination support document by limiting the representative claims to no more than ten.

If adopted, AIPLA strongly suggests that this requirement be imposed only in those situations which clearly impose a unique burden on the PTO in its examination process. It is both unnecessary and undesirable to burden the PTO staff and all applicants with the additional costs and resources that would be necessary to identify claims for initial examination by the PTO. If the Office is unwilling to accept the search report of another foreign office, how can it have any confidence in the search of the applicant? Given the failure of the Office to effectively use even the international search reports that the Office itself prepares under the Patent Cooperation Treaty, there is no reason to believe that the examination support document would reduce pendency. Indeed, the inevitable disputes with respect to the adequacy of the document will clearly operate to extend pendency.

This proposed paragraph also provides that a dependent claim (including a multiple dependent claim) designated for examination must depend only from a claim or claims also designated for examination.

The more complexities that are introduced into the patent examination process, the more difficult it becomes for examiners to focus their attention on the substantive aspects of their jobs. Without very strong evidence that the representative claim practice can lead to greater efficiencies and effectiveness in the examination process, it is unfair and wasteful to add to the burdens of both PTO staff and applicants trying to administer these complex procedures.

6

A00674

*Section 1.75(b)(2) Independent Claim Redefined*

Proposed Section 1.75(b)(2) seeks to redefine an independent claim to include claims that are currently considered to be in dependent form because they make reference to another claim. Specifically, this proposed paragraph provides that a claim that refers to another claim but does not incorporate by reference all the limitations of the claim to which such claim refers would be treated as an independent claim for both fee calculation purposes under § 1.16 and for purposes of § 1.75(b)(1). This proposed paragraph also provides that a claim that refers to a claim of a different statutory class of invention would be treated as an independent claim, again for both fee calculation purposes and for purposes of paragraph (b)(1) of this section.

AIPLA considers it both unnecessary and inappropriate to change the definition of an independent claim to facilitate the proposed representative claim practice. For over 50 years the PTO has appropriately made the distinction between an independent and dependent claim simple to determine. As presently practiced, the PTO staff and practitioners are able to determine the difference between an independent and a dependent claim for fee calculation and all other purposes: A claim that does not make reference to another claim is an independent claim, and a claim that does make reference to another claim is a dependent claim. The proposed change in the definition of an independent claim would not only complicate and confuse, but it would also effectively increase the amount of fees to be paid for a given patent application under the new fee schedule adopted by Congress.

The requirement that an independent claim include one that refers to a claim of a different statutory class of invention would lead to confusion, because the statutory classes of invention are not necessarily mutually exclusive. Consider, for example, the new bacterium addressed in <u>Diamond v. Chakrabarty</u>, 477 U.S. 303 (1980). The Supreme Court found it unnecessary to determine whether the new bacterium was a manufacture or a composition of matter. If the PTO is going to adopt this proposal, it should issue guidelines for both PTO staff and the public as to how the proposal is intended to be administered in areas where no guidance is available to distinguish among different statutory classes of invention.

*Section 1.75(b)(3) Notice to Applicant*

This proposed paragraph provides that an applicant would be notified if an application contains or is amended to contain more than ten independent claims or more than ten claims designated for initial examination, where an examination support document was not included. The proposed notice would set a non-extendable one-month time period within which applicant must: (1) file an examination support document; (2) cancel or rescind a designation for initial examination of more than ten claims; or (3) submit a suggested requirement for restriction accompanied by an election without traverse and a designation of up to ten claims for initial examination.

7

A00675

The one-month period is too short to prepare and submit an adequate examination support document. In addition, the procedures required to simply identify the designated claims for initial examination would be costly to both the PTO and applicants, decreasing the desired efficiencies. The proposed notice to applicants would itself impose costs since it would have to be generated by an examiner because the Office of Initial Patent Examination would not have the necessary qualifications to do so. It is also foreseeable that another round of communications would be needed if an applicant selects the third option and it is not accepted by the PTO. This would needlessly absorb scarce PTO examination resources and be counter productive to the Office goal of improving examination efficiency.

*Section 1.75(b)(4) Multiple Applications Containing Patentably Indistinct Claims*

Under this proposed paragraph, the PTO attempts to address a situation where multiple applications are presented that contain at least one claim that is patentably indistinct from at least one claim in one or more other applications. This paragraph provides that, if the patentably indistinct claims are not eliminated from all but one of the nonprovisional applications, the independent claims and the dependent claims designated for initial examination in all such related applications would be treated as being present in each of the applications for the purposes of § 1.75(b)(1). In other words, only ten claims could be designated among all related applications without triggering the requirement for an examination support document.

Under the proposals made by the PTO, if an applicant acknowledges that there exists at least two applications containing patentably indistinct claims, these proposals: (1) require the filing of a terminal disclaimer to overcome a double patenting rejection; (2) expose the applicant to the risk that the PTO would require that all patentably indistinct claims be deleted from all but a single application; and (3) expose this applicant to a requirement that the ten representative claims must be spread out among two or more applications.

These disincentives would discourage most applicants from acknowledging that claims in two or more applications are patentably indistinct. Will this proposal encourage examiners to search for related cases, rather than searching or examining the application at hand? If the PTO concludes that there are multiple applications with patentably indistinct claims and the Applicant disagrees, what is the mechanism for addressing this issue? Would a rejection based on double patenting be made? Would a requirement be made to eliminate allegedly patentably indistinct claims from all but a single application? It would appear that the applicant who disagrees would have to either appeal or petition to address this issue either before or concurrently with a determination of representative claims in each application, thereby causing a substantial increase in pendency. Again, in addition to increasing complexity and unnecessarily consuming PTO and applicant resources, this proposal provides new incentives for applicants to challenge double patenting rejections that are currently handled by filing terminal disclaimers.

8

A00676

This proposed practice could reduce the number of representative claims identified for initial examination in related applications to significantly less than ten, depending on the number of related applications which the PTO determines contain patentably indistinct claims. It is both unfair and unwise to further limit the number of claims examined in a single application because it would almost certainly lead to greater inefficiencies, and may lead to the search and initial examination of only a single claim (e.g., where there are 6-10 related applications) in some applications, notwithstanding that a full search and examination fee has been paid in each of the applications.

*Claims in Alternative Form*

The PTO has requested comments on how claims written in the alternative form, such as claims in an alternative form exemplified by Ex Parte Markush, 1925 Dec. Comm'r. Pat. 126 (1924) should be counted for the purposes of proposed § 1.75(b)(1).

AIPLA recognizes that there may be situations that would require unique handling, but most claims drafted with an element, step, or ingredient identified by alternative embodiments are no different in substance than a broad claim or generic claim that covers an equal number of embodiments. The principal difference is that in the latter case, there is a generic term that covers all the alternative embodiments, whereas when the claim is drafted to define the alternatives, a generic term may not exist.

As a fundamental principle, a claim drafted to identify any element, ingredient, or step in the alternative should not be treated any differently than any other claim. Moreover, we suggest that the PTO use the standard election of species practice to identify alternatives that could be used for representative claim purposes in those situations that make such an approach desirable. The PTO has not identified any basis for requiring the development of a unique practice to address claims reciting alternative embodiments.

*Section 1.104 Nature of Examination*

This section is proposed to be amended to reflect that initial examination would be conducted on only the independent claims and any dependent claim that was designated for initial examination. It is further amended, consistent with the amendments proposed above, to specify that the examination shall be complete as to the patentability of the invention as claimed in the independent and the designated dependent claims only. Also, as noted above, this section is amended to state that the examination of a dependent claim that has not been designated for initial examination may be held in abeyance until the application is otherwise in condition for allowance.

AIPLA's concerns and suggestions made above regarding piecemeal examination also apply to this section.

9

*Section 1.105 Requirements for Information*

This section is proposed to be amended to provide that an applicant may be required to identify where in the specification of the application, or in any application the benefit of whose filing date is sought, there is set forth the written description of the invention as defined in the claims, and the manner and process of making and using it.

AIPLA supports the appropriate use of this proposed requirement in situations where a reasonable question exists and is relevant to a determination of patentability. However, it should only be used where this information is relevant to the determination of a patentability issue before the examiner.

*Section 1.117 Refund Due to Cancellation of Claim*

This proposed paragraph provides for the refund of any part of the excess claim fee specified in 35 U.S.C. § 41(a)(2) for any claim cancelled before an examination on the merits has been made in the application.

AIPLA understands that the authority to make this refund will expire on September 30, 2006, possibly even in advance of publication of any final rule. We support an extension of this authority for the PTO and encourage the PTO to accelerate implementation of this portion of the proposed rules. In this connection, AIPLA has expressed to Congress its support for H.R. 2791 to make permanent the PTO fee structure with protection against fee diversion and will continue to work toward its enactment.

*Section 1.261(a) Examination Support Document*

An examination support document, as proposed in this section, means a document that includes: (1) a statement that a preexamination search was conducted; (2) an information disclosure statement; (3) an identification of all the limitations of the independent claims and designated dependent claims that are disclosed by the references cited; (4) a detailed explanation of how each designated claim is patentable over the references cited; (5) a concise statement of the utility of the invention; and (6) a showing of where each limitation of the designated claims finds support in the written description not only of the specification under examination, but also of any application from which priority benefit is claimed.

The requirements for the examination support document are so onerous and fraught with dangers for the patent applicant that few practitioners would recommend this approach to their clients. It would provide an infringement defendant with a wealth of opportunities to challenge a patent on the grounds of inequitable conduct. Notwithstanding the care an applicant takes in preparing such a document, it could always be alleged that a reference in the identified search template was withheld or mischaracterized, that the explanation of how a claim is patentable over the references was misleading, etc.

10

A00678

In addition, the search and analysis necessary to prepare an examination support document would add significant cost to the preparation of an application, a burden that would significantly disadvantage independent inventors and small businesses. According to the 2005 AIPLA Economic Survey, the median cost for a <u>preexamination</u> search alone – without any patentability analysis - is approximately $2,500. The necessary legal analysis to prepare an examination support document would add substantial costs to this amount - far in excess of the cost of the underlying search. On one hand, a patentability opinion prepared as a result of a preexamination search is typically 2 or 3 pages in length. It summarizes the invention and compares the most relevant art to the invention to determine if there is at least one unobvious feature of the invention that is not found in the prior art. On the other hand, the Examination Support Document requires an identification of all the limitations of the independent claims and designated dependent claims that are disclosed by the references cited. This is not done with a patentability opinion because at that point in time no claims have been drafted. Also, the object of the opinion is merely to establish that there is at least one patentable feature. For the same reason, the opinion does not require a detailed explanation of how each designated claim is patentable over the references cited. In fact, in a patentability opinion many of the less relevant references are not even discussed. Further, such an opinion would not consider any statement of the utility of the invention, because that would be understood. Finally, the opinion would not include a showing of where each limitation of the designated claims finds support in the written description, because at that point in time there would be no claims and no specification. Thus, instead of being similar to a preexamination search and a patentability opinion, the Examination Support Document is more like a validity opinion, which according to the 2005 AIPLA Economic Survey has a 75th percentile cost of $18,000. That amount covers only the legal opinion and does not include the separate cost for the search itself.

Furthermore, it is almost impossible to determine the extent to which the prior art must be searched to satisfy this requirement. Even a good faith attempt by a practitioner is likely to be attacked as being inadequate and calculated to somehow avoid discovery of the most relevant prior art.

Should this requirement be adopted in any form, the failure to provide any "safe harbor" to protect applicants who make good faith attempts to prepare examination support documents from charges of inequitable conduct is compounded by the Office's refusal to even consider inequitable conduct reform in the pending patent reform legislation. The danger that the submission of the proposed document would present would effectively force applicants to limit their applications to 10 or fewer claims, denying them the right to adequately protect their inventions.

If the PTO ultimately determines to go in this direction, it should take a more holistic approach to these reforms prior to implementation and facilitate the applicant's ability to assist the PTO during the examination process. Before even considering any changes such as those proposed, the Office must create a "safe

11

harbor" that appropriately protects the applicant when identifying and characterizing important prior art, while discouraging disclosures of little or no relevance. Applicants must not be exposed to allegations of inequitable conduct for good faith attempts to aid examiners by providing them with prior art.

A "Coalition bill" currently under consideration in Congress presents one such safe harbor by codifying the duty of candor and good faith and clarifying the law related to inequitable conduct, fraud, and other misconduct before the Office. Good policy and fairness demand the implementation of such a safe harbor prior to increasing the burden and potential legal exposure of applicants.

Beyond these serious problems, there is no indication of how the PTO would use an examination support document. Would an independent search be conducted based on the claimed invention? Would the documents cited in the document be independently evaluated by the examiner? Would the patentability analysis and support determinations be reviewed and evaluated by the examiner? Or would they simply be ignored? The differences among the more than 4,000 examiners are only magnified in view of the more than 32,000 registered practitioners using a huge variety of resources to create examination support documents. Even a good faith attempt to meet the requirements specified for this document would provide an abundance of new opportunities to attack the patent on the basis of an alleged misrepresentation to the PTO.

Many of the tasks associated with the formulation of an examination support document are already conducted by foreign examiners. Yet, we understand that the PTO does not rely exclusively on any of these searches or examination results, nor has the PTO acknowledged in any explicit way that these results improve either the efficiency or quality of the examination process. This highlights the manifest unfairness and inconsistency in requiring applicants to produce a search document while at the same time refusing to effectively use foreign search reports.

Finally, there remains the fact that the proposed examination support document transfers to the applicant the costs and responsibilities of the examination process for which fees have been paid. This represents an abdication of the inherently governmental function of determining patentability, and the PTO has thus far failed to demonstrate that the requirement would produce a corresponding benefit in pendency reduction.

*Section 1.261(b) Preexamination Search*

This proposed paragraph provides that the preexamination search necessary to prepare an examination support document must involve U.S. patents and patent application publications, foreign patent documents, and non-patent literature. The exception is where the applicant justifies with reasonable certainty that no references more pertinent than those already identified are likely to be found in the eliminated source, and includes such justification with the search statement required in the examination support document. (Rhetorically,

12

one might ask "How would an applicant be able to make such a statement unless the search has been conducted?" The inequitable conduct consequences would be huge for an applicant following this avenue.) The PTO makes clear that a search report from a foreign patent office would not necessarily satisfy these requirements.

The proposed requirement is more of a validity search that would be done for litigation than a patentability search, and imposes on applicants all of the costs that such searches entail. Significantly, those costs would be especially burdensome to small businesses and independent inventors who typically rely on the PTO search that has traditionally been covered by their filing fee. To the extent that an applicant must perform a preexamination search, such a search should not be required to go beyond the resources that are publicly available in the PTO search room.

As with the proposed examination search document, it is almost impossible to determine the extent to which the prior art must be searched to satisfy this requirement. Similarly, this requirement makes the applicant an easy target for an inequitable conduct charge in an enforcement action. The proposal is fatally flawed and should be withdrawn.

*Section 1.704 Reduction of Period of Patent Term Adjustment*

This proposed paragraph provides that a failure to timely file an examination support document would constitute a failure of an applicant to engage in reasonable efforts to conclude processing or examination that could result in a reduction of any accumulated patent term adjustment.

Since very few of these examination support documents are likely to be filed, there is not likely to be any opportunity to reduce a patent term adjustment. However, if such a document were to be filed by an applicant, the one-month time-frame permitted by the PTO to timely submit such a document is clearly inadequate.

**Implementation**

According to the PTO notice, the proposed changes to the rules would be applicable to any application filed on or after the effective date of the final rule, as well as to any application in which a first Office action on the merits was not mailed before the effective date of the final rule.

If the proposed rules are adopted, they should apply only to those applications filed on or after the effective date of the final rule. The cost of retroactively imposing this proposed rule on the more than 600,000 pending patent applications would be enormous. To avoid the draconian consequences of the proposed rule, most applicants would review their pending applications for compliance, a step that would impose millions of dollars of unnecessary costs on them. As suggested above, if this proposed practice is adopted at all, it should be

13

A00681

limited to the small minority of applications that pose a unique burden to the Patent and Trademark Office.

We appreciate the opportunity to provide comments on the proposed rules and are available to assist the PTO in further developing patent practice and procedures.

Sincerely,

Michael K. Kirk
Executive Director

14

**Jones, Eugenia**

| | |
|---|---|
| **From:** | Michael K. Kirk [mkirk@aipla.org] |
| **Sent:** | Monday, April 24, 2006 1:37 PM |
| **To:** | AB94Comments |
| **Cc:** | Clarke, Robert |

**Subject:** AIPLA Comments on Examination of Claims Practice

Robert A. Clarke
Deputy Director
Office of Patent Legal Administration
Office of the Deputy Commissioner for Patent Examination Policy

Dear Mr. Clarke,

Attached are the comments of the American Intellectual Property Law Association on the proposed rules changes to "Practice for the Examination of Claims in Patent Applications."

We appreciate the opportunity to offer our comments and would greatly appreciate confirmation that our comments have been received by the U.S Patent and Trademark Office.

Thank you.

Mike Kirk
Executive Director
AIPLA

5/5/06

A00683